# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                            20-MD-2924
LITIGATION

                                                **JUDGE ROBIN L. ROSENBERG**
                        **MAGISTRATE JUDGE BRUCE E. REINHART**

_____/

**THIS DOCUMENT RELATES TO: ALL CASES**


## PLAINTIFFS' OPPOSITION TO BRAND DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT[1]


DATED: August 1, 2022

---

[1] This Motion is filed under seal pursuant to the Order at D.E. 5684.

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ...................................................................................................................... 2

III.  CONCLUSION ................................................................................................................... 3

## TABLE OF CITATIONS

**Cases**                                                                    **Page(s)**

*Amy v. Carnival Corp*., 961 F.3d 1303 (11th Cir. 2020) ............................................................ 1

*Campbell v. Allstate Ins. Co.*, Case No. 2:19-CV-14270-RLR, 2021
    WL 148735 (S.D. Fla. Jan. 13, 2021) ................................................................... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 2

*Grayson v. Warden, Comm'r, Ala. Dep't of Corr*., 869 F.3d 1204
    (11th Cir. 2017) ......................................................................... 2

*Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012) ................................... 2

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ..................................................... 2

*McClain v. Metabolife Intern., Inc.,* 401 F.3d 1233 (11th Cir. 2005) ........................ 2

*Nassar v. Nassar*, No. 20-CV-14033, 2022 WL 1591358
    (S.D. Fla. Apr. 27, 2022) ..................................................................... 2

*Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020) ................................................ 2


**Rules and Regulations**

Fed. R. Civ. P. 56(a) ............................................................................. 2

Fed. R. Civ. P. 56(f) ............................................................................. 1

Plaintiffs submit this Response in Opposition to Brand Defendants' Motion for Summary Judgement, [D.E. 5697].

## I.        INTRODUCTION

Defendants' motion for summary judgment precariously hinges on the presumption that all 12 of Plaintiffs' general causation experts will be precluded from testifying about each and every opinion they propose to offer on general causation.[2]   All the parties agree that this "litigation is about whether NDMA in Ranitidine can cause the types of cancers being alleged by the Plaintiffs."[3] That is, at least, until Defendants filed their motion for summary judgment. Willfully blind to the fact that their drug contains NDMA, Defendants' now attempt to ask whether Ranitidine <u>alone</u> can cause cancer.  That misdirection does not withstand scrutiny.

By asking the wrong question, Defendants maintain that Plaintiffs will lack even a scintilla of expert testimony that speaks to any aspect of general causation.  Focusing on the right inquiry, this Court will conclude that Plaintiffs prevail on general causation as a matter of law. NDMA is universally regarded as a potent carcinogen.[4] That is a patent *McCLain* category one

---

[2] To the extent Defendants' presumption is wrong, summary judgment must be denied.  *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1310-11 (11th Cir. 2020) ("a district court may 'grant [a summary judgment] motion on grounds not raised by a party' *only* '[a]fter giving notice and a reasonable time to respond.'") (citing Fed. R. Civ. P. 56(f)) (emphasis in original).

[3] Discovery Hearing Transcript of July 7, 2022 at 9:9-11 (statement of Jennifer Hill on behalf of the Brand Defendants).

[4] *See* Appendix A (attached hereto).  *See also* D. E. 5841, p. 5-7.

situation.[5] At a minimum, Defendants cannot shoulder their heavy burden to snatch the question of general causation from the factfinder.

## II.   ARGUMENT

"Pursuant to Fed. R. Civ. P. 56(a), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Nassar v. Nassar*, No. 20-CV-14033, 2022 WL 1591358, at *2 (S.D. Fla. Apr. 27, 2022) (Rosenberg, J.), citing *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). And it "may not weigh conflicting evidence or make credibility determinations when reviewing a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citations omitted).  Plus, "where the facts specifically averred by the non-moving party contradict facts averred by the movant, the motion must be denied, assuming the facts in dispute are material."  *Nassar*, 2022 WL 1591358, at *2, citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

---

[5] In *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005), the court broke down toxic tort cases into two categories, where in the first category, like the situation with NDMA present here, "the medical community generally recognizes the toxicity of the drug or chemical at issue."  The court provided similar examples "like asbestos, which causes asbestosis and mesothelioma; silica, which causes silicosis; and cigarette smoke, which causes cancer." *Id.*  The second category applies to situations where the "medical community does not generally recognize the toxicity of [a] drug combination or [one drug] alone. *Id.*

Plaintiffs' experts have employed reliable and accepted methodologies to express their opinions that the NDMA in Ranitidine can cause cancer, which is why Defendants' *Daubert* motions are not valid. Since Defendants' summary judgment motion is based solely on a flawed presumption, it too is flawed and invalid.

