# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

*CORRECTED*

For rules and forms visit
www.ca11.uscourts.gov

December 21, 2022

FILED BY_____AP_____D.C.

Dec 21, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  21-10305-JJ
Case Style: Arthur Cartee v. Boehringer Ingelheim, et al
District Court Docket No: 9:20-md-02924-RLR
Secondary Case Number: 9:20-cv-80555-RLR

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10305

_____

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGATION

_____

9:20-cv-80555
ARTHUR CARTEE,

Plaintiff-Appellant,

*versus*

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
PFIZER, INC.,
GLAXOSMITHKLINE LLC,

Defendants-Appellees.

ISSUED AS MANDATE:  12/21/2022

2                                                        21-10305

————————————

No. 21-10306

————————————

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGATION

————————————————————————————————————

9:20-cv-80512-RLR
MARILYN WILLIAMS,

                                        Plaintiff-Appellant,

*versus*

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM USA CORPORATION,
WALGREENS BOOT ALLIANCE, INC.,

                                        Defendants-Appellees.

————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-md-02924-RLR

————————————

21-10305                Opinion of the Court                3

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: November 7, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10305

_____

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGATION

_____

9:20-cv-80555
ARTHUR CARTEE,

Plaintiff-Appellant,

*versus*

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
PFIZER, INC.,
GLAXOSMITHKLINE LLC,

Defendants-Appellees.

2                    Opinion of the Court                    21-10305

_____

No. 21-10306

_____

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGATION

_____

9:20-cv-80512-RLR
MARILYN WILLIAMS,

Plaintiff-Appellant,

*versus*

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM USA CORPORATION,
WALGREENS BOOT ALLIANCE, INC.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-md-02924-RLR

_____

Before JORDAN and LAGOA, Circuit Judges.[*]

PER CURIAM:

The appellants, Arthur Cartee and Marilyn Williams, are two of the thousands of plaintiffs alleging personal injury claims in *In re Zantac (Ranitidine)*, MDL No. 2924. Because there is no final district court decision with respect to the amended complaints of Mr. Cartee and Ms. Williams, we dismiss their appeals for lack of appellate jurisdiction.

## I

Mr. Cartee and Ms. Williams both alleged that they took ranitidine products to treat mild heartburn. Starting in 2006, Mr. Cartee began taking both prescription and over-the-counter generic ranitidine. He developed prostate cancer in 2012. Ms. Williams started taking Zantac, an over-the-counter brand-name drug, in 2011. She was diagnosed with abdominal and ovarian cancer in 2016.

## A

On February 6, 2020, the U.S. Judicial Panel on Multidistrict Litigation created an MDL in the Southern District of Florida—MDL No. 2924—for purposes of centralizing pretrial proceedings in actions alleging that ranitidine, the active ingredient in Zantac,

---

[*] After oral argument, Judge Luck recused himself from this case. This opinion is therefore issued by a quorum. *See* 28 U.S.C. § 46(d); 11th Cir. R. 34-2.

breaks down to form an alleged carcinogen known as N-Nitrosodi-methylamine (NDMA).

After the MDL was created, Mr. Cartee and Ms. Williams each filed separate federal lawsuits—Mr. Cartee in Illinois and Ms. Williams in Alabama—alleging that ranitidine caused their cancers. Their actions were transferred to the MDL.

A few months after the transfers, the parties filed a proposed order coordinating the filings of master complaints. This order, known as Pretrial Order # 31, was adopted and entered by the district court.

