# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 21, 2022

**FILED BY_____AP_____D.C.**

**Dec 21, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  21-10335-JJ
Case Style: Plumbers & Pipefitters Local v. GlaxoSmithKline LLC, et al
District Court Docket No: 9:20-md-02924-RLR

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10335

_____

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGAION

_____

PLUMBERS & PIPEFITTERS LOCAL UNION 630
WELFARE FUND,

Plaintiff-Appellant,

*versus*

GLAXOSMITHKLINE LLC,
GLAXOSMITHKLINE (AMERICA) INC.,
GLAXOSMITHKLINE PLC,
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM CORPORATION, et. al.,

ISSUED AS MANDATE:  12/21/2022

2                                                          21-10335

                                        Defendants-Appellees,

PAR PHARMACEUTICALS, INC.,

                                                    Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-md-02924-RLR

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: November 7, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10335

_____

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY
LITIGAION

_____

____

PLUMBERS & PIPEFITTERS LOCAL UNION 630
WELFARE FUND,

Plaintiff-Appellant,

*versus*

GLAXOSMITHKLINE LLC,
GLAXOSMITHKLINE (AMERICA) INC.,
GLAXOSMITHKLINE PLC,
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,

2                    Opinion of the Court                    21-10335

BOEHRINGER INGELHEIM CORPORATION, et. al.,

                                                    Defendants-Appellees,

PAR PHARMACEUTICALS, INC.,

                                                           Defendant.

                    ———————————————

                    Appeal from the United States District Court
                       for the Southern District of Florida
                       D.C. Docket No. 9:20-md-02924-RLR

                    ———————————————

Before JORDAN and LAGOA, Circuit Judges.[*]

PER CURIAM:

        This appeal involves the dismissal of one of the master com-
plaints in *In re Zantac (Ranitidine)*, MDL No. 2924.  That complaint
was described below as the Consolidated Third-Party Payor Class
Complaint, and we will refer to it as the CTPPCC here.

———————————

[*] After oral argument, Judge Luck recused himself from this case.  This opinion
is therefore issued by a quorum.  *See* 28 U.S.C. § 46(d); 11th Cir. R. 34-2.

## I

Three plaintiffs—Plumbers & Pipefitters Local Union 630, the NECA-IBEW Welfare Trust Fund, and the Indiana Laborers Welfare Fund—filed the CTPPCC.

Asserting a number of claims, the CTPPCC plaintiffs sued a number of defendants on behalf of numerous purported nation-wide and state classes. They alleged that they provide eligible members with health and welfare benefits, including the payment of and reimbursement for prescription drugs on behalf of their members (and their dependents). Those members filled prescriptions requiring reimbursement for Zantac and ranitidine products in several states.

The CTPPCC divided the defendants into two main groups: (a) the brand-name manufacturer defendants (who manufactured and sold Zantac); and (b) the generic manufacturer defendants (who manufactured and sold generic versions of Zantac containing ranitidine as an active ingredient). The CTPPCC contained nine claims: Count 1, a claim under the Racketeer Influence and Corrupt Organizations (RICO) Act, was asserted against the brand-name manufacturer defendants on behalf of nationwide and state classes. Counts 2–9 (claims for breach of express warranties, breach of implied warranties, violations of the Magnuson-Moss Warranty Act, fraud, negligent misrepresentation and omission, violations of state consumer protection laws, unjust enrichment, and

negligence) were asserted against the generic manufacturer defendants and GlaxoSmithKline on behalf of a nationwide class.[1]

A number of defendants moved to dismiss the CTPPCC. One of the grounds they asserted for dismissal was that the CTPPCC constituted an impermissible shotgun pleading under Eleventh Circuit law.  The district court agreed with the defendants on this point, ruled that the CTPPCC was indeed a shotgun pleading, and dismissed it without prejudice and with leave to amend. *See* D.E. 2515 at 13 (summary of ruling: "The Court concludes that the Class Complaints [including the CTPPCC] are both impermissible shotgun pleadings. . . . [T]he Class Complaints are dismissed without prejudice and with leave to amend."); D.E. 2515 at 54 (dismissing the CTPPCC without prejudice and with leave to amend).

With respect to its shotgun pleading ruling, the district court explained that the CTPPCC, like other class complaints filed in the MDL, suffered from two problems.  First, it lumped 67 related and unrelated defendants across two groups, thereby creating confusion and failing to provide a factual basis to distinguish the conduct of individual defendants.  *See id.* at 22.  Second, it incorporated 519 background and factual paragraphs into every count, forcing the defendants to sift out irrelevant matters and making it virtually impossible to know which factual allegations were intended to support which claims for relief.  *See id.* at 22–23.  The court noted that

---

[1] Given the procedural basis for our decision, we dispense with further details concerning the claims asserted by the CTPPCC plaintiffs.

its ruling might lead to longer class complaints but said that it could not permit pleadings that did not comply with Rule 8, provided inadequate notice, and unduly burdened the parties. *See id.* at 23. It expressed confidence that the plaintiffs, including the CTPPCC plaintiffs, could replead with precision given its rulings and the benefit of some discovery since the filing of the class complaints. *See id.*

The district court explained that it could not definitively rule on some of the standing questions because of the shotgun pleading problems presented by the CTPPCC. *See id.* at 23–24. Nevertheless, it resolved some of the standing issues. For example, it ruled that the named class plaintiffs—including the CTPPCC plaintiffs—lacked standing to assert claims on behalf of putative class members whose own claims arose under the laws of other states. *See id.* at 36. On this ground, the district court dismissed without prejudice Counts 2, 3, and 5–9 of the CTPPCC to the extent they were brought under the laws of certain states. *See id.* at 37–38.[2]

In separate orders, the district court granted the motions of several groups of defendants to dismiss certain claims (including those asserted in the CTPPCC) on the basis of federal preemption. Some of the dismissals on this ground were with prejudice, but

---

[2] These jurisdictions were Alaska, Arkansas, California, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Kansas, Massachusetts, New Hampshire, New York, North Dakota, Oklahoma, Puerto Rico, Rhode Island, South Dakota, Vermont, Virginia, Washington, and West Virginia.

others were without prejudice and with leave to amend.  *See generally* D.E. 2512, 2513, 2516, 2532.

All three of the CTPPCC plaintiffs declined to amend their complaint.  *See* D.E. 2694 at 2.  Of the three, only Plumbers filed a notice of appeal.[3]

## II

More than three weeks before Plumbers filed its initial brief, the appellees (who were the defendants below) moved to dismiss the appeal for lack of jurisdiction.  Focusing on the orders and issues identified in the notice of appeal, the appellees argued that the appeal was moot because Plumbers apparently did not seek to appeal one of the district court's independent grounds for dismissal of the CTPPCC—that it constituted a shotgun pleading.  Because that ground was apparently not going to be challenged, the appellees asserted that nothing that this court could do on appeal could revive the CTPPCC.

---

[3] Plumbers admits that its notice of appeal erred in listing the district court's order on innovator liability claims, D.E. 2516, rather than the orders dismissing certain claims on preemption and standing grounds, D.E. 2515.  *See* Appellants' Resp. to Mot. to Dismiss at 8 n.2.  But Plumbers is correct that, under our precedent, "an appeal is not lost" if such a mistake does not "mislead or prejudice the respondent."  *Nichols v. Ala. State Bar.*, 815 F.3d 726, 730 (11th Cir. 2016) (citations omitted).  Here, Plumbers sufficiently indicated that it wished to appeal the district court's rulings on "'preemption and standing grounds.'"

In its initial brief, Plumbers challenged the dismissal of the CTPPCC only with respect to the district court's standing and preemption rulings. *See* Appellants' Br. at iii–iv (table of contents), 1–2 (statement of the issues), 23–26 (summary of the argument), 27–41 (argument on standing), 41–57 (argument on preemption). Nowhere in that brief did Plumbers contest the district court's ruling that the CTPPCC constituted a shotgun pleading that was subject to dismissal.

On the same day that it filed its initial brief, Plumbers responded to the appellees' motion to dismiss the appeal for lack of jurisdiction. Plumbers explained that it had chosen not to amend the CTPPCC as permitted by the district court, and as a result under Eleventh Circuit law the dismissal without prejudice became final at the end of the amendment period, thereby permitting it to appeal. *See, e.g., Schuurman v. Motor Vessel Betty K V*, 798 F.2d 42, 445 (11th Cir. 1986). Plumbers also maintained that the shotgun pleading ruling made no difference to appealability because it was barred from amending certain claims (e.g., those that relied on a misbranding theory). The shotgun pleading ruling, Plumbers argued, only constrained the manner in which it was to replead any theories left open by the preemption rulings. And because it had chosen not to amend the CTPPCC, it would have no claims to allege in an amended complaint that followed the court's shotgun pleading instructions. Finally, Plumbers disagreed with the appellees' mootness argument. According to Plumbers, the appeal was not moot because if we reversed the standing and preemption

rulings, it could pursue those theories on remand and then would follow the district court's instructions as to how to remedy the shotgun pleading problems.

## III

A threshold issue is whether Plumbers has standing to pursue its claims. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986). Article III standing has three components: (1) the plaintiff must have "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element" of standing. *Id.* (internal quotation marks omitted).

## A

Here, the first element of standing is generally undisputed. Plumbers has alleged that the manufacturers of Zantac and other ranitidine products caused them economic injury "because [it] made payments or reimbursements for a product that was economically worthless." D.E. 888 at ¶ 14. Its alleged economic injury satisfies Article III's injury-in-fact requirement. *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury.").

We turn, then, to traceability. None of the defendants here deny that they manufactured ranitidine products, but the CTPPCC plaintiffs originally brought suit against dozens of defendants.

Plumbers listed 50 of those defendants in its notice of appeal, and later clarified in its reply brief that it had "abandoned every claim against any brand-name defendant," Appellant's Reply Br. at 4, so we granted a joint motion to dismiss those defendants from this appeal.  Of the remaining defendants, Plumbers has only alleged "exemplar payments for generic ranitidine" for, at most, 14 of the 22 named generic manufacturer defendants.[4]

Plumbers had to sufficiently allege how its injuries are traceable to the conduct of each defendant.  *See Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019) (concluding that, because some plaintiffs had failed to allege whether or not they donated to a political candidate before or after certain false statements were made, they had failed to allege that their injuries were fairly

---

[4] Those defendants are Par Pharmaceutical Inc.; Amneal Pharmaceuticals LLC; Amneal Pharmaceuticals of New York, LLC; Teva Pharmaceuticals U.S.A., Inc.; Glenmark Pharmaceuticals, Inc., USA; Glenmark Pharmaceuticals Ltd.; Wockhardt USA LLC; Wockhardt, Ltd; Sandoz Inc.; Lannett Co., Inc.; Nostrum Laboratories, Inc.; Strides Pharma, Inc.; Dr. Reddy's Laboratories Inc.; and Dr. Reddy's Laboratories, Ltd.  The defendants originally argued that Plumbers only alleged representative reimbursements for 11 entities. That is true, but some of those allegations could implicate multiple companies.  For example, Plumbers alleges that it reimbursed purchases for products made by "Wockhardt" but it is unclear if that implicates both Wockhardt USA LLC and Wockhardt, Ltd.  *See* D.E. 888 at ¶ 219.  These two entities are subsidiaries of Wockhardt, Ltd., and the CTPPCC plaintiffs referred to them collectively as "Wockhardt" when describing the generic manufacturer defendants in their complaint.  *See id.* at ¶¶ 112–16.  And at least one of the alleged reimbursements is to a company called "Akorn Hi Tech," which is not a defendant in this litigation.  *See id.* at ¶ 219.

traceable to those false statements).  Because Plumbers only alleged injuries traceable to 14 defendants, it only has standing to pursue its claims against those 14.  Plumbers cannot haul into court parties that did not allegedly cause harm, even on behalf of unnamed class members.  *See Stevens v. Osuna*, 877 F.3d 1293, 1311 (11th Cir. 2017) (affirming dismissal of claims against a government official because the plaintiff had failed to allege sufficient facts to demonstrate a constitutional violation by that official).  The district court seemed to acknowledge this problem in its order but did not clearly rule on the question.

Given Plumbers' continued pursuit of its claims, we make clear that we affirm the district court to the extent that it dismissed for lack of standing Plumbers' claims against defendants who it did not allege caused it financial (or other) injury.  As to the 14 defendants who did manufacture products allegedly purchased by Plumbers' members (and who were then reimbursed by Plumbers), they do not dispute that such an economic injury is fairly traceable to them as the manufacturers of those drugs.

Plumbers seeks redress for its injuries under two federal laws and dozens of state laws.  We assume those claims are meritorious when assessing Article III standing.  *See Culverhouse v. Paulson & Co., Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (citing *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)).  A favorable decision on one of Plumbers' claims—all of which stem from the same pocketbook injury—"would likely redress that injury by awarding [Plumbers] damages against" the responsible defendants.

*See Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1047 (11th Cir. 2020) (citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012)). And because Plumbers has standing on at least one of its claims, this "is sufficient to satisfy Article III's case-or-controversy requirement" with respect to its appeal. *Cf. Rumsfeld v. F.A.I.R., Inc.*, 547 U.S. 47, 52 n.2 (2006) (explaining that the presence of one party with standing is sufficient to establish a justiciable matter on appeal).

## B

Plumbers challenges another one of the district court's standing rulings on appeal: the dismissal of "claims on behalf of class members whose claims arise under the laws of states in which no named [CTPPCC plaintiff] reside[s] or purchased ranitidine products." D.E. 2515 at 34. Plumbers argues that its ability to raise these claims for putative class members is one of representative capacity under Federal Rule of Civil Procedure 23—not one of constitutional significance under Article III. We agree.

"[S]tanding is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006). A plaintiff "must demonstrate standing separately for each form of relief sought," and "standing as to one claim [does not] suffice for all claims arising from the same 'nucleus of operative fact.'" *Id.* at 352. "Standing requirements," moreover, "apply with no less force in the class action context." *Fox*, 977 F.3d at 1046 (citing *Lewis v. Casey*, 518 U.S. 343, 357–58, 358 n.6 (1996)).

Article III has "two related, but distinct" requirements for class representative standing. *See id.* (citing *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008)). First, the class representative must satisfy the "individual standing prerequisites" of Article III. *See Mills*, 511 F.3d at 1307. Second, the class representative "must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (quoting *Prado-Steinman ex. Rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Plumbers alleged that the unnamed class members all suffered similar "economic losses" from the defendants' "breaches of express and implied warranties, wrongful acts, fraudulent misrepresentations and omissions, and negligence." D.E. 888 at ¶ 491. Recognizing that some of the class members' claims may fall under the laws of other states, Plumbers makes certain representations about the similarities of some of its claims from state to state. For Counts 2, 3, 7, and 9, Plumbers alleges that the laws of those states are substantially similar to each other, or that the allegedly injurious conduct falls within the meaning of the laws of all relevant jurisdictions. With respect to the claims for common law fraud (Count 5) and negligence (Count 6), Plumbers does not identify any particular jurisdiction as the source of law underlying its claims. Plumbers' lack of specificity on this choice-of-law question may present a merits problem, but we are unconvinced that it constitutes an Article III standing problem.

The question the defendants raise—whether Plumbers itself has causes of action under the dozens of state statutes it invokes—is not a standing question at all. It is, instead, a Rule 12(b)(6) merits issue. Four of our sister circuits have reached similar conclusions. *See Morrison v. YTB International, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93, 96 (2d Cir. 2018); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021).

In *Morrison* and *Langan*, the Seventh and Second Circuits held that whether class members' claims fall under another state's laws is a Rule 23 matter and not a standing issue. In *Morrison*, the Seventh Circuit rejected the defendants' argument that plaintiffs residing outside the state of Illinois lacked standing to pursue a class claim under the Illinois Consumer Fraud Act, explaining that "this application of choice-of-law principles has nothing to do with standing, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be." 649 F.3d at 536. In *Langan*, the Second Circuit applied *Morrison* to a case more similar to this one and concluded that "as long as the named plaintiffs ha[d] standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under

Rule 23(3)(b), . . . not a question of 'adjudicatory competence' un-
der Article III." 897 F.3d at 93 (citations omitted).

The First and Fourth Circuits have been slightly more exact-
ing. The First Circuit agreed with the Seventh and Second Circuits
in *In re Asacol*, but only so long as "the named plaintiffs parallel
those of the putative class members in the sense that, assuming a
proper class is certified, success on the claim under one state's law
will more or less dictate success under another state's law." 907
F.3d at 49. Finally, the Fourth Circuit explained in *Actelion Phar-
maceuticals* that a plaintiff may have failed to state a claim under a
state statute's requirements by failing to reside in the state whose
law it invoked, but "[n]onetheless, the claims that the plaintiffs
made on behalf of class members who purchased [the drug at issue]
in States other than [the states in which the plaintiffs resided] need
not be stricken or disregarded;" those counts "define[d] class mem-
bers' claims" and "may be considered in determining whether the
plaintiffs' claims" satisfy the typicality and commonality require-
ments of Rule 23. *See* 995 F.3d at 134.[5]

---

[5] The Fourth Circuit reasoned that the defendants' arguments against standing
sounded more in what it called "statutory standing," *Actelion Pharmaceuti-
cals*, 995 F.3d at 134, or what the Supreme Court has characterized as an in-
quiry into the nature of a litigant's cause of action to sue under a statute, which
is "not derived from Article III" at all. *See Lexmark Intern, Inc. v. Static Con-
trol Components, Inc.*, 572 U.S. 118, 126 (2014). According to the Supreme
Court, these labels cover "three broad principles: the general prohibition on a
litigant's raising another person's legal rights, the rule barring adjudication of
generalized grievances more appropriately addressed in the representative

In sum, all circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III.  A leading class action treatise is of the same view.  *See* William B. Rubenstein, 1 Newberg on Class Actions § 2:6 (5th ed. & Dec. 2021 update) ("[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class.").

Our precedents do not dictate otherwise.  In *Prado*, we explained that "it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." 221 F.3d at 1279.  Accordingly, we remanded and directed the district court to "ensure that at least one named representative of each class or subclass ha[d] standing for

---

branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 126 (citation omitted).  In *Actelion Pharmaceuticals*, the Fourth Circuit held that "the plaintiffs did not allege facts to show that they satisfied the statutory requirements of States other than Maryland, California, and Florida" and consequently could "not seek relief for their own injuries under those States' statutes." 995 F.3d at 134 (citing *CGM, LLC v. BellSouth Telecomms, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.")).

each proffered class or subclass claim." *Id.* at 1280. But we did so in the context of a Rule 23(f) interlocutory appeal and through the lens of Rule 23(a). *See id.* at 1282–83. Nothing in *Prado* suggests an Article III limitation on a class representative's ability to represent unnamed class members based on the laws of states where their similar injuries took place. To the contrary, *Prado* noted the "fluid nature of class certification rulings" and explained that "extensive interlocutory review" of the standing objections seemed "particularly inappropriate" given that the "factual record is not fully developed" and "at worst several new named representatives would have to be added to the class or several of the subclaims would have to be amended or dropped." *Id.* at 1278.

In *Mills*, we similarly "stress[ed] that the fact that the [named plaintiffs] ha[d] standing as putative class representatives [was] an issue distinct from whether they qualif[ied] under Rule 23 to represent the class." 511 F.3d at 1307. So too here. Plumbers has standing to bring some of its claims, but whether it is ultimately an appropriate class representative for individuals whose claims may arise under the laws of other states is a question falling under Rules 12(b)(6) or 23 and one that has yet to be argued, much less decided.

Finally, in *Fox* we reasoned that the plaintiff had standing to sue Ritz-Carlton for the conduct of restaurants he had never visited because "Fox and the class members have suffered the same economic injury from Ritz-Carlton's gratuity and sales tax practices across its properties in Florida," and "[w]hile those injuries may have occurred on different days at different restaurants, those facts

do not change what injuries Fox alleged those class members suffered." 977 F.3d at 1047. The same is true in this case. The fact that the unnamed class members' injuries may have occurred in other states does not change things so long as the alleged injuries and interests are substantially the same.

In sum, we conclude that Plumbers had Article III standing to bring its claims against the defendants who allegedly sold ranitidine products to its members and for which it provided exemplar reimbursements. For class representation purposes, "the claims that the plaintiffs made on behalf of class members who [reimbursed purchases of ranitidine products in other states] need not be stricken or disregarded," as those claims "may be considered" when determining the appropriateness of class certification under Rule 23. *See Actelion Pharmaceuticals Ltd.*, 995 F.3d at 134. The district court erred in ruling otherwise.

## IV

That said, the district court's ruling that the CTPPCC constituted a shotgun pleading was an independent basis for dismissal. To recap, the district court concluded that the CTPPCC lumped over 60 related and unrelated defendants across two groups, thereby creating confusion and failing to provide a factual basis for distinguishing the conduct of individual defendants. Moreover, each count of the CTPPCC incorporated the same preceding 519 background and factual paragraphs, making it virtually impossible to know which factual allegations are intended to support which claim for relief.

As noted, Plumbers has not challenged the shotgun pleading ruling in any way on appeal.  And that is a problem, because "[t]o obtain reversal of a district court judgment that is based on multiple, independent grounds an appellant must convince us that every stated ground for the judgment against him is incorrect.  When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).  By not attacking the shotgun pleading ruling, Plumbers has left us with no choice but to affirm the dismissal of the CTPPCC.

Plumbers cannot avoid the effect of the principle articulated in *Sapuppo* by arguing that the shotgun pleading concerns do not matter because it is only seeking to appeal the standing and preemption rulings and because it did not have the opportunity to fix the shogun pleading problems. And it also cannot get around *Sapuppo* by arguing it will remedy the shotgun pleading problems on remand if we reverse the standing and preemption rulings. There is no futility exception to *Sapuppo*.  Had Plumbers wished to preserve its ability to amend its complaint after an appeal, it should have fixed the shotgun pleading problems prior to appealing.

 The appellees argue in their motion to dismiss that Plumbers' failure to challenge the shotgun pleading ruling makes the appeal moot, but we disagree.  An appeal must be dismissed as moot

if an "event occur[ring] while [the] appeal is pending . . . makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). Typically, that event is external to the parties' appellate litigation conduct. *See, e.g., United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (juvenile's appeal of supervision condition requiring registration as a sex offender became moot when the order of supervision expired).

We recognize that some of our sister circuits have couched the failure to appeal all alternative grounds in mootness terms. *See, e.g., R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 443 n.7 (6th Cir. 2005); *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53–54 (1st Cir. 2004). But the better approach, and the one we have followed in cases like *Sapuppo*, is to treat that failure as requiring an affirmance on the merits. *See also Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993); *Williams v. Leach*, 938 F.2d 769, 772–73 (7th Cir. 1991); 5 C.J.S. Appeal and Error § 839 (March 2022 update).

Mootness, according to the Supreme Court, is an Article III concern, *see, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997), and we have never suggested that an appellant's failure to challenge all alternative grounds on appeal leaves us without a justiciable case or controversy. "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Service Employees*, 567 U.S. 298, 307–08 (2012) (internal quotation marks and citation omitted). The appellees' argument "confuses mootness with the merits"

because the "prospects of success are . . . not pertinent to the moot-ness inquiry." *Chafin v. Chafin*, 568 U.S. 165, 174 (2013). We there-fore conclude that Plumbers' failure to challenge the district court's shotgun pleading ruling does not deprive us of Article III jurisdic-tion.

## IV

Because Plumbers has allegedly been injured by some of the defendants and those injuries are redressable by a favorable deci-sion, it has Article III standing to pursue some of its claims. Its abil-ity (or inability) to sue under the laws of states where it never re-imbursed purchases of ranitidine by unnamed class members does not implicate Article III standing, and the district court's conclusion to the contrary was mistaken. But Plumbers was put on notice, before it filed its initial brief, that a failure to challenge the district court's shotgun pleading ruling could be problematic. By not con-testing that ruling, Plumbers has given us no choice but to affirm the dismissal of the CTPPCC.

**DISMISSED IN PART, REVERSED IN PART, and AFFIRMED IN PART.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 07, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-10335-JJ
Case Style:  Plumbers & Pipefitters Local v. GlaxoSmithKline LLC, et al
District Court Docket No:  9:20-md-02924-RLR

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website. Enclosed
is a copy of the court's decision filed today in this appeal. Judgment has this day been entered
pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP
41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion