UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)  MDL No. 2924
PRODUCTS LIABILITY  20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO: ALL CASES**

**BRAND DEFENDANTS' OPPOSITION TO MDL PLAINTIFFS' LEADERSHIP'S *EXPEDITED* MOTION TO PERMIT MULTIPLAINTIFF COMPLAINTS FOR REGISTRY CLAIMANTS WHO ARE CERTIFIED FEDERAL PARTICIPANTS OR, IN THE ALTERNATIVE, EXTEND THE REGISTRY PENDING FINAL RESOLUTION OF APPEAL (DE 6133)**

PTO 31 unambiguously states that there are to be "No Multi-Plaintiff Complaints" in this MDL and that "[e]ach Plaintiff must have an individual complaint on file." DE 1496 at 5. Upon entering the Registry, each Registry Claimant "agreed to be bound to the terms of this Court's Pretrial Orders," including PTO 31 and its requirement to file individual short form complaints. DE 5348 at 2. Plaintiffs' Leadership now requests a significant amendment to the very pretrial orders that they negotiated and that the Court entered at the parties' joint request.

Despite PTO 31's requirement to file individual short form complaints and Plaintiffs' prior position that they "are not part of one monolithic action" and have "individual actions that retain their separate identities," (DE 3863 at 2), Plaintiffs' Leadership now requests leave to file "a single multi-plaintiff complaint" on behalf of "some or all Registry Claimants" that each Plaintiffs' firm represents. DE 6133 ("Motion") at 4. That request is inconsistent with the governing PTOs, including PTO 15's directive that when the Registry expires after the Court's *Daubert* ruling on general causation, "Claimants shall elect whether to file their claims." DE 547 at 12, 15.

1

If Registry Claimants wish to continue to press their claims for alleged cancer injuries—for which each would undoubtedly seek millions of dollars in damages—then they are required to pay the filing fees that every other federal litigant is required to pay. Plaintiffs' Leadership's Motion should be denied.

## ARGUMENT

Plaintiffs' Leadership does not claim lack of awareness or even surprise that they are required to file individual short form complaints for every Registry Claimant who wishes to appeal the Court's *Daubert* ruling. Nor could they—that process was contemplated and required by the very pretrial orders that Plaintiffs' Leadership themselves negotiated in this MDL. Instead, Plaintiffs' Leadership seeks to undo those orders based on claims of equity, efficiency, and convenience. Each of these arguments is not only unavailing but also makes clear that Plaintiffs' Leadership intends to attempt to continue to litigate these claims while avoiding the filing fees this Court requires to do so.

*First*, Plaintiffs' Leadership complains that PTO 31's individual filing requirement would have the "perverse effect of requiring every Registry Claimant[] . . . to file an individual short-form complaint *after* the Court's *Daubert* and summary judgment order." Mot. at 3 (emphasis in original). But that is precisely the ***intended*** effect of PTOs 15 and 31, and a core benefit these Claimants obtained from the Registry. As PTO 15 explains, the entire Registry process was "created with the intent to trigger expiration of the Registry and associated tolling upon entry of an Order ruling upon *Daubert* motions directed to general causation." DE 547 at 12. To achieve that stated purpose, PTO 15 notifies the parties that the Registry "will expire thirty (30) days after the Court issues a decision on *Daubert* motions directed to the issue of general causation" and that

2

"***[a]s of the date the Registry expires, Claimants shall elect whether to file their claims***." *Id.* at 12, 15 (emphasis added).

As Plaintiffs' Leadership would have it, PTO 15's requirement that Claimants "elect whether to file their claims" upon the expiration of the Registry is entirely one-sided and enforceable only insofar as all claims survived Defendants' *Daubert* motions. But the negotiated orders state no such limitation. Unless Plaintiffs' Leadership prevailed on every single one of their Designated Cancers at the *Daubert* stage, some or all Registry Claimants were always going to be required to elect whether they wanted to individually file their cases (and incur the associated filing fees) to pursue an appeal. At no point did Plaintiffs' Leadership ever suggest, as they do now, that unfiled Registry Claimants should be able to file a multi-plaintiff complaint in order to pursue an appeal should the Court grant a *Daubert* motion directed at one or more of the Designated Cancers.[1] Their apparent change of heart cannot be rectified at this stage of the litigation, more than two years after the parties' extensive negotiations and the Court's entry of these long-standing pretrial orders.

***Second,*** Plaintiffs' Leadership attempts to cast PTO 31's individual filing requirements as "inequitable" by stating that the aggregate cost—should every single Registry Claimant elect to pursue their claims—will approach $20 million. *See* Mot. at 3. But the aggregate cost of filing all 50,000 separate Registry Claimant's claims is irrelevant. An individual Registry Claimant is responsible for no more or no less than the cost to file her or his individual case in this MDL. That $400 individual filing fee is no less equitable to a Registry Claimant now than it was to the 2,000

---

[1] Indeed, Plaintiffs' Leadership contemplated that some Designated Cancers would ***not*** survive *Daubert* and negotiated separately to continue tolling for any Designated Cancer type as to which "the MDL Court denies Brand Defendants' *Daubert* motions." Feb. 28, 2022 Ltr. Agreement at ¶ 3(a).

3

litigants in this MDL who filed their actions and paid this same fee. As is universally the case in mass tort proceedings like this one, Defendants are certain that counsel for each Registry Claimant would advance the filing fees, so no individual would be required to make any payments. Thus, this Motion is not about any financial impact on individual claimants, but rather on their lawyers. To the extent that is not true, and any individual Registry Claimant is unable to pay the $400 filing fee, that Registry Claimant can utilize the Court's procedures to apply to proceed *in forma pauperis*. *See* Off. of the Clerk, S.D. Fla., Civil Filing Requirements, 4C.

*Third*, Plaintiffs' Leadership's purported concern for the "burdens" faced by the Clerk's office in processing the individual complaints, Mot. at 3, falls flat. Defendants of course understand the work required to process a large number of Registry Claimants' individual complaints, but matters of coordination and logistics can separately be discussed with the parties, the Court, and the Court's staff to alleviate those concerns. The Court and its staff have spent countless hours on these cases since this MDL was created in February 2020, and the Court is entitled to collect the fees for all the claims it has effectively managed during that time—not some small fraction thereof that Plaintiffs' Leadership or any other firm chose to file prior to *Daubert*.

*Fourth*, Plaintiffs' Leadership's suggestion that multi-plaintiff complaints were previously endorsed by the Court to facilitate efficient appeals is wrong. *See* Mot. at 4. As the Court is well-aware, following the Court's preemption rulings with respect to Generic, Retailer, and Distributor Defendants, those Defendants moved for entry of Rule 54(b) judgments in cases involving mixed branded and generic product use. Plaintiffs opposed that motion on the grounds that it would require them to incur significant ***appellate*** filing fees because each individual plaintiff with a mixed-use case needed to appeal the Court's preemption ruling as to the Generics, Retailers, and Distributors. *See* DE 4092 at 8. In its Order granting the Rule 54(b) judgments, the Court

4

specifically addressed the excessive *appellate* filing fees about which Plaintiffs complained. The Court observed this was "a ramification that flows from the way the Plaintiffs have prosecuted their appeals" and that there was no barrier to Plaintiffs jointly appealing (as the Generic Defendants had proposed). DE 4595 at 37. The Court did not address the district court filing fees at issue here, nor did the Court imply that it intended to undo the requirements of PTOs 15 and 31.[2]

*Finally*, Plaintiffs' Leadership's additional and/or alternative request that the Court modify "the date of the close of the Registry," Mot. at 4, should also be rejected. As PTO 15 explained, the Registry process was "created with the intent to trigger expiration of the Registry and associated tolling upon entry of an Order ruling upon *Daubert* motions directed to general causation." DE 547 at 12. Defendants do not agree to extend tolling any further than they already have, now that the *Daubert* proceedings have concluded. The Court has explained to Plaintiffs' Leadership many times that tolling must be agreed to by Defendants and cannot be imposed by court order. To the extent Plaintiffs' Leadership's concern is that Registry Claimants will not have the full 90 days after expiration of the Registry to file their short form complaints because the Court may enter a final judgment implementing its *Daubert* ruling in the interim, Defendants believe the Court can readily address that issue by delaying entry of a final judgment, if needed.[3]

---

[2] Here too, Defendants take no issue with—and in fact would encourage—Registry Claimants who choose to file complaints taking a joint appeal from the Court's Order to facilitate an efficient appellate process and thereby avoid significant *appellate* filing fees.

[3] The Court's *Daubert* ruling was issued on December 6, 2022. Under PTO 15, the Registry expires 30 days following the *Daubert* ruling, and the tolling for Registry Claimants granted by PTO 15 expires 90 days from the expiration of the Registry. DE 547 at 11-12. April 5, 2023 therefore represents the date by which Registry Claimants' PTO 15 tolling would expire.

## **CONCLUSION**

For the foregoing reasons, Registry Claimants' Motion should be denied.

Dated:  December 28, 2022                                   Respectfully submitted,

**Lead Counsel**:

> */s/ Mark Cheffo*
> Mark S. Cheffo
> DECHERT LLP
> 1095 Avenue of the Americas
> New York, NY 10036
> Tel: (212) 698-3500
> Fax: (212) 698-3599
> mark.cheffo@dechert.com
>
> *Counsel for Defendant GlaxoSmithKline LLC*
>
>
> */s/ Andrew T. Bayman*
>
> Andrew T. Bayman
> KING & SPALDING LLP
> 1180 Peachtree Street, NE, Suite 1600
> Atlanta, GA 30309-3521
> Tel: (404) 572-4600
> Fax: (404) 572-5100
> abayman@kslaw.com
>
> *Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*
>
>
> */s/ Anand Agneshwar*
> Anand Agneshwar
> ARNOLD & PORTER
> KAYE SCHOLER LLP
> 250 West 55th Street
> New York, NY 10019
> Tel: (212) 836-8000
> Fax: (212) 836-8689
> anand.agneshwar@arnoldporter.com

*Counsel for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

*/s/ Joseph G. Petrosinelli*

Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on December 28, 2022 using the Court's CM/ECF system, which will provide automatic notification to all counsel of record.

*/s/ Mark Cheffo*
Mark S. Cheffo