# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC<br>(RANITIDINE)<br>PRODUCTS LIABILITY<br>LITIGATION | MDL NO. 2924<br>20-MD-2924<br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE<br>BRUCE E. REINHART |

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

**BRAND DEFENDANTS' REPLY IN SUPPORT OF EXPEDITED MOTION TO STRIKE PLAINTIFFS' EXPERT RAMIN (RON) NAJAFI, PH.D.[1]**

---

[1] Brand Defendants' Reply is filed under seal pursuant to the Order at ECF No. 5684.

Plaintiffs cannot sidestep two undisputed facts: (1) Dr. Najafi will not confirm that the data produced to Defendants is the authentic Emery testing data he considered for his opinions; and (2) Dr. Najafi—like Defendants—is not able to link the test results in his report to any data or chromatogram he produced. Thus, Defendants cannot test the reliability of the methodology Najafi used to produce the conclusions in his report. Rather, the Defendants and the Court, are left with 133 pages of *ipse dixit*. Without access to the data on which Dr. Najafi's opinion rests, Brand Defendants cannot fully evaluate his opinion and address his conclusions. Plaintiffs' Opposition contains no evidence to the contrary. Like Dr. Najafi, Plaintiffs offer only unsupported argument. Plaintiffs' and Dr. Najafi's failure to comply with Rule 26 has unfairly prejudiced Brand Defendants. As a matter of law, the appropriate remedy at this stage—after five months of delay, service of Defendants' expert reports, and filing of Fed. R. Evid. 702 motions—is to strike Dr. Najafi's opinions, and those based on them. *See, e.g.*, *Cedant v. United States*, No. 19-24877-CIV, 2021 WL 2895714, at *5 (S.D. Fla. July 9, 2021) (finding violation of Rule 26(a)(2)(B) harmful); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 2010 WL 1837724, at *3 (S.D. Fla. May 3, 2010) (applying Fed. R. Civ. P. 37(c)(1)).

## ARGUMENT

### I. PLAINTIFFS HAVE NOT PRODUCED DATA THAT DEFENDANTS CAN EVALUATE OR THAT DR. NAJAFI WILL AUTHENTICATE.

Dr. Najafi offers opinions about levels of NMDA in ranitidine samples based upon chromatography testing conducted at Emery Pharma. *See* **Ex. R** (Najafi Rep.), at ¶ 9. His report discusses – and he considered – the chromatography testing conducted on behalf of Plaintiffs for the MDL, as well as testing that Emery Pharma conducted to inform its 2020 Citizen Petition. *Id.* at 14–18. But, contrary to Plaintiffs' representations, Dr. Najafi's January 24, 2022 report is virtually bereft of the facts and chromatography testing data he considered. Plaintiffs' description of the report as containing "appendices listing every testing result considered and relied on by Dr. Najafi, including detailed information regarding the testing methodology and protocols used by Emery Pharma" is incorrect. The data and documentation served with the report is incomplete. Appendix A included method descriptions and "Validation Summary Table[s]" for only a subset of the analyses described in the report. Appendix B included two static PDF images of spreadsheets purporting to be NDMA baseline testing data. No data beyond the summary or average data in the body of the report was provided for any of the stability ("consumer experience") or simulated

1

gastric fluid testing when Dr. Najafi's report was served.[2] Indeed, the report states numerous times that the results are being presented in summary form. *See, e.g., id.* at ¶¶ 28, 156, 167, and 188.

Ultimately, after multiple requests and meet-and-confers, Plaintiffs' counsel appears to have recognized that Dr. Najafi's report and supporting documentation did not disclose the facts and data required pursuant to Rule 26(a)(2)(B). As a result, they made multiple piecemeal productions in the months after the January disclosure deadline, culminating in a hard drive produced in May 2022 that was described as containing "all of the native data from Emery's testing of ranitidine on behalf of the MDL." But the data on the hard drive would not allow independent review of Dr. Najafi's opinions even if it were complete (which it is not).[3]

Plaintiffs repeatedly state in their Opposition that they have produced all the Emery data. But, even if that were true, the data Plaintiffs produced cannot be used to evaluate the test results and opinions in Dr. Najafi's report for two reasons. First, the native data produced does not include or reflect what Dr. Najafi actually considered: data for all the chromatograms as processed and interpreted by Emery analysts. Plaintiffs argue that some data would never be processed or interpreted, but they do not explain how some data appears in Dr. Najafi's report if it were never completely processed, nor do they explain how to link the native data to the results in Dr. Najafi's report (discussed further in Section II). Second, when asked about the data he produced, or chromatograms generated from that data, Dr. Najafi refused to authenticate it, making the data

---

[2] On March 23, 2022, two months later, Plaintiffs amended Appendix B to include results from some of the stability tests.

[3] The hard drive produced in May 2022 (after the incomplete hard drive produced in March) contained only 73.3 GB of data. That is only **5%** of the 1.5 TB of ranitidine testing data that both Dr. Najafi and Plaintiffs' counsel have consistently represented is in Emery's possession for the past several months. Only on the eve of Brand Defendants filing of this Motion did Plaintiffs' counsel claim that, in fact, 73.3 GB is all of Emery's ranitidine testing data. Plaintiffs offer no support for this claim, citing only to a June 10, 2022 e-mail to Defendants following the parties' meet-and-confer about the filing of this Motion. Plaintiffs' argument is inconsistent not only with counsel's own prior representations, but with the record evidence: Dr. Najafi's stated in both his March 28, 2022 Rebuttal Report and in his sworn testimony that Emery has either 1.5 TB or *terabytes* of ranitidine data. *See* **Ex. M** at 9 (4/22/2022 E-mail from Plaintiffs' counsel representing that "[w]ith the size of the Emery data, actually 1TB of storage is needed."); **Ex. D** (3/28/22 Najafi Rebuttal Rep.) at 6–7 (claiming that "Defendants have been provided with . . . over 1.5 TB of data," that "[i]n the course of this research study, Emery Pharma collected many terabytes of data," and that Emery's "entire trove" of testing data had been provided to Defendants); and **Ex. P** (Najafi Dep.) at 54:22–58:1 (claiming that 1.5 TB of ranitidine data had been provided to Defendants); 64:17–68:2 (same); 386:23-387:15 (speculating that Emery's 1.5 TB of ranitidine testing data had been "compressed" into the 73.3 GB on the second hard drive).

2

useless as a basis to evaluate or challenge his opinions. Even after providing additional and late productions, Plaintiffs have not produced data that Dr. Najafi will confirm is the actual data he considered.

Faced with an ever-evolving landscape of productions and representations regarding the data Dr. Najafi reviewed, Defendants have undertaken extraordinary efforts to make sense of what they have been given, including purchasing additional software necessary to read the raw data provided on different hard drives.[4]

Plaintiffs Opposition does not justify their failure to produce and identify the data Dr. Najafi considered. First, Plaintiffs introduce Mr. Patrick Steffes, B.Sc., who claims that Defendants' experts could have rerun the analyses of Emery's raw data for themselves. But as Mr. Steffes acknowledges: "The analyst by using the original native data can evaluate and interpret the data to arrive at a result. **Trained analysts may have different subjective interpretation of the data which can result in variations of the interpreted results from one user to another**." *See* **Pls.' Ex. H** (Steffes Decl.) at ¶ 7 (emphasis added). This demonstrates the importance of capturing the "snapshot in time" that would reflect the subjective interpretation of the data performed by Emery analysts that Dr. Najafi reviewed. New analyses performed by defense experts would not reflect the interpretive work of the Emery analysts, nor the data as considered by Dr. Najafi.

Second, Plaintiffs assert that "Emery does not create, consider or rely on PDFs in its work as a full-service contract research laboratory." (Dkt. 5750 at 4). But during third-party discovery, Emery and its client, Valisure LLC ("Valisure"), produced reports that Emery generated before Dr. Najafi was retained as an expert in this litigation. Not only were these reports produced as Adobe PDFs, but they also contain chromatograms that Emery was able to, and did, generate

---

[4] Contrary to the Plaintiffs' assertions, Agilent software is not an industry-standard software package, but rather is an adjunct to instrumentation sold by Agilent. As stated on the company's website: "The MassHunter software suite supports efficient data acquisition, qualitative data analysis, quantitative data analysis, and reporting **for Agilent GC/MS and LC/MS systems**." *See* https://www.agilent.com/en/product/software-informatics/mass-spectrometry-software (last accessed July 2, 2022) (emphasis added). Agilent is only one of numerous suppliers of such instrumentation. Each company utilizes its own proprietary software for data analysis. Thus, it is not surprising that the defense experts utilize systems other than Agilent in their professional capacities and would find the Emery hard drives to be inaccessible. *See* Mass Spectrometry Market Insights, Trends | Industry Report, 2025 | MarketsandMarkets™, available at https://www.marketsandmarkets.com/ResearchInsight/mass-spectrometry-market.asp (last accessed July 2, 2022) (Thermo Fisher and SCIEX are leaders in the mass spectrometry market).

3

and print during its normal course of business. *See* **Ex. Y** (Emery PDF reports with chromatograms). Moreover, preparing reports, similar to what Emery prepares in its non-litigation work is standard in the industry, as demonstrated by the fact that the Agilent MassHunter software includes built-in reporting functions and templates to capture and maintain the data as analyzed by the user in a way that can be accessed, viewed, and evaluated by other scientists or laboratory clients. A short video on the Agilent website describes this function and the ease of use.[5]

But even if Plaintiffs' rationalizations are taken as true, they cannot cure the foundational issue that Dr. Najafi will not admit that the data he and Plaintiffs produced to Defendants represents a true and correct copy of the Emery testing data he considered. When presented with the data from the hard drive at his deposition, Dr. Najafi would not agree that was provided was Emery's ranitidine testing data. *Even when he was shown the contents of the hard drive itself, plugged into a computer, using the Agilent MassHunter software familiar to him*, Dr. Najafi would neither confirm that what he was shown was Emery's data, nor answer questions about it. Instead, he speculated that the data shown to him – from the May 2022 hard drive data produced by Plaintiffs – may have been "modified" or "corrupted through software manipulations and whatnot[.]" *See* **Ex. P** (Najafi Dep.) at 103:14–107:3.[6]

Recognizing the obvious problems with the data production, Dr. Najafi has twice proposed permitting Defendants to view the data on Emery's own computers. Indeed, during his deposition, Dr. Najafi stated repeatedly that the only way he could be sure the data was actually the Emery data was to look at it on site at Emery's laboratory, and actually extended an invitation to Defendants to travel to Emery to view the data on his computer. *Id.* at 57:24–58:13, 95:6–13, 96:19–23. That invitation was swiftly rescinded by Plaintiffs' counsel. *Id.* at 97:14–103:2.

---

[5] *See* https://www.agilent.com/en/products/software-informatics/masshunter-suite/pdf-report-builder-existing-templates-column-edits (last accessed July 2, 2022).

[6] In response to Plaintiffs' criticisms, Dr. Benotti re-reviewed the exports and confirmed that the chromatograms shown to Dr. Najafi in deposition and those analyzed by Mr. Steffes are the same as the ones in the Agilent software. *See* **Ex. Z** (7/2/22 Benotti Decl.). In his 7/2/22 Declaration, Dr. Benotti displays the chromatograms from the PDF reports next to the chromatograms as they appear in the MassHunter platform. As is obvious from the side-by-side comparison, both chromatograms are identical. In addition, Dr. Benotti has confirmed that newer versions of the MassHunter software do not alter the results generated in an earlier version. Therefore, as long as Emery saved the results in the batch after processing them, a subsequent analyst will see the same results and integrations, without changing the results in any way. *Id.*

4

Regardless, a visit to Emery is not a viable cure at this point: Defendants have already served their own expert reports and filed their Rule 702 motions (set for hearing on September 20, 2022). Re-starting expert discovery at this stage would prejudice Defendants and upend the schedule set by this Court. Absent a production of data that reflects what Dr. Najafi actually considered and that Dr. Najafi will authenticate, Plaintiffs have not complied with Rule 26, and that non-compliance has prevented Defendants from fully evaluating the Emery testing and Dr. Najafi's opinions.

## II. THE PRODUCED DATA CANNOT BE MATCHED WITH THE TESTING ON WHICH DR. NAJAFI RELIES.

Even if the data produced by Dr. Najafi and Plaintiffs had been produced in a form that corresponded to what Dr. Najafi actually considered, and even if Dr. Najafi had authenticated it, the production would still be inadequate because the results that Dr. Najafi included in his report and in his Appendix B cannot be linked to any particular tests or data included in the hard drive provided to Defendants. Dr. Najafi was asked at his deposition how one would find the data related to test results identified in Appendix B to his report within the hard drive produced to Defendants. He could not give any explanation. *See* **Pls.' Ex. I** (Najafi Dep.) at 103:20–107:3. Dr. Najafi was also asked how one could match test results in Appendix B to his report with information in lab notebooks produced by Plaintiffs. Again, he could not do so. *See id*. at 396:3–400:20 (Dr. Najafi testified "…we would need to correspond that Sample Number 1 [in an Emery laboratory notebook] with a lot number [in Appendix B], and that's the data that's missing[.]"). Nor could he explain why test results for what appear to be the same samples have different values in Appendix B than they do in Emery laboratory notebooks. *Id.*[7] *See also id.* at 400:22–403:24.

It thus makes no difference whether, as Plaintiffs claim, the data on the hard drive consists of "neatly organized [files] in folder structures with the folders being named by testing initiation date and/or test descriptor" or that "each of the hard drives contained uniquely identified batch folders for the various testing that correspond to the NDMA levels discussed in Dr. Najafi's expert report and/or detailed in Appendix B." Pls.' Opp. at 17. If Dr. Najafi himself cannot confirm what data within the documents and information Plaintiffs produced supported specific test results in his report and appendices, Defendants certainly cannot do so.

Plaintiffs attempt to paper over this fundamental failure by arguing that the exclusion of an expert's opinion because of an undifferentiated "document dump" in the *Cedant* case is

---

[7] *See* **Ex. AA** (Demonstrative – Lack of Traceability of Najafi Testing Data).

distinguishable because "Dr. Najafi has not 'pointed' to the entirety of his files" as the basis for his opinions. Pls.' Opp. at 17. But that is precisely what he has done: pointing to a mass of information on a hard drive that neither he nor Defendants can trace to a given test result in his report. *See* **Ex. P** (Najafi Dep.) at 106:21–107:3. As in *Cedant*, the manner in which Dr. Najafi and Plaintiffs produced Emery's data makes it impossible for Defendants to determine what files Dr. Najafi considered or relied upon. Defendants are "left to guess at" which data file relates to which chromatography results in his report and his Appendix B. *Cedant v. United States*, No. 19-24877-CIV, 2021 WL 2895714, at *5 (S.D. Fla. July 9, 2021) (finding such a "document dump" contrary to Rule 26(a)(2)(B)'s requirements and not harmless).

Dr. Najafi's report violates the disclosure requirements of Rule 26(a). Despite Plaintiffs' arguments, the record evidence shows that neither Dr. Najafi nor Plaintiffs have —even at this stage—made a complete disclosure and production of the most critical data Dr. Najafi considered and relied upon.[8]

## III.  DR. NAJAFI'S REPORT AND OPINIONS MUST BE STRUCK BECAUSE PLAINTIFFS' FAILURE TO PRODUCE THE DATA REQUIRED BY RULE 26(a) IS NEITHER SUBSTANTIALLY JUSTIFIED NOR HARMLESS.

Plaintiffs make no attempt to justify their failure to make a timely and complete production of the data underlying Dr. Najafi's opinions. The closest Plaintiffs come to suggesting that their failure was substantially justified or harmless is an argument that, by at least May 2022, Defendants finally had some data, and that no trial date has been set. First, as described above, even Plaintiffs' four-month-late hard drive production in May 2022 is deficient, particularly given Dr. Najafi's refusal to authenticate the data and his inability to trace it to the chromatography test results in his report and appendices. Second, while no trial date has been set, this Court set a clear schedule for general causation expert discovery: Rule 702 motions have already been filed and a hearing on those motions is fast approaching. At this late date, the damage has been done:

---

[8] Plaintiffs cite cases standing for the proposition that an expert need not produce with their report all working notes or recordings. *See* Pls.' Opp. at 9 (citing *Kleiman v. Wright*, No. 18:CV-80176, 2020 WL 6729362 (S.D. Fla. Nov. 16, 2020), *Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21 (1st Cir. 2004), *Helmert v. Butterball, LLC*, No. 4:08CV00342, 2011 WL 3157180 (E.D. Ark. July 27, 2011), *Levaquin Prods. Liab. LItig.*, No. 08-5743, 2012 WL 3568887 (D. Minn. Aug. 17, 2012); *Flebotte v. Dow Jones & Co.*, No. Civ.A. 97-30117, 2000 WL 35539238 (D. Mass. Dec. 6, 2000)). None of those cases address the issue at hand. Brand Defendants are not seeking working notes or recordings; rather, they are seeking—and are entitled to—production of the chromatography data Dr. Najafi actually considered in reporting on levels of NDMA in various samples.

Defendants were already required to serve their expert reports, depose Dr. Najafi, and prepare motions to exclude his testimony and the testimony of other experts who rely upon his data, all without a complete production. The significance of Plaintiffs' failure to produce all the data came into sharp focus during Dr. Najafi's deposition, when he refused to confirm that the data Plaintiffs produced was actually Emery's data and refused to answer questions about the chromatograms Defendants were able to generate from that data.

Federal Rule of Civil Procedure 37 provides "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 2010 WL 1837724, at *3 (S.D. Fla. May 3, 2010) (quotation omitted). As the non-compliant party, Plaintiffs bear the burden to demonstrate that their and Dr. Najafi's actions were either substantially justified or harmless. *See also Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 812 (11th Cir. 2017) ("The plaintiffs . . . have not carried their burden of showing a substantial justification for their tardiness" to avoid sanctions under Rule 37(c)); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("[The offending party] asserts that the burden of proving harm is on the party seeking sanctions; we disagree."). Plaintiffs have not met that burden.

To the extent Plaintiffs wished to argue for a lesser sanction than striking Dr. Najafi's report and opinion, it was incumbent on them to do so. Absent such an argument, the Court need not consider a lesser sanction. *See Rodriguez v. Walmart Stores E., L.P.*, No. 2:0-CV-474-SPC-NPM, 2021 WL 4750087, at *7 (M.D. Fla. Oct, 12, 2021) (because offending party "never [moved for lesser sanctions] it is unnecessary to even consider lesser sanctions").[9]

---

[9] *See also Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018) ("The text of Rule 37(c)(1) provides that where a party violates the disclosure requirements in Rule 26(a), an alternative sanction to exclusion may be imposed by the court '*on motion.*' [The offending party] did not make a motion or even argue for a lesser sanction before the district court . . . The district court did not abuse its discretion by no imposing a lesser sanction when [the offending party] never requested one."); *Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021) ("[A] noncompliant party must 'avail himself of the opportunity to seek a lesser sanction' by formally requesting one from the district court.")

7

## **CONCLUSION**

Because Plaintiffs' failure is not substantially justified and is not harmless, the Court should strike Dr. Najafi as an expert pursuant to Rule 37(c)(1).

Dated: July 5, 2022                    Respectfully Submitted,

                                         By: */s/ Andrew T. Bayman*
                                              Andrew T. Bayman
                                              KING & SPALDING LLP
                                              1180 Peachtree Street, NE, Suite 1600
                                              Atlanta, GA 30309-3521
                                              Tel: (404) 572-4600
                                              Fax: (404) 572-5100
                                              abayman@kslaw.com

                                              *Attorney for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

                                         By: */s/ Mark Cheffo*
                                              Mark S. Cheffo
                                              DECHERT LLP
                                              1095 Avenue of the Americas
                                              New York, NY 10036
                                              Tel: (212) 698-3500
                                              Fax: (212) 698-3599
                                              mark.cheffo@dechert.com

                                              *Attorneys for Defendant GlaxoSmithKline LLC*

                                         By: */s/ Joseph G. Petrosinelli*
                                              Joseph G. Petrosinelli
                                              WILLIAMS & CONNOLLY LLP
                                              725 Twelfth Street, N.W.
                                              Washington, DC 20005
                                              Tel: (202) 434-5000
                                              Fax: (202) 434-5029
                                              jpetrosinelli@wc.com

                                              *Counsel for Defendant Pfizer Inc.*

                                         By: */s/ Anand Agneshwar*
                                              Anand Agneshwar
                                              ARNOLD & PORTNER KAYE SCHOLER LLP

8

          250 West 55th Street New York, NY 10019
          Tel: (212) 836-8000
          Fax:  (212) 836-8689
          anand.agneshwar@arnoldporter.com

*Attorneys for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2022, I electronically filed the foregoing **BRAND DEFENDANTS' REPLY IN SUPPORT OF EXPEDITED MOTION TO STRIKE PLAINTIFFS' EXPERT RAMIN (RON) NAJAFI, PH.D.** through the CM/ECF system, which will provide automatic notification to all CM/ECF participants.

/s/ Patrick Oot
Patrick Oot