**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION**

**MDL NO. 2924**
**20-MD-2924**

**JUDGE ROBIN L. ROSENBERG**
**MAGISTRATE JUDGE BRUCE E. REINHART**

**_____________________________________/**

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO EXCLUDE**
**INADMISSIBLE OPINIONS OF DR. BERNARD OLSEN[1]**

---

[1] This Motion is filed under seal pursuant to the Order at D.E. 5684.

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................2

I. Defendants concede that cGMP and GLP standards do not apply to Emery Pharma's evaluative testing and, instead, seek to revise Dr. Olsen's opinion to advance a new (and still baseless) charge that Emery Pharma's testing applied no standards at all. ....................................................2

II. Defendants' post hoc justifications cannot rehabilitate Dr. Olsen's failure to review the data he professed to analyze against Emery Pharma's results. ....................4

III. Dr. Najafi did validate his results and it is not his burden to disprove Dr. Olsen's untested alternative hypothesis; that is Dr. Olsen's burden, which he failed to meet. ....................................................6

IV. Dr. Olsen should not be permitted to testify that he has "concerns" with the Emery's testing without explaining his basis. ....................................................9

CONCLUSION ....................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Campo v. United States, Case N*o. 18-80946-Civ-Brannon, 2020 WL 774286 (S.D. Fla. Jan. 13, 2020) ........ 3

*Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296 (11th Cir. 2014) ........ 5

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092 (11th Cir. 2005) ........ 3

*In re 3M Combat Arms Earplug Prod. Liab. Litig., No. 3:*19md2885, 2021 WL 765019 (N.D. Fla. Feb. 28, 2021) ........ 10

*In re Zyprexa Prods. Liab. Litig.*, 489 Fed. Supp. 2d 230 (E.D.N.Y. 2007) ........ 8

*Funderbunk v. South Carolina Elec. & Gas Co.*, 395 Fed. Supp. 3d 695 (D.S.C. 2019) ........ 8

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC,* No. 13-CIV-80371, 2015 WL 11251759 (S.D. Fla. July 6, 2015) ........ 2

*Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003) ........ 4

*Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-CIV, 2022 WL 1447733 (S.D. Fla. May 9, 2022) ........ 2

*United States v. Ancient Coin Collectors Guild*, 899 F.3d 295 (4th Cir. 2018) ........ 8

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ........ 5

*Wreal LLC v. Amazon.com*, Inc., 2016 WL 8793317 (S.D. Fla. Jan. 7, 2016) ........ 8

**Rules & Regulations**

Fed. R. Evid. 702 ........ 8

# INTRODUCTION

A rebuttal expert is permitted to criticize, not propagandize. Too often Dr. Olsen adopts the role of an advocate and forgets his job as a scientist, rendering his opinions inadmissible. He chastises Dr. Najafi for failing to follow standards that all agree are inapplicable to this testing. He labels Dr. Najafi's results as aberrant when compared to data from other testing, but he has not considered all comparable tests and has not reviewed the data of the tests he did consider. He theorizes that Dr. Najafi's testing itself could be causing NDMA formation but has no evidence for this theory nor any response to Dr. Najafi's validation methods which confirm the testing works as designed. And he professes concerns with Dr. Najafi's testing but does not explain his basis for these concerns beyond an unspecified (though ardent) belief that Dr. Najafi must be wrong.

Defendants' responses only underscore these problems. Defendants transform Dr. Olsen's discussion of cGMP and GLP standards into a ventriloquist act, arguing that it is Dr. Najafi—not Dr. Olsen—who is confusing the jury by bringing up these standards. Never mind that Dr. Najafi was clear they do not apply. Next, Defendants try to supplement Dr. Olsen's flawed data analysis via their brief. Yet they continue to omit data Dr. Olsen ignored in criticizing Dr. Najafi's results. Where Dr. Olsen's baseless "confounding" hypothesis is concerned, Defendants forget the validation that Dr. Najafi conducted and then shift the blame to him for failing to anticipate—and disprove—Dr. Olsen's hypothesis. But it is not Dr. Najafi's job to design experiments to negate Dr. Olsen's conjecture and, regardless, the validation performed on the testing shows his invented theory is implausible. Finally, Defendants ostensibly hope to make use of Dr. Olsen's unspecified "concerns" with Dr. Najafi's analysis, complaining that it is Plaintiffs who have not been specific enough in identifying the ambiguities. Pay no mind to the many examples Plaintiffs identify and the numerous attempts they made to obtain substantiation.

As explained herein, Defendants' arguments only double down on Dr. Olsen's flawed testimony. All experts, even rebuttal experts, must confine their opinions to those rooted in sound methodology and actual evidence. Dr. Olsen repeatedly failed to hew to those standards, and in those instances, his testimony should be excluded.

## ARGUMENT

### I. Defendants concede that cGMP and GLP standards do not apply to Emery Pharma's evaluative testing and, instead, seek to revise Dr. Olsen's opinion to advance a new (and still baseless) charge that Emery Pharma's testing applied no standards at all.

In their opposition, Defendants seek to revise Dr. Olsen's testimony, contending that he did not criticize Dr. Najafi for failing to follow cGMP and GLP standards. Rather, according to Defendants, Dr. Olsen was simply "calling out" Dr. Najafi for "implying" that he followed those standards when he did not. *See* Opp. at 5–6. Defendants' response only confirms that the Court should exclude this testimony.

Despite their attempted change in tack, Defendants cannot escape that Dr. Olsen criticized Dr. Najafi for failing to comply with cGMP and GLP standards when conducting the evaluative testing at issue.[2, 3] Defendants tacitly concede in their opposition that the cGMP and GLP standards do not apply. As they must. Dr. Olsen admitted in his deposition that those standards are inapplicable to the testing Dr. Najafi performed here. *See* Ex. 37 Olsen Dep. Tr. 154:11–155:11. It is well established that expert testimony on inapplicable standards should be excluded, and Defendants do not contend otherwise. *See* Opp. at 7, citing *Romano v. John Hancock Life Ins. Co. (USA)*, 2022 WL 1447733 (S.D. Fla. May 9, 2022); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC,* 2015 WL 11251759, at *6–7 (S.D. Fla. July 6, 2015)).

Faced with a clear admission and unavoidable caselaw, Defendants attempt a two-step feint. First, they contend that Dr. Olsen was merely "calling out" Dr. Najafi for attempting to mislead the jury by implying that, because his lab is qualified to perform cGMP and GLP work, the evaluative testing here must have been pursuant to those standards. Opp. at 6. But Dr. Najafi never claimed, by implication or otherwise, that his testing was performed under cGMP or GLP standards. *See* Ex. 13 Najafi Rep. at 3–4 (referencing cGMP three times, and GLP one time, as background for the sort of work he had done in the past). Indeed, why would it be? All agree those standards do not apply to post-marketing testing of this type. *See* Def. Ex. 3 Najafi Rebuttal Rep.

---

[2] *See, e.g.*, Ex. 14 Olsen Rep. at 30 ("…his documentation does not satisfy basic requirements for either GMP or GLP."); Ex. 37 Olsen Dep. Tr. 154:1–7 ("Well, what's puzzling is that in I think all of Dr. Najafi's or Emery's communications they lead with a claim that Emery is GMP, GLP certified. Then they go on to describe results that apparently are not following their —any GMP, GLP practices that they might have. So I would find that misleading from the start.").

[3] Unless otherwise indicated, all exhibits cited herein are to those attached to the Declaration of Tracy Finken filed on July 6, 2022.

at 1–5 (attached to Canaan Dec.); Ex. 37 Olsen Dep. Tr. 154:11–155:19. Dr. Olsen is seeking to refute a contention that Dr. Najafi never made. There is a term for this: a strawman argument. Such rhetoric is dubious coming for an advocate—it is inadmissible coming from an expert. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (affirming exclusion of expert whose proffered testimony was "nothing more than what lawyers for the parties can argue in closing arguments.") (citation omitted). Likewise, Dr. Olsen is not permitted to accuse Dr. Najafi of attempting to mislead the jury with a supposed false implication; he has no foundation to opine on another expert's intentions. *See Campo v. United States*, Case No. 18-80946-Civ-Brannon, 2020 WL 774286, *2–3 (S.D. Fla. Jan. 13, 2020) (excluding witness from offering opinions that a plaintiff was overstating). Even Defendants' recast explanation for Dr. Olsen's cGMP testimony would be inadmissible.

The second part of Defendants' pivot is to argue that Dr. Olsen was not just attacking Dr. Najafi for failing to follow the (inapplicable) cGMP and GLP standards but for failing to follow any standards at all. *See* Opp. at 6. Of course, that is a misdirect. Plaintiffs' motion was to exclude opinions related to cGMP and GLP. The fact that Dr. Olsen may have other opinions on standards *generally* does not save his inadmissible opinions on cGMP and GLP standards *specifically*.

Regardless, this alternative attack is baseless. Dr. Najafi did conduct his testing pursuant to standardized written protocols. Protocols that were attached as Appendix A to his report. *See* Def. Ex. 2 Najafi Rep., App. A (attached to Canaan Dec.). Each NDMA quantitation method also went through extensive validation, pursuant to validation protocols, and summarized in the validation summary tables. These validation protocols, summary tables, and even the underlying LC-MS/MS validation data was all turned over to Defendants.[4] The testing and validation protocols detail the purpose, scope, equipment, materials, reagents, and procedures used for each test and experiment performed. All experiments were anchored in methods set forth in published

[4] A compendium of the materials provided to Defendants by Emery Pharma, including the validation protocols, was attached as Exhibit A to Plaintiffs' Opposition to Defendants' Motion to Strike Dr. Najafi (D.E. 5750). Dr. Olsen fails to evaluate the validation data provided by Emery which includes the testing the methods for selectivity, specificity, linearity, range, precision and accuracy. This data also included an in-matrix accuracy/spike recovery test which Emery performed on its LC-MS/MS (MRM) method in accordance with accepted standards. *See* FDA, Q2(R1) Validation of Analytical Procedures: Text and Methodology Guidance for Industry (November 2005) (https://www.fda.gov/media/152208/download); USP General Chapter (https://latam-edu.usp.org/wp-content/uploads/2021/08/1225.pdf).

studies (NAP, Braunstein and Gao) as set forth in Dr. Najafi's report. Indeed, at deposition, Dr. Olsen testified that when he performed product testing on drug tablets for a patent litigation (in that case, to determine how much $CO_2$ was released from Fentanyl tablets under various conditions) he performed that testing pursuant to his own written protocol. Ex. 37 Olsen Dep. Tr. 130:12–24, 132:21–133:2. Dr. Olsen further had to concede that his protocol in that case did not contain the type of detail that he now criticizes Dr. Najafi for omitting. *Id.* at 133:8–143:17. But that is a point Plaintiffs' will look forward to exploring on cross examination.[5] For now, it suffices to say that Dr. Najafi performed his evaluative testing pursuant to a standard written protocol, just as Dr. Olsen did when the shoe was on the other foot. Defendants' claim that Dr. Najafi did not follow any standards at all is baseless.

The simple fact is that Dr. Olsen criticized Dr. Najafi for failing to follow standards that he later had to concede are inapplicable to this situation. None of Defendants' arguments changes that fact. Plaintiffs' motion to exclude Dr. Olsen's testimony related to cGMP and GLP standards should be granted.

## II. Defendants' post hoc justifications cannot rehabilitate Dr. Olsen's failure to review the data he professed to analyze against Emery Pharma's results.

Plaintiffs also moved to exclude Dr. Olsen's opinion that Dr. Najafi's work was ipso facto unreliable because his results differed from other testing results, causing Dr. Olsen to dismiss the Emery results as "statistical outliers." *See* Ex. 14 Olsen Rep. at 42. Plaintiffs asserted two grounds for exclusion: (1) Dr. Olsen did not review the underlying parameters of the studies he compared against the Emery results, rendering any such comparison lacking foundation and unreliable, and (2) Dr. Olsen excluded the results of several published tests that found comparable levels of NDMA in Ranitidine as identified by Dr. Najafi, exposing Dr. Olsen's analysis as "cherry-picked." Mot. at 9–10.

As to the first argument, Defendants effectively offer no response. While they highlight (and supplement) Dr. Olsen's mathematical comparison of Dr. Najafi's results with those found in

[5] Defendants wishfully assert that "Plaintiffs effectively concede that Dr. Olsen's remaining opinions are reliable and admissible." Def. Opp. at 1, n.4. The fact that Plaintiffs have been judicious in moving to exclude the opinions of Defendants' self-described rebuttal expert cannot be read as any concession. "A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quotations omitted). Plaintiffs by no means concede admissibility. They will hold the rest of their responses to Dr. Olsen's critiques for trial.

other studies (Opp. at 8–10), they do not explain how Dr. Olsen should be permitted to draw these comparisons when he conceded at deposition that he did not review the underlying studies. Ex. 37 Olsen Dep. Tr. 162:4–167:12 (going through all the various data sources and confirming that Dr. Olsen either did not review the underlying data or, at best, could not say whether he did or not). After all, you don't need to be an expert to know that one number is higher than another. The significance of that difference, on the other hand, may require expertise to appreciate. As Dr. Olsen looked no further than the results, he has no basis to opine on the reasons for the differences. The only response Defendants muster is that Dr. Olsen was aware of the "testing methodologies" used in the comparator studies—in that he "comment[ed] on the reversed phase method" they all used. Opp. at 11. But a passing familiarity with the tools used in a study is no substitute for a careful review of the data used to support an opinion. Said another way, there is too large an analytical gap between Dr. Olsen's opinion (that Emery's results are unreasonable because they are higher than others) and the foundation for that opinion (a confessed ignorance as to details of the underlying data in the comparator studies). For that reason, Dr. Olsen's opinion that Emery's results can be dismissed as "outliers" should be excluded. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014).

As to the second argument, that Dr. Olsen cherry-picked the data he compared against Emery's results, Defendants' response is telling. They offer an analysis that was never conducted by Dr. Olsen, plotting the results of certain studies on a graph Dr. Olsen did not design, and arguing that those results also support their contention that Emery's results are anomalous. Opp. at 10. But the instant motion concerns Dr. Olsen's opinions, not Defendants' advocacy. Again, the Eleventh Circuit does not countenance attempts to cloak a party's arguments in the imprimatur of expertise. *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004). In deciding this motion to exclude, the Court should confine its review to Dr. Olsen's opinions as stated in his report, not as supplemented by Defendants' briefs.

That said, even Defendants' post hoc analysis of comparator studies omits relevant results. For example, Dr. Olsen's report makes mention of testing of NDMA in Ranitidine conducted by the Australian Therapeutic Goods Administration (TGA). *See* Ex. 14 Olsen Rep. at 43–44. But he omitted the results of that testing from his comparison chart. *Id.* He also omitted the results of the defendants' own testing which found NDMA levels reaching 1,140 ng in a 150 mg tablet (GSK), levels in the API which would equate to 6,210 ng in a 150 tablet (GSK), and 898.2 ng in a 150 mg

tablet (Sanofi). Notably, the TGA's values are not mentioned at all in Defendants' opposition. That testing found NDMA in ranitidine up to as much as 2,100 ng/ 150 mg tablet. *See* Australian Therapeutic Goods Administration, *Contamination of ranitidine medicines with the nitrosamine NDMA; TGA laboratory testing* at 4 (Oct. 2019), https://www.tga.gov.au/sites/default/files/tga-laboratories-testing-ranitidine-medicines.pdf (showing result of 14 ppm; 14 ppm x 150 = 2,100 ng / 150 mg). Only cherry-picked data supports Dr. Olsen's opinion that Emery's results are "clearly much higher" than those reported by other sources.

In short, Dr. Olsen wants to offer an opinion that Dr. Najafi's results are unreasonable outliers. *See* Ex. 14 Olsen Rep. at 47–48 (Dr. Olsen's third conclusion). But this conclusion is based on comparison to only a portion of the available data and without Dr. Olsen taking any steps to confirm the data he cherry-picked was reliable. Ex. 37 Olsen Dep. Tr. 162:4–167:12. This opinion should be excluded.

## III. Dr. Najafi did validate his results and it is not his burden to disprove Dr. Olsen's untested alternative hypothesis; that is Dr. Olsen's burden, which he failed to meet.

Plaintiffs next move to exclude Dr. Olsen's hypothetical opinion that Dr. Najafi's testing itself somehow created NDMA. *See* Mot. at 11–12. The grounds for Plaintiffs' motion are straightforward: Dr. Olsen admitted in his deposition that he had no proof to support his hypothesis. *See* Ex. 37 Olsen Dep. at 185:17–186:05. Indeed, the only basis given in his supplemental expert report is reference to studies standing for the (undisputed) proposition that ranitidine degrades over time with heat to form NDMA. Ex. 15 Olsen Supp. Rep. at 3–4. But none of these sources state that NDMA forms in the MS source. And Emery's validation data shows otherwise. So, again, Defendants sidestep. Rather than explain Dr. Olsen's basis for his hypothesis, they double down on attacking Dr. Najafi for an alleged failure to validate his results, even though Emery performed extensive method validation. *See* Opp. at 12–16. This argument fails on its own terms. No matter how loudly Defendants levy this criticism, it is not true.

Dr. Najafi followed the FDA's standard set of criteria for the validation of analytical tests such as LC-MS/MS: accuracy, precision, specificity, linearity, and range.[6] These criteria

---

[6] *See* FDA, Q2(R1) Validation of Analytical Procedures: Text and Methodology Guidance for Industry (Nov.2005) (https://www.fda.gov/media/152208/download) (last accessed September 12, 2022); ICH Harmonized Tripartite Guideline, Validation of Analytical Procedures: Text and Methodology Q2(R1) (Nov. 2005) (https://database.ich.org/sites/default/files/ Q2%28R1%29%20Guideline.pdf) (last accessed September 12, 2022).

collectively confirm that the technique consistently returns reliable and accurate measurements. Additionally, the internal standard validates the results and the measurements Dr. Najafi recorded. And the LC-MS/MS data confirming that validation was produced to Defendants, a summary of which appears in Appendix A to Dr. Najafi's report. *See* Def. Ex. 2 Najafi Rep., App. A at 29–33. In short, Emery Pharma performed state-of-the-art validation, which shows a precision measurement of NDMA and demonstrates the reliability of its LC-MS/MS method. Additionally, Emery Pharma used NDMA-d6 as an internal standard in every sample it tested. *Id.* at 3. The use of an internal standard further confirms that its LC-MS/MS system accurately measured the amount of NDMA.

Dr. Olsen, however, did not undertake to analyze the validation data. *See* Ex. 37 Olsen Dep. Tr. at 126:10–19 (objection omitted) ("Q: But you, Dr. Olsen, have no testing data for these samples to show that the amounts that Emery Pharma has measured in the drug substance or the drug product are incorrect? A: I don't have data for those samples but have the concern about the Emery data as it is by itself."). Accordingly, Plaintiffs have not *presumed* Dr. Najafi's results are scientifically valid (Opp. at 13), Dr. Najafi has *demonstrated* that the results are scientifically valid. It is Dr. Olsen's opinion to the contrary that lacks evidentiary foundation and is unreliable. All in all, Defendants' argument that Dr. Najafi's testing fails to follow scientific protocols assumes its own conclusion. What is made clear by Defendants' argument is not that they believe Dr. Olsen's conclusions to be true, but that they desperately want Dr. Najafi's conclusions to be false.

The comparison the two chromatograms on page 15 of their brief is a case in point. In their zeal to find some way to discredit Dr. Najafi's testing, Defendants resort to a false comparison. First, the FDA NDMA peak chromatogram was generated by another analytical testing method, LC-HRMS[7], not LC-MSMS, which uses different instrumentation and presents differently with quieter baselines.[8] Second, the FDA NDMA peak chromatogram represents NDMA detection from 30mg/mL of pure Ranitidine API drug substance only, while the Emery chromatogram represents

[7] FDA, Liquid Chromatography-High Resolution Mass Spectrometry (LC-HRMS) Method for Determination of NDMA in Ranitidine Drug Substance and Drug Product (Sept. 13, 2019), , https://www.fda.gov/media/130801/download.

[8] Compared to FDA, Liquid Chromatography-Tandem Mass Spectrometry (LC-MS/MS) Method for the Determination of NDMA in Ranitidine Drug Substance and Solid Dosage Drug Product at 6–7 (Oct. 17, 2019), https://www.fda.gov/media/131868/download.

NDMA detection from a 150 mg Zantac tablet (which includes API plus excipients).[9] These differences in appearances between the chromatographs are a function of the differences in the testing method and the substance tested. It is simply an inappropriate comparison.

Plaintiffs, of course, do not dispute that as a rebuttal expert, Dr. Olsen may criticize the methodology of Dr. Najafi (or any of Plaintiffs' other experts), so long as his opinions meet the criteria of Fed. R. Evid. 702 and *Daubert*—that they are reliable and helpful. *See Funderbunk v. South Carolina Elec. & Gas Co.*, 395 Fed. Supp. 3d 695, 716 (D.S.C. 2019) (citing *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 318–19 (4th Cir. 2018)) ("a rebuttal expert is still subject to the scrutiny of *Daubert* and must offer both relevant and reliable opinions"). But there is nothing helpful or reliable about a criticism that is unsupported by scientific evidence:

> Q: But the question that I asked you is if you, as you're sitting here today, have any proof that NDMA is being formed in the detector. You say you have a concern. I'm asking if you have proof that NDMA is being formed in the detector.
>
> A: This would go back to the burden of proof is on the validation of the method to show that that is not happening rather than being able to prove exactly what is happening. Something is happening. There's no doubt about that.

Ex. 37 Olsen Dep. at 185:17–186:05 (objection omitted). The jury cannot be asked to take Dr. Olsen's conclusions on faith.

The cases Defendants marshal cannot rehabilitate Dr. Olsen on this score. For instance, nothing about the simple proposition that an expert's opinion must be supported by reliable methodology is contradicted by the Zyprexa MDL decision Defendants cite. There, the court discussed the admissibility of expert testimony where two sets of testimony conflicted. *In re Zyprexa Prods. Liab. Litig.*, 489 Fed. Supp. 2d 230, 285 (E.D.N.Y. 2007). But the court took pains to qualify this secondary consideration with the underlying assumption that the expert's testimony—unlike Dr. Olsen's—must be reliable. *See id.* ("contradictory expert opinions [must] meet the requisite threshold of reliability"). And in *Wreal LLC v. Amazon.com, Inc.*, the Court held no differently: so long as testimony from a qualified rebuttal expert would be helpful for the jury, the expert could testify. 2016 WL 8793317, at *17 (S.D. Fla. Jan. 7, 2016). What distinguishes

---

[9] FDA, Liquid Chromatography-High Resolution Mass Spectrometry (LC-HRMS) Method for Determination of NDMA in Ranitidine Drug Substance and Drug Product at 7 (Sept. 13, 2019), https://www.fda.gov/media/130801/download.

this case is that Dr. Olsen's opinions regarding confounding are not based in scientific methodology. A baseless opinion is not helpful to the jury. Dr. Olsen's speculative confounding opinion should be excluded.

**IV. Dr. Olsen should not be permitted to testify that he has "concerns" with the Emery's testing without explaining his basis.**

Last, in his sworn deposition testimony, Dr. Olsen passes off vague, unspecified "concerns" with the reliability of Dr. Najafi's data and conclusions. But these concerns are not scientific opinions; they are mere argument, appropriate for an attorney, not an expert.

First, Defendants assert that Plaintiffs cannot not articulate instances where Dr. Olsen expressed these "concerns." Not so. Indeed, such was Dr. Olsen's refrain at his deposition. This testimony is recorded at, *e.g.*, Ex. 37 Olsen Dep. Tr. at 124:7–125:3, 126:10–19, 164:8–23, 172:18–173:17, 175:15–176:23, 177:4–20, 184:22–186:5, 188:14–189:17, 193:5–14, 194:11–23, 195:15–197:15. The following example is illustrative:

> Q: And how many of these peer-reviewed publications were you actually able to review the validation data for? Did you note that in your report?
>
> A: What -- what I -- what I said was I did not request validation data from peer-reviewed articles because it had already gone through a peer review, so I didn't find that necessary. And unlike Emery's incomplete validation summary and further concern generated by seeing some of the chromatograms of samples, I have large concerns about the validation status or reliability of their results.

*Id.* at 165:25–166:15 (objection omitted).

Next, Defendants claim Dr. Olsen was not asked for explanations. Again, not true. Dr. Olsen was pressed to articulate his "concerns." The following exchange, wherein counsel for Plaintiffs pressed Dr. Olsen—multiple times—is illustrative:

> Q: But as you sit here today, you can't say that the amount of NDMA that Emery Pharma measured in the API or the tablets is incorrect.
>
> A: I have reason to doubt that it is correct as I have expressed in my report and supplemental report; and, not to mention, the inconsistency with Emery's previous data for the citizens' petition and all the other independent parties that have generated data on ranitidine.

> Q: When you say you have reason to doubt, that doesn't mean that you can prove that their reporting of NDMA in the drug substance and drug tablets that they tested is wrong, correct?
>
> A: And if you -- in fact, I address that in my supplemental report where it seems that Emery wants to claim validity of the -- their data until it's proven not reliable. And that's not the way it works. They need to show that it's reliable and that it -- interferences have not occurred even if there's no other dataset to compare it to. And especially when we see the inconsistencies with all the other data that's been generated.
>
> Q: But you, Dr. Olsen, have no testing data for these samples to show that the amounts that Emery Pharma has measured in the drug substance or the drug product are incorrect?
>
> A: I don't have data for those samples but have the concern about the Emery data as it is by itself.

*Id.* at 125:04–126:19 (objections omitted). In this instance, among others, Dr. Olsen refused to—or, could not—articulate his "concerns." More directly, Defendants' continual aspersions directed against Dr. Najafi (though irrelevant to supporting Dr. Olsen's reliability or helpfulness in this case) reveal that they have no legitimate grounds for opposing the instant motion—only a desire to prevent Dr. Najafi from being called to testify.

Dr. Olsen is simply not permitted to level accusations at Plaintiffs' experts that lack scientific bases. His numerous "concerns" are nothing more than veiled argument. An expert is not permitted to serve as an attorney's mouthpiece. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19md2885, 2021 WL 765019, at *40–41 (N.D. Fla. Feb. 28, 2021). Plaintiff's motion to exclude Dr. Olsen's unsupported and unarticulated opinions should be granted.

## CONCLUSION

In sum, the unreliable and unhelpful opinions of Dr. Olsen that Plaintiffs have moved to exclude here should not be allowed before the jury. Even as a rebuttal expert, Dr. Olsen may only offer opinions that are based on reliable methods. And while Plaintiffs will be prepared to cross examine on any such opinions, the Court should not countenance testimony that is premised on inapplicable standards, unsupported by appropriate foundation, or mere advocacy untethered to methodology. Plaintiffs respectfully request the Court to grant their motion.

Dated: September 14, 2022

Respectfully submitted,

*/s/ Tracy A. Finken*
Tracy A. Finken
Email: tfinken@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

By: */s/ Robert C. Gilbert*
Robert C. Gilbert, FBN 561861
Email: gilbert@kolawyers.com
KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (305) 384-7270

*/s/ Michael L. McGlamry*
Michael L. McGlamry
Email: efile@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

*/s/ Adam Pulaski*
Adam Pulaski
Email: adam@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan
Email: Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1 Wall Street
Albany, NY 12205
Tel: (518) 862-1200

Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019

Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Tel: (855) 333-4662

Ashley Keller
Email: ack@kellerpostman.com
KELLER | POSTMAN
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (312) 741-5222

Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email: luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email: frank@maderalbyrne.com
MADERAL BYRNE PLLC
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 520-5690

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: laurenm@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1914 4th Avenue North
Suite 320
Birmingham, AL 35203
Tel: (205) 533-4175

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4629

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Frank Woodson

Steven B. Rotman

Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Email: srotman@housfeld.com
HAUSFELD, LLP
One Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 207-0602

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Avenue SE
Third Floor
Washington, DC 20032
Tel: (202) 506-3591

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Steering Committee*

Brooke Achua
Email: brooke@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd., 46th Floor
Yorkville, IL 60560
Tel: (646) 502-7910

Harrison M. Biggs
Email: hbiggs@yourlawayer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4633

Lea P. Bucciero
Email: lbucciero@podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Alexander C. Cohen
Email: acohen@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Marlo E. Fisher
Email: marlo@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

Kendra Goldhirsch
Email: goldhirsch@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Noah Heinz
Email: noah.heinz@kellerpostman.com
KELLER | POSTMAN
1100 Vermont Avenue NW, Floor 12
Washington, DC 20005
Tel: (202) 918-1841

Catelyn McDonough
Email: cmcdonough@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

Caroline G. McGlamry
Email: carolinemcglamry@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Madeline Pendley
Email: mpendley@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7003

Laura K. Stemkowski
Email: lstemkowski@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9165

Daniel E. Tropin
Email: tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (954) 990-2216

*Plaintiffs' Leadership Development Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Robert C. Gilbert*
Robert C. Gilbert

**Motion to Seal/Sealed and Exparte Filings:**

9:20-md-02924-RLR IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered by Gilbert, Robert on 9/14/2022 at 9:20 PM EDT and filed on 9/14/2022

| | |
|---|---|
| **Case Name:** | IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION |
| **Case Number:** | 9:20-md-02924-RLR |
| **Filer:** | Zantac (Ranitidine) Products Liability Litigation |
| **Document Number:** | 6010 |

**Docket Text:**

**Sealed Document *Plaintiffs' Reply in Support of Motion to Exclude Inadmissible Opinions of Dr. Bernard Olsen* by Zantac (Ranitidine) Products Liability Litigation. (Gilbert, Robert)**

**9:20-md-02924-RLR No electronic public notice will be sent because the case/entry is sealed.**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=9/14/2022] [FileNumber=22556789-0] [1023a68f1f89002f5e2c471fc82ae442253965a4d4653ee7962f4bf15a755a6748 f5c665a0875d46d325f120fcd3564993d11d86e7f0bbdc650eb48c8c2561b7]]