**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE:  ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | **MDL NO. 2924**<br>**20-MD-2924**<br><br>**JUDGE ROBIN L. ROSENBERG**<br>**MAGISTRATE JUDGE BRUCE E. REINHART** |

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

**DEFENDANTS' OPPOSITION TO MDL PLAINTIFFS' MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF DR. GUENGERICH[1]**

Defendants Boehringer Ingelheim Pharmaceuticals, Inc., GlaxoSmithKline LLC, and Pfizer LLC oppose MDL Plaintiffs' Motion to Strike the Supplemental Report of Dr. Guengerich and respectfully request this Court to deny the motion.

**INTRODUCTION**

Without undertaking a proper investigation into the relevant facts or even asking Defendants to confirm whether their assumptions were correct (which they are not), Plaintiffs rushed to file a meritless motion.  PTO 30 and 65 contemplated that Defendants' experts would have approximately six weeks to review information supplied by Plaintiffs' experts and to prepare reports in response to those opinions.  Yet for months, Plaintiffs failed to produce Dr. Najafi's processed chromatograms, key material Dr. Najafi reviewed when forming his opinions.  Because of Plaintiffs' failure to timely produce these critical materials, none of Defendants' experts had six weeks to review and prepare reports in response.  Nevertheless, Dr. Guengerich submitted a

---

[1] This Motion is filed under seal pursuant to the Order at ECF No. 5684.

supplemental report to address this data approximately five days after he was first able to access the data. Even though Plaintiffs failed to produce data ***for five months***, they now fault Dr. Guengerich for taking ***five days*** to review it. The Court should reject Plaintiffs' attempt to flip the narrative and should deny their motion to strike Dr. Guengerich's supplemental report.

## BACKGROUND[2]

On January 24, 2022, Dr. Najafi submitted his expert report. When preparing his expert report, Dr. Najafi considered processed chromatograms (Najafi Tr. at 292:17), but Dr. Najafi did not disclose any of these with his report. In fact, Dr. Najafi did not produce ***any*** chromatograms prior to the deadline for Defendants' experts to submit their reports, making it impossible for Dr. Guengerich or any of Defendants' experts to review the chromatograms prior to the Court's deadline for initial expert reports. In his March 7, 2022, report, Dr. Guengerich described the fact that Dr. Najafi failed to produce these chromatograms:

> Instead of providing essential data (*e.g.*, LC chromatograms), Emery provided undecipherable tables with line and bar graphs depicting conclusions (*e.g.*, small PowerPoint slide figures printed, cropped, and pasted into lab notebooks with blurry text). . . . ***Based on the data that was provided, it is impossible to independently confirm the validity of Emery's results.***

Guengerich Rep. at 92 (emphasis added), Dkt. 5698-8.

Plaintiffs' counsel made no attempt to produce any of Dr. Najafi's chromatograms until March 10, 2022, more than six weeks after they should have been produced in accordance with the Rules. Even then, Plaintiffs failed to produce the necessary files to view the processed chromatograms in their native format. (To this date, Plaintiffs have not produced any printed reports with the chromatograms that Dr. Najafi reviewed in reaching his opinions.) Though

---

[2] A comprehensive summary of this issue has already been provided to the Court in Brand Defendants' Motion to Strike Plaintiffs' Proposed Expert Ramin (Ron) Najafi, PhD (Dkt. 5733). For brevity's sake, this brief will only recap the most essential elements of this timeline.

Plaintiffs falsely represent that Defendants lacked the software and expertise to access the data on March 10, this is plainly untrue; it was verified by the software vendor that the data folders in the hard drive produced by Plaintiffs on March 10 were unusable.[3]  Defendants promptly notified Plaintiffs about their production deficiency, and, after significant back and forth, Plaintiffs finally agreed to produce a second hard drive on May 3, 2022.  This second hard drive *still* omitted critical data but did include at least some files that could be viewed in the proprietary software.  Benotti Decl., Dkt. 5698-34.

Because of Plaintiffs' delays, a usable hard drive with Dr. Najafi's processed chromatograms was first produced to Defendants on May 3, 2022, but because of the format selected by Dr. Najafi, the data still had to be exported before it could be reviewed by Defendants' experts.  Thus, Defense counsel immediately forwarded the hard drive to their consultant at NewFields.  On May 12, NewFields generated PDF reports that could be shared with Defendants' chemistry experts.  NewFields then conducted quality review of their reports and executed a Declaration on May 19 affirming that the Reports accurately represented the data and chromatograms included in the hard drive.

Meanwhile, on May 16, Plaintiffs' counsel notified Defendants that Roopal Luhana, the attorney who intended to depose Dr. Guengerich on May 18-19, was ill and could not proceed with Dr. Guengerich's deposition.  Ex. 1, May 16 Email from T. Finken.  Plaintiffs' counsel explained that Ms. Luhana's illness created a problem for them because it was "too late for someone else to get up to speed," and requested Defendants agree to alternative dates for Dr. Guengerich's deposition.  *Id.*  Out of professional courtesy (which Plaintiffs now seek to take advantage of)

---

[3] Agilent, the software vendor, reviewed Dr. Najafi's March 10 hard drive and confirmed that it did not include the necessary files to view Dr. Najafi's processed chromatograms.  Benotti Decl., Dkt. 5698-34.

Defendants agreed to reschedule Dr. Guengerich's deposition.  Because Dr. Guengerich was departing on May 20 for a pre-planned trip to Iceland for a professional conference and would be out of the country for ten days, Defendants and Plaintiffs agreed to reschedule the deposition for June 6-7.

On May 29, Dr. Guengerich returned from his work trip and first saw the PDF reports with Dr. Najafi's chromatograms.  From May 30 to June 3, Dr. Guengerich worked diligently to prepare his supplemental report while concurrently preparing for his deposition.  On June 3, Dr. Guengerich finalized and executed his supplemental report, and it was served on Plaintiffs' counsel within minutes.  The following week, Plaintiffs' counsel deposed Dr. Guengerich for ten hours over two days, questioning him extensively, including about his supplemental report.

## LEGAL STANDARD

Expert witnesses have a duty to supplement their reports "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A); *United States v. Marder*, 318 F.R.D. 186, 190 (S.D. Fla. 2016).

Courts routinely allow experts to supplement their opinions when new information becomes available.  *Apple v. Corellium*, 2021 WL 2940264, at *3 (S.D. Fla. July 13, 2021) (denying motion to strike when a moving party's new production was the "sole cause of the supplementation of the reports"); *Tampa Bay Water v. HDR Engineering, Inc.*, 2011 WL 3475548, at *5 (M.D. Fla. Aug. 9, 2011) ("There is nothing in Rule 26 prohibiting a witness, even an expert witness, from timely providing new or modified opinions to complete or correct information

previously provided or reported.  Indeed, the witness who learns of new material information not previously disclosed is obliged to timely disclose the information to the parties.").

Even if an expert report is untimely, courts will not strike the report when the disclosure is "justified and harmless."  Fed. R. Civ. P. 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008).

## ARGUMENT

### I.   Dr. Guengerich Timely Supplemented His Report.

Plaintiffs improperly withheld data for five months, yet Dr. Guengerich supplemented his report within approximately five days of gaining access to that previously withheld information. Under such circumstances, there can be no good faith argument that Dr. Guengerich did not act timely.

Because Plaintiffs withheld Dr. Najafi's processed chromatograms until after March 7, 2022, the deadline for Dr. Guengerich's initial report, Dr. Guengerich was required to supplement his report once the data became available.  Fed. R. Civ. P. Rule 26(a)(2)(E) and (e).  Plaintiffs do not appear to dispute that Rule 26 allows for supplementation under these circumstances; they just advance a meritless argument that Dr. Guengerich's report was "untimely."

The crux of Plaintiffs' argument is their erroneous assumption that Dr. Guengerich's supplemental report was completed on May 2.  As explained above, Plaintiffs' counsels' theory is wrong and easily refuted because the documents forming the basis of Dr. Guengerich's supplemental report did not even exist on May 2.[4]  Plaintiffs did not produce the hard drive containing the chromatograms until May 3, and that data then had to be processed by NewFields

---

[4] Dr. Guengerich's supplemental report includes screen captures and information from documents that were not generated until weeks later.  *See* Benotti Decl., Dkt. 5698-34 to 44; Guengerich Supplemental Report, Appendix A-B.

before Dr. Gungerich was able to view it.  Plaintiffs asked Dr. Guengerich extensively about this timeline at his deposition but chose to omit this testimony from their motion:

> Q.    Doctor, you received Agilent's LC/MS-MS data on May 3rd as you state in your supplemental report, correct?
>
> A.    I didn't receive it on May 3rd.  It said -- if we can go back to the first paragraph, it said, produced by Emery on a hard drive on May 3, 2022.  I did not receive this until, I think it was -- well, it would be after the 29th of May when I returned from a trip.
>
> Q.    *So, the earliest you looked at these files was on May 29th?*
>
> A.    *I can't remember if I looked at the 29th or another date.  It was during that week.*

Guengerich Tr. 352:15-353:7 (objections omitted; emphasis added).  In fact, at his deposition, Dr. Guengerich also testified: "*I've been spending quite a bit of time in the last week trying to, you know, deal with the late materials we received and to write a report* and to get ready for this deposition." Guengerich Tr. at 360:1-2 (emphasis added).  Plaintiffs' theory is completely negated by the fact that Dr. Guengerich unambiguously testified that he first received and reviewed the data and drafted the report after he returned from his trip on May 29.

Plaintiffs' brief also ascribes new meaning into PTOs 30 and 65, namely that the deadline for submission of supplemental expert reports was May 31.  *See* Pl. Br. At 1.  However, this Court has never established a deadline for supplemental expert reports once new information has become available.  The May 31 deadline is limited to the "[c]ompletion of expert *depositions* on general causation" (emphasis added).  *See* PTO 30 and 65.  This deadline has no bearing on the timeliness of supplemental expert reports.

Moreover, even if the May 31 deadline in PTOs 30 and 65 applied to supplemental expert reports, which it does not, Plaintiffs neglect to acknowledge that they are the ones who sought an extension of this deadline.  Plaintiffs sought to extend their deadline to take Dr. Guengerich's

deposition past May 31 because of Ms. Luhana's illness, and Defendants agreed out of professional courtesy and common decency. Plaintiffs now claim that it was improper to continue expert discovery after May 31. Plaintiffs' current interpretation of the deadline underscores the disingenuous nature of Plaintiffs' motion. The Court should not reward such opportunistic, patent gamesmanship.

In short, Plaintiffs forced production of a supplemental report from Dr. Guengerich by failing to provide Dr. Najafi's data by the deadline in January. Plaintiffs caused the delays here.[5] It is hypocritical and opportunistic for Plaintiffs to seek to strike Dr. Guengerich's supplemental report based on the natural consequences of their own unexcused delay. Dr. Guengerich timely supplemented his report within five days of the newly produced data becoming available to him, and this Court should deny Plaintiffs' frivolous motion.

## II.    Dr. Guengerich's Supplemental Report is Justified and Harmless.

Even if Dr. Guengerich's report were untimely (which it is not), the supplementation is justified and harmless. Plaintiffs devote only a single conclusory sentence in support of their claim of prejudice because they cannot make a good faith argument that any prejudice occurred.

*First*, Plaintiffs had access to the Emery test data all along, so the opinions expressed in Dr. Guengerich's supplemental report are not a "surprise." *United States v. Marder*, 318 F.R.D. 186, 192 (S.D. Fla. 2016) (noting that "the purpose of the rule governing expert witness disclosure

---

[5] The lone case cited by Plaintiffs is entirely inapposite. In *Dimension Leasing, Inc. v. Variety Children's Hosp.*, the relevant documents were made available to the defense expert "two weeks *prior to* the discovery deadline." No. 05-22701-CIV, 2007 WL 9701116, at *2 (S.D. Fla. Apr. 3, 2007) (emphasis added). Here, Plaintiffs produced the materials five months *after* their January 24 deadline to do so and *after* Dr. Guengerich's report was due, and, unlike in *Dimension Leasing*, Dr. Guengerich did not have them "prior to" submitting his initial report. Moreover, contrary to PTO 30 and 65, the scheduling order in *Dimension Leasing* expressly provided that "ALL EXPERT DISCOVERY MUST BE COMPLETED BY THE DISCOVERY CUT-OFF." *Id.* (caps in original).

requirements is to safeguard against surprise.") (*quoting Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. 10–24310–CIV, 2011 WL 6372198, at *3 (S.D. Fla. Dec. 20, 2011)).[6] Moreover, Plaintiffs state that Dr. Guengerich "launched similar perceived criticisms" as other experts who "timely produced supplemental reports." Pl. Mot. at 3.  Given Plaintiffs' claim that Dr. Guengerich's opinions are similar to those already disclosed, any purported lateness of Dr. Guengerich's supplemental report is harmless.  *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 383 (M.D. Fla. 2018) (quoting *United States v. McCarthy Improvement Co.*, No. 3:14-cv-919-J-PDB, 2017 WL 443486, at *5 (M.D. Fla. Feb. 1, 2017) ("A failure to timely make required disclosures might be harmless if substantially similar evidence has already been produced.").

*Second*, Plaintiffs have had ample opportunity to mitigate any potential prejudice caused by the timing of Dr. Guengerich's supplemental report.  Plaintiffs elicited testimony from their own expert, Dr. Najafi, about these issues during his re-direct examination on May 27.  (Najafi Tr. at 480-93).  Likewise, Plaintiffs had the opportunity to fully explore these issues at Dr. Guengerich's 10-hour, 2-day deposition.  Simply put, after five months of delay in producing the underlying information and ample time to ask questions at his deposition, any prejudice suffered by Plaintiffs is *de minimis* (and entirely of their own making).

*Third*, Plaintiffs seek to hold Defendants' experts to a higher standard than their own experts.  Plaintiffs repeatedly supplemented their experts' reports, often either on the same day or a few days before their depositions.  Specifically:

---

[6] Plaintiffs' motion laments that the supplemental report was produced "in the dark of night" (*i.e.*, 8:56pm EST) "the business night before his deposition" (*i.e.*, three and four actual days before his two-day deposition).  But Plaintiffs fail to acknowledge that the supplemental report incorporated data the Plaintiffs had for months yet failed to produce.

- **Dr. McTiernan**: Dr. McTiernan produced a supplemental report at 9:17pm Saturday night of Memorial Day weekend, three calendar days before her deposition, which was set to take place on the next business day.[7]  Ex. 2, May 28 Email from T. Finken.  Unlike Dr. Guengerich's supplemental report, Dr. McTiernan's supplemental report was not based on any new data.  She supplemented it because she purportedly missed a correction to a publicly available study which had been available before she submitted her initial report.

- **Dr. Panigrahy**: Dr. Panigrahy produced a supplemental report at the start of his deposition. Dr. Panigrahy's supplemental report revised critical aspects of his causation analysis, including his previously stated opinion that ranitidine (as opposed to NDMA) was also a carcinogen.  Producing this at the start of his deposition provided no time for counsel to review and reformulate their deposition strategy before beginning the deposition. Moreover, the supplement was not based on any newly available information.

- **Dr. Salmon**: Dr. Salmon produced a supplemental report eight days before his deposition. This supplement changed his dose calculations which required Defendants to deconstruct how Dr. Salmon performed these calculations (because they were never written out or disclosed) and identify where Dr. Salmon made errors.  This supplement was not based on any newly available information but was prompted by Dr. Salmon's numerous mathematical errors.

---

[7] Plaintiffs' motion repeatedly claims Dr. Guengerich produced his report "the business day before his deposition," which really means three days before his deposition.  Defendants do not agree that, in this instance where both sides were working over weekends to complete these depositions, playing these semantic games over dates is necessary or productive.

- **Dr. Phiroz:** Dr. Phiroz produced a 225-page supplemental report nineteen days before his deposition.  Dr. Phiroz's "supplement" was based on information that was produced prior to his initial report and months prior to his rebuttal report being due.

In contrast to Dr. Guengerich's supplemental report, which was necessitated by new information and data produced by Plaintiffs after significant delays, Plaintiffs' supplements "merely bolster [their] defective [and] problematic expert witness report[s]." *United States v. Marder*, 318 F.R.D. 186, 190 (S.D. Fla. 2016) (*quoting Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14–CV–24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016)); *Jones Creek Investors, LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015) ("[Rule] 26(e) does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies, and there is no reason why the new assumptions and methodologies used in the second report could not have been adopted and disclosed in the first during the discovery period.").  Therefore, Defendants could have moved to strike the four supplemental reports of Plaintiffs' experts because they were untimely and not true "supplements" allowed under the Rules.[8]  Yet, Defendants have opted not to burden this Court with excess motion practice, especially given the likelihood that these experts may be excluded under Rule 702 anyway.  Nonetheless, if this Court were to find it appropriate, the Court may *sua*

---

[8] There were separate deadlines for the service of expert witness reports, but Plaintiffs do not cite these deadlines because then the Court would need to strike four of Plaintiffs' experts' supplemental reports.  Specifically, Dr. Anne McTiernan submitted a "supplemental report" on May 28 (at minimum 61 days late), Dr. Andrew Salmon submitted a "supplemental report" on May 4 (at minimum 37 days late), Dr. Zal Phiroz submitted a "supplemental report" on April 24 (at minimum 27 days late), and Dr. Dipak Panigrahy submitted a "supplemental report" on April 25 (at minimum 28 days late).  Additionally, as Plaintiffs' Motion admits, Dr. Najafi continued to produce materials in a piecemeal fashion in February, March, and ultimately May—all of which had been due on January 24.  Plaintiffs simply cannot have it both ways—if this Court were to strike Dr. Guengerich's supplemental report, the Court should strike these untimely supplemental reports as well.

*sponte* strike Plaintiffs' supplemental expert reports as untimely.  *Dimension Leasing, Inc. v. Variety Children's Hosp.*, No. 05-22701-CIV, 2007 WL 9701116, at *1 (S.D. Fla. Apr. 3, 2007) (noting the court "*sua sponte* struck, as untimely, the supplemental expert reports" of several experts).

In sum, Plaintiffs can show no prejudice caused by Dr. Guengerich's supplemental report. The contents were no surprise, and Plaintiffs had the opportunity to (and did) extensively depose Dr. Guengerich on its topics.

## CONCLUSION

Plaintiffs withheld information for months and now seek to capitalize on their own delay by moving to strike Dr. Guengerich's supplemental report.  Plaintiffs' gamesmanship should not be permitted.  The Court should deny Plaintiffs' Motion.

Dated:  August 11, 2022                    Respectfully submitted,


By: */s/ Andrew T. Bayman*
Andrew T. Bayman
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
abayman@kslaw.com

Eva Canaan
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Tel: (212) 556-2100
Fax: (212) 556-2222
ecanaan@kslaw.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

/s/ Mark Cheffo
Mark S. Cheffo
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
mark.cheffo@dechert.com

*Counsel for Defendant GlaxoSmithKline LLC*

/s/ Joseph G. Petrosinelli
Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2022, I electronically filed the foregoing DEFENDANTS' OPPOSITION TO MDL PLAINTIFFS' MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF DR. GUENGERICH through the CM/ECF system, which will provide automatic notification to all CM/ECF participants.

*/s/ Andrew T. Bayman*
Andrew T. Bayman