IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924<br><br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

THIS DOCUMENT RELATES TO: ALL ACTIONS

### BRAND DEFENDANTS' MOTION FOR LEAVE TO SUBSTITUTE EXPERT WITNESS[1]

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and this Court's Order (Doc. 5266), the Brand Defendants ("Defendants"), through their undersigned counsel, respectfully move this Court for leave to substitute an expert witness in place of Namandjé Bumpus, Ph.D. ("Dr. Bumpus") if the cases are allowed to proceed past the *Daubert* general causation stage and to bellwether trials. Dr. Bumpus has accepted the role of Food & Drug Administration ("FDA") Chief Scientist and cannot testify in this litigation while holding this role.

### INTRODUCTION

On March 7, 2022, Defendants jointly designated Dr. Bumpus as an expert witness. Dr. Bumpus is an accomplished scientist. She holds a Ph.D. in Pharmacology and has most recently served as Professor and Director (Chair) of the Department of Pharmacology and Molecular Sciences at Johns Hopkins University School of Medicine. She is also President-Elect of the American Society for Pharmacology & Experimental Therapeutics. During the course of litigation, Dr. Bumpus served an expert witness report (Ex. 1) offering opinions about the alleged

---

[1] This Motion is filed under seal pursuant to the Order at ECF No. 5684.

endogenous formation of NDMA from ranitidine and two supplemental reports responding to belatedly produced data by Plaintiffs' expert, Dr. Najafi (Ex. 2; Ex. 3).  On April 20, 2022, Plaintiffs took and completed Dr. Bumpus' deposition.  (Ex. 4).

On June 30, 2022, FDA announced Dr. Bumpus will be serving as the Agency's Chief Scientist.[2]  In this important national role, Dr. Bumpus will lead the Office of the Chief Scientist (OCS) and oversee the many offices within OCS, such as FDA's National Center for Toxicological Research and the Office of Scientific Integrity.  While in this new role, Dr. Bumpus cannot consult for or testify in this litigation.

The opinions offered by Dr. Bumpus are central to the defense of these cases.  First, Dr. Bumpus offers the opinion that the "totality of the evidence demonstrates that NDMA is not formed from ranitidine in vivo under clinically relevant conditions."  (Ex. 1, Bumpus Rep. at 4).  Dr. Bumpus also opines on chemistry-related issues, such as the proper analytical methodology to test for NDMA in ranitidine.  (*Id.* at 7-8).  Additionally—and importantly—Dr. Bumpus reviewed the litigation-driven testing performed by Plaintiffs' expert, Dr. Ron Najafi and his laboratory Emery Pharma, and opined that "Emery's testing does not even come close to FDA's well-designed studies that showed no NDMA formation from ranitidine after ingestion" (Ex. 2, Bumpus First Supp. Rep. at 2); that Dr. Najafi's testing "failed to meet well accepted scientific standards" (*id.*); and that the "available data underscore the lack of quality and unreliability of the Emery testing."  (Ex. 3, Bumpus Second Supp. Rep. at 2).  Plaintiffs had the opportunity to fully explore these issues at Dr. Bumpus' deposition.  (Ex. 4).

---

[2] Dr. Robert M. Califf (@Dr.Califf_FDA), Twitter (June 30, 2022 at 11:01 AM), https://twitter.com/DrCaliff_FDA/status/1542523732203274240?s=20&t=l45vLKKaF5xzZU7RjCWI6w.

Should this litigation proceed past Rule 702 and summary judgment motions, the parties anticipate bellwether trials to begin in Summer of 2023. If that happens, Defendants will need to substitute a new expert witness for Dr. Bumpus. Finding another expert to substitute for Dr. Bumpus will be critical to ensure that Defendants, either collectively or individually, have the appropriate slate of experts to call upon for any bellwether trial. Accordingly, Defendants move this Court for leave to substitute an expert witness in place of Dr. Bumpus for any proceedings after the *Daubert* general causation stage.[3] To avoid additional costs in the event that all of the cancer types are eliminated following this Court's Rule 702 adjudication, Defendants propose the below schedule which is not expected to delay a summer 2023 trial date:

| Deadline | Event |
| --- | --- |
| 60 days after entry of the Court's last general causation Rule 702 decision | Defendants' substituted expert report and three non-consecutive deposition dates |
| 25 days after Defendants' substituted expert report | Completion of deposition for Defendants' substituted expert |
| 14 days after the last day to complete the deposition for Defendants' substituted expert | Plaintiffs' Rule 702 Motion |
| 14 days after Plaintiffs' motion is filed | Defendants' Response |
| 7 days after Defendants' Response | Plaintiffs' Reply |

## LEGAL STANDARDS

Rule 16(b) of the Federal Rules of Civil Procedure allows courts to modify scheduling orders for good cause. Fed. R. Civ. P. 16(b). "Courts have consistently allowed the substitution of expert witnesses when unexpected events prevent the designated expert from testifying at trial." *Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016) (collecting cases where courts have allowed substitution due to unexpected events such as new conflicts of interest, arrest, and illness).

---

[3] All discovery relating to Dr. Bumpus' opinions relevant to the general causation phase, including her deposition, were timely completed. Accordingly, the Court may consider her reports and opinions for the upcoming *Daubert* briefing and hearing.

## ARGUMENT

Defendants have demonstrated good cause to allow for substitution of expert witness opinion. When Defendants disclosed Dr. Bumpus as an expert, they had no knowledge that Dr. Bumpus would be appointed to serve as FDA's Chief Scientist. Therefore, this development fairly constitutes an "unexpected event[]." *Leibel*, 185 F. Supp. 3d at 1356. Likewise, given that this new role confirmed less than two weeks ago, there is no serious dispute that Defendants acted diligently in seeking substitution.

This Court previously acknowledged that the Court would allow substitution where there is "a compelling reason for a party to need to change a previously disclosed expert." (Dkt. 5266). Here, as long as Dr. Bumpus is serving in her new government role, she is not allowed to participate further in the litigation. This leaves Defendants with no meaningful option other than to substitute in a new expert to replace Dr. Bumpus if the cases are allowed to proceed past the *Daubert* general causation phase.

Defendants will be prejudiced if they are denied leave to substitute a new expert. Dr. Bumpus' opinions are necessary to demonstrate that Plaintiffs rely on a thoroughly debunked theory to claim that NDMA forms from ranitidine in the human body. Dr. Bumpus also opined as to the fatal flaws in the litigation-driven testing by Plaintiffs' expert Dr. Ron Najafi and his laboratory, Emery Pharma ("Emery"), which inflated the levels of NDMA beyond anything ever reported by any other researcher or agency. (Brand Defs' Mot. to Exclude Opinions and Testimony of Plfs' Experts, Ramin Najafi, PhD, Charles Davis, PhD, and other Experts Who Rely on Their Opinions, Dkt. 5698). While Dr. Najafi did not review much of the raw data from his laboratory before forming his opinion, Dr. Bumpus did. (*See* Ex. 1 at 35-37; Ex. 2; Ex. 3). Importantly, she found Emery's data to be wholly lacking in scientific reliability. (*See, e.g.*, Ex.

4

3). Defendants will have to present expert testimony so that the jury can understand that when reviewing the totality of evidence from Emery, including their raw data, no true scientist could rely on the results given the methodology's departure from established science. Dr. Bumpus also offers broader opinions based in chemistry and laboratory science, such as the proper analytical methodology to measure NDMA in ranitidine and proper record keeping practices—all important and complex scientific issues that require expert testimony for the jury to understand the unreliability of the Emery data.

Further, Plaintiffs will not be prejudiced by the substitution of a new expert witness to replace Dr. Bumpus. Defendants do not anticipate offering a substitute expert who offers opinions materially different than opinions previously offered by other experts, and, if the cases proceed past the *Daubert* general causation phase, Plaintiffs will have an opportunity to depose the newly designated expert ahead of any trial. Accordingly, there will be no surprise.

Defendants do not believe that any change to the Court's schedule is needed to complete this substitution. Dr. Bumpus has issued three reports and was fully deposed, so the Court may use and consider her opinions during the ongoing *Daubert* briefing. If any part of this litigation should proceed past the general causation *Daubert* and Summary Judgment phase, the parties can promptly proceed with conducting limited expert witness discovery for just Defendants' new expert. Given the anticipated trial date is not until Summer 2023, Defendants do not expect this modified schedule would delay the first bellwether trial.

## **CONCLUSION**

For the foregoing reasons, Defendants request this Court to grant their Motion for Leave to Substitute Expert Witness Testimony and establish a discovery schedule for the new expert as set forth in the above Motion.

**CERTIFICATE OF COUNSEL**

In accordance with S.D. Fla. L.R. 7.1(a)(3)(A), Counsel for Defendants, Eva Canaan, conferred with Lead Counsel for Plaintiffs, Tracy Finken, Daniel Nigh, and Rosemarie Bogdan in a good faith effort to resolve the issues raised in this motion. Counsel for Plaintiffs repeatedly ignored requests to meet and confer (*See* Ex. 5).

Respectfully submitted this 13th day of July, 2022.

/s/ *Andrew T. Bayman*
Andrew T. Bayman
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
abayman@kslaw.com

Eva Canaan
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Tel: (212) 556-2100
Fax: (212) 556-2222
ecanaan@kslaw.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

/s/ *Thomas J. Sheehan*
Thomas J. Sheehan
SHOOK HARDY & BACON LLP
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Tel: (212) 989-8844
Fax: (929) 501-5455
tjsheehan@shb.com

*Attorney for Defendant GlaxoSmithKline LLC*

*/s/ Aaron H. Levine*
ARNOLD & PORTER
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-7586
Fax: (212) 836-6585
aaron.levine@arnoldporter.com

*Attorney for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

*/s/ Jessica Bodger Rydstrom*
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC  20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jrydstrom@wc.com

*Attorney for Defendant Pfizer Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system on July 13, 2022, which will send notice of filing to all CM/ECF participants.

/s/ *Andrew T. Bayman*
Andrew T. Bayman