UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924<br><br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

_____/

THIS DOCUMENT RELATES TO: ALL CASES

## RENEWED EXPEDITED MOTION TO PERMIT MULTI-PLAINTIFF COMPLAINTS FOR REGISTRY CLAIMANTS WHO ARE CERTIFIED FEDERAL PARTICIPANTS

The Court requested further briefing on Plaintiffs' motion to authorize multi-plaintiff complaints. In view of the Court's concerns about eventual remands, Plaintiffs offer an additional path forward: each law firm can group its clients by each of the 96 judicial districts, filing in one or multiple actions all plaintiffs from a particular venue.[1] This would obviate any concerns about where to remand the actions following a possible reversal of this Court's *Daubert* decision.

To be clear, Plaintiffs' motion simply seeks to lift the outright prohibition on multi-plaintiff complaints dictated by PTO 31. Plaintiffs do not seek to preclude Defendants from disputing in the future the propriety of joinder. The Court imposed the current prohibition on filing multi-plaintiff complaints for practical reasons having to do with bellwether litigation, discovery, and ease of administration. None of those reasons apply anymore. So, Plaintiffs should be permitted

---

[1] A summary of options is set forth herein beginning at page 9. Even those options are not exclusive, and the Court has the discretion to implement any variation thereof it deems fair under these circumstances. In addition, the Court could say that it agreed that multiplaintiff complaints were fair and require the parties to meet and confer to make a proposal to the Court to resolve this matter.

1

to file multi-plaintiff complaints within the bounds of Rule 20 just as any other litigant would be permitted to do. Plaintiffs, in good faith, will comply with Rule 20. Defendants may, in good faith, claim that Rule 20's requirements are not met for any such actions. But this Court should not evaluate the Rule 20 question in the abstract, divorced from the particular facts and circumstances of a specific pleading. And nothing requires the Court to address a motion to sever before dismissing a complaint on the merits so the litigants to the action can lodge an appeal. A request to sever would be preserved for the future if the Eleventh Circuit remands the action for further proceedings.

## ARGUMENT

Tellingly, the Brands, in their response to Plaintiffs' original motion, did not raise the issue of the Court's authority under Rule 20 or any other basis. These law firms, composed of lawyers with substantial MDL-litigation experience on the defense side, clearly recognize the Court's legal authority to grant this motion. That alone should be definitive. Nevertheless, strong authority supports a highly flexible approach to joinder under Rule 20. Cases that have restricted joinder almost uniformly do so based on practical, fact-specific judgments about the conduct of litigation—a concern wholly absent here.

*First*, the text of Rule 20 is flexible and allows the relief sought. "The Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy." *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *abrogation in part on other grounds recognized by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). The drafters of the federal rules expressly cast aside strict joinder rules, instead "introduc[ing] what might be said to be a novel principle. They proceed upon the theory that no inconvenience can result from the joinder of any two or more matters in the pleadings, but only

from *trying* two or more matters together which have *little or nothing* in common. They therefore permit the joinder of practically anything, and the court is allowed in its discretion to make an order for the separate trial of any matters which can be more conveniently tried that way." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (II)*, 81 Harv. L. Rev. 591, 595 (1968) (quoting Sunderland, *The New Federal Rules*, 45 W. VA. L.Q. 5, 13 (1938)) (emphasis added). The Supreme Court has endorsed this project, admonishing that "[u]nder the Rules, the impulse is toward entertaining the *broadest possible* scope of action consistent with *fairness to the parties*; joinder of claims, parties and remedies is *strongly encouraged*." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (emphasis added).

The relevant rule reads as follows:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a). All agree that there are many questions of law or fact common to all plaintiffs, and so only subsection (A) is at issue.

The leading treatise on federal procedure explains that the terms "transaction" and "occurrence" are not rigid. They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy. This approach seems sound inasmuch as "no difficulty is likely to result from the joinder of even marginally related parties at the pleading stage." Wright & Miller, § 1653 *Permissive Joinder of Parties under Rule 20(a)—The Transaction and Common-Question Requirements*, 7 Fed. Prac. & Proc. Civ. (3d ed.). The Eleventh Circuit follows the rule from the

3

Eighth Circuit: "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Alexander*, 207 F.3d at 1323 (11th Cir. 2000) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). Following those principles, a leading case from the Second Circuit held that a district court abused its discretion in prohibiting joinder of **seventy-five** plaintiffs where: "All plaintiffs now allege as the basis for their claims the purchase of a Volkswagen Rabbit with a valve stem seal made of defective material that will cause it to harden and break over time. We think that amply satisfies the requirement of a *series of logically related transactions*." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986) (citing Wright & Miller) (emphasis added).

That is why courts have often held that product liability cases may be joined (or, sometimes, even tried together). In the *Stand 'n Seal* case, "Plaintiffs each assert[ed] a right to relief arising out of the manufacture, distribution, and sale of Stand 'n Seal with Flexipel. Although the Plaintiffs purchased Stand 'n Seal at different times and suffered different injuries, their claims rely on the same core allegation: aerosolized Flexipel is hazardous. This core allegation satisfies the requirement of a series of logically related transactions or occurrences and the requirement of a question of law or fact common to all plaintiffs." *In re Stand 'n Seal, Prod. Liab. Litig.*, No. 1:07-MD-1804-TWT, 2009 WL 2224185, at *2 (N.D. Ga. July 21, 2009) (citing *Abraham*, 795 F.2d at 251); *Poleon v. General Motors Corp.*, Civ. No.1999–127, 1999 WL 1289473, at *2 (D.V.I. Jan. 05, 1999) (airbag and brakes)); *see also Waterfall Homeowners Ass'n v. Viega, Inc.*, 279 F.R.D. 586, 591 (D. Nev. 2012) ("District court decisions have relied on *Abraham* in upholding the joinder of product liability claims against a manufacturer or distributor, even though the individual plaintiffs' injuries and damages resulting from the alleged defect may differ.");

4

*Jacobs v. Watson Pharms., Inc.*, 2011 WL 2216257, at *1 (N.D. Okla. June 7, 2011) (fentanyl patch). There is certainly no *less* of a transaction or occurrence in common here.

Under this standard, there is little question that claims by plaintiffs with cancer, alleging consumption of the same drug, negligence by the same defendants, and failure to warn by means of the same label arise out of the "same … series of transactions or occurrences." The similarity is especially arresting when one considers that the complaints will be essentially identical, other than a few plaintiff-specific details.

*Second*, cases that have rejected multi-plaintiff filings in pharmaceutical MDLs largely focus on judicial economy, case-specific facts, and practicability concerns, none of which apply here. The Court previously mentioned the *Bone Screw*, *Diet Drugs*, and *Baycol* MDLs, and asked if they are controlling. They are not. They are out-of-circuit, unpublished district court cases that were never subject to appellate review. Moreover, joinder is highly discretionary, and what is appropriate in managing one litigation may be inappropriate in another.[2] Even on their own terms, these cases do not require a total prohibition on filing of multi-plaintiff complaints before the court even has a multi-plaintiff complaint before it.

Plaintiffs' approach is hardly unprecedented. Consider the process in *In Re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, MDL No. 2244. There, Judge Kinkeade allowed complaints to be filed of up to 150 plaintiffs. *See* Ex. A (D.E. 506, Amended CMO 5). The order expressly says that unrelated parties may be severed by the Clerk's Office, but that a "civil filing fee is not required" for those severed cases. *Id.* at 4.

---

[2] This Court has repeatedly opened its Case Management Conferences by commenting on the uniqueness of this litigation. In large part, that uniqueness is related to the Court's Census and Registry program, the landing place for the approximately 58,000 persons who need the Court's help.

In *Bone Screw*, the Court did not permit cases to be filed by district, but considered the question a close one. There, plaintiffs had bone screws manufactured by different defendants implanted in different places in their bodies and suffered different complications. *In re Orthopedic Bone Screw Prod. Liab. Litig.*, No. MDL 1014, 1995 WL 428683, at *2 (E.D. Pa. July 17, 1995). There were a large number of defendants, and no clear connection among them. Given the practical importance of the hospitals where the device was implanted, the court determined that joinder would be appropriate if plaintiffs "underwent surgery at the same medical provider, involving the same manufacturer's device," but not otherwise without more facts. *Id.* If the many defendants, "manufacturers, distributers, and providers" were "link[ed]" by a shared practice of "marketing" the devices, the court held, then the "'series of transactions' requirement of Rule 20 might be satisfied." *Id.* But without marketing allegations, different plaintiffs suing different defendants for different devices and injuries would not be enough in *that* case, though "there may very well be another case at another time where the suggestions concerning the application of Rule 20 to a large number of consolidated cases would fit the model that the plaintiffs believe is appropriate here, but which the court declines to adopt here." *Id.* at *4. Even so, the court largely addressed the problem of misjoined cases by deeming them "subject to a ruling … in accordance with Rule 20(b)" (addressing separate *trials*) presumably to prevent any prejudice. *Id.* at *6. The parties were to confer on the best path forward for future filings. *Id.* at *7. If *Bone Screws* was close, this case surely is on the other side of the line.

Next, take the *Diet Drugs* MDL. There, *early* in the MDL, the Court ruled on fraudulent joinder. *In re Diet Drugs*, No. 1203, 1999 WL 554584, at *2 (E.D. Pa. July 16, 1999). Multiple different drugs were at issue, but the plaintiffs did not allege "that they took the same drug"; they sued more than ten different defendants; they purchased the drugs in different states. The court

6

found the "pleading [] devoid of any redeeming feature as respects the underlying purposes of the joinder rules," since it "in no way … expedites the adjudication of the asserted claims" but instead "would obstruct and delay the adjudication process." *Id.* at *3. Numerous other cases "list multiple plaintiffs in a single civil action," but the court declined to "address the propriety of joinder" for those cases (where jurisdiction was not at issue)—it determined that decisions on the propriety of joinder could wait, potentially until remand to "the transferor districts." *Id.* at *5. Five years later—after a settlement had been reached—the court *did* decide the joinder issue, but only for the plaintiffs who opted-out of the settlement. *See In re Diet Drugs*, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004). For those who chose to litigate further, the court ruled that joinder would "severely impair the efficient administration of justice, including discovery." *Id.* at 542. This makes practical sense—these particular litigants were requiring additional litigation, and severing was a practical, discretionary choice.

With limited analysis, the *Baycol* case adopted the reasoning from *Diet Drugs*, though it did not acknowledge that the *Diet Drugs* MDL left misjoinder for after settlement, making its rule much stricter. *In re: Baycol Prod. Liab. Litig.*, No. MDL1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002). The court acknowledged that no binding authority required it to rule either way. Notably, *Baycol* has been largely abrogated by the Eighth Circuit's ruling in *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613 (8th Cir. 2010). There, expressly relying upon the same standard from *Mosley* that the Eleventh Circuit endorsed in the *Alexander* case, the court explained that "the Eighth Circuit has provided a very broad definition for the term 'transaction.'" *Id.* at 622. It rejected a fraudulent misjoinder argument (the same procedural posture as *Diet Drugs*), holding that the plaintiffs' claims *did* arise from the same transactions or occurrences:

> Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT

7

> drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs. Plaintiffs contend their claims are logically related because they each developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs.

*Id.* at 623. The Eighth Circuit found a "a palpable connection between the plaintiffs' claims against the manufacturers as they all relate to similar drugs and injuries and the manufacturers' knowledge of the risks of HRT drugs." *Id.* Subsequent cases have declined to follow *Baycol* because it "was decided prior to the *Prempro* decision." *Swann v. Johnson & Johnson*, No. 4:14-CV-1546, 2014 WL 6850776, at *4 n.1 (E.D. Mo. Dec. 3, 2014).[3]

In short, the principal published appellate authorities (*Prempro* and *Abraham*[4]) side with joinder. Wright & Miller says that Rule 20 allows it. The authors of the federal rules have stated that the purpose was to allow it. The Supreme Court has said joinder should be liberal. That MDL courts—contemplating active litigation—have disfavored joinder says nothing about its appropriateness here, where the next step is not discovery, but an appeal.

The Court should grant limited relief by amending PTO 31 to authorize multi-plaintiff filings. Such relief serves the interests of justice and judicial economy without in any way prejudicing Defendants, who can make whatever misguided Rule 20 arguments they wish to lodge

---

[3] The Court discussed the *Rezulin* case as well, but that case is unpersuasive after *Prempro*, since it applied the fraudulent misjoinder standard, but—taking "another path" that no other court has adopted—determined that a different rule applies when addressing *Plaintiff* joinder as compared to *Defendant* joinder. *See In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147-48 & n.57 (S.D.N.Y. 2001). That rule lacks support in text or precedent.

[4] Defendants may suggest that there is a difference between ordinary product liability cases and pharmaceutical cases. It is certainly true that pharmaceutical cases are more complex to *litigate*, and so, as a trial-management matter, joinder may be less efficient and less favored—but that difference says nothing about what "transaction or occurrence" means. If that standard is liberal in normal product liability cases, then it can be liberal in pharmaceutical cases. The only question is whether joinder is appropriate from an efficiency standpoint—and here it clearly is.

8

when faced with actual, multi-plaintiff pleadings. This Court may never have occasion to address such arguments, and in the interim, Plaintiffs can pursue appeals in a streamlined, cost-effective, manner, exactly as contemplated by the very first Federal Rule of Civil Procedure.

## OPTIONS

At the hearing last week, Plaintiffs' Co-Lead Counsel informed the Court that LMI would have data on the Registry Claimants that might be helpful for this issue. After consultation with LMI and lengthy internal review of the data, while there are multiple pertinent sections of data within the Registry—state of Residence (Not by federal district), usage, anticipated defendants, diagnosis, etc.—the following options would accomplish the goals expressed by Plaintiffs in the Original Motion and in Court last week:

(1) Each plaintiffs' law firm may file consolidated multi-plaintiff complaints, directly into this Court, and group its clients by judicial district, filing in one action all plaintiffs from a particular venue. To the extent any particular law firm has more than 150 clients from a particular venue, each law firm may only file 150 plaintiffs per complaint (or whatever number the Court deems fair). After April 5, 2023, the Brand Defendants, including Patheon will file a show cause motion why the *Daubert* and summary judgment motions do not apply to the newly filed individual plaintiffs. The Court will rule that upon completion of the appeals, and a reversal of the *Daubert* and summary judgment rulings, the complaints will at that point be severed into separate individual filings per individual plaintiff, with each plaintiff paying its own separate filing fee.

(2) Same as No. 1, except that a decision on severance would be deferred until after the appeals are complete.

(3) Each plaintiffs' law firm may file consolidated multi-plaintiff complaints, directly into

9

this Court, and group its clients by state of residence of the plaintiff or plaintiff's representative, filing in one action all plaintiffs from a particular state. To the extent any particular law firm has more than 150 clients from a particular state, each law firm may only file 150 plaintiffs per complaint (or whatever number the Court deems fair). After April 5, 2023, the Brand Defendants (including Patheon) will file a show cause motion why the *Daubert* and summary judgment motions do not apply to the newly filed individual plaintiffs. The Court will rule that upon completion of the appeals, and a reversal of the *Daubert* and summary judgment rulings, the complaints will at that point be severed into separate individual filings per individual plaintiff, with each plaintiff paying its own separate filing fee.

(4) Same as No. 3, except that a decision on severance would be deferred until after the appeals are complete.

(5) Each plaintiffs' law firm may file multi-plaintiff complaints, directly into this Court, and group its clients how it sees fit. To the extent any particular law firm has more than 150 clients, each law firm may only file 150 plaintiffs per complaint (or whatever number the Court deems fair). After April 5, 2023, the Brand Defendants (including Patheon) will file a show cause motion why the *Daubert* and summary judgment motions do not apply to the newly filed individual plaintiffs. The Court will rule that upon completion of the appeals, and a reversal of the *Daubert* and summary judgment rulings, the complaints will at that point be severed into separate individual filings per individual plaintiff, with each plaintiff paying its own separate filing fee.

(6) Any combination of the above, with one additional feature. After April 5, 2023, the Court will issue a stay as to all newly filed complaints and stay these actions until the

completion of the appeals. As a result, there will be no need for additional motions, responses, orders, etc. for the newly filed complaints.

## CONCLUSION

This Court unequivocally has the legal authority to grant this motion. The equities clearly weigh in favor of accommodating the multiplaintiff complaint filings to allow these Registry Claimants an economical and efficient opportunity to preserve their rights in this litigation.

Dated: January 17, 2023                         Respectfully submitted,

/s/ Tracy A. Finken                             By: /s/ Robert C. Gilbert
Tracy A. Finken                                 Robert C. Gilbert, FBN 561861
Email: tfinken@anapolweiss.com                  Email: gilbert@kolawyers.com
ANAPOL WEISS                                    KOPELOWITZ OSTROW FERGUSON
One Logan Square                                WEISELBERG GILBERT
130 North 18th Street, Suite 1600               2800 Ponce de Leon Boulevard, Suite 1100
Philadelphia, PA 19103                          Coral Gables, FL 33134
Tel: (215) 735-1130                             Tel: (305) 384-7270


/s/ Michael L. McGlamry                         /s/ Adam Pulaski
Michael L. McGlamry                             Adam Pulaski
Email: efile@pmkm.com                           Email: adam@pulaskilawfirm.com
POPE McGLAMRY, P.C.                             PULASKI KHERKHER, PLLC
3391 Peachtree Road NE, Suite 300               2925 Richmond Avenue, Suite 1725
Atlanta, GA 30326                               Houston, TX 77098
Tel: (404) 523-7706                             Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan                             Mark J. Dearman, FBN 0982407
Email: Rosemarie.bogdan@1800law1010.com         Email: mdearman@rgrdlaw.com
MARTIN, HARDING & MAZZOTTI                      ROBBINS GELLER RUDMAN & DOWD
1 Wall Street                                   120 East Palmetto Park Road, Suite 500
Albany, NY 12205                                Boca Raton, FL  33432
Tel: (518) 862-1200                             Tel: (561) 750-3000


Elizabeth A. Fegan                              Marlene J. Goldenberg
Email: beth@feganscott.com                      Email: mjgoldenberg@goldenberglaw.com
FEGAN SCOTT, LLC                                GOLDENBERG LAW, PLLC
1456 Sycamore Rd.                               800 LaSalle Avenue, Suite 2150
Yorkville, IL 60560                             Minneapolis, MN  55402
Tel: (312) 741-1019                             Tel: (855) 333-4662

Ashley Keller
Email: ack@kellerpostman.com
KELLER | POSTMAN
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (312) 741-5222

Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email: luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email: frank@maderalbyrne.com
MADERAL BYRNE PLLC
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 520-5690

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: laurenm@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1914 4th Avenue North
Suite 320
Birmingham, AL 35203
Tel: (205) 533-4175

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4629

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Steven B. Rotman
Email: srotman@housfeld.com
HAUSFELD, LLP
One Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 207-0602

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Avenue SE
Third Floor
Washington, DC 20032
Tel: (202) 506-3591

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

*Plaintiffs' Steering Committee*

Brooke Achua
Email: brooke@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd., 46th Floor
Yorkville, IL 60560
Tel: (646) 502-7910

Harrison M. Biggs
Email: hbiggs@yourlawayer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4633

Lea P. Bucciero
Email: lbucciero@podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Marlo E. Fisher
Email: marlo@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

Noah Heinz
Email: noah.heinz@kellerpostman.com
KELLER | POSTMAN
1100 Vermont Avenue NW, Floor 12
Washington, DC 20005
Tel: (202) 918-1841

Caroline G. McGlamry
Email: carolinemcglamry@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Laura K. Stemkowski
Email: lstemkowski@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9165

Alexander C. Cohen
Email: acohen@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Kendra Goldhirsch
Email: goldhirsch@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Catelyn McDonough
Email: cmcdonough@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

Madeline Pendley
Email: mpendley@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7003

Daniel E. Tropin
Email: tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (954) 990-2216

*Plaintiffs' Leadership Development Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Robert C. Gilbert*
Robert C. Gilbert