UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)            MDL No. 2924
PRODUCTS LIABILITY                 20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

**BRAND DEFENDANTS' OPPOSITION TO MDL PLAINTIFFS' LEADERSHIP'S RENEWED EXPEDITED MOTION TO PERMIT MULTIPLAINTIFF COMPLAINTS FOR REGISTRY CLAIMANTS WHO ARE CERTIFIED FEDERAL PARTICIPANTS**

At the January 12, 2023 hearing on Plaintiffs' Leadership's Motion to Permit Multi-Plaintiff Complaints, the Court requested that Plaintiffs address two "new issues" in a renewed motion: (1) whether Registry Claimants can properly be joined in multi-plaintiff complaints under Federal Rule of Civil Procedure 20,[1] and (2) whether, "in light of Rule 20" and after "undertak[ing] an analysis of . . . LMI data," Plaintiffs' Leadership could offer any alternative proposals for multi-plaintiff complaints that were not outlined in their prior Motion that would satisfy Rule 20.  1/12/23

---

[1] Plaintiffs' Leadership claims that the Brand Defendants "did not raise the issue of the Court's authority under Rule 20." Renewed Mot. at 2.  But as the Court noted and Plaintiffs' Leadership conceded at the hearing on their original motion, *Plaintiffs* never raised the issue of whether joinder was proper under Rule 20.  *See* Jan. 23, 2023 Tr. at 36:17-37:6 (conceding that Rule 20 issues "have not [been] briefed").  Indeed, the only mention of Rule 20 in Plaintiffs' Leadership's original briefing on this issue is a single sentence in their opening brief:  "Rule 20 permits party joinder, and Rule 1 teaches that federal civil procedure should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Dkt. 6133 at 3 (internal quotations omitted).  Brand Defendants were not obligated to oppose arguments never raised by Plaintiffs' Leadership in the first instance.

1

Tr. at 43:12–45:10.  Plaintiffs' Leadership's Renewed Motion makes clear that the answer to both of the Court's questions is "no."

As the Court noted at the hearing, the overwhelming weight of authority, including the decisions in *In re Orthopedic Bone Screw*, *In re Baycol*, *In re Diet Drugs*, and *In re Rezulin*, holds that joinder of plaintiffs is improper in pharmaceutical product liability cases because individual issues such as causation preclude a finding that the claims arise from the same or similar transactions or present common issues of fact and law as required by Rule 20(a).  *See* 1/12/23 Tr. at 31:4–33:16.  In their Renewed Motion, Plaintiffs' Leadership failed to meaningfully engage with any of the Court's cited authority or the myriad other cases that similarly make clear that Registry Claimants' claims cannot be properly joined, instead relying on inapposite case law that has no bearing on the circumstances that exist here.

Moreover, in offering additional alternative ways to structure multi-plaintiff complaints, Plaintiffs' Leadership failed to analyze the individualized issues that would ordinarily preclude Rule 20(a) joinder of Registry Claimants' claims, including the products allegedly ingested by each Registry Claimant, which defendants manufactured or marketed those products, and the alleged cancer injury of each Registry Plaintiff.  *See* 1/12/23 Tr. at 44:2–18.  Instead, Plaintiffs' Leadership proposes that each plaintiff firm arbitrarily be permitted to file multi-plaintiff complaints of 150 plaintiffs ("or whatever number the Court deems fair") to be grouped by judicial district, state of residence, or however each plaintiff firm "sees fit."  Renewed Mot. at 9–11.  But the only reason Registry Claimants seek to file multi-plaintiff complaints is to avoid the associated filing fees, *see* Original Mot. at 3, which would undo pretrial orders long ago negotiated by the parties and entered by the Court, *see* Original Opp'n at 1.  Numerous courts have rejected similar

proposals on the grounds that they do not pass muster under Rule 20. The same result is warranted here.

## ARGUMENT

### A.     Joinder Is Improper Under Rule 20(a)

Plaintiffs' Leadership bears the burden of demonstrating that joinder is proper under Rule 20 and must show that: (1) plaintiffs' claims "arise[] from the same underlying transaction or series of transactions," and (2) plaintiffs' claims "have a common factual or legal basis." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002); *accord In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1995 WL 428683, at *6 (E.D. Pa. July 17, 1995) (explaining that joinder under Rule 20 requires a showing of "the same occurrence or transaction, or series thereof, **and** a common question of fact and law" (emphasis in original)).

Plaintiffs' Leadership suggests that Rule 20(a)'s requirements must be "read as broadly as possible whenever doing so is likely to promote judicial economy." Renewed Mot. at 3. Not so. To the contrary, "Rule 20 does not mandate joinder, and even when joinder is permissible, courts may refuse it." *Nelson v. Blue Eyed Holdings, Inc.*, 2013 WL 6238056, at *4 (S.D. Fla. Dec. 3, 2013). Nor is it true that the procedural posture of this case—*i.e.*, that plaintiffs seek joinder in order to appeal a summary judgment ruling—renders Rule 20(a)'s requirements any less applicable. Indeed, Plaintiffs' Leadership fails to point to a single case that makes this distinction, and the overwhelming body of case law applying Rule 20 to pharmaceutical litigation concludes that multi-plaintiff complaints do not satisfy Rule 20(a).[2]

---

[2] Plaintiffs' Leadership claims in its Renewed Motion that "[a]ll agree that there are many questions of law or fact common to all plaintiffs" and that therefore the Court need only address the first prong. Renewed Mot. at 3. That is incorrect. At the January 12, 2023 hearing, Brand Defendants made clear that the "common question" prong of Rule 20(a) was ***not*** met. *See* 1/12/23 Tr. at 48:10-23 (Mr. Cheffo: "[W]e'll look at what [Plaintiffs' Leadership] has to say, but I think

3

Plaintiffs' Leadership fails to satisfy the first prong of Rule 20(a) because the Registry Claimants' claims do not arise out of "the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(1)(A). As Plaintiff's Leadership concedes, the only factual link between each of the Registry Claimants is that they allegedly ingested Zantac and were injured as a result of Defendants' failure to warn of an alleged cancer risk. *See* Renewed Mot. at 5. But "[t]he majority of courts to address joinder in the context of drug liability cases have found that basing joinder merely on the fact that the plaintiffs ingested the same drug and sustained injuries as a result thereof is insufficient to satisfy Rule 20(a)'s 'same transaction' requirement." *Cumba v. Merck & Co.*, 2009 WL 1351462, at *1 (D.N.J. May 12, 2009); *see also Flauta v. Johnson & Johnson*, 2013 WL 12138986, at *3 (C.D. Cal. Jan. 10, 2013) ("The Court is persuaded by the weight of authority finding joinder improper when based solely on the commonality that all plaintiffs ingested the same drug manufactured by the defendant and suffered similar injuries as a result."); *Stinette v. Medtronic, Inc.*, 2010 WL 767558, *2 (S.D. Tex. March 3, 2010) ("[T]he great weight of the case law seems to support[s]" a finding that plaintiffs are "not properly joined when the only common link among them was a defective drug or medical device"); *Chaplin v. C.R. Bard, Inc.*, 2009 WL 10699136, at *3 (N.D. Ga. Dec. 1, 2009) ("[D]istrict courts around the country have almost uniformly rejected the idea that multiple plaintiffs can be properly joined under Rule 20 simply because they were injured by the same product.").

The reason that joinder of plaintiffs in pharmaceutical cases is improper is just as the Court stated: the "individual causation inquiry [is] distinct." 1/12/23 Tr. at 33:9–16. As the court in *In re Orthopedic Bone Screw* explained, in pharmaceutical product cases, "there are many differences

---

there is a crushing amount of case law that supports" a finding that "failure to warn" is not "a common question" under Rule 20.).

4

in the unique histories of each plaintiff" that cannot be squared with Rule 20(a)'s "transaction or occurrence requirement," which "requires at a minimum that the central facts of each plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances." 1995 WL 428683, at *2 (E.D. Pa. July 17, 1995); *see also McGrew v. Howmedica Osteonics Corp.*, 2015 WL 159367, at *2 (S.D. Ill. Jan. 13, 2015) (denying joinder and noting that "[i]n the medical products liability context, 'medical and legal causation present formidable obstacles under Rule 20.'" (quoting *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D. Wis.1999)).

Plaintiffs' Leadership attempts to distinguish *In re Orthopedic Bone Screw* by claiming that the court in that case deemed it a "close" call, suggesting that the court disposed of the claims under Rule 20(b) rather than Rule 20(a), and noting that the court left it to the parties to "confer on the best path forward for future filings." Renewed Mot. at 6. Not so. Nowhere in the opinion did the court opine that it was a "close" call on whether joinder was proper. The court unequivocally found that the parties were misjoined "under Federal Rule of Civil Procedure 20(a)" because they were "not bound together by the same occurrence or transaction, or series thereof, *and* a common question of fact and law" and left open whether any "future" attempts at joinder could withstand scrutiny under Rule 20(a) based on facts later presented to the court. *In re Orthopedic Bone Screw*, 1995 WL 428683, at *6 (emphasis in original). The court left it to the parties to determine "*where* future individual or properly joined civil actions [were] to be filed" because of *venue* considerations, *id.* at *7 (emphasis added); it never endorsed future multi-plaintiff complaints absent a showing that they met the requirements of Rule 20(a).

*In re Orthopedic Bone Screw* is consistent with the countless decisions of other courts that have rejected joinder of multiple plaintiffs in pharmaceutical products liability actions because of individualized facts required to plead and prove specific causation. *See, e.g.*, *Graziose v. Am.*

5

*Home Prod. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001) (finding that the "purchases/ingestions of the medications in question clearly did not arise out of the same transaction or a series of transactions" where they "occurred at different times," and involved different "medicines" and "manufacturers"); *Hyatt v. Organon USA, Inc.*, 2012 WL 4809163, at *1 (E.D. Mo. Oct. 10, 2012) (finding that "Plaintiffs' injuries did not arise out of the same transaction or occurrence" where "[e]ach Plaintiff was injured at different times in different states allegedly from their use of NuvaRing that was presumably prescribed by different healthcare providers"); *In re Accutane Prod. Liab. Litig. MDL No. 1626*, 2012 WL 12012431, at *1 (M.D. Fla. Sept. 20, 2012) (severing plaintiffs where they "reside[d] in different states, allegedly ingested Accutane at different times, and have allegedly been diagnosed with different adverse reactions to Accutane"); *Adams v. I-Flow Corp.*, 2010 WL 1339948, at *8 (C.D. Cal. Mar. 30, 2010) (finding that the "sole common allegation" of product use does "not constitute a same transaction, occurrence, or series of transactions or occurrences" where different versions of product involved, as well as "numerous other . . . risk factors, and circumstances unique to each plaintiff"); *cf. In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 651 (S.D. Tex. 2005) (finding improper joinder under Rule 20 where plaintiffs had "no relevant connection to each other, outside of the fact that all are alleged to have been exposed to respirable silica," but "worked in different locations, for different lengths of time, at different occupations, using different products"); *Matter of Asbestos II Consol. Pretrial*, 1989 WL 56181, at *1 (N.D. Ill. May 10, 1989) (finding no "similar transaction or occurrence" where plaintiffs "suffer[ed] from the same asbestos-related disease," but their "exposure differ[ed] as to duration and magnitude").  The same is true here:  Registry Claimants reside in different jurisdictions, ingested different formulations and dosages of ranitidine products at different times,

6

and allege different cancers. Accordingly, their claims do not arise from the same transaction or series of transactions.

Plaintiffs' Leadership also fails to satisfy the second prong of Rule 20(a) because there is no question of law or fact "common to all plaintiffs." FED. R. CIV. P. 20(a)(1)(B). As courts have recognized, "given the complicated causation questions that pervade drug product liability claims, [p]laintiffs' claims will require divergent questions of law and fact." *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 2012 WL 1118780, at *4 (D.N.J. Apr. 3, 2012), aff'd, 751 F.3d 150 (3d Cir. 2014). At the January 12, 2023 hearing, Plaintiffs' Leadership argued that the "common question" that satisfies Rule 20(a) is whether Brand Defendants' "fail[ed] to warn" of an alleged cancer risk. 1/12/23 Tr. at 35:4–6; *see also* Renewed Mot. at 5. But "common issues of law does not mean common issues in area of the law," and here, while the claims alleged against the Brand Defendants may be the same, the question of whether any Brand Defendant allegedly failed to warn any Registry Claimant will not be common because Brand Defendants did not market and sell the product at the same time, but instead at different times over the course of four decades. *Graziose*, 202 F.R.D. at 640 (finding that questions of law and fact were not sufficiently common in pharmaceutical product liability litigation based, in part, on plaintiffs' use of different medicines manufactured by different defendants).

Moreover, as the Court in *In re Baycol* stated, even if the "defendants' conduct is common to all of plaintiffs' claims and . . . the legal issues of duty, breach of duty and proximate cause and resulting harm are common," that is nevertheless insufficient to meet Rule 20(a)'s requirements. *In re: Baycol Prod. Liab. Litig.*, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002). Numerous other courts are in accord. *In re Diet Drugs*, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) (rejecting "issues of duty, breach of duty, proximate cause and resulting harm" as common issues

7

that satisfy Rule 20); *Warner v. Stryker Corp.*, 2009 WL 1773170, at *2 (D. Or. June 22, 2009) (holding that "a common theory of liability" does not satisfy Rule 20); *McNaughton v. Merck & Co.*, 2004 WL 5180726, at *2 (S.D.N.Y. Dec. 17, 2004) (finding that the question of whether a defendant "allegedly fail[ed] to warn consumers and doctors of the potential harms of [a pharmaceutical product]" could give rise to "factual and legal questions relevant to all of the plaintiffs," but nevertheless did not satisfy the requirements of Rule 20); *Simmons v. Wyeth Lab'ys*, 1996 WL 617492, at *4 (E.D. Pa. Oct. 24, 1996) (rejecting alleged "misrepresentations or failures to warn by defendants" as sufficient to satisfy Rule 20).[3]

Plaintiffs' Leadership claims that *In re Baycol* (and its reliance on *In re Diet Drugs* and *In re Rezulin*) was somehow abrogated by *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613 (8th Cir. 2010). That, too, is wrong. In *Prempro*, the defendants removed a multi-plaintiff complaint to federal court on grounds that the non-diverse plaintiffs were fraudulently joined. *Id*. at 619. Thus, the question the court resolved was whether **defendants** had met their burden to establish that the plaintiffs' claims were "egregiously misjoined," not whether **plaintiffs** had met their burden to demonstrate proper joinder under Rule 20(a). *Id*. at 623. Indeed, the Eighth Circuit expressly stated that it was "mak[ing] no judgment on whether the plaintiffs' claims [were] **properly** joined under Rule 20." *Id*. (emphasis in original); *accord In re Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570, at *9 (E.D.N.Y. May 17, 2013) (noting that "the [*Prempro*] court made clear that it was not finding that the claims were properly joined, just that any such misjoinder was not fraudulent"). Following *Prempro*, courts within this circuit continue to cite *In re Baycol*, *In re*

---

[3] As the court in *In re Orthopedic Bone Screw* explained, "commonality" in the context of Rule 20 is intertwined with the question of whether claims arise out of the same transaction or series of transactions. 1995 WL 428683, at *3. Thus, courts often conflate the analysis of whether common legal or factual questions exist with whether and to what extent the claims arise out of the same transaction or series of transactions.

*Diet Drugs*, and *In re Rezulin* favorably in finding misjoinder under Rule 20. *See, e.g.*, *Addis v. Barnett Outdoors, LLC*, 2016 WL 4183461, at *1 (M.D. Fla. Aug. 8, 2016) (citing the three cases in finding claims against crossbow manufacturer improperly joined); *In re Accutane Prod. Liab. Litig.*, 2012 WL 4513339, at *1 (citing the three cases in finding claims against pharmaceutical manufacturers improperly joined). In sum, *In re Baycol*, *In re Diet Drugs*, and *In re Rezulin* are, as this Court indicated, analogous to the facts at issue here, and demonstrate that Registry Claimants do not satisfy Rule 20(a).

Plaintiffs' Leadership's arguments that they have met their burden under Rule 20(a) rest on inapposite or misconstrued case law. Plaintiffs' Leadership points to *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 251 (2d Cir. 1986), and cases that have cited it favorably to support their argument that Registry Claimants' claims are "logically related transactions" and therefore satisfy Rule 20(a)'s "same transaction" requirement. Renewed Mot. at 4. But the facts of *Abraham* and these other cases identified by Plaintiffs demonstrate that those cases are inapposite. Specifically, those cases did not present the same individual specific causation issues that this Court previously identified, including differing defendants, differing products, and differing injuries. *See* 1/12/23 Tr. at 44:2–18. Accordingly, these cases have no bearing on this pharmaceutical mass tort litigation.

In *Abraham*, the 119 plaintiffs at issue all alleged the purchase of a single make and model of car (Volkswagen Rabbit), manufactured by a single manufacturer (Volkswagen of America) over a limited time period (1975-1979). 795 F.2d 238, 241 (2d Cir. 1986). In *In re Stand 'n Seal, Prod. Liab. Litig.*, the seven plaintiffs seeking joinder used the same product (Stand 'n Seal "Spray-On" Grout Sealer), made by the same manufacturer, and used the product within the same four-month period (April through July 2005). 2009 WL 2224185, at *1 (N.D. Ga. July 21, 2009). In

9

*Poleon v. General Motors Corp.*, five police officers claimed they sustained injuries in accidents involving a single make and model of vehicle (Chevy Blazers) manufactured by a single defendant (GM) in a single year (1998) as a result of a single defect (the Anti-Lock Braking System). 1999 WL 1289473, at *1 (D.V.I. Jan. 5, 1999).

None of these cases addressed whether plaintiffs with entirely different medical histories alleging different product use at different times with different alleged injuries could be properly joined. For this reason, the court in *In re Rezulin* specifically opined that "*Abraham* does not control" in "toxic tort cases" involving a pharmaceutical product where the plaintiffs do not allege "they received [the product] from the same source or that they were exposed to the [product] for similar periods of time." *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 146 (S.D.N.Y. 2001); *see also Chaplin*, 2009 WL 10699136, at *3 (declining to follow *In re Stand 'n Seal* because "pharmaceutical toxic tort cases raise more complicated and plaintiff-specific issues than cases involving pure product defects").

*Waterfall Homeowners Ass'n v. Viega*—also cited by Plaintiffs' Leadership—further underscores that plaintiffs in pharmaceutical products litigations cannot properly be joined under Rule 20(a). There, the plaintiff homeowners alleged claims against a single homebuilder and the plumbing companies that installed the same allegedly defective product (yellow brass plumbing fittings) that was manufactured by one of two different manufacturers. 279 F.R.D. 586, 587 (D. Nev. 2012). In a report and recommendation, the magistrate judge applied *Abraham* to find that the **defendants**—not the **plaintiffs**—were properly joined, which is a separate inquiry under Rule 20. 279 F.R.D. 586, 587 (D. Nev. 2012).[4] Regardless, the court in *Waterfall Homes* distinguished

---

[4] Even as to that finding, on review, the district court judge called into question the magistrate judge's reliance on *Abraham* to find that joinder of the two defendant manufacturers was proper because in *Abraham*, the claims were all alleged against "a single manufacturer" and thus *Abraham*

the claims alleged against the two manufacturers there from the claims alleged against pharmaceutical manufacturers in *Graziose*, on the grounds that the plaintiffs' claims in *Graziose* "'involved distinct and varied individual health conditions and histories, as well as different medicines with distinct propensities, which may have contributed to the effects of the individual medicines on individual persons.'" 279 F.R.D. at 592 (quoting *Graziose*, 202 F.R.D. at 640).

The only pharmaceutical case that Plaintiffs' Leadership cites that applies *Abraham* is *Jacobs v. Watson Pharms., Inc.* 2011 WL 2216257, at *2 (N.D. Okla. June 7, 2011). But the holding of that case cannot be extrapolated to the facts here. *Jacobs* involved the claims of two decedents who used a fentanyl patch manufactured by the same defendant were at issue, and the court found that there would be "overlapping proof and duplication in testimony" given that "the two deaths occurred less than one year apart, occurred close in time after each decedent's use of the patch, . . . occurred in Oklahoma," and "[b]oth decedents were examined by the same medical examiner in Oklahoma City, Oklahoma." *Id*. at *4. Those are not the circumstances that exist here where the Registry Claimants are from states across the country and used different Zantac products manufactured by different defendants, over four decades.

In sum, Plaintiffs' Leadership fails to demonstrate that Registry Claimants meet Rule 20(a)'s requirements for permissive joinder. The Renewed Motion should therefore be denied.

---

could "no[t] support the joinder" of plaintiffs' claims against "multiple manufacturers." *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 585 (D. Nev. 2012), on reconsideration, 2012 WL 5944634 (D. Nev. Nov. 26, 2012). The district judge ultimately found that the motion for reconsideration as to severance of defendants was moot because it dismissed the moving defendants on other grounds. *Id*. at 586.

### B. Plaintiffs' Alternative Proposals for Multi-Plaintiff Complaints Do Not Satisfy Rule 20(a)

For the first time at the January 12, 2023 hearing, Plaintiffs' Leadership suggested that there could be alternative formulations of multi-plaintiff complaints to those proposed in its Original Motion that would address the Court's concerns as to the propriety of joinder under Rule 20. More specifically, Plaintiffs' Leadership indicated that they could look at data within the LMI Registry database, including "the named Defendant . . . in each case" and "what products [the Claimants] were using." 1/12/23 Tr. at 25:10–19. The Court requested that Plaintiffs' Leadership "undertake an analysis of their LMI data, . . . and in light of Rule 20, . . . come back to the Court in a renewed motion" with proposed alternatives that "might take into account the Defendant, the product, the cancer," as well as the "judicial district" and "any other category" of information. *Id*. at 44:2–18.

But the options proposed by Plaintiffs' Leadership in the Renewed Motion do not reflect any such analysis of the LMI data. Instead, under the six alternative multi-plaintiff complaint scenarios proposed, Plaintiffs' Leadership suggests that each plaintiff firm be permitted to group an arbitrarily-selected 150 plaintiffs per complaint ("or whatever number the Court deems fair"),[5] with each complaint to be comprised of plaintiffs from the same judicial district or state, or however each firm "sees fit." Renewed Mot. at 9–11. That does not comply with the Court's directive or Rule 20(a).

---

[5] In proposing 150 Registry Claimants per multi-plaintiff complaint, Plaintiffs' Leadership apparently relies on the amended case management order entered in *In re Depuy Orthopaedics, Inc.,* which permitted the "bundling" of 150 plaintiffs in a single complaint. Renewed Mot. at 5,9–10. Plaintiffs' Leadership fails to provide any context (nor can Brand Defendants discern it) for the *In re DePuy* court's decision to amend its case management order to allow for the "bundling" of complaints. No motion to amend appears on the docket for *In re Depuy*, and there is no indication in the Court's amended case management order as to whether the change was made at the joint request of the parties, *sua sponte* by the court, or for any other reason.

Plaintiffs' Leadership failed to consider the issues relevant to specific causation that the Court identified such as the Defendants named, the product ingested, and the cancer alleged and which, as discussed, preclude a finding of proper joinder under Rule 20(a). And while at least some of the alternative proposals identified take into account the Registry Claimants' judicial district, that is not enough under Rule 20(a); as courts have recognized, "to simply group the plaintiffs by judicial district or to simply group them primarily for filing convenience, would not satisfy the terms required in Rule 20 nor the purpose for which Rule 20 seeks to ease the burden of litigation in groups of similarly situated persons." *In re Orthopedic Bone Screw*, 1995 WL 428683, at *1; *In re Baycol Prods. Liab. Litig.*, 2002 WL 32155269, at *2 (same).

Moreover, grouping Registry Plaintiffs by judicial district or state of residence solves none of the issues raised by the Court at the January 12, 2023 hearing and underscores why joinder of these Registry Claimants would be improper. These Registry Claimants would share no "factual" or "temporal" relationship, and thus, if their claims were ever remanded following an appeal of the Court's *Daubert* order to the Eleventh Circuit, they would need to be severed as "no reasonable person" would "expect [these claims] to be tried together." *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 2012 WL 1118780, at *5. Plaintiffs' Leadership concedes as much, "agreeing" at the January 12 hearing that "at some point there [will] be a severance," (1/12/23 Tr. at 42:3–8), but then fails to articulate any "case management reason . . . for the Court to exempt the registry claimants from pretrial order [31]'s requirement for individual short form complaints." *Id*. at 5:11–16. Instead, by proposing that each plaintiff firm be permitted to group plaintiffs by judicial district, state of residence, or however each firm "sees fit," (Renewed Mot. at 9–11), it is clear "that the true reason for the [requested] joinders" is that Plaintiffs' Leadership wish to each file their existing "inventory" of cases en masse to avoid filing fees. *In re Silica Prod. Liab. Litig.*,

13

398 F. Supp. 2d at 651 (rejecting joinder of plaintiffs whose only connection was alleged exposure to the same product). But "[o]f course, while these reasons might explain the [requested] joinders, they do not make the joinders proper under Rule 20." *Id*.

Nor would it be efficient for Registry Claimants to file individual complaints if the Court's *Daubert* ruling were reversed and any of their claims remanded to this Court, as Plaintiffs' Leadership proposes. For example, under any of the scenarios proposed by Plaintiffs' Leadership, a plaintiff firm could lump together different designated cancer types. Thus, if only one or some other subset of designated cancers were ever remanded to this Court for further proceedings, the Court would have to go plaintiff-by-plaintiff through potentially hundreds of complaints to determine whether each was subject to any such remand order. The better, more efficient, and rule-compliant course would be for Registry Claimants to comply with PTO 31's requirement to file individual complaints and avoid any potential piecemeal severance process at some later date. Filing a short-form complaint imposes no greater financial or administrative burden on the Registry Claimants than what was required of any plaintiff who previously filed a case in this MDL.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Leadership's Renewed Motion should be denied.

Dated: January 19, 2023                                   Respectfully submitted,

**Lead Counsel:**

*/s/ Mark Cheffo*
Mark S. Cheffo
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599

14

mark.cheffo@dechert.com

*Counsel for Defendant GlaxoSmithKline LLC*

*/s/ Andrew T. Bayman*
Andrew T. Bayman
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
abayman@kslaw.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

/s/ *Anand Agneshwar*
Anand Agneshwar
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Counsel for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed on January 19, 2023 using the Court's CM/ECF system, which will provide automatic notification to all counsel of record.

*/s/ Mark Cheffo*
Mark S. Cheffo