**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION**

**MDL NO. 2924**
**20-MD-2924**

**JUDGE ROBIN L. ROSENBERG**
**MAGISTRATE JUDGE BRUCE E. REINHART**

______________________________/

**THIS DOCUMENT RELATES TO: ALL PUTATIVE CLASS ACTION CASES**

**REPLY IN SUPPORT OF CLASS PLAINTIFFS' MOTION TO STAY CLASS PROCEEDINGS PENDING THE OUTCOME OF APPELLATE PROCEEDINGS ON THIS COURT'S *DAUBERT* AND SUMMARY JUDGMENT RULINGS**

Class Plaintiffs urge the Court to stay all class proceedings pending the outcome of the forthcoming appellate proceedings arising from the Court's December 6, 2022 Omnibus Order on All Pending Motions and Defendants' Summary Judgment Motion (the "December 6 Order") [DE 6120]. Notwithstanding the Brand Defendants' arguments to the contrary [DE 6227], (i) Class Plaintiffs' economic loss and medical monitoring claims were *not* challenged by the Brand Defendants' *Daubert* and summary judgment motions and, therefore, are *not* subject to the December 6 Order, (ii) staying the class proceedings pending the outcome of the forthcoming appellate proceedings will efficiently preserve the *status quo ante* in this MDL, and (iii) Class Plaintiffs and thousands of putative class members are the *only* parties who will suffer prejudice absent a stay.

## I. The December 6 Order Only Applies to Personal Injury Cases on File Before the August 1, 2022 Deadline to Oppose Defendants' Motion for Summary Judgment.

Class Plaintiffs candidly acknowledged in our motion to stay [DE 6148] that the outcome of the forthcoming appellate proceedings arising from the December 6 Order will affect the contours of our economic loss and/or medical monitoring claims. For example, reversal of the December 6 Order in its entirety would be a green light for Class Plaintiffs' economic loss and

medical monitoring claims to proceed full speed, while affirmance of the December 6 Order in its entirety would likely spell the death knell of the medical monitoring claims, but not necessarily the economic loss claims. However, Class Plaintiffs are *not* parties to the personal injury cases in which the general causation experts were subjected to *Daubert* challenges, Brand Defendants have *not* moved for summary judgment against Class Plaintiffs' economic loss and/or medical monitoring claims, and the Court has *not* issued an order under Rule 56(f) to show cause why the December 6 Order should not result in entry of judgment against Class Plaintiffs on their economic loss and medical monitoring claims. As a result, dismissal of Class Plaintiffs' economic loss and medical monitoring claims is precluded under the current posture of Class Plaintiffs' claims, procedural due process under the Fourteenth Amendment, bedrock preclusion doctrine, and the Federal Rules of Civil Procedure.

Under the Fourteenth Amendment, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Procedures must "be tailored, in light of the decision to be made . . . to insure that [parties] are given a meaningful opportunity to present their case." *Id*. at 349. The due-process guarantee limits who can be bound by a court's rulings. There is a "general consensus 'in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he . . . is not designated as a party or to which he has not been made a party by service of process.'" *Richards v. Jefferson Cnty*., 517 U.S. 793, 798 (1996) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). That "rule is part of our 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981)). True, a "judgment or decree among parties to a lawsuit resolves issues as

among them, but it does not conclude the rights of strangers to those proceedings." *Id*. (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989) (emphasis added)).

The Supreme Court held that because a non-party has not had a "full and fair opportunity to litigate," claim and issue preclusion do not apply except in specific, limited circumstances. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Those include an express agreement to be bound by a test case, certain types of interests in property, representative suits, a suit in which a non-party assumed control over the first litigation, or specific legal regimes such as bankruptcy. *Id*. at 895. None of those limited circumstances apply to MDLs in general or to this MDL in particular. The "very premise" that cases in an MDL can be considered as a whole "is wrong" since "the cases within an MDL 'retain their separate identities.'" *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020) (quoting *Gelboim v. Bank of Am. Corp*., 574 U.S. 405, 413 (2015)). An MDL "court's decision whether to grant a motion…in an individual case depends on the record in that case and not others. Nor can a party's rights in one case be impinged to create efficiencies in the MDL generally." *Id*.

Rather, MDL courts have no "authority to disregard the Rules' requirements … in favor of enhancing the efficiency of the MDL as a whole." *Id*. at 844. "MDLs are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance. For neither § 1407 nor Rule 1 remotely suggests that, whereas the Rules are law in individual cases, they are merely hortatory in MDL ones." *Id*. There is no question that in an ordinary case involving the same or a similar drug, no court could issue summary judgment rulings in one case and apply them to a different case that does not raise the same causes of action or seek the same recovery.

A review of the Brand Defendants' *Daubert* and summary judgment motions confirms that none referenced nor sought relief against Class Plaintiffs' economic loss claims pleaded in the

Second Consolidated Amended Consumer Economic Loss Class Action Complaint ("SAELC") [DE 3884], including allegations regarding adulteration in the operative economic loss complaints, or against the medical monitoring claims pleaded in the Amended Consolidated Medical Monitoring Class Action Complaint ("AMMC") [DE 3887]. Brand Defendants' *Daubert* and summary judgment motions were solely directed against the claims pleaded in the Second Amended Master Personal Injury Complaint ("SAMPIC") [DE 3883] with respect to the five "Designated Cancers." Moreover, none of this Court's PTOs gave notice that Class Plaintiffs' economic loss and medical monitoring claims would be subject to the general causation *Daubert* proceedings that eventually led to entry of the Court's December 6 Order excluding experts that Class Plaintiffs had not even designated in support of their class claims.[1]

Given the current procedural posture, the December 6 Order does not apply to Class Plaintiffs' economic loss and medical monitoring claims, and those claims cannot be dismissed on this record. Class Plaintiffs have not yet had an "opportunity to be heard 'at a meaningful time.'" *Mathews*, 424 U.S. at 333. Applying bedrock constitutional principles, the line is clear: Class Plaintiffs must be given an opportunity to be heard.

## II. The Court Should Enter a Stay and Use a Show-Cause Process.

Preclusion and due process are enshrined in Rule 56, which provides that a Court may "grant summary judgment for a nonmovant" or grant a motion "on grounds not raised by a party." Fed. R. Civ. P. 56(f). However, before doing so, the Court must give "notice and a reasonable time to respond." *Id*. In substance, that is what the show-cause process is, which reinforces why notice and an opportunity to respond is required.

---

[1] Class Plaintiffs have not served expert reports in support of class certification because the deadline for those reports was co-extensive with the class certification motion deadline.

Class Plaintiffs recognize this Court is seeking efficiencies in this MDL. Appropriate efficiencies can be accomplished, without abrogating Class Plaintiffs' due process and substantive rights, by entering a stay of the class proceedings pending the outcome of the forthcoming appellate proceedings arising from the December 6 Order. Absent a stay, Class Plaintiffs and thousands of putative class members are the only parties who will suffer prejudice. Alternatively, this Court could request that Brand Defendants file a Rule 56 motion to demonstrate how they believe the December 6 Order entitles them to judgment on Class Plaintiffs' economic loss and/or medical monitoring claims, which are not identical in form or substance to the personal injury plaintiffs' claims. Class Plaintiffs would then be afforded a meaningful opportunity to respond and develop a record for appellate review.

## III. The December 6 Order Does Not Foreclose Class Plaintiffs' Economic Loss State-Law Claims.

### A. This Court previously acknowledged that Class Plaintiffs allege that Zantac was adulterated – which is a different standard from safety.

The December 6 Order does not foreclose Class Plaintiffs' economic loss state-law claims. Whether "ranitidine causes cancer or contains unsafe levels of NDMA" and is misbranded as a result, *see* DE 6227 at 8, was but one basis for Class Plaintiffs' economic loss claims. Class Plaintiffs also allege that ranitidine-containing products were adulterated and not made in a cGMP-compliant manner to assure they possessed the quality and identity represented, and were not fit for their intended purpose. *See, e.g.*, SAELC, DE 3883 at ¶¶ 313-317 (compliance with current Good Manufacturing Practices); ¶¶ 347-398 (misrepresentations and omissions); ¶ 1251 (incorporating same as to GSK); ¶ 1847 (incorporating same as to Pfizer); ¶ 2843 (incorporating same as to BI); ¶ 4321 (incorporating same as to Sanofi); *see also, e.g.*, ¶¶ 506, 508, 1308, 1310, 1906, 2984, 2986, 4405, 4407 (referencing cGMPs and adulteration).

This is not, as Defendants posit, just a quantitative word-search exercise for the shorthand

buzzword "adulteration" which, in any event, is alleged in SAELC. The SAELC repeatedly alleges that ranitidine-containing products, *inter alia*, were "not fit for their intended purpose,"[2] and that Defendants engaged in unfair and deceptive acts by wrongly representing the products "are a particular standard, quality, and grade when they are not,"[3] which is state-law parlance for the same factors that establish adulteration. *See* 21 U.S.C. § 351(a)(1) (drug adulterated if does not possess "the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess"); *id.* ¶ 351(b) ("adulterated under this paragraph because it differs from the standard of strength, quality, or purity").

Class Plaintiffs never "abandoned" adulteration as a theory of economic harm, as Defendants claim. *See* DE 6227 at 8. To the contrary, this Court expressly noted that Class Plaintiffs "argued adulteration in the context of establishing an economic injury," DE 3715 at 20 n.10, which this Court previously found *was* sufficient to assert claims based on economic loss. Even if Defendants' tortured reading of this Court's preemption ruling were correct (it is not), ranitidine-containing products can be "misbranded" because they caused cancer *or* because they

---

[2] *See, e.g.*, SAELC, DE 3883 at ¶ 408 (Arizona), ¶¶ 432, 434 (Alaska), ¶¶ 460, 462, 1260, 1262 (Arkansas), ¶¶ 498, 500, 517, 519, 536, 538, 1299, 1301, 1319, 1321, 1399, 1341 (California), ¶¶ 574, 576, 1378 (Colorado), ¶¶ 601, 603 (Florida), ¶¶ 628, 630 (Louisiana), ¶ 669 (Maryland), ¶¶ 707, 709 (Massachusetts), ¶¶ 747, 749 (Michigan), ¶ 773, 775 (Minnesota), ¶¶ 832, 834 (Missouri), ¶¶ 869, 871 (New Jersey), ¶¶ 905, 907, 922, 924 (New York), ¶¶ 960, 962 (North Carolina), ¶¶ 1019, 1021 (Oklahoma), ¶¶ 1058, 1060 (Pennsylvania), ¶¶ 1097, 1099 (South Carolina), ¶¶ 1137, 1139 (Tennessee), ¶¶ 1178, 1180 (Texas), ¶¶ 1218, 1220 (Wisconsin).

[3] *See, e.g.*, SAELC, DE 3883 at ¶¶ 435, 2884 (Alaska), ¶¶ 463, 1263, 1859 , 2939, 4360 (Arkansas), ¶¶ 520, 539, 1322, 1918, 1938, 2998, 3018, 4419, 4439 (California), ¶¶ 577, 1381, 1977, 3057, 4478 (Colorado), ¶ 672, 1479, 2210, 3308, 4731 (Maryland), ¶¶ 750, 1519, 2250, 3387, 4810 (Michigan), ¶¶ 1022, 3839, 5207 (Oklahoma), ¶¶ 1061, 3920, 5247 (Pennsylvania), ¶¶ 1140, 2647, 4020, 5310 (Tennessee), ¶¶ 1181, 1753, 2689, 4062, 5352 (Texas), ¶¶ 1624, 2415, 3581 (Nevada), ¶¶ 1690, 2584, 3879 (Oregon), ¶¶ 2072, 3172, 4593 (Georgia), ¶¶ 2856 (Alabama), ¶¶ 3609, 4977 (New Hampshire), ¶¶ 3685, 5053 (New Mexico), ¶¶ 4104, 5394 (Utah), ¶¶ 4166, 5456 (Virginia).

were *not* of the same quality and identity as represented and, as a result, were deceptively mislabeled.

A plaintiff may assert consumer fraud, breach of warranty and the other state-law claims alleged here when they overpay for a product based on misinformation. *See, e.g.*, *Rife v. Newell Brands, Inc.*, -- F . Supp. 3d --, 2022 WL 4598666, at *9-10 (S.D. Fla. Sept. 30, 2022) (Altman, J.) (plaintiff may seek economic damages for pressure cookers that did not fully work as represented); *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1228 (N.D. Ga. 2021) (same as to water heaters); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1121 (S.D. Fla. 2019) (Moreno, J.) (same as to vehicles purchased without full information, *even if vehicles did not yet explode*). Thus, "[t]he effort to fit the square peg of the claimed economic loss into the round hole of physical health and safety is doomed to fail because the cost-benefit considerations that inform the relevant 'policy' analysis in the present case do not relate to health or safety…." *Raspberry Junction Holding, LLC v. Southeastern Conn. Water Auth.*, 263 A.3d 796, 818 Conn. 2021) (Echer, J., concur).[4]

Much like the defendant in *Elder*, who argued that some rubber flakes in plaintiffs' water were just inconveniences without a demonstrable showing that the flakes cause physical harm, Defendants here essentially argue 'no harm, no foul' because their ranitidine-containing products might not "cause cancer." But as the case law establishes, direct physical impact (e.g., cancer, or

[4] *See also id.* at 818 (Echer, J., concur) ("Judge Richard A. Posner, no stranger to cost-benefit analysis in the law, made this point more than three decades ago in a negligence case for purely economic loss involving two commercial parties. *See Rardin v. T & D Machine Handling, Inc.*, 890 F.2d 24, 28-29 (7th Cir. 1989) (observing that "there are . . . differences between the [personal injury] case and the [economic loss] case, whether in a stranger or in a contractual setting"). Indeed, the drafters of the Restatement (Third) of Torts viewed the differences between the two contexts as sufficiently meaningful that they chose to write one treatise covering negligence resulting in physical and emotional harm and a separate treatise addressing the legal rules that apply to unintentional conduct resulting in economic harm.")

a demonstrable association with cancer) is *not* a prerequisite to an economic-loss claim for a product that fell short of appropriate quality and identity standards or representations.

**B. *Debernardis v. IQ Formulations, LLC* does not undermine Class Plaintiffs' standing.**

Brand Defendants' final strained argument is that without evidence of "risk of physical harm, Class Plaintiffs lack Article III standing to bring their economic loss claims." DE 6227 at 13. In so arguing, Brand Defendants misleadingly cite to the Eleventh Circuit's decision in *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019), a case this Court is familiar with after addressing it in two rounds of Rule 12(b) motions and dispelling as "unpersuasive" Brand Defendants' exact same arguments regarding pleading injury and effectiveness allegations. *See* DE 2515 at 40-42; DE 3720 at 48; *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1152, 1185-86 (S.D. Fla. 2021) (holding "the Defendants' argument that the Plaintiffs allege neither physical injury, nor that the ranitidine products were ineffective, is unpersuasive, as the Plaintiffs' theory of economic injury is not premised on those circumstances, and courts have routinely rejected the Defendants' argument.").[5]

To be clear, *Debernardis* does not now undermine Class Plaintiffs' standing. First, and most crucially, the Eleventh Circuit "caution[ed]" that *Debernardis* "is limited to the specific facts alleged in th[at] case." *Debernardis*, 942 F.3d at 1088; *see also* DE 2515 at 43 ("The Court views *Debernardis* narrowly because the text of *Debernardis* compels the Court to do so.") (citing *Debernardis*, 942 F.3d at 1088). As such, extension of any of the holdings in *Debernardis* to this case should be done with great caution.

---

[5] Brand Defendants' citations to *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), and *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018), for the same physical injury argument are inapposite. There, unlike here, there were no allegations that the products in question were adulterated, whereas here, the ranitidine in question was undoubtedly so.

Second, the holdings in *Debernardis* are wholly consistent with the Court's prior finding that Class Plaintiffs have standing. Brand Defendants posit that, given the December 6 Order, Class Plaintiffs do not have evidence that ranitidine was dangerous or unsafe and, thus, cannot prove economic injury. DE 6148 at 14-15. But *Debernardis* itself dispels Brand Defendants' arguments, holding that "[b]ecause the supplements in question contained a new dietary ingredient, they were presumed to be ***adulterated***," as such, and under the law, purchasers "thus received a product that ***Congress*** judged insufficiently safe for human ingestion." 942 F.3d at 1085. The same applies here. In its Order on Brand Defendants' motion to dismiss, this Court found that the complaint, as pleaded, "is stronger than *Debernardis*, for the Plaintiffs here allege a substantive safety defect—that the Defendants' products contained NDMA—while the plaintiffs in *Debernardis* alleged a procedural defect, namely that the defendants sold a presumptively adulterated dietary supplement containing an ingredient that the FDA had not approved." 546 F. Supp. 3d at 1185. But even if the Court were now to impute its findings from the December 6 Order involving personal injury general causation issues to the Class Plaintiffs' economic loss claims – *i.e.*, that Class Plaintiffs cannot prove a substantive safety defect – this does nothing to negate that Brand Defendants' ranitidine contained a "procedural defect." It was adulterated ***as determined by Congress*** because it was sold with amounts of NDMA higher than level permitted by Congress or under its delegation of authority to the FDA.

**IV.   Conclusion**

Class Plaintiffs request entry of an order staying the class proceedings involving economic loss and medical monitoring pending the outcome of the forthcoming appellate proceedings arising from the December 6 Order.

Respectfully submitted,

*/s/ Tracy A. Finken*
Tracy A. Finken
Email: tfinken@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

By: */s/ Robert C. Gilbert*
Robert C. Gilbert, FBN 561861
Email: gilbert@kolawyers.com
KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (305) 384-7270

*/s/ Michael L. McGlamry*
Michael L. McGlamry
Email: efile@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

*/s/ Adam Pulaski*
Adam Pulaski
Email: adam@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan
Email: Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1 Wall Street
Albany, NY 12205
Tel: (518) 862-1200

Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019

Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Tel: (855) 333-4662

Ashley Keller
Email: ack@kellerpostman.com
KELLER | POSTMAN
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (312) 741-5222

Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email: luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email: frank@maderalbyrne.com
MADERAL BYRNE PLLC
2800 Ponce de Leon Blvd., 11th Floor
Coral Gables, FL 33134
Tel: (305) 520-5690

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: laurenm@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1914 4th Avenue North
Suite 320
Birmingham, AL 35203
Tel: (205) 533-4175

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4629

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Steven B. Rotman
Email: srotman@housfeld.com
HAUSFELD, LLP
One Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 207-0602

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Je Yon Jung
Email: Jeyon@mayjung.com
MAY JUNG, LLP
1100 W. Town & Country Road
Suite 1250
Orange, CA 92868
Tel: (818) 869-6476

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Steering Committee*

Brooke Achua
Email: brooke@feganscott.com
FEGAN SCOTT, LLC
140 Broadway, 46th Floor
New York, NY 10005
Tel: (646) 502-7910

Harrison M. Biggs
Email: hbiggs@yourlawayer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4633

Lea P. Bucciero
Email: lbucciero@podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Alexander C. Cohen
Email: acohen@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Marlo E. Fisher
Email: marlof@lpm-triallaw.com
Laminack, Pirtle & Martines
5020 Montrose Blvd., 9th Floor
Houston, TX 77006
Tel: (713) 292-2750

Kendra Goldhirsch
Email: goldhirsch@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Noah Heinz
Email: noah.heinz@kellerpostman.com
KELLER | POSTMAN
1100 Vermont Avenue NW, Floor 12
Washington, DC 20005
Tel: (202) 918-1841

Catelyn McDonough
Email: cmcdonough@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

Caroline G. McGlamry
Email: carolinemcglamry@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Madeline Pendley
Email: mpendley@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7003

Laura K. Stemkowski
Email: lstemkowski@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9165

Daniel E. Tropin
Email: tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (954) 990-2216

*Plaintiffs' Leadership Development Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

/s/ *Robert C. Gilbert*
Robert C. Gilbert