UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                               MDL NO. 2924
PRODUCTS LIABILITY                                         20-MD-2924
LITIGATION

                                                                                 JUDGE ROBIN L. ROSENBERG
                                         MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO: ALL CASES**

### ORDER DENYING THE PLAINTIFFS' MOTIONS TO PERMIT MULTI-PLAINTIFF COMPLAINTS FOR REGISTRY CLAIMANTS

This matter comes before the Court upon the Plaintiffs' Expedited Motion to Permit Multi-Plaintiff Complaints for Registry Claimants at docket entry 6133. The Motion has been fully briefed, and the Court heard oral argument on the Motion on January 12, 2023. At oral argument, the Court inquired about the application of the Federal Rules of Civil Procedure to the Plaintiffs' Motion, a subject that was not addressed in the parties' briefing; the Court invited additional motion practice that addressed the Court's questions about the application of the Federal Rules to the Motion. Soon thereafter, the Plaintiffs filed a Renewed Motion at docket entry 6220. The Renewed Motion has also been fully briefed.[1] In the interest of giving the Plaintiffs the maximum amount of notice possible, the Court previously informed the Plaintiffs via paperless order of its denial of both Motions and of its intent to enter a formal, written order explaining its decision. DE 6228. This is that order.

The Plaintiffs filed their Motions on behalf of approximately 58,000 Claimants in an MDL Registry. *See* Jan. 5, 2023, Status Conference Tr. at 55. That Registry is a database of claims. Each Claimant is an individual who has registered a claim in the Registry, and, while the claim

---

[1] In the interest of expediency, the Plaintiffs waived their right to file a reply brief in support of the Renewed Motion. Jan. 19, 2023, Status Conference Tr. at 66.

was registered, by agreement of the parties the claim was tolled for statute of limitations purposes. Each Claimant has certified under penalty of estoppel that the Claimants' claim will be filed, if it is ever filed, in federal court, not state court.

The question before the Court is *how* the Claimants must file their claims. The operative answer is found in Pretrial Order 31, page 4, which states that any "Plaintiff who files directly in MDL No. 2924 must file his or her complaint as a Short Form Complaint in a new case, which will be the Plaintiff's member case." The Short Form Complaint is a template complaint attached to the Plaintiffs' operative master pleadings, and it is this template that each new Plaintiff must complete. *Id.* Additionally, no multi-plaintiff complaints are permitted under Pretrial Order 31. Instead, "[e]ach Plaintiff must have an individual complaint on file." *Id.* at 5.

The effect of Pretrial Order 31 is to stage the Plaintiffs' claims for eventual remand to their home district. Each Short Form Complaint contains the district to which the Plaintiff must eventually be remanded. *Id.* at 2-3. Each Short Form Complaint is an operative pleading, and it contains all of the Plaintiffs' claims for which, eventually, the Plaintiff must prove individual causation.

The Plaintiffs and the Defendants jointly drafted and agreed to the terms of Pretrial Order 31, and the Court entered the Pretrial Order at the parties' request in August of 2020. The Claimants also agreed to the terms of Pretrial Order 31 when they recorded their claims in the Registry. *See* DE 6140 at 16-20. Since August 2020, in full compliance with the terms of Pretrial Order 31, approximately 2,500 Plaintiffs have filed individual cases in the MDL with individual Short Form Complaints.

On December 6, 2022, the Court entered its *Daubert* ruling on general causation in favor

of the Defendants. As a result of that ruling, the Registry was set to expire one month later, on January 5, 2023, and it became necessary for the Claimants in the Registry to file a case in federal court, if they wanted to appeal the Court's ruling and avoid the running of the statute of limitations on their claims.

<u>The Plaintiffs' Initial Motion to Permit Multi-Plaintiff Complaints</u>

For the first time, on December 16, 2022, the Plaintiffs objected to the terms of Pretrial Order 31, calling its terms "perverse." DE 6133 at 3. The Plaintiffs requested that the Court modify the terms of Pretrial Order 31 to permit the Registry Claimants to file one multi-plaintiff complaint per law firm. Because approximately 330 law firms represent the Claimants, the Plaintiffs' request was for 330 cases to be filed in lieu of over 58,000 individual cases. The Court denies the Plaintiffs' request on four grounds: (A) the Plaintiffs' request does not satisfy the requirements for joinder of claims under Rule 20(a); (B) even if the Plaintiffs' request satisfies Rule 20(a), the Court would still sever the multi-plaintiff complaints; (C) the Plaintiffs have provided no persuasive or analogous case law in support of their request in their Renewed Motion; and (D) the Plaintiffs and the Claimants previously agreed to file individual complaints.

**A. The Plaintiffs' Request Does Not Comply with Rule 20(a)**

Under Rule 20(a)(1) of the Federal Rules of Civil Procedure:

Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Because no party (in the briefing of the Plaintiffs' initial Motion) briefed the application of Rule

20 to the Plaintiffs' proposal for one multi-plaintiff complaint per law firm, the Court independently researched case law on the topic and located six cases involving circumstances analogous to this MDL: *Baycol*,[2] *Bone Screw*,[3] *Diet Drugs*,[4] *Rezulin*,[5] *Simmons*,[6] and *Norplant*.[7] The Court discusses each case in turn.

In the *Baycol* MDL, each plaintiff alleged that the defendants' drug caused their injury. The plaintiffs moved for permission to file multi-plaintiff complaints with fifty plaintiffs per complaint, calling the procedure "bundling," and argued that the procedure would "facilitate plaintiff participation in the MDL, . . . save filing fees, . . . and [would] be easier for plaintiffs' counsel to administer." *Baycol*, 2002 WL 32155269, at *1. The *Baycol* court denied the plaintiffs' request, finding non-compliance with Rule 20(a) and misjoinder, and relied in significant part upon a decision in the *Bone Screw* litigation, which the Court summarizes next.[8]

In the *Bone Screw* MDL, the plaintiffs had the same medical device implanted near their spine. *Bone Screw*, 1995 WL 428683, at *6. The plaintiffs filed a brief wherein they requested permission to file one multi-plaintiff complaint per judicial district. *Id.* at *1. In a detailed ruling, the *Bone Screw* court concluded that Rule 20(a) would not be satisfied merely because the plaintiffs had received the same product or resided in the same judicial district. *Id.* at *6. The *Bone Screw* court left open the possibility that it could be persuaded to permit the joinder of claims in a

---

[2] *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002).
[3] *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1995 WL 428683 (E.D. Penn. July 17, 1995).
[4] *In re Diet Drugs Prods. Liab. Litig.*, 325 F. Supp. 2d 540 (E.D. Penn. 2004), *appeal dismissed sub nom. In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 418 F.3d 372 (3d Cir. 2005).
[5] *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001).
[6] *Simmons v. Wyeth Lab'ys, Inc. et al.*, No. 96-CV-6631, 1996 WL 617492 (E.D. Penn. Oct. 24, 1996).
[7] *In re Norplant Contraceptive Prods. Liab. Litig.*, 168 F.R.D. 579 (E.D. Tex. 1996).
[8] In their Renewed Motion, the Plaintiffs argue that *Baycol* was abrogated by *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010). At least as to the *Baycol* court's Rule 20(a) misjoinder conclusion, the Plaintiffs are wrong; *Prempro* clearly did not decide any questions about misjoinder. 591 F.3d at 623 ("We clarify that we make no judgment on whether the plaintiffs' claims are *properly* joined under Rule 20.").

fact-based grouping, such as a group of plaintiffs who received the medical device at the same hospital. *Id.*[9]

In the *Diet Drugs* MDL, the plaintiffs alleged that they had suffered heart disease from the consumption of a diet drug. *Diet Drugs*, 325 F. Supp. 2d at 541. The parties entered into a class action settlement. *Id.* Tens of thousands of plaintiffs elected to opt-out of the settlement, however, and thousands of the opt-out plaintiffs filed their claims in multi-plaintiff complaints.[10] *Id.* In response, the *Diet Drugs* court entered a pretrial order declaring that the plaintiffs had been misjoined and severed the plaintiffs. *Id.* Electing not to contest the severance, the plaintiffs challenged the *Diet Drugs* court's decision to impose a separate filing fee on each severed plaintiff. *Id.* The *Diet Drugs* court ruled against the plaintiffs' request, finding that the filing-fee requirement did not "bestow a free ride on misjoined or misjoining plaintiffs."[11]

In the *Rezulin* MDL, the plaintiffs alleged that prescription diabetes drugs caused them injuries. *Rezulin*, 168 F. Supp. 2d at 138. Upon motion from a defendant, the *Rezulin* court considered whether a plaintiff had been misjoined in a particular consolidated case. *Id.* at 144. The *Rezulin* court discussed the application of Rule 20(a) to a large toxic tort case at length:

> Unlike cases involving a pure product defect, toxic tort cases raise more complicated issues of causation and exposure. . . . The plaintiffs . . . allege a defect (or defects) the precise contours of which are unknown and which may have caused different results—not merely different injuries—in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking

---

[9] The Plaintiffs attempt to minimize the persuasive value of the *Bone Screw* decision through the representation that the district court "considered the question a close one." DE 6220 at 6. The Court has been unable to find any reference in the decision to it being a "close" one. The mere fact that the district court did not foreclose additional motion practice on the subject does not mean that the plaintiffs' requested relief in *Bone Screw*—one complaint per judicial district—was a "close" question.

[10] The multi-plaintiff complaint at issue in the cited *Diet Drugs* decision concerned sixty-two consolidated plaintiffs; however, the district court noted that its ruling impacted thousands of consolidated, misjoined plaintiffs in other multi-plaintiff complaints. *Diet Drugs*, 325 F. Supp. 2d at 542.

[11] Without acknowledging or discussing the validity of the legal conclusions of the district court, the Plaintiffs reference the *Diet Drug* decision as "mak[ing] practical sense." DE 6220 at 7.

5

> the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff. They do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time. As in *Simmons*, they do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common. Joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims.

*Id.* at 146. The district court concluded that the plaintiffs were misjoined. *Id.*

In the *Simmons* case, the plaintiffs alleged that a contraceptive medical device caused them injuries. *Simmons*, 1996 WL 617492, at *1. Finding the reasoning in *Bone Screw* persuasive, the district court found that the plaintiffs' multi-plaintiff complaint had misjoined the plaintiffs but left open the possibility that some plaintiffs could be sufficiently related so as to warrant a multi-plaintiff complaint. *Id.* at *4.

The only case the Court located in the Plaintiffs' favor is the *Norplant* MDL, which, like *Simmons*, concerned the same contraceptive medical device. In *Norplant*, in a brief order, the court found that Rule 20(a) was satisfied when the Defendants were alleged to have all engaged in the same tortious conduct. *Norplant*, 168 F.R.D. at 581. Yet the *Norplant* decision appears to have not been followed by any other federal district court, and it has been criticized as well. *Baycol*, 2002 WL 32155269, at *2; *Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 547, 551 (W.D. Wis. 1999); *Simmons*, 1996 WL 617492, at *4.

In conclusion, as the *Simmons* court observed, "the marketing of defective automobiles by an automobile manufacturer will not, absent class action status, support joinder in one action of all those harmed by the defect; only those in the same accident are properly joined." *Simmons*, 1996 WL 617492, at *3. In this MDL, it would be a fair statement that all of the Plaintiffs have alleged that they were harmed "by the same defect." But it would not be fair to say that each Plaintiff has

6

been harmed "in the same accident." As in *Rezulin*, the Plaintiffs "allege a defect (or defects) the precise contours of which are unknown and which may have caused different results—not merely different injuries—in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff." 168 F. Supp. 2d at 146.

This is not a case where, upon taking an identical drug or receiving an identical medical device, each Plaintiff quickly experienced a negative reaction. This is a case where the Plaintiffs, each with unique physiology, consumed a drug created by different manufacturers, using different supply chains, at different times, in different places, with varying levels of exposure. Furthermore, the carcinogen at issue in this MDL is found in trace amounts in water, air, and food. As a result, each Plaintiff was exposed to varying amounts of the carcinogen at issue as part of their unique daily activities. Finally, it was the Plaintiffs' position at *Daubert* that they were only pursuing claims for Plaintiffs who consumed ranitidine for many years. DE 6242 at 278 ("The claim is not that Ranitidine causes cancer after one dose or even a year's worth, but over many years of regular use."). Yet the ultimate injury the Plaintiffs allege—cancer—is a sadly common affliction with a myriad of potential causes. Cancer may be caused by any number of confounding factors, such as smoking.

Together with the Plaintiff's slow-motion "accident" occurring over many years of drug consumption, the individual causation inquiry for each Plaintiff in this MDL is no small matter— there were too many opportunities over the years for other factors to cause the Plaintiffs' or the Claimants' cancer. Indeed, specific causation could be the most important, most contested, and dispositive inquiry at a trial, should the Plaintiffs prevail on appeal. The Court therefore agrees

7

with the analysis of the cases described above that found misjoinder; the Plaintiffs are not sufficiently related, factually, for the joinder of their personal injury claims in a single multi-plaintiff complaint. Such a joinder would not "ease the burden of litigation in groups of similarly situated persons," it would create an unmanageable, unworkable burden. *Bone Screw*, 2002 WL 32155269, at *2.

And the Plaintiffs certainly cannot be joined as the Plaintiffs propose. They cannot be joined simply because of the fact that they are represented by the same law firm, regardless of the judicial district in which they reside and in the absence of an effort to identify how the Plaintiffs' claims arose "out of the same transaction." Indeed, the Court notes that the Plaintiffs' request for thousands of Plaintiffs[12] to be joined in one complaint per law firm is beyond even the outer boundaries of what the plaintiffs asked for in the MDLs described above. The Plaintiffs' request for the Court to amend Pretrial Order 31 and permit multi-plaintiff complaints is denied.[13]

**B. In the Alternative, the Court Would Exercise its Discretion to Sever Multi-Plaintiff Complaints**

In the alternative, even if the Court's analysis above is wrong and the Plaintiffs' request to join Plaintiffs by law firm could be squared with the joinder standard in Rule 20(a), the Court would still exercise its discretion to sever the Plaintiffs and require separate filing fees. The Court has discretion to sever under Rule 20(b) to protect a party from delay, expense, or other prejudice.[14]

The case of *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000), illustrates the

---

[12] The vast majority of the 58,000 Claimants are represented by 10 law firms. One law firm represents more than 6,000 Claimants. The Court has consulted with the Clerk of the Court and has been unable to confirm it is technologically possible to create a case in the Court's e-file system with thousands of plaintiffs. It appears that nobody knows the answer because nobody has ever tried.

[13] For the reasons set forth in Section C, the Court's conclusion is no different as to the Plaintiffs' alternative proposal to group the Claimants by judicial district in "bundles" of 150 Plaintiffs each.

[14] The Court also has discretion under Rule 21 to sever any claim against any party.

Court's application of Rule 20(b) to this MDL. In *Coleman*, ten plaintiffs alleged that the defendant had discriminated against them. *Id.* at 1296. The trial court severed the plaintiffs and the plaintiffs appealed. *Id.* The Ninth Circuit affirmed on individual causation grounds, finding: "For each plaintiff, the jury would have had to examine individually his or her employment history as well as the explanations given by Quaker for not retaining him or her." *Id.* As explained by a Texas district court in a similar situation as the *Coleman* court (with five plaintiffs), "[E]ven assuming there is a pattern and practice of discrimination within the [upper management of the defendant], it is clear that the Plaintiff's claims in fact are highly individualized, involving particularized questions about each Plaintiff's work history and job performance." *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996).

Courts such as *Coleman* and *Henderson* also severed plaintiffs for reasons besides complex individual causation inquiries. For example, in *Coleman*, the plaintiffs were severed because of the potential prejudice for the Defendants from a consolidated action. As explained by the Ninth Circuit: "[E]ven the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant laid him off because of his age." *Coleman*, 232 F.3d at 1296.

Here, in this MDL, the individual causation inquiries would be even more complex than the individual causation inquiries in *Coleman* and *Henderson* for all of the reasons set forth above in Section (A). As for the potential prejudice for the Defendants stemming from a joinder of thousands of Plaintiffs in a single complaint, the prejudice is readily apparent. Suffice it to say that if "the strongest jury instructions" could not protect the defendants in *Coleman* from unfair prejudice in a ten-plaintiff discrimination case, jury instructions would certainly not protect the

9

Defendants in this MDL from the prejudice flowing from a thousand-plaintiff personal injury case.

Ultimately, the Court believes that the Plaintiffs concede that it is self-evident, and beyond any real dispute, that it is impractical—even impossible—to litigate their personal injury claims in large, law-firm-based pleadings that do not take into account the claims' judicial district of origination. The Court's belief stems from oral argument, where the Plaintiffs repeatedly referenced the fact that, if the Court were to amend its pretrial order and permit multi-plaintiff complaints in the present, the Plaintiffs could be severed in the future.

By way of example, the Plaintiffs argued that "the Court could include in its order a provision stating all of the Plaintiffs on each multi-plaintiff complaint will be severed." Jan. 12, 2023, Motion Hearing Tr. at 13. Through such an order, the Plaintiffs argued that there "would be no concerns about individual treatment of specific causation." *Id.* Additionally, if the Court was not inclined to permit multi-plaintiff complaints by law firm, the Plaintiffs requested that the Court effectively "pick a number," be it 200 Plaintiffs per complaint, 150 Plaintiffs, 100 Plaintiffs, or 50 Plaintiffs. *Id.* at 24; DE 6220 at 9. Ultimately, the Plaintiffs requested that the Court pick "whatever number the Court deems fair," with one caveat. DE 6220 at 9.

At the core of the Motions and the Plaintiffs' position at oral argument is the premise that the Plaintiffs will only be severed and will only be required to pay filing fees *if* they prevail on their appeal of the Court's *Daubert* ruling. Indeed, the Plaintiffs effectively conceded that, should their cases be severed in the future, the Clerk of the Court would be entitled to more filing fees *at that time*. Jan. 12, 2023, Motion Hearing Tr. at 35-36 ("And again, if and when we are successful on appeal and the case is then brought back into this Court the cases could be severed and larger amounts of money due to the severance would be filed in individual cases which would be

10

necessary to compensate the Clerk's Office at that time."). But Rule 20 does not permit claims to be joined solely to reduce filing fees; the Clerk's Office imposition of a filing fee is never contingent upon a plaintiff's ultimate success, and the standard for Rule 20 joinder is not any approach that "the Court deems fair."

District courts have observed the consequences that can flow from a plaintiff's misuse of the liberal Rule 20 joinder standard to avoid filing fees. For example, in *Patrick Collins, Inc. v. Does 1-38*, the district court confronted a situation where one plaintiff had joined many John Does "to facilitate a low-cost, low-risk revenue model" that "potentially open[s] the door to abusive settlement tactics." 941 F. Supp. 2d 153, 165-66 (D. Mass. 2013). Abusive settlement tactics arise, the district court observed, when the plaintiffs avoid paying a filing fee for each joined defendant. *Id.* at 166. The district court went on to note the two purposes served by a filing fee. *Id.* First, as a "revenue sharing measure" whereby the Clerk of the Court is compensated for the labor involved in the creation and administration of the case. *Id.* Second, as a "threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits." *Id.* Citing these justifications, courts have required filing fees to be paid for severed actions, noting the "losses in revenue" experienced through misjoined parties. *Id.*; *see also In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 92 (E.D.N.Y. 2012) ("In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees employing its swarm joinder theory. Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded.").

Applying cases such as *Patrick Collins* to this MDL, the Plaintiffs' proposal is certainly a "low cost, low risk" proposal. It is "low risk" in the sense that the Plaintiffs' proposal is really to

11

avoid the payment of filing fees entirely, if they lose on appeal. It is "low cost" in the sense that the Plaintiffs seek to bundle thousands of personal injury Plaintiffs into the same complaint and avoid the expense normally associated with separate cases.

Quantifying the "low cost" element of the Plaintiffs' proposal, the filing fees for 58,000 cases would exceed $20,000,000. Under the Plaintiffs' one-case-per-law-firm proposal, however, the filing fees would be reduced to slightly over $100,000, or a 99% reduction of filing fees, with the balance only to be paid if the Plaintiffs are successful on appeal.[15] This $19,900,000 reduction in filing fees is far more substantial than the "improper" attempt by the plaintiffs in *BitTorrent* to avoid the imposition of a comparatively small $25,000 in filing fees. 296 F.R.D. at 92.

In conclusion, even if the Court is wrong as to misjoinder and Rule 20(a), the Court would still exercise its discretion to sever the Plaintiffs' claims in a multi-plaintiff complaint. That severance would be accompanied with a mandatory imposition of a filing fee for each severed Plaintiff, which the Plaintiffs effectively concede is appropriate and within the Court's discretion, given the amount of Clerk's office labor that would be involved in such a severance. Consistent with the second policy ground underscoring the existence of the filing fee requirement, if the Plaintiffs believe that their claims and their appeal are not frivolous, it is incumbent upon the Plaintiffs to pass through the barrier for frivolous claims and pay the requisite fee. Thus, the Court will not sanction a proposal to only impose filing fees if the Plaintiffs are successful on appeal.

Either way, under a Rule 20(a) misjoinder analysis or a Rule 20(b) severance analysis, the result is the same: the Plaintiffs must file separate cases and pay the necessary filing fee for each case. The Court therefore declines to amend Pretrial Order 31 to permit multi-plaintiff complaints

---

[15] In their Renewed Motion, the Plaintiffs emphasize a proposal to bundle 150 Plaintiffs per complaint, but that proposal would result in a similar amount of filing fees being paid as the one-case-per-law-firm proposal.

in this MDL.[16]

### C. The Plaintiff's Renewed Motion Does Not Alter the Court's Conclusion

At oral argument on the Plaintiffs' initial Motion, the Court posed questions to the Plaintiffs about Rule 20(a) and the application of the Rule to their multi-plaintiff complaint proposal. The Court also requested that the Plaintiffs provide analogous case law for the proposition that their proposal was proper. The Plaintiffs requested time to consider the Court's questions, and the Court invited the Plaintiffs to file a renewed motion, which they accepted. Below, the Court discusses the cases that the Plaintiffs cite in their Renewed Motion.[17]

The Plaintiffs rely upon cases that stand for the general proposition that the standard for Rule 20(a) joinder is a liberal standard. *E.g., Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000). Emphasizing that liberal standard, the Plaintiffs analogize the tens of thousands of Registry Claimants who seek to file in this MDL to 119 plaintiffs in *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238 (2d Cir. 1986).

In *Abraham*, the plaintiffs joined their 119 claims to meet a jurisdictional dollar-amount threshold. *Id.* at 241. Finding that their claims were misjoined under Ruled 20(a), the district court dismissed the litigation on jurisdictional grounds as the dollar amount of the individual plaintiff's claims could not be aggregated. *Id.* The plaintiffs' claims stemmed from a single defective

---

[16] In their Renewed Motion, the Plaintiffs request that the Court not rule in the "abstract" and only rule upon the application of Rule 20 to concrete complaints that are filed, together with various motions to sever brought by the Defendants. DE 6220 at 2. Putting aside the large amount of labor that would be involved in filing, analyzing, and ruling on such motions to sever, it is incumbent upon the Plaintiffs, as movants, to identify a situation in which multi-plaintiff joinder would be appropriate. For all of the reasons set forth in this Order, the Plaintiffs have failed to do so.
[17] The Court also invited a renewed motion to permit the Plaintiffs the opportunity to explain how a multi-plaintiff complaint could involve similar transactions or occurrences through the usage of Plaintiff-specific factual allegations. For example, the Court questioned whether Registry data could be used to put factually similar Claimants in the same multi-plaintiff complaint. The Plaintiffs declined to bundle factually similar Claimants in their multi-plaintiff proposal in their Renewed Motion, and instead merely proposed to bundle Plaintiffs together by judicial district. *See* DE 6220 at 9.

13

automobile part (an engine oil valve stem), manufactured by a single company, during a defined, narrow interval of time (1975-79). *Id.* Each plaintiff alleged that the defective valve stem had caused at least one of three types of injuries: excessive oil consumption, engine damage and failure, and decline in the resale value of the cars. *Id.* Based on these allegations, the Second Circuit reversed the trial court's decision to sever on misjoinder grounds, but a pharmaceutical toxic tort case in the Second Circuit subsequent to *Abraham*, the *Rezulin* case, concluded that *Abraham* "does not control" on facts resembling this MDL. *In re Rezulin*, 168 F. Supp. 2d at 145.

In *Rezulin*, which the Court discussed above in Section (A), the district court found:

> Unlike cases involving a pure product defect, toxic tort cases raise more complicated issues of causation and exposure. This is not, as was *Abraham*, a situation with an identical product defect allegedly causing identical results—breakage of the valve steam seal—which in turn caused different injuries depending on the circumstances of the particular accident.

*Id.* at 146. The *Rezulin* court emphasized that pharmaceutical litigation plaintiffs do not receive the allegedly defective product "from the same source" or have exposure "for similar periods of time." *Id.* As a result, the *Rezulin* court concluded that joinder "of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims." *Id.* The *Rezulin* court found misjoinder.

The Plaintiffs' remaining cases, each of which permitted multi-plaintiff joinder, resemble the narrowed allegations in *Abraham*. The Plaintiffs rely upon *In re Stand 'n Seal*, which involved the joinder of seven plaintiffs who used the same product, made by the same manufacturer, during a narrow band of time. No. 07-MD-1804, 2009 WL 2224185, at *1 (N.D. Ga. July 21, 2009). The Plaintiffs rely upon *Poleon v. General Motors Corp.*, No. 1999-127, 1999 WL 1289473 (D.V.I. Jan. 5, 1999), which involved five police officers alleging injuries stemming from a single make

14

and model of a vehicle manufactured by a single defendant, with a single defect, in a single year. *Id.* at *1-2. The Plaintiffs rely upon *Jacobs v. Watson Pharmaceuticals, Inc.*, No. 10-CV-120, 2011 WL 2216257, at *2 (N.D. Okla. June 7, 2011), which involved two deaths at nearly the same time, shortly after the use of the single defendant's product, in the same place, examined by the same medical examiner. *Id.* at *4. Finally, the Plaintiffs rely upon *Waterfall Homeowners Ass'n v. Viega, Inc.*, 279 F.R.D. 586 (D. Nev. 2012), *denying review as moot* 283 F.R.D. 571 (D. Nev. 2012), through a quotation of the following language: "District court decisions have relied on *Abraham* in upholding the joinder of product liability claims against a manufacturer or distributor, even though the individual plaintiffs' injuries and damages resulting from the alleged defect may differ." *Id.* at 591. But the Plaintiffs omit key information about their quotation from *Waterfall*.

Firstly, the *Waterfall* quotation involved an analysis of whether the defendants in the case were properly joined, not whether the plaintiffs were properly joined. *Id.* Secondly, the quotation originates from a report and recommendation authored by a magistrate judge, not the presiding district court judge. *Id.* When the district court judge analyzed the report and recommendation, the district court concluded that the magistrate judge had erred in applying *Abraham*, had failed to properly analyze precedent outside of *Abraham*, and that the motion to sever on Rule 20(a) grounds should have been granted, not denied. *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 584-86 (D. Nev. 2012).[18] The Plaintiffs' Renewed Motion is silent on the district court's analysis in *Waterfall*.

In connection with their citations to the above-referenced cases, the Plaintiffs provide one citation for the proposition that their request for relief is not novel. That citation is to a medical

---

[18] Because the district court dismissed the defendants on other grounds, however, the motion to sever was moot. *Waterfall*, 283 F.R.D. at 586.

15

product liability case, *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, MDL 2244, DE 506 (N.D. Tex. Apr. 10, 2015). More specifically, the Plaintiffs cite to Amendment to Case Management Order No. 5, which permitted the plaintiffs to file multi-plaintiff complaints with 150 bundled plaintiffs in each complaint. *Id.* at 1. As a threshold matter, the Plaintiffs provide no context for their citation to the case management order, and neither this Court nor the Defendants have been able to locate an explanation for the order, motion practice leading up to the order, or even whether the defendants opposed the multi-plaintiff complaints.

The Plaintiffs' lack of discussion on *Depuy* glosses over a critical component of that MDL's Amendment to Case Management Order No. 5. Pursuant to that order, immediately upon the filing of a bundled multi-plaintiff complaint, the clerk was to sever each individual plaintiff into his or her own case. *Id.* at 2. Guided by a series of very complicated instructions,[19] the clerk was to treat each multi-plaintiff complaint as 150 separate cases and to automatically perform all of the work necessary to create 150 cases upon receipt of a bundled complaint. *Id.* at 2-3. Thus, even in the multi-plaintiff complaint MDL cited by the Plaintiffs, severance was the result.

In response to the Plaintiffs' authority, the Defendants cite to a plethora of pharmaceutical litigation cases where joinder was found to not be appropriate. *See, e.g.*, *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001) (finding that the "purchases/ingestions of the medications in question clearly did not arise out of the same transaction or a series of transactions" where they "occurred at different times," and involved different "medicines" and "manufacturers"); *Hyatt v. Organon USA, Inc.*, No. 12CV1248, 2012 WL 4809163, at *1 (E.D.

---

[19] Based upon the undersigned's consultations with the Clerk of the Court, the undersigned does not believe that here, in this District, at this time, it would be financially possible for the Clerk to sever multi-plaintiff complaints and create 150 new cases without any corresponding fee for the severance; additional workforce would be required (particularly in the context of 58,000 Registry Claimants) lest every case and every function of the Clerk's office suffer.

Mo. Oct. 10, 2012) (finding that "Plaintiffs' injuries did not arise out of the same transaction or occurrence" where "[e]ach Plaintiff was injured at different times in different states allegedly from their use of NuvaRing that was presumably prescribed by different healthcare providers"); *In re Accutane Prods. Liab. Litig.*, MDL No. 1626, 2012 WL 12012431, at *1 (M.D. Fla. Sept. 20, 2012) (severing plaintiffs where they "reside[d] in different states, allegedly ingested Accutane at different times, and have allegedly been diagnosed with different adverse reactions to Accutane"); *Adams v. I-Flow Corp.*, No. CV09-09550, 2010 WL 1339948, at *8 (C.D. Cal. Mar. 30, 2010) (finding that the "sole common allegation" of product use does "not constitute a same transaction, occurrence, or series of transactions or occurrences" where different versions of product involved, as well as "numerous other . . . risk factors, and circumstances unique to each plaintiff"); *cf. In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651 (S.D. Tex. 2005) (finding improper joinder under Rule 20 where plaintiffs had "no relevant connection to each other, outside of the fact that all are alleged to have been exposed to respirable silica," but "worked in different locations, for different lengths of time, at different occupations, using different products"); *In re. Asbestos II Consol. Pretrial*, No. 86 C 1739, 1989 WL 56181, at *1 (N.D. Ill. May 10, 1989) (finding no "similar transaction or occurrence" where plaintiffs "suffer[ed] from the same asbestos-related disease," but their "exposure differ[ed] as to duration and magnitude"). The Plaintiffs declined the opportunity to file a reply that distinguished the above-cited cases.

In conclusion, none of the Plaintiffs' cited authority in their Renewed Motion alters the Court's decision for five reasons. First, the cases cited by the Court in Section (A) are more analogous to this MDL than the Plaintiffs' cited cases, and all but one of the cases cited by the Court found Rule 20 precluded joinder. Second, the Plaintiffs' cited cases involved closer, more

17

factually-related plaintiffs than this MDL, such as plaintiffs who all consumed a product in a narrow band of time.  None of the Plaintiffs' cited cases resemble the allegations in this MDL, which span several decades and involve specific causation questions not present in the Plaintiffs' cited cases.  Third, the Defendants have provided a large amount of pharmaceutical litigation case law where joinder was found not to be appropriate, and the Plaintiffs have elected not to reply or distinguish that case law.  Fourth, the Court gave the Plaintiffs the opportunity to suggest a factual relationship between the Claimants that would permit multiple Claimants to be joined in the same complaint.  The Plaintiffs declined to provide any such suggestion in their Renewed Motion.  Fifth, even in the Plaintiffs' preferred MDL, the *Depuy* MDL, the district court severed each plaintiffs' case.  Yet the Plaintiffs' Renewed Motion is silent on that result—the Plaintiffs do not acknowledge that even in *Depuy* severance was found to be appropriate.

For all of the reasons set forth in Section (B), the Court declines to permit the Plaintiffs to only pay filing fees if they are successful in this MDL, and the Renewed Motion does not alter the Court's conclusion on that subject.  The Court declines to amend Pretrial Order 31 to permit multi-plaintiff complaints.

**D. The Plaintiffs and the Claimants Previously Agreed to File Separate Complaints**

Although the Court declines to permit multi-plaintiff complaints on Rule 20 grounds, the parties' prior agreement on this subject dispels all doubt in the Court's mind that the Plaintiffs' Motions should be denied.  The Plaintiffs agreed to the terms of Pretrial Order 31 long ago—the order was a joint order submitted to the Court by all parties.  The Claimants agreed to the terms of Pretrial Order 31 when they enrolled in the Registry, and the individual-case requirement in Pretrial Order 31 exists for a good reason; if the Plaintiffs are successful on appeal, one day each

18

case must be remanded to its home district.  The individual causation inquiries for each Plaintiff are distinct and complex.  In light of the size of this MDL, the Court should not have to sift through tens of thousands of Plaintiffs in multi-plaintiff complaints and enter orders of severance, together with the administrative burden such severance would impose on the Clerk of the Court.  The Claimants knew or should have known the terms of Pretrial Order 31 when they enrolled in the Registry, and they must now comply with its terms when they become Plaintiffs in this MDL.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Plaintiff's Motions to Permit Multi-Plaintiff Complaints [DE 6133, 6220] are both **DENIED**.[20]

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, this 7th day of February, 2023.

*[signature]*
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

---

[20] Should the Court deny the Plaintiffs' request for multi-plaintiff complaints, the Plaintiffs seek, in the alternative, that the Court extend the Registry's duration and continue to toll the Claimants' claims in the Registry. As the Court has already explained, the legal basis for tolling in the Registry was not the Court's inherent power, but the Defendants' consent. DE 6140.  The Court cannot unilaterally grant tolling to claims in the Registry.