UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924 |

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

**MDL PLAINTIFFS' LEADERSHIP'S RESPONSE
TO ORDERS TO SHOW CAUSE [DE 6303, 6444]**

The Court ordered MDL Plaintiffs' Leadership and all Plaintiffs to show cause why summary judgment should not be entered. *See* DE 6303, 6444. The proper answer begins with the basics of what this Court's *Daubert* ruling means and what it does not mean. This Court's *Daubert* order ruled *in limine* that specific opinions proffered by specific expert witnesses were not admissible under *Daubert* and, as a consequence, those Plaintiffs who proposed to introduce these experts at trial could not provide admissible evidence of general causation, warranting summary judgment. Such a ruling did not, and could not, determine whether general causation fails as a matter of science, or whether a different set of proposed experts with different methodologies, supporting materials, reports, and depositions could support general causation. To grant summary judgment in all cases for all Defendants would rest on the infirm proposition that general causation has been litigated for all cases and for all time with respect to each Plaintiff and Defendant. But it has not.

**I.      Most Plaintiffs Have Not Had Any Opportunity to Submit Their Own Experts.**

The Court's unstated assumption appears to be that every Plaintiff with a case now filed in the MDL (for every claim, whether dismissed or live) already designated specific expert witnesses,

1

those experts cannot amend their reports, and those experts' opinions were excluded. That assumption does not withstand scrutiny. Most Plaintiffs did not even have a case on file when this Court issued its *Daubert* decision. It is axiomatic that a stranger to a case or controversy cannot designate experts (or do anything else) in someone else's active litigation. And some Plaintiffs only filed suit after the close of expert discovery of the excluded experts. Those Plaintiffs similarly have had no opportunity to submit experts of their own.

Though Plaintiffs frequently share experts, the Court cannot force them to do so. Here there is no indication that every Plaintiff has consented to using the slate of experts proffered by MDL Plaintiffs' leadership—in fact, certain counsel have strongly indicated they do not wish to do so. In many MDLs, *Daubert* is conducted in the context of bellwether cases, which makes the entitlement of other plaintiffs to proffer different experts clear. Where that is not true, MDL courts provide an opt-out (or opt-in) process. The Federal Judicial Center's *Pocket Guide for Transferee Judges* has a helpful discussion on this point:

> The use of common experts, along with consolidated expert disclosures and expert discovery, is also sometimes worthwhile. …
> [H]igh expert fees can provide an incentive for parties to join together in selecting their experts on common issues and to establish reasonable parameters on expert discovery.
> The PPA MDL court developed a system allowing plaintiffs in the individual federal actions, as well as state court plaintiffs, to ***either adopt scientific experts selected by the steering committee or decline to do so***. Following the plaintiffs steering committee's Rule 26 disclosures of general causation experts, the court gave individual plaintiffs a two-week opt-in period to decide whether to adopt those experts for use in their respective cases.… ***Later-added tag-along parties were given until three months prior to the close of fact discovery in their cases to adopt or decline to adopt experts***.

*Fed. Judicial Ctr., Managing Multidistrict Litigation in Products Liability Cases, A Pocket Guide for Transferee Judges*, FJC-MISC-2011-7, at 26, (2011) (emphasis added, footnote calls omitted).

Courts in this district have followed similar procedures. In the *Denture Cream MDL*, after

an adverse *Daubert* ruling pertaining to specific experts, various plaintiffs argued the order did not apply to them, but Chief Judge Altonaga disagreed. There, specific pre-trial orders required "Plaintiffs who filed cases after" initial expert disclosure to "identify and serve Rule 26 general causation report(s)," or instead "be deemed to rely on the general causation expert reports submitted by Plaintiffs" previously. *In re Denture Cream Prod. Liab. Litig.*, 204 F. Supp. 3d 1348, 1350 (S.D. Fla. 2016) (quoting DE 2144).

The *Lipitor* case is fully consistent with this procedure as, there too, the MDL court allowed individuals multiple opportunities to produce their own experts if they wished to do so.[1] Unlike *Denture Cream* or *Lipitor*, this Court never established an opt in or opt out process associated with the now-excluded experts, and has set no deadlines for newly filed Plaintiffs to submit experts.

It is no answer to say all Plaintiffs and Registry Claimants were represented by MDL Plaintiffs' Leadership. First, this Court is incorrect to assume that Plaintiffs' right to counsel of choice is displaced by the appointment of leadership. Other than *pro se* litigants, each plaintiff has her *own* counsel that makes decisions for that individual case.[2] The *Fluoroquinolone* MDL illustrates the point. There, individual plaintiffs argued that leadership was "responsible for

---

[1] The Fourth Circuit explained that it would "essentially disregard the entire course of the MDL proceedings" to *remand the cases* with no ruling on *Daubert*, rather than have the MDL court resolve *Daubert*. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 648-49 (4th Cir. 2018). This Court is not being asked to remand cases with no ruling on key issues. *Cf.* DE 6303 at 19 (quoting this language to suggest that this Court must apply its *Daubert* order in favor of Defendants that never litigated *Daubert*).

[2] *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 1441804, at *7 (S.D.N.Y. Apr. 12, 2016) (In MDLs, leadership "does not serve as counsel for all personal injury and wrongful death plaintiffs in the MDL; instead, each of those plaintiffs is represented by counsel of his or her choice…. [I]n contrast to absentee members of a class action, the personal injury and wrongful death plaintiffs in this MDL … have their own counsel. Those counsel not only can, but … are required to, monitor the progress of the litigation."); Stephen J. Herman, *Duties Owed by Appointed Counsel to Mdl Litigants Whom They Do Not Formally Represent*, 64 Loy. L. Rev. 1, 7-8 (2018) ("it is assumed that such plaintiffs are simultaneously represented and protected by privately retained counsel").

3

retaining and producing general causation and liability experts" for plaintiffs who opted out of a settlement. *In re Fluoroquinolone Prod. Liab. Litig.*, No. 0:15-MD-02642, 2020 WL 1677966, at *2 (D. Minn. Apr. 6, 2020). The court rejected that contention, since Leadership need not "defend case-specific motions and in fact [the PTOs] preserve[] the right of individual plaintiffs to act in their own self-interest." *Id.* Individual plaintiffs were required "retain[] general causation and liability experts," for their individual case, and were given "90 days from the date of this Order retain the proper experts." *Id.*

"Any relationship between plaintiffs and the Lead and Liaison Counsel … is created by [PTO 20] and is limited to [PTO 20].… Any proposed function and/or responsibility to be imposed on leadership counsel may only emanate from the document giving rise to that group's duties." *Casey v. Denton*, No. 3:17-CV-00521, 2018 WL 4205153, at *4 (S.D. Ill. Sept. 4, 2018). Here, Leadership is "responsible for prosecuting … common benefit claims and class claims" and for "coordinating the pretrial proceedings conducted by counsel for the individual plaintiffs." DE 685 (PTO 20) at 13-14. *Every* case in this MDL is not, of course, a "common benefit claim," and coordination, of course, does not mean *selecting each plaintiff's expert witnesses for her*. To the contrary, the Court expressly carved out "matters specifically directed to individual Plaintiffs and [t]heir counsel." *Id.* at 15. Just as in *Casey*, "it was never the intention or spirit of [PTO 20] to supersede the authority or importance of each plaintiff's individually-retained counsel …." 2018 WL 4205153, at *5.

Second, this Court's appointment appropriately deputized leadership to negotiate pretrial orders on all Plaintiffs' behalf. *See* PTO 20 at 13-16; PTO 37 at 9 (Registry Claimants also agreed leadership could "negotiate … PTOs"). But the 82 PTOs in this MDL all concern procedural and administrative matters. They do *not* cover dispositive motion practice for unwilling Plaintiffs, *nor*

4

do they waive any Plaintiffs' right to submit, through their individual counsel, their own expert witnesses. There is no PTO purporting to irrevocably designate the leadership expert slate as each Plaintiff's own expert.

The Court asked the parties to brief "how an individual Plaintiff's right to relitigate earlier consolidated decisions may be reconciled with the inherent case management challenges of a large toxic tort MDL." DE 6444 at 15. The question rests on a false premise: Plaintiffs are not *re*litigating anything if they submit never-before-seen experts with never-before-reviewed methodologies. Perhaps these experts will deploy methodologies so beyond reproach that Defendants will not even move to exclude them. That is, admittedly, unlikely. But the Court cannot prejudge the issue before it has been presented. Plaintiffs' core due process right to an opportunity to be heard is precisely why *PPA* or *Denture Cream* set a deadline for individual Plaintiffs to adopt leadership's expert slate *or produce their own*. Plaintiffs are not aware of any MDL that has *required* all Plaintiffs—with no opt-out right—to adopt leadership's expert slate.

The Court appears to fear the practical problem of thousands of Plaintiffs filing numerous expert disclosures, but there is no objective basis for this fear. No such problem has materialized in prior MDLs with this option. Even in this MDL, hardly any Plaintiffs filed a notice of intent to disclose non-designated cancer experts, even though all agree they had that right without "utilizing leadership counsel." DE 6444 at 15. Expert witnesses are expensive, and many will prefer to adopt the excluded experts and appeal rather than proceed on their own dime.

The Court's alternative suggestion that the *factual record* is the same in each case is also mistaken. Expert testimony is relevant—indeed central—to the factual determination of general causation. Different experts providing different testimony will necessarily produce a different factual record that is not currently before the Court. So, even accepting the Court's assertion that

5

every case "utilizes the same MDL master pleadings and avails itself of the same MDL record evidence—the same pleadings and the same evidence that gave rise to the Court's *Daubert* decision," DE 6444 at 14, different experts could use different methodologies that would yield testimony admissible to assist the trier of fact.

The show-cause order itself demonstrates why the particular expert makes all the difference. "Dr. Najafi was stricken, *inter alia*, because of his poor documentation of experiments and because of his excessive reliance upon assistants that exercised their own independent judgment." DE 6303 at 15. The epidemiologists "did not even rely upon [Dr. Najafi's] testing of the Defendants' product for their opinions." *Id.* They were excluded "because they failed to adequately explain their methodologies and because they relied upon 'cherry picked' data from studies to support their conclusions." *Id.* at 16. While we disagree with the Court's above conclusions, Plaintiffs note the obvious possibility that another plaintiff could submit a testing expert with better documentation who did everything himself. And such a plaintiff may wish to hire an epidemiologist who *does* rely on the unimpeachable testing results and does *not* "cherry pick."

The Court asked whether the standard should be the same as a motion for reconsideration. It should not, since no Plaintiff is asking the Court to reconsider anything that has been decided in her case.

The Court also asked how law of the case doctrine applies: "Relatedly, the parties must address how the law of the case could be different for any individual late-filing Plaintiff" as in, how "the Court [could] reach[] one conclusion on general causation for earlier-filed Plaintiffs who appeal to the Eleventh Circuit, but reach[] a different general causation conclusion for later-filed Plaintiffs who relitigated the issue." DE 6444 at 16. The Third Circuit recently answered this

6

question clearly: "The law of the case doctrine *cannot* be applied across distinct actions in this multidistrict proceeding." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023) (emphasis added). That is because an MDL is not a case, but a collection of many individual cases. "That means a district court's decision whether to grant a motion ... in an individual case depends on the record in that case and not others." *Id.* (quoting *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020)).

Remembering that it is not the fact finder, the Court could easily reach "one conclusion on general causation" for those who appeal now (resting on the leadership expert slate) and a different conclusion "for later-filed Plaintiffs." D.E. 6444 at 16. The conclusion the Court has already reached is that particular experts cannot testify because they did not deploy a sufficiently reliable methodology to assist the trier of fact. Accordingly, the Plaintiffs who submitted those excluded experts do not have sufficient evidence to go to a jury on a key question of fact, entitling the Brand Defendants to judgment as a matter of law as to those Plaintiffs. That existing conclusion is entirely compatible with a future conclusion that different experts the Court has not yet reviewed have deployed reliable methodologies in support of the conclusion that ranitidine can cause one or more designated cancers. Armed with that admissible expert testimony, those Plaintiffs would survive summary judgment.

If the Court instead recasts the conclusion it already reached as: "ranitidine does not cause any of the five designated cancers," it should say so. If the Court has already reached that conclusion based on its review of all of the scientific evidence, such a holding cannot be squared with a future decision finding that ranitidine could cause cancer. It *still* would not be law of a later-filed Plaintiffs' case, but the Court could give each Plaintiff their individual opportunity to be heard and then grant summary judgment, adhering to its conclusion based on its review of all

the science. It would be helpful for the Court to clarify which conclusion it reached: that the excluded experts did not offer admissible testimony, or that no expert could possibly offer admissible evidence that would survive general causation in this MDL because the Court has concluded, based on its review of the science, that NDMA in Zantac could not cause any of the designated cancers.

**II.     None of the Background Points Discussed in the Order Justify Summary Judgment.**

    **A.     The Case Management Structure Does Not Support Summary Judgment.**

The Court opined that "it was, from the very inception of this MDL, always the intent and design of the parties and of the Court that general causation would, if decided in the Defendants' favor, be dispositive of all claims in the MDL." DE 6303 at 12-13. The Court similarly posited that "the Plaintiffs recently conceded that, at least as to the Brand Defendants, final judgment should be entered in the Defendants' favor [f]or all personal injury claims. *See generally* DE 6234." DE 6303 at 12.

Both of these statements falter on the same problem: the distinction between cases in which general causation has been litigated and those in which it has not. Taking the point Plaintiffs supposedly "conceded" at DE 6234, that filing could not have been clearer in arguing that final judgment *should not* be entered in the Brand Defendants' favor for cases in which it was not litigated—including, for example any case that was not even filed when *Daubert* motions were submitted and opposed. *See* DE 6234 at 1-4. That is the opposite of a concession that Brand Defendants should receive final judgment for "all personal injury claims," whether litigated or not. As for the intent of the parties and the Court, MDL Plaintiffs leadership cannot speak to the Defendants' or the Court's state of mind. But we can note the objective fact that this Court did not deploy an opt out or opt in process as countenanced by the *Pocket Guide* and as ordered by other MDL courts. That means the Court's *Daubert* and summary judgment order applies only to

8

the Plaintiffs who submitted the now-excluded experts. And MDL Plaintiffs' Leadership can also say that we expected (and still expect) most Plaintiffs to rely on the submitted experts rather than hire new ones. But MDL Plaintiffs' Leadership did *not* intend to strip litigants of their due process right to individually be heard through the counsel of their choice, if they wish to proceed on their own. *See In re Fluoroquinolone Prod. Liab. Litig.*, No. 0:15-MD-02642, 2020 WL 1677966, at *2 (D. Minn. Apr. 6, 2020) (highlighting an individual's "right" to "disagree[] with Plaintiffs' Leadership's decision" and instead "continue litigating," which "necessarily entails the responsibility of retaining [] experts").

### B. Plaintiffs' Putative Freedom to Take Discovery from Non-Brand Defendants Was Illusory and Futile.

The Court expresses that it is "unable to discern, why the Plaintiffs would have been unable to take third-party discovery," and instead "presumes" that such discovery was not taken "because it makes sense that the best source of discovery to prove the theoretical capability of ranitidine to cause cancer is from the Brand Defendants who designed and manufactured the product." DE 6303 at 13. This presumption is wrong—third-party discovery would be irrelevant to any claims in the case and, for that reason, would have been futile and (if it mattered) unavailable.[3]

Plaintiffs had no reason to take third-party discovery regarding generic ranitidine because the Court had already dismissed as preempted all claims based on consumption of generic ranitidine. Where discovery is not relevant to any fact still at issue in a case, parties generally should do not seek it. For that same reason, any third-party discovery would have been quashed under Rule 45(d)(3)(A)(iv), since the burden it imposed on the non-Brand Defendants would have been "undue" relative to the needs of the case.

---

[3] Beyond that, it is not true that Brand Defendants designed and manufactured generic ranitidine, and so it would not "make sense" to presume that discovery limited to Brand Defendants would fully cover causation questions for generic ranitidine.

9

      **C.**      **The Court's Understanding of its *Daubert* Order Cannot Enlarge that Order's Legal Effect.**

As noted above, Plaintiffs believe the Court's *Daubert* order granted a motion *in limine* to exclude particular experts based on their methodologies. Because those experts only opined in support of claims based on consumption of branded Zantac, Plaintiffs believe the order was limited to those products. The Court suggests its order had a broader scope; that it addressed not only the "capability of the **Brand** Defendants' ranitidine" to cause cancer—the only products at issue—but instead "on ranitidine, generally" to cause cancer. DE 6303 at 13-14. Elsewhere, the Court expresses the same point in a different way: "This Court is familiar with the science at issue, and it can see no reason why its ruling does not apply to Non-Brand Defendants." DE 6303 at 20. The Court seems to be suggesting that it concluded definitively, based on the science that ranitidine of any sort cannot cause any of the five designated cancers. If that is so, Plaintiffs urge the Court to say so clearly, as that will likely eliminate any requests by any other Plaintiffs to submit new experts and will help frame the issues for appeal. Plaintiffs would *still* have an individual right to be heard, but there is surely no point in submitting new experts if the Court has already concluded—based on its review of the science rather than specific experts' interpretation of it—that ranitidine in all of its forms could not cause any of the designated cancers.

      **D.**      **The Orders Plainly Would Not Bind the Non-Brand Defendants if the Result Favored Plaintiffs.**

The Court states multiple times that "the Court's ruling on general causation applies with equal force to all of the Defendants, whether they participated in the Daubert briefing or not," DE 6303 at 17-18, and that if "the Court's *Daubert* conclusions were wrong and the Eleventh Circuit reverses, that reversal should apply to every Defendant in this MDL, Brand or Non-Brand." *Id.* at 20. Plaintiffs disagree. Distributors and Retailers may *waive* their right to participate on remand but cannot suffer an adverse ruling from a court without due process of law, including the

opportunity to be heard.

A "judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989). A nonparty has *not* had a "full and fair opportunity to litigate" a claim, and so issue preclusion does not apply except in specific, limited circumstances. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Those include an express agreement to be bound by a test case, certain types of interests in property, representative suits (such as class actions), a suit in which a non-party assumed control over the first litigation, or specific legal regimes such as bankruptcy. *Id.* at 895. None of these apply to MDLs. The non-Brands have not litigated *Daubert*, and have not *won Daubert*—nor, if the Brands had lost, would the non-Brands have lost *Daubert*.

To be sure, the Court's ultimate ruling may be predictable. But no preclusion doctrine applies since there is no full and fair opportunity to litigate.

### E. The Court's Understanding of What Would Be Surprising or Facilitate MDLs Is Irrelevant to Whether Summary Judgment Is Proper.

The Court suggests that applying its ruling to parties that did not litigate "should come as no surprise to the Plaintiffs," DE 6303 at 11. Suffice to say that MDL Plaintiffs' Leadership and many Plaintiffs are surprised at the Court's conclusions and position, but that is neither here nor there. Even a well telegraphed error of law is still error.[4] And many propositions appear to some to be "self-evident" or "unobjectionable," which is why consent, rather than assumptions, are how

---

[4] The Court suggests that its ruling at DE 3913 put Plaintiffs on notice of its plans, but omits that Plaintiffs responded by *not pleading the claims*. If anyone ever expected *Daubert* to be relevant for individualized negligence claims, that expectation was shattered months later when it turned out not to be relevant—because those claims were not pleaded. This was not a choice to *delay* amendment since Plaintiffs well knew the time to amend would close. The Retailers and Distributors knew those claims were not pleaded, which is why they did not participate in *Daubert*, since it—by then—could not affect them.

11

expert disclosure proceeds. *Id.* at 17. The general "purpose of MDLs," *id.* at 18, similarly does not transform a legally unavailable path into a viable one. The "very premise" that cases in an MDL can be considered as a whole "is wrong" since "the cases within an MDL 'retain their separate identities.'" *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 845 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015)). An MDL "court's decision whether to grant a motion … in an individual case depends on the record in that case and not others. Nor can a party's rights in one case be impinged to create efficiencies in the MDL generally." *Id.* General invocations of MDL efficiency are no substitute for law.

### III. The Court Lacks Jurisdiction to Enter Judgment in Favor of the Generics, Distributors, or Retailers.

The Court has already entered judgment in favor of the Generic Defendants with respect to all claims in this MDL. *See* DE 4664. Accordingly, the Court lacks jurisdiction to enter judgment *again*. They are simply not before the Court in any case or controversy over which this Court retains Article III authority.

With respect to Retailer and/or Distributor Defendants, the only claims are the hypothesized case-specific negligence claims. If any had been pleaded, the Court could now enter judgment on those claims under Rule 56(f) or upon a proper motion. But no Plaintiff ever filed such a claim, and so none are pending. There is nothing to dismiss, and the hypothetical possibility of a Plaintiff's requesting leave to amend to add the claim does not grant jurisdiction to enter judgment *before* amendment has been sought or allowed.

Dated: April 17, 2023                               Respectfully submitted,

*/s/ Tracy A. Finken*                               By: */s/ Robert C. Gilbert*
Tracy A. Finken                                     Robert C. Gilbert, FBN 561861
Email: tfinken@anapolweiss.com                      Email: gilbert@kolawyers.com
ANAPOL WEISS                                        KOPELOWITZ OSTROW FERGUSON
One Logan Square                                    WEISELBERG GILBERT
130 North 18th Street, Suite 1600                   2800 Ponce de Leon Boulevard, Suite 1100
Philadelphia, PA 19103                              Coral Gables, FL 33134
Tel: (215) 735-1130                                 Tel: (305) 384-7270

*/s/ Michael L. McGlamry*                           */s/ Adam Pulaski*
Michael L. McGlamry                                 Adam Pulaski
Email: efile@pmkm.com                               Email: adam@pulaskilawfirm.com
POPE McGLAMRY, P.C.                                 PULASKI KHERKHER, PLLC
3391 Peachtree Road NE, Suite 300                   2925 Richmond Avenue, Suite 1725
Atlanta, GA 30326                                   Houston, TX 77098
Tel: (404) 523-7706                                 Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan                                 Mark J. Dearman, FBN 0982407
Email: Rosemarie.bogdan@1800law1010.com             Email: mdearman@rgrdlaw.com
MARTIN, HARDING & MAZZOTTI                          ROBBINS GELLER RUDMAN & DOWD
1 Wall Street                                       120 East Palmetto Park Road, Suite 500
Albany, NY 12205                                    Boca Raton, FL 33432
Tel: (518) 862-1200                                 Tel: (561) 750-3000

Elizabeth A. Fegan                                  Marlene J. Goldenberg
Email: beth@feganscott.com                          Email: mjgoldenberg@goldenberglaw.com
FEGAN SCOTT, LLC                                    GOLDENBERG LAW, PLLC
1456 Sycamore Rd.                                   800 LaSalle Avenue, Suite 2150
Yorkville, IL 60560                                 Minneapolis, MN 55402
Tel: (312) 741-1019                                 Tel: (855) 333-4662

| | |
|---|---|
| Ashley Keller<br>Email: ack@kellerpostman.com<br>KELLER \| POSTMAN<br>2800 Ponce de Leon Boulevard, Suite 1100<br>Coral Gables, FL  33134<br>Tel: (312) 741-5222 | Frederick S. Longer<br>Email: flonger@lfsblaw.com<br>LEVIN SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Tel: (215) 592-1500 |
| Roopal P. Luhana<br>Email: luhana@chaffinluhana.com<br>CHAFFIN LUHANA LLP<br>600 Third Avenue, 12th Floor<br>New York, NY  10016<br>Tel: (888) 480-1123 | Francisco R. Maderal, FBN 0041481<br>Email: frank@maderalbyrne.com<br>MADERAL BYRNE PLLC<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Tel: (305) 520-5690 |
| Ricardo M. Martinez-Cid, FBN 383988<br>Email: RMartinez-Cid@Podhurst.com<br>PODHURST ORSECK, P.A.<br>SunTrust International Center<br>One S.E. 3rd Avenue, Suite 3200<br>Miami, FL 33130<br>Tel: (305) 358-2800 | Lauren S. Miller<br>Email: laurenm@hbsslaw.com<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1914 4th Avenue North<br>Suite 320<br>Birmingham, AL 35203<br>Tel: (205) 533-4175 |
| Melanie H. Muhlstock<br>Email: mmuhlstock@yourlawyer.com<br>PARKER WAICHMAN LLP<br>6 Harbor Park Drive<br>Port Washington, NY 11050<br>Tel: (516) 723-4629 | Daniel A. Nigh, FBN 30905<br>Email: dnigh@levinlaw.com<br>LEVIN PAPANTONIO THOMAS<br>MITCHELL RAFFERTY & PROCTOR, P.A.<br>316 South Baylen Street, Suite 600<br>Pensacola, FL  32502<br>Tel: (888) 435-7001 |
| Carmen S. Scott<br>Email: cscott@motleyrice.com<br>MOTLEY RICE LLC<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Tel: (843) 216-9160 | Mikal C. Watts<br>Email: mcwatts@wattsguerra.com<br>WATTS GUERRA LLP<br>4 Dominion Drive<br>Building 3, Suite 100<br>San Antonio, TX  78257<br>Tel: (800) 294-0055 |

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Steven B. Rotman
Email: srotman@housfeld.com
HAUSFELD, LLP
One Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 207-0602

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY JUNG, LLP
1100 W. Town & Country Road
Suite 1250
Tel: (818) 869-6476

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

*Plaintiffs' Steering Committee*

Brooke Achua
Email: brooke@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd., 46th Floor
Yorkville, IL 60560
Tel: (646) 502-7910

Harrison M. Biggs
Email: hbiggs@yourlawayer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4633

Lea P. Bucciero
Email: lbucciero@podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Marlo E. Fisher
Email: marlo@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

Noah Heinz
Email: noah.heinz@kellerpostman.com
KELLER | POSTMAN
1100 Vermont Avenue NW, Floor 12
Washington, DC 20005
Tel: (202) 918-1841

Caroline G. McGlamry
Email: carolinemcglamry@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Laura K. Stemkowski
Email: lstemkowski@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9165

Alexander C. Cohen
Email: acohen@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Kendra Goldhirsch
Email: goldhirsch@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Catelyn McDonough
Email: cmcdonough@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

Madeline Pendley
Email: mpendley@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7003

Daniel E. Tropin
Email: tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (954) 990-2216

*Plaintiffs' Leadership Development Committee*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

                                                              */s/ Robert C. Gilbert*
                                                              Robert C. Gilbert