UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:  ZANTAC (RANITIDINE)                                          MDL NO. 2924
PRODUCTS LIABILITY                                                      20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**NON-BRAND DEFENDANTS' JOINT REPLY TO PLAINTIFFS' RESPONSE TO
SHOW CAUSE ORDER DE 6303 AND INCORPORATED MEMORANDUM OF LAW**

On February 28, 2023, the Court directed Plaintiffs to "show cause why summary judgment should not be entered in favor of the non-Brand Defendants for Designated Cancers for the same reasons summary judgment was entered in favor of the Brand Defendants." [DE 6303 at 20]. One month later, on March 31, 2023, the Court directed Plaintiffs to "show cause why summary judgment should not be entered against all plaintiffs for designated cancers, regardless of the date the case was filed[.]" [DE 6444 at 1]. A response to the former was to be filed by April 17, 2023, and the latter by the next day, April 18, 2023. [DE 6303 at 20; DE 6444 at 16].

Instead of separately responding to the two distinct orders to show cause—and the distinct issue each order raises—Plaintiffs filed a single response that blurs and confuses those issues. [DE 6540]. Further, with respect to the February 28th show cause order, Plaintiffs' filing largely ignores the structure the Court proposed to "aid in the clarity and structure of the parties' briefing," and fails to fully address the "seven salient points" the Court identified. [DE 6303 at

11]. Defendants reply to Plaintiffs' response as the Court requested, with separate filings for each show cause order.[1]

      In summary, in response to the February 28th show cause order [DE 6303], Plaintiffs have not offered any reason why summary judgment should not be granted in favor of the Non-Brand Defendants as to Designated Cancer cases based on the Court's prior rulings on *Daubert* and general causation. Substantively, Plaintiffs offer no evidence or compelling argument why the Court's rulings on motions filed by Brand Defendants—*i.e.*, that Plaintiffs failed to create a triable issue on their allegation that ranitidine can cause the Designated Cancers—would not apply with equal force to the ranitidine as manufactured or repackaged by a Generic Defendant, or sold or distributed by a Retailer or Distributor Defendant. Procedurally, Plaintiffs were given a full and fair opportunity to seek all discovery relevant to the scientific issue presented, to present any proof of causation that they had, and to show cause why the Court should not extend its *Daubert* and general causation rulings to Non-Brand Defendants. They have not done so. Thus, summary judgment should be entered in favor of Non-Brand Defendants for all Designated Cancer cases that are pending before the Court. Further, if the Eleventh Circuit grants remand consistent with this Court's indicative ruling and remands cases where the Court previously entered judgment under Rule 54(b), the Court should also grant summary judgment in favor of Non-Brand Defendants as to those cases.

---

[1] This is the Reply to Plaintiffs' response to the February 28, 2023 show cause order, DE 6303, on behalf of the Generic and Repackager Defendants, Distributor Defendants, and Retailer Defendants (collectively, "Non-Brand Defendants"). Generic Defendant Par Pharmaceutical, Inc. has filed a voluntary petition for bankruptcy and, pursuant to section 362(a) of the Bankruptcy Code, an automatic stay has been in effect since the Petition Date. [*See* DE 5948]. This motion is not filed on behalf of Par Pharmaceutical, Inc.

**A. Defendants' Responses to the Court's Seven Salient Points Identified in the Show Cause Order.**

**Point 1: The Case Management Structure of this MDL.**

<u>Non-Brand Defendants' Response</u>**: The case management structure of the MDL always contemplated a single, streamlined general causation and *Daubert* process that would apply to all Plaintiffs and Defendants.**

From this MDL's inception, the pretrial orders negotiated by the parties and approved by the Court made clear that general causation would be litigated once and the result would apply to all cases involving Designated Cancers. From the creation of the Census Registry procedure, through the appointment of Plaintiffs' Leadership, to the entry of a scheduling order, the MDL was structured to allow a single, streamlined litigation of general causation and *Daubert*.

In April 2020, the Court issued Pretrial Order ("PTO") 15, which created the procedures for implementing the Census Registry. [DE 547]. The Census Registry was established so that the parties and the Court would have "a robust and timely understanding of the scope and size" of the litigation and could make "early case management decisions that match the contemplated nature of the litigation." *Id.* at 2. Claimants who participated in the Registry received the benefit of a tolling of the statute of limitations and had access to a joint and collaborative database of documents. *Id.* at 11. The parties agreed that the Registry was created "with the intent to trigger expiration of the Registry and associated tolling upon entry of *an Order* ruling upon *Daubert* motions directed to general causation." *Id.* at 12 (emphasis added). That meant once the Court issued its order on general causation and *Daubert*, the registered claimants would have to decide whether, considering that order, to file their claims.

Pretrial Order 20 established Plaintiffs' Leadership Structure and defined the authority and duty of leadership. [DE 685]. "Lead counsel," the Court said, "will be responsible for

prosecuting any and all potential common benefit claims and class claims, as well as coordinating the pretrial proceedings conducted by counsel for individual Plaintiffs." *Id.* at 13-14. The list of lead counsel's duties included briefing and arguing motions on behalf of the Plaintiffs and consulting with and employing expert witnesses. *Id.* at 15.

Several weeks after Plaintiffs' Leadership was appointed, the Court issued Pretrial Order 24, which addressed general case management issues. [DE 767]. PTO 24 memorialized the parties' agreement to non-bifurcated discovery that would last 18 months, "culminating in the filing of *Daubert* motions relating to general causation," "with the timeframe for completion and case-specific bellwether discovery to be negotiated and submitted to the Court within 30 days of the Court's general causation *Daubert* rulings." *Id.* at 2. PTO 24 also noted that the Court did not "anticipate, expect, or encourage" filings from anyone other than the parties' leadership and created a process by which any party other than leadership that wished to file a motion had to confer with leadership first and "work in good faith to resolve any concerns regarding the proposed motion." *Id.* at 5.

Subsequently, the Court issued Pretrial Order 37, which provided a protocol for common benefit work and expenses by Plaintiffs' Leadership counsel. [DE 1363, 1408].[2]  PTO 37 listed "Identification and Work Up of Experts" as common benefit work to be performed by Leadership counsel. [DE 1408 at 18-19]. PTO 37 included a consent form to be signed by or on behalf of each individual Registry claimant, certifying that the claimant agrees to be bound by

---

[2] The operative version of PTO 37 is at DE 1408.

the Court's pretrial orders and that Plaintiffs' Leadership would represent them as fully as filed Plaintiffs. *Id.* at 32.

The early pretrial orders in this case make clear that, from the start, it was all parties' agreed-upon intent to litigate general causation once and have the ruling on general causation apply to all Plaintiffs and Defendants. As the Court noted in the February 28th show cause order, non-bifurcated, expedited discovery was important to the Plaintiffs because "if they prevail on some or all of the general causation hearing, they want to get right to it in working up individual cases for trial." [DE 6303 at 12 n.8 (quoting DE 960 at 189)].

Individual Plaintiffs with short form complaints on file at the time the *Daubert* motions were litigated are bound by the Court's general causation ruling and cannot choose new or different general causation experts. Indeed, Plaintiffs acknowledge that the Court's general causation order applies to individual Plaintiffs "who submitted the now-excluded experts." [DE 6540 at 8-9]. The pretrial orders negotiated by the parties and endorsed by the Court never contemplated affording such individual Plaintiffs who briefed and litigated *Daubert* motions a second bite at the same apple against different defendants. Thus, to the extent that those individual Plaintiffs are seeking that relief, the Court should decline it and apply its general causation ruling to all parties named in those individual Plaintiffs' short form complaints— including Non-Brand Defendants.

Tellingly, the only example Plaintiffs give of "cases" to which they believe the Court's general causation ruling would not extend is "any case that was not even filed when *Daubert* motions were submitted and opposed." [DE 6540 at 8]. Defendants' concurrently filed reply to the Court's March 31, 2023 show cause order explains why, in light of Plaintiffs' inadequate response to that show cause order, the Court should extend the general causation ruling to these

later-filed short form complaints. *See* Defs' Joint Reply to MDL Plaintiffs' Leadership's Response to Order to Show Cause [DE 6444]. Non-Brand Defendants incorporate by reference the points made in that Reply.

Plaintiffs' reliance on *Chauvin*[3] does not negate the provisions of this Court's pretrial orders that make clear that the general causation ruling would apply to all Plaintiffs' claims. [DE 6540 at 9]. In *Chauvin*, before the court could rule on the defendants' *Daubert* motion, a voluntary settlement program was negotiated, and the proceedings were stayed. *Id*. at *11-12. The court then issued a scheduling order requiring any plaintiff who did not want to participate in the voluntary settlement program to produce a general causation expert within 120 days. *Id*. at *12-13. Some non-settling plaintiffs argued that leadership remained responsible for defending the *Daubert* challenges for them, which the district court rejected. *Id*. at *14-16.

The procedural posture of *Chauvin* makes it inapposite. There is no pretrial order in this MDL that preserved the right of individual Plaintiffs to litigate the issue of general causation separately from leadership, no voluntary settlement program, and no order instructing non-settling plaintiffs to produce new experts.

Here, with the very different procedural history and case management structure of this MDL, the Court issued a show cause order to give all Plaintiffs a fair and full opportunity to show cause why the general causation ruling should not extend to them. [*See* DE 6444]. Plaintiffs' response does not come close. *See* Defs' Joint Reply to MDL Plaintiffs' Leadership's Response to Order to Show Cause [DE 6444] at 2-6.

---

[3] *Chauvin v. Bayer HealthCare Pharms. Inc. (In re Fluoroquinolone Prods. Liab. Litig.)*, MDC No. 15-MD-02642, 2020 U.S. Dist. LEXIS 60077 (D. Minn. Apr. 6, 2020).

**Point 2: Plaintiffs Were Free to Take Discovery from Non-Brand Defendants.**

**Non-Brand Defendants' Response: Non-Brand discovery was available, actually conducted, and Plaintiffs fail to identify any additional Non-Brand discovery that would have impacted *Daubert*.**

   i.   *Non-Brand Discovery was conducted both before and after the Court's June and July 2021 preemption rulings.*

Plaintiffs' claim that Non-Brand discovery was "unavailable" after the Court dismissed the master complaint counts against the Non-Brand Defendants is simply false. [*Cf.* DE 6540 at 9]. To the contrary, extensive Non-Brand discovery was actually conducted in this MDL, both before *and* after the Court's rulings issued in June and July 2021 dismissing all claims against Non-Brand Defendants from the amended master complaints.

Prior to the rulings on the amended master complaints, Non-Brand Defendants each negotiated a core discovery agreement with Plaintiffs and produced documents and data corresponding to those agreements. Non-Brand Defendants also produced Rule 30(b)(6) corporate designee witnesses for depositions noticed and taken by Plaintiffs. And Generic Defendants collectively produced millions of pages of documents in response to Plaintiffs' requests for production propounded during discovery. [*See* DE 3750 at 48] (noting the "substantial costs" Generic Defendants incurred during discovery).

Moreover, discovery continued even *after* the Court dismissed all claims in the amended master complaints as to the Non-Brand Defendants. For example, in September 2021, Plaintiffs served a subpoena on at least one Generic Defendant, Dr. Reddy's Laboratories, Inc. ("Dr. Reddy's"), seeking the production of certain retained product. *See* Notice of Subpoena (attached hereto as Exhibit 1). Counsel for Dr. Reddy's met and conferred multiple times with Plaintiffs' counsel in an effort to reach an agreement by which Dr. Reddy's would provide

certain samples to Plaintiffs' leadership.[4] Thus, Plaintiffs' own conduct refutes their assertions that discovery from Non-Brand Defendants was "unavailable" to them once the Court issued its rulings on the amended master complaints.

ii.   *Further Non-Brand discovery was available to Plaintiffs if relevant and material to the issues presented.*

Likewise, Plaintiffs' assertion that general causation discovery as to generic ranitidine "would have been quashed" after the Court's June and July 2021 rulings is nothing more than an unwarranted assumption. [*Cf.* DE 6540 at 9]. As the Court noted in its show cause order, Plaintiffs engaged in third-party discovery in this MDL, seeking discovery from a privately owned laboratory that conducted experiments on behalf of the FDA. [DE 6303 at 13 n.9]. Nothing prevented Plaintiffs from directing similar discovery towards Non-Brand Defendants after July of 2021. Plaintiffs' own conduct shows this is true—as noted above, Plaintiffs directed subpoenas to Dr. Reddy's for generic ranitidine products after the Court's preemption rulings on the master complaints, and Dr. Reddy's negotiated with Plaintiffs and was prepared to produce retained product in response to those subpoenas. Thus, if Plaintiffs had requested additional discovery tailored to generic ranitidine that was not unduly burdensome, there is no reason to believe that a motion to quash would even have been brought or granted by the Court. And by failing to even attempt to issue additional discovery requests, Plaintiffs have waived any *post hoc* argument that their hypothetical discovery requests would have been quashed.

---

[4] Counsel for Dr. Reddy's provided a proposed stipulation for Plaintiffs' counsel's consideration on December 2, 2021; however, Plaintiff's counsel did not respond to that proposal. (*See* Email exchange attached as Exhibit 2).

iii.   *Plaintiffs do not identify any additional Non-Brand discovery that would have impacted the Court's* Daubert *rulings.*

Plaintiffs do not describe any additional discovery against a Non-Brand Defendant that (1) is relevant and material to the general causation inquiry and (2) would not have been provided via discovery on the Brands (or from the discovery already provided by the Non-Brand Defendants). As the Court correctly observed, "the best source of discovery to prove the theoretical capability of ranitidine to cause cancer is from the Brand Defendants who designed and manufactured the product, not from members of the supply chain who merely resold the product." [DE 6330 at 13]. Thus, Plaintiffs have simply failed to show good cause that any additional discovery from Non-Brand Defendants would have impacted the *Daubert* rulings or the Court's finding that Plaintiffs lacked admissible proof of general causation.

**Point 3: The Potential of Ranitidine to Cause Cancer Applies Equally to All Defendants.**

**<u>Non-Brand Defendants' Response</u>: Plaintiffs fail to rebut the Court's observation.**

Plaintiffs do not address this central point in their response to the Court's show cause orders, perhaps because it is impossible to rebut persuasively. Plaintiffs were tasked with producing reliable evidence that the ranitidine molecule was capable of causing the Designated Cancers. Nothing about this task is specific to brand-name Zantac, which shares the same ranitidine molecule as generic ranitidine medications.

Indeed, Plaintiffs' own experts recognized that ranitidine is ranitidine—and, therefore, relied on data regarding ranitidine regardless of which companies manufactured or sold it. As the Court noted in its show cause order, Plaintiffs' experts relied on data regarding ranitidine

manufactured by both Brand Name Defendants and Generic Defendants, and then distributed and

sold by Distributor and Retailer Defendants:

> [T]he epidemiology in this case was necessarily based upon ranitidine that
> traveled through the supply chain. The ranitidine consumed by participants in the
> epidemiology studies that the experts reviewed was handled by Brand
> Defendants, Generic Defendants, Distributor Defendants, and Retailer
> Defendants. Stated differently, if "mishandled" ranitidine had the ability to cause
> cancer, the ranitidine epidemiology attempted to detect that ability. Yet for all of
> the reasons set forth in the Court's *Daubert* decision, no study outside of this
> litigation reached the conclusion that ranitidine causes cancer.

[DE 6303 at 15-16, footnote omitted]. Additionally, Plaintiffs' experts Patricia Moorman,

M.S.P.H., Ph.D. (epidemiologist), Ramin Najafi, Ph.D. (chemist), and Dipak Panigrahy, M.D.

(pathologist) all referenced FDA testing of ranitidine for NDMA and its results, including testing

and results for various manufacturers of generic ranitidine. *See* Patricia Moorman Report at 34-

36; Ramin Najafi Report at 58; Dipak Panigrahy Report at 198. Dr. Najafi also included results

from his own testing of Dr. Reddy's ranitidine in his report. Ramin Najafi Report at 59-60, 64.


**Point 4: The Court's *Daubert* Rulings Would Not Have Been Altered by Non-Brand
Discovery.**

**<u>Non-Brand Defendants' Response</u>: Plaintiffs fail to explain how additional Non-Brand
discovery would have changed the outcome of the Court's *Daubert* rulings.**

  As described above, while Plaintiffs complain about their alleged inability to take

additional discovery from Non-Brand Defendants, even if that were true, Plaintiffs do not

explain how that discovery would have affected the Court's causation and *Daubert* analysis. As

the Court noted in its show cause order, Plaintiffs' experts were not stricken for any reason that

could have been cured with Non-Brand Discovery. [DE 6303 at 14-16]. As with Point 3,

Plaintiffs have not attempted to show otherwise.

**Point 5: The Application of the Court's *Daubert* Decision to Non-Brand Defendants Should Come As No Surprise to the Plaintiffs.**

<u>**Non-Brand Defendants' Response**</u>**: Plaintiffs' claimed surprise that the Court would apply the *Daubert* rulings to Non-Brand Defendants is not warranted.**

Plaintiffs assert that "MDL Plaintiffs' Leadership and many Plaintiffs" were surprised at

the Court's suggestion that the *Daubert* rulings would apply to Non-Brand Defendants. [DE

6540 at 11]. The pretrial orders discussed above, along with Plaintiffs' experts' inclusion of

generic ranitidine in their reports, demonstrate that Plaintiffs were plainly on notice that the

exclusion of Leadership's slate of general-causation experts would operate to foreclose all claims

involving Designated Cancers against all Defendants.

As discussed above, Pretrial Orders 15, 20, 24, and 37 document the agreement reached

among the parties and the Court that general causation and *Daubert* would be litigated once and

that the *Daubert* rulings would apply to all litigants, including litigants in the Registry.

Additional evidence of Plaintiffs' knowledge that the causation and *Daubert* rulings would apply

to Non-Brand Defendants is in the Plaintiffs' experts reports, several of which, as noted above,

reference generic ranitidine. (*See* Patricia Moorman Report at 34-36; Ramin Najafi Report at 58;

Dipak Panigrahy Report at 198).

Plaintiffs had every reason to understand that the Court would decide whether Plaintiffs'

evidence established that the molecule ranitidine caused the Designated Cancers, regardless of

whether the ranitidine was in brand-name or generic packaging.

11

**Point 6: The Court's Ruling Applies to the Defendants As Well As to the Plaintiffs.**

**Non-Brand Defendants' Response: If the Eleventh Circuit completely reverses the Court's preemption and *Daubert* rulings, the Non-Brand Defendants could not relitigate general causation absent instructions from the Circuit.**

Plaintiffs also challenge the notion that, if the Eleventh Circuit completely reversed this Court's preemption and *Daubert* rulings, that the reversal on *Daubert* would apply to the Non-Brand Defendants. [DE 6540 at 9-10]. But Plaintiffs' citation to Supreme Court cases on preclusion principles misses the point.

This Court issued its general causation ruling after affording all parties the opportunity to brief and argue general causation. Thus, if the Eleventh Circuit were to reverse this Court on *Daubert* by holding that Plaintiffs' experts' opinions that the ranitidine molecule can cause cancer are sufficiently reliable to be admitted at trial, without instructions for further proceedings before this Court, that appellate ruling would be law of the case and Non-Brand Defendants could not seek to re-litigate general causation as to their generic ranitidine products which contain the same ranitidine molecule as brand-name Zantac. *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) (collecting cases that stand for the proposition that "[t]he law of the case doctrine bars relitigation of issues that were decided, explicitly or by necessary implication, in a prior appeal").

**Point 7: Applying the Court's General Causation Ruling Across All Defendants Serves the Purpose of MDLs.**

**Non-Brand Defendants' Response: Plaintiffs' allegation that the Court is elevating efficiency above the law is erroneous.**

Applying the general causation ruling to all Defendants, subject to a show cause process, serves the purpose of MDLs. Plaintiffs' suggestion that the Court is placing efficiency above legal procedure is misplaced. In the case cited by Plaintiffs, DE 6540 at 12, the Sixth Circuit

granted a petition for writ of mandamus when the district court allowed MDL plaintiffs to amend their complaint in violation of Federal Rule of Civil Procedure 16(b). The district court allowed the amendment because it felt that the bellwether trial would be more efficient if it included the claims in the amended complaint. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020). The Sixth Circuit held that, while an MDL court "has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL[,]" it cannot ignore the rules of procedure in favor of efficiency. *Id.* at 841.

Nothing like that happened in this case. Here, applying the general causation ruling to the Non-Brand Defendants does not violate the Federal Rules of Civil Procedure or any other statute or rule. The pretrial orders make clear that it was the intent of the parties and the Court to apply the general causation ruling to all cases involving Designated Cancers. Following through on that intent should come as no surprise and is well within the scope of the Court's authority to manage the MDL.

Moreover, the Court's February 28th show cause order demonstrates that it is doing exactly what MDL judges are supposed to do: manage large and complex litigation in a way that balances the values of efficiency and fairness to litigants. A recent decision from the Third Circuit, *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55 (3d Cir. 2023), is instructive.[5] The Third Circuit reversed an MDL court's decision to exclude substantial portions of an economist expert's testimony proffered by plaintiff Home Depot. It held that the district court erred by failing to give Home Depot—which was *not* a party during earlier phases of the

_____

[5] Plaintiffs approvingly cite to the *Home Depot* decision in their show cause response. [DE 6540 at 6-7].

MDL—a meaningful opportunity "to put forth new legal theories and to raise new arguments" and by ignoring "Home Depot's arguments that prior rulings in the MDL should not be followed." *Id.* at 64. However, the Third Circuit *also* recognized that courts can and should manage MDLs in a manner that respects the judicial interest in finality of decisions, so long as the court appropriately balances "two aspects of finality—judicial economy and fairness to litigants." *Id.* at 65. The Third Circuit identified "proper methods of vindicating these values" in the MDL context—one of which is for an MDL court to "rely on its prior decisions as persuasive, and demand good reasons to change its mind" through a show cause process. *Id.* at 65-66 (collecting MDL cases employing a show cause process).

Here, while the Court appropriately considered "the efficiencies gained through the Court's application of its general causation ruling now" [DE 6303 at 18], it did not stop there. Instead, the Court balanced the values of efficiency and fairness to litigants by entering its general causation ruling with respect to Brand Defendants *and* by giving Plaintiffs an opportunity to show cause why that ruling should not be extended to Non-Brand Defendants. As the Court correctly observed, this is an appropriate mechanism to employ in this MDL. [*See* DE 6303 at 18-20 (citing *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Prods. Liab. Litig.*, 892 F.3d 624 (4th Cir. 2018)]; *see also Home Depot*, 59 F.4th at 65-66. Other MDL courts have similarly employed a show cause process after reaching a dispositive ruling on a cross-cutting pretrial issue,[6] as have courts that have granted summary judgment to a non-

---

[6] *See also In re Fosamax (Alendronate Sodium): Prod. Liab. Litig.*, No. 08-08 JAP LHG, 2014 WL 1266994, at *10 (D.N.J. Mar. 26, 2014) ("[U]tilizing an [order to show cause] to apply a prior legal ruling to other Plaintiffs in an MDL is hardly inappropriate. … Rather, several MDL courts have used an OTSC to do just that."), *vacated on other grounds sub nom. In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*, 852 F.3d 268 (3d Cir. 2017)*, vacated and remanded*

movant.[7]  As detailed above, Plaintiffs have made scant effort to show cause why the Court should not extend its general causation order to the Non-Brand Defendants. And, to the extent Plaintiffs do, they do so only in generalized terms. They did not respond at all to several of the Court's salient points and offered only cursory and easily rebutted arguments to the others. Plaintiffs cannot equate their lack of diligence in responding to the show cause order to any unfairness or lack of appropriate process on the part of the Court.

For these reasons, the Court should extend its *Daubert* and general causation ruling to the Non-Brand Defendants and enter summary judgment in their favor as to cases and claims that are pending in this MDL brought by individual Plaintiffs with Designated Cancers.

---

*sub nom. Merck Sharp & Dohme Corp. v. Albrecht*, S. Ct. 1668 (2019) (show cause portion not subject to reversal); *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, No. 2:11-MD-2226-DCR, 2012 WL 3290145, at *1, n.1 (E.D. Ky. Aug. 10, 2012) ("The Show Cause Order … directed all plaintiffs with claims against any Generic Defendant to show cause why those claims should not be dismissed … on preemption grounds] …."), *aff'd sub nom. In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014).

[7] *Brikho v. Greeno*, No. 19-10592, 2022 WL 4137810, at *5–6 (E.D. Mich. Sept. 12, 2022) (Because "Fed. R. Civ. P. 56(f) allows a district court to grant summary judgment to a nonmovant, so long as it gives notice and an opportunity to respond before doing so[,] … [the] Court ordered Plaintiff … to show cause, in writing, why the Court should not grant summary judgment in favor of these newly-added Defendants."); *see also Santos v. Baca*, No. 2:11-CV-01251-KJD-NJK, 2019 U.S. Dist. LEXIS 116009, at *7 (D. Nev. July 11, 2019) (ordering without invoking Rule 56(f) that plaintiff "show cause as to why Burson is not similarly situated to the other defendants who have received judgment in their favor"). This process occurred even before the codification of Rule 56(f). *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 701 (7th Cir. 2009) (affirming "district court's grant of summary judgment in favor of any and all named defendants" where "the district court granted defendants' motions for summary judgment" and "ordered [plaintiff] to show cause why it should not grant summary judgment in favor of all other defendants").

**B.  There Is No Legitimate Basis for Confusion About the Scope of the Court's General Causation Ruling.**

In Section II(C) of their response to the Court's show cause orders, Plaintiffs claim to seek clarification about the scope of the Court's *Daubert* rulings. [DE 6540 at 10].  Plaintiffs ask: Was the Court reviewing the experts' interpretation of the science or declaring unilaterally what the science shows?

The Court's careful, deliberate, and thorough general causation ruling speaks for itself and plainly rests on Plaintiffs and their experts' failure of proof.  As the Court laid out, it considered all relevant information, including: (1) the experts' reports; (2) deposition testimony; (3) the science upon which the reports and opinions are based; and (4) the parties' briefing and argument. After evaluating that information, the Court issued a 337-page opinion meticulously explaining its conclusion that Plaintiffs failed to provide *any* reliable expert evidence showing "that ranitidine is capable of causing a Designated Cancer at the highest realistic exposure level any plaintiff may have experienced." [DE 6120 at 34].

There is no reasonable confusion about the scope of the Court's rulings, which fully conforms to the gatekeeping role that courts have under *Daubert*. The Court did not usurp the role of the jury; it did not evaluate the science on its own and come to an independent determination about whether ranitidine causes cancer. Rather, Plaintiffs submitted their best evidence that ranitidine causes the Designated Cancers and the Court found it unreliable and inadmissible. That is exactly what a trial court is supposed to do when functioning as the expert testimony gatekeeper pursuant to Rule 702 and *Daubert*.

**C. With Respect to Plaintiffs Who Participated in the *Daubert* Briefing, Collateral Estoppel and Law of the Case Also Compel the Conclusion That Judgment Should Be Entered for the Non-Brand Defendants.**[8]

As demonstrated above, given the basic structure of this MDL, the Court's prior orders, and the opportunity to address the issues presented by the Order to Show Cause itself, all Plaintiffs had the opportunity to support with evidence their allegation that ranitidine can cause the Designated Cancers, but they failed to do so. Therefore, judgment should be entered for any Defendant against whom such proof is a necessary element of the Plaintiffs' claims in this MDL: *i.e.*, all Defendants, including Non-Brand Defendants.

But there is an additional reason that the Court should enter summary judgment for the Non-Brand Defendants as to some Plaintiffs with Designated Cancers. As Plaintiffs seem to concede, the individual Plaintiffs who participated in the *Daubert* and summary judgment briefing in response to the Brand Defendants' motions had a full and fair opportunity to present evidence that might support the assertion that ranitidine can cause the Designated Cancers—and have failed to do so. [DE 6540 at 8-9 (asserting that the Court's *Daubert* and summary judgment rulings apply to "the Plaintiffs who submitted the now-excluded experts")]. It is easy to see that if such individual Plaintiffs also had a claim against a Non-Brand Defendant, that claim would likewise be precluded. A Retailer or Distributor Defendant cannot possibly be liable for distributing and selling a product that an individual Plaintiff has failed to show is capable of

---

[8] Apotex Corp. does not participate in this section.

causing the disease on which she bases her claims.[9] Similarly, a Generic Defendant cannot be liable for manufacturing a product that the plaintiff has failed to show can cause cancer.

The Court is, of course, already in a position to apply those rulings to any claims against Retailer and Distributor Defendants that still remain before the Court (notably "Count VII" of the original Master Personal Injury Complaint), and as to individual Plaintiffs' cases against Generic Defendants that likewise are still before the Court.[10] Should the Eleventh Circuit remand consistent with this Court's indicative ruling, this Court should also apply the rulings to the remanded claims.

To the extent Plaintiffs argue to the contrary, those arguments fail. Plaintiffs seem to complain about the fact that it was the Brand Defendants that filed the *Daubert* and summary judgment motions, and Non-Brand Defendants submitted no briefs or argument. But that is largely beside the point. The very existence of the doctrine of non-mutual collateral estoppel demonstrates that any potential fairness or due process issue turns not on whether the particular defendant participated in earlier briefing, but rather on whether ***the plaintiff***—against whom the prior ruling is being applied—has had ***one*** full and fair opportunity to address the crucial issue in

---

[9] Now that it is clear that no plaintiff has pleaded any claim of individualized, case-specific negligence on the part of a Distributor or Retailer—the hot truck in the desert theory—the only remaining theory is that the Retailer or Distributor should be liable for simply having distributed or sold the product at issue. And there appears to be no short form complaint in which any plaintiff tenders a claim against a Retailer or Distributor Defendant unaccompanied by a claim against a Brand Defendant or Generic Defendant. Thus, if judgment is properly rendered for a Brand or Generic Defendant based on a plaintiff's failure to present evidence that ranitidine caused plaintiff's disease, that plaintiff's claims against Retailer and Distributor Defendants must fail as well.

[10] Plaintiffs' suggestion that the Court lacks jurisdiction to render rulings for Generic Defendants or Retailers and Distributors is addressed in the next section.

a relevant setting. As the Supreme Court observed, "no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation." *Standefer v. United States*, 447 U.S. 10, 24 (1980); *see also Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1578-79 (quoting *United States v. Mendoza*, 464 U.S. 154, 158 (1984)).[11] Here, an individual Plaintiff's participation in the original briefing on the *Daubert* and causation issues provided that plaintiff with one fully adequate opportunity to address the issues. The notion that this Court's rulings should not have preclusive effect merely because Non-Brand Defendants did not directly participate in the *Daubert* briefing on the Brands' motions, [*see* DE 6540 at 11], turns the due process principles underlying non-mutual collateral estoppel on their head.

The law of the case doctrine—effectively, the application of collateral estoppel/issue preclusion within the case—also applies to bar individual Plaintiffs who participated in the *Daubert* briefing from re-litigating general causation as to their claims against Non-Brand Defendants. The law of the case can apply "horizontally"; that is, prior rulings can be applied to preclude contrary rulings in later proceedings in the same litigation.[12] Thus, the Court may

---

[11] *Richards v. Jefferson County, Alabama*, 517 U.S. 793 (1996), and *Taylor v. Sturgell*, 553 U.S. 880 (2008), upon which Plaintiffs rely (DE 6540 at 11), are not to the contrary. In both cases, one party sought to bind a *non*-party to a prior judgment. Here, however, Retailers and Distributors merely seek to prevent those individual Plaintiffs who briefed and argued *Daubert*— and thus indisputably *were* parties to the summary judgment ruling—from having a second bite at the apple. Whether or not a summary judgment ruling adverse to the Brand Defendants would have the same effect is immaterial.

[12] *E.g.*, *Parish-Carter v. Avossa*, No. 16-CV-81623, 2017 WL 2720966, at *4 (S.D. Fla. June 23, 2017) ("The Court's prior dismissal with prejudice is the law of the case and, to the extent Plaintiff's Count VI is intended to re-raise a claim for procedural due process violations, that claim remains dismissed with prejudice."). And the Eleventh Circuit has likewise recognized the

properly adhere to its own reasoning—which is fully supported on the existing record—and apply it in connection with the manufacture of generic ranitidine by Generic Defendants, and the sales and distribution of brand and generic ranitidine by Retailers and Distributors.

For these reasons, the Court should hold that individual Plaintiffs who actually "submitted" general causation experts and participated in the *Daubert* briefing [*see* DE 6540 at 8-9], are precluded from re-litigating general causation as to their claims against Non-Brand Defendants and extend judgment as to those individual Plaintiffs in favor of Non-Brand Defendants based on the law of the case doctrine and collateral estoppel.[13]

---

"horizontal application of the [law of the case] doctrine[.]" *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1369, n.3 (11th Cir. 2003).

[13] Moreover, as described above, the Court has issued a separate show cause order regarding extension of its *Daubert* and summary judgment rulings to all individual Plaintiffs, including those who filed cases in the MDL after *Daubert* was litigated. [DE 6444]. To the extent that the Court determines it would be appropriate in connection with the show cause process to grant summary judgment in favor of *any* defendant, against any individual Plaintiff based on the lack of proof of general causation, that ruling would become law of that case, and likewise warrant summary judgment in favor of all defendants named by that plaintiff in its short form complaint.

**D. The Court Has Jurisdiction Over Non-Brand Defendants.**

Plaintiffs argue that the Court lacks jurisdiction to enter summary judgment as to the Generic Defendants and, on separate grounds, also the Retailer and Distributor Defendants.  In both instances, Plaintiffs are wrong.

**1.     The Court Has Jurisdiction to Enter Summary Judgment as to Most Cases Against Generic Defendants.**

Plaintiffs say that, because "[t]he Court has already entered judgment in favor of the Generic Defendants with respect to all claims in this MDL . . . the Court lacks jurisdiction to enter judgment *again*." [DE 6540 at 12 (emphasis in original)]. Plaintiffs are wrong.

As a threshold matter, there are some personal injury cases pending in this Court where *no* form of final judgment has been entered against Generic Defendants. The Court previously declined to enter judgment as to Generic-Only Cases where, as of the date of the entry of judgment, no notice of appeal had been filed. [DE 4595 at 24; DE 4664].[14] Moreover, with the expiration of the Census Registry, dozens of Generic-Only cases have recently been filed— including many with Designated Cancers. *See, e.g.,* Grosso, 9:22-cv-80407. Such cases are not subject to the Rule 54(b) entry of judgment, and the Court's jurisdiction to enter summary judgment dismissing all counts for lack of a triable issue on general causation is plain.

With respect to Mixed-Generic Designated Cancer cases that were the subject of the Rule 54(b) orders, the Court will regain jurisdiction over all claims against Generic Defendants in the Mixed-Generic cases if the Eleventh Circuit remands in response to this Court's indicative ruling. At that point, the Court can then revise its existing Rule 54(b) entry of judgment and enter

---

[14] The Court entered a Rule 58 final judgment as to 18 Generic-Only cases. Those cases are currently before the Eleventh Circuit.

a single consolidated Rule 58 judgment in favor of all Defendants. [DE 6310 at 14-15]. That consolidated judgment should provide that judgment is entered in favor of Generic Defendants based on (1) the Court's prior rulings dismissing all claims and precluding re-pleading of claims against Generic Defendants due to preemption, [*see* DE 2512, 3716, 3750, 3751], ***and*** (2) for those plaintiffs with Designated Cancers, Plaintiffs' failure to show good cause why *Daubert* should not also extend to Generic Defendants.

> ### 2.     The Court Has Jurisdiction to Enter Summary Judgment as to All Cases Against Retailer and Distributor Defendants.

Plaintiffs assert that the Court somehow lacks authority to enter judgment for Retailers and Distributors, even on Count VII of the AMPIC, citing the fact that no plaintiff has alleged any form of individualized negligence on the part of any Retailer or Distributor. [DE 6540 at 11 n.4, 12]. But their argument confuses two different things. This Court declined to enter judgment on Count VII (negligence) because of the possibility that some plaintiff might plead some form of individualized, case-specific negligence by a retailer or distributor. The fact that no plaintiff ultimately pled such a claim does not change that the Court has not entered judgment on Count VII, and it remains before the Court. A non-final order granting a motion to dismiss does not divest the Court of authority to enter additional orders.

Here, since no judgment was entered on Count VII as to the Retailer and Distributor Defendants, and no appeal of Count VII was authorized or taken, the Court retains jurisdiction to enter summary judgment in favor of Retailers and Distributors as to that count. Similarly, if the Court of Appeals remands in response to the Court's indicative ruling, this Court will also have jurisdiction to enter summary judgment on all counts in the remanded cases.

## **CONCLUSION**

For the foregoing reasons, the Generic and Repackager Defendants, Distributor Defendants, and Retailer Defendants respectfully request that the Court enter summary judgment in their favor in all cases involving Designated Cancers that are before the Court.

Dated: May 1, 2023                    Respectfully submitted,

**Liaison Counsel for the Generic**
**Manufacturer Defendants**

/s/ *Thomas J. Yoo*
Thomas J. Yoo
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: (213) 896-2400
thomas.yoo@hklaw.com

/s/ *Richard M. Barnes*
Richard M. Barnes
GOODELL, DEVRIES, LEECH & DANN,
LLP
One South Street, 20th Floor
Baltimore, MD 21202
Tel: (410) 783-4000
rmb@gdldlaw.com

**Liaison Counsel for All Retailer and**
**Pharmacy Defendants**

/s/ *Sarah E. Johnston*
Sarah E. Johnston
BARNES & THORNBURG, LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3798
sarah.johnston@btlaw.com

**Acting Liaison Counsel for**
**Distributor Defendants**

/s/ *Andrew D. Kaplan*
Andrew D. Kaplan
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(t) (202) 624-2500
(f) (202) 628-5116
AKaplan@crowell.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of May 2023, a true and correct copy of the foregoing

Non-Brand Defendants' Joint Reply To Plaintiffs' Response To Show Cause Order DE 6303

And Incorporated Memorandum Of Law was filed electronically through the CM/ECF system,

which will send notice of filing to all CM/ECF participants.

/s/ *Thomas Yoo*

Thomas Yoo