UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)   MDL NO. 2924
PRODUCTS LIABILITY   20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT THIS RELATES TO:  ALL ACTIONS

**DEFENDANTS' JOINT REPLY TO MDL PLAINTIFFS' LEADERSHIP'S RESPONSE TO ORDER TO SHOW CAUSE DE 6444[1]**

The Court's Order to Show Cause on the Designated Cancer cases [DE 6444] has given Plaintiffs' Leadership exactly the relief they sought: "notice and an opportunity to be heard" before the Court disposes of any Plaintiff's claims. *See* MDL Pls.' Leadership's Mem. Addressing Final J. ("Pls.' Final J. Mem.") [DE 6234] at 1. This was the opportunity for Plaintiffs' Leadership to explain why the Court should reconsider its *Daubert* ruling, to show how a Designated Cancer somehow does not fall within the ruling's scope, to make the case for why any Plaintiff should get a second chance with different experts or arguments, or to delineate why the Court's Order to Show Cause process does not completely satisfy any due process concerns. Plaintiffs did none of

---

[1] Per the Court's instruction, the Brand Defendants, Generic Defendants, Retailer Defendants, and Distributor Defendants jointly submit this Reply, except as follows: Defendant Par Pharmaceutical, Inc. has filed a voluntary petition for bankruptcy and, pursuant to section 362(a) of the Bankruptcy Code, an automatic stay has been in effect since the Petition Date. *See* DE 5948. This Reply accordingly is not filed on behalf of Par Pharmaceutical, Inc.

Given the Court's directive for separate briefing on the Order to Show Cause Why Summary Judgement Should Not Be Entered for Designated Cancers as to All Defendants [DE 6303], the Non-Brand Defendants are concurrently filing a reply to that order. *See* Non-Brand Defs.' Joint Reply to Pls.' Resp. to Show Cause Order [DE 6303].

those things. They did not identify *a single Plaintiff* claiming a Designated Cancer in this MDL who believes he or she should escape summary judgment for one reason or another.

Instead, Plaintiffs expend their energy arguing yet again, in broad terms, that Plaintiffs have due process rights and a right to counsel. Yet this Court has, in full consideration of these previously made due process arguments, provided Plaintiffs with this show cause process and the chance to be heard. It is no response for Plaintiffs to say they need the opportunity already afforded them. Despite this opportunity, Plaintiffs have offered no reason why summary judgment should not be entered in all Designated Cancer cases. The Court should hold that Defendants are entitled to summary judgment in those cases and, in turn, to final judgment.

I. **Plaintiffs' Leadership Have Failed to Show Cause Why Summary Judgment Should Not Be Entered in Any Particular Designated Cancer Case**

Plaintiffs' Leadership previously asked for a show cause process for any Plaintiff with a Designated Cancer who filed his or her case after August 1, 2022, the deadline for Plaintiffs' opposition to Brand Defendants' summary judgement motion. Pls.' Final J. Mem. at 3 ("[A] Plaintiff who filed her case *after* the deadline for opposing Defendants' motion for summary judgment must be given a chance to be heard before her case is dismissed." (emphasis in original)). The Court did just that. To ensure that every Plaintiff was given the chance to come forward, the Court ordered Plaintiffs' Leadership to file their response only "after conferral with individual Plaintiffs who wish[ed] to respond." Order to Show Cause at 16.[2] The Court also went further: it provided a roadmap of issues any Plaintiff wishing to avoid summary judgment should address to make his or her case: (1) an explanation, "with particularity," as to how the Court has denied any

---

[2] If for some reason Plaintiffs' Leadership could not or would not represent an individual Plaintiff's position, the Court also gave individual Plaintiffs the opportunity to seek leave to file a separate response. Order to Show Cause at 16.

Plaintiff due process in light of the show cause order, (2) discussion of whether the Court's *Daubert* ruling was correct, and (3) argument as to whether the ruling should not apply to any individual case. *Id.* at 13-14.

Plaintiffs have made no case. Plaintiffs do **not** challenge the applicability of the *Daubert* ruling to any particular Plaintiff. They say nothing in the Response that calls into question the correctness of the Court's *Daubert* decision.[3] They identify no new evidence that would provide a basis for challenging that ruling. And they do not explain how a process allowing every Plaintiff in the MDL to be heard—the very procedure Leadership requested—violates the due process rights of any individual Plaintiff. In short, Plaintiffs' Leadership utterly fail to show cause why the *Daubert* ruling does not bind every Plaintiff with a Designated Cancer.

Plaintiffs instead rehash only general arguments about due process and the scope of the *Daubert* ruling that are, quite simply, moot in light of the Court ordering this very show cause process. Plaintiffs are, puzzlingly, arguing for the very opportunity they have already been given, while not even attempting to explain how any Plaintiff can avoid the Court's *Daubert* ruling. In any case, as explained below, Plaintiffs arguments have no weight.

## II. Plaintiffs' Leadership's Remaining Arguments Lack Merit

### A. Due Process Provides No Barrier to Entry of Summary Judgment

Plaintiffs' due process claims are not only irrelevant given the show cause process, but they also are wrong. Under Plaintiffs' reading of due process, Leadership would serve an essentially empty role, as any decisions they make would bind only those Plaintiffs who have cases on file at

---

[3] Plaintiffs contend that *Daubert* was a "factual determination of general causation." MDL Pls.' Leadership's Resp. to Orders to Show Cause ("Pls.' Resp.") [DE 6540] at 5. But *Daubert* is a legal determination based on a factual record. *See, e.g.*, *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 358 (S.D.N.Y. 2019) (noting that the court decided *Daubert* "as a legal matter").

3

the moment the decisions are made. *See* Pls.' Resp. at 2 (arguing that a stranger to a case or controversy cannot "do anything" in someone else's active litigation). This reading is fundamentally at odds with common sense, with MDL precedent, and with the organizational structure of MDLs, in which lead counsel are appointed to "act for the group," including by "presenting . . . arguments and suggestions to the court," Manual for Complex Litigation (4th ed.) at 25, and "gather[ing] the expertise necessary to prove causation," *id.* at 406; *see also* PTO 20 [DE 685] at 13-16 (defining the responsibilities of Plaintiffs' Leadership to include employing experts and arguing motions); *In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642, 2020 WL 1677966, at *1 (D. Minn. Apr. 6, 2020) ("[F]or the benefit and on behalf of all Plaintiffs, Plaintiffs' Leadership regained four experts that produced reports on general causation and liability.").

Nor is there any reason for the Court to provide additional "opt-out" processes at this stage. ***First***, it is too late for Plaintiffs' Leadership to complain about the absence of an explicit opt-out process. The schedule, format, and processes for *Daubert* were the result of extensive negotiations between the parties and discussions with the Court, even up to the Court's grant of Plaintiffs' Leadership's motion to amend and supplement their general causation expert reports in late October 2022. *See* Order Requiring Supp. Br. [DE 6083]. Plaintiffs cannot stay silent on an opt-out process, wait for *Daubert* to be decided, and then push for an opt-out process only after the fact. *See Looper v. Cook Inc.*, 20 F.4th 387, 397 (7th Cir. 2021) (rejecting as unfair the argument that, "because individual cases in multidistrict litigations retain their 'separate identities,'" a party can take inconsistent positions in later-filed cases). Plaintiffs' Leadership could have negotiated a different process, but they did not. Each case management conference was open to every Plaintiff and Registry Claimant, almost all conferences were conducted by Zoom, and dozens of Plaintiffs'

4

counsel attended most.  No one objected to the *Daubert* processes put in place.  *See* Order to Show Cause at 2-6 (tracing the relevant procedural history).

*Second*, the Court *did* provide multiple avenues for individual Plaintiffs to opt out—either to "vote with their feet" or otherwise seek relief from Plaintiffs' Leadership's choice of experts.  Through June 30, 2022, the Court permitted individual Plaintiffs to unilaterally dismiss their cases without a court order.  PTO 78 [DE 5580] at 1.  Through July 31, 2022, the Court allowed Registry Claimants with Designated Cancers to exit the Registry and therefore opt against proceeding in federal court.  And as the Court has noted, Plaintiffs have had other opt-out options as well.  "The Court also created a process wherein individual Plaintiffs could seek leave of Court to file motions or otherwise disagree with lead counsel, a process which remains in place to this very day."  Order to Show Cause at 8.  Through May 5, 2023, individual Plaintiffs have the option of seeking leave to file their own response to the Order to Show Cause.  *Id.* at 16.  To suggest that individual Plaintiffs had no control over whether to be bound by Plaintiffs' Leadership's experts or the Court's *Daubert* ruling is simply inaccurate.

*Finally*, while some other MDLs may have set explicit deadlines for cases filed after plaintiffs' initial expert disclosures to adopt or decline those experts, *see* Pls.' Resp. at 2-3 (citing pre-*Daubert* opt-out processes in the *PPA* and *Denture Cream* MDLs), there is no one-size-fits-all blueprint.[4]  For example, as this Court is aware, Judge Cathy Seibel in the *Mirena* MDL ordered a show cause process for cases filed while her *Daubert* general causation ruling was on appeal—but none of the pre-*Daubert* scheduling orders provided an opt-out process, nor did the show cause

---

[4]  *See Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 67 (3d Cir. 2023) ("A court may avoid unfairness through the use of appropriate discovery management orders.  We do not prescribe any 'single, undifferentiated approach,' but endorse wide 'latitude' for 'judicial oversight . . . .'" (quoting Am. L. Inst., Principles of the Law of Aggregate Litigation § 2.07, cmt. g (2010)).

5

order allow individual plaintiffs to designate alternative experts. *See* Ex. A (compiling scheduling orders in *In re Mirena IUD Prods. Liab. Litig.*, No. 13-MD 2434).[5] And, contrary to Plaintiffs' contention that "[t]he *Lipitor* case is fully consistent with this [opt-out] procedure," Pls.' Resp. at 3, the MDL court in *Lipitor* did not allow Plaintiffs to opt out of leadership's chosen experts. Instead, after striking Plaintiffs' general and specific causation experts, the court disposed of the entire litigation through summary judgment and an order to show cause process,[6] just as the Court is contemplating here. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No. II) MDL 2502*, 892 F.3d 624, 630 (4th Cir. 2018). The Fourth Circuit affirmed. *Id.* at 648–49.

### B. Plaintiffs' Leadership's Litigation of *Daubert* Motions Is Binding on Individual Plaintiffs

Plaintiffs suggest that Leadership somehow lacked authority to bind individual Plaintiffs to the Court's *Daubert* ruling because of each Plaintiff's right to his or her own counsel to make decisions in his or her own case. *See* Pls.' Resp. at 3. But again, the show cause process permitted Plaintiffs to explain why any particular Plaintiff should not be bound. They have not done that.[7]

---

[5] *Mirena* is also similar to this MDL in prioritizing general causation as a threshold matter based on counsel's representation that "the issue of general causation would be common and identical to all potential Mirena/IIH plaintiffs." *In re Mirena*, 387 F. Supp. 3d at 329.

[6] As this Court has noted, the *Lipitor* show cause process did include "some evidence,"— plaintiff-specific records—but the district court made clear that the plaintiffs were bound by its prior *Daubert* rulings and the only question was how any plaintiffs could thus avoid summary judgment. *See In re Lipitor*, 892 F.3d 630 ("[T]he district court issued a series of four show cause orders asking whether any plaintiff in the MDL could submit evidence (expert or otherwise) that would enable her claim to survive summary judgment given the court's prior rulings.").

[7] Plaintiffs' vague reference to a "different set of proposed experts" that could be put forward in the future and potentially satisfy *Daubert*, *see* Pls.' Resp. at 1, 5–6, is conjecture with no limiting principle. In any event, as set forth above, this argument directly contradicts the way in which the Court and the parties structured this MDL and has no basis in precedent.

Beyond that, the Court was correct when it explained in its Tolling Order that "[t]he authority of an MDL court in a complex matter to appoint leadership attorneys to handle pre-trial matters, for the 'orderly administration of justice,' is a matter beyond debate." Order Granting in Part & Denying in Part the Claimants' Mot. for Clarification of Pretrial Order 15 ("Tolling Order") [DE 6140] at 19–20; *see also In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2007 WL 9717940, at *2 (D. Minn. July 13, 2007) (appointing leadership whose decisions bind individual plaintiffs does not violate due process right to counsel because "in the end, plaintiffs are far better served by an efficient and coordinated process than by the chaos and conflict that would result from litigating hundreds of cases from individual attorneys with common questions of fact"); *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1014 (5th Cir. 1977) ("It is not open to serious question that a federal court in a complex, consolidated case may designate one attorney or set of attorneys to handle pre-trial activity on aspects of the case where the interests of all co-parties coincide.").

It is absurd to suggest at this late stage that Leadership's responsibilities did not extend to Plaintiffs' selection of experts and the briefing of summary judgment motions because "[t]here is no PTO purporting to irrevocably designate the leadership expert slate as each Plaintiff's own expert." Pls.' Resp. at 4–5. The Court appointed Leadership for the express purpose of briefing and arguing motions and selecting experts on behalf of all Plaintiffs and Registry Claimants. PTO 20 at 15. The entire structure of this MDL—as the parties agreed—was premised on the principle "that general causation would impact every claim in every case." Order to Show Cause at 12. "At no point in time did any party voice an opinion to the Court that . . . the Court would continue to adjudicate general causation on a rolling, case-by-case, individualized basis so long as additional cases continued to be filed in the MDL." *Id.* at 9.

7

As such, it was Leadership's job to present the best case for general causation on behalf of all Plaintiffs and Registry Claimants in the MDL. They are all bound to the experts that Leadership selected and the record that Leadership developed. *See* PTO 20 at 15. It is of no moment that, had the MDL been structured differently, counsel for individual Plaintiffs could have proffered different experts with different methodologies and could have argued the law differently. *See* Pls.' Resp. at 5–6. Individual Plaintiffs ceded those decisions to Leadership and received the benefit of Leadership's significant efforts and investment in prosecuting *Daubert*. *See* PTO 37 [DE 1408] at 19 (including identification and workup of experts and motions practice as common benefit work). If any Plaintiff had ideas, suggestions, criticisms, objections, or any other input, they had more than two years to provide those to Leadership. They cannot now avoid the consequences of Leadership's decisions. *Cf.* Tolling Order at 18 ("The Claimants are bound by the Defendants' definition [of tolling] pursuant to the Claimant's authorization for Plaintiffs' lead counsel to act on their behalf. In the alternative, the Claimants agreed to be bound by the Court's pretrial orders . . . .").[8]

Leadership's decisions are equally binding on Registry Claimants—an issue the Court asked the parties to address, *see* Order to Show Cause at 16, but about which Plaintiffs are notably silent. That silence is particularly striking in light of their overarching argument that *Daubert*

---

[8] The Court also should reject Plaintiffs' Leadership's characterization of the Court's *Daubert* decision as wading into and resolving scientific debate. *See* Pls.' Resp. at 7, 10. While the evidence supporting causation is surely lacking—as shown by the complete absence of any health authority or medical guideline causally connecting ranitidine with any cancer—nothing in the Court's *Daubert* opinion or in the Order to Show Cause suggests that the Court did anything other than appropriately perform its gatekeeping role. The court in *In re Mirena* rejected a similar invitation to revisit its *Daubert* decision, nothing that "[n]or, to the extent plaintiffs imply that the Court has made a factual determination that LNG could not have caused plaintiff' IIH, has the Court done so. Rather, the Court held in its *Daubert* ruling, as a legal matter, that plaintiffs' experts have failed to offer reliable, admissible testimony of general causation, consistent with *Daubert*." *In re Mirena*, 387 F. Supp. 3d at 358.

should not apply to "most Plaintiffs" as they "did not even have a case on file when this Court issued its *Daubert* decision." Pls.' Resp. at 2. As Plaintiffs are fully aware, the cases filed after the Court's *Daubert* ruling were filed almost entirely by Registry Claimants.[9] The plain terms of the Registry consent form made clear that Claimants are bound to this Court's pretrial rulings and that they agreed that Plaintiffs' Leadership would represent them as fully as filed Plaintiffs. *See* Brand Defs.' Mem. of Law Addressing Entry of Final J. [DE 6235] at 2–3 (quoting Am. PTO 37 [DE 1408] at 32). Plaintiffs' Leadership have no answer as to why, in light of this broad authorization—which each Registry Claimant had to submit in order to receive the benefit of Registry tolling—any Registry Claimant should be exempt from *Daubert*.

### C. Plaintiffs' Law of the Case Argument Lacks Merit

With respect to law of the case, the Court asked any Plaintiff who seeks to show cause to address "how the law of the case could be different for any individual late-filing Plaintiff, given the intent of many (earlier-filed) Plaintiffs to appeal the Court's *Daubert* decision." Order to Show Cause at 16. Plaintiffs give short shrift to the Court's concern, citing only a Third Circuit case for the proposition that "[t]he law of the case doctrine cannot be applied across distinct actions in this multidistrict proceeding" because "an MDL is not a case, but a collection of many individual cases." *See* Pls.' Resp. at 7 (citing *Home Depot*, 59 F.4th at 61). If Plaintiffs were correct, the *Daubert* ruling would not be binding even on Plaintiffs who had cases on file from the outset of this MDL, as everything was briefed, filed, and issued in the master docket. That is obviously wrong. *See, e.g.*, *In re Lipitor*, 892 F.3d at 648 (affirming post-*Daubert* dismissals on summary

---

[9] No Plaintiffs' firms that did not already have either cases on file or claims in the Registry filed cases after the Court's *Daubert* order was entered.

9

judgment and noting "it was the district court's prerogative to determine whether it could dispose of the cases before it on the merits").

In any event, the Third Circuit in *Home Depot* endorsed exactly what the MDL Court has done here: provide a show cause process for why a ruling that applies to one party should not be extended to other parties. *See Home Depot*, 59 F.4th at 65-66 ("[A] judge may enter an order with respect to one party and then provide that it will be automatically extended to other parties if they do not come forward and show cause why it should not be applicable."). Far from standing as an outlier as Plaintiffs suggest, *see* Pls.' Resp. at 5, "[t]his practice is regularly employed in MDLs" "to avoid the needless duplication of work across the cases that make up the proceeding." *Home Depot*, 59 F.4th at 65–66; *see also* Non-Brand Defs.' Joint Reply to Pls.' Resp. to Show Cause Order DE 6303 [DE 6590] at 13–15.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court find that Plaintiffs' Leadership have failed to show cause why summary judgment should not be entered against all Plaintiffs who allege Designated Cancers, regardless of the date any Plaintiff's action was filed.

Dated: May 1, 2023                              Respectfully submitted,

                                                */s/ Anand Agneshwar*
                                                Anand Agneshwar
                                                **ARNOLD & PORTER**
                                                **KAYE SCHOLER LLP**
                                                250 West 55th Street
                                                New York, NY 10019
                                                Tel: (212) 836-8000
                                                Fax: (212) 836-8689
                                                anand.agneshwar@arnoldporter.com

10

*Counsel for Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

*/s/ Andrew T. Bayman*
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

*/s/ Mark Cheffo*
Mark Cheffo
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel.: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com

*Counsel for GlaxoSmithKline LLC*

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
**WILLIAMS & CONNOLLY LLP**
725 12th Street, NW
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

*/s/ Thomas J. Yoo*
Thomas J. Yoo
HOLLAND & KNIGHT LLP

11

400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: (213) 896-2400
thomas.yoo@hklaw.com

*/s/ Richard M. Barnes*

Richard M. Barnes
GOODELL, DEVRIES, LEECH &
  DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
Tel: (410) 783-4000
rmb@gdldlaw.com

*Liaison Counsel for the Generic Manufacturer Defendants*

*/s/ Sarah E. Johnston*

Sarah E. Johnston
BARNES & THORNBURG, LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3798
sarah.johnston@btlaw.com

*Liaison Counsel for All Retailer and Pharmacy Defendants*

*/s/ Andrew D. Kaplan*

Andrew D. Kaplan
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(t) (202) 624-2500
(f) (202) 628-5116
AKaplan@crowell.com

*Acting Liaison Counsel for Distributor Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system on May 1, 2023, which will send notice of filing to all CM/ECF participants.

<i>/s/ Anand Agneshwar</i><br>
Anand Agneshwar