**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)  MDL NO. 2924
PRODUCTS LIABILITY  20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL ECONOMIC LOSS CLASS ACTION CASES

**CLASS PLAINTIFFS' RESPONSE TO THE
COURT'S SECOND ORDER TO SHOW CAUSE [ECF 6639]**

The Economic Loss Class Plaintiffs ("Class Plaintiffs") respectfully submit this response to the Second Order to Show Cause on Class Plaintiffs' Motion to Stay Class Proceedings ("Show Cause Order # 2) (ECF 6639).[1]

## I. INTRODUCTION

A month after Class Plaintiffs filed their Response to the Court's Order to Show Cause ("Class Plaintiffs' Original Response") (ECF 6589), the Court *sua sponte* issued Show Cause Order # 2 in which it ordered "[Class] Plaintiffs to respond to the Court's remaining questions to inform the Court as to whether the [Class] Plaintiffs may proceed with their state-law claims for economic loss." ECF 6639 at 1. The questions restated in Show Cause Order # 2 were largely answered in Class Plaintiffs' Original Response (ECF 6589), and the new legal arguments ordered by the Court are not relevant to Class Plaintiffs' economic loss claims pled in the SAELC. Similarly, the evidence ordered for the first time by Show Cause Order # 2 on 10 days' notice is not proper nor appropriate at this stage of the economic loss class actions. Class Plaintiffs respectfully stand on Class Plaintiffs' Original Response (ECF 6589) and, for the Court's benefit, identify below how and where the Court's restated questions were addressed in our prior Response.[2]

## II. RELEVANT PROCEDURAL HISTORY

On December 6, 2022, the Court entered its Omnibus Order on All Pending *Daubert* Motions and Defendants' Summary Judgment Motions (the "*Daubert*/Summary Judgment Order"). ECF 6120. The *Daubert*/Summary Judgment Order was directed against the Personal

---

[1] Citations, internal quotations, and footnotes omitted, and emphasis added unless noted otherwise.

[2] Class Plaintiffs' Response to the Court's Order to Show Cause (ECF 6589) is incorporated herein by reference.

2

Injury Plaintiffs' individual claims that they developed one of the Designated Cancers as a result of Zantac usage. The *Daubert*/Summary Judgment Order granted Brand Defendants' *Daubert* motions on general causation directed against the Personal Injury Plaintiffs' general causation experts. *Id*. Because proof of general causation is required in negligence-based tort claims involving a toxic drug or substance, and as a result of the exclusion under *Daubert* of all Personal Injury Plaintiffs' general causation experts, the *Daubert*/Summary Judgment Order also entered summary judgment against the Personal Injury Plaintiffs on all their remaining claims. *Id*.

Pursuant to Pretrial Order #65 (ECF 4660), Class Plaintiffs' class certification motions and expert reports were to be filed 45 days after the Court's general causation *Daubert* ruling. *Id*. at 3. Based on the Court's entry of the *Daubert*/Summary Judgment Order as to all claims brought by the Personal Injury Plaintiffs, and the appellate proceedings that would be pursued therefrom, on December 23, 2022, Class Plaintiffs filed a motion to stay the class proceedings pending the outcome of appellate proceedings arising from the *Daubert*/Summary Judgment Order. ECF 6148.

Class Plaintiffs and Brand Defendants thereafter conferred about the practicality of litigating class certification prior to resolution of the forthcoming appellate proceedings arising from the *Daubert*/Summary Judgment Order. The parties *agreed* it did not make sense to litigate class certification before resolution of appellate proceedings arising from the *Daubert*/Summary Judgment Order. The parties disagreed on whether the class proceedings should be stayed pending the outcome of appellate proceedings arising from the *Daubert*/Summary Judgment Order (Class Plaintiffs' position), or whether judgment or dismissal should be entered in the putative class actions now (Brand Defendants' position). The parties reported their respective positions during the January 5, 2023 status conference, and notified the Court of their agreement that, in the event

3

the motion to stay were denied, Class Plaintiffs' class certification motions would be due 90 days following entry of such order. *See* Transcript of Status Conference (Jan. 5, 2023) at 33.

Class Plaintiffs ceased all preparations of class certification motions, including working with experts, based on the parties' agreement and the Court's temporary stay of class certification motion practice in order to focus on the effect of the *Daubert*/Summary Judgment Order on the Class Plaintiffs' claims.

On January 20, 2023, Brand Defendants filed their opposition to the Class Plaintiffs' motion to stay (ECF 6227), and Class Plaintiffs filed their reply on February 3, 2023 (ECF 6254).

On February 14, 2023, the Court entered PTO #81 [ECF 6271] which, in relevant part, directed MDL Plaintiffs Leadership to file a notice by February 27, 2023 "indicating whether they intend to support general causation experts for Non-Designated Cancers in support of any class claim, together with the reason for Leadership's position." *Id*. at 2. MDL Plaintiffs' Leadership filed their response to PTO #81 [ECF 6299] which, in relevant part, stated: "The economic loss claims (based on state consumer protection statutes and state law warranty and unjust enrichment) being pursued by MDL Plaintiffs' Leadership as part of MDL 2924 seek recovery of economic losses on behalf of all individuals who purchased Brand Defendants' Zantac, and do not require general causation experts relating to Non-Designated Cancers contemplated by PTO #81." *Id*.

On April 6, 2023, the Court issued its Order to Show Cause on Class Plaintiffs' Motion to Stay Class Proceedings ("Show Cause Order # 1") (ECF 6484). In relevant part, Show Cause Order # 1 stated:

> The Court concludes there are certain threshold determinations that bear on whether the Court should enter an extended stay of the class proceedings, as the [Class] Plaintiffs request, or grant summary judgment for the Defendants and/or dismiss the [Class] Plaintiffs' class action claims, as the Defendants request.

4

> After careful consideration, the Court enters this Order to Show Cause in order for the [Class] Plaintiffs to show cause why their economic loss class action claims should not be dismissed for lack of standing and as pre-empted by federal law. Additionally, the Court issues this Order to Show Cause under Federal Rule of Civil Procedure 56(f), requiring [Class] Plaintiffs to show cause why the Court should not enter summary judgment in the Defendants' favor for the Plaintiffs' economic loss class action claims *for the same reasons that the Court entered summary judgment in the Defendants' favor* [footnote omitted] *for the [Personal Injury] Plaintiffs' personal injury claims*: …

ECF 6484 at 3 (emphasis added).

To assist it in making its determinations in response to Show Cause Order # 1, the Court invited briefing on "disparate legal issues" and directed Class Plaintiffs to:

- address three key points on adulteration and abandonment (*Id*. at 15-18);

- identify the state-law duties for their claims pled in the SAELC, and explain how Defendants violated those duties by manufacturing ranitidine that included varying amounts of NDMA (*Id*. at 19);

- explain how Defendants violated federal law (the FDCA) by manufacturing ranitidine with varying amounts of NDMA (*Id*. at 20);

- demonstrate that the state and federal law duties the Defendants allegedly violated are parallel, including authority for the proposition that state law would require information on a label in the absence of reliable evidence of potential harm from the impurity and that federal law would permit such a change, authority for the proposition that a Defendant manufacturer may comply with state law (as well as federal law) if the Defendant discloses the impurity on its label in lieu of removing the impurity, and disclose any known awareness in which the FDA classified a drug

5

> as adulterated but, because the adulteration was subsequently disclosed on a label, the drug ceased to be adulterated (*Id.* at 21-22);
> 
> - explain how the Defendants could have complied with state law without violating federal law given that ranitidine self-adulterates, including briefing on the issue of pre-emption in general and two specific pre-emption issues (*Id.* at 22);
> 
> - explain how Class Plaintiffs suffered an injury in fact, and how their position on standing and their position on pre-emption are internally consistent (*Id.* at 27); and
> 
> - address how the Court should resolve the economic loss claims if the Court concludes that Defendants are entitled to relief on any of the issues outlined in Show Cause Order # 1, and how the Court should resolve the economic loss claims if it concludes the Defendants are entitled to relief on multiple grounds (*Id.* at 28).

As directed by Show Cause Order # 1, Class Plaintiffs' Original Response (ECF 6589) was filed on May 1, 2023, in which Class Plaintiffs:

> - responded to the Court's three points on adulteration and abandonment, as well as the remaining adulteration and abandonment questions (*Id.* at 3-11);
> 
> - responded to the Court's questions regarding Article III standing (*Id.* at 11-13);
> 
> - responded to the Court's questions regarding why preemption doesn't apply to adulteration (*Id.* at 13-15); and
> 
> - explained why the *Daubert*/Summary Judgment Order as to the personal injury claims has no bearing on the Class Plaintiffs' economic loss claims and why summary judgment based on that order would be error (*Id.* at 15-20).

On May 15, 2023, Brand Defendants filed their Reply to Show Cause Order # 1 (ECF 6624).

On May 27, 2023, the Court entered Show Cause Order # 2 (ECF 6639), in which it stated that Class Plaintiffs had responded to "some, but not all, of the Court's questions about two important questions: standing and pre-emption." *Id*. at 1. Show Cause Order # 2 – signed on May 27 but not docketed until May 30 – directed Class Plaintiffs to show cause, on or before June 2, 2023, why summary judgment should not be granted in Defendants' favor and specified that Class Plaintiffs must address "the questions outlined in this Order and provide the Court with evidence with which to withstand summary judgment." *Id*. at 9. The Court *sua sponte* extended the June 2 deadline to June 6, 2023, based on a clerical delay in docketing Show Cause Order # 2. ECF 6640.

### III. GUIDE TO CLASS PLAINTIFFS' RESPONSES TO COURT'S QUESTIONS

#### A. The Standing Questions in Show Cause Order # 2

On the issue of standing, Show Cause Order # 2 stated that Class Plaintiffs "did not answer some of the Court's questions on standing" and outlined the "remaining questions on the issue of standing" which the Plaintiffs must answer. ECF 6639 at 2. While the Court's return to the issue of abandonment reflects dissatisfaction with Class Plaintiffs' prior response (ECF 6589 at 12-13), Class Plaintiffs stand on their prior responses.

The Court asked Class Plaintiffs to explain, in light of their rule 12 arguments that this is not a drug price premium case, "how they have not abandoned the contention that ranitidine was worth less (two words) (with a value greater than zero), rather than worthless (one word) (with a value of zero)." ECF 6639 at 2. Class Plaintiffs' response to the foregoing question is reflected in Class Plaintiffs' Original Response at Sections II.A.5(b) and II.D.2. ECF 6589, at 10-11, 19-20.

Show Cause Order #2 also asked Class Plaintiffs to "explain the factual and legal bases on which they argue that they are able to proceed with the contention that ranitidine was worth less (two words)." ECF 6639 at 3. In posing this question, the Court stated that Class Plaintiffs should

7

be able to "articulate the factual and legal bases to support their claim," including pointing to relevant citations in the record, because, without the Court's temporary stay of the class proceedings following the January 2023 status conference, Class Plaintiffs would already have had to file their class motions. *Id*.[3] However, as reflected in Class Plaintiffs' Original Response at Section II.D.2, Class Plaintiffs have not yet submitted an evidentiary record to support their case, nor did the operative scheduling orders so require. ECF 6589, at 19-20.

Although Class Plaintiffs previously answered the Court's question regarding standing in light of *Debernardis* (ECF 6589 at § II.B), the Court now demands that Class Plaintiffs explain "their theory of injury in fact, if their theory is an injury other than cancer, and inform the Court where in their pleadings they have pled such a theory and in what filings they have pursued such a theory." ECF 6639 at 4. Further, the Court requested SAELC citations to allegations that plead the harm alleged and case law to support a contention that ranitidine was worthless because it was perceived to cause cancer or because of the FDA's recall. *Id*. at 4-5.

Class Plaintiffs' response to the foregoing series of questions is captured in Class Plaintiffs' Original Response at § II.B, II.C., and the case law cited therein. For example, as Class Plaintiffs explain in § II.C:

> Class Plaintiffs allege that ranitidine-containing products were adulterated and not made in a cGMP-compliant manner to assure they possessed the quality and identity represented, and were fit for their intended purpose.

---

[3] Alternatively, the Court stated that if Class Plaintiffs are making a legal argument about abandonment for preservation purposes, they should acknowledge that they lack the bases with which to proceed and explain why they are making such an argument. *Id*. Plaintiffs are making arguments to preserve their positions; however, Class Plaintiffs do not lack bases on which to proceed. Rather, the issues on which the Court received general causation evidence were focused on the personal injury claims, which are separate and distinct from the economic loss class claims. *See* Class Plaintiffs' Original Response, §II.D.

ECF 6589, at 14. Class Plaintiffs expressly cited SAELC allegations supporting their explanation. *See* ECF 6589, fn. 8 ("*See, e.g.*, SAELC, at ¶¶313-317 (compliance with current Good Manufacturing Practices); ¶¶347-398 (misrepresentations and omissions); ¶1251 (incorporating same as to GSK); ¶1847 (incorporating same as to Pfizer); ¶2843 (incorporating same as to BI); ¶4321 (incorporating same as to Sanofi); *see also, e.g.*, ¶¶506, 508, 1308, 1310, 1906, 2984, 2986, 4405, 4407 (referencing cGMPs and adulteration)."). Class Plaintiffs further explained:

> Defendants engaged in unfair and deceptive acts by wrongly representing Zantac was 'a particular standard, quality, and grade when they are not,' which is state-law parlance for the same factors that establish adulteration. *See* 21 U.S.C. §351(a)(1) (drug adulterated if does not possess "the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess"); *id.* ¶351(b) ("adulterated under this paragraph because it differs from the standard of strength, quality, or purity"). *See also* ECF 3715, at 20 n.10 (this Court expressly noting that Plaintiffs "argued adulteration in the context of establishing an economic injury" sufficient to assert claims based on economic loss).

ECF 6589, at 14-15. *See also id.,* FN 9 ("*See, e.g.*, SAELC, at ¶¶435, 2884 (Alaska), ¶¶463, 1263, 1859 , 2939, 4360 (Arkansas), ¶¶520, 539, 1322, 1918, 1938, 2998, 3018, 4419, 4439 (California), ¶¶577, 1381, 1977, 3057, 4478 (Colorado), ¶¶672, 1479, 2210, 3308, 4731 (Maryland), ¶¶750, 1519, 2250, 3387, 4810 (Michigan), ¶¶1022, 3839, 5207 (Oklahoma), ¶¶1061, 3920, 5247 (Pennsylvania), ¶¶1140, 2647, 4020, 5310 (Tennessee), ¶¶1181, 1753, 2689, 4062, 5352 (Texas), ¶¶1624, 2415, 3581 (Nevada), ¶¶1690, 2584, 3879 (Oregon), ¶¶2072, 3172, 4593 (Georgia), ¶¶2856 (Alabama), ¶¶3609, 4977 (New Hampshire), ¶¶3685, 5053 (New Mexico), ¶¶4104, 5394 (Utah), ¶¶4166, 5456 (Virginia)."). Class Plaintiffs further cited case law that has recognized and differentiated the theories between personal injury and economic loss claims. *See* ECF 6589 at 15, 20.

The Court asks Class Plaintiffs how they reconcile their earlier and current positions on standing. *Id*. at 5. As reflected in Class Plaintiffs' Original Response, we do not believe that our positions have diverged but, instead, reflect that Class Plaintiffs had the foresight at the outset of the litigation to plead several alternative theories of liability.

Lastly, on the issue of standing, the Court stated that Class Plaintiffs did not previously answer (in response to Show Cause Order # 1) "whether the Plaintiffs' adulteration theory and the summary judgment record evidence departs so strongly from the [SAELC] that, in order for Plaintiffs to purpose an adulteration theory, the SAELC must be amended to confirm to the evidence." ECF 6639 at 5. Class Plaintiffs do not contend that the SAELC must be amended given that the current allegations incorporate the theory as set forth above. Accordingly, in response to the questions raised on page 5 of Show Cause Order #2, the Class Plaintiffs state: (1) they can proceed with the SAELC without further amendment; (2) their theory of harm was purchasing a product that was not as represented, as reflected in, *e.g.*, SAELC, at ¶¶313-317 (compliance with current Good Manufacturing Practices); ¶¶347-398 (misrepresentations and omissions); ¶1251 (incorporating same as to GSK); ¶1847 (incorporating same as to Pfizer); ¶2843 (incorporating same as to BI); ¶4321 (incorporating same as to Sanofi); *see also, e.g.*, ¶¶506, 508, 1308, 1310, 1906, 2984, 2986, 4405, 4407 (referencing cGMPs and adulteration)."; (3) this is not a new theory, so amendment is necessary; and (4) given that no amendment is necessary, there is no prejudice to Defendants.

B. **The Preemption Questions in Show Cause Order # 2**

The Court introduced its preemptions questions with the following statement: "Since the [Class] Plaintiffs do not have reliable evidence that ranitidine could cause cancer, the [Class] Plaintiffs now need to explain to the Court anew why their claims are not pre-empted, as the Defendants argued in their motions to dismiss." ECF 6639 at 6.

10

The Court stated that Class Plaintiffs did not identify the state-law duties for their claims in the SAELC that they allege the Defendants violated. ECF 6639 at 6. However, Class Plaintiffs' response to the foregoing series of questions is set forth in Class Plaintiffs' Original Response in Section II.C.

The Court demands that Class Plaintiffs respond to the Brand Defendants' argument (made in their Reply (ECF 6624)) that the "Plaintiffs' adulteration claim is an impermissible effort to privately enforce the [FDCA]." *Id*. at 7. Class Plaintiffs' Original Response cited to *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig*., MDL No. 2875 (RBK-JS), 2020 WL 7418006 (D.N.J Dec. 18, 2020), as an example of Class Plaintiffs' economic loss theories proceeding on the merits. ECF 6589, at 15. *See also, e.g., In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.,* 2021 U.S. Dist. LEXIS 5908, *33 (D.N.J. Jan. 12, 2021) ("Plaintiffs' contend their monetary injury resulted from Defendants' failure to provide the benefit of their bargain. Specifically, Plaintiffs argue they bargained for the benefits of a 'generic equivalent [to] Diovan; a pure, unadulterated, and regulatory compliant valsartan generic drug, which would be identical to brand-name valsartan.' Because the VCDs were not as Defendants represented and warranted— that is, they were adulterated, misbranded, non cGMP compliant, and illegal to sell—Plaintiffs did not receive the benefit of their bargain and suffered economic loss by receiving a worthless product.").

Next, the Court states that Class Plaintiffs did not previously respond to the question posed in Show Cause Order # 1 that directed Class Plaintiffs to, after identifying the state-law duties implicated in the SAELC, explain how the Defendants violated those duties by manufacturing Zantac with varying amounts of NDMA. ECF 6639 at 7. However, the Class Plaintiffs did so at ECF 6589, at 14-15 ("Defendants engaged in unfair and deceptive acts by wrongly representing

11

Zantac was 'a particular standard, quality, and grade when they are not,' which is state-law parlance for the same factors that establish adulteration.") (citations omitted).

Finally, the Court states that Class Plaintiffs' Original Response to a series of questions regarding pre-emption "does not appear to address the notion that ranitidine self-adulterates," requiring further discussion by Class Plaintiffs, as well as providing better responses to the four questions previously posed. ECF 6639 at 8-9. However, whether Zantac self-adulterates – and whether the Defendants knew about it and yet did nothing – is a question of fact for the jury. Class Plaintiffs have clearly pled that Defendants knew that Zantac turns into NDMA and did nothing, putting profit over disclosure. *See generally* SAELC, Introduction, at 1-2.

### C. The Evidence Requested in Show Cause Order # 2

Show Cause Order # 1 invited briefing on a series of legal issues premised on the Court's view that the *Daubert*/Summary Judgment Order applies with equal force to the Class Plaintiffs' economic loss claims pled in the SAELC. Show Cause Order # 1 did not request nor contemplate the submission of evidence.

In contrast, Show Cause Order # 2 concludes with the following:

> The Plaintiffs must address the questions outlined in this Order and provide the Court with evidence with which to withstand summary judgment.

ECF 6639 at 9. Show Cause Order # 2 originally gave Class Plaintiffs six (6) days to respond, but the Court *sua sponte* extended that deadline to 10 days based on the Clerk's delay in docketing the order. ECF 6640. Class Plaintiffs respectfully submit that it is improper to require the submission of evidence for several reasons.

First, as discussed above, Show Cause Order # 1 invited briefing on "disparate legal issues" (ECF 6484 at 28) premised on the Court's view that the *Daubert*/Summary Judgment Order applies with equal force to the Class Plaintiffs' economic loss claims pled in the SAELC. Show Cause

12

Order # 1 did not request nor contemplate the submission of evidence.  Therefore, Show Cause Order # 2's requirement that Class Plaintiffs – for the first time – provide the Court with evidence with which to withstand summary judgment on 10 days' notice is unreasonable.

Second, requiring Class Plaintiffs to provide evidence with which to withstand summary judgment pursuant to Rule 56(f) is improper under these circumstances.  While the Court issued Show Cause Order # 2 based on Rule 56(f), the applicable subsection of that rule, 56(f)(3), provides that the Court may consider entering summary judgment *after identifying material facts that may not genuinely be in dispute*.  Show Cause Order # 2 does not identify any material facts that may not be in genuine dispute.[4]  To the extent the Court is of the view that the facts underlying the *Daubert*/Summary Order are the material facts that may not be in genuine dispute, that would be error because the facts underlying the *Daubert*/Summary Order were genuinely disputed and were the subject of a multi-day *Daubert* hearing.

Third, Show Cause Order # 2's directive that Class Plaintiffs provide evidence to withstand summary judgment is improper based on the posture of the economic loss class actions.  As this Court is aware, all of the evidentiary submissions to date in this MDL focused on the issue of general causation, a necessary element to prove the negligence-based claims of the Personal Injury Plaintiffs. The operative scheduling order contemplated that Class Plaintiffs first evidentiary submission of any kind would occur upon the filing of class certification motions; even then, Rule

---

[4] Pursuant to Federal Rule 56(f)(3), "After giving notice and a reasonable time to respond, the court may ... consider summary judgment on its own *after identifying for the parties the material facts that may not be genuinely in dispute*." (emphasis added).  *See also* United States v. Ala. Power Co., 274 F.R.D. 686, 692 (N.D. Ala.2011) (granting summary judgment under Rule 56(f)(3) after informing parties that it "could grant summary judgment as to all claims if there was no admissible evidence" as to a particular part of a claim); *Franks v. Indian Rivers Mental Health Ctr.*, No.7:08–cv–1035–SLB, 2014 WL 514130, at *7 (N.D. Ala. Feb. 7, 2014) ("Pursuant to Rule 56(f), the court may grant a sua sponte motion for summary judgment 'after identifying for the parties material facts that may not be genuinely in dispute,…'").

13

23 does not require that Class Plaintiffs prove their claims but, rather, demonstrate that the evidence that the parties will use at trial is common to the classes – win or lose. To that end, class certification motions under Rule 23 do not typically involve evidence necessary to prove the underlying legal claims; rather they involve evidence (and legal argument) to satisfy the Rule 23 requirements. In contrast, summary judgment under Rule 56 requires evidence to prove (or disprove) the legal claims pled in a complaint. The operative scheduling order did not reference nor include deadlines for summary judgment practice on the Class Plaintiffs' claims because it was always contemplated that summary judgment would be sequenced following the Court's determination on the class certification motions.

## IV.   CONCLUSION

Based on the foregoing, Class Plaintiffs respectfully submit that it would be error to dismiss or enter summary judgment on the economic loss class claims based on the Court's findings and conclusions in the *Daubert*/Summary Judgement Order. Accordingly, Class Plaintiffs respectfully request that the Court grant the motion to stay the economic loss class proceedings pending the outcome of the forthcoming appellate proceedings arising from the *Daubert*/Summary Judgement Order.

Dated:  June 6, 2023                                     Respectfully Submitted,

*s/ Tracy A Finken*                                                By: */s/ Robert C. Gilbert*
Tracy A. Finken                                                    Robert C. Gilbert, FBN 561861
Email: tfinken@anapolweiss.com   ANAPOL       Email: gilbert@kolawyers.com
WEISS                                                              KOPELOWITZ OSTROW FERGUSON
One Logan Square                                                   WEISELBERG GILBERT
130 North 18th Street, Suite 1600                                  2800 Ponce de Leon Boulevard, Suite 1100
Philadelphia, PA 19103                                             Coral Gables, FL 33134
Tel: (215) 735-1130                                                Tel: (305) 384-7270


*/s/ Michael L. McGlamry*                                          */s/ Adam Pulaski*
Michael L. McGlamry                                                Adam Pulaski

14

Email: efile@pmkm.com  
POPE McGLAMRY, P.C.  
3391 Peachtree Road NE, Suite 300  Atlanta, GA 30326  
Tel: (404) 523-7706

Email: adam@pulaskilawfirm.com  
PULASKI KHERKHER, PLLC  
2925 Richmond Avenue, Suite 1725  
Houston, TX 77098  
Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan  
Email: Rosemarie.bogdan@1800law1010.com  
MARTIN, HARDING & MAZZOTTI  
1 Wall Street  
Albany, NY 12205  
Tel: (518) 862-1200

Mark J. Dearman, FBN 0982407  
Email: mdearman@rgrdlaw.com  
ROBBINS  GELLER  RUDMAN  &  DOWD  
225 NE Mizner Boulevard, Suite 720  
Boca Raton, FL  33432  
Tel: (561) 750-3000

Elizabeth A. Fegan  
Email: beth@feganscott.com  
FEGAN SCOTT, LLC  
1456 Sycamore Rd.  
Yorkville, IL 60560  
Tel: (312) 741-1019

Marlene J. Goldenberg  
Email: mjgoldenberg@goldenberglaw.com  
GOLDENBERG LAW, PLLC  
800 LaSalle Avenue, Suite 2150  
Minneapolis, MN  55402  
Tel: (855) 333-4662

Ashley Keller  
Email: ack@kellerpostman.com  
KELLER | POSTMAN  
2800 Ponce de Leon Boulevard, Suite 1100  
Coral Gables, FL  33134  
Tel: (312) 741-5222

Frederick S. Longer  
Email: flonger@lfsblaw.com  
LEVIN SEDRAN & BERMAN  
510 Walnut Street, Suite 500  
Philadelphia, PA 19106  
Tel: (215) 592-1500

Roopal P. Luhana  
Email: luhana@chaffinluhana.com  
CHAFFIN LUHANA LLP  
600 Third Avenue, 12th Floor  
New York, NY  10016  
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481  
Email: frank@maderalbyrne.com  
MADERAL BYRNE PLLC  
2525 Ponce de Leon Blvd., 9th Floor  
Coral Gables, FL 33134  
Tel: (305) 520-5690

Ricardo M. Martinez-Cid, FBN 383988  
Email:  RMartinez-Cid@Podhurst.com  
PODHURST ORSECK, P.A.  
SunTrust International Center  
One S.E. 3rd Avenue, Suite 3200  
Miami, FL 33130  
Tel: (305) 358-2800

Lauren S. Miller  
Email: laurenm@hbsslaw.com  
HAGENS BERMAN SOBOL  
  SHAPIRO LLP  
1914 4th Avenue North, Suite 320  
Birmingham, AL 35203  
Tel: (205) 533-4175

Melanie H. Muhlstock

Daniel A. Nigh, FBN 30905

15

Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4629

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Bradford B. Lear
Email: Lear@learwerts.com

Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Steven B. Rotman
Email: srotman@housfeld.com
HAUSFELD, LLP
One Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 207-0602

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY JUNG, LLP
1100 W. Town & Country Road
Suite 1250
Tel: (818) 869-6476

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
 SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Steering Committee*

Brooke Achua
Email: brooke@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd., 46th Floor
Yorkville, IL 60560
Tel: (646) 502-7910

Lea P. Bucciero
Email: lbucciero@podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Marlo E. Fisher
Email: marlo@pulaskilawfirm.com
PULASKI KHERKHER, PLLC  2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

Noah Heinz
Email: noah.heinz@kellerpostman.com
KELLER | POSTMAN
1100 Vermont Avenue NW, Floor 12
Washington, DC 20005
Tel: (202) 918-1841

Caroline G. McGlamry
Email: carolinemcglamry@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Harrison M. Biggs
Email: hbiggs@yourlawayer.com
PARKER WAICHMAN LLP
6 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 723-4633

Alexander C. Cohen
Email: acohen@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
225 NE Mizner Boulevard, Suite 5720
Boca Raton, FL  33432
Tel: (561) 750-3000

Kendra Goldhirsch
Email: goldhirsch@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY  10016
Tel: (888) 480-1123

Catelyn McDonough
Email: cmcdonough@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

Madeline Pendley
Email: mpendley@levinlaw.com
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL  32502
Tel: (850) 435-7003

Laura K. Stemkowski

Daniel E. Tropin

Email: lstemkowski@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9165

Email: tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (954) 990-2216

*Plaintiffs' Leadership Development Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Robert C. Gilbert*
Robert C. Gilbert
