UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)          MDL No. 2924
PRODUCTS LIABILITY                20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

**BRAND DEFENDANTS' REPLY TO THE COURT'S SECOND ORDER TO SHOW
CAUSE WHY THE ECONOMIC LOSS COMPLAINT IS NOT SUBJECT TO
<u>DISMISSAL OR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT AND CITATION OF AUTHORITY .............................................................2

    A.    Summary Judgment Is Appropriate Because the Show-Cause Process Has Been Fair, and Plaintiffs Have Flouted Two Opportunities to Support Their Claims with Admissible Evidence. ...............................................................2

    B.    Plaintiffs Waived Their "Adulteration" and "Worth Less" Theory.........................5

    C.    Plaintiffs Lack Standing to Pursue Their "Worth Less" Claims..............................6

    D.    No State-Law Duties Support Plaintiffs' "Adulteration" Theory............................7

    E.    Plaintiffs' New Theories Are Preempted by Federal Law........................................9

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Artistic Ent., Inc. v. City of Warner Robins*,
   331 F.3d 1196 (11th Cir. 2003) ...............................................................................................4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................................................2

*Doss v. Gen. Mills, Inc.*,
   816 F. App'x 312 (11th Cir. 2020) ..........................................................................................7

*In re Fisher Island Invs., Inc.*,
   778 F.3d 1172 (11th Cir. 2015) ...............................................................................................2

*Islam v. Sec'y, Dep't of Homeland Sec.*,
   997 F.3d 1333 (11th Cir. 2021) ...............................................................................................6

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Prac. & Liab. Litig.*,
   903 F.3d 278 (3d Cir. 2018).....................................................................................................7

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) .............................................................................................7

*Lance Toland v. Phoenix Ins. Co.*,
   855 F. App'x 474 (11th Cir. 2021) ......................................................................................3, 4

*Mink v. Smith & Nephew, Inc.*,
   860 F.3d 1319 (11th Cir. 2017) ...............................................................................................9

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs., Inc.*,
   48 F.4th 1040 (9th Cir. 2022) ..................................................................................................9

*Rubinstein v. Yehuda*,
   38 F.4th 982 (11th Cir. 2022) ..................................................................................................6

*Telfair v. First Union Mortg. Corp.*,
   216 F.3d 1333 (11th Cir. 2000) ...............................................................................................4

*In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*,
   MDL No. 2875, 2020 WL 7418006 (D.N.J Dec. 18, 2020) ..........................................8, 9, 10

*In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*,
   MDL No. 2875, 2021 U.S. Dist. LEXIS 5908 (D.N.J. Jan. 12, 2021) ...................................10

**Statutes and Regulations**

21 U.S.C. § 337 ................................................................................................................................9

21 U.S.C. § 351 .............................................................................................................................8, 9

21 U.S.C. § 379r ............................................................................................................................10

21 C.F.R. § 210.1 ............................................................................................................................8

21 C.F.R. § 314.70 ..........................................................................................................................9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................................6

Fed. R. Civ. P. 56 ................................................................................................................... *passim*

## INTRODUCTION

Plaintiffs' Response to the Court's Second Order to Show Cause makes no effort to defend the "misbranding" claims they pled and litigated. Plaintiffs thus effectively concede that, without admissible expert evidence that Zantac contains harmful levels of NDMA that pose a cancer risk, they cannot demonstrate Zantac is "worthless." Summary judgment is therefore appropriate as to the "misbranding" claims. The only remaining question before the Court is whether Plaintiffs should be permitted to resurrect an ill-defined theory of liability they waived long ago—that Zantac was "worth less" than the purchase price because the potential for Zantac to form trace amounts of NDMA rendered the medication "adulterated." As an initial matter, after three rounds of motions to dismiss, three years of discovery that spanned the globe, more than 250 depositions, and voluminous defense document productions, Plaintiffs refuse to marshal *any* evidence to support these allegations. On this record, it is not "unreasonable" for the Court to require Plaintiffs to provide factual and legal support for their contentions. Pls.' Second Resp., Dkt. 6676, at 13. Plaintiffs' assertions about the supposed inadequacy of the Court's Rule 56(f) notice do not withstand minimal scrutiny and do not remotely excuse their refusal to answer the Court's questions or substantiate their "worth less" theory with evidence. Plaintiffs' failure to comply with the show-cause process after *two* opportunities is independent grounds for summary judgment.

Plaintiffs' Second Response, in any event, only underscores why they cannot revive their waived and abandoned "adulteration"/price-premium theory. Plaintiffs again offer no reason, much less an equitable one, why they may now proceed on a basis that they expressly disclaimed at the motion-to-dismiss stage. Plaintiffs ignore this Court's clear directive to identify facts and law demonstrating that they have standing to raise these claims. And they fail to explain how their claims survive federal preemption where they directly challenge Zantac's FDA-approved formulation and design, they do not point to violations of state or federal law that could support a

parallel claim, and their "adulteration" theory is premised on private enforcement of the Food, Drug, and Cosmetic Act ("FDCA"), which the FDCA does not permit. This Court should decline to permit Plaintiffs to pursue their futile "worth less" theory for all of those reasons.

## ARGUMENT AND CITATION OF AUTHORITY

**A.     Summary Judgment Is Appropriate Because the Show-Cause Process Has Been Fair, and Plaintiffs Have Flouted Two Opportunities to Support Their Claims with Admissible Evidence.**

Plaintiffs have no basis to complain that the Court's show-cause process has been "unreasonable" or that it was "improper" for the Court to require Plaintiffs to proffer evidence to withstand summary judgment. *See* Pls.' First Resp., Dkt. 6589, at 11–12 n.5; Pls.' Second Resp., Dkt. 6676, at 12–14. Rule 56(f) permits the Court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute" after "giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). That is exactly what the Court did. When presented with an order to show cause under Rule 56(f), Plaintiffs must come forward with evidence to resist summary judgment. *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1195 (11th Cir. 2015) ("A court may *sua sponte* grant summary judgment 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))). Plaintiffs' refusal to do so is indefensible. Discovery in the class action cases closed almost **one year ago**—on July 18, 2022. Pretrial Order 66, Dkt. 3677. Plaintiffs' class certification motions and expert reports were set to be due just 45 days after the general causation *Daubert* ruling. *See* Pretrial Order 65, Dkt. 4660, at 3. It is long past the time when Plaintiffs could balk at the notion of submitting evidence to support their claims.

Plaintiffs ignore the plain terms of this Court's April 6, 2023 Order to Show Cause ("First Order") and the clear requirements of Rule 56(f) when they assert they were not on notice until the May 30, 2023 Order to Show Cause ("Second Order") of the need to demonstrate the

2

evidentiary basis for their claims to withstand summary judgment.[1] This Court expressly issued the First Order "under Federal Rule of Civil Procedure 56(f)," instructed Plaintiffs to submit "record evidence" on multiple dispositive issues, and provided them until May 1, 2023 to do so.[2] First Order, Dkt. 6484, at 2, 17. The requirement that Plaintiffs respond with evidence was evident in the direction to "show cause why the Court should not enter *summary judgment in the Defendants' favor* for the Plaintiffs' economic loss class action claims." *Id.* at 2 (emphasis added). The burden was squarely on Plaintiffs to either (1) show that judgment was not appropriate under applicable law, or (2) offer proof of material factual disputes. Fed. R. Civ. P. 56(a), (f). Plaintiffs' election to respond with vague, waived arguments does not cast doubt on the sufficiency of the show-cause process: the notice afforded Plaintiffs fair warning of their burden and ample time to respond. *See, e.g.*, *Lance Toland v. Phoenix Ins. Co.*, 855 F. App'x 474, 481–82 (11th Cir. 2021).

When Plaintiffs failed to show cause in response to the First Order, this Court would have been acting well within its discretion to grant summary judgment. But the Court generously afforded Plaintiffs a second chance to show cause. While Plaintiffs complain they were not afforded enough time to respond, they sought no extension of time, filed no declaration under Rule

---

[1] Plaintiffs inexplicably claim that the Court's First Order did not identify undisputed facts. Pls.' Second Resp., Dkt. 6676, at 13 & n.4. The Court identified various established facts, including Plaintiffs' failure to prove ranitidine causes harm, the presence of trace levels of NDMA in some batches of ranitidine, and Brand Defendants' inability to change the design of ranitidine. First Order, Dkt. 6484, at 12, 17–19, 21–22.

[2] *See* First Order, Dkt. 6484, at 2 (issuing Order to Show Cause under Federal Rule of Civil Procedure 56(f)); *see also*, *e.g.*, *id*. at 17 ("[T]he parties should brief in their responses whether Plaintiffs can pursue an adulteration theory on the summary judgment record evidence."); *id.* at 22 (requiring that parties address the "summary judgment evidence" that ranitidine "self-adulterates" even if stored in accordance with FDA requirements); *id.* at 27–28 (requiring Plaintiffs to "explain how their economic loss class action claims could prevail as a matter of law on the current evidentiary record in this MDL").

56(d) specifying why they could not "present facts essential to justify [their] opposition" to summary judgment within the time allowed, made no effort to explain how additional time was needed to uncover facts in the record, and failed to identify, even in general terms, any record evidence that could create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(d), (f). At the same time, Plaintiffs do not even attempt to explain why Zantac would be worthless based on trace amounts of NDMA or to identify any harm it "allegedly causes . . . other than cancer," as this Court required. Second Order, Dkt. 6639, at 4. Under these circumstances, summary judgment under Rule 56(f) is "entirely appropriate." *Lance Toland*, 855 F. App'x at 481.

This Court has provided far more notice to Plaintiffs than the Eleventh Circuit requires. The Eleventh Circuit has explained that "when 'a legal issue has been fully developed and the evidentiary record is complete, summary judgment is entirely appropriate ***even if no formal notice has been provided***.'" *Id.* at 481 (quoting *Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201–02 (11th Cir. 2003) (brackets omitted)). In *Lance Toland*, for example, the court found the plaintiffs had "sufficient notice and time to respond" before the trial court's *sua sponte* grant of summary judgment when the plaintiffs were given only one day to submit a responsive brief and only seven days elapsed between the initial notice and final hearing. 855 F. App'x at 482.[3]

Finally, contrary to Plaintiffs' suggestion, impending—or in this case, stayed—class certification proceedings are immaterial to granting summary judgment. *See* Pls.' Second Resp., Dkt. 6676, at 4, 13–14. It is "within [a] court's discretion to consider the merits of . . . claims before their amenability to class certification," by granting summary judgment. *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000). This Court has given Plaintiffs more

---

[3] The court in *Lance Toland* noted that a lack of notice was harmless where the plaintiff failed to establish that it "deprived him of his ability to obtain or present any evidence." 855 F. App'x at 482. Here, as in *Lance Toland*, timing is not the problem—Plaintiffs' lack of evidence is.

4

than sufficient notice and opportunities to oppose summary judgment. Their failure to do so should result in judgment for the Brand Defendants on all economic loss claims.

**B.      Plaintiffs Waived Their "Adulteration" and "Worth Less" Theory.**

Plaintiffs cannot resurrect their waived claim that Zantac was "worth less" than the purchase price due to trace levels of NDMA. Seeking to walk back express waiver of their "worth less" theory, Plaintiffs ask the Court to disregard the procedural history of this MDL.

To begin with, the Second Amended Consolidated Economic Loss Class Action Complaint ("SACELC"), Dkt. 3883, and Plaintiffs' responses opposing Defendants' motions to dismiss belie their present assertion that they had the "foresight . . . to plead several alternative theories of liability" that already incorporate their "adulteration" and "worth less" theories." *See* Pls.' Second Resp., Dkt. 6676, at 10. That assertion is demonstrably false. The SACELC articulates no cognizable price-premium theory based on trace levels of NDMA. Rather, as this Court has recognized, Plaintiffs' pleadings rested on one central premise: that Zantac was "worthless" because it can cause "cancer," a word that appears more than 1,600 times in their complaint. *See, e.g.*, SACELC ¶ 369 (alleging defendant "failed to include a warning on the labels for ranitidine-containing products that consumers were at **elevated risk of developing cancer**" (emphasis added)); *see also* SACELC ¶¶ 25-135 (alleging that each named Plaintiff "purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase"); General Causation Order, Dkt. 6120, at 14 ("[T]he lynchpin of all of these claims is the proposition that ranitidine causes cancer."); First Order, Dkt. 6484, at 7–8.

To the extent any allegations in the SACELC could have been read to support a claim that Zantac is "worth less," Plaintiffs explicitly disclaimed that reading. Mot. to Dismiss Hearing Tr.,

5

Dkt. 3682, at 190. Courts, including the Eleventh Circuit, have held that a finding of waiver is justified by far less. *See Rubinstein v. Yehuda*, 38 F.4th 982, 995 (11th Cir. 2022) (holding a party "can waive an issue by making only a passing reference to it"). Plaintiffs' only response is a nonsensical argument that they have not waived their "worth less" adulteration claims because they have not yet submitted class certification motions and class expert reports.[4] Pls.' First Resp., Dkt. 6589, at 12–13. A party cannot resurrect long-ago waived arguments by citing hypothetical future motions practice. Otherwise, the waiver doctrine would be toothless. *See Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1343 (11th Cir. 2021) (refusing to consider a waived argument).

Even now, Plaintiffs still refuse "to articulate the factual and legal bases to support their claim that ranitidine was worth less (two words)." Second Order, Dkt. 6639, at 3; *see* Pls.' Second Resp., Dkt. 6676, at 10 (only citing, *e.g.*, SACELC ¶¶ 313–17, 347–98). Plaintiffs similarly do not respond to the Court's second effort to understand whether they have any legal defense to waiver and abandonment of this claim. They therefore have *twice* waived this argument. It would be unfair to allow Plaintiffs to proceed on this long-abandoned argument.

## C.    Plaintiffs Lack Standing to Pursue Their "Worth Less" Claims.

Plaintiffs' Second Response confirms that they lack standing to pursue their new trace-NDMA adulteration theory. Plaintiffs have failed to identify *any* evidence that they sustained an economic injury by purchasing a medication that effectively treated their gastrointestinal symptoms, and they cannot prove any risk of harm. *See* Second Order, Dkt. 6639, at 5. The SACELC does not plead that Plaintiffs were injured by purchasing a product with trace amounts

---

[4] Plaintiffs' repeated invocation of their still unfiled class certification motion to avoid waiver is particularly puzzling given that the purported health risks of Zantac were central to Plaintiffs' allegations that Rule 23's requirements are satisfied. *See* SACELC ¶¶ 341, 343.

6

of NDMA. With the discovery period now long closed, Plaintiffs proffer no evidence that the medication they purchased poses any actual safety risk or otherwise failed to perform in some essential respect.

Their Second Response lays bare that they now seek to proceed based on nothing more than their buyers' remorse. That does not supply the standing necessary to proceed. *See* First Order, Dkt. 6484, at 24 (citing *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010)); *see also Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (holding plaintiff lacked standing to pursue economic loss claim based on only a "conjectural or hypothetical" injury from a product with low levels of glyphosate); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 280–81, 289 (3d Cir. 2018) (holding plaintiff who "consumed a product that . . . functioned for her as expected" but "sincerely wishe[d] that she had not purchased that product" lacked cognizable injury).

**D.    No State-Law Duties Support Plaintiffs' "Adulteration" Theory.**

As demonstrated by the case law the Court cited, Plaintiffs' new "adulteration" theory premised on trace amounts of NDMA is not cognizable as a matter of state law. *See* First Order, Dkt. 6484, at 19–20. After Plaintiffs' First Response failed to identify state-law duties allegedly violated by Defendants under Plaintiffs' "adulteration" theory, the Court specifically asked Plaintiffs to provide cites to state laws, as well as samples of jury instructions, to support their claims. *See* Second Order, Dkt. 6639, at 6. But the Court's questions have gone unanswered: Plaintiffs' only response is to cite paragraphs of the SACELC that reference general requirements for current Good Manufacturing Practices ("cGMP"), expiration dates, and warning labels. *See* Pls.' Second Resp., Dkt. 6676, at 9, 10 (citing, for example, SACELC ¶¶ 313–17, 347–98). Plaintiffs cite no state cases, jury instructions, treatises, or statutes that impose duties to comply

with unspecified portions of federal cGMPs or with the purity portion of the federal adulteration statute, 21 U.S.C. § 351(b).[5] It is undisputed that Plaintiffs have no admissible evidence to support their allegations and they have twice failed to cite state-law duties in support of their conclusory allegations.

Rather than cite any violation of traditional state-law duties, Plaintiffs double down on their conclusory assertion that the sale of Zantac was inherently "unfair and deceptive" because of the presence of trace levels of NDMA in some ranitidine batches. Pls.' Second Resp., Dkt. 6676, at 11–12. Plaintiffs are incorrect that this argument finds support in *In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2020 WL 7418006 (D.N.J Dec. 18, 2020). Pls.' Second Resp., Dkt. 6676, at 11. In *Valsartan*, the plaintiffs alleged "traditional tort and contract law" claims, which not only were accepted as true at the pleadings stage but also were based on specific manufacturing violations. 2020 WL 7418006, at *3–4, *12. Specifically, the court in *Valsartan* assumed the truth of the plaintiffs' assertions that the generic defendants had fraudulently stated that their medications were bioequivalents of the brand version. *Id.* at *3–4. In any event, *Valsartan* did not involve an FDA-approved molecule; it involved claims of a cGMP violation where nitrosamine was allegedly added through a solvent used during manufacturing. *Id.* at *3. *Valsartan* provides no support for Plaintiffs. After multiple rounds of briefing, Plaintiffs have cited no state authorities that support their contentions. This Court should not permit Plaintiffs to proceed.

---

[5] Plaintiffs' Second Response continues to make vague references to a general requirement that directs manufacturers to follow cGMP in manufacture, processing, packing, or holding of a drug, 21 C.F.R. § 210.1(a), and the cGMP relating to proper storage conditions, but it offers no evidence to support violation of these requirements. Plainly, this does not suffice at summary judgment.

8

### E.   Plaintiffs' New Theories Are Preempted by Federal Law.

Plaintiffs' Second Response fails to identify any path by which their trace-NDMA theory avoids federal preemption: (1) they do not cite any authority to support the notion that the breakdown of ranitidine to form trace levels of NDMA would violate federal adulteration standards or cGMP regulations, particularly when they have no evidence (and they have not even argued) that Zantac deviated from the official compendium, *see* 21 U.S.C. § 351(b); (2) they do not point to any traditional state-law duties that parallel federal laws, seeking instead to privately enforce FDCA adulteration rules and cGMP requirements, which is not permitted, 21 U.S.C. § 337(a); (3) in the absence of any safety risk, they do not explain how the Brand Defendants could change Zantac's label under the Changes Being Effected regulation, 21 C.F.R. § 314.70(c)(6)(iii)(A); and (4) they identify no genuine dispute that NDMA detected in Zantac resulted from the inherent propensity of Zantac's FDA-approved formulation to "self-adulterate" and that Brand Defendants were not permitted to unilaterally change its formulation.

Plaintiffs' Second Response cites their own unfair competition claims but fails to acknowledge that federal law does not permit states to create a cause of action that is premised entirely on the FDCA, rather than traditional state law. *See Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs., Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022); *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017) (holding that, to avoid implied preemption, plaintiff must rely on "traditional state tort law causes of action that predated the federal enactments, and did not implicate a duty owed to the FDA"). As discussed above, Plaintiffs rely on no traditional state-law duty, and thus cannot proceed with reference to FDCA's adulteration provision.

Plaintiffs again invoke the *Valsartan* decisions to disclaim private enforcement of the FDCA, but those decisions do not assist them. *See* Pls.' Second Resp., Dkt. 6676, at 11. At the

9

motion-to-dismiss stage in *Valsartan*, the court reasoned that *Buckman* preemption applied only to fraud-on-the-FDA claims, and the court did not directly address the defendants' argument that plaintiffs were attempting to privately enforce the FDCA. *See* 2020 WL 7418006, at *7–9. Moreover, that case did not involve an express preemption provision, and the court did not identify any state-law duties that paralleled federal duties. *See id.* The other *Valsartan* decision did not address preemption at all. MDL No. 2875, 2021 U.S. Dist. LEXIS 5908, at *48 (D.N.J. Jan. 12, 2021).

Finally, as to whether the risk of NDMA formation is due to self-adulteration, Plaintiffs offer only the unsupported conclusion that this "is a question of fact for the jury." Pls.' Second Resp., Dkt. 6676, at 12. But Plaintiffs cannot survive summary judgment without pointing to *evidence* that shows NDMA formation by some means *other* than self-adulteration. *See* General Causation Order, Dkt. 6120, at 15–17. Without such evidence, their claims boil down to a direct challenge to the FDA-approved design and formulation of Zantac, which this Court already has held to be expressly and impliedly preempted. *See* 21 U.S.C. § 379r(a)(2).

## **CONCLUSION**

For the foregoing reasons, the Brand Defendants respectfully request that the Court grant summary judgment in their favor, dismiss the putative class claims, and enter final judgment.

Dated: June 14, 2023                                    Respectfully submitted,

By:    */s/ Anand Agneshwar*
Anand Agneshwar
**ARNOLD & PORTER**
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

Daniel S. Pariser
Paige H. Sharpe
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
daniel.pariser@arnoldporter.com
paige.sharpe@arnoldporter.com

Loren Brown
**DLA PIPER LLP**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 884-8543
loren.brown@us.dlapiper.com

Ilana H. Eisenstein
Rachel A.H. Horton
Gregory J. Ferroni
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
ilana.eisenstein@us.dlapiper.com
rachel.horton@us.dlapiper.com
gregory.ferroni@us.dlapiper.com

Matthew A. Holian
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel: (617) 406-6009
Fax: (617) 406-6109
matt.holian@us.dlapiper.com

*Attorneys for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

*/s/ Andrew T. Bayman*
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com

*Attorney for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

*/s/ Mark Cheffo*
Mark Cheffo
Judy Leone
Will Sachse
Lindsey Cohan
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com
judy.leone@dechert.com
will.sachse@dechert.com
lindsey.cohan@dechert.com

*Attorneys for GlaxoSmithKline LLC*

12

/s/ Joseph G. Petrosinelli
Joseph G. Petrosinelli
M. Elaine Horn
Jessica B. Rydstrom
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com
ehorn@wc.com
jrydstrom@wc.com

*Attorneys for Defendant Pfizer Inc.*

/s/ Christopher R. Carton
Christopher R. Carton, Esq.
**BOWMAN AND BROOKE LLP**
317 George Street, Suite 320
New Brunswick, NJ 08901
Tel: (201) 577-5175
christopher.carton@bowmanandbrooke.com

John D. Garrett, Esq.
2901 Via Fortuna Drive, Suite 500
Austin, TX 78746
Tel: (512) 874-3832
john.garrett@bowmanandbrooke.com

*Attorneys for Defendant Patheon Manufacturing Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June, 2023, the foregoing Brand Defendants' Reply to the Court's Second Order to Show Cause Why the Economic Loss Complaint Is Not Subject to Dismissal or Summary Judgment was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ Anand Agneshwar*
Anand Agneshwar