**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                          MDL NO. 2924
PRODUCTS LIABILITY                                   20-MD-2924
LITIGATION

**JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E.
REINHART**

THIS DOCUMENT RELATES TO:  LORI HARRELSON, CASE NO. 9:22-cv-81886

**PLAINTIFF HARRELSON'S OBJECTION TO FINAL ENTRY OF JUDGMENT AND
MOTION FOR REMAND TO NEVADA STATE COURT**

This case must be remanded to Nevada state court because it lacks complete diversity under 18 U.S.C. 1332.  Defendants first removed this case—which included a nondiverse Nevada defendant, Boehringer Ingelheim Corporation ("BIC")—on grounds that BIC was fraudulently joined, as Nevada does not impose any duty "for a product made by another manufacturer."  (Defs.' Notice of Removal, "Ex. 1" ¶ 36.)

In their removal petition, Defendants cited this Court's decision predicting Nevada would reject innovator liability.  (*Id.*); *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1175, 1218–19 (S.D. Fla. 2020).  They asserted there was "no possibility" a Nevada state court would find the complaint stated a cause of action against BIC because it did not manufacture the "specific product" that injured the decedent, as supposedly "required under Nevada law."  (Ex. 1 at ¶¶ 30–32.)

But this past Monday, the Supreme Court of Nevada refused to overturn a lower state court decision recognizing innovator liability.  By a vote of 6-1, it denied a petition for rehearing in *GlaxoSmithKline LLC vs. Eighth Jud. Dist.*, No. 85501.  ("Ex. 2.")

[ 1 ]

In GSK's rehearing petition, it argued that "Plaintiffs have twice **conceded**—both in the district court and before this Court—that the decedent never consumed a GSK product." ("Ex. 3") (emphasis in original). The Supreme Court of Nevada left untouched the lower court's opinion, which held that tort law in Nevada assigns responsibility for safety "*wherever* it will most effectively reduce the hazards to life and health inherent in defective products that reach the market"—even on nonmanufacturers. ("Ex. 4") (emphasis in original). As a result, there is a chance that Lori Harrelson ("Plaintiff") could establish the cause of action she pled against BIC in Nevada state court. The Court now lacks diversity jurisdiction and must remand.

It does not matter that the Court has tentatively ordered summary judgment. A lack of diversity at *any* time destroys jurisdiction, even on appeal. *See Craig v. Ont. Corp.*, 543 F.3d 872, 877 (7th Cir. 2008) (holding that the party asserting jurisdiction must establish it "no matter how the issue is raised"—even on a Rule 60(b) motion). And even after this Court's *Daubert* decision, Plaintiff has some chance of success against BIC in Nevada. *See Higgs v. State*, 222 P.3d 648, 658 (Nev. 2010) (rejecting *Daubert*).

Finally, BIC attached a one-page declaration to its removal petition arguing that Boehringer Ingelheim Corporation is a "separate legal entity" from Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), which officially held the New Drug Application for Zantac. This is the sort of perfunctory testimony that a plaintiff seeking remand is not required to rebut. *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (11th Cir. 2011). Here, Defendants never fully addressed or refuted Plaintiff's joint venture of alter ego theories, as pled in the complaint. The cause must be remanded.

I.    FACTS.

Plaintiff is the widow and personal representative of the estate of Richard Harrelson, who took both branded Zantac and generics from 2008 to 2019.  (Compl., ¶ 6.) He developed esophageal cancer, liver cancer, and lung cancer.  (*Id.* at ¶ 6.)

A.    Plaintiff's 2022 Nevada State Court Case Sought to Hold Nondiverse Defendant BIC Liable, But the Case is Removed for Fraudulent Joinder.

Plaintiff filed this case in the District Court of Clark County, Nevada, on September 9, 2022.  (Notice of Removal, "Ex. 1," at ¶ 2.)  She named BIC, a Nevada company that did not directly manufacture Zantac.  The removal petition—arguing that BIC was fraudulently joined—cited this Court's Order granting the Brand Defendants' motions to dismiss for failure to state a claim.  *In re Zantac*, 510 F. Supp. 3d at 1203.

The case was transferred to this MDL Court.  (Doc. 6114) (CTO 106 dated Nov. 30, 2022).  In the eight months since, no action appears to have been taken on this case other than it being slated for summary judgment.  (*See* Doc. 6787-7, Page 117 of 309.)

In their removal petition, Defendants asserted that BIC was fraudulently joined[1] because "BIC never manufactured or sold any Zantac® products in the United States (or elsewhere), including the product(s) Decedent allegedly ingested."  (Ex. 1 at ¶¶ 5, 26.)  In short, Defendants' basis for removal was its belief that "an entity that did not manufacture a drug does not owe a duty of care" under Nevada law.  (*Id.* at ¶¶ 30, 36.)

---

[1] Defendants did not assert fraudulent *mis*joinder—that is, abuse of joinder rules to include a nondiverse defendant.  Rather, they asserted only Plaintiff could not establish a cause of action against BIC.

This assertion, in turn, was based on two federal cases interpreting Nevada law: *Baymiller v. Ranbaxy Pharms., Inc.*, 894 F. Supp. 2d 1302, 1310 (D. Nev. 2012) and *Moretti v. Wyeth, Inc.*, No. 2:08-CV-00396-JCMGWF, 2009 U.S. Dist. LEXIS 29550, 2009 WL 749532, at *3 (D. Nev. Mar. 20, 2009). These are the same two cases this Court cited in rejecting other Nevada plaintiffs' innovator and predecessor liability claims at the outset of this MDL. 510 F. Supp. 3d at 1219. Defendants' notice of removal concludes:

> In sum, under Nevada law, Plaintiffs cannot hold BIC liable for a product made by another manufacturer. ***See In re Zantac*, 510 F. Supp. 3d at 1218-19.** Because all of Plaintiffs' claims require that they sue the party who caused the alleged injury, and BIC could not have manufactured or sold the Zantac® products Decedent purportedly ingested, there is "**no possibility** that a state court would find that the complaint states a cause of action" against BIC. *Grancare*, 889 F.3d at 549. BIC is thus fraudulently joined, and its Nevada citizenship should be disregarded for purposes of removal.

(Ex. 1 at ¶ 36) (emphasis added).

B.     A Nevada State Court Rejects the Federal Cases *Baymiller* and *Moretti*, and the Supreme Court of Nevada Refuses to Reverse.

Since that time, a Nevada state court has considered and rejected *Baymiller* and *Moretti*—and it held that nonmanufacturers can be held liable because state common law assigns responsibility for product safety "*wherever* it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." ("Ex. 4") That state court expressly rejected this Court's interpretation of Nevada law. (*Id.*)

GSK filed a writ of prohibition on the issue of personal jurisdiction, which the Supreme Court of Nevada rejected last month. ("Ex. 5.") GSK then moved for a rehearing, emphasizing that Nevada's highest court was tacitly extending the duties owed by nonmanufacturers of Zantac. ("Ex. 4.")

GSK wrote: "Plaintiffs have twice *conceded*—both in the district court and before this Court—that the decedent never consumed a GSK product."  (*Id.*) (emphasis in original).  Nevertheless, on August 1, 2023, the Supreme Court of Nevada rejected GSK's rehearing petition 6-1.  ("Ex. 2.")

## II.    LAW.

An MDL Court has the power to remand cases to state courts.  *Shellhammer v. Roche Labs., Inc.*, No. 8:07-CV-2365-T-30TBM, 2008 U.S. Dist. LEXIS 111523, at *5 n.5 (M.D. Fla. July 16, 2008) (collecting cases); 16 Moore's Federal Practice - Civil § 107.151 (a transferee Court "may remand only to the state court from which the case was removed").

### A.    When the Court Lacks Diversity Jurisdiction, Remand is Mandatory.

The removal statute speaks in mandatory terms:  "If at *any* time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded."  28 U.S.C. § 1447(e) (emphasis added).  An order remanding to state court under this provision is "not reviewable" on appeal.  *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007).

### B.    The Removing Party Must Prove by Clear and Convincing Evidence that There Was "No Possibility" Plaintiff Could Establish a Cause of Action Against the Nondiverse Defendant in State Court.

The removing party must prove, by clear and convincing evidence, that either (1) there is "no possibility" the plaintiff can establish a cause of action against the nondiverse defendant, or (2) the plaintiff has "fraudulently pled jurisdictional facts" to bring the nondiverse defendant into state court.  *Stillwell v. Allstate Ins.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

Federal courts do not weigh the merits "beyond determining whether it is an arguable one under state law." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The plaintiff need not "directly" rebut any affidavits. *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (11th Cir. 2011). She has a "lighter burden" of showing the circumstances "might be sufficient" to show liability. *Id.*

Complaints filed in notice pleading states need only be "adequate under traditional state-law notice pleading requirements." *Hampton v. Ga.- Pac. LLC*, No. 11-0363-KD-N, 2011 U.S. Dist. LEXIS 123025, at *14 (S.D. Ala. Oct. 21, 2011). If the state court allows for "vague and conclusory" allegations about what all "Defendants" did, this Court cannot impose higher pleading standards. *Id.* at *14, 19–20.

C.     Nevada is a Notice Pleading State That Does Not Dismiss a Complaint
       Unless Defendants Prove the Plaintiff Cannot Prevail "Beyond a Doubt."

Nevada is a notice pleading state. *Harris v. State*, 510 P.3d 802, 807 (Nev. 2022). The Court must "liberally construe" pleadings, asking only if the complaint puts Defendants on "adequate notice of the nature of the claim and relief sought." *Id.* (cleaned up). Plaintiffs only need to "broadly recite the 'ultimate facts' necessary" to prove their claims at trial. *Nutton v. Sunset Station, Inc.*, Case No. 62878, 2015 Nev. App. LEXIS 4, *22–23 (Nev. Ct. App. 2015). They need not cite any evidence. *Id.*

The Court may dismiss only if "beyond a doubt," Plaintiffs could prove "no set of facts" at trial that would entitle them to relief. *Buzz Stew, Ltd. Liab. Co. v. City of N. Las Vegas*, 124 Nev. 224, 228 (2008). The Court must not only accept all facts alleged as true—it must also draw all inferences in Plaintiffs' favor. *Harris*, 510 P.3d at 807.

[ 6 ]

### D. Nevada Allows Plaintiffs to State a Claim for "Joint Venture" by Mentioning the Theory and Stating the Nature of the Business the Defendants Carried On.

Nevada imputes the negligence of one member of a joint venture to all other co-venturers. *Radaker v. Scott*, 109 Nev. 653, 660 (1993). Whether Defendants have formed a joint venture is a question of *fact*—not a matter of law, even when the parties have a written agreement. *Posner v. Tassely*, 131 Nev. 1335 (2015). The jury must consider the parties' actions and the nature of their undertaking when determining whether a joint venture exists. *Swensen v. McDaniel*, 119 F. Supp. 152, 154 (D. Nev. 1953).

There is no set formula for determining whether a joint venture exists: Every case must "stand upon its own merits." *Las Vegas Machine & Eng'g Works v. Roemisch*, 67 Nev. 1, 9 (1950). Generally, two companies create a joint venture when they form an "informal partnership" to "conduct some business or enterprise, agreeing to share jointly" in profits and losses. *ECM, Inc. v. Placer Dome U.S.*, No. 96-15966, No. 96-16019, 1997 U.S. App. LEXIS 34851, at *5 (9th Cir. Dec. 10, 1997) (quoting *Bruttomesso v. Las Vegas Metro. Police*, 95 Nev. 151, 154 (1979)).

In Nevada, partnerships may be alleged generally and are not subject to any heightened pleading standards. *See Hay v. Hay*, 100 Nev. 196, 198 (1984); *see also* N.R.C.P. 8–9. Under notice pleading standards, a complaint need not include any specific allegations about profits and losses—identifying the nature of the business is enough. *See, e.g.*, *Swensen*, 119 F. Supp. at 154 (refusing to dismiss a complaint that stated only that Defendants were "jointly constructing a certain building" but said nothing about how profits or losses were divided).

[ 7 ]

1.      *A Joint Venture May Share Either Revenues or Profits.*

By statute, Plaintiffs may make a *prima facie* case for a joint venture between BIPI and BIC if it received a "share of the profits" from Zantac.  NRS 87.070(3).  If Plaintiffs only show at trial that BIC shared in the "gross returns" (revenues) of the business, this does not "of itself" establish a joint venture.  NRS 87.070(3).  But neither does it *preclude* the jury from finding the existence of a joint venture:  "[W]here parties share in the same revenue stream, the shared-profits element required to establish the existence of a joint venture may be established."  46 Am. Jur. 2d Joint Ventures § 16.

Thus, "[s]ome courts have found that parties who split revenues, rather than profits, satisfy the requirement" of splitting profits.  *Est. of Antonio v. Pedersen*, No. 5:11-cv-41, 2012 U.S. Dist. LEXIS 174987, at *23 (D. Vt. Dec. 11, 2012) (collecting authorities).  The Nevada District court where this case was originally filed has found a joint venture where the parties shared only a revenue stream, rather than profits after expenses.  *Kilyushik v. Palace*, Case No. A-17-764171-C (8th Jud. Dist.) 2019 Nev. Dist. LEXIS 848, *3 (finding a joint venture even though the parties agreed to share revenue only, no matter what each spent on marketing and advertising).

2.      *Nevada Does Not Require Any Specific Allocation of Losses.*

An agreement to share losses need not be express—Courts imply an agreement to share losses from an agreement to share profits. 48A C.J.S. Joint Ventures § 14 (Dec. 2019) (collecting authorities).  The Supreme Court of Nevada has never required that parties specifically provide for how losses are to be allocated.  *See Radaker*, 109 Nev. at 659.  And if the undertaking is likely to lose only "time and labor," then any agreement to share

profits makes it a joint venture, even if losses are never mentioned. *Bader Farms v. Monsanto Co.*, No. MDL No. 1:18md2820-SNLJ, 2020 U.S. Dist. LEXIS 19478, at *30 (E.D. Mo. Feb. 3, 2020).

What is more, Nevada does not require joint venturers to bear losses equally, or even in proportion to their investment.  Instead, joint venturers may agree to bear losses however they like, even "eliminating the liability of particular partners as to losses." *Las Vegas Mach. & Eng'g Works v. Roemisch*, 67 Nev. 1, 9 (1950); *see also Bader Farms*, 2020 U.S. Dist. LEXIS 19478 at *30 (citing authorities).

## III.   ARGUMENT:  AFTER THE SUPREME COURT OF NEVADA'S REFUSAL TO OVERTURN THE *ELABBASSY* DECISION, PLAINTIFF'S CLAIMS AGAINST BIC ARE NOT FRAUDULENTLY JOINED.

The notice of removal in this case focused almost exclusively on how the decedent never took a product manufactured by BIC.  But as shown by the trial Court's decision in *Elabbassy*, this is not dispositive under Nevada law.  Because there is at least some possibility that Nevada state courts will continue to allow nonmanufacturers of Zantac to be held liable for cancer, nothing in Defendants' notice of removal shows that Plaintiff's conduct in naming BIC was fraudulent.  *Edenfield v. Hiscox, Inc.*, No. 4:22-cv-146, 2022 U.S. Dist. LEXIS 211647, at *16 (S.D. Ga. Nov. 22, 2022) (holding that the Court is limited to checking the state court complaint for "obviously fraudulent or frivolous" claims).

The Supreme Court of Nevada could have overturned the *Elabbassy* trial Court on the merits if it wanted to do so.  *See Diaz v. Eighth Jud. Dist. Court*, P.2d 50, 54 (Nev. 2000) (holding that writ relief is appropriate when "an important issue of law needs clarification" and a decision would serve public policy).

But here, the Supreme Court of Nevada declined to interfere with a trial court decision implying a duty on nonmanufacturers.  Thus, Plaintiff had at least an "arguable" reason to join BIC under state law—and joinder was not fraudulent.

While Defendants did attach a declaration to their notice of removal stating that BIC was a parent or holding company, the affiant did not swear that BIC could not be held liable under *any* theory.  The Complaint—which must be judged under Nevada's relaxed notice pleading standards—alleged that all Defendants "are liable for the acts, omissions and tortious conduct" of their "successors and/or predecessors in interest" and that they were liable under "co-venturer" and "alter ego" theories.  (Compl. at ¶ 34.) The Complaint further alleges sharing of losses because "each such Defendants has the ability to assume the risk spreading role of each such alternate entity."  (Compl. at ¶ 34.)

The Complaint also identifies the nature of the business carried on: "were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of Nevada, including in Clark County, either directly or indirectly, through third parties or related entities, Ranitidine-Containing Drugs."  (*Id.* at ¶ 35.)

This type of group pleading is sufficient in notice pleading state courts to raise joint venture theories of liability.  *See, e.g.*, *MAR Oil Co. v. Korpan*, No. 3:11CV1261, 2014 U.S. Dist. LEXIS 89747, at *32 (N.D. Ohio Apr. 18, 2014) (analyzing old Complaint under the former pleading standards in place at the time it was filed, and holding that it satisfied notice pleading for a joint venture theory because it alleged Defendants acted "individually and through their entities" at all times).

Thus, there remains some possibility that BIC could be held liable for the acts of Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI").  To make a *prima facie* case of joint venture, Plaintiff would only need to establish that BIC received a "share of the profits" from Zantac.  NRS 87.070(3).  Because the inquiry is flexible, and no one fact is determinative, nothing in Defendant's one-page, 13-paragraph declaration precludes Plaintiff succeeding on a joint venture theory.  (Ex. 1 at Ex. B, Pomer Decl. ¶¶ 1–13.)

Mr. Pomer's short and carefully worded affidavit is silent about the questions relevant to a joint venture analysis, including whether BIC shared in the revenue stream generated by Zantac; associated itself with BIPI; or had joint employees with BIPI.  The Pomer Declaration states merely that BIC "does not operate or do business under the name of BIPI"; "hold itself out as the agent" of that company; or "control the manner in which BIPI manufactured, distributed, and/or sold OTC Zantac from December 2006 through December 2016."  (*Id.* at ¶¶ 8–13.)  The companies also maintain "separate financial records and financial accounts."  (*Id.* at ¶ 13.)

Plaintiff need not refute this testimony.  Rather, Plaintiff has a "lighter burden" of showing the circumstances "might be sufficient" to show liability despite the defendants' "testimony to the contrary."  *Taylor*, 436 F. App'x at 892.  This she can do.  As one Court observed, BIC and BIPI have shared officers, and the "board of directors" of Boehringer Ingelheim "has been described as coordinating the worldwide activities of all the Boehringer Ingelheim corporate family."  *ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F. Supp. 2d 268, 270 (D. Del. 2001).  The corporate R&D committee "determines what research and development projects should be pursued and by whom."  *Id.*

[ 11 ]

Especially given that Nevada follows a "less stringent" notice pleading standard, there is at least some possibility that a Nevada court would extend liability to nonmanufacturer BIC by either (1) a joint venture theory, holding it responsible for BIPI's conduct, or (2) following the trial Court's decision in *Elabbassy*, implying a duty on nonmanufacturers who are in a position to make the public safer. *See Landgrave v. Sam's W., Inc.*, No. 2:21-CV-1684 JCM (NJK), 2022 U.S. Dist. LEXIS 155, at *6 (D. Nev. Jan. 3, 2022) (holding that remand was appropriate, given Nevada's lax pleading standards).

## IV.   CONCLUSION.

Defendants cannot show—and have not shown—that joinder of BIC was fraudulent. The Supreme Court of Nevada has recently refused to set aside a trial court case imposing a duty on nonmanufacturers. Plaintiff's predecessor liability claim against non-diverse Defendant BIC otherwise satisfies Nevada's liberal notice pleading standard. This Court lacks jurisdiction and must remand to state court.

Dated:  August 3, 2023

**THE702FIRM INJURY ATTORNEYS**

*/s/ Michael Kane, Esq.*

MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
BRANDON A. BORN, ESQ.
Nevada Bar No.: 15181
8335 West Flamingo Road
Las Vegas, Nevada 89147
*Attorneys for Plaintiff*

# Exhibit 1

Order Denying Rehearing in *Elabbassy*

IN THE SUPREME COURT OF THE STATE OF NEVADA

GLAXOSMITHKLINE LLC,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT
OF THE STATE OF NEVADA, IN AND FOR
THE COUNTY OF CLARK; AND THE
HONORABLE JOSEPH HARDY, JR.,
DISTRICT JUDGE,
Respondents,
  and
SARA ELABBASSY, AS SPECIAL
ADMINISTRATOR OF THE ESTATE OF
DECEDENT HUSROM, DECEASED; JAMIL
HUSROM, INDIVIDUALLY; KHULOD
HUSROM, A MINOR; SALIH HUSROM, A
MINOR; FATIMA HUSROM, A MINOR; AND
MOHAMMED HUSROM, A MINOR,
Real Parties in Interest.

No. 85501

**FILED**

AUG 0 1 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## *ORDER DENYING REHEARING*

Rehearing denied.  NRAP 40(c).

It is so ORDERED.

_____, C.J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

Lee, J., dissenting:

I would order an answer to the petition and therefore dissent.

_____, J.
Lee



23-24710

cc:    Hon. Joseph Hardy, Jr., District Judge
          Evans Fears & Schuttert LLP
          The702Firm
          Eighth District Court Clerk

# Exhibit 2

GlaxoSmithKline LLC's Petition for
Rehearing in *Elabbassy*

# IN THE SUPREME COURT OF THE STATE OF NEVADA

## Supreme Court Case No. 85501

### GLAXOSMITHKLINE LLC,

*Petitioner*,

Electronically Filed
Jul 14 2023 01:25 PM
Elizabeth A. Brown
Clerk of Supreme Court

v.

### THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Clark, and THE HONORABLE JOE HARDY JR.

*Respondents*

### SARA ELABBASSY, as Special Administrator of the ESTATE OF DECEDENT HUSROM, deceased; JAMIL HUSROM, individually and as a legal guardian for KHULOD HUSROM, a minor, SALIH HUSROM, a minor, FATIMA HUSROM, a minor, and MOHAMMED HUSROM, a minor

*Real Parties in Interest*

District Court Case No. A-21-835385-C

## PETITION FOR REHEARING

Kelly A. Evans, Esq.
Chad R. Fears, Esq.
Hayley E. LaMorte, Esq.
EVANS FEARS & SCHUTTERT LLP
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
(702) 805-0290
kevans@efstriallaw.com
cfears@efstriallaw.com
hlamorte@efstriallaw.com

*Counsel for Petitioner*
*GlaxoSmithKline LLC*

Jay Lefkowitz, Esq.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4970
lefkowitz@kirkland.com

*Counsel for Petitioner*
*GlaxoSmithKline LLC*

1

Pursuant to Rule 40 of the Nevada Rules of Appellate Procedure, GlaxoSmithKline LLC ("GSK") seeks rehearing of its petition for a writ of prohibition challenging the district court's order denying GSK's motion to dismiss for lack of personal jurisdiction.  This Court issued an order denying the petition on June 28, 2023 on the ground that GSK had "introduced no evidence to dispute the [plaintiffs'] allegations that the decedent ingested brand-name Zantac."  Order at 4.  GSK had argued it was "undisputed" that the decedent "only ingested generic equivalents of Zantac or over-the-counter (OTC) Zantac produced by different companies," but the Court found otherwise based on an allegation from the complaint and a statement by Plaintiffs' counsel before the district court. *Id*.

GSK respectfully submits that the Court's understanding of Plaintiffs' allegations is mistaken.  It is, in fact, "undisputed" that the decedent never used brand-name Zantac made by GSK.  Indeed, Plaintiffs have twice *conceded*—both in the district court and before this Court—that the decedent never consumed a GSK product.

Plaintiffs' complaint alleges the decedent consumed "Zantac and its generic equivalents," as this Court noted, but the complaint does not

specify whether the "Zantac" in question was prescription Zantac made by GSK, or OTC Zantac made by other companies.  Because the complaint did not clearly allege use of a GSK product, GSK moved to dismiss on the ground that "Plaintiffs do not allege that Decedent ever took a drug manufactured or sold by GSK."  Petitioner's Appendix (PA) 071.

In opposing GSK's motion to dismiss, ***Plaintiffs conceded the decedent never used a GSK product***.  Plaintiffs argued that the district court could assert personal jurisdiction over GSK "***even though [the decedent] never ingested a drug GSK manufactured***," PA 090, and made clear they were pursuing "innovator liability claims," not traditional product-liability claims.  PA 085.  Plaintiffs' counsel statement during the hearing on the motion to dismiss that "the allegation has always been that … [the decedent] took over-the-counter prescription, brand and generic Zantac" is fully consistent with Plaintiffs' concessions that the decedent never used a GSK product.  The decedent alleges only that she ingested Zantac "[f]rom November 2016 through September 2019."  PA 014, ¶69.  During this time, GSK did not manufacture or sell over-the-counter brand-name Zantac, and generic

prescription ranitidine (manufactured and sold by companies other than GSK) was widely available.[1]

In keeping with the parties' allegations and arguments, the district court did not deny the motion to dismiss because it believed the decedent had used Zantac made by GSK.  The district court's order focused entirely on the theory of "innovator liability," under which, as the district court explained, "*the sole basis* for Plaintiffs' cause of action is GSK's alleged failure to update and maintain the warning label for brand-name Zantac," which generic and other brand-name manufacturers subsequently copied.  Order at 4 (emphasis added).  The district court also noted that Plaintiffs relied on a federal district court decision that had found personal jurisdiction in an innovator liability case "[a]lthough [the plaintiff] did not ingest Defendant's drug."  *Quinn-White v. Novartis Pharm. Corp.*, 2016 WL 11519285, at *2 (C.D. Cal. Oct. 7, 2016).

In its petition to this Court for a writ of prohibition, GSK again made clear that its argument was premised on the fact that "the Decedent *never used a product made or sold by GSK*."  Pet. at 1 (emphasis

---

[1] Indeed, Nevada law generally *requires* pharmacists to dispense lower-cost generic drugs when available.  *See* NRS 639.2853.

in original).   And again, ***Plaintiffs conceded that fact in their response***.  Plaintiffs explained that Pfizer, "which purchased the right to sell over-the-counter Zantac from GSK in 1998, paid GSK for the right to manufacture and sell Zantac to Ms. Husrom, the decedent in this case." Answer at 2.  Thus, Plaintiffs argued, "GSK profited from Ms. Husrom's purchase of the drug in Nevada—***if not as the company that put the pills in the bottle***, as the company that sold the right to manufacture the drug and sell it to her."  *Id.* at 14.  Plaintiffs again acknowledged the decedent never purchased Zantac made by GSK when they analogized the facts of this case to those in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).   "There ***(as here)***," Plaintiffs wrote, "Ford ***had not sold [the product] to that plaintiff in the forum***."  Answer at 15.

Plaintiffs have not alleged that the decedent ever used Zantac made by GSK; on the contrary, they have repeatedly conceded that she did not. GSK thus respectfully requests that the Court rescind its order and decide the legal issue raised by the parties' briefs and the district court's opinion:   whether a Nevada court can assert specific jurisdiction over innovator-liability claims against an out-of-state defendant.

## CONCLUSION

For these reasons, the Court should grant rehearing of GSK's petition for a writ of prohibition.

Dated: July 14, 2023.

Respectfully submitted,

*Chad R. Fears*
Kelly A. Evans, Esq.
Chad R. Fears, Esq.
Hayley E. LaMorte, Esq.
EVANS FEARS & SCHUTTERT LLP
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
*Counsel for Petitioner*
*GlaxoSmithKline LLC*

Jay Lefkowitz, Esq.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

*Counsel for Petitioner GlaxoSmithKline*
*LLC*

## CERTIFICATE OF COMPLIANCE

I, Chad R. Fears, hereby certify:

1.　　I have read the foregoing petition and to the best of my knowledge, information, and belief, the foregoing document is not frivolous or interposed for any improper purpose, and it complies with all applicable rules of appellate procedure, including NRAP 28(e)(1).

2.　　The foregoing brief complies with type-volume limitations of NRAP 40(b)(3) because it contains 1311 words.

3.　　This brief complies with the typeface, formatting, and type style requirements of NRAP 32(a)(4)-(6) because it was prepared in a double-spaced typeface in Century Schoolbook, 14-point, type style with one-inch margins on all sides.

　　　Dated:  July 14, 2023.

　　　　　　　　　　　　　　　*/s/ Chad R. Fears*
　　　　　　　　　　　　　　　Kelly A. Evans
　　　　　　　　　　　　　　　Chad R. Fears
　　　　　　　　　　　　　　　Jay J. Schuttert
　　　　　　　　　　　　　　　**EVANS FEARS & SCHUTTERT LLP**
　　　　　　　　　　　　　　　6720 Via Austi Parkway, Suite 300
　　　　　　　　　　　　　　　Las Vegas, NV 89119
　　　　　　　　　　　　　　　Telephone: (702) 805-0290

7

## CERTIFICATE OF SERVICE

I certify that on July 14, 2023, I submitted the foregoing Reply in Support of

Petition for Writ of Prohibition for filing via the Court's eFlex electronic filing

system.  Electronic notifications will be sent to the following:

Erika Pike Turner
Garman Turner Gordon LLP
eturner@gtg.legal
Daniel S. Pariser
Arnold & Porter Kaye Scholer LLP
Daniel.pariser@arnoldporter.com
*Attorneys for Defendants Sanofi US Services, Inc., Sanofi-Aventis U.S. LLC,
and Chattem, Inc.*

Michael C. Kane
Bradley J. Myers
Brandon A. Born
service@the702firm.com
The702Firm
*Attorneys for Plaintiffs*

David R. Koch
dkoch@kskdlaw.com
King Scow Koch Durham LLC
Anneke J. Shepard
Andrew T. Bayman
Robert B. Friedman
Julia Zousmer
ashepard@kslaw.com
abayman@kslaw.com
rfriedman@kslaw.com
jzousmer@kslaw.com
King & Spalding LLP
*Attorneys for Defendants Boehringer Ingelheim Pharmaceuticals, Inc. and
Boehringer Ingelheim USA Corporation*

Robert C. McBride
Sean M. Kelly
rcmcbride@mcbridehall.com
smkelly@mcbridehall.com
McBride Hall
*Attorneys for Defendants Nauman Jahangir, M.D. and Las Vegas Medical Group LLC*

/s/ Faith Radford
an Employee of Evans Fears & Schuttert LLP

# Exhibit 3

Nevada Trial Court Decision
Adopting Innovator Liability in
*Elabbassy*

Electronically Filed
09/09/2022 11:18 AM

CLERK OF THE COURT

| | |
|---|---|
| 1 | **ORDER**<br>MICHAEL C. KANE. ESQ. (10096) |
| 2 | BRADLEY J. MYERS, ESQ. (8857) |
| 3 | BRANDON A. BORN, ESQ. (15181)<br>**THE702FIRM** |
| 4 | 400 S. 7th Street, Suite/Floor 4<br>Las Vegas, Nevada 89101 |
| 5 | Telephone:      (702) 776-3333<br>Facsimile:      (702) 505-9787 |
| 6 | E-Mail:          service@the702firm.com |
| 7 | *Attorneys for Plaintiffs* |

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| SARA ELABBASSY, as Special Administrator of the ESTATE OF DECEDENT HUSROM, deceased; JAMIL HUSROM, individually and as the legal guardian for KHULOD HUSROM, a minor, SALIH HUSROM, a minor, FATIMA HUSROM, a minor, and MOHAMMED HUSROM, a minor,<br><br>                    Plaintiffs,<br><br>  vs.<br><br>LAS VEGAS MEDICAL GROUP, LLC; NAUMAN JAHANGIR, M.D.; GLAXOSMITHKLINE, LLC, GLAXOSMITHKLINE, PLC; BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.; BOEHRINGER INGELHEIM USA CORPORATION; BOEHRINGER INGELHEIM CORPORATION; SANOFI US SERVICES, INC.; SANOFI S.A.; SANOFI-AVENTIS U.S. LLC; CHATTEM, INC.; SMITH'S FOOD & DRUG CENTERS, INC.; WALMART, INC.; CVS PHARMACY, INC.; WALGREEN CO. d/b/a WALGREENS; DOES I THROUGH X; AND ROE CORPORATIONS XI THROUGH XX, INCLUSIVE,<br><br>                    Defendants. | CASE NO. A-21-835385-C<br>DEPT. 15<br><br><br>**ORDER DENYING DEFENDANT GLAXOSMITHKILINE LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM** |

27   …

28   …

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

1

PA-179

On February 25, 2022, Defendant GlaxoSmithKline LLC ("GSK"), filed *Defendant GlaxoSmithKline LLC's Motion to Dimiss for Lack of Personal Jurisdiction and Failure to State a Claim*. On March 25, 2022, Plaintiffs Sara Elabbassy, as Special Administrator of the Estate Of Decedent Husrom, deceased Jamil Husrom, individually and as the legal guardian for Khulod Husrom, a minor, Salih Husrom, a minor, Fatima Husrom, a minor, and Mohammed Husrom, a minor (collectively, the "Plaintiffs"), filed *Plaintiffs' Opposition to Defendant GlaxoSmithKline LLC's Motion to Dismiss*. On April 13, 2022, GSK filed *Defendant GlaxoSmithKline LLC's Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim*. On April 20, 2022, the Court heard argument at the hearing on this Motion. The Court, having heard oral arguments and after review of the points and authorities and the pleadings, hereby DENIES GSK's motion to dismiss without prejudice.

## I.      BACKGROUND.

According to Plaintiffs' Second Amended Complaint, ranitidine, better known as Zantac, was developed by GSK and approved for prescription use in 1983. In their Complaint and briefing, Plaintiffs assert that Zantac was a "wildly successful" drug. They further assert that, due to GSK's marketing strategy, Zantac was the world's best-selling drug in 1988, and in the fiscal year that ended in June 1989, Zantac accounted for over half of GSK's sales of $3.98 billion. According to the pleadings, even as late as 2016, Zantac was the 50th most prescribed drug in the United States with over 15 million prescriptions.

Plaintiffs contend that the marketing strategy that led to Zantac's success for over 30 years emphasized the purported safety of the drug. They assert that Zantac has been marketed as a safe and effective treatment for infants, children, and adults; that GSK, through its constant television campaigns, marketed Zantac as safe to use when consuming foods containing high levels of nitrates, such as tacos and pizza; and that because GSK promoted the drug as being safe, Zantac became available without a prescription in 1996. Generic versions of the drug (ranitidine) became available the following year. In their Second Amended Complaint, Plaintiffs contend that GSK knew from the beginning that ranitidine has the potential to cause cancer. They reference studies purportedly conducted by GSK in 1981 and 1987 that, they allege, were purposefully distorted to

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

2

PA-180

mask any potential cancer risk.

Plaintiffs are a Nevada family suing over the death of a loved one. According to the Second Amended Complaint, the decedent contracted esophageal cancer and died after taking both the branded and the generic versions of Zantac—a drug that was marketed by GSK as a method for treating gastroesophageal reflux disease—from November 2016 to September 2019. Plaintiffs allege that GSK cultivated a market in Nevada for the product and derived substantial revenue from this state. In their argument in opposition to GSK's motion to dismiss, Plaintiffs assert that the decedent lived in Nevada, was subjected to GSK's marketing in Nevada, presumably believed GSK's alleged representations that the drug was safe in Nevada, took both the branded and generic Zantac drugs bearing GSK's warning label in Nevada, and died in Nevada. At oral argument, the Court questioned GSK's counsel as to whether, at the pleading stage, the Court should assume that GSK did market and sell Zantac in Nevada. (Hr'g Tr. 29:24-30:2.) GSK's counsel conceded this point. (*Id.* at 30:3.)

## II.     THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER GSK.

GSK first argues that this Court lacks personal jurisdiction over it. The parties agree that GSK is not headquartered or incorporated in Nevada, and therefore there is no general jurisdiction over it. Rather, the question is whether "specific" jurisdiction exists over GSK in this state.

In *Ford*, the Supreme Court clarified that there are two different ways that a plaintiff may establish specific jurisdiction. First, the plaintiff may show that the claims "arise out of" the defendant's contacts with the forum—an inquiry that "asks about causation." *Id.* But if the plaintiff cannot make a "causal showing," he can still satisfy the requirements of specific jurisdiction by showing that his claims "relate to" the defendant's contacts with the forum. *Id.* It is this second test—the "relate to" test—that Plaintiffs in this case have satisfied.

This second test "contemplates that some relationships will support jurisdiction without a causal showing." *Id.*; *Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, No. 20-16214, 2021 U.S. App. LEXIS 25921, at *18 n.5 (9th Cir. Aug. 27, 2021) ("We clarify that our precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement."). Rather, the "relate to" inquiry focuses on whether there is a "strong relationship among the defendant, the forum, and

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

3

PA-181

the litigation." *Ford*, 141 S. Ct. at 1028. The relatedness requirement "incorporates real limits." *Id.* at 1026. Nevertheless, "regularly marketing" a product in a state puts a defendant on "clear notice" that it will be "subject to jurisdiction in the State's courts when the product malfunctions there." *Id.* at 1030.

GSK argues that because Plaintiffs seek to hold GSK liable based on the theory of "innovator liability," under which the sole basis for Plaintiffs' cause of action is GSK's alleged failure to update and maintain the warning label for brand-name Zantac, the only relevant jurisdictional facts are those that pertain to GSK's labeling decisions. Plaintiffs do not contest that those labeling decisions took place out of state. In support of its position, GSK relies on the decision of the MDL Court in the Zantac litigation, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 2682602, at *14 (S.D. Fla. June 30, 2021). The MDL Court concluded that "[t]he nature of an innovator-liability claim … compels" the conclusion that "only those activities that relate to the brand-name manufacturers' labeling decisions" could support specific jurisdiction. *Id.*

By contrast, Plaintiffs rely directly on the Supreme Court's analysis in *Ford* and on an analogous case within the Ninth Circuit. Plaintiffs argue that in the innovator liability case *Quinn-White v. Novartis Pharm. Corp.*, the court found specific personal jurisdiction because "[a]lthough Plaintiff Quinn-White did not ingest Defendant's drug, Plaintiff alleges that her California-based physician reviewed and relied on Novartis's label and its warnings in California, where Novartis marketed its drugs." No. CV 16-4300 PSG (AGRx), 2016 U.S. Dist. LEXIS 201328, at *7 (C.D. Cal. Oct. 7, 2016). GSK, in its reply brief, asserts that *Quinn-White* was wrongly decided.

After careful consideration and a thorough reading of many of the relevant opinions, and with all due respect to the MDL Court, this Court concludes that, at this early stage, GSK's motion to dismiss for lack of personal jurisdiction should be denied. Plaintiffs' arguments and authorities better harmonize with the Supreme Court's reasoning in *Ford*. In *Ford*, the Supreme Court did not first winnow down the relevant jurisdictional facts to only those aspects of the defendant's conduct that were allegedly tortious. Rather, the Court asked whether there was "'an affiliation between the forum and the underlying controversy,' without demanding that the inquiry focus on cause." *Ford*, 141 S. Ct. at 1026. An "affiliation" may occur where the plaintiff is injured by a product in

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

4

PA-182

a state and the defendant has made "efforts" to "serve, directly or indirectly, the market" in that state. *Id.* at 1027 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Thus, so long as there is at least some "affiliation between the forum and the underlying controversy," a defendant cannot complain that the exercise of personal jurisdiction "offend[s] traditional notions of fair play and substantial justice." *Id.* If a defendant does not wish to be sued in a certain state, it can "structure [its] primary conduct to lessen or avoid exposure to a given State's courts," for example by declining to do any business in that state. *Id.* at 1025. But when a company "exercises the privilege of conducting activities within a state—thus enjoy[ing] the benefits and protection of [its] laws—the State may hold the company to account for related misconduct." *Id.*

GSK poses a hypothetical that it argues defeats Plaintiffs' position. GSK argues that even if it had *never* marketed or sold Zantac in Nevada, then under Plaintiffs' theory of jurisdiction, Plaintiffs could still seek to hold GSK liable under a theory of innovator liability in Nevada—and that this would be, it contends, an absurd result. As GSK's counsel conceded at oral argument, however, this hypothetical is not the case here. At this stage, the Court must assume that GSK did, through its marketing, cultivate a market for Zantac in Nevada. If GSK had never marketed Zantac in Nevada, then it would be unclear that Plaintiffs' claims would sufficiently "relate to" the forum for GSK to be hailed into a Nevada Court. Because GSK actively cultivated a market for ranitidine in this State, however, under *Ford*, its regular marketing put it on "clear notice" that it could be "subject to jurisdiction in the State's courts when the product malfunctions there." *Id.* at 1030. Here, unlike in GSK's hypothetical, there is a sufficient "affiliation" between the parties, the product, and the forum state.

GSK further argues that finding specific personal jurisdiction would violate Due Process because, with respect to other companies' products, it has not received the benefits and protections of Nevada law. At least at the pleading stage, however, the Court assumes that by "conducting so much business in" Nevada and reaping the financial rewards of successfully marketing ranitidine in this State, GSK has "enjoy[ed] the benefits and protection of" Nevada's laws—"the enforcement of contracts, the defense of property, the resulting formation of effective markets." *Id.* at 1030.

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

5

PA-183

1    Those benefits give rise to "reciprocal obligations for the Defendants under state law," notably the

2    obligation not to make negligent misrepresentations; and breaching those obligations "relates to"

3    the negligent misrepresentation claims, allowing Nevada courts to hold GSK accountable

4    consistent with the Constitution and Due Process. *Id.* Having addressed the threshold jurisdictional

5    issue, the Court now turns to GSK's motion to dismiss for failure to state a claim.

6    **III.    PLAINTIFFS HAVE STATED A CLAIM FOR INNOVATOR LIABILITY.**

7        Nevada is a notice pleading state. *McGowen v. Second Judicial Dist. Court of Nev.*, 432

8    P.3d 220, 225 (Nev. 2018) ("Nevada has not adopted the federal 'plausibility' pleading standard.").

9    Thus, to succeed on a motion to dismiss for failure to state a claim, the defendant must show that,

10    after every reasonable inference is drawn in the plaintiff's favor, "it appears beyond a doubt that

11    the plaintiff could prove no set of facts that would entitle him to relief." *Munda v. Summerlin Life*

12    *& Health Ins. Co.*, 127 Nev. 918, 923, 267 P.3d 771, 774 (2011) (cleaned up). With this in mind,

13    the Court turns to Plaintiffs' theory of "innovator liability."

14        Under the theory of "innovator liability," a brand-name manufacturer of a drug may be

15    held responsible for the contents of a generic manufacturer's warning label because, under federal

16    law, the generic manufacturer is *required* by to copy the brand-name manufacturer's label. *Rafferty*

17    *v. Merck & Co.*, 92 N.E.3d 1205, 1210 (Mass. 2018) (citing 21 U.S.C. § 355(j)(2)(A)(v) &

18    (j)(4)(G)). Because federal law only requires the generic manufacturer to copy the brand-name

19    manufacturer's label, many of Plaintiffs' state law failure-to-warn claims against the generic

20    manufacturer are impliedly preempted by federal law. *PLIVA, Inc., v. Mensing*, 564 U.S. 604

21    (2011).

22        Courts have recognized that this is fundamentally unfair to the plaintiff. For instance, in

23    *Franzman v. Wyeth, Inc.*, a Missouri court acknowledged (in applying Kentucky law to the case

24    before it) that there was "inherent unfairness [in] first substantially preempting a consumer's tort

25    claims against the generic manufacturer, and next concluding that the same consumer's tort claims

26    are also barred against the brand-name manufacturer responsible for the product design, formula,

27    dosage, labeling and warning that are at the core of the consumer's claims." 451 S.W.3d 676, 691

28    (Mo. Ct. App. 2014). The Sixth Circuit has also recognized the "basic unfairness" of the "classic

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

6

PA-184

'Catch 22'" that occurs where the plaintiff cannot sue the *generic* manufacturer for failure to warn because that company didn't design the label, but also can't sue the *brand-name* manufacturer because it didn't make the product the plaintiff consumed. *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 407 (6th Cir. 2013) (applying Tennessee law).

In *Franzman* and *Strayhorn*, however, state law products liability statutes prevented the Courts from adopting the "innovator liability" theory. *See Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1221 (Mass. 2018) (distinguishing cases finding no duty because those were "resolved under the products liability statutes of other States"). The federal case law presented by GSK is not persuasive, as those decisions were "issued by Federal courts that are constrained in their interpretation of State law in the absence of clear guidance from State appellate courts." *Id.* This Court must, relying on Nevada tort principles, reach its own conclusion.

Where, as here, no legislative scheme bars application of the theory, judges have applied traditional tort law principles to properly allocate the risk of loss onto the party in the best position to prevent the harm (the brand-name manufacturer). *See, e.g.*, *Rafferty*, 92 N.E.3d at 1221; *T.H. v. Novartis Pharms. Corp.*, 407 P.3d 18 (Cal. 2017); *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 676 (Ala. 2014), *superseded by statute*, Ala. Code § 6-5-530(a); *Dolin v. SmithKline Beecham Corp.*, 62 F. Supp. 3d 705, 714 (N.D. Ill. 2014); *Kellogg v. Wyeth*, 762 F. Supp. 694, 708–09 (D. Vt. 2010). While the name GSK uses for Plaintiffs' theory—"innovator liability"—may be relatively recent, the principles underpinning it are well-established.

So-called "innovator liability" is based on the commonsense principle that liability for injuries should be assigned those parties who are in the best position to avoid them. *Allison v. Merck & Co.*, 878 P.2d 948, 952 (Nev. 1994) (The "responsibility for injuries caused by defective products is properly fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market.").

In *Allison*, the Nevada Supreme Court explained that when considering whether to permit the plaintiff's theory of liability, the Court should consider "public interest" principles. *Id.* at 953. The Court reasoned that these "public policy considerations . . . were put well by Professor Prosser in the noted law review article, 'The Fall of the Citadel':

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

7

PA-185

> The public interest in human safety requires the maximum possible protection for the user of the product, and those best able to afford it are the suppliers of the chattel. By placing their goods upon the market, the suppliers represent to the public that they are suitable and safe for use; and by packaging, advertising and otherwise, they do everything they can to induce that belief . . . .

*Id.* (citing 50 Minn. L. Rev. 791, 799 (1966)).

The Court further endorsed this vision of Nevada's common law tort principles, explaining that "[t]his concept of 'public interest' is the guiding principle of our present opinion." *Id.* Indeed, Nevada law has viewed products liability law in this light for over fifty years. *See Stackiewicz v. Nissan Motor Corp.*, 686 P.2d 925, 926–27 (Nev. 1984) (providing an overview of the evolution of products liability law in Nevada); *Shoshone Coca-Cola Bottling Co. v. Dolinski*, 420 P.2d 855, 857 (Nev. 1966) (adopting the California Supreme Court's expansion of strict liability doctrines).

Recently, Nevada has reaffirmed its commitment to providing the "maximum possible protection" for consumers and has rejected attempts to narrow liability. *Ford Motor Co. v. Trejo*, 402 P.3d 649, 655 (2017) (not requiring the plaintiff to proffer evidence of an alternative feasible design). In *Trejo*, the Court recognized the "unique position of manufacturers" in "establishing the reasonable expectations of a product that in turn cause consumers to demand that product." *Id.* at 529–30. Moreover, the Court has not shied away from following California's lead in products liability cases. *Shoshone*, 420 P.2d at 857. There is, accordingly, no reason for this Court to reject Plaintiffs' "innovator liability" theory.

Rather, following the principle laid out in *Allison*, this Court should assign responsibility for injuries "*wherever* it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." *Allison*, 878 P.2d at 952 (emphasis added). The best, and likely only, way to "effectively reduce the hazards to life and health" arising from inadequate or otherwise defective generic drug labels is to hold the brand-name manufacturer (who exercises complete control over the contents of the drug label) liable for injury resulting from its failure to properly warn of known risks. Indeed, this is the same logic that California relied on when it found a brand-name manufacturer liable for an inadequate drug label included with a generic drug. *See T.H. v. Novartis Pharm. Corp.*, 407 P.3d 18, 32 (Cal. 2017) ("The brand-name drug manufacturer is the only entity with the unilateral ability to strengthen the warning label. So a duty of care on

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

8

PA-186

behalf of all those who consume the brand-name drug or its bioequivalent ensures that the brand-name manufacturer has sufficient incentive to prevent a known or reasonably knowable harm.").

GSK relies on the unpublished decision *Moretti v. Wyeth, Inc.*, where the federal court read *Allison* to hold that only the manufacturer of a product could be liable to a consumer. No. 2:08-cv-00396-JCM-(GWF), 2009 U.S. Dist. LEXIS 29550, at *9–10 (D. Nev. Mar. 20, 2009). With all respect to the Court in that case, this Court does not read *Allison* for this proposition. Rather, in *Allison*, the Nevada Supreme Court stated that under general tort principles, liability should be assigned "*wherever* it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." *Allison*, 878 P.2d at 952 (emphasis added). Under the facts of that *particular* case, the risk of loss was most appropriately allocated to the manufacturer. *Allison* never held, however, that only the manufacturer of a specific item could be liable for damages. Further, because the MDL Court relied on *Moretti* to predict that the Nevada Supreme Court would reject "innovator liability," but does not address the guiding principles outlined in *Allison*, the MDL Court's opinion is not persuasive. *In re Zantac*, 510 F. Supp. at 1219.

GSK also cites to *Dow Chem. Co. v. Mahlum*, where the Nevada Supreme Court stated that "[t]he duty to disclose requires, at a minimum, some form of relationship between the parties." 114 Nev. 1468, 1486 (1998). The Court in *Dow Chemical*, however, was not faced with the unique federal regulatory scheme in place in this situation. Moreover, GSK had a duty created by federal law to disclose to the public any defects in its drug. *Rafferty*, 92 N.E.3d at 1209 ("the manufacturer must also show that the proposed warning label for the drug is accurate and adequate." (citing 21 U.S.C. § 355(b)(1). And once GSK "assumed the duty to supervise and exert control" over the New Drug Application ("NDA"), "it had to do so in a reasonably prudent manner." *Wright v. Schum*, 781 P.2d 1142, 1146 (Nev. 1989). The Court therefore holds that, under the facts as alleged in the Second Amended Complaint, GSK did owe a duty to Plaintiffs under Nevada law.

Lastly, GSK urges this Court to reject what it styles "predecessor liability," which it defines in its brief as the theory "according to which a brand-name company can be held liable even after it transfer the NDA to a different company, if it was foreseeable that the successor would rely on the predecessor's labeling decisions." The Court agrees with the Supreme Court of California,

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

9

PA-187

however, that a brand-name manufacturer's sale of the rights to a drug does not, as a matter of law, terminate its liability for injuries foreseeably and proximately caused by deficiencies present in the warning label prior to the sale. *T.H. v. Novartis Pharm. Corp.*, 407 P.3d 18 (Cal. 2017). This is because "significant moral blame attaches to the failure to warn about a drug's risks when the brand-name drug manufacturer knew or should have known about those risks. The fact that the brand-name manufacturer has since exited the market does not alter the calculus." *Id.* at 46–47.

Moreover, as argued by counsel for Plaintiffs at oral argument, even if GSK lost the ability to alter or change the warning label when it sold its rights in the NDA, it still allegedly had knowledge about the risk of cancer associated with ranitidine and still had the ability to alert the public or the FDA. Lastly, GSK's theory—that the sale of a New Drug Application prospectively cuts off a manufacturer's liability moving forward—creates a perverse incentive for brand-name manufacturers to conceal defects in their drugs and then sell them off to limit their liability.

Lastly, GSK argues that Nevada law precludes Plaintiff from recovering for personal injury for a negligent misrepresentation. According to GSK, Plaintiff's damages for negligent misrepresentation are limited to pecuniary or "out-of-pocket" loss only. For instance, Plaintiffs would be limited to their special damages and, as alleged in the Complaint in Plaintiffs' prayer for relief, funeral expenses. Plaintiffs' counsel moved orally at the hearing for leave to file a surreply addressing these arguments. Plaintiffs' motion for leave to file a surreply is denied without prejudice, and the Court takes the matter regarding whether Plaintiffs damages are limited to their out-of-pocket expenses under advisement.

THEREFORE, the Motion is DENIED WITHOUT PREJUDICE.

~~IT IS SO ORDERED this ____ day of _____ 2022.~~

Dated this 9th day of September, 2022

DISTRICT COURT JUDGE

**4D9 CF5 DCF8 0DB7**
**Joe Hardy**
**District Court Judge**

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

10

Respectfully submitted:

THE702FIRM

 /s/ Michael C. Kane
MICHAEL C. KANE
Nevada Bar No. 10096
BRADLEY J. MYERS
Nevada Bar No. 8857
BRANDON A. BORN
Nevada Bar No. 15181
400 S. 7th Street, Suite/Floor 4
Las Vegas, Nevada 89101

HILTON PARKER, LLC
JONATHAN HILTON
(*pro hac vice forthcoming*)
7544 Slate Ridge Blvd.
Reynoldsburg, OH 43068

KRAUSE & KINSMAN
ADAM KRAUSE
(*pro hac vice forthcoming*)
4717 Grand Ave #300
Kansas City, MO 64112
*Attorneys for Plaintiffs*

Approved as to Form:

EVANS FEARS & SCHUTTERT LLP

 /s/ Justin Hepworth
KELLY A. EVANS
Nevada Bar No. 7691
CHAD R. FEARS
Nevada Bar No. 6970
JUSTIN S. HEPWORTH
Nevada Bar No. 10080
6720 Via Austi Parkway, Suite 300
Las Vegas, Nevada 89119

KIRKLAND & ELLIS LLP
COLE THOMAS CARTER (*pro hac vice*)
JAY PHILIP LEFKOWITZ (*pro hac vice*)
601 Lexington Ave.
New York, NY 10022

*Attorneys for Defendant*
*GlaxoSmithKline LLC*

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

11

PA-189