UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924<br><br>**JUDGE ROBIN L. ROSENBERG**<br>**MAGISTRATE JUDGE BRUCE E. REINHART** |

THIS DOCUMENT RELATES TO: LORI HARRELSON, CASE NO. 9:22-cv-81886

### PLAINTIFF HARRELSON'S AMENDED OBJECTION TO FINAL ENTRY OF JUDGMENT AND MOTION FOR REMAND TO NEVADA STATE COURT

This case must be remanded to Nevada state court because it lacks complete diversity under 18 U.S.C. 1332. Defendants first removed this case—which included a nondiverse Nevada defendant, Boehringer Ingelheim Corporation ("BIC")—on grounds that BIC was fraudulently joined, as Nevada does not impose any duty "for a product made by another manufacturer." (Case No. 9:22-cv-81886, Doc. 1 at ¶ 36.)

In their removal petition, Defendants cited this Court's decision predicting Nevada would reject innovator liability. (*Id.*); *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1175, 1218–19 (S.D. Fla. 2020). They asserted there was "no possibility" a Nevada state court would find the complaint stated a cause of action against BIC because it did not manufacture the "specific product" that injured the decedent, as supposedly "required under Nevada law." (Doc. 1 at ¶¶ 30–32.)

But this past Monday, the Supreme Court of Nevada refused to overturn a lower state court decision recognizing innovator liability. By a vote of 6-1, it denied a petition for rehearing in *GlaxoSmithKline LLC vs. Eighth Jud. Dist.*, No. 85501. ("Ex. 1.")

[ 1 ]

In GSK's rehearing petition, it argued that "Plaintiffs have twice *conceded*—both in the district court and before this Court—that the decedent never consumed a GSK product." ("Ex. 2") (emphasis in original). The Supreme Court of Nevada left untouched the lower court's opinion, which held that tort law in Nevada assigns responsibility for safety "*wherever* it will most effectively reduce the hazards to life and health inherent in defective products that reach the market"—even on nonmanufacturers. (*Elabbassy* Tr. Ct. Op., "Ex. 3") (emphasis in original). As a result, there is a chance that Lori Harrelson ("Plaintiff") could establish the cause of action she pled against BIC in Nevada state court. The Court now lacks diversity jurisdiction and must remand.

It does not matter that the Court has tentatively ordered summary judgment. A lack of diversity at *any* time destroys jurisdiction, even on appeal. *See Craig v. Ont. Corp.*, 543 F.3d 872, 877 (7th Cir. 2008) (holding that the party asserting jurisdiction must establish it "no matter how the issue is raised"—even on a Rule 60(b) motion). And even after this Court's *Daubert* decision, Plaintiff has some chance of success against BIC in Nevada. *See Higgs v. State*, 222 P.3d 648, 658 (Nev. 2010) (rejecting *Daubert*).

Finally, BIC attached a one-page declaration to its removal petition arguing that Boehringer Ingelheim Corporation is a "separate legal entity" from Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), which officially held the New Drug Application for Zantac. This is the sort of perfunctory testimony that a plaintiff seeking remand need not rebut. *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (11th Cir. 2011). Here, Defendants never fully addressed or refuted Plaintiff's joint venture of alter ego theories, as pled in the complaint. The cause must be remanded.

I.   **FACTS.**

Plaintiff is the widow and personal representative of the estate of Richard Harrelson, who took both branded Zantac and generics from 2008 to 2019. (Compl., Doc. 1-3 at ¶ 6.) He developed esophageal cancer, liver cancer, and lung cancer. (*Id.* at ¶ 6.)

   A.   <u>Plaintiff's 2022 Nevada State Court Case Sought to Hold Nondiverse Defendant BIC Liable, But the Case is Removed for Fraudulent Joinder.</u>

Plaintiff filed this case in the District Court of Clark County, Nevada, on September 9, 2022. (Doc. 1 at ¶ 2.) She named BIC, a Nevada company that did not directly manufacture Zantac. (Doc. 1-3.) The removal petition—arguing that BIC was fraudulently joined—cited this Court's Order granting the Brand Defendants' motions to dismiss for failure to state a claim. (Doc. 1 at ¶ 36); *In re Zantac*, 510 F. Supp. 3d at 1203.

The case was transferred to this MDL Court. (Doc. 6114) (CTO 106 dated Nov. 30, 2022). In the eight months since, no action appears to have been taken on this case other than it being slated for summary judgment. (*See* Doc. 6787-7, Page 117 of 309.)

In their removal petition, Defendants asserted that BIC was fraudulently joined[1] because "BIC never manufactured or sold any Zantac® products in the United States (or elsewhere), including the product(s) Decedent allegedly ingested." (Doc. 1 at ¶¶ 5, 26.) In short, Defendants' basis for removal was its belief that "an entity that did not manufacture a drug does not owe a duty of care" under Nevada law. (*Id.* at ¶¶ 30, 36.)

---

[1] Defendants did not assert fraudulent *mis*joinder—that is, abuse of joinder rules to include a nondiverse defendant. Rather, they asserted only Plaintiff could not establish a cause of action against BIC.

[ 3 ]

This assertion, in turn, was based on two federal cases interpreting Nevada law: *Baymiller v. Ranbaxy Pharms., Inc.*, 894 F. Supp. 2d 1302, 1310 (D. Nev. 2012) and *Moretti v. Wyeth, Inc.*, No. 2:08-CV-00396-JCMGWF, 2009 U.S. Dist. LEXIS 29550, 2009 WL 749532, at *3 (D. Nev. Mar. 20, 2009). These are the same two cases this Court cited in rejecting other Nevada plaintiffs' innovator and predecessor liability claims at the outset of this MDL. 510 F. Supp. 3d at 1219. Defendants' notice of removal concludes:

> In sum, under Nevada law, **Plaintiffs cannot hold BIC liable for a product made by another manufacturer.** *See In re Zantac*, **510 F. Supp. 3d at 1218-19.** Because all of Plaintiffs' claims require that they sue the party who caused the alleged injury, and BIC could not have manufactured or sold the Zantac® products Decedent purportedly ingested, there is "**no possibility that a state court would find that the complaint states a cause of action**" against BIC. *Grancare*, 889 F.3d at 549. BIC is thus fraudulently joined, and its Nevada citizenship should be disregarded for purposes of removal.

(Doc. 1 at ¶ 36) (emphasis added).

B. <u>A Nevada State Court Rejects the Federal Cases *Baymiller* and *Moretti*, and the Supreme Court of Nevada Refuses to Reverse.</u>

Since that time, a Nevada state court has considered and rejected *Baymiller* and *Moretti*—and it held that nonmanufacturers can be held liable because state common law assigns responsibility for product safety "*wherever* it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." ("Ex. 3") That state court expressly rejected this Court's interpretation of Nevada law. (*Id.*)

GSK filed a writ of prohibition on the issue of personal jurisdiction, which the Supreme Court of Nevada rejected last month. GSK then moved for a rehearing, emphasizing that Nevada's highest court was tacitly extending the duties owed by nonmanufacturers of Zantac. ("Ex. 2.")

[ 4 ]

GSK wrote: "Plaintiffs have twice *conceded*—both in the district court and before this Court—that the decedent never consumed a GSK product." (*Id.*) (emphasis in original). Even so, on August 1, 2023, the Supreme Court of Nevada rejected GSK's rehearing petition 6-1. ("Ex. 1.")

II. LAW.

An MDL Court has the power to remand cases to state courts. *Shellhammer v. Roche Labs., Inc.*, No. 8:07-CV-2365-T-30TBM, 2008 U.S. Dist. LEXIS 111523, at *5 n.5 (M.D. Fla. July 16, 2008) (collecting cases); 16 Moore's Federal Practice - Civil § 107.151 (a transferee Court "may remand only to the state court from which the case was removed").

A. When the Court Lacks Diversity Jurisdiction, Remand is Mandatory.

The removal statute speaks in mandatory terms: "If at *any* time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(e) (emphasis added). An order remanding to state court under this provision is "not reviewable" on appeal. *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007).

B. The Removing Party Must Prove by Clear and Convincing Evidence that There Was "No Possibility" Plaintiff Could Establish a Cause of Action Against the Nondiverse Defendant in State Court.

The removing party must prove, by clear and convincing evidence, that either (1) there is "no possibility" the plaintiff can establish a cause of action against the nondiverse defendant, or (2) the plaintiff has "fraudulently pled jurisdictional facts" to bring the nondiverse defendant into state court. *Stillwell v. Allstate Ins.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

Federal courts do not weigh the merits "beyond determining whether it is an arguable one under state law." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The plaintiff need not "directly" rebut any affidavits. *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (11th Cir. 2011). She has a "lighter burden" of showing the circumstances "might be sufficient" to show liability. *Id.*

Complaints filed in notice pleading states need only be "adequate under traditional state-law notice pleading requirements." *Hampton v. Ga.- Pac. LLC*, No. 11-0363-KD-N, 2011 U.S. Dist. LEXIS 123025, at *14 (S.D. Ala. Oct. 21, 2011). If the state court allows for "vague and conclusory" allegations about what all "Defendants" did, this Court cannot impose higher pleading standards. *Id.* at *14, 19–20.

C. Nevada is a Notice Pleading State That Only Allows Dismissal If the Defendants Prove the Plaintiff Cannot Prevail "Beyond a Doubt."

Nevada is a notice pleading state. *Harris v. State*, 510 P.3d 802, 807 (Nev. 2022). The Court must "liberally construe" pleadings, asking only if the complaint puts Defendants on "adequate notice of the nature of the claim and relief sought." *Id.* (cleaned up). Plaintiffs only need to "broadly recite the 'ultimate facts' necessary" to prove their claims at trial. *Nutton v. Sunset Station, Inc.*, Case No. 62878, 2015 Nev. App. LEXIS 4, *22–23 (Nev. Ct. App. 2015). They need not cite any evidence. *Id.*

The Court may dismiss only if "beyond a doubt," Plaintiffs could prove "no set of facts" at trial that would entitle them to relief. *Buzz Stew, Ltd. Liab. Co. v. City of N. Las Vegas*, 124 Nev. 224, 228 (2008). The Court must not only accept all facts alleged as true—it must also draw all inferences in Plaintiffs' favor. *Harris*, 510 P.3d at 807.

[ 6 ]

  D. <u>Nevada Allows Plaintiffs to State a Claim for "Joint Venture" by Mentioning the Theory and Stating the Nature of the Business the Defendants Carried On.</u>

Nevada imputes the negligence of one member of a joint venture to all other co-venturers. *Radaker v. Scott*, 109 Nev. 653, 660 (1993). Whether Defendants have formed a joint venture is a question of *fact*—not a matter of law, even when the parties have a written agreement. *Posner v. Tassely*, 131 Nev. 1335 (2015). The jury must consider the parties' actions and the nature of their undertaking when determining whether a joint venture exists. *Swensen v. McDaniel*, 119 F. Supp. 152, 154 (D. Nev. 1953).

There is no set formula for determining whether a joint venture exists: Every case must "stand upon its own merits." *Las Vegas Machine & Eng'g Works v. Roemisch*, 67 Nev. 1, 9 (1950). Generally, two companies create a joint venture when they form an "informal partnership" to "conduct some business or enterprise, agreeing to share jointly" in profits and losses. *ECM, Inc. v. Placer Dome U.S.*, No. 96-15966, No. 96-16019, 1997 U.S. App. LEXIS 34851, at *5 (9th Cir. Dec. 10, 1997) (quoting *Bruttomesso v. Las Vegas Metro. Police*, 95 Nev. 151, 154 (1979)).

In Nevada, partnerships may be alleged generally and are not subject to any heightened pleading standards. *See Hay v. Hay*, 100 Nev. 196, 198 (1984); *see also* N.R.C.P. 8–9. Under notice pleading standards, a complaint need not include any specific allegations about profits and losses—identifying the nature of the business is enough. *See, e.g.*, *Swensen*, 119 F. Supp. at 154 (refusing to dismiss a complaint that stated only that Defendants were "jointly constructing a certain building" but said nothing about how profits or losses were divided).

1. *A Joint Venture May Share Either Revenues or Profits.*

By statute, Plaintiffs may make a *prima facie* case for a joint venture between BIPI and BIC if it received a "share of the profits" from Zantac. NRS 87.070(3). If Plaintiffs only show at trial that BIC shared in the "gross returns" (revenues) of the business, this does not "of itself" establish a joint venture. NRS 87.070(3). But neither does it *preclude* the jury from finding the existence of a joint venture: "[W]here parties share in the same revenue stream, the shared-profits element required to establish the existence of a joint venture may be established." 46 Am. Jur. 2d Joint Ventures § 16.

Thus, "[s]ome courts have found that parties who split revenues, rather than profits, satisfy the requirement" of splitting profits. *Est. of Antonio v. Pedersen*, No. 5:11-cv-41, 2012 U.S. Dist. LEXIS 174987, at *23 (D. Vt. Dec. 11, 2012) (collecting authorities). The Nevada District court where this case was originally filed has found a joint venture when the parties shared only a revenue stream, rather than profits after expenses. *Kilyushik v. Palace*, Case No. A-17-764171-C (8th Jud. Dist.) 2019 Nev. Dist. LEXIS 848, *3 (finding a joint venture even though the parties agreed to share revenue only, no matter what each spent on marketing and advertising).

2. *Nevada Does Not Require Any Specific Allocation of Losses.*

An agreement to share losses need not be express—Courts imply an agreement to share losses from an agreement to share profits. 48A C.J.S. Joint Ventures § 14 (Dec. 2019) (collecting authorities). The Supreme Court of Nevada has never required that parties specifically provide for how losses are to be allocated. *See Radaker*, 109 Nev. at 659. And if the undertaking is likely to lose only "time and labor," then any agreement to share

profits makes it a joint venture, even if losses are never mentioned. *Bader Farms v. Monsanto Co.*, No. MDL No. 1:18md2820-SNLJ, 2020 U.S. Dist. LEXIS 19478, at *30 (E.D. Mo. Feb. 3, 2020).

What is more, Nevada does not require joint venturers to bear losses equally, or even in proportion to their investment. Instead, joint venturers may agree to bear losses however they like, even "eliminating the liability of particular partners as to losses." *Las Vegas Mach. & Eng'g Works v. Roemisch*, 67 Nev. 1, 9 (1950); *see also Bader Farms*, 2020 U.S. Dist. LEXIS 19478 at *30 (citing authorities).

### III. ARGUMENT: AFTER THE SUPREME COURT OF NEVADA'S REFUSAL TO OVERTURN THE *ELABBASSY* DECISION, PLAINTIFF'S CLAIMS AGAINST BIC ARE NOT FRAUDULENTLY JOINED.

The notice of removal in this case focused almost exclusively on how the decedent never took a product manufactured by BIC. But as shown by the trial Court's decision in *Elabbassy*, this is not dispositive under Nevada law. Because there is at least some possibility that Nevada state courts will continue to allow nonmanufacturers of Zantac to be held liable for cancer, nothing in Defendants' notice of removal shows that Plaintiff's conduct in naming BIC was fraudulent. *Edenfield v. Hiscox, Inc.*, No. 4:22-cv-146, 2022 U.S. Dist. LEXIS 211647, at *16 (S.D. Ga. Nov. 22, 2022) (holding that the Court is limited to checking the state court complaint for "obviously fraudulent or frivolous" claims).

The Supreme Court of Nevada could have overturned the *Elabbassy* trial Court on the merits if it wanted to do so. *See Diaz v. Eighth Jud. Dist. Court*, P.2d 50, 54 (Nev. 2000) (holding that writ relief is appropriate when "an important issue of law needs clarification" and a decision would serve public policy).

But here, the Supreme Court of Nevada declined to interfere with a trial court decision implying a duty on nonmanufacturers. Thus, Plaintiff had at least an "arguable" reason to join BIC under state law—and joinder was not fraudulent.

While Defendants did attach a declaration to their notice of removal stating that BIC was a parent or holding company, the affiant did not swear that BIC could not be held liable under *any* theory. The Complaint—which must be judged under Nevada's relaxed notice pleading standards—alleged that all Defendants "are liable for the acts, omissions and tortious conduct" of their "successors and/or predecessors in interest" and that they were liable under "co-venturer" and "alter ego" theories. (Doc. 1-3 at ¶ 34.) The Complaint further alleges sharing of losses because "each such Defendants has the ability to assume the risk spreading role of each such alternate entity." (*Id.*)

The Complaint also identifies the nature of the business carried on: "were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of Nevada, including in Clark County, either directly or indirectly, through third parties or related entities, Ranitidine-Containing Drugs." (*Id.* at ¶ 35.)

This type of group pleading is sufficient in notice pleading state courts to raise joint venture theories of liability. *See, e.g.*, *MAR Oil Co. v. Korpan*, No. 3:11CV1261, 2014 U.S. Dist. LEXIS 89747, at *32 (N.D. Ohio Apr. 18, 2014) (analyzing old Complaint under the former pleading standards in place at the time it was filed, and holding that it satisfied notice pleading for a joint venture theory because it alleged Defendants acted "individually and through their entities" at all times).

[ 10 ]

Thus, there remains some possibility that BIC could be held liable for the acts of Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"). To make a *prima facie* case of joint venture, Plaintiff would only need to establish that BIC received a "share of the profits" from Zantac. NRS 87.070(3). Because the inquiry is flexible, and no one fact is determinative, nothing in Defendant's one-page, 13-paragraph declaration precludes Plaintiff succeeding on a joint venture theory. (Ex. 1 at Ex. B, Pomer Decl. ¶¶ 1–13.)

Mr. Pomer's short and carefully worded affidavit is silent about the questions relevant to a joint venture analysis, including whether BIC shared in the revenue stream generated by Zantac; associated itself with BIPI; or had joint employees with BIPI. The Pomer Declaration states merely that BIC "does not operate or do business under the name of BIPI"; "hold itself out as the agent" of that company; or "control the manner in which BIPI manufactured, distributed, and/or sold OTC Zantac from December 2006 through December 2016." (*Id.* at ¶¶ 8–13.) The companies also maintain "separate financial records and financial accounts." (*Id.* at ¶ 13.)

Plaintiff need not refute this testimony. Rather, Plaintiff has a "lighter burden" of showing the circumstances "might be sufficient" to show liability despite the defendants' "testimony to the contrary." *Taylor*, 436 F. App'x at 892. This she can do. As one Court observed, BIC and BIPI have shared officers, and the "board of directors" of Boehringer Ingelheim "has been described as coordinating the worldwide activities of all the Boehringer Ingelheim corporate family." *ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F. Supp. 2d 268, 270 (D. Del. 2001). The corporate R&D committee "determines what research and development projects should be pursued and by whom." *Id.*

[ 11 ]

Especially given that Nevada follows a "less stringent" notice pleading standard, there is at least some possibility that a Nevada court would extend liability to nonmanufacturer BIC by either (1) a joint venture theory, holding it responsible for BIPI's conduct, or (2) following the trial Court's decision in *Elabbassy*, implying a duty on nonmanufacturers who are in a position to make the public safer. *See Landgrave v. Sam's W., Inc.*, No. 2:21-CV-1684 JCM (NJK), 2022 U.S. Dist. LEXIS 155, at *6 (D. Nev. Jan. 3, 2022) (holding that remand was appropriate, given Nevada's lax pleading standards).

## IV. CONCLUSION.

Defendants cannot show—and have not shown—that joinder of BIC was fraudulent. The Supreme Court of Nevada has recently refused to set aside a trial court case imposing a duty on nonmanufacturers. Plaintiff's predecessor liability claim against non-diverse Defendant BIC otherwise satisfies Nevada's liberal notice pleading standard. This Court lacks jurisdiction and must remand to state court.

Dated:  August 4, 2023

**THE702FIRM INJURY ATTORNEYS**

*/s/ Michael Kane, Esq.*

MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
BRANDON A. BORN, ESQ.
Nevada Bar No.: 15181
8335 West Flamingo Road
Las Vegas, Nevada 89147
*Attorneys for Plaintiff*