UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) <br> PRODUCTS LIABILITY LITIGATION | MDL NO. 2924 <br> 20-MD-2924 |
| _____/ | JUDGE ROBIN L. ROSENBERG <br> MAGISTRATE JUDGE BRUCE E. REINHART |

**THIS DOCUMENT RELATES TO:**

*Harrelson, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc, et al.* 9:22-cv-81886

**DEFENDANTS' OPPOSITION TO PLAINTIFF LORI HARRELSON'S AMENDED OBJECTION TO FINAL ENTRY OF JUDGMENT AND MOTION TO REMAND**

DATED: August 15, 2023

Defendants Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), Boehringer Ingelheim USA Corporation (together, "BI"), GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc. (together, "GSK"), Pfizer Inc. ("Pfizer"), Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., Chattem, Inc. (together, "Sanofi"), and Patheon Manufacturing Services LLC ("Patheon") (collectively, the "Manufacturer Defendants"), by and through their undersigned counsel, respectfully submit this Opposition to Plaintiff Lori Harrelson's Amended Objection to Final Entry of Judgment and Motion to Remand. Dkt. 6874 ("Motion").

## INTRODUCTION

The Eleventh Circuit has emphasized that "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in Federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005). As Plaintiff's Complaint makes clear, this product liability action (like the thousands of other cases before this Court) is directed at the Manufacturer Defendants who designed, manufactured, and/or marketed the Zantac that Decedent Richard Harrelson ("Decedent") allegedly ingested. *See* Case No. 9:22-cv-81886 (MDL individual case docket), Dkt. 1-3 ¶¶ 6–7 ("Compl."). This action was originally brought in Nevada state court because—while the Manufacturer Defendants are not citizens of Nevada—in an attempt to defeat diversity jurisdiction, Plaintiff also named Boehringer Ingelheim Corporation ("BIC") as a defendant. *Id.* ¶ 15. BIC is a Nevada-based holding company that has never manufactured, marketed, or sold any Zantac products in the United States (or anywhere else), including the products Decedent allegedly ingested. Case No. 9:22-cv-81886, Dkt. 1-4 ¶ 7 ("Pomer Decl."). In November 2022, the Manufacturer Defendants removed this case to federal court on the grounds that BIC is fraudulently joined because Plaintiff cannot assert any viable action against BIC for alleged

injuries arising out of the manufacturing and sale of OTC Zantac when BIC *never* manufactured or sold OTC Zantac. *See* Case No. 9:22-cv-81886, Dkt. 1 (Notice of Removal, "NOR").

In the nearly nine months since the Manufacturer Defendants removed this case, Plaintiff never sought to challenge that removal—whether in the Nevada federal court, the Judicial Panel on Multidistrict Litigation ("JPML"), or this Court. Confusingly, Plaintiff now argues that a recent two-word Nevada Supreme Court order summarily denying a motion for rehearing somehow strips this Court of its subject matter jurisdiction with respect to this case. As Plaintiff would have it, this order supports a finding that "there is a chance" that BIC, as a non-manufacturer, could be held liable for the acts of the other BI entities that *did* manufacture and sell OTC Zantac. Mot. at 2. Plaintiff is wrong for several reasons.

First, the Nevada Supreme Court order on which Plaintiff relies did *not* resolve the question of whether Nevada law recognizes claims against a *non-manufacturer* of OTC Zantac—nor was that question ever even before the Nevada Supreme Court. The only question before the Nevada Supreme Court was whether a trial court could exercise personal jurisdiction over GSK as a *prior manufacturer* of OTC Zantac if the plaintiff purchased and used OTC Zantac only after GSK had relinquished the rights to market and sell that product. Order Denying Pet. at 2 (attached hereto as **Exh. A**). The Nevada Supreme Court, however, did not reach that question, and instead concluded that personal jurisdiction existed as to GSK because the plaintiff also alleged use of prescription Zantac, and GSK *manufactured that product*. *Id.* at 4–5.

Second, even if the Nevada Supreme Court had implicitly or explicitly found that *a prior manufacturer* of OTC Zantac could be held liable under Nevada law even when the plaintiff did not ingest that manufacturer's product (which it unequivocally did not), such a holding plainly would not apply to BIC—a company that *never* manufactured, marketed, or sold Zantac.

2

Finally, Plaintiff's haphazard attempt to imply that BIC may be held liable under a joint-venture and/or alter ego theory of liability is unsupported by Plaintiff's Complaint. Plaintiff failed to plead "any allegations in support of his alter ego claim," *Friedman v. United States*, 2019 WL 121965, at *10 (D. Nev. Jan. 7, 2019), merely proclaiming—without any specific allegations vis-à-vis BIC—that **all defendants, including the unnamed Doe and Roe defendants**, are allegedly alter egos and joint venturers of each other, *see* Compl. ¶ 34. Even if Plaintiff did plead an alter ego or joint venture theory (which he did not not), principles of corporate separateness preclude this theory of liability as to BIC. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998). BIC cannot be held "liable for the action of [its BI affiliates] simply by dint of the corporate relationship." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010).

Because Plaintiff fails to allege any viable cause of action against BIC, this Court should find that BIC is improperly joined and deny Plaintiff's Motion.

## BACKGROUND

Plaintiff Lori Harrelson, individually and as representative of the estate of Decedent, originally filed this action on September 9, 2022 in the District Court of Clark County, Nevada. The thrust of this product liability action is that Decedent allegedly ingested Zantac (and its various generic forms) and, as a direct and proximate result, developed esophageal cancer, ultimately resulting in his death. Compl. ¶¶ 6–7.

On November 15, 2022, the Manufacturer Defendants timely removed this action to the District of Nevada on the basis of diversity jurisdiction. *See* NOR. On November 30, 2022, the case was transferred by the JPML to this Court. Dkt. 1133, Transfer Order. Plaintiff did not oppose transfer of this case to the MDL nor move for remand until the instant motion to remand was filed on August 4, 2023.

**LEGAL STANDARD**

A defendant is improperly joined and its presence in the lawsuit may be disregarded where "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). To establish fraudulent joinder, "the removing party has the burden of proving by clear and convincing evidence that . . . there is no possibility the plaintiff can establish a cause of action." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

Courts make this determination "based on the plaintiff's pleadings at the time of removal." *Crowe*, 113 F.3d at 1538; *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994). Courts may also consider evidence submitted by the parties, *Legg*, 428 F.3d at 1322–23, in which case "[t]he proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment." *Id*. While questions of "***disputed***" fact are to be resolved in a plaintiff's favor, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* at 1323 (emphasis in original). Courts may not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.*

**ARGUMENT**

Plaintiff's Motion does not and cannot dispute that BIC never manufactured, marketed, or sold the OTC Zantac that Decedent allegedly ingested (or any Zantac products at all). Instead, Plaintiff claims that a recent Nevada Supreme Court order leaves open "at least some possibility that Nevada state courts will continue to allow nonmanufacturers of Zantac to be held liable." Mot. at 9. Thus, Plaintiff claims, "there is a chance that [Plaintiff] could establish the cause of action she pled against BIC in Nevada state court." Mot. at 2. The problem for Plaintiff, however, is that

4

the Nevada Supreme Court's order had nothing to do with the liability of ***non-manufacturers*** of OTC Zantac, and thus it has absolutely no bearing on the bases for removal in this case. BIC was and continues to be fraudulently joined.

### A. The Nevada Supreme Court's Order Is Irrelevant to Plaintiff's Claims Against BIC.

Plaintiff's Motion mispresents and misapplies the very order on which the Motion is based. The Nevada Supreme Court order Plaintiff points to relates to that court's prior denial of a writ petition taken by GSK. In that petition, GSK sought review of a trial court's ruling that it could exercise personal jurisdiction over GSK for claims arising out of GSK's role as a ***prior manufacturer*** of OTC Zantac, despite that plaintiff only alleged ingestion of OTC Zantac ***after*** GSK had relinquished the rights to market and sell that product. *See* Mot., Exh. 2 at 2. The Nevada Supreme Court denied that petition, finding that it did not need to reach the question of whether personal jurisdiction existed with respect to GSK's role as a prior manufacturer of OTC Zantac because the plaintiff's complaint sufficiently alleged use of prescription Zantac during the time that "GSK marketed and sold" that product. *See* **Exh. A** at 4–5. Thus, the Nevada Supreme Court held that the trial court could exercise personal jurisdiction over GSK ***as a direct manufacturer and seller*** of a product that plaintiff ingested. *Id*.

Thereafter, GSK moved for rehearing based on the plaintiff's repeated representations during briefing and argument that Decedent did not, in fact, use a GSK product. *See generally* Mot., Exh. 2. The order that Plaintiff points to is the Nevada Supreme Court's two-word summary denial of GSK's motion for rehearing, which provided no written decision opining on the basis for the court's ruling. *See* Mot., Exh. 1.[1] Contrary to Plaintiff's claim here, the Nevada Supreme

---

[1] One justice dissented from the court's denial of the petition for rehearing and stated that she would "order an answer to the petition." Mot., Exh. 1.

5

Court *never* endorsed the trial court's decision "implying a duty on nonmanufacturers." Mot. at 10. It merely held that the plaintiff's allegations of direct use were sufficient to support a finding of personal jurisdiction and that it would not reconsider that ruling.[2] Plaintiff cannot transform the court's denial of the petition for rehearing from an affirmation of its prior order into an order that endorses a theory of liability that the court never ruled on in the first place.

Moreover, even if the Nevada Supreme Court's denial of GSK's petition for rehearing could be fairly interpreted as permitting claims against a ***prior manufacturer*** of OTC Zantac (which it cannot), Plaintiff still could not state a claim against BIC—a mere holding company that ***never manufactured or sold*** OTC Zantac. *See* Pomer Decl. ¶¶ 5–6. Plaintiff misleadingly suggests that the trial court found that a "nonmanufacturer" may be held liable for injuries arising out of a defective product. Mot. at 2. Not so. The trial court (erroneously) concluded that GSK could be held liable as a prior manufacturer of OTC Zantac because "a brand-name manufacturer's sale of the rights to a drug does not, as a matter of law, terminate its liability for injuries foreseeably and proximately caused by deficiencies present in the warning label prior to sale." Mot., Exh. 3 at 9–10.[3] Thus, even if the Nevada Supreme Court had endorsed the trial court's ruling (which it did not), that decision held only that a prior NDA-holder remained liable for alleged injuries arising out of a plaintiff's use of a subsequent NDA-holder's product. BIC indisputably never

---

[2] The court's decision on these narrow grounds (which GSK disputes)—while leaving all other issues undecided—is consistent with its "general . . . practice" of "avoiding legal and constitutional issues if unnecessary to resolve the case at hand." *Mona v. Eighth Jud. Dist. Ct. of State in & for Cnty. of Clark*, 132 Nev. 719, 724, 380 P.3d 836, 840 (2016).

[3] As this Court is aware, "predecessor liability" claims against a prior NDA-holder are premised on a further extension of an already novel theory of "innovator liability" (rejected in the "overwhelming" majority of jurisdictions). *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d 1175, 1195 (S.D. Fla. 2020) (emphasis added). Under the theory of innovator liability, a brand-name manufacturer may be held liable for failure to make labeling changes in the brand-name product's label, even if the plaintiff only ever ingested a generic version of the product. *Id.* at 1191–92.

manufactured, marketed, or sold OTC Zantac, much less held the NDA for OTC Zantac. *See* Pomer Decl. ¶¶ 5–6. Plaintiff therefore cannot state a viable claim against BIC even under an untenable "innovator" or "predecessor" liability theory.

### B. BIC Is Not Liable Under an Alter Ego or Joint Venture Theory of Liability.

Plaintiff suggests—for the first time—that there is "some possibility that BIC could be held liable for the acts of Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI")" under a "joint venture theor[y] of liability." Mot. at 11. In support of this argument, Plaintiff points to a single vague paragraph in the Complaint alleging that ***every single named and unnamed defendant is the alter ego and joint venturer of each other***:

> Plaintiffs are informed and believe and allege that at all times mentioned herein, Zantac Manufacturer Defendants and Zantac Retail Defendants, DOES I through X and ROE BUSINESS ENTITIES XI through XX, inclusive, and each of them, were also known as, formerly known as and/or were the successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, a parent, a subsidiary (wholly or partially owned by, or the whole or partial owner), affiliate, partner, co-venturer, merged company, alter egos, agents, equitable trustees and/or fiduciaries of and/or were members in an entity or entities engaged in the funding, researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, contracting others for marketing, warranting, rebranding, manufacturing for others, packaging and advertising of Ranitidine-Containing Drugs. Zantac Manufacturer Defendants and Zantac Retail Defendants, DOES I through X and ROE BUSINESS ENTITIES, inclusive, and each of them, are liable for the acts, omissions and tortious conduct of its successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, parent, subsidiary, affiliate, partner, co-venturer, merged company, alter ego, agent, equitable trustee, fiduciary and/or its alternate entities in that Zantac Manufacturer Defendants and Zantac Retail Defendants, DOES I through X and ROE BUSINESS ENTITIES XI through XX, inclusive, and each of them, enjoy the goodwill originally attached to each such alternate entity, acquired the assets or product line (or portion thereof), and in that there has been a virtual destruction of Plaintiffs' remedy against each such alternate entity, and that each such Defendants has the ability to assume the risk spreading role of each such alternate entity.

Compl. ¶ 34. Incredibly, Plaintiff claims that this boilerplate language, which never mentions BIC or BIPI, much less alleges any facts regarding their relationship, is "sufficient in notice pleading

7

state courts to raise joint venture theories of liability." Mot. at 10 (citing *MAR Oil Co. v. Korpan*, 2014 U.S. Dist. LEXIS 89747, at *32 (N.D. Ohio Apr. 18, 2014)).

While "Nevada is a notice-pleading jurisdiction and liberally construes pleadings to place into issue matter which is fairly noticed to the adverse party," *Chavez v. Robberson Steel Co.*, 94 Nev. 597, 599, 584 P.2d 159, 160 (1978), a complaint must still "set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has adequate notice of the nature of the claim and relief sought." *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transportation Comm'n of Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 456 (Nev. App. 2022). Thus, even under Nevada's liberal pleading standard, Nevada courts require that a complaint contain "factual allegations" to "plead the elements of an alter-ego theory." *Hung v. Berhard*, 138 Nev. Adv. Op. 50, 513 P.3d 1285, 1289 (Nev. App. 2022).[4] Outside of this single paragraph that broadly and confusingly claims that every named and unnamed defendant is the alter ego or joint venturer of the other, the Complaint fails even to allege that BIC *is* the alter ego or joint venturer of BIPI; it certainly does not plead any factual allegations in support of such a theory.[5]

Further, even if the Court were to construe Plaintiff's vague, boilerplate language as sufficient notice of Plaintiff's alter ego or joint venture claims, Mr. Pomer's Declaration submitted in support of the Manufacturing Defendants' Notice of Removal disproves Plaintiff's claims. Mr.

---

[4] To plead alter ego status in Nevada, a plaintiff must allege "that the subsidiary corporation is so organized and controlled, and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 95 Nev. 463, 466, 596 P.2d 227, 229 (1979) (citation omitted); *see also Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 635, 189 P.3d 656, 660 (2008). To plead a joint venture, a plaintiff must allege "a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." *Bruttomesso v. LVMPD*, 95 Nev. 151, 154, 591 P.2d 254, 256 (1979).

[5] While Plaintiff criticizes Pomer's Declaration as "silent about the questions relevant to joint venture analysis," (Mot. at 11), it is actually Plaintiff's Complaint that suffers this fatal flaw.

8

Pomer's Declaration makes clear that BIC is a completely separate and distinct legal entity from BIC in both form and function. *See* Pomer Decl. ¶¶ 4, 5, 9, 10, 11, 12, 13 (attesting, *inter alia*, that "BIC maintains separate financial records and financial accounts from BIPI" and "BIC does not control its subsidiaries, including BIPI, and did not control the manner in which BIPI manufactured, distributed, and/or sold OTC Zantac . . . .").[6] The well-settled rule is that "a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 60 (1998). BIC, as a mere holding company, cannot be liable for the alleged conduct of BIPI "simply by dint of the corporate relationship." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 341 n.44.

Because Plaintiff fails to plausibly plead any causes of action against BIC, BIC is improperly joined, and this Court maintains diversity jurisdiction over this action.

## CONCLUSION

For these reasons and those stated in the Notice of Removal, the Court should deny Plaintiff's Amended Objection to Final Entry of Judgment and Motion to Remand.

Dated: August 15, 2023

                                                            Respectfully submitted,

                                                            By: */s/ Mark Cheffo*
                                                            Mark Cheffo
                                                           **DECHERT LLP**
                                                           Three Bryant Park
                                                           1095 Avenue of the Americas
                                                           New York, NY 10019
                                                           Tel: (212) 689-3500
                                                           Fax: (212) 689-3590

---

[6] Plaintiff argues that the declaration is insufficient to overcome the vaguely pleaded allegations of the Complaint because it "did not swear that BIC could not be held liable under any theory." Mot. at 10. But it would be wholly improper for any declarant to include such a legal conclusion in his or her declaration. *See Motyl v. Franklin Templeton Co., LLC*, 2014 WL 1413434, at *3 n.3 (S.D. Fla. Apr. 11, 2014) ("declin[ing] to consider [an] affidavit in resolving Plaintiff's Motion for Remand" because it "offer[ed] impermissible legal conclusions").

mark.cheffo@dechert.com

*Attorney for Defendants GlaxoSmithKline LLC and GlaxoSmithKline Holdings (Americas) Inc.*

/s/ Anand Agneshwar
Anand Agneshwar
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Attorney for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

/s/ Andrew T. Bayman
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com

*Attorney for Defendants Boehringer Ingelheim Pharmaceuticals, Inc. and Boehringer Ingelheim USA Corporation*

/s/ Joseph G. Petrosinelli
Joseph G. Petrosinelli
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Attorney for Defendant Pfizer Inc.*

        */s/ John D. Garrett*
        John D. Garrett
        BOWMAN AND BROOKE LLP
        2901 Via Fortuna Drive, Suite 500
        Austin, Texas 78746
        Telephone: (512) 874-3832
        Email: john.garrett@bowmanandbrooke.com


        Christopher R. Carton
        BOWMAN AND BROOKE LLP
        317 George Street, Suite 320
        New Brunswick, NJ  08901
        Telephone: (201) 577-5175
        Email: chris.carton@bowmanandbrooke.comm

        *Attorney for Defendant Patheon Manufacturing Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2023, the foregoing Opposition to Plaintiff's Amended Objection to Final Entry of Judgment and Motion to Remand was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ Mark Cheffo*
Mark Cheffo