# Exhibit 1

Writ Petition in *AirBNB, Inc.v. Eighth Jud. Dist. Ct.*, Case No. 87079, Showing Pleading Standards for Joint Ventures in Nevada are Currently Disputed

# IN THE SUPREME COURT OF THE STATE OF NEVADA

---

***Supreme Court Case No.***

---

AIRBNB, INC.,

*Petitioner,*

v.

THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE GLORIA STURMAN, DISTRICT JUDGE, DEPT. XXVI,

*Respondents,*

and

BRYAN LOVETT,

*Real Party in Interest.*

---

## PETITION FOR WRIT OF MANDAMUS

---

Electronically Filed
Aug 03 2023 11:51 AM
Elizabeth A. Brown
Clerk of Supreme Court

Jordan T. Smith, Esq., Bar No. 12097
Daniel R. Brady, Esq., Bar No. 15508
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

*Attorneys for Petitioner*

**RULE 26.1 DISCLOSURE**

The undersigned counsel of record certifies that the foregoing are persons or entities as described in NRAP 26.1(a), and must be disclosed. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

Petitioner Airbnb Inc. is a publicly held corporation. It has no parent corporations and no publicly held company owns 10% or more of its stock.

Jordan T. Smith and Daniel R. Brady, of the law firm of Pisanelli Bice PLLC, will appear for Petitioner in this Court. The law firms of McDonald Carano LLP, O'Melveny & Myers LLP, P.K. Schrieffer LLP, and Dennett Winspear LLP are law firms whose partners or associates have appeared for Petitioner in the district court and have previously appeared in this Court.

There are no other persons or entities described in NRAP 26.1(a) that need to be disclosed.

DATED this 3rd day of August, 2023.

PISANELLI BICE PLLC

By:    */s/ Jordan T. Smith*
Jordan T. Smith, Esq., Bar No.12097
Daniel R. Brady, Esq., Bar No. 15508
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

*Attorneys for Petitioner*

i

## TABLE OF CONTENTS

RULE 26.1 DISCLOSURE ........................................................................................... i

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iii

ROUTING STATEMENT .......................................................................................... vi

ISSUE PRESENTED .................................................................................................. vii

I.      INTRODUCTION AND RELIEF SOUGHT ………………………………1

II.     STATEMENT OF FACTS ……………………………………………………3

        A.      Airbnb's Online Marketplace …………………...……………………3

        B.      Lovett is Injured Near a Listing Booked on Airbnb's Platform………5

        C.      Lovett and Rice Sue Airbnb …………………...……………………6

        D.      Airbnb Moves to Dismiss …………………...……………………..7

III.    REASONS WHY THE REQUESTED WRIT SHOULD ISSUE …………..9

        A.      The Court Should Entertain this Writ Petition ………………………9

        B.      The Court Should Issue a Writ of Mandamus ………………………13

IV.     CONCLUSION …………………………………………………………28

VERIFICATION/DECLARATION ........................................................................29

CERTIFICATE OF COMPLIANCE........................................................................30

CERTIFICATE OF SERVICE .................................................................................32

## TABLE OF AUTHORITIES

**Cases**

*Airbnb, Inc. v. City & Cnty. of San Francisco*, 217 F. Supp. 3d 1066
(N.D. Cal. 2016)....................................................................................20

*Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113 (D. Mass. 2019).....................21

*Airbnb, Inc. v. Rice*, 138 Nev., Adv. Op. 65, 518 P.3d 88 (2022)................... passim

*Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 407 P.3d 702 (2017)...........11

*Baxter v. Dignity Health*, 131 Nev. 759, 357 P.3d 927 (2015) ...............................18

*B.P. v. Balwani*, 2021 WL 4077008 (9th Cir. Sept. 8, 2021) ...................................17

*Bruttomesso v. LVMPD*, 95 Nev. 151, 591 P.2d 254 (1979)....................................16

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003)..........25

*Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008)........13

*Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767
(E.D. La. 2017)....................................................................... 15, 18, 19

*Cote H. v. Eighth Jud. Dist. Ct.*, 124 Nev. 36, 175 P.3d 906 (2008)......................13

*D.R. Horton, Inc. v. Eighth Jud. Dist. Ct.*, 123 Nev. 468, 168 P.3d 731 (2007).....12

*Esposito v. Airbnb Action, LLC*, 2022 WL 2980700 (W.D. Ark. July 27, 2022)
.................................................................................................. passim

*Fed. Nat'l Mortg. Ass'n v. Eighth Jud. Dist. Ct.*, 2022 WL 19697697
(Nev. Dec. 22, 2022)...........................................................................11

*Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 291 P.3d 150 (2012) ...............13

*Freeman Expositions, LLC v. Eighth Jud. Dist. Ct.*, 138 Nev., Adv. Op. 77,
520 P.3d 803 (2022)...........................................................................10

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019)... 3, 20

*Hoy v. Jones*, 2020 WL 2798017 (D. Nev. May 30, 2020) .....................................13

*Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 179 P.3d 556 (2008)........................................................................10

*Jackson v. Airbnb, Inc,*, 2022 WL 16752071 (C.D. Cal. Nov. 4, 2022).................................................... 14, 25, 26, 27

*Jackson v. Airbnb, Inc.*, 2023 WL 2292598 (C.D. Cal. Feb. 2, 2023) ...................18

*Johnson v. Travelers Ins. Co.*, 89 Nev. 467, 515 P.2d 68 (1973)...........................17

*Johnston v. De Lay*, 63 Nev. 1, 158 P.2d 547 (1945)..............................................16

*King v. Pleasant 30 LLC*, 2022 WL 12827986 (N.Y. Sup. Ct. Oct. 6, 2022) ..........3

*Klabacka v. Nelson*, 133 Nev. 164, 394 P.3d 940 (2017).......................................16

*Lafayette Bank & Tr. Co. v. Price*, 440 N.E.2d 759 (Ind. Ct. App. 1982)....... 15, 16

*Mangeris v. Gordon*, 94 Nev. 400, 580 P.2d 481 (1978) .......................................26

*Martinez Guzman v. Second Jud. Dist. Ct.*, 136 Nev. 103, 460 P.3d 443 (2020) ...10

*McClure v. Stiles*, 2022 WL 130732 (Nev. Jan. 13, 2022)................................ 15, 21

*MG & S Enter., LLC v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 4480776 (Nev. App. Sept. 29, 2017) ........................................................................21

*Motenko v. MGM Dist., Inc.*, 112 Nev. 1038, 921 P.3d 933 (1996).......................11

*Nelson v. Burr*, 138 Nev., Adv. Op. 85, 521 P.3d 1207 (2022) .............................13

*Nolan v. Detroit Edison Co.*, 991 F.3d 697 (6th Cir. 2021) ...................................21

*Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 623 P.2d 981 (1981) .........................18

*Otak Nev., LLC v. Eighth Jud. Dist. Ct.*, 129 Nev. 799, 312 P.3d 491 (2013)........11

*PetSmart, Inc. v. Eighth Jud. Dist. Ct.*, 137 Nev. 726, 499 P.3d 1182 (2021) passim

*Radaker v. Scott*, 109 Nev. 653, 855 P.2d 1037 (1993) .................................. passim

*Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 221 P.3d 1276 (2009).................................................................. 14, 28

iv

*Scialabba v. Brandise Const. Co.*, 112 Nev. 965, 921 P.2d 928 (1996) .................14

*Selden v. Airbnb, Inc.*, 4 F.4th 148 (D.C. Cir. 2021) .............................. 3, 19, 20, 22

*Suarez v. Longwood Assocs.*, 658 N.Y.S.2d 841 (App. Div. 1997) ........................26

*Thai v. Stang*, 263 Cal. Rptr. 202 (Ct. App. 1989) ...................................................26

*Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 327 P.3d 518 (2014) ...............17

*Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023) ....................................... 12, 24, 27

**Statutes**

NRS 34.160 ..................................................................................................................9

NRS 34.170 ..................................................................................................................9

**Rules**

NRAP 17(a)(11)-(12) ................................................................................................ vii

NRCP 8 .......................................................................................................................17

**Constitutional Provisions**

Nev. Const. art. VI, § 4(1) ...........................................................................................9

## ROUTING STATEMENT

The Supreme Court should retain this matter because it raises an issue of statewide public importance involving the application of common-law negligence principles to online marketplaces like Petitioner Airbnb Inc. The answer to the question presented may also affect Nevada's tourism and related industries. NRAP 17(a)(11)-(12).

**ISSUE PRESENTED**

1.      As a matter of law, does an online marketplace which facilitates the ability for private hosts of rental properties to connect to guests who are searching for short-term rentals owe a duty to protect members of the public from drive-by shootings perpetrated by unknown third parties near an accommodation booked on the online marketplace under a joint venture or negligent undertaking theory of liability?

## I.    INTRODUCTION AND RELIEF SOUGHT

Real Party in Interest Bryan Lovett was wounded in a drive-by-shooting as he and a friend walked down a street approaching an (alleged) party thrown at an Airbnb listing. As this Court recently observed in a related decision in this case involving Lovett's friend (and co-plaintiff), Petitioner Airbnb, Inc. provides an online marketplace where homeowners, or "hosts," and "guests" who are interested in booking the host's property (a "listing") can connect. *Airbnb, Inc. v. Rice*, 138 Nev., Adv. Op. 65, 518 P.3d 88 (2022). Airbnb does not own or control the properties that hosts list, but instead allows hosts and guests to connect with each other to transact, make payments, and communicate. Airbnb does not control who guests may invite to a listing nor who happens to drive by down the street. Airbnb's platform does not set prices or determine availability, as those decisions are made instead by the host, who decides whether to list her accommodation and on what terms.

Lovett's unknown assailant in this drive-by shooting near the listing has not been apprehended. Lovett—who was not connected to Airbnb as either a booking or registered guest—sued Airbnb, the hosts, and others for negligence-based claims. Airbnb moved to dismiss. Applying well-established tort principles, Airbnb argued that online marketplaces—just like private individuals—owe no duty to warn about, or prevent, third-party criminal conduct absent exceptions that do not apply (and, in

1

one instance, was not even alleged) in this case. The drive-by-shooting was not foreseeable as a matter of law, and Airbnb neither assumed a duty toward Lovett nor had a special relationship with him. Instead, both he and the assailant were strangers to Airbnb.

The district court granted Airbnb's motion on the negligence per se and respondeat superior claims, recognizing that Lovett did not plead either a statute or ordinance that Airbnb violated or that any of the parties were agents/employees of Airbnb. However, as to the negligence and negligent-security claims, the district court observed that this is a "very interesting industry" that involves "evolving concepts of liability under Nevada law." It denied Airbnb's motion on two theories. First, the district court surmised that Airbnb might be a "joint venturer" with its hosts despite Lovett's failure to plead more than superficial legal conclusions on this point. Second, the district court posited that Airbnb may have voluntarily undertaken a duty to strangers in the neighborhood of the incident even though this theory appears nowhere in Lovett's complaint.

The district court's ruling is clearly erroneous under both well-established negligence principles and Airbnb's undisputed Terms of Service, which Lovett relied on in his complaint and briefing. Online marketplaces owe no duty to safeguard the general public from senseless violence by other members of the public. The Terms of Service undeniably foreclose any "joint venture" with Airbnb and hosts or any

2

voluntary undertakings toward strangers like Lovett. Lovett's complaint does not adequately plead either of those theories in any event. Thus, Airbnb's right to a writ of mandamus directing dismissal is clear, indisputable, and requires no discovery or factual development.

Issuing mandamus will reiterate important areas of law and further significant public policy interests beyond the parties to the Petition. If left standing, the district court's improvised view of duty, foreseeability, joint venture, and voluntary undertaking threatens to disrupt both underlying tort law principles and the tourism industry that is so vital to this State. Therefore, this Court should entertain this Petition and issue a writ of mandamus directing the district court to dismiss Lovett's complaint against Airbnb.

## II.   STATEMENT OF FACTS

### A.   Airbnb's Online Marketplace.

Airbnb is an online marketplace for "guests" seeking accommodations and "hosts" offering accommodations to connect. *King v. Pleasant 30 LLC*, 2022 WL 12827986, at *2 (N.Y. Sup. Ct. Oct. 6, 2022); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 679 (9th Cir. 2019); (PA 4). While "Airbnb facilitates the marketplace for property rentals," it "is otherwise not involved in the interaction between a host and guest." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 152 (D.C. Cir. 2021).

3

As this Court already observed in this case, Airbnb's Terms of Service ("TOS") govern the relationships among Airbnb, hosts, and guests. *Rice*, 518 P.3d at 89; (PA 75.) All users acknowledge that, as the online marketplace provider, Airbnb does not own, control, or manage any listing. (PA 76.) "Hosts alone are responsible for their Listings and Host Services." (*Id.*) Hosts must comply with all local laws and regulations. (*Id.* at 75, 79.) And hosts and guests are liable for their own actions and inactions. (*Id.* at 79-81, 83-84.)

The TOS are unequivocal: Airbnb is not a joint venturer with any host. Section 1.4 states, "[i]f you choose to use the Airbnb Platform as a Host or Co-Host (as defined below), your relationship with Airbnb is limited to being an independent, third-party contractor, and not an employee, agent, *joint venturer* or partner of Airbnb for any reason." (*Id.* at 76) (emphasis added). Section 22.2 reiterates "[n]o *joint venture*, partnership, employment, or agency relationship exists between you and Airbnb as a result of this Agreement or your use of the Airbnb Platform." (*Id.* at 86) (emphasis added); (*see also id.* at 79). Rather, hosts act exclusively for their own benefit and not for, or on behalf of, Airbnb. (*Id.* at 76.)

Hosts and guests enter a contract or license with each other.  Airbnb is not a party to that contract or license. (*Id.* at 76, 80.) In addition, hosts alone decide whether, to whom, when, and on what terms they will offer their accommodations,

4

without any input from Airbnb. (*Id.* at 78, 80.) Hosts communicate directly with guests, including welcoming them and arranging check-out times. (*See id.* at 79-80.)

Airbnb does not contribute capital to the hosts, nor does Airbnb split or share profits with hosts. Instead, hosts unilaterally set their own prices for listings. (*Id.* at 78.) Airbnb receives a percentage of each booking, determined by a pre-set formula. (*Id.*)

The TOS explain that Airbnb has not assumed any safety obligations and has not guaranteed the protection of hosts, guests, or the world at large. Section 1.3 reflects that "Airbnb has no control over and does not guarantee" the safety of any listing or hosts, "the performance or conduct of any Member *or third party*," "or whether the Member is trustworthy, safe or suitable." (*Id.* at 76) (emphasis added). Airbnb's TOS reject any voluntary assumption of duty with respect to identity verification and review of background checks. (*Id.* at 77) (providing that "[u]ser verification on the Internet is difficult" so Airbnb does "not assume any responsibility for the confirmation of any Member's identity" and clarifying that Airbnb has "no obligation" to request identification "or undertake additional checks designed to help verify the identities or backgrounds of Members").

## B.    Lovett is Injured Near a Listing Booked on Airbnb's Platform.

Lovett alleges that in June of 2018, he and a friend, Eric Rice, "were travelling to attend a party" at a property rented in Las Vegas. (*Id.* at 4.) Lovett contends that

"[w]hile approaching the party, on or near the premises, an unknown individual opened fire on the crowd" striking Rice and Lovett. (*Id.*) This "drive-by shooting" killed Rice and wounded Lovett. (*Id.* at 5, 8 n.11.)

The Zheng Trust owns the property—not Airbnb—and was the host of the listing that evening. (*Id.* at 2.) Shenandoah Southwest, Inc. owns Fenex Consulting who operates the Zheng Trust. (*Id.*)

### C.   Lovett and Rice Sue Airbnb.

In September 2019, Lovett and Rice sued several individuals and entities including Airbnb. (*Id.* at 3.) Lovett pled negligence, negligence per se, negligent security, and respondeat superior. (*See generally id.*) Lovett generally alleged that "Defendants negligently maintained and controlled said real property and premises" and allowed dangerous conditions to exist like the presence of "dangerous patrons on and about the premises." (*Id.* at 6.) Lovett also alleged that Defendants "negligently lease[d] and/or rent[ed] the premises without any and/or a sufficient investigation." (*Id.* at 7.)

Lovett averred that "Defendants, and each of them, owed duties *to members of the general public* as invitees and guests on their premises …." (*Id.* at 11.) While referencing contracts and agreements between the defendants (*id.* at 3), Lovett baldly asserted that each defendant was a "joint venturer" of the others and responsible for everyone's individual negligence. (*Id.* at 14.) In two short sentences—without *any*

supporting facts—Lovett alleged the legal conclusion that "[u]pon information and belief, Defendants Airbnb, Inc. Shenandoah Southwest, Inc., Fenex Consulting and Zheng Trust, or some of them were joint ventures" and "therefore, jointly and severally liable." (*Id.* at 2, 8.)

Airbnb moved to compel Rice's action to arbitration. *Rice*, 518 P.3d at 89. The district court denied the motion. (*Id.* at 92.) Relying on Airbnb's TOS, this Court reversed, holding the FAA required Rice to arbitrate his claims. (*Id.)*[1]

### D.    Airbnb Moves to Dismiss.

After this Court remanded Rice's claims for arbitration, Airbnb moved to dismiss Lovett's complaint. Airbnb argued that it had no duty to control dangerous conduct of others and no special relationship existed between it and Lovett. (PA 32-35.) Airbnb also argued that the shooting was not foreseeable. (*Id.* at 35.)

Lovett opposed the motion. He conceded that Airbnb had no special relationship with him but contended that "Airbnb is liable for its partners' actions as a joint venturer …. So it doesn't matter if Airbnb doesn't have a special relationship with Plaintiffs—Airbnb is still liable." (*Id.* at 43-44, 48.) Lovett posited that merely using the words "joint venture" was adequate pleading. (*Id.* at 44, 49-50.) In his briefs, but not his complaint, Lovett further asserted, counterfactually, that Airbnb

---

[1]      Rice had an Airbnb account and previously agreed to an arbitration provision. Lovett did not have an account.

voluntarily assumed a duty to conduct background checks on users "[u]sing its contractual power over the other Defendants." (*Id.* at 44, 46, 51.) Lovett did not explain how a background check of users would have any bearing on either the unknown drive-by shooter or Lovett, who was neither a host nor guest. With respect to foreseeability, Lovett claimed that the general prospect of crime in the world met the foreseeability standard. (*Id.* at 44-45, 52-53.) According to Lovett, "[t]he 'specific type' of crime—such as 'violent assault'—need not be foreseeable," nor does he need to allege (or prove) that "any similar crimes on or near the premises" occurred. (*Id.* at 44, 48, 52-53.)

Since Lovett's complaint and opposition invoked Airbnb's TOS and other policies, Airbnb provided them in reply. (*Id.* at 75-86.) Airbnb demonstrated that the TOS were subject to judicial notice and Lovett did not object. (*Id.* at 64 & 64 n.3.) Airbnb showed that the TOS disclaimed any voluntary duty to investigate or guarantee the safety of any listing and highlighted that the TOS bar any joint venture with hosts. (*Id.* at 64-67.)

The district court granted in part and denied in part Airbnb's motion to dismiss. (*Id.* at 109.) The district court dismissed Lovett's negligence per se claim and his respondeat superior theory, recognizing that "Lovett has not alleged that any of the identified actors in his complaint were employees of Airbnb or otherwise acted

as Airbnb's agent." (*Id.* at 118.) The district court also struck Lovett's request for punitive damages. (*Id.* at 119.)

However, the district court denied Airbnb's motion against the negligence and negligent security claims. (*Id.* at 117.) Treating the two claims interchangeably, the district court held "that this is purely a negligence case that turns on whether (a) Lovett can impute the other defendants' purported negligence to Airbnb; or (b) if not, whether Airbnb is independently negligent." (*Id.*) Without considering Airbnb's TOS, the district court allowed Lovett to proceed on his joint venture and negligent undertaking theories, observing that "it's a very interesting industry" that is "[d]eveloping" with "evolving concepts of liability under Nevada law." (*Id.* at 93, 117-18.)

## III.   REASONS WHY THE REQUESTED WRIT SHOULD ISSUE

### A.   The Court Should Entertain this Writ Petition.

This Court may issue writs of mandamus. Nev. Const. art. VI, § 4(1). A writ of mandamus is available "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." NRS 34.160. "This writ shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170.

Although this Court sometimes declines to entertain writs from motions to dismiss, it will consider a petition in an appropriate case, such as "when either (1) no

factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule,[2] or (2) an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct.*, 138 Nev., Adv. Op. 77, 520 P.3d 803, 807 (2022) (quoting *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 559 (2008)); *see also Martinez Guzman v. Second Jud. Dist. Ct*., 136 Nev. 103, 103 n.1, 460 P.3d 443, 445 n.1 (2020).

These considerations are met here. First, there are no factual disputes. At this stage, the Court must accept Lovett's factual allegations as true (unless, of course, his factual allegations are contradicted by the documents referenced in his complaint and pleadings) and there are no embedded evidentiary disputes between the parties on any issue. *See infra* III.B.3.c. Accepting all of Lovett's uncontradicted allegations as true, clear legal authority—namely, this Court's joint venture and voluntary undertaking jurisprudence—obligated the district court to dismiss his complaint against Airbnb. Airbnb's right to dismissal under this Court's caselaw is "clear and

---

[2]    Clear legal authority warranting writ relief includes this Court's caselaw. *See Wynn Resorts Ltd. v. Eighth Jud. Dist. Ct*., 2020 WL 4333603, at *1 n.1 (Nev. July 27, 2020) (unpublished disposition) (providing that mandamus is appropriate where "the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule" and explaining that "[a] 'rule' includes caselaw").

indisputable." *Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 819-20, 407 P.3d 702, 706 (2017).

Airbnb's TOS confirm there is no need for discovery and that Airbnb is entitled to dismissal. Lovett referenced the TOS in his complaint and incorporated them into his opposition to the motion to dismiss. (PA 3, 46, 51.) This Court also accepted and relied on the TOS in this very case when it determined Lovett's co-plaintiffs must, pursuant to the TOS, arbitrate the arbitrability of their claims. *Rice*, 518 P.3d at 90. The TOS are undisputed, unambiguous, and dispositive of the joint venture and negligent undertaking issues. *See infra* III.B.3.c; III.B.4. This Court has entertained mandamus from motions to dismiss in other cases where contractual terms are dispositive, making discovery unnecessary. *See, e.g.*, *Otak Nev., LLC v. Eighth Jud. Dist. Ct.*, 129 Nev. 799, 810–11, 312 P.3d 491, 499 (2013); *Fed. Nat'l Mortg. Ass'n v. Eighth Jud. Dist. Ct.*, 2022 WL 19697697 (Nev. Dec. 22, 2022) (unpublished disposition). This Court should do so again here.

Second, this Petition presents important issues of statewide public policy, which the district court acknowledged. (PA 93, 117-18) (stating that this issue involved "a very interesting industry" with "evolving concepts of liability under Nevada law"). The district court's broad view of duty and foreseeability of online marketplaces to the general public risks harming Nevada's vital tourism industry and the many industries reliant upon it. *See Motenko v. MGM Dist., Inc.*, 112 Nev. 1038,

1043, 921 P.3d 933, 936 (1996) (Young, J. concurring) ("Nevada must protect its tourist industry as a matter of public policy.").

Moreover, the liability of online marketplaces generally is a novel issue receiving widespread attention from various courts, including the United States Supreme Court. *See Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1230 (2023) (concluding that companies who provide virtual platforms for public use are not liable for terror attacks "despite knowing [that ISIS] was using those platforms"). Thus, this Court should entertain this Petition.

Finally, without this Court's intervention, Airbnb has no plain, speedy and adequate remedy. "Whether a future appeal is sufficiently adequate and speedy necessarily turns on the underlying proceedings' status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented." *D.R. Horton, Inc. v. Eighth Jud. Dist. Ct.*, 123 Nev. 468, 474-75, 168 P.3d 731, 736 (2007). When a writ may "prevent litigation altogether, an eventual appeal from any final judgment would be neither a speedy nor adequate remedy." (*Id.*)

Here, the litigation is in its infancy. Discovery closes in July of 2024 and trial is not scheduled until October of 2024 at the earliest. (PA 57.) Waiting for an appeal from a final judgment is neither adequate nor speedy, especially when a writ of mandamus in Airbnb's favor will end the litigation. Entertaining this Petition now

will avoid a year (or more) of expensive and unnecessary discovery and trial. There is enough time for this Court to rule so its decision is meaningful. Therefore, the interests of judicial economy, efficiency, and public policy support entertaining this Petition. *See Cote H. v. Eighth Jud. Dist. Ct.*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008).

### B.   The Court Should Issue a Writ of Mandamus.

#### 1.   *Standard of review and negligence.*

This Court reviews de novo orders related to motions to dismiss. *Nelson v. Burr*, 138 Nev., Adv. Op. 85, 521 P.3d 1207, 1210 (2022). A complaint must be dismissed when "it appears beyond a doubt that it could prove no set of facts, which, if true, would entitle it to relief." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

Negligence plaintiffs must allege facts establishing duty, breach, causation, and damages. *Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 777, 291 P.3d 150, 153 (2012).[3] Duty and foreseeability are questions of law reviewed de novo. *Id.*; *see also Est. of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. 855, 856, 265 P.3d 688, 689 (2011) ("[W]e clarify that the duty element of a negligence cause of action must

---

[3]    Negligent-security claims are analyzed under the same test as general negligence claims. *Hoy v. Jones*, 2020 WL 2798017, at *9 (D. Nev. May 30, 2020).

13

be determined as a matter of law by considering whether the wrongful act that precipitated the plaintiff's injury was foreseeable.").

### 2.    *Airbnb owed no duty to Lovett to prevent drive-by shootings.*

It is well established "under common-law principles, no duty is owed to control the dangerous conduct of another or to warn others of the dangerous conduct." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). In other words, there is no "duty to protect another from a criminal attack by a third person." *Scialabba v. Brandise Const. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996). An exception to this rule exists when (1) there is a special relationship between the plaintiff and defendant, (2) a defendant formed a joint venture with a party who owes the plaintiff such a duty, or (3) the defendant voluntarily undertakes such a duty. *Sanchez*, 125 Nev. at 824, 221 P.3d at 1280-81 (special relationship); *Radaker v. Scott*, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993) (joint venture); *PetSmart, Inc. v. Eighth Jud. Dist. Ct.*, 137 Nev. 726, 730, 499 P.3d 1182, 1187 (2021) (voluntary undertaking). Because Lovett concedes that no special relationship with Airbnb exists, this Court need only address Lovett's joint venture and voluntary undertaking theories.[4]

---

[4]     It is no wonder Lovett concedes there is no special relationship between Airbnb and a non-user such as Lovett, as every court to consider that question has concluded no special relationship exists. *See, e.g.*, *Jackson v. Airbnb, Inc.*, 2022 WL 16752071, at *7 (C.D. Cal. Nov. 4, 2022); *Esposito v. Airbnb Action, LLC*,

### 3.    *As a matter of law, Airbnb is not a joint venturer with hosts.*

The district court determined that Lovett's two conclusory mentions of "joint venture," without any surrounding factual allegations, were enough to plead the prospect of imputing the hosts' liability—if any—to Airbnb. (PA 2, 8, 117-18.) Even under Nevada's forgiving pleading standard, this is insufficient. A plaintiff's allegations cannot warp reality let alone contradict undisputed documents referenced in, or attached to, the complaint and briefing. *McClure v. Stiles*, 2022 WL 130732, at *3 (Nev. Jan. 13, 2022) (refusing to accept as true the complaint's allegations when they are contradicted by exhibits attached to the complaint). Lovett did not—and cannot—sufficiently allege the necessary facts of a joint venture between Airbnb and its hosts.

The joint-venture concept has deep commercial roots but, as a theory of imputing liability, it is a relatively recent invention. *Lafayette Bank & Tr. Co. v. Price*, 440 N.E.2d 759, 762 (Ind. Ct. App. 1982). This Court has held that "under principles of law related to joint ventures, the negligence or fraud of one venturer, while acting within the scope of the enterprise, may be imputed to co-venturers so as to render the latter liable for the injuries sustained by third persons as a result of the negligence or fraud." *Radaker*, 109 Nev. at 660, 855 P.2d at 1041. "A joint

───────────────

2022 WL 2980700, at *1 (W.D. Ark. July 27, 2022); *Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767 (E.D. La. 2017).

venture is a *contractual* relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." *Id.* at 658, 855 P.2d at 1040 (emphasis added) (quoting *Bruttomesso v. LVMPD,* 95 Nev. 151, 154, 591 P.2d 254, 256 (1979)).[5] A joint venture must involve an element of mutual control. *Id.* at 659, 855 P.2d at 1040.

Whether the parties formed a joint venture is a question of law where, as here, the facts are undisputed. *Price*, 440 N.E.2d at 763; *Klabacka v. Nelson*, 133 Nev. 164, 170, 394 P.3d 940, 946 (2017). And the existence of a joint venture is first determined by applying ordinary rules of contract interpretation. *Radaker*, 109 Nev. at 658, 855 P.2d at 1040; *see also Johnston v. De Lay*, 63 Nev. 1, 10, 158 P.2d 547, 552 (1945) ("Appellants advance the theory that the lease…created a partnership, joint venture or joint enterprise. We do not think the lease bears such a construction.").

      a.    <u>As a threshold matter, Lovett did not adequately plead joint venture</u>.

The district court clearly erred by concluding that Lovett had adequately pled joint venture. A complaint must "allege facts sufficient to establish all necessary

---

[5]    The joint-venture doctrine is distinct from the joint-enterprise doctrine, *Lord v. Chew*, 2011 WL 676089, at *2 n.4 (Nev. Feb. 23, 2011) (unpublished disposition), which Lovett did not raise below and is inapplicable to this matter.

elements of the claim for relief." *Johnson v. Travelers Ins. Co.*, 89 Nev. 467, 472, 515 P.2d 68, 71 (1973). Courts do not accept legal conclusions as true. *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 487, 327 P.3d 518, 520 (2014).

Here, Lovett simply offered the legal conclusion of a "joint venture" without alleging any supporting facts or showing of the necessary contractual relationship, control, or financial entanglement needed for a joint venture. *See Radaker*, 109 Nev. at 660, 855 P.2d at 1041. Not only is Lovett's barebones pleading not enough even under NRCP 8's forgiving standard, its glaring deficiencies highlight the impossibility of Lovett's attempt to create a joint venture where one legally does not exist.

The district court recognized Lovett's pleading defects when it found Lovett had not alleged facts hinting any agency relationship between Airbnb and its hosts. (PA 118.) But the district court failed to apply the same reasoning to the joint venture allegations, even though the same factual averments would have been necessary to meet the pleading threshold for a joint venture. *See Esposito v. Airbnb Action, LLC*, 2022 WL 2980700, at *7 (W.D. Ark. July 27, 2022); *cf. B.P. v. Balwani*, 2021 WL 4077008, at *2 (9th Cir. Sept. 8, 2021) ("The district court dismissed plaintiffs' agency and joint venture theories because Walgreens and Theranos were not in an agency relationship.").

b.   <u>The district court failed to consider or misinterpreted the TOS.</u>

Even assuming Lovett adequately pled his joint venture theory, dismissal is warranted because Airbnb's TOS indisputably foreclose his joint venture theory. Here, Airbnb's TOS was properly before the district court. When resolving a motion to dismiss, a district court is not limited to the four corners of a complaint. *See Baxter v. Dignity Health*, 131 Nev. 759, 764, 357 P.3d 927, 930 (2015) (explaining courts may consider unattached evidence without converting the motion to one for summary judgment if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." (quotations omitted)).

Lovett's complaint (and subsequent briefing) referenced the agreements between Airbnb, hosts, and guests, and Lovett did not object when Airbnb offered the TOS and requested judicial notice. (PA 3, 44, 46, 51, 96-97.) Thus, Lovett waived any objection to the consideration of the TOS. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). This Court also relied on the TOS in this case to determine the arbitrability of Lovett's co-plaintiffs' claims. *Rice*, 518 P.3d at 90. Accordingly, the TOS are properly before this Court.[6] *See Carroll*,

---

[6]   Other courts routinely consider Airbnb's TOS when ruling on a motion to dismiss. *See, e.g.*, *Jackson v. Airbnb, Inc.*, 2023 WL 2292598, at *3 (C.D. Cal. Feb. 2, 2023) (analyzing TOS and Global Party Ban); *Esposito*, 2022 WL 2980700, at *5 (analyzing Airbnb's online marketplace).

18

289 F. Supp. 3d at 773 n.43 (explaining that Airbnb's TOS are "relevant to describe the nature of Defendant Airbnb's role in the transaction").

          c.    <u>The TOS negate every element or indicia of a joint venture</u>.

          *i.*    *No joint venture or mutual control.*

The TOS are clear and unambiguous: Airbnb and its hosts do not form a joint venture, and the TOS negate any required indicia of a joint venture. Sections 1.4 and 22.2 state that hosts are not a "*joint venturer* or partner of Airbnb for any reason" and "[n]o *joint venture* … exists between [hosts] and Airbnb as a result of this Agreement or your use of the Airbnb Platform." (PA 76, 86.) Hosts act in their own self-interest, not for Airbnb or any communal pursuit. (*Id.* at 76.) The TOS leave no doubt that the parties did not intend to create a joint venture. *Compare Radaker*, 109 Nev. at 658, 855 P.2d at 1040 ("An examination of the contract between Scott and Tonnemacher reveals a contractual relationship and commitment to 'develop jointly a house for sale....'").

On the contrary, the TOS memorializes that Airbnb does not exercise control over the hosts. Airbnb does not own, control, or manage any hosting services. (PA 76.) "Airbnb's Terms of Service specifically disclaim any control over, or responsibility for, the actions of hosts and guests. Instead, they describe Airbnb's role as facilitating a transaction between property owners and guests." *Carroll*, 289 F. Supp. 3d at 773; *Selden*, 2019 WL 13158226, at *2 (noting arbitrator "found

that the host was not acting as Airbnb's agent because (a) the host could not bind Airbnb, (b) they were not in a fiduciary relationship, and (c) Airbnb lacked sufficient control over the host's activities").

Reflecting Airbnb's lack of authority, hosts separately enter contracts with guests. (PA 76, 80.) In addition, hosts alone decide whether, to whom, when, and on what terms they will offer their accommodations, without any input from Airbnb. (*See id.* at 78, 80.) Hosts communicate directly with guests related to the booking. (*See id.* at 79-80.) "Airbnb does not operate the accommodations, set the price, or determine availability. Those decisions are made exclusively by a host, who decides whether to rent his property and on what terms." *Selden*, 4 F.4th at 152. "Airbnb does not own, manage or operate any of the host properties, and is not a party to the rental agreements." *Airbnb, Inc. v. City & Cnty. of San Francisco*, 217 F. Supp. 3d 1066, 1069 (N.D. Cal. 2016); *City of Santa Monica*, 918 F.3d at 679 n.1 ("[T]he Platforms do not own, lease, or manage any of the properties listed on their websites, nor are they parties to the rental agreements."); *Selden*, 4 F.4th at 155. Airbnb's arrangement with hosts has no element of mutual control. *Compare Radaker*, 109 Nev. at 659, 855 P.2d at 1040 ("[W]hile the contract provides specific duties for each of the parties, both parties could control the actions of the other to a certain extent.").

20

ii.     *No capital contributions or profit sharing.*

The TOS dispel any financial indications of a co-adventure. Airbnb does not contribute capital or share profits with hosts. Rather, hosts set booking prices and Airbnb receives a pre-set percentage of the transaction. (PA 78.) "Airbnb charges no fees when a host lists a property on the platform … it makes money by collecting a service fee from both the guest and the host, determined as a percentage of the accommodation fee set solely by the host, which compensates Airbnb for its publishing, listing, and booking services." *Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113, 116 (D. Mass. 2019); *compare Radaker,* 109 Nev. at 659, 855 P.2d at 1040 ("The contract also indicates the manner in which *profits* were to be distributed.").

The nature of Airbnb's relationship with its hosts is beyond any legitimate debate. Lovett cannot assert allegations that are flatly contradicted by the documents he references in his complaint and included in the motion practice without objection. *McClure*, 2022 WL 130732, at *2 ("[W]e need not accept as true allegations contradicted by exhibits attached to the plaintiff's complaint.") (unpublished disposition); *MG & S Enter., LLC v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 4480776, at *1 & nn. 3-4 (Nev. App. Sept. 29, 2017) (similar) (unpublished disposition); *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir.

21

2021) ("When a document contradicts allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'").

And there is no need for any discovery. "The nature of the relationship between Airbnb and its hosts is evident in the various agreements between them …. [Lovett] has not indicated what more information about the company's relationship with its hosts he would have learned from deposing Airbnb executives." *Selden*, 2019 WL 13158226, at *5.

The district court clearly erred when it failed to either consider or correctly interpret the TOS. The TOS put to bed any claim that Airbnb could be liable as a joint venturer with its hosts. Airbnb's right to dismissal is clear and indisputable.

### 4.   *Airbnb did not voluntarily undertake a duty to Lovett*.

While this Court need not address Lovett's newfound voluntary undertaking theory as he did not plead it (*see generally* PA 1-16), it similarly fails as a matter of law. Negligent undertaking "is a narrow exception to the general rule when a defendant assumes a duty of care owed by another to protect a third party." *PetSmart*, 137 Nev. at 730, 499 P.3d at 1187.

A contract may disclaim any voluntary undertaking. For example, in *PetSmart*, a store worked with an organization to adopt dogs. 137 Nev. at 726, 499 P.3d at 1184. The agreement between the store and the organization stated the organization was "'fully responsible' for its adoptable pets." *Id.* While there were

22

guidelines for the organization's in-store conduct, the agreement was clear "that it does not create 'a legal partnership, joint venture, landlord-tenant or employee-employer relationship' between the agency partner and PetSmart and that the agency partner 'is an Independent entity responsible for itself.'" *Id.* at 727, 499 P.3d at 1185.

An adopted dog bit its new owner who sued the store and the organization, arguing that the store had voluntarily undertaken a duty to protect the public from dangerous dogs. *Id.* at 730, 499 P.3d at 1187. The district court denied the store's motion for summary judgment and this Court entertained a writ petition. *Id.* at 729, 499 P.3d at 1186. On review, this Court issued mandamus directing summary judgment. Among other reasons, the Court explained, "[f]ar from undertaking to share [the organization's] duty, PetSmart expressly affirmed in its agreement with [the organization] that the agency partner alone had control of which pets to present for adoption and was fully responsible for those animals." *Id.* at 731, 499 P.3d at 1187. The Court also noted that the parties' agreement "expressly disclaimed any agency relationship between them." *Id.* at 733, 499 P.3d at 1188.

Again setting aside that Lovett did not allege this theory or any supporting facts, like the contract in *PetSmart*, Airbnb's TOS expressly disclaim the very undertaking Lovett posits. In his papers, for the first time, Lovett contended that Airbnb undertook a duty "over the entire guest screening aspect of the rentals" and

forbade hosts from running their own background checks. (PA 51.) But the TOS unambiguously deny this purported responsibility.

The TOS state "Airbnb has no control over and does not guarantee" the safety of any listing, "the performance or conduct of any Member *or third party*," "or whether the Member is trustworthy, safe or suitable." (*Id.* at 76) (emphasis added). Under the TOS, "Airbnb has no obligation to monitor the access to or use of the Airbnb Platform by any Member or to review, [or] disable access to [it]." (*Id.* at 83.) Airbnb disclaims "any responsibility for the confirmation of any Member's identity." (*Id.* at 77.) Airbnb has the option, but "no obligation" to "undertake additional checks designed to help verify the identities or backgrounds of Members." (*Id.*) Even if Airbnb does investigate, the TOS Airbnb disclaims any warranty as to those checks. (*Id.* at 83-84.) Thus, the TOS rejects an obligation to conduct background checks on anyone, including on guests of guests or the innumerable members of the public who might drive by the millions of listings on its platform. Certainly, no duty was assumed toward unknown strangers like Lovett. As a result, just like *PetSmart*, the TOS indisputably foreclose liability on a voluntary undertaking theory.[7] *See Twitter*, 143 S. Ct. at 1227 (rejecting tort liability for Twitter where the allegations against it

---

[7]    There is also no causal connection between Airbnb's alleged undertaking and Lovett's injuries. (PA 65.) More rigorous screening measures would not have prevented the drive-by shooting by unknown assailants.

"rest[ ] less on affirmative misconduct and more on an alleged failure to stop [wrongdoers] from using [its] platform[ ]").

Other courts agree. For instance, in *Jackson*, one teen shot another at an Airbnb listing. Like Lovett, the plaintiffs alleged Airbnb assumed a duty to protect guests and third parties from crime through its policies and rights to conduct investigations and terminate listings. *Jackson*, 2022 WL 16752071, at *7. The district court found this was not enough and granted a motion to dismiss, concluding "[t]he facts alleged do not support that Airbnb saw a risk, stepped in, and, in doing so, increased the risk of harm." *Id.*; *see also Esposito*, 2022 WL 2980700, at *6 ("[N]o facts in this case indicate that Airbnb voluntarily assumed a duty to protect them from unforeseen crimes.").

Airbnb was indisputably entitled to the dismissal of Lovett's unpled negligent undertaking theory under *PetSmart* and the TOS. The district court's contrary conclusion is clearly erroneous and this Court should issue a writ of mandamus.

### 5.   *The drive-by shooting was not foreseeable.*

Foreseeability is necessary for the joint venture and negligent undertaking exceptions to the normal no duty to protect against third-party crimes rule. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 104–05 (D.D.C. 2003) ("The court also stated that a 'joint venturer's' liability extends to all reasonably foreseeable acts done in connection with the tortious act that the person assisted");

*Jackson*, 2022 WL 16752071, at *8. As such, the district court clearly erred when it failed to address Airbnb's foreseeability argument or make any findings related to it. Regardless, the shooting was not foreseeable as a matter of law.

This Court's precedents establish that random, senseless shootings are not foreseeable as a matter of law and that district courts must grant a motion to dismiss. In *Mangeris v. Gordon*, 94 Nev. 400, 580 P.2d 481 (1978), a taxi picked up a passenger from a massage parlor. Sometime on the return trip, the passenger murdered the driver. *Id.* at 401, 580 P.2d at 482. The driver's estate sued the parlor— where the two connected—for wrongful death. *Id.* The estate contended the parlor knew the passenger was dangerous. *Id.* at 402, 580 P.2d at 483. The district court granted the parlor's motion to dismiss and this Court affirmed. It held that a reasonable person would not foresee a risk that the passenger would murder the driver "at a remote time and distant location." *Id.* at 403, 580 P.2d at 483. "Absent the foreseeability of such a risk," this Court continued, "respondents had no duty to warn [the driver] of [the passenger's] criminal conduct." *Id.*

Consistent with *Mangeris*, many courts have held that drive-by shootings are unforeseeable as a matter of law. *Thai v. Stang*, 263 Cal. Rptr. 202, 206 (Ct. App. 1989) ("We conclude as a matter of law the drive-by shooting of Thai was an unforeseeable criminal attack by a third party."); *Suarez v. Longwood Assocs.*, 658 N.Y.S.2d 841 (App. Div. 1997) ("We agree with the motion court that, as a

26

matter of law, the drive-by shooting was an unforeseeable act breaking the chain of causation.").

In a recent analogous case, the United States Supreme Court held that Twitter and other social media platforms cannot, as a matter of law, be held secondarily liable for a terrorist shooting. The Court noted that such shootings are not foreseeable because the platforms merely "transmit information by billions of people—most of whom use the platforms for interactions that once took place via mail, on the phone, or in public areas." *Twitter*, 143 S. Ct. at 1228. Passive online websites or platforms, like Lovett alleges, that do not screen content or users are not liable even when bad actors abuse platforms for illegal ends. *Id.* 1226-28. "[A] contrary holding would effectively hold any sort of [online provider] liable …. That conclusion would run roughshod over the typical limits on tort liability." *Id.* at 1229.

Like *Twitte*r, other courts have held generally that crimes at Airbnb listings are unforeseeable as a matter of law too. Again, *Jackson* is illustrative. There, the Court held that the teen's shooting was not foreseeable and granted a motion to dismiss, recognizing that generic allegations about parties and criminal activity at other Airbnb accommodations are insufficient to show a shooting is foreseeable. *Jackson*, 2022 WL 16752071, at *8. "[I]t is difficult if not impossible in today's society to predict when a criminal might strike." *Id.* General awareness that crimes happen sometimes in some places does not render a shooting foreseeable as a matter

of law. *See id.* Even with a basic awareness that crimes occur, "[i]t would have taken something near the level of psychic powers to foresee" the shooting at a property booked on Airbnb's platform. *Id.*; *see also Esposito*, 2022 WL 2980700, at \*6 (granting motion to dismiss because home invasion and assault was unforeseeable).

Lovett's shooting was tragic. But it was also unforeseeable. Extending the scope of foreseeability to include drive-by shootings would impose an undefinable (and perhaps unlimited) zone of liability on Airbnb, other online marketplaces, and in-person businesses who connect or recommend guests with other services. *See Sanchez*, 125 Nev. at 825, 221 P.3d at 1281 (stating the assignment of liability for a customer's wrongful act against an "anonymous member of the driving public" would "create a zone of risk [that] would be impossible to define.").

## IV.    CONCLUSION

For these reasons, this Court should issue a writ of mandamus directing the dismissal of Lovett's complaint against Airbnb.

DATED this 3rd day of August, 2023.

PISANELLI BICE PLLC

By:  _____*/s/ Jordan T. Smith*_____
     Jordan T. Smith, Esq., Bar No. 12097
     Daniel R. Brady, Esq., Bar No. 15508
     400 South 7th Street, Suite 300
     Las Vegas, Nevada 89101

*Attorneys for Petitioner*

## VERIFICATION/DECLARATION

I, Jordan T. Smith, Esq., declare as follows:

1.      I am counsel for Petitioner.

2.      Under NRAP 21(a)(5), I verify that I have read this Petition for Writ of Mandamus and that the same is true to my own knowledge, except for those matters stated on information and belief, and as to those matters, I believe them to be true.

3.      I have also reviewed the contents of the Appendix filed with this Petition and verify that the documents included are true and correct copies. NRAP 21(a)(4).

4.      I declare under the penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

This declaration is executed on 3rd day of August, 2023, in Las Vegas, Nevada.


_/s/ Jordan T. Smith_
JORDAN T. SMITH, ESQ.

29

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Petition complies with the formatting requirements of NRAP 32(a)(4), the typeface requirements of NRAP 32(a)(5), and the type style requirements of NRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Office Word 2013 in size 14 font in double-spaced Times New Roman.

I certify that I have read this Petition and that it complies with the page or type-volume limitations of NRAP 21(d) because, excluding the parts of the brief exempted, it is proportionately spaced, has a typeface of 14 points or more, and 6,727 words.

I further certify that, to the best of my knowledge, information, and belief, it is not frivolous or interposed for any improper purpose.  I further certify that this Petition complies with all applicable Nevada Rules of Appellate Procedure, in particular NRAP 28(e)(1), which requires that every assertion in this Petition regarding matters in the record to be supported by appropriate references to Appendix filed with this Petition.  I understand that I may be subject to sanctions in the event that the accompanying Petition is not in conformity with the requirements of the Nevada Rules of Appellate Procedure.

Finally, I certify that the Appendix accompanying this Petition complies with NRAP 21(a)(4) and NRAP 30 by including necessary material and other original documents essential to understand the matter set forth in herein.

DATED this 3rd day of August, 2023.

PISANELLI BICE PLLC

By: _/s/ Jordan T. Smith_____
        Jordan T. Smith, Esq., #12097
        Daniel R. Brady, Esq., #15508
        400 South 7th Street, Suite 300
        Las Vegas, Nevada 89101

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 3rd day of August, 2023, I caused to be served via United States mail a true and correct copy of the above and foregoing **PETITION FOR WRIT OF MANDAMUS** properly addressed to the following:

Hon. Gloria Sturman
District Judge, Dept. XXVI
Eighth Judicial District Court
Regional Justice Center
200 Lewis Ave.
Las Vegas, NV 89155

*Respondent*

Jordan Schnitzer, Esq.
9205 W. Russell Road, Suite 240
Las Vegas, NV 89148

*Attorney for Real Party in Interest*

*/s/ Kimberly Peets*
An employee of Pisanelli Bice PLLC