# Exhibit 2

Appendix to AirBNB, Inc.'s Writ Petition Showing a Nevada Trial Court Has Held Similar Allegations Sufficiently Plead a Joint Venture

**IN THE SUPREME COURT OF THE STATE OF NEVADA**

***Supreme Court Case No.***

Electronically Filed
Aug 03 2023 11:52 AM
Elizabeth A. Brown
Clerk of Supreme Court

AIRBNB, INC.,

*Petitioner,*

v.

THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE GLORIA STURMAN, DISTRICT JUDGE, DEPT. XXVI ,

*Respondents,*

and

BRYAN LOVETT,

*Real Party in Interest.*

**APPENDIX TO PETITION FOR WRIT OF MANDAMUS**

Jordan T. Smith, Esq., Bar No. 12097
Daniel R. Brady, Esq., Bar No. 15508
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

*Attorneys for Petitioner*

# CHRONOLOGICAL INDEX TO APPENDIX

| Document | Date | Page Nos. |
|---|---|---|
| Plaintiffs' Complaint for Personal Injuries and Demand for Jury Trial | 09/09/2019 | 001-016 |
| Answer – Jasper | 11/08/2019 | 017-019 |
| Answer – Zheng Trust and Li Jun Zheng | 04/20/2020 | 020-028 |
| Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 03/23/2023 | 029-040 |
| Plaintiff, Brian Lovett's Opposition to Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Defendant, Airbnb | 04/05/2023 | 041-056 |
| Scheduling Order and Order Setting Civil Jury Trial | 04/07/2023 | 057-061 |
| Defendant Airbnb, Inc.'s Reply In Support of Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 04/18/2023 | 062-086 |
| Recorders Transcript of Pending Motions | 04/25/2023 | 087-108 |
| Notice of Entry of Order Granting In Part and Denying In Part Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 05/30/2023 | 109-121 |
| Order Granting In Part and Denying In Part Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 05/30/2023 | 122-131 |
| Defendant Airbnb, Inc.'s Answer to Complaint | 06/16/2023 | 132-142 |

# ALPHABETICAL INDEX TO APPENDIX

| Document | Date | Page Nos. |
|---|---|---|
| Answer - Jasper Han | 11/08/2019 | 017-019 |
| Answer – Zheng Trust and Li Jun Zheng | 04/20/2020 | 020-028 |
| Defendant Airbnb, Inc.'s Answer to Complaint | 06/16/2023 | 132-142 |

| | | |
|---|---|---|
| Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 03/23/2023 | 029-040 |
| Defendant Airbnb, Inc.'s Reply In Support of Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 04/18/2023 | 062-086 |
| Notice of Entry of Order Granting In Part and Denying In Part Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 05/30/2023 | 109-121 |
| Order Granting In Part and Denying In Part Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb, Inc. | 05/30/2023 | 122-131 |
| Plaintiff, Brian Lovett's Opposition to Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Defendant, Airbnb | 04/05/2023 | 041-056 |
| Plaintiffs' Complaint for Personal Injuries and Demand for Jury Trial | 09/09/2019 | 001-016 |
| Recorders Transcript of Pending Motions | 04/25/2023 | 087-108 |
| Scheduling Order and Order Setting Civil Jury Trial | 04/07/2023 | 057-061 |

DATED this 3rd day of August, 2023.

PISANELLI BICE PLLC

By: */s/ Jordan T. Smith*
Jordan T. Smith, Esq., #12097
Daniel R. Brady, Esq., #15508
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 3rd day of August, 2023, I caused to be served via United States mail a true and correct copy of the above and foregoing **APPENDIX TO PETITION FOR WRIT OF MANDAMUS** properly addressed to the following:

Hon. Gloria Sturman
District Judge, Dept. XXVI
Eighth Judicial District Court
Regional Justice Center
200 Lewis Ave.
Las Vegas, NV 89155

*Respondent*

Jordan Schnitzer, Esq.
9205 W. Russell Road, Suite 240
Las Vegas, NV 89148

*Attorney for Real Party in Interest*

　　　　　　　　　　　　　　　*/s/ Kimberly Peets*
　　　　　　　　　　　　　　　An employee of Pisanelli Bice PLLC

Electronically Filed
9/9/2019 11:50 AM
Steven D. Grierson
CLERK OF THE COURT

COMP
MICHAEL C. KANE. ESQ.
Nevada Bar No.: 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No.: 8857
THE702FIRM
400 S. 7th Street, Suite/Floor 4
Las Vegas, Nevada 89101
Telephone: (702) 776-3333
Facsimile: (702) 505-9787
*E-Mail:* ***mike@the702firm.com***
***brad@the702firm.com***
Attorneys for Eric Rice and JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE

JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
Telephone: (702) 960-4050
Facsimile: (702) 960-4092
Jordan@TheSchnitzerLawFirm.com
Attorney for Plaintiff BRYAN LOVETT

CASE NO: A-19-801549-C
Department 26

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,<br><br>Plaintiffs,<br><br>vs.<br><br>ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC. a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive.<br><br>Defendants. | Case No. :<br>Dept. No.:<br><br>**PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES AND DEMAND FOR JURY TRIAL** |

COMES NOW ERIC RICE, JEFFERSON TEMPLE, as Special Administrator of the Estate of RAHEEM RICE; by and through their attorneys of record, Michael C. Kane, Esq., and Bradley J. Myers, Esq., of THE702FIRM, and BRYAN LOVETT, by and through his attorneys of record, Jordan P. Schnitzer, Esq., of The Schnitzer Law Firm, and for their claims for relief against Defendants, and each of them, allege as follows:

**BACKGROUND FACTS**

1. At all times relevant to this action, Decedent RAHEEM RICE was a resident of Clark County, State of Nevada.

2. At all times relevant to this action, Plaintiff ERIC RICE was a resident of Clark County, State of Nevada.

3. At all times relevant to this action, Plaintiff JEFFERSON TEMPLE, as Special Administrator of the Estate of RAHEEM RICE was a resident of Clark County, State of Nevada.

4. At all times relevant to this action, Plaintiff BRYAN LOVETT was a resident of Clark County, State of Nevada.

5. Upon information and belief, at all times relevant to this action, Defendant, ZHENG TRUST c/o FENEX CONSULTING, was a Nevada Trust which owned the property at issue.

6. Upon information and belief, at all times relevant to this action, Defendant, LI JUN ZHENG, was and is a resident of Clark County, State of Nevada.

7. Upon information and belief, at all times relevant to this action, Defendant SHENANDOAH SOUTHWEST, INC. was the owner of FENEX CONSULTING, which operated the ZHENG TRUST.

8. Upon information and belief, Defendants AIRBNB, INC., SHENANDOAH SOUTHWEST, INC., FENEX CONSULTING and ZHENG TRUST, or some of them were joint ventures.

9. Upon information and belief, at all times relevant to this action, Defendant AIRBNB, INC. was a Delaware Corporation operating in Nevada.

10. Upon information and belief, at all times relevant to this action, Defendant HOA is a Nevada Limited-Liability Company.

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

11. Upon information and belief, at all times relevant to this action, Defendant ROE SECURITY COMPANY was operating security on the property or in the neighborhood.

12. Upon information and belief, at all times relevant to this action, Defendant DOE PARTY HOST was hosting the party to which Decedent and Plaintiff BRYAN LOVETT were travelling at the time of the subject incident.

13. Upon information and belief, at all times relevant to this action, Defendant DOE/ROE PROPERTY MANAGEMENT COMPANY is a company or individual conducting business in Nevada in the County of Clark, and is the management company of that certain property located 6145 Novelty Street, Las Vegas, Nevada. That the true names or capacities, whether individual, corporate, associate or otherwise of Defendants DOES I through XX and ROE CORPORATIONS I through X are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as DOE and ROE CORPORATIONS are responsible in some manner for the events and happenings herein referred to and caused damage proximately to Plaintiffs as herein alleged; and Plaintiffs will ask leave of this Court to amend this Complaint to insert the true names and capacities of DOES I through X and ROE CORPORATIONS I through XX, when the same have been ascertained and to join such Defendants in this action. Plaintiffs are informed, believe and allege that Defendant designated herein as a DOE and/or ROE CORPORATION include any one of the following:

a. A party responsible in some manner for the events and happenings hereunder referred to, and in some manner proximately caused injuries and damages to the Plaintiff as herein alleged including, but not limited to, responsible for the property at issue.

b. Parties that were the agents, servants, authorities and contractors of the Defendants, each of them acting within the course and scope of their agency, employment, or contract;

c. Parties that own, lease, manage, operate, secure, inspect, repair, maintain and/or are responsible for the Property owned by the Defendant at the time of this incident; and/or

d. Parties that have assumed or retained the liabilities of any of the Defendants by virtue of an agreement, sale, transfer or otherwise.

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

14. That at the time of the injury which resulted in his death, Decedent RICE was on or near on the premises of 6145 Novelty Street, Las Vegas, Nevada.

15. That at the time of his injury Plaintiff BRYAN LOVETT was on or near on the premises of 6145 Novelty Street, Las Vegas, Nevada.

## JURISDICTIONAL STATEMENT

16. Plaintiff repeats and realleges the allegations above, as though fully set forth herein.

17. The Eighth Judicial District Court has jurisdiction over this civil tort action pursuant to NRCP 8(a)(4), NRS 13.040, and/or NRS 41.130 as the occurrence giving rise to this case took place in Clark County, Nevada and the amount in controversy exceeds $15,000.00.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

18. On or about June 3, 2018, Decedent RICE and BRYAN LOVETT were on the premises of, on or near on the premises of 6145 Novelty Street, Las Vegas, Nevada and were travelling to attend a party.

19. While approaching the party, on or near the premises, an unknown individual opened fire on the crowd, striking Decedent RICE and BRYAN LOVETT.

20. As a result of his injuries, Decedent RICE was killed.

21. The party was hosted through the use of Defendant AIRBNB's service, which allowed ROE party hosts to rent the house from Defendants JASPER HAN, The ZHENG TRUST c/o FENEX CONSULTING, and LI JUN ZHENG.

22. The security at the party and in the neighborhood was inadequate.

23. The rental of the property and the hosting of the party was in violation of Clark County and Las Vegas codes and ordinances.

24. The rental of the property and the hosting of the party was in violation of HOA regulations.

25. The hosting of the party was intentionally a location for illegal behavior in violation of Nevada statutes, including underage drinking, drug use, and other crimes.

26. The rental of the property and the hosting of the party was done through the use of underage individuals and for the purpose of enticing such individuals to engage in illegal behavior,

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

in violation of Nevada law.

27. As a direct and proximate result of the conduct of each of the Defendants, Plaintiff BRYAN LOVETT was injured and Decedent RICE was killed.

28. As a direct and proximate result of the conduct of each of the Defendants, Plaintiffs, sustained damages as a result of the death of Decedent RICE. Plaintiffs sustained past and future loss of support, society, comfort, consortium, companionship and disfigurement as well as past and future, grief or sorrow; and such other damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

29. Decedent RICE and Plaintiff BRYAN LOVETT sustained damages including, but not limited to physical pain and suffering; mental pain and suffering; loss of enjoyment of life and disfigurement; Plaintiffs, and each of them, have sustained damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

30. Prior to the injuries complained of herein, Decedent RICE and Plaintiff BRYAN LOVETT were able-bodied men, gainfully employable and physically capable of engaging in all other activities for which they were otherwise suited. By reason of the premises and as a direct and proximate result therefore, Decedent RICE and Plaintiff BRYAN LOVE were precluded from engaging in activities and occupations in which he would have been able to achieve. This has caused and shall continue to cause Decedent and Plaintiff BRYAN LOVETT a loss of earning and earning capacity to their damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

31. By reason of the premises and as a direct and proximate result therefore, Plaintiff BRYAN LOVETT, continues to and shall continue to be limited in his activities and occupations in which he is able to achieve. This has caused and shall continue to cause Plaintiff a loss of earning and earning capacity to their damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

32. That as a direct and proximate cause of Defendants' negligence, the Estate of Decedent RICE incurred unnecessary funeral expenses, burial fees, and other special damages in an amount in excess of $15,000.00.

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

33. These unnecessary funeral expenses, burial fees and other special damages are recoverable by the Estate of Decedent RICE pursuant to NRS § 41.085. The Estate of Decedent RICE is also entitled to punitive damages pursuant to NRS § 41.085.

34. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT sustained injuries all or some of which conditions may be permanent and disabling in nature, all to their general damage in a sum in excess of $15,000.00

35. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT were required to and did receive medical and other treatment for their injuries received in an expense all to their damages in a sum in excess of $15,000.00. Said services, care, and treatment are continuing and shall continue in the future, at a presently unascertainable amount.

36. Plaintiffs have been compelled to retain the services of an attorney to prosecute this action and is, therefore, entitled to reasonable attorney's fees and costs incurred herein.

## FIRST CLAIM FOR RELIEF
**(Negligence)**

37. Plaintiffs repeat and reallege each and every allegation above and incorporate the same herein by reference as though fully set forth herein.

38. At said time and place, the Defendants negligently maintained and controlled said real property and premises and, further, negligently permitted a dangerous situation, not obvious or apparent to Plaintiffs, to exist thereon and further, did:

a. negligently cause a dangerous condition to exist; to wit, allowing dangerous patrons on and about the premises;

b. negligently cause a dangerous condition to exist; to wit, serving dangerous patrons with alcohol and illegal drugs on and about the premises;

c. negligently cause a dangerous condition to exist; to wit, allowing dangerous patrons to remain on and about the premises after having been removed from the property;

///

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

d. negligently cause a dangerous condition to exist; to wit, allowing dangerous patrons to return to the premises after having been removed from the property;

e. negligently allow said dangerous condition to remain in existence, as aforesaid, for an unreasonable length of time;

f. negligently failed to warn Plaintiffs of the presence of said dangerous condition;

g. negligently allowed the properties and premises occupied by Plaintiffs and other invitees of the Defendants to be in a condition dangerous and unfit for use in that the Defendants permitted the dangerous behaviors outlined above on said premises, and, further, negligently failed to reasonably warn or guard Plaintiffs in regard thereto;

h. negligently lease and/or rent the premises without any and/or a sufficient investigation regarding the renter/leasor and/or the purpose of the rental/lease; and

i. negligently invite unknown individuals to the premises.

39. As a direct and proximate result of the conduct of each of the Defendants, Plaintiff BRYAN LOVETT was injured and Decedent RICE was killed.

40. As a direct and proximate result of the conduct of each of the Defendants, Plaintiffs, sustained damages as a result of the death of Decedent RICE. Plaintiffs sustained past and future loss of support, society, comfort, consortium, companionship and disfigurement as well as past and future, grief or sorrow; and such other damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

41. Decedent RICE and Plaintiff BRYAN LOVETT sustained damages including, but not limited to physical pain and suffering; mental pain and suffering; loss of enjoyment of life and disfigurement; Plaintiffs, and each of them, have sustained damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

42. Prior to the injuries complained of herein, Decedent RICE and Plaintiff BRYAN LOVETT were able-bodied men, gainfully employable and physically capable of engaging in all other activities for which they were otherwise suited. By reason of the premises and as a direct and proximate result therefore, Decedent RICE and Plaintiff BRYAN LOVETT were precluded

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

from engaging in activities and occupations in which he would have been able to achieve. This has caused and shall continue to cause Decedent and Plaintiff BRYAN LOVETT a loss of earning and earning capacity to their damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

43. By reason of the premises and as a direct and proximate result therefore, Plaintiff BRYAN LOVETT, continues to and shall continue to be limited in his activities and occupations in which he is able to achieve. This has caused and shall continue to cause Plaintiff a loss of earning and earning capacity to his damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

44. That as a direct and proximate cause of Defendants' negligence, the Estate of Decedent RICE incurred unnecessary funeral expenses, burial fees, and other special damages in an amount in excess of $10,000.00.

45. These unnecessary funeral expenses, burial fees and other special damages are recoverable by the Estate of Decedent RICE pursuant to NRS § 41.085. The Estate of Decedent RICE is also entitled to punitive damages pursuant to NRS § 41.085.

46. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT sustained injuries all or some of which conditions may be permanent and disabling in nature, all to their general damage in a sum in excess of $15,000.00.

47. AIRBNB, INC., SHENANDOAH SOUTHWEST, INC., FENEX CONSULTING and ZHENG TRUST, were joint ventures therefore, jointly and severally liable.

48. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT were required to and did receive medical and other treatment for their injuries received in an expense all to their damages in a sum in excess of $15,000. Said services, care, and treatment are continuing and shall continue in the future, at a presently unascertainable amount.

49. Plaintiff has been compelled to retain the services of an attorney to prosecute this action and is, therefore, entitled to reasonable attorney's fees and costs incurred herein.

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

**SECOND CLAIM FOR RELIEF**
**(Negligence Per Se)**

50. Plaintiffs repeat and reallege each and every allegation contained above and incorporate the same herein by reference as though fully set forth herein.

51. At all times relevant hereto, the Defendants were the owners, managers, supervisors, controllers, agents, hosts, security officers, employers, servants, and other parties responsible in some manner for of the resident located at 6145 Novelty Street, Las Vegas, Nevada.

52. On or about June 3, 2018, the subject premises were in an unsafe and hazardous condition, including but not limited to dangerous patrons on the premises, illegal activities on the premises, violations of Nevada law, violations of Clark County Codes and Ordinances, etc; and this dangerous conditions were known to the Defendants or through reasonable inquires should have been known to Defendants.

53. That as a direct and a proximate cause of the unsafe, hazardous condition(s) and the negligence of the Defendants a shooting occurred on or near the subject premises which caused the injuries, death and damages alleged herein.

54. Leading up to the date of the incident, Defendants negligently and/or intentionally violated the codes, rules, regulations, statutes and ordinances of the State of State of Nevada, County of Clark, and the City of Las Vegas which caused or contributed to the shooting which occurred on or near the subject premises which caused the injuries, death and damages alleged herein.

55. The codes, rules, regulations, statutes, and ordinances were designed to protect the Decedent and Plaintiffs from the type of injuries they sustained on the night at issue.

56. The conduct of Defendants, and each of them, as alleged herein was willful, oppressive, malicious, and done and conducted with a reckless and wanton disregard for the rights and safety of the Decedent and Plaintiffs.

57. As a direct and proximate result of the willful, oppressive, and malicious conduct of the Defendants done in reckless and wanton disregard for the rights and safety of the Decedent and Plaintiffs, the Plaintiffs have and will sustain damages to be proven at trial and for which the Plaintiffs are entitled to exemplary (or punitive) damages against the Defendants, and each of them individually, in an amount to deter such conduct in the future.

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

58. As a direct and proximate result of the conduct of each of the Defendants, Plaintiff BRYAN LOVETT was injured and Decedent RICE was killed.

59. As a direct and proximate result of the conduct of each of the Defendants, Plaintiffs, sustained damages as a result of the death of Decedent RICE. Plaintiffs sustained past and future loss of support, society, comfort, consortium, companionship and disfigurement as well as past and future, grief or sorrow; and such other damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

60. Decedent RICE and Plaintiff BRYAN LOVETT sustained damages including, but not limited to physical pain and suffering; mental pain and suffering; loss of enjoyment of life and disfigurement; Plaintiffs, and each of them, have sustained damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

61. Prior to the injuries complained of herein, Decedent RICE and Plaintiff BRYAN LOVETT were able-bodied men, gainfully employable and physically capable of engaging in all other activities for which they were otherwise suited. By reason of the premises and as a direct and proximate result therefore, Decedent RICE and Plaintiff BRYAN LOVETT were precluded from engaging in activities and occupations in which he would have been able to achieve. This has caused and shall continue to cause Decedent and Plaintiff BRYAN LOVETT a loss of earning and earning capacity to their damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

62. By reason of the premises and as a direct and proximate result therefore, Plaintiff BRYAN LOVETT, continues to and shall continue to be limited in his activities and occupations in which he is able to achieve. This has caused and shall continue to cause Plaintiff a loss of earning and earning capacity to his damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

63. That as a direct and proximate cause of Defendants' negligence, the Estate of Decedent RICE incurred unnecessary funeral expenses, burial fees, and other special damages in an amount in excess of $15,000.00.

///

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

64. These unnecessary funeral expenses, burial fees and other special damages are recoverable by the Estate of Decedent RICE pursuant to NRS § 41.085. The Estate of Decedent RICE is also entitled to punitive damages pursuant to NRS § 41.085.

65. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT sustained injuries all or some of which conditions may be permanent and disabling in nature, all to their general damage in a sum in excess of $15,000.

66. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT were required to and did receive medical and other treatment for their injuries received in an expense all to their damages in a sum in excess of $15,000. Said services, care, and treatment are continuing and shall continue in the future, at a presently unascertainable amount.

67. Plaintiff has been compelled to retain the services of an attorney to prosecute this action and is, therefore, entitled to reasonable attorney's fees and costs incurred herein.

**THIRD CLAIM FOR RELIEF**
**(Negligent Security)**

68. Plaintiffs repeat and reallege each and every allegation contained above and incorporate the same herein by reference as though fully set forth herein.

69. On June 3, 2018, Defendants, and each of them, owed duties to members of the general public as invitees and guests on their premises, including Plaintiffs and Decedent, to take reasonable measures to keep said individuals safe from dangers and hazards, the existence of which they knew, or should have known through reasonable inspection, caution, investigation, and awareness.

70. On June 3, 2018, Defendants, and each of them, owed duties to members of the general public as invitees and guests on their premises, including Plaintiffs and Decedent, not to create dangers and hazards.

71. On June 3, 2018, Defendants, and each of them knew or should have known that there was a danger to patrons, including Plaintiffs and Decedent.

///

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

72. That despite this knowledge, Defendants, and each of them failed to take adequate and reasonable measures to appropriately ensure the safety of the general public, including Plaintiffs and Decedent.

73. That despite this knowledge, Defendants, and each of them, created a danger to the safety of the general public, including Plaintiffs and Decedent.

74. That the Defendant and their employees and agents were improperly trained, supervised, and hired to handle the dangers and hazards connected with the party for which they were responsible and/or created.

75. That Defendants and each of them breached said duties owed to Plaintiff as a result of their negligence, carelessness, and recklessness by failing to maintain adequate security on the property.

76. As a direct and proximate result of the conduct of each of the Defendants, Plaintiff BRYAN LOVETT was injured and Decedent RICE was killed.

77. As a direct and proximate result of the conduct of each of the Defendants, Plaintiffs, sustained damages as a result of the death of Decedent RICE. Plaintiffs sustained past and future loss of support, society, comfort, consortium, companionship and disfigurement as well as past and future, grief or sorrow; and such other damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

78. Decedent RICE and Plaintiff BRYAN LOVETT sustained damages including, but not limited to physical pain and suffering; mental pain and suffering; loss of enjoyment of life and disfigurement; Plaintiffs, and each of them, have sustained damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

79. Prior to the injuries complained of herein, Decedent RICE and Plaintiff BRYAN LOVETT were able-bodied men, gainfully employable and physically capable of engaging in all other activities for which they were otherwise suited. By reason of the premises and as a direct and proximate result therefore, Decedent RICE and Plaintiff BRYAN LOVETT were precluded from engaging in activities and occupations in which he would have been able to achieve. This has caused and shall continue to cause Decedent and Plaintiff BRYAN LOVETT a loss of earning and

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

earning capacity to their damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

80. By reason of the premises and as a direct and proximate result therefore, Plaintiff BRYAN LOVETT, continues to and shall continue to be limited in his activities and occupations in which he is able to achieve. This has caused and shall continue to cause Plaintiff a loss of earning and earning capacity to his damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

81. That as a direct and proximate cause of Defendants' negligence, the Estate of Decedent RICE incurred unnecessary funeral expenses, burial fees, and other special damages in an amount in excess of $10,000.00.

82. These unnecessary funeral expenses, burial fees and other special damages are recoverable by the Estate of Decedent RICE pursuant to NRS § 41.085. The Estate of Decedent RICE is also entitled to punitive damages pursuant to NRS § 41.085.

83. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT sustained injuries all or some of which conditions may be permanent and disabling in nature, all to their general damage in a sum in excess of $15,000.00

84. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT were required to and did receive medical and other treatment for their injuries received in an expense all to their damages in a sum in excess of $15,000. Said services, care, and treatment are continuing and shall continue in the future, at a presently unascertainable amount.

85. Plaintiff has been compelled to retain the services of an attorney to prosecute this action and is, therefore, entitled to reasonable attorney's fees and costs incurred herein.

**FOURTH CLAIM FOR RELIEF**
**(Respondeat Superior)**

86. Plaintiffs repeat and reallege each and every allegation contained above and incorporate the same herein by reference as though fully set forth herein.

///

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

87. Upon information and belief, at the time and place where Defendants acts occurred, said Defendants or agents or employees of Defendants were in the course and scope of their duties as an employee or agent for Defendants and in furtherance of the business of Defendants

88. Upon information and belief, Defendants are thereby responsible for the previously alleged acts of negligence of their employees and/or agents, which acts were in furtherance of the business of their principal.

89. As a direct and proximate result of the conduct of each of the Defendants, Plaintiff BRYAN LOVETT was injured and Decedent RICE was killed.

90. As a direct and proximate result of the conduct of each of the Defendants, Plaintiffs, sustained damages as a result of the death of Decedent RICE. Plaintiffs sustained past and future loss of support, society, comfort, consortium, companionship and disfigurement as well as past and future, grief or sorrow; and such other damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

91. Decedent RICE and Plaintiff BRYAN LOVETT sustained damages including, but not limited to physical pain and suffering; mental pain and suffering; loss of enjoyment of life and disfigurement; Plaintiffs, and each of them, have sustained damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

92. Prior to the injuries complained of herein, Decedent RICE and Plaintiff BRYAN LOVETT were able-bodied men, gainfully employable and physically capable of engaging in all other activities for which they were otherwise suited. By reason of the premises and as a direct and proximate result therefore, Decedent RICE and Plaintiff BRYAN LOVETT were precluded from engaging in activities and occupations in which he would have been able to achieve. This has caused and shall continue to cause Decedent and Plaintiff BYRAN LOVETT a loss of earning and earning capacity to their damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

93. By reason of the premises and as a direct and proximate result therefore, Plaintiff BRYAN LOVETT, continues to and shall continue to be limited in his activities and occupations in which he is able to achieve. This has caused and shall continue to cause Plaintiff a loss of

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

earning and earning capacity to his damages in a presently unascertainable amount, the allegations of which Plaintiff prays leave of this Court to insert herein.

94. That as a direct and proximate cause of Defendants' negligence, the Estate of Decedent RICE incurred unnecessary funeral expenses, burial fees, and other special damages in an amount in excess of $10,000.00.

95. These unnecessary funeral expenses, burial fees and other special damages are recoverable by the Estate of Decedent RICE pursuant to NRS § 41.085. The Estate of Decedent RICE is also entitled to punitive damages pursuant to NRS § 41.085.

96. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT sustained injuries to all or some of which conditions may be permanent and disabling in nature, all to their general damage in a sum in excess of $15,000.00

97. As a direct and proximate result of the aforementioned, Decedent RICE and Plaintiff BRYAN LOVETT were required to and did receive medical and other treatment for their injuries received in an expense all to their damages in a sum in excess of $15,000.00. Said services, care, and treatment are continuing and shall continue in the future, at a presently unascertainable amount.

98. Plaintiff has been compelled to retain the services of an attorney to prosecute this action and is, therefore, entitled to reasonable attorney's fees and costs incurred herein.

WHEREFORE, the Plaintiffs, and each of them, expressly reserving their right to amend this Complaint at the time of trial of this action to include all items of damages not yet ascertained, demands judgment against the Defendants, and each of them, as follows:

1. For special damages to each of the Plaintiffs including, but not limited to, funeral expenses, burial expenses, and medical expenses, the full nature and extent of said expenses are not known to Plaintiffs but in any event in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00); leave is requested to amend this complaint to conform to proof at time of trial;

///

THE702FIRM
ATTORNEYS AT LAW
00 S. Seventh Street, Suite 400
LAS VEGAS, NEVADA 89101
PHONE: (702) 776-3333

2. General damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00);

3. For punitive or exemplary damages in an amount to be determined by the jury to punish the malicious and oppressive conduct of the Defendants;

4. Damages for loss of earnings and earning capacity, when the same have been fully ascertained;

5. Prejudgment interest;

6. Reasonable attorney's fees;

7. Costs of suit herein; and

8. For such other and further relief as the Court may deem proper.

DATED on this 29 day of August, 2019.

**THE702FIRM**

MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J MYERS, ESQ.
Nevada Bar No. 8857
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
*Attorneys for Plaintiffs*

**THE SCHNITZER LAW FIRM**

JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
Telephone: (702) 960-4050
*Attorneys for Plaintiff*

FILED
NOV 08 2019
CLERK OF COURT

ANS
Jasper Han
(NAME)
9660 Grouse Grove AVE
(ADDRESS)
Las Vegas, NV 89148
(CITY, STATE, ZIP)
702 622-1111
(TELEPHONE)
Defendant *Pro Se*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

Eric Rice

Plaintiff,

vs.

Jasper Han

Defendant.

Case No.: A-19-801549-C
Dept. No.:

**ANSWER**

Defendant(s), Jasper Han, *Pro Se*, hereby submits this Answer to the Complaint on file herein, and alleges and avers as follows:

1. Answering paragraph(s) ____________ of Plaintiff's Complaint, Defendant(s) ADMITS each and every allegation contained therein.

2. Answering paragraph(s) 1 ~ 98 of Plaintiff's Complaint, Defendant(s) DENIES each and every allegation contained therein.

3. Answering paragraph(s) ____________ of Plaintiff's Complaint, Defendant(s) state(s) that Defendant(s) do(es) not have sufficient knowledge or information upon which to base a belief as to the truth of the allegation contained therein and therefore Defendant(s) DENIES each and every allegation contained therein.

4. Answering paragraph(s) ____________ of the Plaintiff's Complaint, Defendant(s) STATE(S) ____________

RECEIVED
NOV 28 2019
CLERK OF THE COURT

## AFFIRMATIVE DEFENSES

1. Defendant(s) hereby incorporate(s) by reference those affirmative defenses enumerated in NRCP 8 as though fully set forth herein, as applicable upon discovery. In the event further investigation or discovery reveals the applicability of any such defenses, Defendant(s) reserve(s) the right to seek leave of court to amend this Answer to more specifically assert any such defense. Such defenses are herein incorporated by reference for the specific purposes of not waiving any such defenses.

_____. Accord and satisfaction.

_____. Arbitration and award.

_____. Assumption of risk.

_____. Contributory negligence.

_____. Discharge in bankruptcy.

_____. Duress.

_____. Estoppel.

_____. Failure of consideration.

_____. Fraud.

_____. Illegality.

_____. Injury by fellow servant.

_____. Laches.

_____. License.

_____. Payment.

_____. Release.

_____. Res judicata.

_____. Statute of frauds.

_____. Statute of limitations.

_____. Waiver.

2. All possible affirmative defenses may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry upon filing of this Answer. Therefore

Defendant(s) reserve(s) the right to amend this Answer to allege additional affirmative defenses and claims, counter-claims, cross-claims or third-party claims, as applicable, upon further investigation and discovery.

______. ______________________________________________________________

__________________________________________________________________________.

**WHEREFORE,** this Answering Defendant prays that this Honorable Court will:

1. Dismiss the Complaint with prejudice or grant Plaintiff a reduced amount based upon the admissions, denials and affirmative defenses, if any, as alleged above herein;
2. Award Defendant(s)'s costs; and
3. Award Defendant(s) such other and further relief as the Court deems just and equitable.

DATED this 8th day of Nov, 2019.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

______________________________
Defendant *Pro Se*

**CERTIFICATE OF MAILING**

I HEREBY CERTIFY that on the ________ day of _______________, 20___, I placed a true and correct copy of the foregoing **ANSWER** in the United States Mail at Las Vegas, Nevada, with first-class postage prepaid, addressed to the following:

______________________________

______________________________

______________________________

______________________________
Defendant *Pro Se*

Electronically Filed
4/20/2020 8:48 AM
Steven D. Grierson
CLERK OF THE COURT

**ANS**

RENA MCDONALD, ESQ.
Nevada Bar No. 8852
**MCDONALD LAW GROUP, LLC**
203 S. Water Street, Suite 300
Henderson, NV 89015
Phone (702)448-4962
Fax (702)448-5011
rena@mcdonaldlawgroup.com
Attorney for Defendants
Zheng Trust and Li Jun Zheng

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,

Plaintiffs,

vs.

ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI-XX, inclusive and ROE CORPORATIONS XI-XX, inclusive.

Defendants.

CASE NO. : A-19-801549-C
DEPT. NO. : 26

**ANSWER**

COMES NOW, Defendants ZHENG TRUST (hereafter "Trust") and LI JUN ZHENG (hereafter "Zheng"). (hereinafter collectively "Defendants") by and through their attorney of record, Rena McDonald, Esq. of the McDonald Law Group, LLC and hereby submit their Answer to the Complaint as follows:

MCDONALD LAW GROUP, LLC
203 S. WATER STREET, SUITE 300
HENDERSON, NV 89015
(702) 448-4962

1. Answering the allegations contained in Paragraphs 6, Defendants admit these allegations.

2. Answering the allegations contained in Paragraphs 5, 7, 8, 16, 21, 23-98., Defendants deny these allegations.

3. Answering the allegations contained in Paragraphs 1-4, 9-15, 17-20, 22, Defendants are without sufficient information to admit or deny these allegations.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

These answering Defendants deny the allegations of the Complaint and each cause of action thereof, and each paragraph in each cause of action, and each and every part thereof, including all allegations that the Plaintiff is damaged in the sum or sums alleged, or to be alleged, or any other sums whatsoever.

### SECOND AFFIRMATIVE DEFENSE

These answering Defendants are informed and believe, and thereon allege that the Plaintiff's Complaint on file herein, and each and every cause of action therein, fails to state facts sufficient to constitute a cause of action against these answering Defendants upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

These answering Defendants alleges that the occurrence referred to in the Plaintiff's Complaint, and all damages, if any, resulting therefrom, were caused by the breach of contract, acts, conduct, omissions, recklessness, negligence and/or intentional misconduct of a third party or parties over whom these answering Defendants had no control.

### FOURTH AFFIRMATIVE DEFENSE

These answering Defendants allege that the occurrence referred to in the Plaintiff's Complaint, and the resulting damages, if any, to Plaintiff, were proximately caused or contributed

to by the Plaintiff's own breach of contract, acts, conduct, omissions, recklessness, negligence and/or intentional misconduct, and such negligence was greater than the negligence, if any, of these answering Defendants, thereby completely or partially barring the Plaintiff's recovery herein.

**FIFTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege that Plaintiff failed to commence an action in this matter within the periods of limitation as prescribed in the Nevada Revised Statutes, and that this action is barred by the applicable statutes of limitations and statutes of repose and no recovery may be made.

**SIXTH AFFIRMATIVE DEFENSE**

These answering Defendants allege that if they are found responsible in whole or in part for any damages to Plaintiff or some other party, whether as alleged or otherwise, then these answering Defendants are informed and believe, and thereon allege, that the liability will be predicated upon the active conduct of the Plaintiff or some other party, whether by negligence, breach of contract, fraud or otherwise, which unlawful conduct was the legal cause of the alleged occurrence, and that the Plaintiff's action is barred by that active affirmative conduct.

**SEVENTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, that this Court lacks jurisdiction to consider the claims of the Plaintiff and further alleges that this Court lacks jurisdiction to consider this action.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff, with full knowledge of all the facts connected with or relating to the transaction and occurrence alleged in the Complaint, ratified and confirmed in all respects the acts of these answering Defendants by accepting the benefits to her accruing from such acts.

/ / /

**NINTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, as to each cause of action that the Plaintiff herein has failed, refused and neglected to take reasonable steps to mitigate its damages, if any, thus barring or diminishing its recovery herein. The alleged injuries sustained by Plaintiff were proximately caused by its own negligence, alternatively, if the negligence of Plaintiff was not the sole proximate cause of its injuries, then it was a proximate contributory cause of the alleged injuries.

**TENTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, that the Plaintiff unreasonably delayed the filing of the Complaint and notification of these answering Defendants to the alleged breach of contract, the alleged negligence and the basis for the causes of action alleged against these answering Defendants, all of which has unduly and severely prejudiced these answering Defendants in his defense of the action, thereby barring or diminishing the Plaintiff's recovery herein under the Doctrine of Waiver.

**ELEVENTH AFFIRMATIVE DEFENSE**

It has been necessary for these answering Defendants to retain the services of an attorney to defend this action, and these Defendants are entitled to a reasonable sum as and for attorneys' fees.

**TWELFTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, that the claims of the Plaintiff are reduced, modified and/or barred by the Doctrine of Unclean Hands.

/ / /

/ / /

/ / /

**THIRTEENTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, that the Plaintiff failed to perform express contractual conditions precedent to the performance of these answering Defendants, and such failure excuses any nonperformance by these answering Defendants.

**FOURTEENTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, that actions and omissions by the Plaintiff constituted a breach of contract, and such breach excuses any nonperformance by these answering Defendants.

**FIFTEENTH AFFIRMATIVE DEFENSE**

These answering Defendants are informed and believe, and thereon allege, that at all times mentioned, there was, has been and continues to be a material failure of consideration of the part of the Plaintiff herein, as a consequence of which these answering Defendants' duty of performance has been discharged.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part because Plaintiff knowingly waived, by verbal expressions or conduct, any known rights which it may have had against the Defendants.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Defendants, in good faith, believed that they were acting under a legal right and did no more than insist upon these legal rights in a permissible way.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Defendants engaged in justified or privileged conduct to protect Defendants' legitimate business interests.

**NINETEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims, and each of them, are barred as a result of an accord and satisfaction.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiff's claims are subject to arbitration and may not be resolved in a court of law.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff had knowledge of and assumed the risk. The injuries alleged by Plaintiff were caused by and arose out of the risk which Plaintiff had knowledge of and assumed.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

At the time and place under the circumstances alleged by the Plaintiff, Plaintiff had full and complete knowledge and information in regard to the conditions and circumstances then and there existing, and through Plaintiff's own knowledge, conduct, acts and omissions, assumed the risk attendant to any condition there or then present.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claims, and each of them, are barred due to duress.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiff is estopped from recovering any sums claimed because and by reason of Plaintiff's own conduct. Defendants were ignorant of the truth or falsity of Plaintiff's statements at the time they were made and Defendants relied on Plaintiff's representations. Each and every one of Plaintiff's alleged rights, claims, and obligations which it seeks to enforce against Defendants are, by Plaintiff's conduct, agreement, or otherwise, barred by the doctrine of estoppel.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiff acted in such a way as to cause these Defendants to believe that plaintiff would not file suit, and Defendants relied on those actions or representations.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred for failure of consideration.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims, and each of them, are barred due to fraud.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

The claims, and each of them, are barred as a result of the failure of the Plaintiff to timely make those claims as against these answering Defendants and allow these answering Defendants to collect evidence sufficient to establish their nonliability.

**TWENTY-NINETH AFFIRMATIVE DEFENSE**

Plaintiff is not owed any money, as Plaintiff has received full payment to the actual creditor or assignee for the debt at issue, which payment was accepted. Likewise, Plaintiff is not owed any money from these answering Defendants.

**THIRTIETH AFFIRMATIVE DEFENSE**

By virtue of Plaintiff's actions, conduct, and omissions, these answering Defendants have been released.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims, and each of them, are barred by res judicata.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

Any contract between Plaintiff and these answering Defendants are barred by the statute of frauds.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

Pursuant to Rule 11, all possible affirmative defenses may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry upon the filing of Defendants' Answer and, therefore, Defendants reserve the right to amend their Answer to allege additional affirmative defenses, if subsequent investigation warrants.

/ / /

/ / /

/ / /

/ / /

WHEREFORE, Defendants pray for judgment as follows:

1. That Plaintiff take nothing by way of its Complaint; and

2. For such other and further relief as this Court may deem just and proper.

DATED the 17th day of April 2020

**MCDONALD LAW GROUP, LLC**

By ***/s/Rena McDonald***

Rena McDonald, Esq.
Nevada Bar No. 8852
203 S. Water Street, Suite 300
Henderson, NV 89015
(702)448-4962
Fax (702) 448-5011
Attorney for Defendants
Zheng Trust and Li Jun Zheng

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of McDonald Law Group, LLC and that on the 20th day of April 2020, pursuant to EDCR 8.05(a), EDCR 8.05(f), NRCP 5(b)(2)(D) and Administrative Order 14-2, I did serve a true and correct copy of the above and foregoing **ANSWER** by mandatory electronic service through the Eighth Judicial District Court's electronic filing system to:

Service 702 service@the702firm.com
Brandon Born brandon@the702firm.com
Sofia Chacon sofia@the702firm.com
Jennifer Edwards jennifer@the702firm.com
Michael C. Kane mike@the702firm.com
Bradley J Myers Brad@the702firm.com
Gloria Pacheco gloria@the702firm.com
Richard R. Reed rrreedlaw@gmail.com

Jason Sifers jsifers@mcdonaldcarano.com
Jeff Silvestri jsilvestri@mcdonaldcarano.com

Melisa Gabhart melisa@theschnitzerlawfirm.com
Jordan P. Schnitzer jordan@theschnitzerlawfirm.com

***/s/Michelle Graham***

An Employee of McDonald Law Group, LLC

Electronically Filed
3/22/2023 2:32 PM
Steven D. Grierson
CLERK OF THE COURT

**MDSM**
Jeff Silvestri (NSBN 5779)
Rory T. Kay (NSBN 12416)
Chelsea Latino (NSBN 14227)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
jsilvestri@mcdonaldcarano.com
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Damali A. Taylor (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8928
dtaylor@omm.com

Dawn Sestito (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
dsestito@omm.com

*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,<br><br>Plaintiffs,<br><br>v.<br><br>ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive,<br><br>Defendants. | CASE NO.: A-19-801549-C<br><br>DEPT NO.: 26<br><br>**DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.**<br><br>**Notice of Intent to Appear by Simultaneous Audiovisual Transmission Equipment**<br><br>**HEARING REQUESTED** |

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Defendant AIRBNB, INC. ("Airbnb") moves the Court for an order to dismiss plaintiff Bryan Lovett's claims against Airbnb. This Motion is based upon the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and such other matters that the Court may wish to consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Bryan Lovett was the victim of a random, senseless shooting while on his way to a Las Vegas party. Because this party—which Lovett never reached—was held at a property booked via Airbnb's online platform, Lovett seeks to hold Airbnb liable for his injuries. There is no legal basis for Lovett's claims against Airbnb under Nevada law. His shooting was a tragedy, but not one perpetrated by Airbnb.

Lovett's negligence claims cannot succeed because he does not (and cannot) establish an exception to the general rule that there is no duty to protect against third-party criminal misconduct. Lovett's negligence per se claim similarly fails because he does not identify any statute or law that Airbnb allegedly violated. As does his respondeat superior theory because he does not allege that Airbnb employed or controlled the unknown assailant or any other wrongdoer. Because Lovett does not, and cannot, plead any sufficient basis to hold Airbnb liable for his injuries, his claims against Airbnb should be dismissed with prejudice.

### II. STATEMENT OF FACTS

Airbnb provides "a website—an online platform—that connects individuals who wish to offer accommodations ('[h]ost(s)') with those seeking to book accommodations ['guest(s)'], nothing more." *King v. Pleasant 30 LLC*, No. 514353/2021, 2022 WL 12827986, at *2 (N.Y. Sup. Ct. Oct. 6, 2022) (first alteration in original); Compl. ¶ 21. Airbnb does not own or control the properties that hosts list, but instead allows hosts and guests to connect with each other to transact, make payments, and communicate. *King*, 2022 WL 12827986, at *2 ("Airbnb is not an owner of nor has any control over the properties listed on its platform."); *Airbnb, Inc. v. City & Cnty. of S.F.*, 217 F. Supp. 3d 1066, 1069 (N.D. Cal. 2016) ("Airbnb does not own, manage or operate any of the host properties, and is not a party to the rental agreements"); *Carroll v.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767, 772 (E.D. La. 2017) (holding that Airbnb does not control listed properties such as to establish a duty to protect third parties). Hosts retain autonomy over their properties, can invite anyone onto their properties, and indeed often list their properties on several platforms other than Airbnb.

Lovett alleges that he and Raheem Rice—whose claims are stayed pending arbitration—were "travelling to attend a party" located in Las Vegas (the "Property") when the shooting occurred. Compl. ¶ 18. As they were "approaching the party, on or near the premises, an unknown individual opened fire on the crowd, striking" Lovett and Rice. *Id.* ¶ 19. Tragically, Rice died, and Lovett was injured. *Id.* ¶¶ 20, 27-29. Lovett alleges that the party's host booked the Property to which Lovett and Rice were travelling through Airbnb's website. *Id.* ¶ 21. The complaint does not allege that Lovett had an account with Airbnb or that Airbnb owned or controlled the Property in any way.

## III. ARGUMENT

### A. Legal Standard

When ruling on a Rule 12(b)(5) motion to dismiss, the Court's task "is to determine whether … the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 846, 858 P.2d 1258, 1260 (1993). The "factual allegations of the complaint must be accepted as true," *id.*, but "allegations [that] are legal conclusions … need not be accepted as true." *Nev. Yellow Cab Corp. v. State*, No. 83014, 2022 WL 17367603, at *2 (Nev. Dec. 1, 2022). "The test for determining whether the allegations of a complaint are sufficient to assert a claim for relief is whether the allegations give fair notice of the nature and basis of a legally sufficient claim and the relief requested." *Breliant*, 109 Nev. at 846, 858 P.2d at 1260. As set forth below, none of Lovett's claims satisfies this test.

/ / /

/ / /

/ / /

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**B. Lovett's Negligence Claims Fail Because He Does Not Allege Airbnb Owed a Duty to Prevent Third-Party Crime.**

Lovett's negligence and negligent-security claims[1] fail to allege facts to establish that Airbnb had any duty to protect him from third-party criminal conduct. Duty is an essential element of a negligence claim. *See Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 777, 291 P.3d 150, 153 (2012). As a general rule, "no duty is owed to control the dangerous conduct of another or to warn others of the dangerous conduct." *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009); *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996) (the "general rule" is that a defendant "does not have a duty to protect from a criminal attack by a third person"). This no-duty rule yields only in exceptional circumstances—namely, where (1) a special relationship exists between the defendant and the plaintiff or victim, ***and*** (2) the harm created by the defendant's conduct was foreseeable. *Sanchez*, 125 Nev. at 824, 221 P.3d at 1280-81. Lovett does not allege, and cannot establish, either a special relationship or foreseeability.

**1. Lovett Does Not Allege a Special Relationship With Airbnb.**

Lovett has alleged no facts to support a special relationship with Airbnb. Indeed, he alleges no relationship at all with Airbnb. The only connection between Lovett and Airbnb was tangential: at the time he was shot, Lovett was traveling to a party hosted by an unidentified person at a property rented via Airbnb's online platform. Compl. ¶¶ 18-21. Nevada courts routinely dismiss negligence claims where, as here, the plaintiff fails to allege a direct relationship with the defendant. *See Sanchez*, 125 Nev. at 825, 221 P.3d at 1281-82 (no special relationship between pharmacies and victims of collision caused by individual driving under the influence of prescriptions dispensed by pharmacies; victims were "unidentifiable members

[1] Under Nevada law, negligent-security claims are analyzed under the same test as general negligence claims. *See Hoy v. Jones*, No. 2:18-cv-01403-RFB-EJY, 2020 WL 2798017, at *9 (D. Nev. May 30, 2020) ("To prove a negligent-security claim, a plaintiff must show that: '(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages.'"); *Blanco v. Circus Circus Casinos, Inc.*, No. 2:10-cv-02198-RLJ-GWF, 2012 WL 1900942, at *2 (D. Nev. May 24, 2012) (analyzing negligence and negligent-security claims together).

of the general public who were unknown to the pharmacies" and had "no direct relationship" with the pharmacies); *Flaherty v. Wells Fargo Bank Nat'l Ass'n*, --- F. Supp. 3d ----, 2022 WL 3648033, at *3 (D. Nev. Aug. 24, 2022) (recognizing "[t]here is generally 'no duty to control a party's dangerous conduct, warn others, or protect another from criminal attack,'" and dismissing negligence claim with prejudice at the pleading stage because, as a matter of law, no special relationship existed between Wells Fargo and plaintiff, who "was not a customer of Wells Fargo[]" and who was injured by "scammers, *not* Wells Fargo").

Nor can this defect be cured by amendment, since there is no basis for Lovett to allege a "special relationship" with Airbnb based on the mere fact that Lovett was travelling to a party at a property booked through Airbnb at the time he was injured. Nevada recognizes special relationships only in unique circumstances where "one party submitted itself to control by the other party or one party exerted control over the other party"—as is the case, for example, between an innkeeper and guest, hospital and patient, or teacher and student. *Flaherty*, 2022 WL 3648033, at *3; *Scialabba*, 112 Nev. at 969, 921 P.2d at 930. "[T]he rationale for imposing liability" in these circumstances is that "the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other.'" *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 127 Nev. 287, 297, 255 P.3d 238, 245 (2011). The ability of one party to exercise control over the other "'must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred.'" *Id.*

Here, Airbnb had no ability to exercise control over Lovett. Courts have declined to find a special relationship between an online platform and a victim of a crime even where—unlike here—the victim had a commercial relationship with the online platform. In *Beckman*, the plaintiff sued Match.com for negligence after a man she met using the online platform attacked her. *Beckman v. Match.com, LLC*, 2017 WL 1304288, at *1, *3 (D. Nev. Mar. 10, 2017). The court dismissed the negligence claim, holding that although plaintiff was a "paying subscriber" to Match.com, and despite plaintiff's allegations that Match.com had "unique access to information" that it used "to create 'matches' among its users," this did not give rise to a special relationship. *Id.* at *3; 743 F. App'x 142 (9th Cir. 2018) (affirming dismissal); *see*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*also Carroll*, 289 F. Supp. 3d at 773 (declining to find special relationship between Airbnb and its users for purposes of negligence claim, noting that "Airbnb merely offered a platform on which the Defendant Owners listed the Property").

Nor can Lovett claim a special relationship with Airbnb based on control over the Property—assuming he was even on the Property at the time of the shooting. *See* Compl. ¶ 19 (alleging shooting "on *or near* the premises" (emphasis added)). A premises-based special relationship "turns on whether [the defendant] exercised control over the premises." *Scialabba*, 112 Nev. at 969, 921 P.2d at 931. Lovett alleges that ***other*** defendants "owned the property," Compl. ¶¶ 5, 7, managed the property, *id.* ¶ 13, "operat[ed] security on the property," *id.* ¶ 11, and "host[ed] the party," *id.* ¶ 12, but makes no such allegations as to Airbnb.[2]

And for good reason: Lovett cannot plead any facts that would explain how a foreign corporation that provides an online platform for millions of property listings worldwide could have exercised the requisite level of control over the Property here. Courts across the country have repeatedly held that Airbnb—which does not own the properties listed on its online platform—does not exercise sufficient control over those properties to give rise to a special relationship. *See Jackson v. Airbnb, Inc.*, --- F. Supp. 3d ----, 2023 WL 2292598, at *3 (C.D. Cal. Feb. 2, 2023) (finding no special relationship based on control of subject property and noting that the allegations showed "Airbnb can remove listings and revoke memberships, not that it paves walkways and puts up fences"); *Jackson v. Airbnb, Inc.*, --- F. Supp. 3d ----, 2022 WL 16752071, at *7 (C.D. Cal. Nov. 4, 2022) ("Airbnb does not exercise sufficient control over the subject property to support finding a special relationship here."); *Carroll*, 289 F. Supp. 3d at 774 (finding no "special relationship between Plaintiffs and Airbnb"); *Esposito v. Airbnb Action, LLC*, 2022 WL 2980700, at *5 (W.D. Ark. July 27, 2022) (declining to "view the relationship between Airbnb and Plaintiffs as that of innkeeper/guest or business owner/invitee" where plaintiffs did "not claim Airbnb owns or manages any of the rental

---

[2] Lovett's false allegation that Airbnb, Shenandoah Southwest, Fenex Consulting, and Zheng Trust were "joint ventures" is a legal conclusion unsupported by any factual allegations, and therefore should be disregarded by the Court. *Nev. Yellow Cab Corp.*, 2022 WL 17367603, at *2.

properties advertised on its online platform"). Holding otherwise here would invite "limitless and unpredictable liability, creating a zone of risk that would be impossible to define." *Flaherty*, 2022 WL 3648033, at *4 (citing *Sanchez*, 125 Nev. at 825; 221 P.3d at 1281); *see also Wasmund v. Aria Resort & Casino Holdings, LLC*, No. 68635, 2017 WL 946326, at *2 (Nev. Ct. App. Mar. 6, 2017) (affirming dismissal under NRCP 12(b)(5) and recognizing that assigning a duty of care under similar facts "creates an immeasurable zone of danger"). Nevada's appellate courts have confirmed that such limitless and unpredictable liability is contrary to Nevada law and public policy. *See id.*

**2. Lovett Does Not Allege That the Shooting Was Foreseeable.**

Even if Lovett could allege a special relationship with Airbnb, his negligence claim independently fails because he has not alleged that his shooting was foreseeable. *See Sanchez*, 125 Nev. at 824, 221 P.3d at 1281. Nevada courts have established a stringent foreseeability test that turns on whether the third party's act "is normal or extraordinary," whether the act is tortious or criminal, and the culpability of the act. *See Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 492, 215 P.3d 709, 725 (2009). Here, the unknown assailant's random, senseless shooting was extraordinary, criminal, and culpable—and could not have been foreseen by Airbnb.

Last year, a California court rejected a similar foreseeability argument, holding that a shooting injury at a property booked through Airbnb's platform was not foreseeable, even where the plaintiff alleged that similar crimes had occurred at or around the subject property in the past. *Jackson*, 2022 WL 16752071, at *8. The court concluded that "[i]t would have taken something near the level of psychic powers to foresee" the shooting, which is not what the law requires. *Id.*; *see also Esposito*, 2022 WL 2980700, at *6 (holding home-invasion robbery at property booked via Airbnb to be unforeseeable). The same is true here.

/ / /

/ / /

/ / /

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**C. Lovett's Negligence Per Se Claim Fails Because He Does Not Identify Any Statute Airbnb Allegedly Violated.**

"A negligence per se claim arises when a duty is created by statute." *Sanchez*, 125 Nev. at 828, 221 P.3d at 1283. In order to prevail on a negligence per se claim, the plaintiff must prove that "(1) he or she belongs to a class of persons that a statute is intended to protect, (2) the plaintiff's injuries are the type the statute is intended to prevent, (3) the defendant violated the statute, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages." *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1133 (D. Nev. 2019).

Lovett fails to satisfy the threshold requirement of a negligence per se claim: identifying a statute that Airbnb allegedly violated. Lovett's generic allegation that "Defendants negligently and/or intentionally violated the codes, rules, regulations, statutes and ordinances of the State of … Nevada, County of Clark, and the City of Las Vegas," Compl. ¶¶ 54-55, is insufficient. Negligence per se must be predicated upon a specific statutory provision. *See Vega v. E. Courtyard Assocs.*, 117 Nev. 436, 441, 24 P.3d 219, 222 (2001) (noting as element of negligence per se whether "an injured party fits within the class of persons that a *particular* provision of a [statute] was intended to protect" (emphasis added)).

Lovett's failure to identify any statutory provision warrants dismissal of his claim. *See Smith v. J.P. Morgan Chase Bank*, No. 3:11-cv-0314-LRH-VPC, 2011 WL 5373969, at *4 (D. Nev. Nov. 4, 2011) (dismissing negligence per se claim where plaintiff "fail[ed] to allege which specific sections of the Truth in Lending Act ('TILA') or the Real Estate Settlement Procedures Act ('RESPA') defendants are alleged to have violated"); *cf. Williams v. Heritage Square, LLC*, No. 2:15-cv-01598-APG-PAL, 2017 WL 3667704, at *3 & n.27 (D. Nev. Aug. 24, 2017) (rejecting plaintiff's negligence per se theory on summary judgment where plaintiff failed to

/ / /

/ / /

/ / /

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

allege negligence per se as a theory or the "statute or administrative code he is now relying on" in his complaint).[3]

**D. Lovett's Respondeat Superior Claim Fails.**

Lovett makes the conclusory allegation that all "Defendants" are liable on a theory of respondeat superior for the "alleged acts of negligence of their employees and/or agents, which acts were in furtherance of the business of their principal." Compl. ¶¶ 87-88. This claim fails as to Airbnb for several reasons.

As an initial matter, respondeat superior "is a theory of liability, not an independent cause of action," which is reason enough to dismiss the claim. *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028-29 (D. Nev. 2013) (dismissing vicarious liability claim on this ground); *see also Fernandez v. Penske Truck Leasing Co., L.P.*, No. 2:12-cv-00295-JCM-GWF, 2012 WL 1832571, *1 n.1 (D. Nev. May 18, 2012); *Madrigal v. Treasure Island Corp.*, No. 2:08-cv-01243-PMP-GWF, 2008 WL 11389168, at *3 (D. Nev. Dec. 30, 2008); *Garcia v. Nev. Prop. 1, LLC*, No. 2:14-cv-01707-JCM-GWF, 2015 WL 67019, at *3 (D. Nev. Jan. 6, 2015).

In any event, the doctrine of respondeat superior does not support Plaintiff's claims against Airbnb. "[R]espondeat superior liability attaches only when [an] employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 96 Nev. 814, 817, 618 P.2d 878, 879 (1980); *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1223, 925 P.2d 1175, 1179 (1996) (holding that an actionable claim on a theory of respondeat superior requires plaintiff to establish that "the actor at issue was an employee," "the action complained of occurred within the scope of the actor's employment," and the

---

[3] Alternatively, and at minimum, Airbnb moves for a more definite statement under Rule 12(e). Lovett's negligence per se claim, which purports to apply to unspecified "codes, rules, regulations, statutes, and ordinances" in the city, county, and state, Compl. ¶¶ 54-55—is "so vague or ambiguous that [Airbnb] cannot reasonably prepare a response." Nev. R. Civ. P. 12(e); *see also Yafchak v. S. Las Vegas Med. Invs., LLC*, 138 Nev. Adv. Op. 70, 519 P.3d 37, 41 & n.2 (2022) ("Where a defendant believes a complaint to be improperly obscure or otherwise vague, a defendant has alternative avenues by which to seek relief, including filing a motion for a more definite statement."). Without notice of what statute Plaintiff relied on, Airbnb cannot adequately defend itself. *See W. States Const., Inc. v. Michoff*, 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992).

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

employer had "control and direction not only of the employment …, but also all of [the] details and the method of performing the work").

Airbnb did not employ ***any*** of the actors at issue in this case—not the unknown assailant, not the Property owner/manager, and not the host of the party. As a result, Lovett's respondeat superior theory cannot succeed as a matter of law. *See Nat'l Convenience Stores, Inc. v. Fantauzzi*, 94 Nev. 655, 657, 584 P.2d 689, 691 (1978) ("[T]he employer can be vicariously responsible only for the acts of his employees[,] not someone else."); *Gonzalez v. Nev. Dep't of Corr.*, No. 2:12-cv-02143-RFB-CWH, 2015 WL 4711108, at *8 (D. Nev. Aug. 6, 2015) ("Respondeat superior extends to employers, under certain circumstances, liability for employee-committed torts.").

**E. Alternatively, the Court Should Strike Lovett's Prayer for Punitive Damages as to Airbnb.**

If this action is not dismissed, the Court should strike the prayer for punitive damages under Rule 12(f) because Lovett fails to allege any facts that would support such a claim. Punitive damages are an extraordinary remedy available only "when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 450-51 (2006). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person," "'express malice' is 'conduct which is intended to injure a person,'" and "'implied malice' is 'despicable conduct which is engaged in with a conscious disregard of the rights ... of others.'" *Id.*

The mere fact that Airbnb provides an online platform that was used to book a property to which Lovett was travelling at the time he was injured does not come close to "oppression, fraud, or malice." Nor does Lovett's generic allegation that Defendants engaged in "willful, oppressive, and malicious conduct," *see, e.g.*, Compl. ¶¶ 56-57, suffice. *See Desert Palace, Inc. v. Ace Am. Ins. Co.*, No. 2:10-cv-01638-RLH-LRL, 2011 WL 810235, at *5-6 (D. Nev. Mar. 2, 2011) (allegations that "do little more than restate the common law elements of oppression, fraud, or malice by providing synonyms for the terms and providing no additional

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

factual allegations" are insufficient); *Bonavito v. Nev. Prop. 1 LLC*, No. 2:13-cv-0417-JAD-CWH, 2014 WL 1347051, at *1 (D. Nev. Apr. 2, 2014) (striking punitive-damages allegation and prayer where plaintiff did "nothing more than include the word 'malice,' with no hint at how the hotel's alleged breach of the duty of care in maintaining the safety of the pool area was done with the intention to injure him or rises to the level of despicable conduct engaged in with a conscious disregard of his rights and safety").

## III. CONCLUSION

There is no question that Lovett's shooting was tragic. But it is equally clear that Airbnb cannot be liable for Lovett's injuries under Nevada law, where Airbnb had no relationship with Lovett, no way to foresee his shooting, and no control over the unknown assailant or any other wrongdoer. For the reasons set forth above, the Court should grant Airbnb's motion to dismiss. Because amendment would be futile, Lovett's claims should be dismissed with prejudice. *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 129 Nev. 394, 398, 302 P.3d 1148, 1152 (2013) ("[L]eave to amend should not be granted if the proposed amendment would be futile."). Alternatively, the Court should strike Lovett's prayer for punitive damages.

DATED this 22nd day of March, 2023.

MCDONALD CARANO LLP

By: */s/ Rory T. Kay*
Jeff Silvestri (NSBN 5779)
Rory T. Kay (NSBN 12416)
Chelsea Latino (NSBN 14227)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

Damali A. Taylor
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111

Dawn Sestito
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071

*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of March, 2023, I caused a true and correct copy of the foregoing **DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.** to be served via this Court's Electronic Filing system in the above-captioned case.

*/s/ CaraMia Gerard*
An employee of McDonald Carano LLP

Electronically Filed
4/5/2023 1:49 PM
Steven D. Grierson
CLERK OF THE COURT

JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
Telephone: (702) 960-4050
Facsimile: (702) 960-4092
Jordan@TheSchnitzerLawFirm.com
*Attorney for Plaintiff, Bryan Lovett*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ERIC RICE, Individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,<br><br>Plaintiffs,<br><br>vs.<br><br>ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOW PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOWA XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive.<br><br>Defendants. | Case No.: A-19-801549-C<br><br>Dept No.: 26<br><br>**PLAINTIFF, BRYAN LOVETT'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF BRIAN LOVETT'S CLAIMS AGAINST DEFENDANT, AIRBNB**<br><br>Hearing Date: April 25, 2023<br>Hearing Time: 9:30 a.m. |

COMES NOW, Defendant, BRYAN LOVETT, by and through his attorney of record, Jordan P. Schnitzer, Esq. of The Schnitzer Law Firm, and hereby submits his Opposition to Motion to Dismiss Bryan Lovett's Claims Against Defendant, AirBNB.

//

//

//

//

THE SCHNITZER LAW FIRM

THE SCHNITZER LAW FIRM

This Opposition is made based on Points and Authorities submitted herewith, together with the papers and pleadings on file herein, exhibits attached hereto and oral arguments this Court may allow.

DATED this 5th day of April 2023

BY: ______________________
JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
*Attorney for Plaintiff, Bryan Lovett*

THE SCHNITZER LAW FIRM

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

If a hotel's business model were to encourage wild parties with booze, a Nevada jury would hold it liable if it failed to employ security guards. *See Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 203 (1984). Until AirBNB implemented a permanent global party ban in 2022, it had just such a business model. *See* Bill Hutchinson, *Airbnb Issues Permanent Global Party Ban in Wake of String of Shootings*, ABC News, June 29, 2022;[1] Stateline, *Shootings and Wild Airbnb Parties Renew Calls for Crackdown on Short-Term Rentals*, HuffPost, June 24, 2019.[2]

For years, by collaborating with corporations like Defendant Shenandoah Southwest, Inc., AirBNB profited from putting illegal hotels, bars, and nightclubs into residential suburbs—all the while shirking its Nevada common law obligation to provide security. That this led to violence can surprise no one. This Court should deny AirBNB's motion to dismiss.

A gunman injured Plaintiff Bryan Lovett at one of these wild parties. To survive AirBNB's motion to dismiss, Plaintiffs need show only two things: (1) there was a "special relationship" between the parties, and (2) the criminal attack was "reasonably foreseeable." *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969 (1996).

**Special Relationship.** In a premises liability case, the "special relationship" requirement is satisfied if Defendants were landowners or controlled the property: Nevada has abolished the distinctions between trespasser, licensee, and invitee. *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1228 (1996). Shenandoah Southwest, Inc. owned the property through the Zheng Trust, and it operated the property. (Compl. at ¶¶ 5, 7.) That satisfies the "special relationship" requirement as to those Defendants. As for AirBNB, Plaintiffs have two independent theories.

*First*, AirBNB is liable for its partners' actions as a joint venturer. Because Defendants

---

[1] *Available at* https://abcnews.go.com/Business/airbnb-issues-permanent-global-party-ban-wake-string/story?id=85917930#:~:text=The%20company%20issued%20a%20temporary%20party%20ban%20in%202020.&text=The%20ban%20was%20put%20in,nationwide%20at%20properties%20it%20lists (accessed Apr. 2, 2023).

[2] *Available at* https://www.huffpost.com/entry/wild-airbnb-parties-crackdown-rules_b_5d0d1281e4b09125ca46633d?ncid=engmodushpmg00000006 (accessed Apr. 2, 2023).

operated a joint venture, AirBNB is on the hook for its partners' liability. *Radaker v. Scott*, 109 Nev. 653, 660 (1993). So it doesn't matter if AirBNB doesn't have a special relationship with Plaintiffs—AirBNB is still liable. While AirBNB, in a footnote, calls the joint venture allegation "false," it does not attempt to refute it.

Under Nevada's liberal notice pleading standards, Plaintiffs sufficiently state a joint venture theory. All they needed to do was identify the nature of the business and allege Defendants carried it on jointly. *See Swensen v. McDaniel*, 119 F. Supp. 152, 154 (D. Nev. 1953) (refusing to dismiss a complaint that stated only that Defendants were "jointly constructing a certain building"). The Complaint does just that: It alleges that Defendants jointly carried on the business of renting out the property located at 6145 Novelty Street in Las Vegas to minors for wild teen parties and illegal activity. (Compl. ¶¶ 8, 21, 25–26, 38h & i, 47, 51–52.)

*Second*, Nevada Courts impose liability on those who assume the duties of others, but then carry those duties out negligently. *Wright v. Schum*, 105 Nev. 611, 616 (1989) (citing Restatement (Second) of Torts, sec. 324A(b)). Here, Shenandoah Southwest, Inc. and the Zheng Trust owed a duty to Plaintiffs to keep the premises reasonably safe—and AirBNB nowhere disputes that. Through its policies, AirBNB *prohibited* the other Defendants from conducting their own background checks or ID verification on guests, assuming that duty entirely for itself. It then carried out this duty negligently, failing to sufficiently investigate the renter who threw the party. (Compl. ¶ 38h.) So even if AirBNB denies that it has a "special relationship" with Plaintiffs, it still voluntarily undertook some of the other Defendants' safety duties—including running background checks and IDs on renters.

**Foreseeability.** Courts assess the foreseeability of a crime based on the totality of the circumstances. *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969 (1996). The "specific type" of crime—such as a "violent assault"—need not be foreseeable. *Id.* Defendants only need to know that their conduct increases the "risk of harm" from "unwelcome third parties with nefarious intentions." *Id.* The character of the business also matters—if liquor is "constantly flowing" on the premises, this provides a "fertile environment for criminal conduct." *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 203 (1984). Nevada juries are free to conclude that these types of businesses need to employ security guards. *Id.* at 204–05.

THE SCHNITZER LAW FIRM

THE SCHNITZER LAW FIRM

Here, AirBNB's business model encouraged partying. Together with other corporations, it put illicit hotels, bars, and nightclubs into residential neighborhoods. That this led to violence can surprise no one. One of AirBNB's own cases holds that leaving an apartment door unlocked foreseeably increases the "risk of harm" from crime—including attempted murder. *Scialabba*, 112 Nev. at 967–69. Plaintiffs' case here is stronger: If an unlocked door is enough to foresee increased crime, then bringing a hotbed of criminal activity to a residential neighborhood to make money off wild, illegal teen parties is, too.

This Court should also deny AirBNB's request to strike Plaintiffs' punitive damages claim. Defendants violated the law. Clark County zoned the property as residential, and Defendants were prohibited from engaging in any "transient commercial use" of the premises. Clark Cty., Nev. Ord. 30.44.010(b)(7). AirBNB knew short-term rentals were illegal in Clark County until June 2022, when the County finally implemented a comprehensive licensing scheme. Clark Cty. Bill No. 6-7-22-3. Yet AirBNB continued to hype Las Vegas as a party destination.

The bottom line is that AirBNB can't get off the hook here. It took a "move fast and break things" approach to grow from zero to $31 billion in valuation in under ten years—and it was willing to illegally put hotels, bars, and nightclubs into residential neighborhoods to do it. A Nevada jury should be free to hold AirBNB accountable for its failure to provide security. And it should be free to impose punitive damages for AirBNB's flagrant disregard of the law.

## II. BACKGROUND

### A. AirBNB Joins Forces with Local "Ghost Hotel" Operators to Exploit the Underage Teen Party Market—And As Part of That Venture, AirBNB Takes Sole Control of the Background Check and ID Verification Process.

To reach its over $8 billion in yearly revenue, AirBNB joins forces with "ghost hotel" operators like Defendant Shenandoah Southwest, Inc. *See* Shawn MiCallef, *Haunted by the Rise of Ghost Hotels*, Toronto Star (Dec. 1, 2017).[3] Ghost hotels, like traditional hotels, are for-profit enterprises—but they employ no front desk staff and no security guards, making them appear deserted. They are hotbeds of crime. *See* Samantha Beattie, *Shooting at Suspected 'Ghost Hotel'*

[3] *Available at* https://www.thestar.com/opinion/star-columnists/2017/12/01/haunted-by-the-rise-of-ghost-hotels.html (accessed Apr. 2, 2023).

THE SCHNITZER LAW FIRM

*Leaves Toronto Neighbourhood Shaken*, Toronto Star (Nov. 27, 2017).[4] And unlike traditional hotels, ghost hotels—like the one at issue—operate in residential neighborhoods, in blatant violation of local zoning ordinances. *See* Clark Cty., Nev. Ord. 30.44.010(b)(7) (prohibiting "transient commercial use . . . for remuneration" in Las Vegas suburbs).

Here, by teaming up with Shenandoah Southwest, Inc., AirBNB accomplished together with another company what neither could do alone: Tap into the illegal market for teen parties, running a hotel and nightclub right in the middle of a Las Vegas suburb. The companies then shared in the same revenue stream, each taking a cut of the spoils. *See Airbnb, Inc. v. City & Cty. of S.F.*, 217 F. Supp. 3d 1066, 1069 (N.D. Cal. 2016) (reciting AirBNB's stipulation that it charges a "percentage based on the cost of the rental."). AirBNB does not publicly disclose the precise formula it uses to divvy up profits. Its share is "based on a variety of factors." *See AirBNB Help Center, AirBNB Service Fees* (accessed March 31, 2023).[5]

We do know, however, that AirBNB prohibits ghost hotel operators from "screening out" potential partiers. AirBNB runs all the background checks and verifies the IDs—and it prohibits ghost hotel operators from running their own checks on renters. *See* AirBNB Off Platform Policy (forbidding soliciting information from guests to obtain a background check).[6] And upon reference, AirBNB does not let the ghost hotel operators know guests' last names until *after* the operator has accepted the booking. So although AirBNB encourages the ghost hotel operators to implement their own "house rules" against partying, without the ability to run background checks or know renters' identities, such rules are toothless. Only AirBNB has any real power to stop parties—a power it exercised in 2022 when it implemented a global permanent party ban.

AirBNB also markets the rental properties. Prior to 2020, AirBNB promoted its Las Vegas locations as party destinations. *See, e.g.*, Karen Tietjen, *The City That's Becoming a Top Destination*

---

[4] *Available* at https://www.thestar.com/news/gta/2017/11/27/shooting-at-suspected-ghost-hotel-leaves-toronto-neighbourhood-shaken.html.

[5] *Available at* https://www.airbnb.com/help/article/1857#:~:text=Airbnb%20Service%20Fee-,Guest%20fee,you%20know%20what%20to%20expect (accessed Apr. 1, 2023).

[6] *Available at* https://www.airbnb.com/help/article/2799 (accessed Apr. 2, 2023).

*for Bachelorette Parties*, TZR (March 13, 2019)[7] (quoting AirBNB spokesperson). In short, AirBNB operated far more than a platform to connect sellers and buyers: It was also in charge of drumming up business, doing background checks, verifying IDs, collecting payments, and divvying up the spoils with its ghost hotel partners.

### B. AirBNB's Ghost Hotel Business Strategy Brings in Big Bucks, But Brings Dozens of Shooting Deaths to Peaceful Residential Neighborhoods Across the Country.

AirBNB has been "phenomenally" successful financially. *Airbnb, Inc. v. City & Cty. of S.F.*, 217 F. Supp. 3d at 1069. Between 2008 and 2017, AirBNB's valuation went from zero to $31 billion. Lauren Thomas, *Airbnb Just Closed a $1 Billion Round and Became Profitable In 2016*, CNBC (Mar. 9, 2017).

But this growth came at a price to local communities. AirBNB knows that its hard-to-regulate business model attracts crime—and brings into our peaceful suburbs the type of violence once only seen on the Strip. Before the fatal night giving rise to this case, AirBNB's ghost hotels were already synonymous with violent parties and gun crime. *See, e.g.*, Eric Levitz, *Two Shot at Wild Party Held in a Queens Mansion Rented Through Airbnb*, New York Intelligencer (Oct. 26, 2015);[8] Chris Sweeney, *Scene of The Crime: How an Unsolved Murder in Lynnfield Sparked a War Over Airbnb*, Boston Magazine (May 25, 2017);[9] CBC News, *Police ID 26-Year-Old Toronto Man Shot to Death at Airbnb Rental* (May 14, 2018).[10]

At this stage, the Court should assume Plaintiffs will learn in discovery that AirBNB knew of more such shootings. *See Buzz Stew, Ltd. Liab. Co. v. City of N. Las Vegas*, 124 Nev. 224, 228 (2008) (Defendants must show that "no set of facts" would entitle Plaintiffs to relief).

//

//

//

---

[7] *Available at* https://www.thezoereport.com/living/top-destinations-for-bachelorette-parties-according-to-airbnb-16937859 (accessed Apr. 2, 2023).

[8] *Available at* https://nymag.com/intelligencer/2015/10/airbnb-birthday-rental-shootout-tragedy.html

[9] *Available at* https://www.bostonmagazine.com/news/2017/05/25/lynnfield-murder/.

[10] *Available at* https://www.cbc.ca/news/canada/toronto/fatal-vaughan-shooting-1.4661972

THE SCHNITZER LAW FIRM

## III. LAW

### A. Nevada is a Notice Pleading State, and Plaintiffs Need Only "Broadly Recite" the Ultimate Facts—Not Cite Evidence.

Nevada is a notice pleading state. *Harris v. State*, 510 P.3d 802, 807 (Nev. 2022). The Court must "liberally construe" pleadings, asking only if the Complaint puts Defendants on "adequate notice of the nature of the claim and relief sought." *Id.* (cleaned up).

What is more, Plaintiffs only need to "broadly recite the 'ultimate facts' necessary" to prove their claims at trial. *Nutton v. Sunset Station, Inc.*, Case No. 62878, 2015 Nev. App. LEXIS 4, *22–23 (Nev. Ct. App. 2015). They need not cite the evidence they rely on. *Id.*

The Court may dismiss a Complaint only if "beyond a doubt," Plaintiffs could prove "no set of facts" at trial that would entitle them to relief. *Buzz Stew, Ltd. Liab. Co. v. City of N. Las Vegas*, 124 Nev. 224, 228 (2008). The Court must not only accept all facts alleged as true—it must also draw all inferences in Plaintiffs' favor. *Harris*, 510 P.3d at 807.

### B. In Premises Liability Cases Against Landowners, Plaintiffs Get to Skip the "Special Relationship" Inquiry.

Defendants owe a duty to protect against criminal attack when (1) there is a "special relationship" between the parties, and (2) an attack is "reasonably foreseeable." *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969 (1996). Older cases require Plaintiffs to have "invitee" status—but the Nevada Supreme Court has abolished that requirement and replaced it with a general duty for landowners to act "reasonably under the circumstances" to prevent third-party attacks. *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1228 (1996). So with respect to Defendants that own or control the premises, Plaintiffs get to skip the "special relationship" analysis. *See id.*[11]

### C. For Foreseeability, What Matters Is That Defendants Knew Their Conduct Increased the Risk of Harm—Not Whether They Could Have Foreseen the Specific Type of Crime.

Courts assess the foreseeability of a crime based on the totality of the circumstances. *Id.* at 970. The "specific type" of crime—such as a "violent assault"—need not be foreseeable. *Id.* Defendants only need to know that their conduct increases the "risk of harm" from "unwelcome

[11] On a motion to dismiss, this Court should assume Plaintiffs were "on" the premises when they were shot. (Compl. ¶¶ 14–15). But even if they were on the abutting sidewalk, the landowners' duty was the same: Running a business was a "special use" of residential property which created the hazard. *Herndon v. Arco Petroleum Co.*, 91 Nev. 404, 406 (1975) (holding businesses are responsible for dangerous conditions on sidewalks created by their customers).

third parties with nefarious intentions." *Id.*

The character of the business matters. *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 203, (1984) (quoting the Restatement (Second) of Torts § 344 comment f). If "cash and liquor" are "constantly flowing" on the premises, this provides a "fertile environment for criminal conduct." *Id.* at 204. For such businesses, juries can conclude that a reasonably prudent person would employ security guards. *Id.* at 204–05.

**D. <u>All Joint Venturers are on the Hook as If They Were Partners—and Pleading a Joint Venture Only Requires that Plaintiffs Identify the Nature of the Business Defendants Allegedly Carried on as Co-Venturers.</u>**

Nevada applies partnership principles to joint ventures. *Clark v. JDI Realty, LLC (In re Cay Clubs)*, 130 Nev. 920, 928 (2014) (explaining that although a joint venture is a "collaboration for profit" limited to a "specific business objective," Nevada law treats it as a partnership).

So Nevada Courts impute the negligence of one member of a joint venture to all other co-venturers when the member acts within the scope of the enterprise. *Radaker v. Scott*, 109 Nev. 653, 660 (1993). Whether Defendants have formed a joint venture is a question of *fact*—not a matter of law, even when the parties have a written agreement. *Posner v. Tassely*, 131 Nev. 1335 (2015). The jury must consider the parties' actions and the nature of their undertaking when determining if a joint venture exists. *Swensen v. McDaniel*, 119 F. Supp. 152, 154 (D. Nev. 1953).

There is no set formula for determining whether a joint venture exists: Every case must "stand upon its own merits." *Las Vegas Machine & Eng'g Works v. Roemisch*, 67 Nev. 1, 9 (1950). Generally, two companies create a joint venture when they form an "informal partnership" to "conduct some business or enterprise, agreeing to share jointly" in profits and losses. *ECM, Inc. v. Placer Dome U.S.*, No. 96-15966, No. 96-16019, 1997 U.S. App. LEXIS 34851, at *5 (9th Cir. Dec. 10, 1997) (quoting *Bruttomesso v. Las Vegas Metro. Police*, 95 Nev. 151, 154 (1979)).

Partnerships may be alleged generally and are not subject to any heightened pleading standards. *See Hay v. Hay*, 100 Nev. 196, 198 (1984); *see also* N.R.C.P. 8–9. Under a notice pleading standard, a Complaint need not include any specific allegations about profits and losses—identifying the nature of the business is enough. *See, e.g.*, *Swensen*, 119 F. Supp. at 154 (refusing to dismiss a complaint that stated only that Defendants were "jointly constructing a certain building" but said nothing about how profits or losses were divided).

THE SCHNITZER LAW FIRM

THE SCHNITZER LAW FIRM

**E. <u>Even Absent a Joint Venture, a Defendant Who Assumes a Land Occupier's Duties is on the Hook if It Performs Those Duties Negligently.</u>**

Nevada Courts impose liability on those who assume the duties of others, but then carry those duties out negligently. *Wright v. Schum*, 105 Nev. 611, 616 (1989) (citing Restatement (Second) of Torts, sec. 324A(b)). Someone who would normally owe no duty can—by acting—assume duties owed by others. *Id.* at 1146. Just warning of a danger isn't enough to incur a duty. *Id.* But taking active steps to carry out what the duty requires counts as assuming that duty. *See id.*

A conceptually related—but legally distinct—principle is that a company other than the landowner may be held liable in premises liability cases when it exercises "control" and the "power to act." *Scialabba*, 112 Nev. at 969. If the ability of one of the parties "has been limited in some way" by submission to the other, Courts impose a duty on a defendant who could have "meaningfully reduce[d] the risk of the harm that actually occurred." *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 127 Nev. 287, 297 (2011).

## IV. <u>ARGUMENT</u>

**A. <u>Plaintiffs Meet the Low Bar of Nevada's Notice Pleading Standards and Plead Joint Venture Liability Because They Identify the Nature of the Business and Allege It Was Carried On Jointly.</u>**

The Nevada Rules of Civil Procedure do not require Plaintiffs to plead the existence of a partnership or joint venture with particularity. *See* N.R.C.P. 8–9. Nor has the Nevada Supreme Court required a partnership to be set out in any detail. *Hay v. Hay*, 100 Nev. 196, 198 (1984). To put Defendants on adequate notice of a joint venture claim, all Plaintiffs must do is state the nature of the business and allege Defendants carried it on jointly. *Swensen v. McDaniel*, 119 F. Supp. 152, 154 (D. Nev. 1953) (refusing to dismiss a complaint that stated only that Defendants were "jointly constructing a certain building"). This Plaintiffs have done: Defendants jointly carry on the business of renting out the property located at 6145 Novelty Street in Las Vegas for wild teen parties and illegal activity. (Compl. ¶¶ 8, 21, 25–26, 38h & i, 47, 51–52.)

Here, the Complaint states that AirBNB operated a joint venture with the Zheng Trust and Shenandoah Southwest, Inc. (Compl. ¶ 8.) The Complaint also states the nature of the business Defendants carried on: Illegally renting party homes to underage teens for wild parties. (Compl. ¶¶ 21, 23–26, 47.) The Complaint also alleges that all Defendants, together, controlled the premises

THE SCHNITZER LAW FIRM

and encouraged the illegal conduct. (Compl. ¶ 38, ¶51–55, 72–74). This meets notice pleading standards. *See MAR Oil Co. v. Korpan*, No. 3:11CV1261, 2014 U.S. Dist. LEXIS 89747, at *32 (N.D. Ohio Apr. 18, 2014) (applying older federal notice pleading standards to Complaint filed years prior, and holding that it satisfied notice pleading for joint venture by alleging Defendants acted "individually and through their entities" at all times).

**B. Even if AirBNB, Inc. Were Not in a Joint Venture, It Assumed Responsibility for Safety on the When It Forbid Shenandoah Southwest, Inc. and the Zheng Trust from Running Their Own Independent Background Checks on Renters and Required Them to Rely on AirBNB, Inc.'s Guest Screening Process.**

Even if Plaintiffs did not have their joint venture theory (which they do), AirBNB is still liable because it assumed some of the other Defendants' duties. A party becomes liable if it "has undertaken to perform a duty owed" by someone else, but then performs that duty negligently. Restatement (Second) of Torts, sec. 324A(b) (adopted in *Wright*, 105 Nev. at 616).

In *Wright v. Schum*, a landlord initially had no duty to protect third parties from his tenant's vicious dog. 105 Nev. at 616. But then landlord threatened the tenant with eviction if he didn't "take care" of the dangerous dog problem. *Id.* at 617. The landlord required the tenant to agree to a dog control policy that the landlord had the ability to enforce. *Id.* When the dog bit someone, the Court held that the landlord—by having used his power over the tenant to attempt to control the dog—had assumed a duty to owed to all foreseeable plaintiffs (even those not on the property) to guard against the dog. *Id.*

So too here. AirBNB, through its policies, forbid the other Defendants from running its own background checks. And it required them to accept guests blindly—not even knowing their last names. AirBNB also controlled the process of verifying guest IDs. AirBNB alone conducted screenings to assess the risk level associated with the guests: Using its contractual power over the other Defendants, AirBNB took over the entire guest screening aspect of the rentals.

By preventing the other Defendants from discharging some aspects of their duties to Plaintiffs and explicitly assuming those duties for itself, AirBNB did here far more than the landlord in *Wright*. And because AirBNB failed to properly conduct the screenings that it undertook, resulting in the dangerous persons the premises that led to Plaintiffs' injuries, AirBNB breached the duty it assumed.

THE SCHNITZER LAW FIRM

**C. Because Defendants Knew that Their Business Model of Hosting Illegal Parties Attracts Gun Violence, Plaintiffs' Injuries Were Foreseeable.**

Defendants, like the casinos in *Early*, know their lodgings provide a "fertile environment for criminal conduct." 100 Nev. at 204. If a hotel ran a similar business—attracting large crowds, parties, drugs, and underage drinking—Nevada juries would hold the hotel liable if it failed to hire security guards. *Id.* The jury will find Shenandoah Southwest, Inc. and the Zheng Trust liable for breaching this duty here. And because the property owners are liable, AirBNB is liable as their partner (or for having assumed and negligently performed the landowners' duties).

AirBNB argues that no one could have foreseen the exact *type* of crime—a drive-by shooting. This is both irrelevant and untrue. First, relevance. The Nevada Supreme Court does not require the landowner to know the type of crime—only that their conduct increases the "risk of harm" from "unwelcome third parties with nefarious intentions." *Scialabba*, 112 Nev. at 969. In *Scialabba*, the Nevada Supreme Court held that a construction company that left doors unlocked did not need to know that a "violent assault" on a woman was foreseeable. *Id.* Rather, the Court held that the construction company should have known that unlocked doors were a magnet for crime, increasing the overall "risk of harm" from criminals. *Id.*

So too here. AirBNB knows that so-called "pop-up" parties are magnets for crime. It need not know in advance the exact type of crime—only that it has increased the risk of harm. By hosting illegal parties where liquor freely flows, AirBNB brought a hotbed for crime into a sleepy residential neighborhood in violation of local municipal ordinances. AirBNB knew the risks, but it wanted the money. This was a choice. And under *Scialabba*, AirBNB is liable for that choice.

Second, the truth. While AirBNB claims now that it could not have foreseen the shooting, this is false: The Nevada Supreme Court has already held that settings with much booze and low security create a "fertile environment for criminal conduct." *Early*, 100 Nev. at 203. And when an innkeeper takes *no* security precautions, murders are foreseeable. *Humphries v. N.Y.-New York Hotel & Casino*, 133 Nev. 607, 610 (2017) (explaining that Courts must consider whether an innkeeper takes "basic minimum precautions"). It takes no foresight to see that hosting wild, illegal, boozy teen parties in residential neighborhoods with zero security could lead to violence.

Defendants' cases on foreseeability from other states don't change this. For instance, in *Jackson v. Airbnb, Inc.*, the Court applied higher federal pleading standards to require the plaintiff—at the pleading stage—to set out in detail the past criminal events that would allow AirBNB to foresee the exact crime. No. CV 22-3084 DSF (JCx), 2022 U.S. Dist. LEXIS 202765, at *23 (C.D. Cal. Nov. 4, 2022). Because the plaintiff could only point to a handful of other AirBNB shootings, the Court dismissed the case. *Id.*

But Nevada does not require Plaintiffs to establish any similar crimes on or near the premises. *Humphries*, 133 Nev. at 609. Instead, Plaintiffs in negligent-security cases may show foreseeability under a "totality-of-circumstances" test—even without prior incidents. *Id.* at 611; *Symeonidis v. AMC, LLC*, Case No. N71072, 2017 Nev. App. Unpub. LEXIS 900, *3 (Nev. Ct. App. 2017) (citing *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1102 (1993)).

Here, AirBNB worked with other corporations to put an illicit hotel, bar, and nightclub with zero security into a suburb. Even if Plaintiffs, at trial, introduce no prior incidents, the totality of the circumstances still would allow a Nevada jury to find that Defendants' conduct foreseeably increased the risk of attack by third parties. *Scialabba*, 112 Nev. at 969.

In short, AirBNB's theory of the case—that gun violence is not a foreseeable consequence of facilitating illegal, wild teenage parties on the outskirts of Las Vegas—isn't true. And even if it were true, AirBNB applies the wrong standard for foreseeability. Under Nevada's totality-of-the-circumstances standard, AirBNB loses.

**D. <u>Plaintiffs' Negligence *Per Se* Claim Survives Because Defendant AirBNB, Inc. Illegally Operated Short-Term Rentals in Las Vegas in Violation of City Ordinances Designed to Protect the Safety of Residential Communities—and For the Same Reason, the Court Should Deny AirBNB's Request to Strike Punitive Damages.</u>**

AirBNB advertised and operated a short-term rental located in Spring Valley—an unincorporated suburb of Las Vegas. The premises at 6145 Novelty St., Las Vegas, NV 89148 were zoned as "Medium Density Residential (R-2)." As a residential neighborhood in an unincorporated area, Defendants were prohibited from engaging in any "transient commercial use . . . for remuneration" using the premises. Clark Cty., Nev. Ord. 30.44.010(b)(7).

THE SCHNITZER LAW FIRM

So until just last year, Clark County banned AirBNBs. In June 2022, Clark County adopted a comprehensive municipal code section setting out safety standards for AirBNBs and a licensing regime. *See* Bill No. 6-7-22-3.12. Before that, AirBNBs were illegal.

Violation of a local ordinances constitutes negligence *per se* if (1) a violation of a code provision adopted by local ordinance is established, (2) an injured party fits within the class of persons that a particular provision was intended to protect, and (3) the injury suffered is of the type the provision was intended to prevent. *Vega v. E. Courtyard Assocs.*, 117 Nev. 436, 437 (2001) (holding that violation of municipal building code constituted negligence *per se*).

Las Vegas has its share of parties. In a city like Las Vegas, even more than in other cities, zoning ordinances are designed to protect those who live here. We need some place to live, away from the Strip, that is not overrun with parties. We need some place safe for our kids to grow up away from the "cash and liquor" that are "constantly flowing" elsewhere. *Early*, 100 Nev. at 203.

Clark County was clear: No transient commercial use of residential, suburban homes. If AirBNB had operated a hotel in a suburb and attracted crime, no doubt residents here—the "class of persons" the ordinance was "intended to protect"—could hold it accountable. AirBNB shouldn't get off the hook just because it partnered with Shenandoah Southwest, Inc. to accomplish together what neither could accomplish alone: Run a crime-attracting business in a residential neighborhood in violation of Nevada law.

Plaintiffs, as residents of Clark County, were the type of people the ordinance was designed to protect: Schoolboys who lived here. The violence they suffered was the type of harm ordinances keeping crime-attracting businesses out of our neighborhoods was designed to prevent. And but for Defendants' violation, Plaintiffs would not have been on the wrong end of a gun.

For the same reasons, this Court should deny AirBNB's request to strike Plaintiffs' prayer for punitive damages. Plaintiffs may recover punitive damages by showing at trial that Defendants

[12] *Available at* https://files.clarkcountynv.gov/clarknv/Administrative%20Services/Intergovernmental%20Relations/2022.06.21%20-%20STR%20Ordinance%20-%20Approved%20with%20Changes.pdf??t=1655942165008&t=1672896499251&?t=1655942165008&t=1672896499251

THE SCHNITZER LAW FIRM

engaged in "despicable conduct" with a "conscious disregard" of their rights. *Bongiovi v. Sullivan*, 122 Nev. 556, 581 (2006). Defendants have consciously disregarded the law and brought crime into Las Vegas suburbs, encouraging illicit hotels, bars, and nightclubs to thrive in residential areas. One teenager has died as a result, and others were wounded. A Nevada jury should be allowed to hold Defendants accountable.

## V. CONCLUSION

For all the above reasons, Plaintiffs request that this Court deny Defendant AirBNB's Motion to Dismiss.

DATED this 5th day of April 2023

BY:______________________
JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
*Attorney for Plaintiff, Bryan Lovett*

THE SCHNITZER LAW FIRM

**CERTIFICATE OF SERVICE**

In accordance with Rule 9 of the N.E.F.C.R., I, the undersigned hereby certify that on the 5th day of April 2023, I served a true and correct copy of the foregoing **PLAINTIFF, BRYAN LOVETT'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF BRIAN LOVETT'S CLAIMS AGAINST DEFENDANT, AIRBNB** to the above-entitled Court for electronic service upon the Court's Service List to the following counsel:

Michael C. Kane, Esq.
Bradley J. Meyers, Esq.
Brandon A. Born, Esq.
THE702FIRM
400 South 7th Street, Suite/Floor 4
Las Vegas, NV, 89101
*Attorneys for Plaintiffs,*
*Eric Rice and JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE*

Jasper Han
9660 Grouse Grove Avenue
Las Vegas, Nevada 89148
*Defendant IN PROPER PERSON*

Ryan L. Dennett, Esq.
Brent D. Quist, Esq.
DENNETT WINSPEAR, LLP.
3301 North Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
*Attorneys for Defendant, AIRBNB, INC.*

David Theodore Hayek, Esq.
P.K. SCHRIEFFER, LLP.
100 North Barranca Street, Suite 1100
West Covina, CA 91791
*Co-counsel for Defendant, AIRBNB, INC.*

Jeff Silvestri, Esq.
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
*Co-counsel for Defendant, AIRBNB, INC*

An employee of
THE SCHNITZER LAW FIRM

ELECTRONICALLY SERVED
4/7/2023 4:08 PM
Electronically Filed
04/07/2023 4:05 PM
CLERK OF THE COURT

SCHTO

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| **ERIC RICE**, Plaintiff, vs **ZHENG TRUST**, Defendant. | CASE NO.: **A-19-801549-C** Department XXVI **SCHEDULING ORDER and ORDER SETTING CIVIL JURY TRIAL** |

This Scheduling Order and Order Setting Civil Jury Trial is entered following the filing of a Joint Case Conference Report or Individual Case Conference Report. This Order may be amended or modified by the Court upon good cause shown.

**IT IS HEREBY ORDERED** that the parties will comply with the following deadlines:

| | |
|---|---|
| Discovery Cut Off Date: | **7.5.24** |
| Last Day to file motion to amend or add parties: | **3/4/24** |
| Initial expert disclosures due: | **3/4/24** |
| Rebuttal expert disclosures due: | **4/4/24** |
| Final Date to file Dispositive Motions | **8/5/24** |

**IT IS FURTHER ORDERED THAT**:

A. The above entitled case is set to be tried by a jury on a FIVE WEEK CIVIL/PROBATE STACK beginning **OCTOBER 7 to NOVEMBER 9, 2024.**

B. A Calendar Call will be held **SEPTEMBER 19, 2024 at 9:00AM**. Trial Counsel (and any party in proper person) must appear.

C. A Status Check can be scheduled upon request to confirm progress of trial preparation. Motions in Limine filed not later than six weeks prior to trial.

D. A **Pre-Trial Conference** will be set at the time of calendar call. Parties must have the following ready at the final Pre Trial Conference:

1. Three (3) sets of Exhibits, three-hole punched placed in three ring binders along with the exhibit list with all stipulated exhibits marked;
2. Agreed hard-copy set of Jury instructions and proposed verdict form(s), along with any additional proposed jury instructions with authoritative citations, and with an electronic copy in Word format;
3. Proposed voir dire questions;
4. Original depositions;
5. Courtesy copies of legal briefs on trial issues.

E. The **Pretrial Memorandum** must be filed prior to and a courtesy copy delivered at the Pre-Trial Conference. All parties, (Attorneys and parties in proper person) <u>must</u> comply with all requirements of E.D.C.R. 2.67, 2.68 and 2.69. Counsel should include in the Memorandum an identification of orders on all motions in limine or motions for partial summary judgment previously made, a summary of any anticipated legal issues remaining, a brief summary of the opinions to be offered by any witness to be called to offer opinion testimony as well as any objections to the opinion testimony.

F. **Motions in Limine** are limited to TEN (10) each per side**.** If the Court determines that oral argument is not needed, an advance decision minute order will be issued prior to the motion in limine hearing.

G. **Motion to Continue Trial** due to any discovery issues or deadlines must be made before this department, pursuant to EDCR 2.35.

H. **Orders Shortening Time** will not be signed except in extreme emergencies**.** ***An upcoming trial date or vacation is not an extreme emergency – court requires all parties to be ready anytime of this stack.***

I. **Failure to Appear** by the designated trial attorney or any party appearing in proper person to appear for any court appearances or to comply with this Order shall result in any of the following: (1) dismissal of the action (2) default judgment; (3) monetary sanctions; (4) vacation of trial date; and/or any other appropriate remedy or sanction.

Counsel must advise the Court immediately when the case settles or is otherwise resolved prior to trial. A stipulation which terminates a case by dismissal shall indicate whether a Scheduling Order has been filed and, if a trial date has been set, and the date of that trial.

**Dated this 7th day of April, 2023**

**FD8 9BE 8A75 14A4**
**Gloria Sturman**
**District Court Judge**

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| Eric Rice, Plaintiff(s)<br>vs.<br>Zheng Trust, Defendant(s) | CASE NO: A-19-801549-C<br>DEPT. NO. Department 26 |
|---|---|

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Scheduling and Trial Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 4/7/2023

| | |
|---|---|
| Rena McDonald | Rena@mcdonaldlawgroup.com |
| Jordan Schnitzer | jordan@theschnitzerlawfirm.com |
| Theresa Amendola | tamendola@dennettwinspear.com |
| Bradley Myers | Brad@the702firm.com |
| CaraMia Gerard | cgerard@mcdonaldcarano.com |
| Chelsea Latino | clatino@mcdonaldcarano.com |
| Rory Kay | rkay@mcdonaldcarano.com |
| Michael Kane | mike@the702firm.com |
| Amber Casteel | amber@the702firm.com |
| Karen Surowiec | ksurowiec@mcdonaldcarano.com |
| Ashley Marchant | amarchant@dennettwinspear.com |

| | |
|---|---|
| Melisa Gabhart | melisa@theschnitzerlawfirm.com |
| Sofia Chacon | sofia@the702firm.com |
| Service 702 | service@the702firm.com |
| Richard Reed | rrreedlaw@gmail.com |
| Dawn Sestito | dsestito@omm.com |
| Damali Taylor | dtaylor@omm.com |
| Jen Cardelús | jcardelus@omm.com |
| Michael O'Donnell | modonnell@omm.com |
| Airbnb Calendar | airbnbcalendar@omm.com |
| Liz Vargas | liz@the702firm.com |
| NIcholas Dion | nicholas@the702firm.com |
| Kristina Black | Kristina@theschnitzerlawfirm.com |

If indicated below, a copy of the above mentioned filings were also served by mail via United States Postal Service, postage prepaid, to the parties listed below at their last known addresses on 4/10/2023

| | |
|---|---|
| Richard Reed | 626 S. Third Street<br>Las Vegas, NV, 89101 |

Electronically Filed
4/18/2023 4:04 PM
Steven D. Grierson
CLERK OF THE COURT

**RIS**

Rory T. Kay (NSBN 12416)
Chelsea Latino (NSBN 14227)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Damali A. Taylor (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8928
dtaylor@omm.com

Dawn Sestito (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
dsestito@omm.com

*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,

Plaintiffs,

v.

ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive,

Defendants.

CASE NO.: A-19-801549-C

DEPT NO.: 26

**DEFENDANT AIRBNB, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.**

**Hearing Date: April 25, 2023**
**Hearing Time: 9:30 a.m.**

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

## I. INTRODUCTION

Perhaps recognizing the complaint's deficiencies, the opposition attempts to rewrite it, asserting new factual allegations and legal theories found nowhere in the pleading. This is improper, because the Court cannot consider non–judicially noticeable matters outside the complaint at this stage;[1] it is also futile, because the new allegations fail to address the fundamental flaws that doom Lovett's claims.

The opposition identifies no legal basis to impose a broad duty on Airbnb to anticipate and prevent all third-party crime at or near properties booked via its online platform—because no such duty exists. As a result, Lovett's negligence and negligent-security claims fail as a matter of law. Lovett's negligence *per se* claim similarly fails, because the ordinance cited in his opposition does not regulate online hosting platforms like Airbnb. The opposition does not bother to defend Lovett's respondeat-superior claim, which fails as a matter of law. Lovett's claims should be dismissed with prejudice.

## II. ARGUMENT

### A. Lovett's Negligence and Negligent-Security Claims[2] Fail

Lovett abandons any theory of liability based on a special relationship, conceding that Airbnb had no special relationship with either him or the shooter. *Compare* Mot. at 4–7, *with* Opp. at 3–4. Instead, he offers two theories for liability (neither of which is meaningfully alleged in the complaint): (1) negligent undertaking and (2) joint venture. Opp. at 3–4. Both theories fail as a matter of law.

#### 1. Airbnb Did Not Undertake to Guarantee Against Third-Party Crime

The Nevada Supreme Court recently confirmed that a negligent undertaking is "a narrow exception" to the general rule that there is no duty to protect against third-party misconduct. *PetSmart, Inc. v. Eighth Jud. Dist. Ct.*, 137 Nev. 726, 730, 499 P.3d 1182, 1187 (2021). The

/ / /

---

[1] *See Lumbermen's Underwriting Alliance v. RCR Plumbing, Inc.*, 114 Nev. 1231, 1234, 969 P.2d 301, 303 (1998).

[2] These claims are analyzed under the same test. *See* Mot. at 4 n.1.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

doctrine applies only in rare circumstances where the defendant has specifically and voluntarily undertaken to perform the task that he is charged with having performed negligently. *See generally id.*

Although the complaint does not allege negligent undertaking, the opposition contends that Airbnb undertook sole responsibility for screening guests (*i.e.*, individuals who book short-term rentals through the Airbnb platform) and guaranteeing safety at its millions of listings worldwide, and is thus liable for any failure to fully discharge those responsibilities. *See* Opp. at 4 (arguing that Airbnb undertook running "background checks and IDs verification on guests"); *id.* at 11 (arguing that Airbnb "assumed responsibility for safety").

As the judicially noticeable facts make clear, Airbnb *never* undertook such a responsibility, which would have been impossible to discharge. Airbnb's Terms of Service—on which the opposition relies, *see, e.g.*, Opp. at 11 (referring to Airbnb's purported "contractual power over the other Defendants") and subject to judicial notice[3]—expressly disclaim such a responsibility. *See generally* Ex. 1, Airbnb Terms of Service ("TOS"). The Terms make clear that Airbnb, "*[i]f* [it] choose[s] to conduct identity verification or background checks on any Member, … disclaim[s] warranties … that such checks will identify prior misconduct by a Member or guarantee that a Member will not engage in misconduct in the future." *Id.* § 16 (emphasis added). The Terms also confirm that Airbnb does not own or control properties listed on its website and "do[es] not guarantee … [the] quality [or] safety … of any Listings." *Id.* § 1.3; *see also id.* at 1

[3] The Court may take judicial notice of Airbnb's Terms of Service and its contents because they are "not reasonably subject to dispute." NRS 47.130(2)(b); *see also* NRS 47.150(2). Courts routinely take judicial notice of online platforms' terms of service and other pages accessible on their websites. *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) (taking judicial notice of past and present versions of Google's Terms of Service); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021) (taking judicial notice of Zoom's Terms of Service and current and historical versions of its Privacy Statement); *Bielski v. Coinbase, Inc.*, 2022 WL 1062049, at *2 (N.D. Cal. Apr. 8, 2022) (courts have taken notice of "the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned").

(hosts alone "are responsible for … complying with all laws"); *id.* § 16 (assumption of risk by guests; disclaimer of warranties by Airbnb).

Moreover, neither the complaint nor the opposition articulates any direct causal connection between the tasks that Airbnb supposedly failed to discharge and the injuries that Lovett alleges here. For example, there is no allegation that more rigorous screening measures on the guest who booked the Airbnb listing would have somehow prevented a drive-by shooting by an unknown third-party assailant near the listing.

The sole case cited in the opposition, *Wright v. Schum*, 105 Nev. 611, 781 P.2d 1142 (1989), is readily distinguished. In *Wright*, the landlord had no duty to protect others from the aggressive dog on his property until he (1) learned of the danger posed by the dog, (2) imposed rules intending to eliminate this danger, and (3) used "his power of eviction to force compliance" by the dog's owner, *id.* at 618, 781 P.2d at 1146—or, in other words, he "voluntarily took action to secure the neighborhood from harm," *PetSmart*, 137 Nev. at 731, 499 P.3d at 1187 (discussing *Wright*). Here, Lovett does not and cannot allege that Airbnb did anything remotely comparable.

Instead, this case is analogous to *PetSmart*. In that case, a dog with a known history of aggression was adopted through an adoption agency at a PetSmart rescue event. *Id.* at 726, 499 P.3d at 1184. When the dog later bit a member of the family that adopted it, the family sued PetSmart on a negligent-undertaking theory. *Id.* at 728, 499 P.3d at 1185. The Nevada Supreme Court rejected that theory, noting that there was nothing in the record to suggest that "PetSmart knew about [the dog's] aggressive tendencies, much less undertook affirmative steps to prevent the type of harm that ensued." *Id.* at 731, 499 P.3d at 1187. To the contrary, PetSmart's agreement with the adoption agency made clear that the agency "had control of which pets to present for adoption and was fully responsible for those animals." *Id.* That "PetSmart took steps to ensure the safety of its store patrons" by requiring the adoption agency "to follow guidelines during its adoption fairs … do[es] not suggest that PetSmart assumed the role of an insurer of adopters' safety." *Id.*

/ / /

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Here, Airbnb no more undertook a duty than did PetSmart. Lovett does not and cannot contend that Airbnb knew anything about his shooter or undertook affirmative steps to prevent a random drive-by shooting by this unknown assailant at or in the vicinity of a property booked via Airbnb's platform. And Airbnb's Terms of Service make quite clear that Airbnb does not guarantee the safety of guests or listings on its platform. Lovett's negligent-undertaking theory therefore fails as a matter of law.

**2. Lovett Alleges No Facts to Support a Joint-Venture Theory**

Lovett's joint-venture theory fares no better. The opposition argues that Airbnb was in a joint venture with various co-defendants who owned and operated the Property, making Airbnb secondarily liable for their alleged torts. Opp. at 3–4, 9–11. But the complaint does not adequately allege the existence of a joint venture—nor can it, since none existed.

"A joint venture is a *contractual relationship* in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." *Radaker v. Scott*, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993) (emphasis added). "The parties' intent to create a joint venture is determined by the application of ordinary rules concerning the interpretation and construction of contracts as well as a consideration of the actions and conduct of the parties." *Id.*

Here, the complaint's sole allegations relating to a joint venture are generic and boilerplate:

- "Upon information and belief, Defendants Airbnb, Inc., Shenandoah Southwest, Inc., Fenex Consulting and Zheng Trust or some of them were joint ventures," Compl. ¶ 8; and
- "Airbnb, Inc., Shenandoah Southwest, Inc., Fenex Consulting and Zheng Trust were joint ventures therefore, jointly and severally liable," *id.* ¶ 47.

The opposition claims that a joint venture need not be pleaded "with particularity" or "in any detail," and that "all Plaintiffs must do is state the nature of the business and allege Defendants

/ / /

/ / /

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

carried it on jointly." Opp. at 10.[4] But only "a complaint's *factual allegations* must be accepted as true"; legal conclusions disguised as factual allegations, such as a contention that defendants are jointly and severally liable as joint venturers, are not. *Nev. Yellow Cab Corp. v. State*, No. 83014, 2022 WL 17367603, at *2 (Nev. Dec. 1 2022); *see Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009).

Nor would amendment fix this pleading deficiency, because there was no joint venture as a matter of law. Airbnb's Terms of Service—the only "contract" between Airbnb and the host and/or property owner—which are subject to judicial notice, make very clear that hosts are "not ... employee[s], agent[s], *joint venturer[s,]* or partner[s] of Airbnb for any reason." TOS § 1.4 (emphasis added). To the contrary, hosts "act exclusively on [their] own behalf and for [their] own benefit, and not on behalf, or for the benefit, of Airbnb." *Id.* And Airbnb "does not … control" hosts or the services they provide; instead, "[h]osts alone are responsible for their Listings and Host Services." *Id.* §§ 1.2, 1.3. In the face of this plain language, Lovett cannot plausibly allege the existence of a joint venture.

**3. The Shooting Was Not Foreseeable**

Even if the complaint could adequately plead a negligent undertaking or joint venture—and it cannot—this would not salvage the claims. The complaint does not allege that Lovett's random, senseless shooting was foreseeable, which is fatal to his negligence and negligent-security claims under either theory.[5]

---

[4] The opposition's cases are distinguishable, as the plaintiffs in those cases included far more detailed allegations concerning the purported joint venture. *See Swensen v. McDaniel*, 119 F. Supp. 152, 154 (D. Nev. 1953) (plaintiff alleged defendant and decedent "were associated together in business," owned a property in joint tenancy, and were "jointly constructing a certain building" connected to their business); *Hay v. Hay*, 100 Nev. 196, 198, 678 P.2d 672, 673 (1984) (plaintiff alleged that she and respondent "had been holding themselves out as husband and wife," had "pooled all monies earned by either of them" and "purchased assets and incurred liabilities as if they were a … general partnership"). *Harris v. State* is wholly inapposite. 138 Nev. Adv. Op. 40, 510 P.3d 802 (Nov. 2022) (addressing whether plaintiff's allegations were sufficient to plead severe medical need for purposes of Section 1983 claim).

[5] Under either a negligent-undertaking theory or a joint-venture theory, Airbnb (like its co-defendants) cannot be liable for unforeseeable third-party crimes. *See Sanchez*, 125 Nev. at 824, 221 P.3d at 1280–81.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

According to the opposition, booking properties via Airbnb's platform foreseeably leads to parties, and parties foreseeably lead to violence—including random drive-by shootings by unknown persons in the general vicinity of such parties. Opp. at 12–13. This ipse dixit falls far short even of the broad totality-of-the-circumstances foreseeability test applied in *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 970, 921 P.2d 928, 931 (1996). Even if a *party* at the Property was somehow foreseeable, it is well-settled that *violence* is not a natural consequence of hosting or attending a party. *See, e.g.*, *Melton v. Boustred*, 183 Cal. App. 4th 521, 527, 532–41 (2010) (host of open-invitation party, who advertised party extensively on social media and served guests alcohol, had no duty to protect attendees from third-party crime because violence is not a "necessary component of defendant's . . . part[ies]"); *Hanouchian v. Steele*, 51 Cal. App. 5th 99, 103–04, 111–13 (2020) (no duty for host of sorority party with "open guest lists" and "unlimited alcohol" to protect from third-party crime where prior events only established "a general knowledge of the possibility of violent criminal conduct"); *Tilley v. CZ Master Ass'n*, 131 Cal. App. 4th 464, 468, 487–89 (2005) (no duty to prevent guard's injuries sustained while responding to house party despite violence at recent party at same home); *McArdle v. Stahl*, 2006 WL 1648988, at *3–5 (Tex. Ct. App. June 15, 2006) (assault resulting in death not foreseeable from teenage drinking party); *Doe v. Messina*, 349 S.W.3d 797, 803 (Tex. Ct. App. 2011) (holding that while "allowing … teenagers to consume alcohol without adult supervision might have had various foreseeable consequences (such as arguments, promiscuity, horseplay, etc.), the egregious, felonious crime of sexual assault was an extraordinary consequence").

The case cited in the opposition is inapposite. *Early* does not stand for the proposition that any setting "with much booze and low security create[s] a 'fertile environment for criminal conduct,'" as the opposition suggests. Opp. at 12 (quoting *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 204, 678 P.2d 683, 685 (1984)). In *Early*, security guards' logbooks reflected 92 known crimes on the premises in the preceding two years. 100 Nev. at 202, 678 P.2d at 684. The Court therefore held that foreseeability could be established by both "past crimes on the premises and … the location and character of the Silver Nugget's business." *Id.* at 204, 678 P.2d at 685. Specifically, the Court observed that the unique character of "*a gambling casino* where cash and

liquor are constantly flowing may provide a fertile environment for criminal conduct such as robbery and assault." *Id.* (emphasis added).

Here, there is no allegation concerning any history of past crimes on the Property—much less 92 known crimes in the past two years. Nor is the Property "a gambling casino where cash and liquor are constantly flowing"—far from it. *See* Compl. ¶¶ 21–22 (describing the Property as a "house" in a neighborhood).

Courts have repeatedly held that those who *host* a party are not automatically liable for all injuries that result from that party. *Supra* at 7. And no court in Nevada or elsewhere has held that an online platform used to book a property where a party takes place owes a duty to foresee and prevent any and all injuries resulting from that party; such a ruling would turn established principles of negligence on their head. *See* Mot. at 5–7.

The opposition has no meaningful response to *Jackson*, which held that a shooting injury at a property booked through Airbnb's platform was not foreseeable, even where the plaintiff alleged that similar crimes had occurred at or around that property in the past. *Jackson v. Airbnb, Inc.*, No. CV 22-3084 DSF (JCx), 2022 WL 16752071 (C.D. Cal. Nov. 4, 2022). The opposition argues that *Jackson* applied federal pleading standards and is thus distinguishable, Opp. at 13, but the court's ruling had nothing to do with the applicable pleading standards. Instead, the court concluded that "[i]t would have taken something near the level of psychic powers to foresee" a shooting resulting from a party at a property booked through Airbnb's platform. *Id.* at *8; *see also Esposito v. Airbnb Action, LLC*, No. 5:20-cv-5204, 2022 WL 2980700, at *6 (W.D. Ark. July 27, 2022) (holding home-invasion robbery at property booked via Airbnb to be unforeseeable). The same is true here.

**B. <u>Lovett's Negligence *Per Se* Claim Fails</u>**

Although the complaint fails to identify a specific statute that Airbnb allegedly violated—which is reason enough to dismiss the negligence *per se* claim—the opposition points to a Clark County ordinance concerning owners of rental properties. That ordinance has no application to Airbnb, which does not own or control the properties listed on its online platform, *see* Mot. at 6–7, and does not save the negligence *per se* claim.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

In order to prevail on a negligence *per se* claim, the plaintiff must prove that "(1) he or she belongs to a class of persons that a statute is intended to protect, (2) the plaintiff's injuries are the type the statute is intended to prevent, (3) the defendant violated the statute, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages." *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1133 (D. Nev. 2019). The failure to satisfy any one of these elements is fatal to a negligence *per se* claim. *See id.*

Here, Airbnb could not have violated the ordinance Lovett cites because it does not apply to online platforms like Airbnb. Instead, the ordinance regulates the conduct of persons who own or control real property and make "commercial use" of this property. *See* Clark Cnty. Code § 30.44.010(b)(7)(C) (prohibiting "[t]ransient commercial use of residential development for remuneration"). It has no applicability to Airbnb, which operates an online marketplace and does not own or control the properties listed on its platform. *See Airbnb, Inc. v. City & Cnty. of S.F.*, 217 F. Supp. 3d 1066, 1069 (N.D. Cal. 2016) ("Airbnb does not own, manage or operate any of the host properties, and is not a party to the rental agreements"); *Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767, 772 (E.D. La. 2017) (Airbnb does not control listed properties or have a duty to protect third parties); Mot. at 6–7.

*HomeAway* considered a similar ordinance regulating short-term rentals in San Francisco. *Hous. Rights Comm. of S.F. v. HomeAway, Inc.*, No. A146178, 2017 WL 2730028, at *1–2 (Cal. Ct. App. June 26, 2017). The plaintiff claimed that HomeAway—an online platform for short-term accommodation listings—violated the ordinance, but the court disagreed, holding that the ordinance was designed to regulate the conduct of property owners rather than online booking platforms:

> [I]f that type of nonpossessory, tangential involvement could be construed as the act of renting or offering to rent units, the net of entanglement would cover those providing the cleaning services, financial institutions processing rent payments, and utility companies. Indeed, [the plaintiff's] logic would also extend to newspapers, periodicals and Web sites such as Craigslist that might "facilitate" short term rentals in San Francisco through publishing advertisements, among other services provides.

///

///

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*Id.* at *4. The same logic applies here; section 30.44.010(b)(7)(C) cannot provide the predicate for a negligence *per se* claim. This itself is a sufficient basis to dismiss the claim with prejudice. But that claim also fails for several other reasons.

Lovett did not belong to the class of persons that section 30.44.010(b)(7)(C) was meant to protect, and his injury was not the type that ordinance was intended to prevent. *See Prescott*, 410 F. Supp. 3d at 1133. Zoning ordinances governing short-term rentals are designed to protect property owners and long-term residents in the vicinity of those rentals. *See* Clark Cnty. Code § 30.04.020 (noting that Clark County Unified Development Code is designed to "to promote the general prosperity, health, safety, and welfare of the citizens of Clark County," and for "[p]rotect[ing] existing neighborhoods and communities," "[a]ttain[ing] optimum use of land," and "[i]mprov[ing] desirability of living conditions"). Lovett does not allege that he is a resident of the neighborhood where the shooting took place, or that section 30.44.010(b)(7)(C) was specifically designed to prevent shootings at or near parties.

Nor was the booking of the Property via Airbnb the legal cause of Lovett's injury. *See Prescott*, 410 F. Supp. 3d at 1133. The true cause was his assailant's criminal conduct.

### C. Lovett's Respondeat-Superior Claim Fails

Lovett does not defend his respondeat-superior claim or respond to Airbnb's arguments. Mot. at 9–10. As a result, that claim should be deemed forfeited. *See* EDCR 2.20(e) ("Failure of the opposing party to serve and file written opposition may be construed as an admission that the motion … is meritorious and a consent to granting the same."); *Benjamin v. Frias Transp. Mgmt. Sys., Inc.*, 135 Nev. 614, 433 P.3d 1257 (2019) (unpublished) ("[W]hen a party fails to set forth specific arguments as to why a motion to dismiss should not be granted, EDCR 2.20(e) gives the district court the discretion to dismiss the complaint based solely on that failure.").

### D. Alternatively, the Court Should Strike Lovett's Prayer for Punitive Damages as to Airbnb

The opposition claims that punitive damages are appropriate because Airbnb "consciously disregarded the law." Opp. at 15. But that is not the standard. Punitive damages are an extraordinary remedy available only in extreme circumstances where "the plaintiff proves by clear

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 450–51 (2006). Lovett does not, and cannot, plausibly allege oppression, fraud, or malice under the circumstances. Lovett's request for punitive damages should therefore be stricken.

**III. <u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant Airbnb's motion to dismiss and dismiss Lovett's claims with prejudice. Alternatively, and at a minimum, the Court should strike Lovett's prayer for punitive damages.

DATED this 18th day of April, 2023.

MCDONALD CARANO LLP

By: */s/ Rory T. Kay*
Rory T. Kay (NSBN 12416)
Chelsea Latino (NSBN 14227)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Damali A. Taylor, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
dtaylor@omm.com

Dawn Sestito, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
dsestito@omm.com

*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of April, 2023, I caused a true and correct copy of the foregoing **DEFENDANT AIRBNB, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.** to be served via this Court's Electronic Filing system in the above-captioned case.

*/s/ CaraMia Gerard*
An employee of McDonald Carano LLP

# EXHIBIT 1

EXHIBIT 1



Terms of Service (/web/20180117161426/https://www.airbnb.com/terms)

# Terms of Service

**Please read these Terms of Service carefully as they contain important information about your legal rights, remedies and obligations. By accessing or using the Airbnb Platform, you agree to comply with and be bound by these Terms of Service.**

**Please note: Section 19 of these Terms of Service contains an arbitration clause and class action waiver that applies to all Airbnb Members. If you reside in the United States, this provision applies to all disputes with Airbnb. If you reside outside of the United States, this provision applies to any action you bring against Airbnb in the United States. It affects how disputes with Airbnb are resolved. By accepting these Terms of Service, you agree to be bound by this arbitration clause and class action waiver. Please read it carefully.**

Last Updated: June 19, 2017

Thank you for using Airbnb!

These Terms of Service ("**Terms**") constitute a legally binding agreement ("**Agreement**") between you and Airbnb (as defined below) governing your access to and use of the Airbnb website, including any subdomains thereof, and any other websites through which Airbnb makes the Airbnb Services available (collectively, "**Site**"), our mobile, tablet and other smart device applications, and application program interfaces (collectively, "**Application**") and all associated services (collectively, "**Airbnb Services**"). The Site, Application and Airbnb Services together are hereinafter collectively referred to as the "**Airbnb Platform**". Our Host Guarantee Terms (/web/20180117161426/https://www.airbnb.com/terms/host_guarantee), Guest Refund Policy (/web/20180117161426/https://www.airbnb.com/terms/guest_refund_policy), Nondiscrimination Policy (/web/20180117161426/https://www.airbnb.com/terms/nondiscrimination_policy) and other Policies (/web/20180117161426/https://www.airbnb.com/help/topic/250/terms---policies) applicable to your use of the Airbnb Platform are incorporated by reference into this Agreement.

When these Terms mention "**Airbnb**," "**we**," "**us**," or "**our**," it refers to the Airbnb company you are contracting with.

- If you reside in the United States, you are contracting with Airbnb, Inc., 888 Brannan Street, 4th Floor, San Francisco, CA 94103, United States.
- If you reside outside of the United States and the People's Republic of China (which for purposes of these Terms does not include Hong Kong, Macau and Taiwan) (hereinafter "**China**"), you are contracting with Airbnb Ireland UC ("**Airbnb Ireland**"), The Watermarque Building, South Lotts Road, Ringsend, Dublin 4, Ireland.
- If you reside in China, you are contracting with Airbnb Internet (Beijing) Co., Ltd. ("**Airbnb China**") except where you book a Host Service (as defined below) or when you create a Listing located outside of China, in which case you are contracting with Airbnb Ireland for that transaction. Additionally, if your contracting entity is Airbnb China, you will nevertheless contract with Airbnb Ireland for all bookings confirmed prior to December 7, 2016 at 10:00am UTC.

If you change your place of residence, the Airbnb company you contract with will be determined by your new place of residence as specified above, from the date on which your place of residence changes.

Our collection and use of personal information in connection with your access to and use of the Airbnb Platform is described in our Privacy Policy (/web/20180117161426/https://www.airbnb.com/terms/privacy_policy).

Any and all payment processing services through or in connection with your use of the Airbnb Platform ("**Payment Services**") are provided to you by one or more Airbnb Payments entities (individually and collectively, as appropriate, "**Airbnb Payments**") as set out in the Payments Terms of Service (/web/20180117161426/https://www.airbnb.com/terms/payments_terms) ("**Payments Terms**").

Hosts alone are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to their Listings and Host Services. For example, some cities have laws that restrict their ability to host paying guests for short periods or provide certain Host Services. In many cities, Hosts may have to register, get a permit or obtain a license before preparing food or serving alcohol for sale. Some cities may require a license to guide tours or to sail. Host are alone responsible for identifying and obtaining any required licenses, permits, or registrations for any Host Services they offer. Certain types of Host Services may be prohibited altogether. Penalties may include fines or other enforcement. We provide some information in our Help Center (/web/20180117161426/https://www.airbnb.com/help/topic/896/responsible-hosting) to help you identify some of the obligations that apply to you. If you have questions about how local laws apply to your Listing(s) and Host Service(s) on Airbnb, you should always seek legal guidance.

### Table of Contents

1. Scope of Airbnb Services
2. Eligibility, Using the Airbnb Platform, Member Verification
3. Modification of these Terms
4. Account Registration
5. Content
6. Service Fees
7. Terms specific for Hosts

8.   Terms specific for Guests
9.   Booking Modifications, Cancellations and Refunds, Resolution Center
10.   Ratings and Reviews
11.   Damage to Accommodations, Disputes between Members
12.   Rounding off, Currency conversion
13.   Taxes
14.   Prohibited Activities
15.   Term and Termination, Suspension and other Measures
16.   Disclaimers
17.   Liability
18.   Indemnification
19.   Dispute Resolution
20.   Feedback
21.   Applicable Law and Jurisdiction
22.   General Provisions

## 1. Scope of Airbnb Services

1.1 The Airbnb Platform is an online marketplace that enables registered users ("**Members**") and certain third parties who offer services (Members and third parties who offer services are "**Hosts**" and the services they offer are "**Host Services**") to publish such Host Services on the Airbnb Platform ("**Listings**") and to communicate and transact directly with Members that are seeking to book such Host Services (Members using Host Services are "**Guests**"). Host Services may include the offering of vacation or other properties for use ("**Accommodations**"), single or multi-day activities in various categories ("**Experiences**"), access to unique events and locations ("**Events**"), and a variety of other travel and non-travel related services.

1.2 As the provider of the Airbnb Platform, Airbnb does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services. Hosts alone are responsible for their Listings and Host Services. When Members make or accept a booking, they are entering into a contract directly with each other. Airbnb is not and does not become a party to or other participant in any contractual relationship between Members, nor is Airbnb a real estate broker or insurer. Airbnb is not acting as an agent in any capacity for any Member, except as specified in the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

1.3 While we may help facilitate the resolution of disputes, Airbnb has no control over and does not guarantee (i) the existence, quality, safety, suitability, or legality of any Listings or Host Services, (ii) the truth or accuracy of any Listing descriptions, Ratings, Reviews, or other Member Content (as defined below), or (iii) the performance or conduct of any Member or third party. Airbnb does not endorse any Member, Listing or Host Services. Any references to a Member being "verified" (or similar language) only indicate that the Member has completed a relevant verification or identification process and nothing else. Any such description is not an endorsement, certification or guarantee by Airbnb about any Member, including of the Member's identity or background or whether the Member is trustworthy, safe or suitable. You should always exercise due diligence and care when deciding whether to stay in an Accommodation, participate in an Experience or Event or use other Host Services, accept a booking request from a Guest, or communicate and interact with other Members, whether online or in person. Verified Images (as defined below) are intended only to indicate a photographic representation of a Listing at the time the photograph was taken, and are therefore not an endorsement by Airbnb of any Host or Listing.

1.4 If you choose to use the Airbnb Platform as a Host or Co-Host (as defined below), your relationship with Airbnb is limited to being an independent, third-party contractor, and not an employee, agent, joint venturer or partner of Airbnb for any reason, and you act exclusively on your own behalf and for your own benefit, and not on behalf, or for the benefit, of Airbnb.

1.5 To promote the Airbnb Platform and to increase the exposure of Listings to potential Guests, Listings and other Member Content may be displayed on other websites, in applications, within emails, and in online and offline advertisements. To assist Members who speak different languages, Listings and other Member Content may be translated, in whole or in part, into other languages. Airbnb cannot guarantee the accuracy or quality of such translations and Members are responsible for reviewing and verifying the accuracy of such translations. The Airbnb Platform may contain translations powered by Google. Google disclaims all warranties related to the translations, express or implied, including any warranties of accuracy, reliability, and any implied warranties for merchantability, fitness for a particular purpose and noninfringement.

1.6 The Airbnb Platform may contain links to third-party websites or resources ("**Third-Party Services**"). Such Third-Party Services may be subject to different terms and conditions and privacy practices. Airbnb is not responsible or liable for the availability or accuracy of such Third-Party Services, or the content, products, or services available from such Third-Party Services. Links to such Third-Party Services are not an endorsement by Airbnb of such Third-Party Services.

1.7 Due to the nature of the Internet, Airbnb cannot guarantee the continuous and uninterrupted availability and accessibility of the Airbnb Platform. Airbnb may restrict the availability of the Airbnb Platform or certain areas or features thereof, if this is necessary in view of capacity limits, the security or integrity of our servers, or to carry out maintenance measures that ensure the proper or improved functioning of the Airbnb Platform. Airbnb may improve, enhance and modify the Airbnb Platform and introduce new Airbnb Services from time to time.

## 2. Eligibility, Using the Airbnb Platform, Member Verification

2.1 You must be at least 18 years old and able to enter into legally binding contracts to access and use the Airbnb Platform or register an Airbnb Account. By accessing or using the Airbnb Platform you represent and warrant that you are 18 or older and have the legal capacity and authority to enter into a contract.

2.2 You will comply with any applicable export control laws in your local jurisdiction. You also represent and warrant that (i) neither you nor your Host Service(s) are located or take place in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country, and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties.

2.3 Airbnb may make the access to and use of the Airbnb Platform, or certain areas or features of the Airbnb Platform, subject to certain conditions or requirements, such as completing a verification process, meeting specific quality or eligibility criteria, meeting Ratings or Reviews thresholds, or booking and cancellation history.

2.4 User verification on the Internet is difficult and we do not assume any responsibility for the confirmation of any Member's identity. Notwithstanding the above, for transparency and fraud prevention purposes, and as permitted by applicable laws, we may, but have no obligation to (i) ask Members to provide a form of government identification or other information or undertake additional checks designed to help verify the identities or backgrounds of Members, (ii) screen Members against third party databases or other sources and request reports from service providers, and (iii) where we have sufficient information to identify a Member, obtain reports from public records of criminal convictions or sex offender registrations or an equivalent version of background or registered sex offender checks in your local jurisdiction (if available).

2.5 The access to or use of certain areas and features of the Airbnb Platform may be subject to separate policies, standards or guidelines, or may require that you accept additional terms and conditions. If there is a conflict between these Terms and terms and conditions applicable to a specific area or feature of the Airbnb Platform, the latter terms and conditions will take precedence with respect to your access to or use of that area or feature, unless specified otherwise.

2.6 If you access or download the Application from the Apple App Store, you agree to Apple's Licensed Application End User License Agreement (https://web.archive.org/web/20180117161426/http://www.apple.com/legal/internet-services/itunes/appstore/dev/stdeula/). Some areas of the Airbnb Platform implement Google Maps/Earth mapping services, including Google Maps API(s). Your use of Google Maps/Earth is subject to the Google Maps/Google Earth Additional Terms of Service (https://web.archive.org/web/20180117161426/https://www.google.com/help/terms_maps.html).

### 3. Modification of these Terms

Airbnb reserves the right to modify these Terms at any time in accordance with this provision. If we make changes to these Terms, we will post the revised Terms on the Airbnb Platform and update the "Last Updated" date at the top of these Terms. We will also provide you with notice of the modifications by email at least thirty (30) days before the date they become effective. If you disagree with the revised Terms, you may terminate this Agreement with immediate effect. We will inform you about your right to terminate the Agreement in the notification email. If you do not terminate your Agreement before the date the revised Terms become effective, your continued access to or use of the Airbnb Platform will constitute acceptance of the revised Terms.

### 4. Account Registration

4.1 You must register an account ("**Airbnb Account**") to access and use certain features of the Airbnb Platform, such as publishing or booking a Listing. If you are registering an Airbnb Account for a company or other legal entity, you represent and warrant that you have the authority to legally bind that entity and grant us all permissions and licenses provided in these Terms.

4.2 You can register an Airbnb Account using an email address and creating a password, or through your account with certain third-party social networking services, such as Facebook or Google ("**SNS Account**"). You have the ability to disable the connection between your Airbnb Account and your SNS Account at any time, by accessing the "Settings" section of the Airbnb Platform.

4.3 You must provide accurate, current and complete information during the registration process and keep your Airbnb Account and public Airbnb Account profile page information up-to-date at all times.

4.4 You may not register more than one (1) Airbnb Account unless Airbnb authorizes you to do so. You may not assign or otherwise transfer your Airbnb Account to another party.

4.5 You are responsible for maintaining the confidentiality and security of your Airbnb Account credentials and may not disclose your credentials to any third party. You must immediately notify Airbnb if you know or have any reason to suspect that your credentials have been lost, stolen, misappropriated, or otherwise compromised or in case of any actual or suspected unauthorized use of your Airbnb Account. You are liable for any and all activities conducted through your Airbnb Account, unless such activities are not authorized by you and you are not otherwise negligent (such as failing to report the unauthorized use or loss of your credentials).

4.6 Airbnb may enable features that allow you to authorize other Members or certain third parties to take certain actions that affect your Airbnb Account. For example, we may allow Members associated with an Enterprise (as defined in our Privacy Policy) to book for other Members, or we may allow Hosts to add other Members as Co-Hosts (as defined below) to help manage their Listings. These features do not require that you share your credentials with any other person. No third party is authorized by Airbnb to ask for your credentials, and you shall not request the credentials of another Member.

### 5. Content

5.1 Airbnb may, at its sole discretion, enable Members to (i) create, upload, post, send, receive and store content, such as text, photos, audio, video, or other materials and information on or through the Airbnb Platform ("**Member Content**"); and (ii) access and view Member Content and any content that Airbnb itself makes available on or through the Airbnb Platform, including proprietary Airbnb content and any content licensed or authorized for use by or through Airbnb from a third party ("**Airbnb Content**" and together with Member Content, "**Collective Content**").

5.2 The Airbnb Platform, Airbnb Content, and Member Content may in its entirety or in part be protected by copyright, trademark, and/or other laws of the United States and other countries. You acknowledge and agree that the Airbnb Platform and Airbnb Content, including all associated intellectual property rights, are the exclusive property of Airbnb and/or its licensors or authorizing third-parties. You will not remove, alter or obscure any copyright, trademark, service mark or other proprietary rights notices incorporated in or accompanying the Airbnb Platform, Airbnb Content or Member Content. All trademarks, service marks, logos, trade names, and any other source identifiers of Airbnb used on or in connection with the Airbnb Platform and Airbnb Content are trademarks or registered trademarks of Airbnb in the United States and abroad. Trademarks, service marks, logos, trade names and any other proprietary designations of third parties used on or in connection with the Airbnb Platform, Airbnb Content, and/or Collective Content are used for identification purposes only and may be the property of their respective owners.

5.3 You will not use, copy, adapt, modify, prepare derivative works of, distribute, license, sell, transfer, publicly display, publicly perform, transmit, broadcast or otherwise exploit the Airbnb Platform or Collective Content, except to the extent you are the legal owner of certain Member Content or as expressly permitted in these Terms. No licenses or rights are granted to you by implication or otherwise under any intellectual property rights owned or controlled by Airbnb or its licensors, except for the licenses and rights expressly granted in these Terms.

5.4 Subject to your compliance with these Terms, Airbnb grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to (i) download and use the Application on your personal device(s); and (ii) access and view any Collective Content made available on or through the Airbnb Platform and accessible to you, solely for your personal and non-commercial use.

5.5 By creating, uploading, posting, sending, receiving, storing, or otherwise making available any Member Content on or through the Airbnb Platform, you grant to Airbnb a non-exclusive, worldwide, royalty-free, irrevocable, perpetual (or for the term of the protection), sub-licensable and transferable license to such Member Content to access, use, store, copy, modify, prepare derivative works of, distribute, publish, transmit, stream, broadcast, and otherwise exploit in any manner such Member Content to provide and/or promote the Airbnb Platform, in any media or platform. Unless you provide specific consent, Airbnb does not claim any ownership rights in any Member Content and nothing in these Terms will be deemed to restrict any rights that you may have to use or exploit your Member Content.

5.6 Airbnb may offer Hosts the option of having professional photographers take photographs of their Host Services, which are made available by the photographer to Hosts to include in their Listings with or without a watermark or tag bearing the words "Airbnb.com Verified Photo" or similar wording ("**Verified Images**"). You are responsible for ensuring that your Host Service is accurately represented in the Verified Images and you will stop using the Verified Images on or through the Airbnb Platform if they no longer accurately represent your Listing, if you stop hosting the Host Service featured, or if your Airbnb Account is terminated or suspended for any reason. You acknowledge and agree that Airbnb shall have the right to use any Verified Images in advertising, marketing and/or any other business purposes in any media or platform, whether in relation to your Listing or otherwise, without further notice or compensation to you. Where Airbnb is not the exclusive owner of Verified Images, by using such Verified Images on or through the Airbnb Platform, you grant to Airbnb an exclusive, worldwide, royalty-free, irrevocable, perpetual (or for the term of the protection), sub-licensable and transferable license to use such Verified Images for advertising, marketing and/or any other business purposes in any media or platform, whether in relation to your Listing or otherwise, without further notice or compensation to you. Airbnb in turn grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to use Verified Images outside of the Airbnb Platform solely for your personal and non-commercial use.

5.7 You are solely responsible for all Member Content that you make available on or through the Airbnb Platform. Accordingly, you represent and warrant that: (i) you either are the sole and exclusive owner of all Member Content that you make available on or through the Airbnb Platform or you have all rights, licenses, consents and releases that are necessary to grant to Airbnb the rights in and to such Member Content, as contemplated under these Terms; and (ii) neither the Member Content nor your posting, uploading, publication, submission or transmittal of the Member Content or Airbnb's use of the Member Content (or any portion thereof) will infringe, misappropriate or violate a third party's patent, copyright, trademark, trade secret, moral rights or other proprietary or intellectual property rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

5.8 You will not post, upload, publish, submit or transmit any Member Content that: (i) is fraudulent, false, misleading (directly or by omission or failure to update information) or deceptive; (ii) is defamatory, libelous, obscene, pornographic, vulgar or offensive; (iii) promotes discrimination, bigotry, racism, hatred, harassment or harm against any individual or group; (iv) is violent or threatening or promotes violence or actions that are threatening to any other person; (v) promotes illegal or harmful activities or substances; or (vi) violates Airbnb's Content Policy (/web/20180117161426/https://www.airbnb.com/help/article/546/what-is-airbnb-s-content-policy) or any other Airbnb policy. Airbnb may, without prior notice, remove or disable access to any Member Content that Airbnb finds to be in violation of these Terms or Airbnb's then-current Policies (/web/20180117161426/https://www.airbnb.com/help/policies) or Standards (/web/20180117161426/https://www.airbnb.com/standards), or otherwise may be harmful or objectionable to Airbnb, its Members, third parties, or property.

5.9 Airbnb respects copyright law and expects its Members to do the same. If you believe that any content on the Airbnb Platform infringes copyrights you own, please notify us in accordance with our Copyright Policy (/web/20180117161426/https://www.airbnb.com/terms/copyright_policy).

## 6. Service Fees

6.1 Airbnb may charge fees to Hosts ("**Host Fees**") and/or Guests ("**Guest Fees**") (collectively, "**Service Fees**") in consideration for the use of the Airbnb Platform. More information about when Service Fees apply and how they are calculated can be found on our Service Fees page (/web/20180117161426/https://www.airbnb.com/help/article/1857/what-are-airbnb-service-fees).

6.2 Any applicable Service Fees (including any applicable Taxes) will be displayed to a Host or Guest prior to publishing or booking a Listing. Airbnb reserves the right to change the Service Fees at any time, and we will provide Members adequate notice of any fee changes before they become effective.

6.3 You are responsible for paying any Service Fees that you owe to Airbnb. The applicable Service Fees are due and payable and collected by Airbnb Payments pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms). Except as otherwise provided on the Airbnb Platform, Service Fees are non-refundable.

## 7. Terms specific for Hosts

### 7.1 Terms applicable to all Listings

7.1.1 When creating a Listing through the Airbnb Platform you must (i) provide complete and accurate information about your Host Service (such as listing description, location, and calendar availability), (ii) disclose any deficiencies, restrictions (such as house rules) and requirements that apply (such as any minimum age, proficiency or fitness requirements for an Experience) and (iii) provide any other pertinent information requested by Airbnb. You are responsible for keeping your Listing information (including calendar availability) up-to-date at all times.

7.1.2 You are solely responsible for setting a price (including any Taxes if applicable) for your Listing ("**Listing Fee**"). Once a Guest requests a booking of your Listing, you may not request that the Guest pays a higher price than in the booking request.

7.1.3 Any terms and conditions included in your Listing, in particular in relation to cancellations, must not conflict with these Terms or the cancellation policy you have selected for your Listing.

7.1.4 Pictures, animations or videos (collectively, "**Images**") used in your Listings must accurately reflect the quality and condition of your Host Services. Airbnb reserves the right to require that Listings have a minimum number of Images of a certain format, size and resolution.

7.1.5 The placement and ranking of Listings in search results on the Airbnb Platform may vary and depend on a variety of factors, such as Guest search parameters and preferences, Host requirements, price and calendar availability, number and quality of Images, customer service and cancellation history, Reviews and Ratings, type of Host Service, and/or ease of booking.

7.1.6 When you accept or have pre-approved a booking request by a Guest, you are entering into a legally binding agreement with the Guest and are required to provide your Host Service(s) to the Guest as described in your Listing when the booking request is made. You also agree to pay the applicable Host Fee and any applicable Taxes, which will be collected pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

7.1.7 Airbnb recommends that Hosts obtain appropriate insurance for their Host Services. Please review any respective insurance policy carefully, and in particular make sure that you are familiar with and understand any exclusions to, and any deductibles that may apply for, such insurance policy, including, but not limited to, whether or not your insurance policy will cover the actions or inactions of Guests (and the individuals the Guest has booked for, if applicable) while staying at your Accommodation or participating in your Experience, Event or other Host Service.

**7.2 Listing Accommodations**

7.2.1 You may only list one Accommodation per Listing.

7.2.2 If you choose to require a security deposit for your Accommodation, you must specify this in your Listing ("**Security Deposit**"). Hosts are not allowed to ask for a Security Deposit after a booking has been confirmed or outside of the Airbnb Platform. Airbnb will use commercially reasonable efforts to address Hosts' requests and claims related to Security Deposits, but Airbnb is not responsible for administering or accepting any claims by Hosts related to Security Deposits.

7.2.3 You represent and warrant that any Listing you post and the booking of, or a Guest's stay at, an Accommodation will (i) not breach any agreements you have entered into with any third parties, such as homeowners association, condominium, or other agreements, and (ii) comply with all applicable laws (such as zoning laws), Tax requirements, and other rules and regulations (including having all required permits, licenses and registrations). As a Host, you are responsible for your own acts and omissions and are also responsible for the acts and omissions of any individuals who reside at or are otherwise present at the Accommodation at your request or invitation, excluding the Guest (and the individuals the Guest invites to the Accommodation, if applicable).

**7.3 Listing Experiences, Events and other Host Services**

7.3.1 To list an Experience, Event or other Host Service, you must create a Listing and submit the Experience, Event or Host Service to Airbnb. To be considered for publishing on the Airbnb Platform, Experiences, Events or other Host Services must at all times meet the quality standards for Experiences (/web/20180117161426/https://www.airbnb.com/help/topic/906/) and meet Guest demand. Airbnb reserves the right to decide, in its sole discretion, if a submitted Experience, Event or other Host Service will be published on the Airbnb Platform.

7.3.2 When listing an Experience, Event or other Host Service you must, where applicable, fully educate and inform Guests about (i) any risks inherent to the Experience, Event or other Host Service, (ii) any requirements for participation, such as the minimum age, related skills, level of fitness or other requirements, and (iii) anything else they may need to know to safely participate in the Experience, Event or other Host Service (including dress codes, equipment, special certifications or licenses, etc.).

7.3.3 If you wish to list an Experience on behalf of a Nonprofit ("Social Impact Experience"), you must comply with the eligibility requirements (/web/20180117161426/https://www.airbnb.com/help/article/1578) for hosting a Social Impact Experience. When listing a Social Impact Experience you (i) represent and warrant that you are duly authorized to act on behalf of your Nonprofit and (ii) acknowledge and agree that all payouts will be directed to an account owned by your Nonprofit. You and your Nonprofit acknowledge that listing a Social Impact Experience does not create a commercial fundraising or co-venturer, or charitable trust relationship with Airbnb and Airbnb is not a professional fundraiser or commercial participator. Nonprofits, and not Airbnb, are responsible for determining what, if any, portion of their Listing Fee is a charitable contribution and for providing Guests charitable tax receipts for any applicable charitable contributions. You and your Nonprofit are solely responsible for complying with all laws that apply to your organization and your Social Impact Experience.

7.3.4 You represent and warrant that you (i) understand and comply with all laws, rules and regulations that may apply to your Experience, Event or other Host Service(s), and (ii) will obtain any required licenses, permits, or registrations prior to providing your Experience, Event or other Host Service(s). You can find additional information about some of the legal obligations that may apply to you on our Responsible Hosting (/web/20180117161426/https://www.airbnb.com/help/topic/896/responsible-hosting) pages.

7.3.5 You must provide an Experience, Event or other Host Service in person and may not allow any third party to provide the Experience, Event or other Host Service on your behalf, unless authorized by Airbnb.

**7.4 Co-Hosts**

7.4.1 Airbnb may enable Hosts to authorize other Members ("**Co-Hosts**") to administer the Host's Listing(s), and to bind the Host and take certain actions in relation to the Listing(s) as permitted by the Host, such as accepting booking requests, messaging and welcoming Guests, and updating the Listing Fee and calendar availability (collectively, "**Co-Host Services**"). Any agreement formed between Host and Co-Host may not conflict with these Terms and the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms). Co-Hosts may only act in an individual capacity and not on behalf of a company or other organization, unless expressly authorized by Airbnb. Airbnb reserves the right, in our sole discretion, to limit the number of Co-Hosts a Host may invite for each Listing and to limit the number of Listings a Co-Host may manage.

7.4.2 Hosts and Co-Hosts may agree on a fee ("**Co-Host Services Fee**") in consideration for the Co-Host Services provided by the Co-Host. When such an agreement is made, the Host agrees to pay the Co-Host Services Fee for any confirmed booking of their Listing, which will be deducted directly from the Listing Fee after deduction of any applicable Host Fee. In addition, Hosts may instruct a Co-Host to provide certain one-time services in relation to their Listing. Hosts can pay Co-Hosts for one-time services and any other expenses using the Resolution Center. Airbnb Payments will process Co-Host Services Fees and Resolution Center payments pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

7.4.3 Hosts and Co-Hosts agree that each activity, booking, or other transaction reported on the Airbnb Platform, including any Co-Host Services provided by the Co-Host and any amounts due from a Host to the Co-Host for the provision of such services, will be deemed accurate, correct and binding, unless challenged, by notifying the other person and Airbnb (by emailing host-exp@airbnb.com (https://web.archive.org/web/20180117161426/mailto:host-exp@airbnb.com)), within 21 days of posting of the disputed activity, booking or other transaction on the Airbnb Platform.

7.4.4 Hosts should exercise due diligence and care when deciding who to add as a Co-Host to their Listing(s). Hosts remain solely responsible and liable for any and all Listings and Member Content published on the Airbnb Platform, including any Listing created by a Co-Host on their behalf. Further, Hosts remain responsible and liable for their own acts and omissions, including, but not limited to, conduct that causes harm or damage to the Co-Host(s). Co-Hosts remain responsible and liable for their own acts and omissions when engaging in their roles and responsibilities as a Co-Host, including, but not limited to, conduct that causes harm or damage to the Host. In addition, both Host and Co-Host are jointly responsible and severally liable for third party claims, including Guest claims, arising from the acts and omissions of the other person as related to hosting activities, communications with Guests, and the provision of any Co-Host Services.

7.4.5 Unless agreed otherwise by Host and Co-Host, Host and Co-Host may terminate the Co-Host agreement at any time. In addition, both Host and Co-Host acknowledge that their Co-hosting relationship will terminate in the event that Airbnb (i) terminates the Co-Host service or (ii) terminates either party's participation in the Co-Host service. When the Co-Host agreement is terminated, the Host will remain responsible for all of the Co-Host's actions prior to the termination, including the responsibility to fulfill any pending or future bookings initiated prior to the termination. When a Member is removed as a Co-Host, that Member will no longer have access to any Host or Guest information related to the applicable Host's Listing(s). In addition, Host agrees to pay Co-Host for all Co-Host Services completed prior to Co-Host's termination within 14 days of Co-Host's termination via the Resolution Center. A Co-Host will not be entitled to any fees for any Co-Host Services that have not been completed prior to the Co-Host's termination.

7.4.6 As a Co-Host, you will not be reviewed by Guests, meaning that your Co-Host activities will not affect your Reviews or Ratings for other Listings for which you are a Host. Instead, the Host of such Listing(s) will be reviewed by Guests (including potentially on the basis of the Co-Host's conduct and performance). Hosts acknowledge that Reviews and Ratings from Guests for their Listing(s) may be impacted by a Co-Host's conduct and performance.

## 8. Terms specific for Guests

### 8.1 Terms applicable to all bookings

8.1.1 Subject to meeting any requirements (such as completing any verification processes) set by the Host, you can book a Listing available on the Airbnb Platform by following the respective booking process. All applicable fees, including the Listing Fee, Security Deposit (if applicable), Guest Fee and any applicable Taxes (collectively, "**Total Fees**") will be presented to you prior to booking a Listing. You agree to pay the Total Fees for any booking requested in connection with your Airbnb Account.

8.1.2 Upon receipt of a booking confirmation from Airbnb, a legally binding agreement is formed between you and your Host, subject to any additional terms and conditions of the Host that apply, including in particular the applicable cancellation policy and any rules and restrictions specified in the Listing. Airbnb Payments will collect the Total Fees at the time of the booking request or upon the Host's confirmation pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

8.1.3 If you book a Host Service on behalf of additional guests, you are required to ensure that every additional guest meets any requirements set by the Host, and is made aware of and agrees to these Terms and any terms and conditions, rules and restrictions set by the Host. If you are booking for an additional guest who is a minor, you represent and warrant that you are legally authorized to act on behalf of the minor. Minors may only participate in an Experience, Event or other Host Service if accompanied by an adult who is responsible for them.

### 8.2 Booking Accommodations

8.2.1 You understand that a confirmed booking of an Accommodation ("**Accommodation Booking**") is a limited license granted to you by the Host to enter, occupy and use the Accommodation for the duration of your stay, during which time the Host (only where and to the extent permitted by applicable law) retains the right to re-enter the Accommodation, in accordance with your agreement with the Host.

8.2.2 You agree to leave the Accommodation no later than the checkout time that the Host specifies in the Listing or such other time as mutually agreed upon between you and the Host. If you stay past the agreed upon checkout time without the Host's consent ("**Overstay**"), you no longer have a license to stay in the Accommodation and the Host is entitled to make you leave in a manner consistent with applicable law. In addition, you agree to pay, if requested by the Host, for each twenty-four (24) hour period (or any portion thereof) that you Overstay, an additional nightly fee of up to two (2) times the average nightly Listing Fee originally paid by you to cover the inconvenience suffered by the Host, plus all applicable Guest Fees, Taxes, and any legal expenses incurred by the Host to make you leave (collectively, "**Overstay Fees**"). Overstay Fees for late checkouts on the checkout date that do not impact upcoming bookings may be limited to the additional costs incurred by the Host as a result of such Overstay. Airbnb Payments will collect Overstay Fees from you pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms). A Security Deposit, if required by a Host, may be applied to any Overstay Fees due for a Guest's Overstay.

### 8.3 Booking Experiences, Events and other Host Services

8.3.1 You should carefully review the description of any Experience, Event or other Host Service you intend to book to ensure you (and any additional guests you are booking for) meet any minimum age, proficiency, fitness or other requirements which the Host has specified in their Listing. You are required to inform the Host of any medical or physical conditions, or other circumstances that may impact your and any additional guest's ability to safely participate in any Experience, Event or other Host Service. In addition, certain laws, like the minimum legal drinking age in the location of the Experience, Event or other Host Service, may also apply. You are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to your participation in an Experience, Event or other Host Service.

8.3.2 Before and during an Experience, Event or other Host Service you must at all times adhere to the Hosts' instructions.

8.3.3 You may not bring any additional individuals to an Experience, Event or other Host Service unless such an individual was added by you as an additional guest during the booking process on the Airbnb Platform.

## 9. Booking Modifications, Cancellations and Refunds, Resolution Center

9.1 Hosts and Guests are responsible for any modifications to a booking that they make via the Airbnb Platform or direct Airbnb customer service to make ("**Booking Modifications**"), and agree to pay any additional Listing Fees, Host Fees or Guest Fees and/or Taxes associated with such Booking Modifications.

9.2 Guests can cancel a confirmed booking at any time subject to the Listing's cancellation policy, and Airbnb Payments will provide any refund to the Guest in accordance with such cancellation policy. Unless extenuating circumstances (/web/20180117161426/https://www.airbnb.com/help/article/1320/what-is-airbnb-s-extenuating-circumstances-policy) exist, any amounts due to the Host under the applicable cancellation policy will be remitted to the Host by Airbnb Payments pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

9.3 If a Host cancels a confirmed booking, the Guest will receive a full refund of the Total Fees for such booking and Airbnb may publish an automated review on the Listing cancelled by the Host indicating that a booking was cancelled. In addition, Airbnb may (i) keep the calendar for the Listing unavailable or blocked for the dates of the cancelled booking, and/or (ii) impose a cancellation fee, unless the Host has a valid reason for cancelling the booking pursuant to Airbnb's Extenuating Circumstances Policy (/web/20180117161426/https://www.airbnb.com/help/article/1320/what-is-airbnb-s-extenuating-circumstances-policy) or has legitimate concerns about the Guest's behavior.

9.4 For Experiences, Events and other Host Services, if inclement weather creates an unsafe or uncomfortable scenario for Guests, Hosts may modify or cancel a Host Service. If there is a substantial change in the itinerary or the Host Service needs to be cancelled, Airbnb will work with the Host to provide Guests an alternative date for the Host Service, an appropriate refund or a rebooking.

9.5 In certain circumstances, Airbnb may decide, in its sole discretion, that it is necessary to cancel a confirmed booking and make appropriate refund and payout decisions. This may be for reasons set forth in Airbnb's Extenuating Circumstances Policy (/web/20180117161426/https://www.airbnb.com/help/article/1320/what-is-airbnb-s-extenuating-circumstances-policy) or (i) where Airbnb believes in good faith, while taking the legitimate interests of both parties into account, this is necessary to avoid significant harm to Airbnb, other Members, third parties or property, or (ii) for any of the reasons set out in these Terms.

9.6 If a Guest suffers a Travel Issue pursuant to the Guest Refund Policy (/web/20180117161426/https://www.airbnb.com/terms/guest_refund_policy), Airbnb may determine, in its sole discretion, to refund the Guest part or all of the Total Fees in accordance with the Guest Refund Policy.

9.7 Members may use the Resolution Center to send or request money for refunds, additional Host Services, Co-Host Services or Damage Claims related to bookings. You agree to pay all amounts sent through the Resolution Center in connection with your Airbnb Account, and Airbnb Payments will handle all such payments pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

### 10. Ratings and Reviews

10.1 Within a certain timeframe after completing a booking, Guests and Hosts can leave a public review ("**Review**") and submit a star rating ("**Rating**") about each other. Any Ratings or Reviews reflect the opinion of individual Members and do not reflect the opinion of Airbnb. Ratings and Reviews are not verified by Airbnb for accuracy and may be incorrect or misleading.

10.2 Ratings and Reviews by Guests and Hosts must be fair, truthful and factual and may not contain any offensive or defamatory language. Ratings and Reviews must comply with Airbnb's Content Policy (/web/20180117161426/https://www.airbnb.com/help/article/546/what-is-airbnb-s-content-policy) and Extortion Policy (/web/20180117161426/https://www.airbnb.com/help/article/548/what-is-airbnb-s-extortion-policy).

10.3 Members are prohibited from manipulating the Ratings and Reviews system in any manner, such as instructing a third party write a positive or negative Review about another Member.

### 11. Damage to Accommodations, Disputes between Members

11.1 As a Guest, you are responsible for leaving the Accommodation (including any personal or other property located at the Accommodation) in the condition it was in when you arrived. You are responsible for your own acts and omissions and are also responsible for the acts and omissions of any individuals whom you invite to, or otherwise provide access to, the Accommodation, excluding the Host (and the individuals the Host invites to the Accommodation, if applicable).

11.2 If a Host claims and provides evidence that you as a Guest have damaged an Accommodation or any personal or other property at an Accommodation ("**Damage Claim**"), the Host can seek payment from you through the Resolution Center. If a Host escalates a Damage Claim to Airbnb, you will be given an opportunity to respond. If you agree to pay the Host, or Airbnb determines in its sole discretion that you are responsible for the Damage Claim, Airbnb Payments will collect any such sums from you and/or against the Security Deposit (if applicable) required to cover the Damage Claim pursuant to the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms). Airbnb also reserves the right to otherwise collect payment from you and pursue any remedies available to Airbnb in this regard in situations in which you are responsible for a Damage Claim, including, but not limited to, in relation to any payment requests made by Hosts under the Airbnb Host Guarantee.

11.3 Members agree to cooperate with and assist Airbnb in good faith, and to provide Airbnb with such information and take such actions as may be reasonably requested by Airbnb, in connection with any Damage Claims or other complaints or claims made by Members relating to Accommodations or any personal or other property located at an Accommodation (including, without limitation, payment requests made under the Airbnb Host Guarantee), Experiences, or Co-Host agreements. A Member shall, upon Airbnb's reasonable request and at no cost to the Member, participate in mediation or a similar resolution process with another Member, which process will be conducted by Airbnb or a third party selected by Airbnb or its insurer, with respect to losses for which a Member is requesting payment from Airbnb (including but not limited to payments under the Airbnb Host Guarantee).

11.4 If you are a Guest or a Co-Host, you understand and agree that Airbnb may make a claim under your homeowner's, renter's or other insurance policy related to any damage or loss that you may have caused, or been responsible for, to an Accommodation or any personal or other property located at an Accommodation (including without limitation amounts paid by Airbnb under the Airbnb Host Guarantee). You agree to cooperate with and assist Airbnb in good faith, and to provide Airbnb with such information as may be reasonably requested by Airbnb, to make a claim under your homeowner's, renter's or other insurance policy, including, but not limited to, executing documents and taking such further acts as Airbnb may reasonably request to assist Airbnb in accomplishing the foregoing.

### 12. Rounding off, Currency conversion

12.1 Airbnb may, in its sole discretion, round up or round down amounts that are payable from or to Guests or Hosts to the nearest whole functional base unit in which the currency is denominated (i.e. to the nearest dollar, euro or other supported currency); for example, Airbnb will round up an amount of $101.50 to $102.00, and round down an amount of $101.49 to $101.00. For currencies that are denominated in large numbers, Airbnb may determine the functional base unit in which those currencies are denominated to be 10, 100 or 1,000 of the currency; for example, Airbnb may round up an amount of 1,045 up to 1,050 and 1,044 down to 1,040, or 837,500 up to 838,000 and 837,499 down to 837,000.

12.2 The Airbnb Platform facilitates bookings between Guests and Hosts who may prefer to pay in a currency different from their destination currency, which may require currency conversions to accommodate these differing currency preferences. Although the Airbnb Platform allows Members to view the price of Listings in a number of currencies, the currencies available for Members to make and receive payments may be limited, and may not include the default currency in any given geographic location. Details regarding currency conversion, including any associated fees, are detailed in the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms).

## 13. Taxes

13.1 As a Host you are solely responsible for determining your obligations to report, collect, remit or include in your Listing Fees any applicable VAT or other indirect sales taxes, occupancy tax, tourist or other visitor taxes or income taxes ("**Taxes**").

13.2 Tax regulations may require us to collect appropriate Tax information from Hosts, or to withhold Taxes from payouts to Hosts, or both. If a Host fails to provide us with documentation that we determine to be sufficient to alleviate our obligation (if any) to withhold Taxes from payouts to you, we reserve the right to freeze all payouts, withhold such amounts as required by law, or to do both, until resolution.

13.3 You understand that any appropriate governmental agency, department and/or authority ("**Tax Authority**") where your Accommodation is located may require Taxes to be collected from Guests or Hosts on Listing Fees, and to be remitted to the respective Tax Authority. The laws in jurisdictions may vary, but these Taxes may be required to be collected and remitted as a percentage of the Listing Fees set by Hosts, a set amount per day, or other variations, and are sometimes called "transient occupancy taxes," "hotel taxes," "lodging taxes," "city taxes," "room taxes" or "tourist taxes" ("**Occupancy Taxes**").

13.4 In certain jurisdictions, Airbnb may decide in its sole discretion to facilitate collection and remittance of Occupancy Taxes from or on behalf of Guests or Hosts, in accordance these Terms ("**Collection and Remittance**") if such jurisdiction asserts Airbnb or Hosts have an Occupancy Tax collection and remittance obligation. In any jurisdiction in which we decide to facilitate direct Collection and Remittance, you hereby instruct and authorize Airbnb (via Airbnb Payments) to collect Occupancy Taxes from Guests on the Host's behalf at the time Listing Fees are collected, and to remit such Occupancy Taxes to the Tax Authority. The amount of Occupancy Taxes, if any, collected and remitted by Airbnb will be visible to and separately stated to both Guests and Hosts on their respective transaction documents. Where Airbnb is facilitating Collection and Remittance, Hosts are not permitted to collect any Occupancy Taxes being collected by Airbnb relating to their Accommodations in that jurisdiction.

13.5 You agree that any claim or cause of action relating to Airbnb's facilitation of Collection and Remittance of Occupancy Taxes shall not extend to any supplier or vendor that may be used by Airbnb in connection with facilitation of Collection and Remittance, if any. Guests and Hosts agree that we may seek additional amounts from you in the event that the Taxes collected and/or remitted are insufficient to fully discharge your obligations to the Tax Authority, and agree that your sole remedy for Occupancy Taxes collected is a refund of Occupancy Taxes collected by Airbnb from the applicable Tax Authority in accordance with applicable procedures set by that Tax Authority.

13.6 Airbnb reserves the right, with prior notice to Hosts, to cease the Collection and Remittance in any jurisdiction for any reason at which point Hosts and Guests are once again solely responsible and liable for the collection and/or remittance of any and all Occupancy Taxes that may apply to Accommodations in that jurisdiction.

## 14. Prohibited Activities

14.1 You are solely responsible for compliance with any and all laws, rules, regulations, and Tax obligations that may apply to your use of the Airbnb Platform. In connection with your use of the Airbnb Platform, you will not and will not assist or enable others to:

- breach or circumvent any applicable laws or regulations, agreements with third-parties, third-party rights, or our Terms, Policies (/web/20180117161426/https://www.airbnb.com/help/topic/250/terms---policies) or Standards (/web/20180117161426/https://www.airbnb.com/standards);
- use the Airbnb Platform or Collective Content for any commercial or other purposes that are not expressly permitted by these Terms or in a manner that falsely implies Airbnb endorsement, partnership or otherwise misleads others as to your affiliation with Airbnb;
- copy, store or otherwise access or use any information, including personally identifiable information about any other Member, contained on the Airbnb Platform in any way that is inconsistent with Airbnb's Privacy Policy (/web/20180117161426/https://www.airbnb.com/terms/privacy_policy) or these Terms or that otherwise violates the privacy rights of Members or third parties;
- use the Airbnb Platform in connection with the distribution of unsolicited commercial messages ("spam");
- offer, as a Host, any Accommodation that you do not yourself own or have permission to make available as a residential or other property through the Airbnb Platform;
- unless Airbnb explicitly permits otherwise, book any Listing if you will not actually be using the Host Services yourself;
- contact another Member for any purpose other than asking a question related to a your own booking, Listing, or the Member's use of the Airbnb Platform, including, but not limited to, recruiting or otherwise soliciting any Member to join third-party services, applications or websites, without our prior written approval;
- use the Airbnb Platform to request, make or accept a booking independent of the Airbnb Platform, to circumvent any Service Fees or for any other reason;
- request, accept or make any payment for Listing Fees outside of the Airbnb Platform or Airbnb Payments. If you do so, you acknowledge and agree that you: (i) would be in breach of these Terms; (ii) accept all risks and responsibility for such payment, and (iii) hold Airbnb harmless from any liability for such payment;
- discriminate against or harass anyone on the basis of race, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age or sexual orientation, or otherwise engage in any abusive or disruptive behavior;
- use, display, mirror or frame the Airbnb Platform or Collective Content, or any individual element within the Airbnb Platform, Airbnb's name, any Airbnb trademark, logo or other proprietary information, or the layout and design of any page or form contained on a page in the Airbnb Platform, without Airbnb's express written consent;
- dilute, tarnish or otherwise harm the Airbnb brand in any way, including through unauthorized use of Collective Content, registering and/or using Airbnb or derivative terms in domain names, trade names, trademarks or other source identifiers, or registering and/or using domains names, trade names, trademarks or other source identifiers that closely imitate or are confusingly similar to Airbnb domains, trademarks, taglines, promotional campaigns or Collective Content;
- use any robots, spider, crawler, scraper or other automated means or processes to access, collect data or other content from or otherwise interact with the Airbnb Platform for any purpose;

- avoid, bypass, remove, deactivate, impair, descramble, or otherwise attempt to circumvent any technological measure implemented by Airbnb or any of Airbnb's providers or any other third party to protect the Airbnb Platform;
- attempt to decipher, decompile, disassemble or reverse engineer any of the software used to provide the Airbnb Platform;
- take any action that damages or adversely affects, or could damage or adversely affect the performance or proper functioning of the Airbnb Platform;
- export, re-export, import, or transfer the Application except as authorized by United States law, the export control laws of your jurisdiction, and any other applicable laws; or
- violate or infringe anyone else's rights or otherwise cause harm to anyone.

14.2 You acknowledge that Airbnb has no obligation to monitor the access to or use of the Airbnb Platform by any Member or to review, disable access to, or edit any Member Content, but has the right to do so to (i) operate, secure and improve the Airbnb Platform (including without limitation for fraud prevention, risk assessment, investigation and customer support purposes); (ii) ensure Members' compliance with these Terms; (iii) comply with applicable law or the order or requirement of a court, law enforcement or other administrative agency or governmental body; (iv) respond to Member Content that it determines is harmful or objectionable; or (v) as otherwise set forth in these Terms. Members agree to cooperate with and assist Airbnb in good faith, and to provide Airbnb with such information and take such actions as may be reasonably requested by Airbnb with respect to any investigation undertaken by Airbnb or a representative of Airbnb regarding the use or abuse of the Airbnb Platform.

14.3 If you feel that any Member you interact with, whether online or in person, is acting or has acted inappropriately, including but not limited to anyone who (i) engages in offensive, violent or sexually inappropriate behavior, (ii) you suspect of stealing from you, or (iii) engages in any other disturbing conduct, you should immediately report such person to the appropriate authorities and then to Airbnb by contacting us with your police station and report number (if available); provided that your report will not obligate us to take any action beyond that required by law (if any) or cause us to incur any liability to you.

## 15. Term and Termination, Suspension and other Measures

15.1 This Agreement shall be effective for a 30-day term, at the end of which it will automatically and continuously renew for subsequent 30-day terms until such time when you or Airbnb terminate the Agreement in accordance with this provision.

15.2 You may terminate this Agreement at any time via the "Cancel Account" feature on the Airbnb Platform or by sending us an email. If you cancel your Airbnb Account as a Host, any confirmed booking(s) will be automatically cancelled and your Guests will receive a full refund. If you cancel your Airbnb Account as a Guest, any confirmed booking(s) will be automatically cancelled and any refund will depend upon the terms of the Listing's cancellation policy.

15.3 Without limiting our rights specified below, Airbnb may terminate this Agreement for convenience at any time by giving you thirty (30) days' notice via email to your registered email address.

15.4 Airbnb may immediately, without notice terminate this Agreement if (i) you have materially breached your obligations under these Terms, the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms), our Policies (/web/20180117161426/https://www.airbnb.com/help/topic/250/terms---policies) or Standards (/web/20180117161426/https://www.airbnb.com/standards), (ii) you have violated applicable laws, regulations or third party rights, or (iii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties (for example in the case of fraudulent behavior of a Member).

15.5 In addition, Airbnb may take any of the following measures (i) to comply with applicable law, or the order or request of a court, law enforcement or other administrative agency or governmental body, or if (ii) you have breached these Terms, the Payments Terms (/web/20180117161426/https://www.airbnb.com/terms/payments_terms), our Policies (/web/20180117161426/https://www.airbnb.com/help/topic/250/terms---policies) or Standards (/web/20180117161426/https://www.airbnb.com/standards), applicable laws, regulations, or third party rights, (iii) you have provided inaccurate, fraudulent, outdated or incomplete information during the Airbnb Account registration, Listing process or thereafter, (iv) you and/or your Listings or Host Services at any time fail to meet any applicable quality or eligibility criteria, (v) you have repeatedly received poor Ratings or Reviews or Airbnb otherwise becomes aware of or has received complaints about your performance or conduct, (vi) you have repeatedly cancelled confirmed bookings or failed to respond to booking requests without a valid reason, or (vii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties, or to prevent fraud or other illegal activity:

- refuse to surface, delete or delay any Listings, Ratings, Reviews, or other Member Content;
- cancel any pending or confirmed bookings;
- limit your access to or use of the Airbnb Platform;
- temporarily or permanently revoke any special status associated with your Airbnb Account; or
- temporarily or in case of severe or repeated offenses permanently suspend your Airbnb Account.

In case of non-material breaches and where appropriate, you will be given notice of any intended measure by Airbnb and an opportunity to resolve the issue to Airbnb's reasonable satisfaction.

15.6 If we take any of the measures described above (i) we may refund your Guests in full for any and all confirmed bookings that have been cancelled, irrespective of preexisting cancellation policies, and (ii) you will not be entitled to any compensation for pending or confirmed bookings that were cancelled.

15.7 When this Agreement has been terminated, you are not entitled to a restoration of your Airbnb Account or any of your Member Content. If your access to or use of the Airbnb Platform has been limited or your Airbnb Account has been suspended or this Agreement has been terminated by us, you may not register a new Airbnb Account or access and use the Airbnb Platform through an Airbnb Account of another Member.

15.8 Unless you reside in Germany, if you or we terminate this Agreement, the clauses of these Terms that reasonably should survive termination of the Agreement will remain in effect.

## 16. Disclaimers

**If you choose to use the Airbnb Platform or Collective Content, you do so voluntarily and at your sole risk. The Airbnb Platform and Collective Content is provided "as is", without warranty of any kind, either express or implied.**

**You agree that you have had whatever opportunity you deem necessary to investigate the Airbnb Services, laws, rules, or regulations that may be applicable to your Listings and/or Host Services you are receiving and that you are not relying upon any statement of law or fact made by Airbnb relating to a Listing.**

**If we choose to conduct identity verification or background checks on any Member, to the extent permitted by applicable law, we disclaim warranties of any kind, either express or implied, that such checks will identify prior misconduct by a Member or guarantee that a Member will not engage in misconduct in the future.**

**You agree that some Experiences, Events or other Host Services may carry inherent risk, and by participating in those Host Services, you choose to assume those risks voluntarily. For example, some Host Services may carry risk of illness, bodily injury, disability, or death, and you freely and willfully assume those risks by choosing to participate in those Host Services. You assume full responsibility for the choices you make before, during and after your participation in a Host Service. If you are bringing a minor as an additional guest, you are solely responsible for the supervision of that minor throughout the duration of your Host Service and to the maximum extent permitted by law, you agree to release and hold harmless Airbnb from all liabilities and claims that arise in any way from any injury, death, loss or harm that occurs to that minor during the Host Service or in any way related to your Host Service.**

**The foregoing disclaimers apply to the maximum extent permitted by law. You may have other statutory rights. However, the duration of statutorily required warranties, if any, shall be limited to the maximum extent permitted by law.**

## 17. Liability

**17.1 Unless you reside in the EU, you acknowledge and agree that, to the maximum extent permitted by law, the entire risk arising out of your access to and use of the Airbnb Platform and Collective Content, your publishing or booking of any Listing via the Airbnb Platform, your stay at any Accommodation, participation in any Experience or Event or use of any other Host Service or any other interaction you have with other Members whether in person or online remains with you. Neither Airbnb nor any other party involved in creating, producing, or delivering the Airbnb Platform or Collective Content will be liable for any incidental, special, exemplary or consequential damages, including lost profits, loss of data or loss of goodwill, service interruption, computer damage or system failure or the cost of substitute products or services, or for any damages for personal or bodily injury or emotional distress arising out of or in connection with (i) these Terms, (ii) from the use of or inability to use the Airbnb Platform or Collective Content, (iii) from any communications, interactions or meetings with other Members or other persons with whom you communicate, interact or meet with as a result of your use of the Airbnb Platform, or (iv) from your publishing or booking of a Listing, including the provision or use of a Listing's Host Services, whether based on warranty, contract, tort (including negligence), product liability or any other legal theory, and whether or not Airbnb has been informed of the possibility of such damage, even if a limited remedy set forth herein is found to have failed of its essential purpose. Except for our obligations to pay amounts to applicable Hosts pursuant to these Terms or an approved payment request under the Airbnb Host Guarantee, in no event will Airbnb's aggregate liability arising out of or in connection with these Terms and your use of the Airbnb Platform including, but not limited to, from your publishing or booking of any Listings via the Airbnb Platform, or from the use of or inability to use the Airbnb Platform or Collective Content and in connection with any Accommodation, Experiences, Event or other Host Service, or interactions with any other Members, exceed the amounts you have paid or owe for bookings via the Airbnb Platform as a Guest in the twelve (12) month period prior to the event giving rise to the liability, or if you are a Host, the amounts paid by Airbnb to you in the twelve (12) month period prior to the event giving rise to the liability, or one hundred U.S. dollars (US$100), if no such payments have been made, as applicable. The limitations of damages set forth above are fundamental elements of the basis of the bargain between Airbnb and you. Some jurisdictions do not allow the exclusion or limitation of liability for consequential or incidental damages, so the above limitation may not apply to you. If you reside outside of the U.S., this does not affect Airbnb's liability for death or personal injury arising from its negligence, nor for fraudulent misrepresentation, misrepresentation as to a fundamental matter or any other liability which cannot be excluded or limited under applicable law.**

**17.2 If you reside in the EU, Airbnb is liable under statutory provisions for intent and gross negligence by us, our legal representatives, directors, or other vicarious agents. The same applies to the assumption of guarantees or any other strict liability, or in case of a culpable injury to life, limb, or health. Airbnb is liable for any negligent breaches of essential contractual obligations by us, our legal representatives, directors, or other vicarious agents. Essential contractual obligations are such duties of Airbnb in whose proper fulfilment you regularly trust and must trust for the proper execution of the contract but the amount shall be limited to the typically occurring foreseeable damage. Any additional liability of Airbnb is excluded.**

## 18. Indemnification

You agree to release, defend (at Airbnb's option), indemnify, and hold Airbnb and its affiliates and subsidiaries, and their officers, directors, employees and agents, harmless from and against any claims, liabilities, damages, losses, and expenses, including, without limitation, reasonable legal and accounting fees, arising out of or in any way connected with (i) your breach of these Terms or our Policies or Standards, (ii) your improper use of the Airbnb Platform or any Airbnb Services, (iii) your interaction with any Member, stay at an Accommodation, participation in an Experience, Event or other Host Service, including without limitation any injuries, losses or damages (whether compensatory, direct, incidental, consequential or otherwise) of any kind arising in connection with or as a result of such interaction, stay, participation or use, (iv) Airbnb's Collection and Remittance of Occupancy Taxes, or (v) your breach of any laws, regulations or third party rights.

## 19. Dispute Resolution and Arbitration Agreement

19.1 This Dispute Resolution and Arbitration Agreement shall apply if you (i) reside in the United States; or (ii) do not reside in the United States, but bring any claim against Airbnb in the United States (to the extent not in conflict with Section 21).

19.2 *Overview of Dispute Resolution Process*. Airbnb is committed to participating in a consumer-friendly dispute resolution process. To that end, these Terms provide for a two-part process for individuals to whom Section 19.1 applies: (1) an informal negotiation directly with Airbnb's customer service team, and (2) a binding arbitration administered by the American Arbitration Association ("**AAA**") using its specially designed Consumer Arbitration Rules (as modified by this Section 19). Specifically, the process provides:

- Claims can be filed with AAA online (www.adr.org (https://web.archive.org/web/20180117161426/http://www.adr.org/));
- Arbitrators must be neutral and no party may unilaterally select an arbitrator;
- Arbitrators must disclose any bias, interest in the result of the arbitration, or relationship with any party;
- Parties retain the right to seek relief in small claims court for certain claims, at their option;
- The initial filing fee for the consumer is capped at $200;
- The consumer gets to elect the hearing location and can elect to participate live, by phone, video conference, or, for claims under $25,000, by the submission of documents;
- The arbitrator can grant any remedy that the parties could have received in court to resolve the party's individual claim.

19.3 *Pre-Arbitration Dispute Resolution and Notification*. Prior to initiating an arbitration, you and Airbnb each agree to notify the other party of the dispute and attempt to negotiate an informal resolution to it first. We will contact you at the email address you have provided to us; you can contact Airbnb's customer service team by emailing us (https://web.archive.org/web/20180117161426/mailto:terms@airbnb.com). If after a good faith effort to negotiate one of us feels the dispute has not and cannot be resolved informally, the party intending to pursue arbitration agrees to notify the other party via email prior to initiating the arbitration. In order to initiate arbitration, a claim must be filed with the AAA and the written Demand for Arbitration (available at www.adr.org (https://web.archive.org/web/20180117161426/https://www.adr.org/sites/default/files/Demand%20for%20Arbitration%20Consumer%20Arbitration%20Rules.pdf)) provided to the other party, as specified in the AAA Rules.

**19.4 *Agreement to Arbitrate*. You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, or the Collective Content (collectively, "Disputes") will be settled by binding arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.**

19.5 *Exceptions to Arbitration Agreement*. You and Airbnb each agree that the following claims are exceptions to the Arbitration Agreement and will be brought in a judicial proceeding in a court of competent jurisdiction: (i) Any claim related to actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights; (ii) Any claim seeking emergency injunctive relief based on exigent circumstances (e.g., imminent danger or commission of a crime, hacking, cyber-attack).

19.6 *Arbitration Rules and Governing Law*. This Arbitration Agreement evidences a transaction in interstate commerce and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. The arbitration will be administered by AAA in accordance with the Consumer Arbitration Rules (the "**AAA Rules**") then in effect, except as modified here. The AAA Rules are available at www.adr.org (https://web.archive.org/web/20180117161426/http://www.adr.org/) or by calling the AAA at 1–800–778–7879.

19.7 *Modification to AAA Rules - Arbitration Hearing/Location*. In order to make the arbitration most convenient to you, Airbnb agrees that any required arbitration hearing may be conducted, at your option, (a) in the county where you reside; (b) in San Francisco County; (c) in any other location to which you and Airbnb both agree; (d) via phone or video conference; or (e) for any claim or counterclaim under $25,000, by solely the submission of documents to the arbitrator.

19.8 *Modification of AAA Rules - Attorney's Fees and Costs*. You may be entitled to seek an award of attorney fees and expenses if you prevail in arbitration, to the extent provided under applicable law and the AAA rules. Unless the arbitrator determines that your claim was frivolous or filed for the purpose of harassment, Airbnb agrees it will not seek, and hereby waives all rights it may have under applicable law or the AAA rules, to recover attorneys' fees and expenses if it prevails in arbitration.

19.9 *Arbitrator's Decision*. The arbitrator's decision will include the essential findings and conclusions upon which the arbitrator based the award. Judgment on the arbitration award may be entered in any court with proper jurisdiction. The arbitrator may award declaratory or injunctive relief only on an individual basis and only to the extent necessary to provide relief warranted by the claimant's individual claim.

**19.10 *Jury Trial Waiver*. You and Airbnb acknowledge and agree that we are each waiving the right to a trial by jury as to all arbitrable Disputes.**

**19.11 *No Class Actions or Representative Proceedings*. You and Airbnb acknowledge and agree that we are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, private attorney-general action, or any other representative proceeding as to all Disputes. Further, unless you and Airbnb both otherwise agree in writing, the arbitrator may not consolidate more than one party's claims and may not otherwise preside over any form of any class or representative proceeding. If this paragraph is held unenforceable with respect to any Dispute, then the entirety of the Arbitration Agreement will be deemed void with respect to such Dispute.**

19.12 *Severability*. Except as provided in Section 19.11, in the event that any portion of this Arbitration Agreement is deemed illegal or unenforceable, such provision shall be severed and the remainder of the Arbitration Agreement shall be given full force and effect.

19.13 *Changes*. Notwithstanding the provisions of Section 3 ("Modification of these Terms"), if Airbnb changes this Section 19 ("Dispute Resolution and Arbitration Agreement") after the date you last accepted these Terms (or accepted any subsequent changes to these Terms), you may reject any such change by sending us written notice (including by email) within thirty (30) days of the date such change became effective, as indicated in the "Last Updated" date above or in the date of Airbnb's email to you notifying you of such change. By rejecting any change, you are agreeing that you will arbitrate any Dispute between you and Airbnb in accordance with the provisions of the "Dispute Resolution and Arbitration Agreement" section as of the date you last accepted these Terms (or accepted any subsequent changes to these Terms).

19.14 *Survival*. Except as provided in Section 19.12 and subject to Section 15.8, this Section 19 will survive any termination of these Terms and will continue to apply even if you stop using the Airbnb Platform or terminate your Airbnb Account.

## 20. Feedback

We welcome and encourage you to provide feedback, comments and suggestions for improvements to the Airbnb Platform ("**Feedback**"). You may submit Feedback by emailing us, through the "Contact" (/web/20180117161426/https://www.airbnb.com/help/contact_us) section of the Airbnb Platform, or by other means of communication. Any Feedback you submit to us will be considered non-confidential and non-proprietary to you. By submitting Feedback to us, you grant us a non-exclusive, worldwide, royalty-free, irrevocable, sub-licensable, perpetual license to use and publish those ideas and materials for any purpose, without compensation to you.

## 21. Applicable Law and Jurisdiction

21.1 If you reside in the United States, these Terms will be interpreted in accordance with the laws of the State of California and the United States of America, without regard to conflict-of-law provisions. Judicial proceedings (other than small claims actions) that are excluded from the Arbitration Agreement in Section 19 must be brought in state or federal court in San Francisco, California, unless we both agree to some other location. You and we both consent to venue and personal jurisdiction in San Francisco, California.

21.2 If you reside in China these Terms will be interpreted in accordance with the laws of China ("**China Laws**"). Any dispute arising from or in connection with this Agreement shall be submitted to the China International Economic and Trade Arbitration Commission (CIETAC) for arbitration in Beijing which shall be conducted in accordance with CIETAC's arbitration rules in effect at the time of applying for arbitration, provided that this section shall not be construed to limit any rights which Airbnb may have to apply to any court of competent

jurisdiction for an order requiring you to perform or be prohibited from performing certain acts and other provisional relief permitted under China Laws or any other laws that may apply to you. The arbitration proceedings shall be conducted in English. The arbitral award rendered is final and binding upon both parties.

21.3 If you reside outside of the United States and China, these Terms will be interpreted in accordance with Irish law. The application of the United Nations Convention on Contracts for the International Sale of Goods (CISG) is excluded. The choice of law does not impact your rights as a consumer according to the consumer protection regulations of your country of residence. If you are acting as a consumer, you agree to submit to the non-exclusive jurisdiction of the Irish courts. Judicial proceedings that you are able to bring against us arising from or in connection with these Terms may only be brought in a court located in Ireland or a court with jurisdiction in your place of residence. If Airbnb wishes to enforce any of its rights against you as a consumer, we may do so only in the courts of the jurisdiction in which you are a resident. If you are acting as a business, you agree to submit to the exclusive jurisdiction of the Irish courts.

## 22. General Provisions

22.1 Except as they may be supplemented by additional terms and conditions, policies, guidelines or standards, these Terms constitute the entire Agreement between Airbnb and you pertaining to the subject matter hereof, and supersede any and all prior oral or written understandings or agreements between Airbnb and you in relation to the access to and use of the Airbnb Platform.

22.2 No joint venture, partnership, employment, or agency relationship exists between you and Airbnb as a result of this Agreement or your use of the Airbnb Platform.

22.3 These Terms do not and are not intended to confer any rights or remedies upon any person other than the parties.

22.4 If any provision of these Terms is held to be invalid or unenforceable, such provision will be struck and will not affect the validity and enforceability of the remaining provisions.

22.5 Airbnb's failure to enforce any right or provision in these Terms will not constitute a waiver of such right or provision unless acknowledged and agreed to by us in writing. Except as expressly set forth in these Terms, the exercise by either party of any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise permitted under law.

22.6 You may not assign, transfer or delegate this Agreement and your rights and obligations hereunder without Airbnb's prior written consent. Airbnb may without restriction assign, transfer or delegate this Agreement and any rights and obligations hereunder, at its sole discretion, with 30 days prior notice. Your right to terminate this Agreement at any time remains unaffected.

22.7 Unless specified otherwise, any notices or other communications to Members permitted or required under this Agreement, will be in writing and given by Airbnb via email, Airbnb Platform notification, or messaging service (including SMS and WeChat). For notices made to Members residing outside of Germany, the date of receipt will be deemed the date on which Airbnb transmits the notice.

22.8 If you reside in the EU you can access the European Commission's online dispute resolution platform here: http://ec.europa.eu/consumers/odr (https://web.archive.org/web/20180117161426/http://ec.europa.eu/consumers/odr). Please note that Airbnb Ireland is not committed nor obliged to use an alternative dispute resolution entity to resolve disputes with consumers.

22.9 If you have any questions about these Terms please email us (https://web.archive.org/web/20180117161426/mailto:terms@airbnb.com).

English

USD

© Airbnb, Inc.

Terms (/web/20180117161426mp_/https://www.airbnb.com/terms) Privacy (/web/20180117161426mp_/https://www.airbnb.com/terms/privacy_policy) Site Map (/web/20180117161426mp_/https://www.airbnb.com/sitemaps)

f (https://web.archive.org/web/20180117161426mp_/https://www.facebook.com/airbnb) (https://web.archive.org/web/20180117161426mp_/https://twitter.com/a

Electronically Filed
4/26/2023 11:33 AM
Steven D. Grierson
CLERK OF THE COURT

RTRAN

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ERIC RICE, ET AL., Plaintiffs, vs. ZHENG TRUST, ET AL., Defendants. | CASE#: A-19-801549-C<br>DEPT. XXVI |

BEFORE THE HONORABLE GLORIA STURMAN
DISTRICT COURT JUDGE
TUESDAY, APRIL 25, 2023

**RECORDER'S TRANSCRIPT OF PENDING MOTIONS**

APPEARANCES

| | |
|---|---|
| For Plaintiffs | NICHOLAS J. DION, ESQ. |
| For Plaintiff Bryan Lovett: | JORDAN SCHNITZER, ESQ. |
| For Defendant Airbnb Inc: | RORY T. KAY, ESQ.<br>DAMALI A. TAYLOR, ESQ. |

RECORDED BY: KERRY ESPARZA, COURT RECORDER

Las Vegas, Nevada, Tuesday, April 25, 2023

[Case called at 10:47 a.m.]

THE COURT: A801549.

MR. DION: Good morning, Your Honor. Nicholas Dion, 16071, on behalf of the Rice Plaintiffs. We don't have anything substantive this morning, but I just wanted to make a record.

THE COURT: Okay. Thank you.

MR. SCHNITZER: Good morning, Your Honor. Jordan Schnitzer on behalf of Plaintiff Lovett.

THE COURT: Thank you.

MR. KAY: Good morning, Your Honor. Rory Kay of McDonald Carano, on behalf of Defendant Airbnb, Incorporated. I also Damali Taylor with me from O'Melveny & Myers. Ms. Taylor is lead counsel in this matter.

THE COURT: Okay.

MS. TAYLOR: Good morning, Your Honor.

THE COURT: All right. So Airbnb's motion to dismiss Lovett's claims. So are you going to argue, counsel?

MS. TAYLOR: Mr. Kay is going to argue.

THE COURT: Okay. Mr. Kay.

MR. KAY: Thank you, Your Honor. This is our motion to dismiss. I know you've had a busy calendar, and I see my managing partner in the back of the room, so I don't want to hold his case up either. If you have any questions off the top, I'm happy to answer them

about our motion or our reply.

THE COURT: Yeah. So let's look at causes of action. Are you looking to have the entire case that you have this entire case against Airbnb dismissed? Are you looking for specific causes of action to be dismissed? Because you do address them. If you could kind of go through all of them. So can we sort of clarify that?

MR. KAY: Sure. Yes, Your Honor. We are asking as to Airbnb only, that the Court dismiss all of Mr. Lovett's claims, and I will take them up sort of in the order that they are alleged in the pleading and then also in the order we discussed in the motion.

Nobody disputes that in 2018, Mr. Lovett was injured by unknown assailants, in a senseless shooting while on his way to a Las Vegas party. I'm not here to tell you any different. What I am here to tell you, though, is that under long standing Nevada law and really consistent with the law in all neighboring states, Airbnb is not liable under any of these claims for Mr. Lovett's shooting, And under that very specific Nevada law, there's no set of facts that he could plead that would entitle him to relief on any of the claims.

You know, as we look to the first two claims, Your Honor, the claim for negligence, and then the claim for -- excuse me, the first and third claim, the negligence claim and the claim for negligent security, you know, under that *PetSmart* case that we cited you, we start with the fundamental premise that there's no duty to control the dangerous conduct of another or to warn others of the dangerous conduct.

Now *PetSmart* sort of recognized a very narrow exception if

there's a special relationship between the defendant and either the victim or the plaintiff. Mr. Lovett straight off the top in his opposition concedes that there's no special relationship between Airbnb and Mr. Lovett here. He really has to, under the *Sanchez* case in particular, in which the Nevada Supreme Court says there's no special relationship between a defendant and an unidentifiable member of the general public.

And so Mr. Levitt sort of shifts gears in the opposition and brings up two new theories. He doesn't plead them in the complaint, but understanding the Court may consider amendment, I will address them because Mr. Lovett does raise them in his opposition. And the theories he raises, the negligent undertaking theory and the joint venture theory either of which fail.

I'll start with the negligent undertaking theory first and this is really -- there's two cases, I think, that are important to the Court's consideration here. One is the *PetSmart* case. It's almost, you know, completely on point here in the sense that the Nevada Supreme Court recently recognized that this negligent undertaking theory of liability is a narrow exception to that general rule I just stated that there's no duty to protect against third-party misconduct. You know, in that case, the Nevada Supreme Court said only in very rare circumstances when the defendants specifically and voluntarily assumed a duty to perform the task that it is charged with having performed negligently can the negligent undertaking theory survive.

You know, frankly, there is no facts pleaded by Mr. Lovett

that would qualify under the PetSmart case for this negligent undertaking theory, the Nevada Supreme Court in *PetSmart* was very clear that there would have to be specific facts pleaded as to the incident in question. So for example, in *PetSmart*, that was the dog adoption case, the plaintiff in that case tried to allege that there was a dog with a known history of aggression. An independent adoption agency had adopted out in that PetSmart had negligently undertook -- or, excuse me, undertook the duty to protect the ultimate adopter of the dog from any sort of aggressive acts. The Nevada Supreme Court said that was not enough for a couple of different reasons. There were no specific facts showing or pled that PetSmart knew about the aggressive tendencies of the dog, much less it took permitted steps to prevent the type of harm that ensued.

It also addressed the *Wright* [phonetic] case which is really what Lovett relies on solely for this negligent undertaking theory. Again, interestingly enough, that's the dog bite by case, if you will. In that case, the Nevada Supreme Court said that the defendant landlord had undertook a duty to protect the plaintiff who was bit by the dog because the plaintiff could show specific facts that the landlord knew of the danger posed by the property, imposed rules intending to eliminate that danger. It threatened the power of eviction to protect other tenants or members of the general public.

THE COURT: You know what interested me, and it's not -- you know, I get your point. It's not technically really pled here is, I think Mr. Schnitzer he very eloquently dubbed this a ghost hotel. And so

Nevada has a lot of case law and in fact statute on hospitality because that's the industry here. And we have a very specific statute that governs an owner or keeper of any hotel and motel, motor court, boarding house or lodging house, is not civilly liable for the death or injury of a patron caused by another person who is not an employee under the control unless the wrongful act which caused the injury was foreseeable. There's a preponderance of evidence that they keep or did not exercise due care for the safety of the premises, blah, blah, blah.

So we have a specific statute on that which is kind of interesting because we also have for bars, like, the exact opposite. There's no dram shop liability. Kind of weird. But, you know, we've long extended some theory that, you know, you need to -- if you're opening up a premises to, essentially, someone to use as a -- in this case, I don't know what they were using it for just a party or were they actually staying there.

So, I mean, we kind of -- we have -- don't really address it. I don't know that the legislature has really looked at, you know, what are the limits, the outer limits of this concept of what is a hotel. It's interesting.

MR. KAY: Yeah. So let me address a couple of points there, Your Honor. One, with respect to the statute you cited.

THE COURT: For the record 651.051.

MR. KAY: It does deal with property owners. There's nothing alleged in this complaint that Airbnb was a property owner. In fact, this is --

THE COURT: An owner or keeper of any hotel. And that's their argument is that somehow there's some control element over the people who rent these. I mean, because you got your ultimate owner and that's these other defendants, the Zheng trust people. But then somehow Airbnb inserts itself in this relationship. Like, if this guy just lent his house to a friend for a party, would that be different from a platform that helps you find him and use his house for your party? I mean, you know, it's a very interesting industry, and it's evolving. Developing.

MR. KAY: Understood. And I think your question really goes to more of the joint venture theory of the case. The idea that there's some control or there's a purported joint venture between Airbnb and the property owner here. Again, I think if we go to the *Radaker* [phonetic] case that we've cited, you can't -- even under the most liberal interpretation of notice pleading, a plaintiff can't merely allege a legal conclusion, i.e., that something is a joint venture without alleging underlying facts to establish a joint venture. And I want to hit on the point you raised at the very beginning of our argument here, of our discussion.

The idea that we are a tourism hospitality industry, under this joint venture theory, in essence, what Lovett is arguing is that online platforms that act as middle persons between a customer and another customer somehow become a joint venture with one side or the other of the deal. The Nevada Supreme Court has never recognized that, Your Honor. Airbnb is an online platform. It acts as a middle person between

a renter and a homeowner. If Lovett's theory is correct, especially given some of the statutes you've cited.

In essence, any number of companies would suddenly become joint venturers with their customers in the stream of commerce. Let me give you a couple of examples. Let's say Ticketmaster, which serves very much in the same capacity as an Airbnb in that it's an online platform that puts someone who wants to go to a concert together with the venue where the concert is being held under Mr. Lovett's theory, the, for example, Allegiant Stadium and Ticketmaster would be a joint venture for any event that ever occurs --

THE COURT: Anybody who got hurt at a Taylor Swift concert or BPS.

MR. KAY: Yes. So -- and my wife went to that concert. I heard it was well attended. Yes, you would have, in essence, endless liability for every person that attended that concert. Or let's go to the casinos. Let's say a concierge desk puts one of its hotel guests in contact with Shadow Creek, for example, the golf course, or Allegiant Stadium for an event, they serve as a middle person putting a customer together with a property owner.

Again, if there's an incident in the ultimate property, this joint venture theory, in essence, collapses the distinction between them and tries to hold everybody liable for that injury. Again, I would say under *PetSmart*, *Radaker* and the Sanchez cases, under clearly Nevada law, that is not permissible. And again, it would be a different scenario if two things were present in this complaint. What if there were specific

allegations about this property showing that it was a problem property or there had been other prior incidents? You know, when you look at the *PetSmart* case or the *Wright* case, that may get Mr. Lovett there. None of those allegations are in this complaint.

With respect to the joint venture theory, again, if Mr. Lovett could have alleged that there were specific fact sharing of profits like in the *Radaker* case or in the *Swenson* case, if there had been a pooling of funds, a joint account, an agreement to jointly develop this piece of property, maybe that would establish a joint venture. But on the pleading before you, there simply isn't any sort of factor.

THE COURT: So that's our negligence and negligence security. I was interested in negligence per se because I get your point, but then Mr. Schnitzer came back and said, well, there was all these, like, anti-party house codes. So is that just a question-- you would plead that with more specificity?

MR. KAY: True. So there's a couple of points there. One -- and he does identify a specific ordinance in the opposition to the extent the Court would granted leave to amend to identify. It's Clark County Code 30.44.010. That's what he's relying on in his opposition. But that still doesn't get Mr. Lovett where he needs to be. By its plain terms, that ordinance only applies to property owners. It doesn't apply to online marketplaces like Airbnb that just acts as a middle person in the transaction. There is no Nevada case on point.

But I will tell you, the *HomeAway* case we cited very similar. That California statute -- and this was out of San Francisco on short term

rentals. It involved a company called HomeAway, which was again an online platform. Very similar capacity as to Airbnb. The Plaintiff there alleged that HomeAway was liable on a negligence per se theory. And that court, similar to what we've argued in our motion and reply, Your Honor, held that the ordinance only impacted property owners, not online booking platforms.

And so I don't think amendment gets him -- you know, gets Mr. Lovett and Mr. Schnitzer where they want to go with respect --

THE COURT: And so respondeat superior, typically employer/employee kind of situation. There are agents.

MR. KAY: Yeah, and that is the fourth thing. I guess, I would, as a procedural matter point out that respondeat superior is not a cause of action separately. It's most typically a theory of liability even if we consider it under the negligence or negligence security issues.

You know, first, he hasn't defend the claim in his opposition. And so I think it's rightfully forfeited under EDCR 2.20 because he hasn't presented you with an opposition arguing on behalf of the claim. But even when we look at the merits of it there's no allegation here that Airbnb employed and of the people involved in this, the property owner. Again, it's an online booking platform.

The only thing I will point out on that, Your Honor, and also with the joint venture theory is that Mr. Lovett tries to cite you to Airbnb's terms of service and also its online booking policy. Those aren't in the pleadings, so I don't think the Court can or should consider them. But if you do because he raised it in the opposition,

understanding you may be considering amendment, those terms of service quite clearly say, and, you know, we attached it to our reply. You can take judicial notice of it. In Section 1.4 of those terms of service, it very clearly says if you choose to use the Airbnb platform as a host or a co-host, your relationship with Airbnb is limited to being an independent third party contractor and not an employee, agent, joint venture or partner of Airbnb for any reason.

So to the extent Mr. Lovett has opened the door to you considering the relationship -- contractual relationship here between the property owner of Airbnb, it's very clearly not an employee relationship. Again, this goes straight to the *PetSmart* case too. They had a very similar agreement with their agency adoption group, and the Nevada Supreme Court said if the agreement says that there is no employee, joint venture, or other relationship you don't get to claim respondeat superior or any of these joint venture theories.

THE COURT: The final issue is you suggested punitive damages as a minimum should be out.

MR. KAY: Yeah, I think that's right, Your Honor.

THE COURT: Nothing here alleged that it's extremely outrageous. I mean -- it's extremely outrageous. The kids were shot, and one kid died and the other kid -- I mean, it's terrible. But what did Airbnb do?

MR. KAY: And you're exactly -- again this is not --

THE COURT: Unless you're -- unless these party houses, in themselves, are extremely outrageous.

MR. KAY: And this is not a problem house situation. There's nothing in the complaint or the opposition really identifying any prior issues with this specific house. They identify purported issues, editorials from Toronto newspapers, all of these things outside of the pleading, but they haven't put forth a pleading before you that would satisfy the punitive damages element.

I guess I will raise this, and I can address it more in my reply, and write my reply, Mr. Lovett hasn't asked for leave to amend. I know the Court, in my past practice before you, as you're required to do, is fairly liberal with granting leave to amend, but I think he's put in his opposition everything he would amend with, and it's still futile. So to the extent you want to consider leave to amend we would ask that you deny that as well as futile because there's no set of facts that he can use to establish any of his chosen legal theories, Your Honor.

THE COURT: Okay. Thanks. Yeah, and I will talk to you in response because I know there's an argument that Mr. Schnitzer has raised. It's interesting to me. Mr. Schnitzer.

MR. SCHNITZER: Thank you, Your Honor. Your Honor, did you have some --

THE COURT: Talk about the global party ban.

MR. SCHNITZER: Yeah. So to me that sort of goes towards the last thing you talked about, which is the punitive damages, right. Because if they're now realizing we've got to put a global ban on party houses, that to me tells me that they knew for a long time that they had problems with party houses, and they consciously disregarded it. Not

only that, in Nevada, they consciously disregarded the laws of Clark County that you can't have short term rentals. They don't care if they're having parties. They don't care what they're doing because they're making money, right. They --

THE COURT: And so let's talk about the negligence per se, because counsel said, well, but that's just the owner. It's not -- how do you get to Airbnb, it's just the owner?

MR. SCHNITZER: Yeah, I would disagree. I don't think that when you're looking at negligence per se, you can say, oh, this just applies to the owner. The ordinance says you cannot have short term rentals. So for someone to put themselves in the situation where they're knowingly renting out a house that cannot be rented legally under the terms that they're renting it, they're putting themselves in that situation.

I don't understand how the argument comes to be about that, well, we're just the middleman, so we're not responsible. I mean, that's a convenient argument. I mean, you know, the drug dealer could make the same argument. Hey, I wasn't in possession of the drugs. I was just the middleman. I don't think that applies. I think the statute is there to protect the general prosperity, health, safety, and welfare of the citizens of Clark County. And they acknowledged that. And in order to do that, you have to enforce that against anybody who's trying to get around those laws.

And so I don't think certainly at the motion to dismiss stage, you can say, hey, we're going to give them carte blanche to go ahead and keep doing this.

THE COURT: Okay.

MR. SCHNITZER: Going back to the beginning. You know, I know the Court knows this. This is a motion to dismiss. We have very liberal pleading standards in Nevada. This is not federal court. This is not a summary judgment motion, right. Some of these arguments may have -- may need to be addressed further at a summary judgment phase. But his constant referring that I don't have specific allegations of this, I don't have specific allegations of that, I don't need that for my complaint, and we don't need that to withstand the summary judgment phase. I'm sorry, the motion to dismiss phase.

When we talk about duty, Your Honor, what we showed is that they have assumed a duty, right. The property owner themselves cannot conduct a background check. The property owner themselves could not do ID verifications. Airbnb does that by preventing the landowner themselves from performing its duty under the law. I don't think there's any dispute that a landowner would have a duty to do these background checks and to see who's renting the house. By preventing the landowner themselves from doing it, it has assumed the duty.

And, in fact, the property owners don't even know the last name of the guest until they agree to have this property booked. Not only that Airbnb markets these rental properties. If you go on Airbnb once your social media feed is going to be flooded with rental properties in the area that you're looking at. So by doing all of these things Airbnb is inserting itself, and they are assuming these duties, certainly enough to the point of -- to get past the motion to dismiss and to do discovery

into all of these things.

We talked about joint venture. Again, all we need to do is allege there was a joint venture. It's the motion to dismiss stage. There's not a heightened standard. I don't have to explain exactly how this joint venture occurred. We just have to identify the business, allege it was carried on jointly, and that's the *Swenson* case.

THE COURT: Now is that the respondeat superior concept? Because I didn't -- I just didn't see respondeat superior really alleged. There's no -- because that's typically, as I said, an employee/employer relationship although I guess arguably it could be agent and principal.

MR. SCHNITZER: Right. Agent/principal joint venture. And I agree. I don't think that's a separate cause of action. I think it's a theory of recovery. And to the extent the Court wants me to amend that to sort of subsume respondeat superior as a theory of recovery, I don't have an issue with that. Before I heard the Court say, you know, that it's just the complaint, it's fine. So whatever the Court's preferences is, is fine with me.

But when we're talking about joint venture it's an informal partnership and there's case law. There's the *Myers* case. There's a Ninth Circuit case that talks about you can't allow contractual recitations to subterfuge legal obligations. And the *PetSmart* case it looked at, yes, there was a contractual provision that said this is not an agency relationship. That wasn't the end of it. It said the facts do not support a parent agency.

So what's in the actual agreement is one aspect of it but

what the facts actually show is another thing. And so the Court can't just say well the agreement says that the end of it. The Court's got to look at the facts and see whether there's also a parent agency that allows for a joint venture because joint venture is really a question of fact. And here what I think we're going to show, they share revenue, they share losses. We know Airbnb is here because they provided insurance for the loss. Airbnb issues policies and procedures that the guests and hosts have to abide by the benefit of the host. Airbnb bills and collects the money themselves, and they promote the property.

And this is actually really similar to -- it's an insurance bad faith case called *Wohlers*, 114 Nevada 1249. And that case dealt with whether or not the third party administrator was a joint venture with the insurance company. In that case, the Court looked at it and upheld a verdict where the insurance company issued promotional materials, issued policies and procedures, built and collected money, and shared a profit. And that's all it took for the Supreme Court to uphold the findings of the jury that a joint venture exists. And so whether or not a joint venture exists is a question of fact and certainly just based upon the facts that I've shown, it would be enough for a jury to look at it and consider it.

And so I don't -- he didn't really address the foreseeability test, but I know Your Honor raised the innkeeper statute. So, yeah, I think the innkeeper statute could apply. But even if we're not looking the innkeeper statute, it's really the same test, right?

THE COURT: Right.

MR. SCHNITZER: It's did they exercise due care for the

safety of others, right? And so the totality of circumstances under [indiscernible]. And all we have to show is that their conduct increased the risk of harm from unwelcomed third-parties with nefarious intentions. That's all we have to show. And so does a party with alcohol, and booze, and local shows, they were advertising -- I think it $1r or $2 shots if you come in. Does that increase the likelihood of a crime? Yes. Does alcohol increase the likelihood of fights and fights lead to violence? Yes, of course. And so -- and then there's the *Humphries* case, which is when there's no security at all, murders are foreseeable.

And so based upon Nevada law, foreseeability is certainly going to be a question of fact. I think we're going to easily show that. But it's certainly a question of fact. And the cases from other states and from federal courts, I just think don't apply it. As Your Honor pointed out, Nevada's got some interesting laws based upon negligent security, but we don't have DRAM shop.

And so Nevada is its own unique animal. And based upon the Nevada case law, I think we passed the motion to dismiss phase.

THE COURT: Okay.

MR. SCHNITZER: Unless the Court has any other questions, I'll stand on that.

THE COURT: Yeah. Thank you very much.

MR. SCHNITZER: Thank you, Your Honor.

THE COURT: Thank you.

MR. KAY: Thank you, Judge Sturman. Let me -- I will tell you, I heard a lot in there that was outside of the pleadings. So unless

Your Honor has specific questions, I will focus on what was in the pleadings and what was in the opposition to the extent you're considering amendment here.

THE COURT: Okay.

MR. KAY: Let me start with the Court's question about the negligence per se statute, the Clark County Code. Mr. Schnitzer said the ordinance stands for the proposition that, quote, "you cannot have short term rentals." You never find who you is. But the Clark County Code that he cites does that very specifically, and it applies only to property owners. It doesn't apply to online booking platforms. In fact, as Your Honor probably well know, the legislature has picked that up most recently in this session, in the 2021 session. Obviously, well after the 2018 shooting that occurred in this case.

And so that doesn't help Mr. Lovett in terms of what the legislature did, but it did that because there was a gap in the sense that the short term rental ordinances at the County level did not cover online platforms like Airbnb.

You know, I will go to the sort of general idea I heard from Mr. Lovett's counsel that as Your Honor reference in ghost hotels and that this was a pervasive problem purportedly nationally or worldwide, and so Airbnb should have known that these things were foreseeable. Yet he cannot cite you to a single case, either from Nevada or anywhere else in the United States where a court has held Airbnb liable for all of these purported things that he says are oppressive, or pervasive, or any of the other things he has either stated in his pleading or his oral

argument. That right there raises a red flag because there is no liability here. There's no court that Mr. Lovett has cited that imposes liability under any of these claims or any of the theories he's put in his opposition.

To the extent the Court's considering this idea in the opposition that Airbnb undertakes or may prevent its homeowners from conducting background checks, I will note that in the terms of service and also in Mr. Lovett's opposition, the provision he cites have to do with -- it has to do with guest background checks. There's nothing in this complaint suggesting that a guest of this Airbnb property was a shooter. In fact, all of the publicly available coverage says that Mr. Lovett was shot on the way to the property by someone off property.

So the idea that Airbnb may undertake some sort of duty or prevent its property owners from investigating its guests or conducting background checks doesn't get him anywhere near liability here.

THE COURT: Well, that would be a summary judgment issue, it seems to me. And that's -- as was pointed out, the distinction between state and federal court, which is if you were in federal court, we would expect a very different complaint. We would expect a complaint that told us each and every fact and how it applies to each and every theory. You're not in federal court.

MR. KAY: I appreciate that. I argue notice pleadings from both sides almost every week in this building. So I appreciate the Court's point. I still think you get there under *PetSmart* and *Wright* and *Sanchez* in the sense that, again, there are no allegations establishing

that this particular property was a problem property or that the Airbnb was aware of any prior incidents on this property and, therefore, undertook the duty to protect unidentified members of the general public and/or was a joint venture with the property owner in this case.

And, again, we're not saying that anyone else needs to be dismissed from this case other than Airbnb. Under those clear cases, Airbnb has no liability. There's no set of facts. But Mr. Lovett is obviously free to go forward with this case as to other -- the actual property owner itself and anybody else that was involved with that property the day of the shooting. We're not arguing those points. They all fall or arguably fall within the provisions you've cited with respect to the Innkeeper and some of the other cases.

With that, I will rest, unless Your Honor has any additional questions about what we put in our pleadings and what we said here today.

THE COURT: No. Thanks very much.

I'm going to grant the motion in part and deny it in part. I'm going to grant it as to negligence per se, respondeat superior and punitive damages for this reason, and it's without prejudice for leave to amend.

I don't see an allegation here where we have a specific statute for negligence per se that would apply to Airbnb, at least not the way it's pled. There may be a way to argue or to plead it such that the statutes that are out there on party houses would extend to anybody who facilitates the party, arguably. I guess that's the theory, but it

doesn't technically read that way, and the complaint doesn't read that way. So I'm going to grant that one.

Respondeat superior. I just don't see that. I think that's a very specific concept and again, as mentioned, it's not technically its own independent cause of action, so it doesn't really need to be pled as such. But I just don't see any kind of either principal and agent or theory that's going to apply here. Again, it's sort of evolving, this concept that there was some sort of a joint venture or a -- but I think that that is really the negligence and negligent security. And like I said, the Nevada Innkeeper statute, which I think it really kind of arguably applies.

So that's really where it is, in my view. It's really this concept of can you impute this negligence further up the line or do they have their own independent negligence? So those are the -- that's where I really saw it. It's just purely a negligence case.

Punitive damages, I just didn't see anything that was extreme and outrageous. Again, of course, if there's some evidence that this particular venue was a known problem, this particular renter was a known problem, that Airbnb should have known that this person went around renting party houses and throwing these wild parties, I just didn't see that as of yet.

So if it turns out that I'm wrong and that's out there, then there may be grounds for punitive damages. But based on just a pure negligence case, I don't see it. And this seems to me to be a pure negligence case. And that's where it falls. We've got the two causes of action for negligence and negligent security, and that seemed to pretty

much encompass it.

So I'm going to grant it without prejudice, because, as I said, something may come out. There may have been some record or some indication that they should have been on notice. And there may be some way to argue that the statute -- the party house regulations and codes would apply to a third-party platform. I just didn't see it as pled. So I'm going to grant it in part and deny it in part.

And if you'll prepare that order and send it to Mr. Schnitzer. And I don't know, do you also want to see -- anybody else want to see this order before it goes in? I mean, it's again, granted in part and denied in part. So anybody -- I guess just anybody who wants to see the order before you submit it, let counsel know, and I'm sure he'll show it to you for your review prior to submitting it. Unless there's any other questions.

MR. KAY: Thank you very much, Your Honor.

MR. SCHNITZER: Thank you, Your Honor.

MR. DION: Thank you, Your Honor.

THE COURT: All right, see you guys.

[Proceedings concluded at 11:19 a.m.]

ATTEST: I do hereby certify that I have truly and correctly transcribed the audio-visual recording of the proceeding in the above entitled case to the best of my ability.

Jessica B. Cahill

Maukele Transcribers, LLC
Jessica B. Cahill, Transcriber, CER/CET-708

Electronically Filed
5/30/2023 2:47 PM
Steven D. Grierson
CLERK OF THE COURT

**NEOJ**

Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Kiley A. Harrison, Esq. (NSBN 16092)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com
kharrison@mcdonaldcarano.com

Damali A. Taylor, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8928
dtaylor@omm.com

Dawn Sestito, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
dsestito@omm.com
*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,

Plaintiffs,

v.

ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive,

Defendants.

CASE NO.: A-19-801549-C
DEPT NO.: 26

**NOTICE OF ENTRY OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.**

PLEASE TAKE NOTICE that an **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.** was entered in the above-captioned case on the 30th day of May, 2023, a copy of which is attached hereto.

DATED this 30th day of May, 2023.

McDONALD CARANO LLP

By: */s/ Rory T. Kay*

Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Kiley A. Harrison, Esq. (NSBN 16092)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com
kharrison@mcdonaldcarano.com

Damali A. Taylor, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
dtaylor@omm.com

Dawn Sestito, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
dsestito@omm.com

*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of May, 2023, I caused a true and correct copy of the foregoing **NOTICE OF ENTRY OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.** to be served via this Court's Electronic Filing system in the above-captioned case.

*/s/ CaraMia Gerard*
An employee of McDonald Carano LLP

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

ELECTRONICALLY SERVED
5/30/2023 1:02 PM

Electronically Filed
05/30/2023 1:00 PM
CLERK OF THE COURT

**ORDR**

Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Damali A. Taylor, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8928
dtaylor@omm.com

Dawn Sestito, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
dsestito@omm.com
*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,

Plaintiffs,

v.

ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive,

Defendants.

CASE NO.: A-19-801549-C
DEPT NO.: 26

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.**

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

On April 26, 2023, Defendant Airbnb, Inc.'s ("Airbnb") Motion to Dismiss Plaintiff Bryan Lovett's Claims against Airbnb, Inc. ("Motion") came on for hearing. Rory Kay of the law firm McDonald Carano LLP and Damali A. Taylor of O'Melveny and Myers LLP appeared for Airbnb. Jordan Schnitzer of the Schnitzer Law Firm appeared for plaintiff Bryan Lovett ("Lovett"), and Nicholas Dion of the 702 Law Firm appeared for plaintiffs Eric Rice and Jefferson Temple as special administrator of the estate of Raheem Rice (collectively, the "Rice Plaintiffs"). Having considered counsel's arguments, the Motion, Lovett's Opposition to the Motion, and Airbnb's Reply in support of the Motion, the Court grants the Motion in part and denies it in part as follows:

**I. BACKGROUND**

1) Airbnb is an online platform that connects individuals who wish to offer accommodations (i.e., hosts) with those seeking to book accommodations (i.e., guests).

2) Through his Complaint, Lovett alleges he was injured when an unknown person shot him on June 3, 2018, on or near the premises located at 6145 Novelty Street, Las Vegas, Nevada ("Home") while Lovett was traveling to a party. *See* Complaint ¶ 18. Lovett also alleges that the homeowners had rented the Home to a guest through use of Airbnb's online platform and that the guest had hosted the party to which Lovett was traveling. *See id.* ¶ 21.

3) Because of this, Lovett alleged causes of action against Airbnb, the homeowner, and entities related to the homeowner, for negligence, negligence per se, negligent security, and respondeat superior. *See generally id.*

4) Under NRCP 12(b)(5), Airbnb moved to dismiss Lovett's causes of action against Airbnb. Airbnb also moved to dismiss Lovett's request for punitive damages for the same.

**Airbnb's Motion**

5) As to Lovett's negligence and negligent-security causes of action, Airbnb contended that, as a rule in Nevada, there is no duty owed to control the dangerous conduct of another or to warn others of the dangerous conduct. Mot. at 4.

6) Airbnb further argued that Lovett failed to plead facts invoking any of the narrow exceptions to this rule. Lovett did not and could not allege (a) any special relationship with Airbnb creating a duty; or (2) the foreseeability of the shooting sufficient to establish a duty. With no such

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

facts, Lovett had failed to establish a duty between Airbnb and Lovett related to the allegations in Lovett's Complaint. Mot. at 4-7.

7) As to Lovett's negligence per se cause of action, Airbnb argued that Lovett did not plead any statute, provision, or code that Airbnb allegedly violated. Alleging a specific statute, provision, or code is an essential element of such a cause of action, and so Airbnb argued this cause of action could not survive dismissal. Mot. at 8-9.

8) As to Lovett's respondeat superior cause of action, Airbnb noted that this is a legal theory, not a cause of action, and that in any event, an employment relationship is an essential element of a respondeat superior theory. Lovett had not pleaded that Airbnb employed any of the actors that Lovett identified in his Complaint. Mot. at 9-10.

9) Finally, as to Lovett's request for punitive damages, Airbnb contended that Lovett did not plead facts showing that Airbnb could be guilty of oppression, fraud, or malice, express or implied as Nevada law requires. Mot. at 10-11.

**Lovett's Opposition**

10) In response, and as to the negligence and negligent-security causes of action, Lovett conceded that he does not have a special relationship with Airbnb that would establish a duty between them. Citing *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965 (1996), Lovett contended that plaintiffs in premises liability cases get to "skip" the special relationship inquiry.

11) Instead, Lovett argued that he based his negligence and negligent-security causes of action on two exceptions to the general rule that there is no duty owed to control the dangerous conduct of another or to warn others of the dangerous conduct.

12) First, citing *Radaker v. Scott*, 109 Nev. 653 (1990), and related cases, Lovett argued that Airbnb was a joint venturer with the homeowner and other defendants so that Airbnb was liable for the actions of its co-defendants. Lovett contended that under Nevada's notice pleading standard, he need only allege the "nature of the business" and that the defendants carried it on jointly. *See* Opp. at 4.

13) Second, citing *Wright v. Schum*, 105 Nev. 611 (1989), and Section 324A(b) of the Restatement (Second) of Torts, Lovett invoked the negligent-undertaking exception and contended

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

that Airbnb assumed the duty of care belonging to the homeowner and related defendants. Lovett argued that the homeowner and related entities owed a duty to Lovett to keep the Home reasonably safe and that Airbnb assumed the same by using its contract with the property's host to prohibit the other defendants from conducting background checks or ID verifications on guests who rented the Home. *See* Opp. at 4.

14) As to the foreseeability test, Lovett argued that he need not allege the specific type of crime at issue to establish foreseeability. Instead, Lovett contended that he only needed to allege that defendants' conduct increased the "risk of harm" at the Home and that they knew of the same. *See id.*

15) As to Lovett's negligence per se cause of action, Lovett argued that Clark County Ordinance Section 30.44.010(b)(7) banned online platforms like Airbnb from offering services to property owners or guests of such properties related to short-term rentals. *See id.* at 13-15

16) In his Opposition, Lovett did not defend his respondeat superior cause of action.

17) Finally, as to Lovett's request for punitive damages, Lovett contended that he had sufficiently alleged "despicable conduct" under notice pleading standards to maintain his request for punitive damages.

**Airbnb's Reply**

18) In its Reply, and as to the negligence and negligent-security causes of action, Airbnb noted that Lovett had not sufficiently alleged any facts to invoke any of narrow exceptions to the general rule that there is no duty to protect against third-party misconduct. Reply at 1-6.

19) First, citing *PetSmart v. Eighth Jud. Dist. Ct.*, 137 Nev. 726 (2021) and related cases, Airbnb argued that Lovett had not alleged facts showing that Airbnb specifically and voluntarily undertook any duty of care to Lovett. Reply at 2-5. Airbnb requested that the Court consider its Terms of Service, which it contended were incorporated by reference into Lovett's opposition and were judicially noticeable. *Id.* Airbnb further argued that Lovett had not alleged that Airbnb undertook any duty to protect him from third-party misconduct. *Id.*

20) Second, citing *Radaker* and related cases, Airbnb argued that there were no alleged facts showing that Airbnb was a joint venturer with the other defendants, and therefore Lovett could

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

not hold Airbnb liable for the purported negligence of the homeowner and other defendants. Reply at 5-6.

21) Citing *Scialabba* and related cases, Airbnb also argued that Lovett had alleged no facts showing that the unknown assailant shooting Lovett was foreseeable rather than a random, senseless shooting for which Nevada law did not hold Airbnb liable. Reply at 6-8.

22) As to the negligence per se cause of action, Airbnb contended that the ordinance that Lovett cited in his Opposition—Clark County Code Section 30.44.010(b)(7)(c)—did not apply to Airbnb because that section only applied to persons who own or control real property in Clark County, Nevada. Reply at 8-10. Moreover, Airbnb argued that Lovett did not belong to the class of persons the section protected, and his injury was not the type that the section intended to prevent. *Id.*

23) As to the respondeat superior cause of action, Airbnb noted that Lovett failed to oppose the same, and so he had conceded its merit under EDCR 2.20(e). Reply at 10.

24) Finally, Airbnb reaffirmed that Lovett did not and could not plead facts showing oppression, fraud, or malice on Airbnb's part sufficient to receive punitive damages. Reply at 10-11.

25) Throughout the Reply, Airbnb also argued that Lovett's Opposition contained allegations and theories that were not pleaded in the Complaint, and that only the allegations in the Complaint could be considered when ruling on the Motion to Dismiss. *See generally* Reply.

## II. CONCLUSIONS OF LAW

### <u>Legal Standard Under NRCP 12(b)(5)</u>

1) When ruling on a Rule 12(b)(5) motion to dismiss, the Court should "determine . . . whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 846, 858 P.2d 1258, 1260 (1990). In doing so, because Nevada is a notice pleading state, the Court should liberally construe the pleading and accept all facts alleged as true and draw all inferences in a plaintiff's favor. *See Harris v. State*, 138 Nev. Adv. Op. 40, 510 P.3d 802, 807 (2022). Still, the Court need not accept

/ / /

the truth of "allegations that are legal conclusions." *Nev. Yellow Cab Corp. v. State*, No. 83014, 2022 WL 17367603, at *2 (Nev. Dec. 1, 2022).

2) After considering the pleading's allegations and drawing all inferences in a plaintiff's favor, the Court may dismiss a complaint only if it appears beyond a doubt that the plaintiff could prove no set of facts that would entitle the plaintiff to relief. *Buzz Stew, Ltd. Liab. Co. v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

**Negligence and Negligent-Security Causes of Action**

1) A plaintiff alleging negligence and negligence-security causes of action must plead facts establishing the essential element of duty to survive dismissal. *See Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 777, 291 P.3d 150, 153 (2012); *see also Hoy v. Jones*, No. 2:18-cv-01403-RFB-EJY, 2020 WL 2798017, at *9 (D. Nev. May 30, 2020). Nevada's rule is that a person owes no duty to control the dangerous conduct of another or to warn others of the dangers conduct. *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009).

2) The Nevada Supreme Court has recognized certain narrow exceptions to this rule. First, one who owns or controls land owes a duty to those who enter onto that land. *See id.* at 824, 221 P.3d at 1280; *Moody v. Manny's Auto Repair*, 110 Nev. 320, 333 (Nev. 1994); *Scialabba*, 112 Nev. at 969. And a defendant that operates a joint venture with one who owes such a duty may be liable for the acts of its joint venturer. *See Radaker v. Scott*, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993). Second, in rare circumstances, a defendant may specifically and voluntarily undertake a duty to protect a plaintiff. *See PetSmart, Inc. v. Eighth Jud. Dist. Ct.*, 137 Nev. 726, 730, 499 P.3d 1182, 1187 (2021).

3) Under either of these narrow exceptions, a plaintiff must still allege that the dangerous conduct was reasonably foreseeable. *See Sanchez*, 125 Nev. at 824, 221 P.3d at 1280-81.

4) The Court **DENIES** Airbnb's Motion as to the negligence and negligent-security causes of action. Construing Lovett's Complaint consistent with *Buzz Stew*, the Court holds that this is purely a negligence case that turns on whether (a) Lovett can impute the other defendants' purported negligence to Airbnb; or (b) if not, whether Airbnb is independently negligent. These

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

questions center on Lovett's joint-venture and negligent-undertaking theories of liability, which the Court notes are evolving concepts of liability under Nevada law.

**Negligence Per Se**

5) Negligence per se arises "when a duty is created by statute." *Sanchez*, 125 Nev. at 828, 221 P.3d at 1283. A plaintiff alleging negligence per se must plead "(1) he or she belongs to a class of persons that a statute is intended to protect; (2) the plaintiff's injuries are the type the statute is intended to protect; (3) the defendant violated the statute; (4) the violation was the legal cause of the plaintiff's injury; and (5) the plaintiff suffered damages." *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1133 (D. Nev. 2019).

6) Lovett did not plead a specific statute, ordinance, or provision in his Complaint sufficient to establish the duty and breach elements of his negligence per se cause of action. He did, however, identify Clark County Ordinance Section 30.44.010(b)(7) in his Opposition. The Court holds that this section does not apply to Airbnb for the reasons stated in Airbnb's briefing, and Lovett pleaded no other specific statute that would apply to Airbnb.

7) As a result, the Court **GRANTS** Airbnb's Motion as to the negligence per se cause of action and dismisses this cause of action without prejudice.

**Respondeat Superior**

8) Respondeat superior is not a separate cause of action but a legal theory of liability. *See Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028-29 (D. Nev. 2013). This liability "attaches only when [an] employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 96 Nev. 814, 817, 618 P.2d 878, 879 (1980).

9) The Court **GRANTS** Airbnb's Motion as to Lovett's cause of action for respondeat superior. Respondeat superior is a theory, not a cause of action, and the cause of action should be dismissed for this reason alone. Still, even as a theory of liability, Lovett has not alleged that any of the identified actors in his Complaint were employees of Airbnb or otherwise acted as Airbnb's agent. Without such allegations, this theory does not survive dismissal. To the extent such facts exist, the Court grants leave to amend the negligence cause of action to include a theory of liability based upon respondeat superior.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**Punitive Damages**

10) Punitive damages are an extraordinary remedy available "when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied." *Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 450-51 (2006); *see also* NRS 42.005.

11) The Court **GRANTS** Airbnb's Motion as to Lovett's request for punitive damages. Lovett has alleged no facts suggesting that Airbnb's conduct was oppressive, fraudulent, or malicious.

For all these reasons, the Court **GRANTS** Airbnb's Motion in part and **DENIES** Airbnb's Motion in part without prejudice.

**Dated this 30th day of May, 2023**

**ECF 56E 08B5 A742**
**Gloria Sturman**
**District Court Judge**

Drafted and Submitted by:

MCDONALD CARANO LLP

By: /s/ *Rory T. Kay*
Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Damali A. Taylor, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111

Dawn Sestito, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071

*Attorneys for Defendant Airbnb, Inc.*

Approved by:

THE SCHNITZER LAW FIRM

By: */s/ Disapproved – no response*
Jordan P. Schnitzer, Esq.
(NSBN 10744)
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148

*Attorney for Plaintiff, Bryan Lovett*

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

Eric Rice, Plaintiff(s)

vs.

Zheng Trust, Defendant(s)

CASE NO: A-19-801549-C

DEPT. NO. Department 26

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 5/30/2023

| | |
|---|---|
| Jordan Schnitzer | jordan@theschnitzerlawfirm.com |
| Theresa Amendola | tamendola@dennettwinspear.com |
| Bradley Myers | Brad@the702firm.com |
| CaraMia Gerard | cgerard@mcdonaldcarano.com |
| Rory Kay | rkay@mcdonaldcarano.com |
| Jelena Jovanovic | jjovanovic@mcdonaldcarano.com |
| Michael Kane | mike@the702firm.com |
| Amber Casteel | amber@the702firm.com |
| Paula Timmons | ptimmons@dennettwinspear.com |
| Karen Surowiec | ksurowiec@mcdonaldcarano.com |
| Ashley Marchant | amarchant@dennettwinspear.com |

| | |
|---|---|
| Melisa Gabhart | melisa@theschnitzerlawfirm.com |
| Sofia Chacon | sofia@the702firm.com |
| Service 702 | service@the702firm.com |
| Richard Reed | rrreedlaw@gmail.com |
| Jane Susskind | jsusskind@mcdonaldcarano.com |
| Kiley Harrison | kharrison@mcdonaldcarano.com |
| Chelsea Latino | clatino@mcdonaldcarano.com |
| Dawn Sestito | dsestito@omm.com |
| Damali Taylor | dtaylor@omm.com |
| Jen Cardelús | jcardelus@omm.com |
| Michael O'Donnell | modonnell@omm.com |
| Airbnb Calendar | airbnbcalendar@omm.com |
| Liz Vargas | liz@the702firm.com |
| NIcholas Dion | nicholas@the702firm.com |
| Kristina Black | Kristina@theschnitzerlawfirm.com |

ELECTRONICALLY SERVED
5/30/2023 1:02 PM

Electronically Filed
05/30/2023 1:00 PM
CLERK OF THE COURT

**ORDR**

Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Damali A. Taylor, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8928
dtaylor@omm.com

Dawn Sestito, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
dsestito@omm.com
*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,

Plaintiffs,

v.

ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive,

Defendants.

CASE NO.: A-19-801549-C
DEPT NO.: 26

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AIRBNB, INC.'S MOTION TO DISMISS PLAINTIFF BRYAN LOVETT'S CLAIMS AGAINST AIRBNB, INC.**

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

On April 26, 2023, Defendant Airbnb, Inc.'s ("Airbnb") Motion to Dismiss Plaintiff Bryan Lovett's Claims against Airbnb, Inc. ("Motion") came on for hearing. Rory Kay of the law firm McDonald Carano LLP and Damali A. Taylor of O'Melveny and Myers LLP appeared for Airbnb. Jordan Schnitzer of the Schnitzer Law Firm appeared for plaintiff Bryan Lovett ("Lovett"), and Nicholas Dion of the 702 Law Firm appeared for plaintiffs Eric Rice and Jefferson Temple as special administrator of the estate of Raheem Rice (collectively, the "Rice Plaintiffs"). Having considered counsel's arguments, the Motion, Lovett's Opposition to the Motion, and Airbnb's Reply in support of the Motion, the Court grants the Motion in part and denies it in part as follows:

**I. BACKGROUND**

1) Airbnb is an online platform that connects individuals who wish to offer accommodations (i.e., hosts) with those seeking to book accommodations (i.e., guests).

2) Through his Complaint, Lovett alleges he was injured when an unknown person shot him on June 3, 2018, on or near the premises located at 6145 Novelty Street, Las Vegas, Nevada ("Home") while Lovett was traveling to a party. *See* Complaint ¶ 18. Lovett also alleges that the homeowners had rented the Home to a guest through use of Airbnb's online platform and that the guest had hosted the party to which Lovett was traveling. *See id.* ¶ 21.

3) Because of this, Lovett alleged causes of action against Airbnb, the homeowner, and entities related to the homeowner, for negligence, negligence per se, negligent security, and respondeat superior. *See generally id.*

4) Under NRCP 12(b)(5), Airbnb moved to dismiss Lovett's causes of action against Airbnb. Airbnb also moved to dismiss Lovett's request for punitive damages for the same.

**Airbnb's Motion**

5) As to Lovett's negligence and negligent-security causes of action, Airbnb contended that, as a rule in Nevada, there is no duty owed to control the dangerous conduct of another or to warn others of the dangerous conduct. Mot. at 4.

6) Airbnb further argued that Lovett failed to plead facts invoking any of the narrow exceptions to this rule. Lovett did not and could not allege (a) any special relationship with Airbnb creating a duty; or (2) the foreseeability of the shooting sufficient to establish a duty. With no such

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

facts, Lovett had failed to establish a duty between Airbnb and Lovett related to the allegations in Lovett's Complaint. Mot. at 4-7.

7) As to Lovett's negligence per se cause of action, Airbnb argued that Lovett did not plead any statute, provision, or code that Airbnb allegedly violated. Alleging a specific statute, provision, or code is an essential element of such a cause of action, and so Airbnb argued this cause of action could not survive dismissal. Mot. at 8-9.

8) As to Lovett's respondeat superior cause of action, Airbnb noted that this is a legal theory, not a cause of action, and that in any event, an employment relationship is an essential element of a respondeat superior theory. Lovett had not pleaded that Airbnb employed any of the actors that Lovett identified in his Complaint. Mot. at 9-10.

9) Finally, as to Lovett's request for punitive damages, Airbnb contended that Lovett did not plead facts showing that Airbnb could be guilty of oppression, fraud, or malice, express or implied as Nevada law requires. Mot. at 10-11.

**Lovett's Opposition**

10) In response, and as to the negligence and negligent-security causes of action, Lovett conceded that he does not have a special relationship with Airbnb that would establish a duty between them. Citing *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965 (1996), Lovett contended that plaintiffs in premises liability cases get to "skip" the special relationship inquiry.

11) Instead, Lovett argued that he based his negligence and negligent-security causes of action on two exceptions to the general rule that there is no duty owed to control the dangerous conduct of another or to warn others of the dangerous conduct.

12) First, citing *Radaker v. Scott*, 109 Nev. 653 (1990), and related cases, Lovett argued that Airbnb was a joint venturer with the homeowner and other defendants so that Airbnb was liable for the actions of its co-defendants. Lovett contended that under Nevada's notice pleading standard, he need only allege the "nature of the business" and that the defendants carried it on jointly. *See* Opp. at 4.

13) Second, citing *Wright v. Schum*, 105 Nev. 611 (1989), and Section 324A(b) of the Restatement (Second) of Torts, Lovett invoked the negligent-undertaking exception and contended

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

that Airbnb assumed the duty of care belonging to the homeowner and related defendants. Lovett argued that the homeowner and related entities owed a duty to Lovett to keep the Home reasonably safe and that Airbnb assumed the same by using its contract with the property's host to prohibit the other defendants from conducting background checks or ID verifications on guests who rented the Home. *See* Opp. at 4.

14) As to the foreseeability test, Lovett argued that he need not allege the specific type of crime at issue to establish foreseeability. Instead, Lovett contended that he only needed to allege that defendants' conduct increased the "risk of harm" at the Home and that they knew of the same. *See id.*

15) As to Lovett's negligence per se cause of action, Lovett argued that Clark County Ordinance Section 30.44.010(b)(7) banned online platforms like Airbnb from offering services to property owners or guests of such properties related to short-term rentals. *See id.* at 13-15

16) In his Opposition, Lovett did not defend his respondeat superior cause of action.

17) Finally, as to Lovett's request for punitive damages, Lovett contended that he had sufficiently alleged "despicable conduct" under notice pleading standards to maintain his request for punitive damages.

**<u>Airbnb's Reply</u>**

18) In its Reply, and as to the negligence and negligent-security causes of action, Airbnb noted that Lovett had not sufficiently alleged any facts to invoke any of narrow exceptions to the general rule that there is no duty to protect against third-party misconduct. Reply at 1-6.

19) First, citing *PetSmart v. Eighth Jud. Dist. Ct.*, 137 Nev. 726 (2021) and related cases, Airbnb argued that Lovett had not alleged facts showing that Airbnb specifically and voluntarily undertook any duty of care to Lovett. Reply at 2-5. Airbnb requested that the Court consider its Terms of Service, which it contended were incorporated by reference into Lovett's opposition and were judicially noticeable. *Id.* Airbnb further argued that Lovett had not alleged that Airbnb undertook any duty to protect him from third-party misconduct. *Id.*

20) Second, citing *Radaker* and related cases, Airbnb argued that there were no alleged facts showing that Airbnb was a joint venturer with the other defendants, and therefore Lovett could

not hold Airbnb liable for the purported negligence of the homeowner and other defendants. Reply at 5-6.

21) Citing *Scialabba* and related cases, Airbnb also argued that Lovett had alleged no facts showing that the unknown assailant shooting Lovett was foreseeable rather than a random, senseless shooting for which Nevada law did not hold Airbnb liable. Reply at 6-8.

22) As to the negligence per se cause of action, Airbnb contended that the ordinance that Lovett cited in his Opposition—Clark County Code Section 30.44.010(b)(7)(c)—did not apply to Airbnb because that section only applied to persons who own or control real property in Clark County, Nevada. Reply at 8-10. Moreover, Airbnb argued that Lovett did not belong to the class of persons the section protected, and his injury was not the type that the section intended to prevent. *Id.*

23) As to the respondeat superior cause of action, Airbnb noted that Lovett failed to oppose the same, and so he had conceded its merit under EDCR 2.20(e). Reply at 10.

24) Finally, Airbnb reaffirmed that Lovett did not and could not plead facts showing oppression, fraud, or malice on Airbnb's part sufficient to receive punitive damages. Reply at 10-11.

25) Throughout the Reply, Airbnb also argued that Lovett's Opposition contained allegations and theories that were not pleaded in the Complaint, and that only the allegations in the Complaint could be considered when ruling on the Motion to Dismiss. *See generally* Reply.

## II. CONCLUSIONS OF LAW

### Legal Standard Under NRCP 12(b)(5)

1) When ruling on a Rule 12(b)(5) motion to dismiss, the Court should "determine . . . whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 846, 858 P.2d 1258, 1260 (1990). In doing so, because Nevada is a notice pleading state, the Court should liberally construe the pleading and accept all facts alleged as true and draw all inferences in a plaintiff's favor. *See Harris v. State*, 138 Nev. Adv. Op. 40, 510 P.3d 802, 807 (2022). Still, the Court need not accept

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

the truth of "allegations that are legal conclusions." *Nev. Yellow Cab Corp. v. State*, No. 83014, 2022 WL 17367603, at *2 (Nev. Dec. 1, 2022).

2) After considering the pleading's allegations and drawing all inferences in a plaintiff's favor, the Court may dismiss a complaint only if it appears beyond a doubt that the plaintiff could prove no set of facts that would entitle the plaintiff to relief. *Buzz Stew, Ltd. Liab. Co. v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

**Negligence and Negligent-Security Causes of Action**

1) A plaintiff alleging negligence and negligence-security causes of action must plead facts establishing the essential element of duty to survive dismissal. *See Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 777, 291 P.3d 150, 153 (2012); *see also Hoy v. Jones*, No. 2:18-cv-01403-RFB-EJY, 2020 WL 2798017, at *9 (D. Nev. May 30, 2020). Nevada's rule is that a person owes no duty to control the dangerous conduct of another or to warn others of the dangers conduct. *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009).

2) The Nevada Supreme Court has recognized certain narrow exceptions to this rule. First, one who owns or controls land owes a duty to those who enter onto that land. *See id.* at 824, 221 P.3d at 1280; *Moody v. Manny's Auto Repair*, 110 Nev. 320, 333 (Nev. 1994); *Scialabba*, 112 Nev. at 969. And a defendant that operates a joint venture with one who owes such a duty may be liable for the acts of its joint venturer. *See Radaker v. Scott*, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993). Second, in rare circumstances, a defendant may specifically and voluntarily undertake a duty to protect a plaintiff. *See PetSmart, Inc. v. Eighth Jud. Dist. Ct.*, 137 Nev. 726, 730, 499 P.3d 1182, 1187 (2021).

3) Under either of these narrow exceptions, a plaintiff must still allege that the dangerous conduct was reasonably foreseeable. *See Sanchez*, 125 Nev. at 824, 221 P.3d at 1280-81.

4) The Court **DENIES** Airbnb's Motion as to the negligence and negligent-security causes of action. Construing Lovett's Complaint consistent with *Buzz Stew*, the Court holds that this is purely a negligence case that turns on whether (a) Lovett can impute the other defendants' purported negligence to Airbnb; or (b) if not, whether Airbnb is independently negligent. These

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

questions center on Lovett's joint-venture and negligent-undertaking theories of liability, which the Court notes are evolving concepts of liability under Nevada law.

**Negligence Per Se**

5) Negligence per se arises "when a duty is created by statute." *Sanchez*, 125 Nev. at 828, 221 P.3d at 1283. A plaintiff alleging negligence per se must plead "(1) he or she belongs to a class of persons that a statute is intended to protect; (2) the plaintiff's injuries are the type the statute is intended to protect; (3) the defendant violated the statute; (4) the violation was the legal cause of the plaintiff's injury; and (5) the plaintiff suffered damages." *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1133 (D. Nev. 2019).

6) Lovett did not plead a specific statute, ordinance, or provision in his Complaint sufficient to establish the duty and breach elements of his negligence per se cause of action. He did, however, identify Clark County Ordinance Section 30.44.010(b)(7) in his Opposition. The Court holds that this section does not apply to Airbnb for the reasons stated in Airbnb's briefing, and Lovett pleaded no other specific statute that would apply to Airbnb.

7) As a result, the Court **GRANTS** Airbnb's Motion as to the negligence per se cause of action and dismisses this cause of action without prejudice.

**Respondeat Superior**

8) Respondeat superior is not a separate cause of action but a legal theory of liability. *See Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028-29 (D. Nev. 2013). This liability "attaches only when [an] employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 96 Nev. 814, 817, 618 P.2d 878, 879 (1980).

9) The Court **GRANTS** Airbnb's Motion as to Lovett's cause of action for respondeat superior. Respondeat superior is a theory, not a cause of action, and the cause of action should be dismissed for this reason alone. Still, even as a theory of liability, Lovett has not alleged that any of the identified actors in his Complaint were employees of Airbnb or otherwise acted as Airbnb's agent. Without such allegations, this theory does not survive dismissal. To the extent such facts exist, the Court grants leave to amend the negligence cause of action to include a theory of liability based upon respondeat superior.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**Punitive Damages**

10) Punitive damages are an extraordinary remedy available "when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied." *Bongiovi v. Sullivan*, 122 Nev. 556, 581, 138 P.3d 433, 450-51 (2006); *see also* NRS 42.005.

11) The Court **GRANTS** Airbnb's Motion as to Lovett's request for punitive damages. Lovett has alleged no facts suggesting that Airbnb's conduct was oppressive, fraudulent, or malicious.

For all these reasons, the Court **GRANTS** Airbnb's Motion in part and **DENIES** Airbnb's Motion in part without prejudice.

**Dated this 30th day of May, 2023**

**ECF 56E 08B5 A742**
**Gloria Sturman**
**District Court Judge**

Drafted and Submitted by:

MCDONALD CARANO LLP

By: /s/ *Rory T. Kay*
Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Damali A. Taylor, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111

Dawn Sestito, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071

*Attorneys for Defendant Airbnb, Inc.*

Approved by:

THE SCHNITZER LAW FIRM

By: */s/ Disapproved – no response*
Jordan P. Schnitzer, Esq.
(NSBN 10744)
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148

*Attorney for Plaintiff, Bryan Lovett*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| Eric Rice, Plaintiff(s) vs. Zheng Trust, Defendant(s) | CASE NO: A-19-801549-C DEPT. NO. Department 26 |

**AUTOMATED CERTIFICATE OF SERVICE**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 5/30/2023

| | |
|---|---|
| Jordan Schnitzer | jordan@theschnitzerlawfirm.com |
| Theresa Amendola | tamendola@dennettwinspear.com |
| Bradley Myers | Brad@the702firm.com |
| CaraMia Gerard | cgerard@mcdonaldcarano.com |
| Rory Kay | rkay@mcdonaldcarano.com |
| Jelena Jovanovic | jjovanovic@mcdonaldcarano.com |
| Michael Kane | mike@the702firm.com |
| Amber Casteel | amber@the702firm.com |
| Paula Timmons | ptimmons@dennettwinspear.com |
| Karen Surowiec | ksurowiec@mcdonaldcarano.com |
| Ashley Marchant | amarchant@dennettwinspear.com |

| | |
|---|---|
| Melisa Gabhart | melisa@theschnitzerlawfirm.com |
| Sofia Chacon | sofia@the702firm.com |
| Service 702 | service@the702firm.com |
| Richard Reed | rrreedlaw@gmail.com |
| Jane Susskind | jsusskind@mcdonaldcarano.com |
| Kiley Harrison | kharrison@mcdonaldcarano.com |
| Chelsea Latino | clatino@mcdonaldcarano.com |
| Dawn Sestito | dsestito@omm.com |
| Damali Taylor | dtaylor@omm.com |
| Jen Cardelús | jcardelus@omm.com |
| Michael O'Donnell | modonnell@omm.com |
| Airbnb Calendar | airbnbcalendar@omm.com |
| Liz Vargas | liz@the702firm.com |
| NIcholas Dion | nicholas@the702firm.com |
| Kristina Black | Kristina@theschnitzerlawfirm.com |

Electronically Filed
6/16/2023 9:25 AM
Steven D. Grierson
CLERK OF THE COURT

**ANS**

Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Kiley A. Harrison, Esq. (NSBN 16092)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com
kharrison@mcdonaldcarano.com

Damali A. Taylor, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8928
dtaylor@omm.com

Dawn Sestito, Esq. (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
dsestito@omm.com
*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ERIC RICE, individually; JEFFERSON TEMPLE as Special Administrator of the Estate of RAHEEM RICE; BRYAN LOVETT,

Plaintiffs,

v.

ZHENG TRUST c/o FENEX CONSULTING; LI JUN ZHENG, individually; SHENANDOAH SOUTHWEST, INC., a Nevada Corporation; JASPER HAN, individually; AIRBNB, INC., a Foreign Corporation; ROE HOA; ROE SECURITY COMPANY; DOE PARTY HOST; ROE PROPERTY MANAGEMENT COMPANY; DOES XI through XX, inclusive and ROE CORPORATIONS XI through XX, inclusive,

Defendants.

CASE NO.: A-19-801549-C
DEPT NO.: 26

**DEFENDANT AIRBNB, INC.'S ANSWER TO COMPLAINT**

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Defendant Airbnb, Inc. ("Airbnb") answers the Complaint ("Complaint") filed by Plaintiff Bryan Lovett ("Plaintiff"),[1] and states as follows:

## BACKGROUND FACTS

1. As to paragraphs 1-3, these paragraphs pertain exclusively to the claims of the Rice Plaintiffs and so no response is required because their claims have been compelled to arbitration. To the extent that a response is required, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs and on this basis denies them.

2. Answering paragraphs 4-7, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs and on this basis denies them.

3. Answering paragraph 8, to the extent that the allegations in this paragraph are addressed to Airbnb, all such allegations are denied. To the extent that the allegations in this paragraph are addressed to other defendants, Airbnb is not required to respond on their behalf and lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

4. Answering paragraph 9, Airbnb admits that it is incorporated in Delaware. Except as expressly admitted, Airbnb denies the remaining allegations in this paragraph.

5. Answering paragraphs 10-13, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs and on this basis denies them.

6. As to paragraph 14, this paragraph pertains exclusively to the claims of the Rice Plaintiffs and so no response is required because their claims have been compelled to arbitration. To the extent that a response is required, Airbnb is without knowledge or information sufficient

///

---

[1] Because the claims of Plaintiffs Eric Rice and Jefferson Temple as Special Administrator of the Estate of Raheem Rice (collectively, the "Rice Plaintiffs") have been compelled to arbitration, no answer or response to their claims is required. To the extent any response is required, Airbnb generally denies their claims.

to form a belief as to the truth of the allegations contained in this paragraph and on this basis denies them.

7. Answering paragraph 15, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and on this basis denies them.

**JURISDICTIONAL STATEMENT**

8. Answering paragraph 16, Airbnb repeats and realleges each and every answer of the allegations in the preceding paragraphs as if fully set forth herein.

9. Answering paragraph 17, Airbnb denies that the Eighth Judicial District Court has jurisdiction over the Rice Plaintiffs' claims, which have been compelled to arbitration. As to the remaining allegations, these allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and on this basis denies them.

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

10. Answering paragraphs 18-19, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs and on this basis denies them.

11. As to paragraph 20, this paragraph pertains exclusively to the claims of the Rice Plaintiffs and so no response is required because their claims have been compelled to arbitration. To the extent that a response is required, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and on this basis denies them.

12. Answering paragraph 21, Airbnb denies that any party was hosted through the use of its service. Airbnb admits that a reservation was booked for the subject property through Airbnb's platform. Except as expressly admitted, Airbnb denies the remaining allegations in this paragraph.

/ / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

13. Answering paragraphs 22-31, to the extent that the allegations in these paragraphs are addressed to Airbnb, all such allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb denies these allegations. To the extent that the allegations in this paragraph are addressed to other defendants, Airbnb is not required to respond on their behalf and lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

14. As to paragraphs 32-33, these paragraphs pertain exclusively to the claims of the Rice Plaintiffs and so no response is required because their claims have been compelled to arbitration. To the extent that a response is required, these allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs and on this basis denies them.

15. Answering paragraphs 34-36, to the extent that the allegations in these paragraphs are addressed to Airbnb, these allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb denies these allegations. To the extent that the allegations in these paragraphs are addressed to other defendants, Airbnb is not required to respond on their behalf and lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

**FIRST CLAIM FOR RELIEF**
**(Negligence)**

16. Answering paragraph 37, Airbnb repeats and realleges each and every answer of the allegations in the preceding paragraphs as if fully set forth herein.

17. Answering paragraphs 38-43 and 46-49, to the extent that the allegations in these paragraphs are addressed to Airbnb, these allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb denies these allegations. To the extent that the allegations in these paragraphs are addressed to other defendants, Airbnb is not required to respond on their behalf and lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

18. As to paragraphs 44-45, these paragraphs pertain exclusively to the claims of the Rice Plaintiffs and so no response is required because their claims have been compelled to arbitration. These allegations also constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb denies these allegations.

**SECOND CLAIM FOR RELIEF**
**(Negligence Per Se)**

19. Pursuant to the Court's May 30, 2023, Order Granting in Part and Denying in Part Defendant Airbnb, Inc.'s Motion to Dismiss Plaintiff Bryan Lovett's Claims Against Airbnb ("Motion to Dismiss Order"), this cause of action was dismissed. Therefore, no answer or response is required. To the extent a response is required, Airbnb denies the allegations of paragraphs 50-67.

**THIRD CLAIM FOR RELIEF**
**(Negligent Security)**

20. Answering paragraph 68, Airbnb repeats and realleges each and every answer of the allegations in the preceding paragraphs as if fully set forth herein.

21. Answering paragraphs 69-80 and 83-85, to the extent that the allegations in these paragraphs are addressed to Airbnb, these allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb denies these allegations. To the extent that the allegations in these paragraphs are addressed to other defendants, Airbnb is not required to respond on their behalf and lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

22. As to paragraphs 81-82, these paragraphs pertain exclusively to the claims of the Rice Plaintiffs and so no response is required because their claims have been compelled to arbitration. To the extent that a response is required, these allegations constitute statements of law and/or legal conclusions to which no response is required. If a response is required, Airbnb is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs and on this basis denies them.

///

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**FOURTH CLAIM FOR RELIEF**
**(Respondeat Superior)**

23. Pursuant to the Court's May 30, 2023, Motion to Dismiss Order, this cause of action was dismissed. Therefore, no answer or response is required. To the extent a response is required, Airbnb denies the allegations of paragraphs 86-98.

**PRAYER**

Responding to the prayer on pages 15-16, Airbnb admits that Lovett prays for certain relief from the Court. Except as expressly admitted, to the extent that the allegations in these paragraphs are addressed to Airbnb, all such allegations are denied, including because the Court struck Lovett's request for punitive damages in its Motion to Dismiss Order. To the extent that the allegations in these paragraphs are addressed to other defendants, Airbnb is not required to respond on their behalf and lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

**AFFIRMATIVE DEFENSES**[2]

**First Affirmative Defense**

(No Duty)

1. Airbnb owed no duty to Plaintiff for any negligent acts or omissions alleged.

**Second Affirmative Defense**

(Failure to State a Claim)

2. The Complaint and all of its claims are barred, in whole or in part, because they fail to state a claim against Airbnb upon which relief can be granted, and, accordingly, should be dismissed pursuant to Nevada Rule of Civil Procedure 12.

**Third Affirmative Defense**

(Contributory/Comparative Fault)

3. The Complaint and all of its claims are barred, in whole or in part, by Plaintiff's contributory or comparative negligence.

---

[2] Because the Rice Plaintiffs' claims are compelled to arbitration, Airbnb need not assert herein affirmative defenses to those claims.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**Fourth Affirmative Defense**

(Assumption of Risk)

4. The Complaint and all of its claims are barred, in whole or in part, under the assumption of risk doctrine.

**Fifth Affirmative Defense**

(No Proximate Causation / Intervening or Superseding Events)

5. The Plaintiff's alleged damages were proximately caused by the actions of other defendants or third parties over which Airbnb had no control; accordingly, such other causes were the intervening proximate cause or the superseding proximate cause of their alleged damages. Therefore, Airbnb should not be held responsible for any such damages.

**Sixth Affirmative Defense**

(Failure to Mitigate)

6. The Complaint and all of its claims are barred, in whole or in part, to the extent that the Plaintiff failed to mitigate or minimize his own alleged damages.

**Seventh Affirmative Defense**

(Comparative Fault)

7. The Complaint and all of its claims are barred, in whole or in part, because any damages Plaintiff may have suffered were caused in whole or in part by the negligence and/or other wrongful conduct of other defendants or third parties for whose conduct Airbnb is not responsible or liable.

**Eighth Affirmative Defense**

(Unforeseeable Events)

8. The Complaint and all of its claims are barred, in whole or in part, because any harm allegedly suffered by Plaintiff was not reasonably foreseeable to Airbnb.

**Ninth Affirmative Defense**

(No Punitive Damages)

9. Pursuant to the Court's Motion to Dismiss Order, Plaintiff is not permitted to seek an award of punitive damages. Punitive damages as requested by Plaintiff, which Airbnb denies

are recoverable at all, are not permitted by law to the extent Plaintiff's request violates the United States Constitution and all governing state law (including but not limited to *State Farm v. Campbell*, 538 U.S. 408 (2003) and its progeny) regarding the recoverability and amount of punitive damages.

**Tenth Affirmative Defense**

(No Joint Liability)

10. In the unlikely event that Airbnb and another defendant is found liable to Plaintiff, any damages apportioned by the trier of fact shall be the liability of each defendant against whom they are awarded, and shall not be a joint liability among the defendants liable.

**Eleventh Affirmative Defense**

(Credit/Offset)

11. In the unlikely event that Airbnb is found liable to Plaintiff, Airbnb is entitled to a credit or offset for any and all sums that Plaintiff has received, or may hereafter receive, by way of any and all settlements arising from Plaintiff's claims and causes of action.

**Twelfth Affirmative Defense**

(Indemnity Offset)

12. Any verdict or judgment that might be recovered by Plaintiff must be reduced by those amounts that have already or will in the future, with reasonable certainty, indemnify Plaintiff in whole or in part for any past or future claimed economic loss from any collateral source.

**Thirteenth Affirmative Defense**

(Limitation of Remedies)

13. The Complaint and all of its claims are barred and/or limited, in whole or in part, pursuant to applicable statutory and common law regarding limitations on awards, caps on recovery, and setoffs.

**Fourteenth Affirmative Defense**

(Communications Decency Act)

14. The Complaint and all of its claims are barred, in whole or in part, and/or preempted by the Communications Decency Act. *See* 47 U.S.C. § 230 *et seq.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**Fifteenth Affirmative Defense**

(Subrogation of Rights/Limitation of Remedies)

15. The Complaint and all of its claims are barred, in whole or in part, because Plaintiff, who did not reserve the listing at issue but was a guest of the booking guest, cannot claim greater rights or entitlements than would be available to the booking guest, whose rights were subject to the limitations provided in Airbnb's Terms of Service to which the booking guest consented.

**Sixteenth Affirmative Defense**

(Acts of Others)

16. At the time and place and under the circumstances alleged, the injuries sustained by Plaintiff, if any, were caused by the acts or omissions of parties over whom Airbnb had no control and for whose acts Airbnb was not responsible, and that Plaintiff's recovery, if any, should therefore be diminished or barred in accordance with Nevada law.

**Seventeenth Affirmative Defense**

(Waiver)

17. The Complaint and all of its claims are barred, in whole or in part, by the doctrine of waiver.

**Eighteenth Affirmative Defense**

(Estoppel)

18. The Complaint and all of its claims are barred, in whole or in part, by the doctrine of estoppel.

**Nineteenth Affirmative Defense**

(Unclean Hands)

19. The Complaint and all of its claims are barred, in whole or in part, by the doctrine of unclean hands.

**Twentieth Affirmative Defense**

(Additional Affirmative Defenses)

20. Airbnb reserves the right to allege any additional affirmative defenses, as the facts become known.

WHEREFORE, Airbnb, Inc., prays that judgment be rendered in its favor and against Plaintiff as follows:

1. That Plaintiff take nothing by way of his Complaint;

2. For an award of Airbnb's reasonable attorney fees, according to proof;

3. For costs of suit; and

4. For such other and further relief as this Court deems just and proper.

DATED this 16th day of June, 2023.

McDONALD CARANO LLP

By: */s/ Rory T. Kay*
Rory T. Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Kiley A. Harrison, Esq. (NSBN 16092)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102

Damali A. Taylor, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center 28th Floor
San Francisco, CA 94111

Dawn Sestito, Esq.
(Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071

*Attorneys for Defendant Airbnb, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of June, 2023, I caused a true and correct copy of the foregoing **DEFENDANT AIRBNB, INC.'S ANSWER TO COMPLAINT** to be served via this Court's Electronic Filing system in the above-captioned case.

*/s/ CaraMia Gerard*
An employee of McDonald Carano LLP