Defendants' invalid motion fails for an independent reason: its failure to comport with S.D. Fla. Local Rule 56.1(a)(1) by missing any Statement of Material Facts. *See, e.g., Campbell v. Allstate Ins. Co.*, Case No. 2:19-CV-14270-RLR, 2021 WL 148735, at *3 (S.D. Fla. Jan. 13, 2021) (Rosenberg, J.) ("if a party fails to file a statement of facts that complies with Local Rule 56.1, then consistent with Federal Rule of Civil Procedure 56, the Court may strike the statement, grant relief to the opposing party, or enter other sanctions that the Court deems appropriate.") (citing S.D. Fla. L.R. 56.1(d)). Indeed, summary judgment should be entered in favor of Plaintiffs regarding the *McClain* category one condition that the NDMA in Ranitidine can cause cancer, leaving for a jury at trial the question of specific causation.

## III.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion.

DATED: August 1, 2022.

Respectfully submitted,

| | |
|---|---|
| */s/ Tracy A. Finken* | By: */s/ Robert C. Gilbert* |
| Tracy A. Finken | Robert C. Gilbert, FBN 561861 |
| Email: tfinken@anapolweiss.com | Email: gilbert@kolawyers.com |
| ANAPOL WEISS | KOPELOWITZ OSTROW FERGUSON |
| One Logan Square | WEISELBERG GILBERT |
| 130 North 18th Street, Suite 1600 | 2800 Ponce de Leon Boulevard, Suite 1100 |
| Philadelphia, PA 19103 | Coral Gables, FL 33134 |
| Tel: (215) 735-1130 | Tel: (305) 384-7270 |

<u>/s/ Michael L. McGlamry</u>
Michael L. McGlamry
Email: efile@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

<u>/s/ Adam Pulaski</u>
Adam Pulaski
Email: adam@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan
Email: Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1 Wall Street
Albany, NY 12205
Tel: (518) 862-1200

Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019

Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Tel: (855) 333-4662

Ashley Keller
Email: ack@kellerpostman.com
KELLER | POSTMAN
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (312) 741-5222

Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email: luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email: frank@maderalbyrne.com
MADERAL BYRNE PLLC
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 520-5690

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: laurenm@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1914 4th Avenue North
Suite 320
Birmingham, AL 35203
Tel: (205) 533-4175

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4629

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Steven B. Rotman
Email: srotman@housfeld.com
HAUSFELD, LLP
One Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 207-0602

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Avenue SE
Third Floor
Washington, DC 20032
Tel: (202) 506-3591

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Steering Committee*

Brooke Achua
Email: brooke@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd., 46th Floor
Yorkville, IL 60560
Tel: (646) 502-7910

Lea P. Bucciero
Email: lbucciero@podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Marlo E. Fisher
Email: marlof@lpm-triallaw.com
Laminack, Pirtle & Martines
5020 Montrose Blvd., 9th Floor
Houston, TX 77006
Tel: (713) 292-2750

Noah Heinz
Email: noah.heinz@kellerpostman.com
KELLER | POSTMAN
1100 Vermont Avenue NW, Floor 12
Washington, DC 20005
Tel: (202) 918-1841


Caroline G. McGlamry
Email: carolinemcglamry@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Harrison M. Biggs
Email: hbiggs@yourlawayer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4633

Alexander C. Cohen
Email: acohen@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road
Suite 500
Boca Raton, FL  33432
Tel: (561) 750-3000

Kendra Goldhirsch
Email: goldhirsch@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY  10016
Tel: (888) 480-1123

Catelyn McDonough
Email: cmcdonough@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

Madeline Pendley
Email: mpendley@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL  32502
Tel: (850) 435-7003

Laura K. Stemkowski
Email: lstemkowski@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9165

Daniel E. Tropin
Email: tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (954) 990-2216

*Plaintiffs' Leadership Development Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and is being served on counsel via email pursuant to ECF No. 5684.

*/s/ Robert C. Gilbert*
Robert C. Gilbert

## APPENDIX A

The following Appendix catalogs admissions from defense witnesses regarding the known carcinogenicity of NDMA. The exhibits cited herein are attached to the Declaration of Daniel Nigh filed contemporaneously with Plaintiffs' opposition briefs to Defendants' *Daubert* and Summary Judgment motions and bear the numbers as referenced in that Declaration. Objections are omitted from the excerpted testimony.

### GSK'S ADMISSIONS REGARDING NDMA

Stephen Hobbiger, BSc, FRCP (Ed), DPM
Senior Vice President, Head of Safety and Medical Governance
30(b)(6) Pharmacovigilance Witness

Q. Okay.  And, certainly, you would agree that GSK is aware that NDMA is a probable human carcinogen?

A. The classification of NDMA is as a probable carcinogen in man, yes.

Ex. 18 Hobbiger Dep. at 58:16-21.

Andrew Whitehead, BSc.
Nitrosamine Chemistry Director

Q. Do you agree that they [nitrosamines] can cause cancer and thus, represent a serious health hazard?

A. Nitrosamines are known to be, in certain animal models, carcinogenic.  This specific nitrosamine, NDMA, is a probable carcinogen.

Q. And "carcinogen," can you -- how do you -- what does that mean?  What is a carcinogen?

A. It -- it has the potential to interfere with DNA resulting in a cancer being formed.

Ex. 31 Whitehead Dep. 38:16–39:2.

1

Andrew Searle
Director of Chemistry, Technical Shared Services
Author of GSK's June 2020 Root Cause Analysis

Q.  You would agree that NDMA is a carcinogen, correct?

A.  It -- it's a suspected human carcinogen, as -- you know.

* * *

Q.  I am asking why wouldn't you want a genotoxic carcinogen in the drug?  What would result if it's in the drug that's being consumed by millions on a daily basis?  What would happen, Mr. Searle?

A.  What -- what can happen?  Well, there is a potential, but how much, how long, I couldn't tell you the answer to that.  You know, carcinogens can cause cancer, but there are so many factors in that, you know, the amount, the time, all of these things, and, you know, I can say no more than that.

Ex. 27 Searle Dep. 158:16–20; 125:16–126:8.

Liangfu Chen, Ph.D.
Scientific Director, DMPK Project Specialists, IVIVT-DMPK

Q.  Okay.  And you agree that NDMA is a probable human carcinogen, correct?

A.  It's a probable human carcinogen, yes. That's the -- but the reason we have probable there, there's a lot of conditions there.  So that's what -- it's a very complicated scientific matter, so the word "probable" probably is the best term we can come up with.  But, yes, by itself just pick a term probable is probably a correct term to define NDMA as a probable human carcinogen.

Ex. 9 Chen Dep. 14:23–15:8.

Anthony Lynch, Ph.D.
Senior Director, Genetic Toxicology & Photosafety

Q.  And the purpose of putting NDMA inside a class 3 cabinet is to keep it completely separated from a worker who could be exposed to this genotoxic carcinogen, right?

A.  So the purpose of the cabinet is applied to all potential genotoxic carcinogens, not just NDMA.  And when we're working in the laboratory, obviously we're using quite high levels of material in our tests, and, therefore, yeah, we want to minimize the exposure of the scientists to those potential genotoxic carcinogens, whether it's NDMA or other nitrosamines or other compounds that are labeled hazardous and with potential genotoxicity and/or carcinogenicity labels.

Ex. 23 Lynch Dep. 41:19–42:6.

Leslie Driver, PharmD.
Director and Team Lead, US Classic and Established Products
30(b)(6) Regulatory Witness

Q.  And you would agree that it's [NDMA] a known carcinogen; is that right?

A.  From a regulatory perspective, it's not, you know, an area of expertise, but what I can say is what the FDA has stated, which is NDMA is a carcinogen in animals, and it is -- can be a carcinogen in humans if it is given for a long period of time over acceptable levels.

Ex. 13 Driver Dep. 29:7–15.

3

James Harvey, Ph.D.
Global Director – Target and System Safety Non-Clinical Safety

> Q.  My question to you is are you agreeing with the statement about nitrosamines being potent genotoxic agents and probable human carcinogens.  I understand what this document states.  It's the FDA guidance on nitrosamines.  And my question to you is do you agree that nitrosamines are potent genotoxic agents and probable human carcinogens?
>
> A.  Yeah, as defined in the document and they reference IARC, yes, I agree.

Ex. 16 Harvey Dep. 53:8–17.

## SANOFI'S ADMISSIONS REGARDING NDMA

Dr. Gerda Glanzmann
Sanofi's CHC Chief Quality Officer (formerly of BI)



> Q.  Okay.  And what is NDMA?
>
> A.  NDMA is classified as a probable human carcinogen.
>
> Q.  Okay.  And a carcinogen means something that can cause cancer in the body?
>
> A.  Yes.  A carcinogen is something, a substance, which could promote the formation of cancer.

Ex. 14 Glanzmann Dep. 35:7–16.

Claude Kugel
Head of Sanofi's Analytical Science/Testing Department



Q.   And you understand that NDMA is a highly carcinogenic compound.  Right?

A.   It's classified as a potent carcinogenic, yes.

Q.   You mentioned mutagenic impurities.  NDMA is a mutagenic impurity.  Correct?

A.   NDMA is recognized as a carcinogenic impurity or compound.

Ex. 19 Kugel Dep. 25:9–13; 32:11–15.

Scott Coapman
Senior Director – Head of US Innovation Program & Pipeline Management
30(b)(6) Ranitidine, European Patent, Uquifa Testing Witness



Q.   My question was a little different.  The statement that NDMA is a semi-volatile organic chemical with strong liver toxicity and is classified as a carcinogen of IARC category 2A, that's a true statement, right?

A.   I just understand it to be a potential human carcinogen from some of the past documents that we've reviewed.

* * *

Q.   Now, on paragraph 20, it says, "Recently, most drug regulatory administrations, in particular the Food and Drug Administration, worldwide have decided to withdraw ranitidine compositions from the market because of concerns over levels of the contaminant NDMA which can increase with time and temperature, said substance being classified as a carcinogen."  That's something Sanofi wrote in its application; is that right?

A.   That is something that was written.  This was authored by Sanofi, yes.

Ex. 12 Coapman Dep. 38:16-39:1; 62:17-63:2.

5

Matt Lochstampfor
Site Quality Head – Vice President, Quality Assurance
30(b)(6) Distribution and Storage Witness



Q.   Now, NDMA has been a recognized carcinogen for several decades, right?

A.   I – I now understand that it has been recognized for some time.  I can't speak to the length of that time.

Ex. 22 Lochstampfor Dep. 234:17–22.

Alan Main
Executive Vice President Consumer Healthcare
Member of the Sanofi Executive Committee



Q.   Mr. Main, as someone who's been in the consumer healthcare industry for 30 years, do you agree that NDMA is a probable human carcinogen?

A.   I am now aware of that, and I was made aware of that during the course of this -- this issue.  I was not familiar with that prior to the -- this issue being raised in September 2019.

Ex. 24 Main Dep. 147:13–21.

## PFIZER'S ADMISSIONS REGARDING NDMA

Arthur Ciociola, Ph.D., F.A.C.G.
Pfizer Vice President Worldwide Regulatory Affairs
Quality Assurance, Pfizer Global Research and Development (November 2003-April 2007)



Q.   And you understand that NDMA is a very -- is understood to be a very potent carcinogen, correct?

A.   Mr. Martinez, I also understand that nitrosamine NDMA is also considered to be a carcinogen.

\* \* \*

Q.   And you understood that NDMA was a substance that there's really no acceptable level of NDMA that should be present in any of the medications that you have overseen over your many years in the business, correct?

A.   Mr. Martinez, I'm going to respond to your question. I'm aware that NDMA is a carcinogen, and, as I shared earlier, I'm not a toxicology expert, and it makes common sense that no level would be an acceptable level of NDMA.  But not being an expert or not knowing what the regulations are or the toxicology limits, I can't comment on whether zero level is the acceptable range, and -- but I'm not aware of NDMA in any drugs that I've ever worked on.

Ex. 11 Ciociola Dep. 162:22–163:2; 171:3-19.

## BI'S ADMISSIONS REGARDING NDMA

Dr. Robert Buchberger
Head of Global Patient Safety & Pharmacovigilance



Q.   Okay.  So you've said multiple times now that the amount of NDMA that a person is exposed to determines whether or not it increases their risk for cancer.  Is that a fair statement of what you've been saying?

A.   Like with any carcinogen, it is very important and always has to be considered what is the level of exposure to an individual.  And that really determines whether there is the potential of a risk associated or not.

Ex. 8 Buchberger Dep. 190:5–17.

Maria Lloris, Phd. (Uquifa)
Research and Development Manager
30(b)(6) Witness



Q.   Dr. Lloris, do you agree that NDMA is a known human carcinogen?

A.   I do have some information from literature. I'm not an expert on that, so I have read.

Q.   You have read that in the literature when you were conducting your root cause analysis?

A.   Yes.

Ex. 21 Lloris Dep. 78:20–79:1.

## DEFENSE EXPERTS' ADMISSIONS REGARDING NDMA

Lewis Chodosh, M.D., Ph.D.
Subject Area: Biochemistry and Cancer Research



Q.  When did you first become aware that NDMA was classified by IARC as a probable human carcinogen?

A.  Again, sitting here right now I can't give you a specific date. I'd say more likely than not it would have been in the past 15 to 20 years, but I can't -- I can't tell you beyond that.

Ex. 10 Chodosh Dep. 129:25–130:5.

Frederick Guengerich, Ph.D.
Subject Area: Biochemistry



Q.  So, do you agree with GSK that NDMA exposure should be reduced to the extent possible?

A.  I agree that -- well, first of all, I agree that NDMA can be a genotoxic – can be genotoxic, it can be a carcinogen, at least in specific -- specific conditions with regard to dose, animal species, et cetera.  And this is kind of a general but vague statement, "exposure should be reduced to the extent possible." That don't really tell me what standard should be reduced to.

Ex. 15 Guengerich Dep. 228:1–13.

Craig Lindsley, Ph.D.
Subject Area: Chemistry and Drug Metabolism



Q.   So, why is it important not to have NDMA in drug products, Doctor?

A.   Because it's a probable human carcinogen. And so, obviously, if something is a probable human carcinogen, you want to reduce it to the acceptable intake levels.

Ex. 20 Lindsley Dep. 95:13–19.

Bernard Olsen, Ph.D.
Subject Area: Analytical Chemistry



Q.   Are you aware back in 1978 IARC stated that N-nitrosodimethylamine should be regarded for practical purposes as if it were carcinogenic to humans?

A.   Again, if I could see that document, I could say whether that's what it said. But yeah, I -- my review of that document was to confirm the classification as a probable human carcinogen based on the animal data.

Ex. 26 Olsen Dep. 40:19–41:4.

Mary Beth Terry, Ph.D
Subject Area: Epidemiology





Q.   Is NDMA carcinogenic?

A.   NDMA, as classified by IARC, is classified as probably carcinogenic --carcinogenic. But again, is not classified as a human carcinogen or Class 1, Group 1, because the human data are lacking.

Ex. 28 Terry Dep. 255:18–24.

Timothy Wang, M.D.
Subject Area: Gastroenterology and Cancer Research.



Q.   Doctor, I'm gonna get to the ranitidine, we're only the first hour in. And I'm gonna to get to the valsartan epi. But for now my question is focused on NDMA purposely. My question is, have you done a comprehensive and systematic review of the medical literature to form an opinion as to whether NDMA meets the criteria of being a human carcinogen?

A.   Yeah, I think I've already answered that. And so my answer is, yes, I've reviewed that literature. I've reviewed the literature and I've -- I've given my conclusions already about NDMA and the fact that it is -- it is a possible human carcinogen and certainly it's a rat carcinogen for sure.

Ex. 30 Wang Dep. 69:5–24.

**Motion to Seal/Sealed and Exparte Filings.**

9:20-md-02924-RLR IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION

### U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered by Gilbert, Robert on 8/1/2022 at 10:33 PM EDT and filed on 8/1/2022

| | |
|---|---|
| **Case Name:** | IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION |
| **Case Number:** | 9:20-md-02924-RLR |
| **Filer:** | Zantac (Ranitidine) Products Liability Litigation |
| **Document Number:** | 5911 |

**Docket Text:**
**Plaintiff's SEALED MOTION** *Plaintiffs Opposition to Brand Defendants Motion for Summary Judgment* **by Zantac (Ranitidine) Products Liability Litigation. (Attachments: # (1) Appendix to Plaintiffs Opposition to Brand Defendants Motion for Summary Judgment) (Gilbert, Robert)**

**9:20-md-02924-RLR No electronic public notice will be sent because the case/entry is sealed.**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=8/1/2022] [FileNumber=22428860-0
] [66ebdeab272c9c88a4f3ddb1181a46777323f67921201a53488ff31fd6d005bdb6b
a42f0a151372b2ecbdf5b3eb1ff4b1bd73f4e2502b11dfba0b855cce6fa1c]]
**Document description:**Appendix to Plaintiffs Opposition to Brand Defendants Motion for Summary Judgment
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=8/1/2022] [FileNumber=22428860-1
] [4ddf8d3babf50681c5f8cfcb6fae75ea9febba07e3520e8029d858702214a43916e
1c5f03383916f590c1b7758db3d63e6544d44f43f8091241e08e97e63ca0b]]