The Order required the personal injury plaintiffs to "file a Master Personal Injury Complaint [or MPIC] on behalf of all Plaintiffs asserting personal injury claims in MDL No. 2924." MDL D.E. 876 at 2. The Order stated that "[a]ll claims pleaded in the [MPIC] will supersede and replace all claims pleaded in any complaint previously filed in or transferred to MDL No. 2924 . . . ." *Id.*

In addition, the Order directed the personal injury plaintiffs to attach a Master Short Form Complaint (or SFC) to serve as a template "for each individual case." *Id.* The individual plaintiffs were to provide certain information, such as their names, injuries, places of residence, and the defendants being sued. *See id.* The SFCs took the form of a worksheet that allowed each plaintiff to fill in the blanks as to who was being sued and to check boxes for which claims were being asserted. *See id.* The SFC also contained a clause indicating that it incorporated all allegations from the

MPIC. *See id.* The Order stated that, "[f]or each action directly filed in or transferred to MDL No. 2924 subject to this Order, the [MPIC] together with the Short Form Complaint shall be deemed the operative Complaint." *Id.* at 3.[1]

Shortly thereafter, the personal injury plaintiffs filed the MPIC. The MPIC named no individual plaintiffs. Instead, it incorporated them by reference. The MPIC states it "is not intended to consolidate for any purpose the separate claims of the individual Plaintiffs in this MDL," and that it "does not constitute waiver or dismissal of any actions or claims asserted in those individual actions." MDL D.E. 887 at 2. The MPIC refers to the plaintiffs' cases as individual "actions" throughout. *See id.* at ¶¶ 216, 434–35.

As directed, Mr. Cartee and Ms. Williams both filed short form complaints to go with the MPIC.

In his SFC, Mr. Cartee sued four brand-name manufacturers (Boehringer, GlaxoSmithKline, Sanofi, and Sanofi-Aventis) and

---

[1] MDL No. 2924 therefore "employe[d] the device of a master complaint, supplemented by individual short-form complaints that adopt the master complaint in whole or in part." *In re Zofran (Ondansetron) Products Liability Litig.*, MDL No. 1:15-md-2657-FDS, 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017). The master complaint contained allegations common to all plaintiffs asserting the same types of claims, while the short-form complaints contained allegations specific to each individual plaintiff. *See In re Taxotere (Docetexel) Prod. Liab. Litig.*, 995 F.3d 384, 387 (5th Cir. 2021). *See also* Manual for Complex Litigation (Fourth) § 40.52 (Fed. Jud. Ctr. 2004) (providing sample case management order governing mass tort claims using master and short-form complaints).

two retailers (Walgreens and Walmart).  He checked the boxes for
Counts I–XIII of the MPIC, leaving out only Count XIV (a survival
action) and Count XV (a wrongful death claim).  As discussed be-
low, he filed an amended SFC shortly thereafter, dropping the
Sanofi entities from the list of brand-name defendants from which
he sought to recover.

In her SFC, Ms. Williams sued two brand name manufactur-
ers (Boehringer Ingelheim Pharmaceuticals and Boehringer Ingel-
heim USA) and one retailer (Walgreens), and she indicated that any
distributors and repackagers she might sue were then unknown.
She checked the boxes for five different counts in the MPIC, includ-
ing those asserting claims for strict products liability, failure to
warn, and breaches of warranties.  Like Mr. Cartee, and as dis-
cussed below, Ms. Williams later amended her SFC.

## B

The district court dismissed the entire MPIC without preju-
dice as a shotgun pleading.  *See* MDL D.E. 2515 at 13.  In a separate
order, the court also held that any claims "based on an allegation
that a brand-name drug's FDA-approved formulation renders the
drug misbranded" were preempted by the Food, Drug, and Cos-
metics Act, 21 U.S.C. § 301 *et. seq.*, "because the drug's manufac-
turer cannot independently and lawfully change a drug formula-
tion that the FDA has approved."  MDL D.E. 2532 at 24.  The court
ordered the personal injury plaintiffs to omit misbranding allega-
tions if they amended the MPIC.  *Id.* at 25.

In another order, the district court ruled that any state without a supreme court decision supporting the plaintiffs' "innovator liability" theory of negligent misrepresentation (i.e., any state other than Massachusetts and California) would not recognize a duty by brand-name manufacturers to consumers of generic ranitidine. *See* MDL D.E. 2516 at 14.  The district court granted plaintiffs who brought such claims against defendants in courts outside of California and Massachusetts leave to amend "to plead a prima facie case of personal jurisdiction in California or Massachusetts." *Id.* at 8, 24. The district court did not dismiss any individual SFCs.

After the MPIC was dismissed and before any amended MPIC was filed, Mr. Cartee filed a second amended SFC.  This SFC only checked the box for Count VIII, asserting negligent misrepresentation, against three of the brand name manufacturers (Boehringer, GlaxoSmithKline, and Pfizer)  The second amended SFC eliminated all other claims and deleted the retailer defendants. It also added the following paragraph:

> Plaintiff is suing for injuries related only to generic consumption. Plaintiff's sole theory of liability is that Boehringer Ingelheim Pharmaceuticals, Inc., GlaxoSmithKline LLC, and Pfizer, Inc. negligently misrepresented the safety of ranitidine through their labeling of branded Zantac, that it was foreseeable that generic manufacturers of ranitidine would copy those misrepresentations, and that Plaintiff and his doctor relied on those misrepresentations in consuming and

prescribing the ranitidine that caused Plaintiff's can-
cer and other injuries.

Cartee D.E. 19 ¶ 13.  Significantly, Mr. Cartee's second amended
SFC still purported to incorporate the allegations in the then-dis-
missed MPIC.

On the same day that he filed the second amended SFC, and
without obtaining any further ruling from the district court, Mr.
Cartee filed a notice of appeal.  He cited the district court's innova-
tor liability claims order and stated that the order "was made final
with respect to Plaintiff Arthur Cartee on the 27th day of January,
2021, when Plaintiff amended his Short Form Complaint to elimi-
nate all claims for which repleading was permitted by the Court's
Orders."  Cartee D.E. 20.  In his appeal, Mr. Cartee seeks reversal
of the district court's rulings with respect to innovator liability un-
der Illinois law.

Ms. Williams pursued a similar strategy with one additional
wrinkle.  First, she filed an amended SFC after the dismissal of the
MPIC and before the filing of an amended MPIC.  In her amended
SFC, she only checked the box for the MPIC's strict products liabil-
ity design defect claim and eliminated any suggestion that she
might sue yet-unknown distributors and repackagers.  She also
added the following paragraph:

Plaintiff's sole theory of liability is that the ranitidine
she consumed was defectively designed under state
law, and that these same design defects made

> ranitidine dangerous to health when used as in-
> structed on the label such that it was misbranded un-
> der federal law. The ranitidine Plaintiff consumed
> was illegal to sell under federal law, and requires com-
> pensation under state design defect tort law.

Williams D.E. 12 at ¶ 13. Ms. Williams' amended SFC also incor-
porated the allegations in the then-dismissed MPIC.

On the same day that she filed her amended SFC, Ms. Wil-
liams voluntarily dismissed it without prejudice pursuant to Fed-
eral Rule of Civil Procedure 41(a)(1)(A)(i). Ms. Williams then filed
a notice of appeal, indicating that she wished to appeal the district
court's orders granting the defendants' motions to dismiss "on
preemption grounds," and asserted that "[t]hese [o]rders were
made final with respect to Plaintiff Marilyn Williams on the 27th
day of January, 2021, when Plaintiff amended her Short Form
Complaint to eliminate all claims for which repleading was permit-
ted by the Court's Orders." Williams D.E. 14 at 1. On appeal, Ms.
Williams argues that where a plaintiff pleads a design defect in a
drug based on post-approval scientific evidence never presented to
the FDA, that state-law claim is not preempted by the FDCA.[2]

After Mr. Cartee and Ms. Williams filed their notices of ap-
peal, the personal injury plaintiffs filed an amended MPIC. The

---

[2] The district court subsequently deconsolidated Ms. Williams' case from the
MDL proceeding in light of her notice of voluntary dismissal.

district court has subsequently granted Rule 54(b) judgments in favor of some defendants on some or all of the claims against them, including Walgreens—the retailer Ms. Williams is suing. A second amended MPIC remains pending against the brand-name defendants.

## II

Courts of appeals have subject-matter jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Under § 1291, "[a] 'final decision' is one by which a district court disassociates itself from a case." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 408 (2015) (internal quotation marks omitted). "[T]he statute's core application is to rulings that terminate an action." *Id.* at 409.

The defendants ask us to dismiss the appeals of Mr. Cartee and Ms. William for lack of appellate jurisdiction because the orders dismissing the MPIC—which they argue merged the personal injury cases against them—are non-final and non-appealable. Mr. Cartee and Ms. Williams respond that the personal injury plaintiffs' actions are merely consolidated and their individual rights to appeal are unaffected by the structure of this MDL.

## A

We conclude that we lack jurisdiction to consider Mr. Cartee's appeal. Simply stated, there is no final decision in the district court against Mr. Cartee.

Under § 1291, "an order that disposes of fewer than all of the claims against all of the parties is not immediately appealable." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1126 (11th Cir. 2018) (emphasis added). *See also* Fed. R. Civ. P. 54(b) (when an action involves multiple claims or parties, an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" ordinarily "does not end the action as to any of the claims or parties"). "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff seeking an extension." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719–20 (11th Cir. 2020). But if a plaintiff chooses to file an amended complaint, that party may not also appeal the dismissal order at that time. *See Fuller v. Carollo*, 977 F.3d 1012, 1014 (11th Cir. 2020) (dismissing appeal of qualified immunity order for lack of jurisdiction where the plaintiffs elected to file an amended complaint after the ruling); *Lobo v. Celebrity Cruises, Inc.*, 2009 WL 6353884, at *1 (11th Cir. Dec. 16, 2009) ("The district court's [dismissal order] is not final or immediately appealable because the plaintiffs elected to file an amended complaint prior to filing their . . . notice of appeal.").

As explained earlier, Mr. Cartee's operative complaint includes two documents: the MPIC and his SFC. After the MPIC was dismissed, Mr. Cartee filed a second amended SFC eliminating all but one of his claims and adding language clarifying the scope of

his action.  At the time he filed the second amended SFC, it pur-
ported to incorporate the allegations of the MPIC, but there was
no operative MPIC to incorporate because the MPIC had been dis-
missed.  The personal injury plaintiffs filed an amended MPIC,
which restructured the claims and eliminated certain factual allega-
tions, but they did so after Mr. Cartee filed a notice of appeal.  A
second amended MPIC remains pending in the district court today,
as does Mr. Cartee's second amended SFC.  Indeed, Mr. Cartee
could file a third amended SFC today incorporating the second
amended MPIC and selecting a new combination of claims to as-
sert.

An individual plaintiff like Mr. Cartee does not necessarily
need to wait for the resolution of the entire MDL to appeal.  The
district court could dismiss his amended SFC *sua sponte* (or on mo-
tion) in light of its rulings on the MPIC, but it has not done that.
The district court could also enter a Rule 54(b) judgment against
Mr. Cartee or in favor of the defendants Mr. Cartee is suing.  But it
has not done that either and Mr. Cartee has not asked for a such a
judgment.  *See Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298,
302 (5th Cir. 1978) ("But where the claim is complete in itself and
where the adjudication of that claim is also complete, Rule 54(b)
certification is the appropriate channel for assuring appealability.").

Mr. Cartee claims that his individual case is "conclusively
over."  Cartee Jurisdictional Response at 9.  He predicts that, if the
district court looked at his second amended SFC, it would
acknowledge that his remaining claim is due to be dismissed under

its rulings on innovator liability claims outside of Massachusetts and California. *See id.* at 8–9. That prediction may turn out to be correct, but the district court had no opportunity to enter any final judgment because Mr. Cartee filed a notice of appeal the very day he filed the second amended SFC and at a time when there was no MPIC to incorporate. He cannot unilaterally declare his second amended SFC dead when the district court has not done so, and he cannot deny that this SFC is still alive and pending in the district court. *See, e.g., Occidental Petroleum Corp.*, 577 F.2d at 302 ("[T]hese partial rulings on his complaint, considered together with the purported voluntary dismissal of [one paragraph of the complaint], do not amount to a termination of the litigation between the parties."). Because there is no final ruling against his operative complaint—the combination of the MPIC and his SFC—to put the last nail in the coffin of his action, we lack jurisdiction to consider Mr. Cartee's appeal.

## B

Ms. Williams' voluntary dismissal of her own amended SFC did not have the effect of creating a final judgment. We therefore also lack jurisdiction over her appeal.

A "Rule 41(a)(1) voluntary dismissal without prejudice is not ordinarily appealable." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 n.1 (11th Cir. 1999). *See also* 15A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3914.8 (2d ed. & April 2022 update) ("[A] voluntary dismissal without prejudice generally fails to achieve finality."). But "[o]ur precedent splinters in

multiple directions on whether voluntary dismissals without prejudice are final." *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1228 (11th Cir. 2020). *Compare, e.g., State Treasurer v. Barry*, 168 F.3d 8, 13 (11th Cir. 1999) ("[V]oluntary dismissals, granted without prejudice, are not final decisions themselves . . . ."), *with, e.g., CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1328–29 (11th Cir. 2000) (concluding that a voluntary dismissal without prejudice was final when "there was no attempt to manufacture jurisdiction"). In *Corley*, we held that "an order granting a motion to voluntarily dismiss the remainder of a complaint under Rule 41(a)(2) 'qualifies as a final judgment for purposes of appeal.'" 965 F.3d at 1231 (citations omitted).

In this case, however, Ms. Williams is seeking to appeal matters related to the very claim she voluntarily dismissed through Rule 41(a)(1). She wants to challenge the district court's preemption ruling regarding the "misbranding" theory of design defect liability. And she argues that the district court's preemption orders "terminated her entire action." Williams Jurisdictional Response at 6. But there is no final order from the district court on Ms. Williams' design defect claim. There is also no final order dismissing the design defect claims in the later-filed second amended MPIC. That MPIC remains pending in the district court and includes two design defect claims—one based on the drug's warnings and precautions and another based on allegedly improper expiration dates. *See* MDL D.E. 3887 at 230–312.

Like Mr. Cartee, Ms. Williams filed an amended SFC incorporating allegations from the MPIC which had been dismissed. She then dismissed that very same amended SFC without any further action or acknowledgement from the district court. Because Ms. Williams' amended SFC was pending when she voluntarily dismissed it and because there was no operative MPIC in place to combine with the amended SFC, there was necessarily no final judgment against Ms. Williams. Ms. Williams' subjective belief that the district court would dismiss her amended SFC—which merely checks the box for the dismissed MPIC's design defect claim and purports to base itself solely on the MPIC's misbranding theory—does not make a final judgment. We find it hard to classify Ms. Williams' voluntary dismissal of her amended SFC as anything other than an attempt to "manufacture jurisdiction." *See CSX Transp., Inc.*, 235 F.3d at 1328.

Ms. Williams also argues that her Rule 41 dismissal rendered the district court's preemption rulings final as against her because the district court placed "stringent conditions" on her ability to replead her only remaining theory at that time—a preempted design defect claim based on the "misbranding" theory of liability. *See* Williams Jurisdictional Response at 6–9. But the district court's order did not place conditions on Ms. Williams' filing of an amended SFC. It placed conditions only on the MPIC, which was in fact later amended and refiled. And, like Mr. Cartee, Ms. Williams—who voluntarily dismissed her amended SFC without prejudice—could

file a second amended SFC today, checking the boxes for a different line-up of claims.

As the *Corley* concurrence explained, "Rule 41(a) is a poor mechanism to accelerate appellate review." *Corley*, 965 F.3d at 1236 (Pryor, C.J., concurring). It "contemplates the voluntary dismissal of 'an action,' which, we have explained, refers to 'the whole case' instead of particular claims." *Id.* (internal citations omitted). *See also Perry v. Schumacher Grp. of Louisiana*, 891 F.3d 954, 956 (11th Cir. 2018) ("Rule 41(a)(1), according to its plain text, permits voluntary dismissals only of entire 'actions,' not claims. Thus, the invalid joint stipulation did not divest the District Court of jurisdiction over the case."). All of that is particularly true in the context of an MDL like this one where the parties have filed an operative master complaint. The rulings that Ms. Williams seeks to appeal impact not only her claims, but also the claims of many of her fellow personal injury plaintiffs.

Ms. Williams could seek and possibly obtain a tailored Rule 54(b) judgment to break away from those other plaintiffs with the district court's permission, but she has instead acted unilaterally to dismiss her own amended SFC. A Rule 41(a) voluntarily dismissal cannot manufacture finality under such circumstances. *See, e.g.*, *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1715 (2017) ("Plaintiffs in putative class actions cannot transform a tentative interlocutory order . . . into a final judgment within the meaning of § 1291 simply by dismissing their claims with prejudice—subject, no less, to the

Case 9:20-md-02924-RLR   Document 6146   Entered on FLSD Docket 12/22/2022   Page 21 of 24
USCA11 Case: 21-10305   Document: 86-1   Date Filed: 11/07/2022   Page: 17 of 18

21-10305            Opinion of the Court                    17

right to 'revive' those claims if the denial of class certification is reversed on appeal[.]"); *Perry*, 891 F.3d at 958 ("The existence of [other] procedural vehicles [like a Rule 15 amendment or a Rule 54(b) partial judgment] confirms that the purpose of Rule 41(a) is altogether different from that sought by the parties in this case.").

After these appeals were filed, the district court entered a final judgment in favor of all the retailer defendants, including Walgreens, under Rule 54(b). *See* MDL D.E. 4665 at 1 (entering a final judgment "on behalf of all Retailer/Pharmacy . . . Defendants . . . against any Plaintiff who has entered a claim against [them] as to Counts I through VI and Counts VIII through XII of the Master Personal Injury Complaint, . . . all previously dismissed by the Court. . ."). Ms. Williams argues that "[e]ven presuming a monolithic MDL action, [that] Rule 54(b) certification has rendered the district court's preemption order final against Walgreens." Williams Jurisdictional Response at 9.

We disagree. It is true that "a subsequent Rule 54(b) certification cures a premature notice of appeal from a non-final order dismissing claims or parties." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. Of Georgia*, 633 F.3d 1297, 1306 (11th Cir. 2011). But that does not mean that Ms. Williams' appeal against Walgreens has been perfected. This later Rule 54(b) judgment does not change the fact that Ms. Williams voluntarily dismissed her amended SFC (which could not be partnered with any viable and pending MPIC) against Walgreens. It does nothing to revive the amended SFC that Ms. Williams voluntarily dismissed.

### III

Mr. Cartee and Ms. Williams argue that their actions are more or less dead given the district court's rulings dismissing certain claims from the MPIC. But "[t]here's a big difference between mostly dead and all dead. . . . Mostly dead is slightly alive." *The Princess Bride* (Act III Communications 1987). It may be that the claims remaining in their amended SFCs—once paired with a viable and pending MPIC—have little hope of surviving given the district court's rulings. But at the moment there is no final ruling putting their operative complaints—the combination of the MPIC and their individual SFCs—to rest. For that reason, we lack jurisdiction to consider their appeals. The defendants' motions to dismiss these appeals are granted.

**APPEALS DISMISSED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 07, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-10305-JJ   ; 21-10306 -JJ
Case Style:  Arthur Cartee v. Boehringer Ingelheim, et al
District Court Docket No:  9:20-md-02924-RLR
Secondary Case Number:  9:20-cv-80555-RLR

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website. Enclosed
is a copy of the court's decision filed today in this appeal. Judgment has this day been entered
pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP
41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, <u>each party to bear own costs</u>.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Tiffany A. Tucker, JJ</u> at <u>(404)335-6193</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion