**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**


IN RE: ZANTAC (RANITIDINE)                                   MDL NO. 2924
PRODUCTS LIABILITY LITIGATION                            20-MD-2924

                                                        JUDGE ROBIN L. ROSENBERG
_____/          MAGISTRATE JUDGE BRUCE E.
                                                        REINHART

THIS DOCUMENT RELATES TO:

*Valdes v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 9:23-cv-81560


**THE REMOVING DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447**


DATED:  February 9, 2024

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................. 2

III.  ARGUMENT ......................................................................................................... 5

    A.  Legal Standard ........................................................................................... 5

    B.  Plaintiff Has No Possibility of Recovering Against Publix Based on the
    Record ......................................................................................................... 6

    C.  Plaintiff Has No Intent to Prosecute His Claim Against Publix ............... 10

    D.  The Removal Is Timely ............................................................................. 13

        1.  The One-Year Bar on Removals Does Not Apply.................................... 13

        2.  The Removal Was Timely Filed Within 30 Days of Plaintiff's
        Experts' Depositions ................................................................................ 16

    E.  The Removing Defendants' Prior Removal Does Not Preclude a Second
    Removal ..................................................................................................... 17

    F.  Attorneys' Fees and Costs Are Not Warranted Because the Removing
    Defendants Had an Objectively Reasonable Basis to Remove .................. 19

IV.  CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2014 WL 2011597 (E.D. Pa. May 15, 2014) ........................................................................11

*Bennett v. Ford Motor Co.*,
2007 WL 4561281 (W.D. Ky. Dec. 21, 2007) ...............................................................11, 15

*In re Briscoe*,
448 F.3d 201 (3d Cir. 2006) ...............................................................................................10

*Whitehead ex. rel. Brooks v. Southerland, Inc.*,
2023 WL 2766012 (N.D. Ga. Mar. 31, 2023) ......................................................................9

*Carter v. Hector Supply Co.*,
128 So. 2d 390 (Fla. 1961) ..................................................................................................9

*CH2M Hill Se., Inc. v. Pinellas Cnty.*,
598 So. 2d 85 (Fla. 2d DCA 1992) ......................................................................................9

*Cousins v. Wyeth Pharm., Inc.*,
2008 WL 1883932 (N.D. Tex. Apr. 18, 2008) ...................................................................15

*Crum v. Hankook Mfg. Co.*,
2020 WL 8465442 (S.D. Ala. Dec. 28, 2020) ...............................................................18, 19

*Davis v. Merck & Co.*,
357 F. Supp. 2d 974 (E.D. Tex. 2005) ...............................................................................11

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
220 F. Supp. 2d 414 (E.D. Pa. 2002) .................................................................................11

*Dominguez v. Peek*,
2010 WL 1658550 (S.D. Ala. Apr. 16, 2010), *rep. & recommendation
adopted*, 2010 WL 1851617 (May 5, 2010) ......................................................................19

*Faulk v. Husqvarna Consumer Outdoor Prods. N.A., Inc.*,
849 F. Supp. 2d 1327 (M.D. Ala. 2012) .............................................................................10

*Fowler v. Wyeth*,
2004 WL 3704897 (N.D. Fla. May 14, 2004) ......................................................................6

*Ganey v. Goodings Million Dollar Midway, Inc.*,
360 So. 2d 62 (Fla. 1st DCA 1978) .....................................................................................7

*Green v. R.J. Reynolds Tobacco Co.*,
   2000 WL 33993335 (S.D. Tex. Aug. 17, 2000), *aff'd*, 274 F.3d 263 (5th Cir.
   2001) ...................................................................................................................................9

*Holland v. CSX Transp., Inc.*,
   2021 WL 4448305 (S.D. W.Va. Sept. 28, 2021) .........................................................14, 15

*Illoominate Media, Inc. v. CAIR Fla., Inc.*,
   841 F. App'x 132 (11th Cir. 2020) ...................................................................................6

*Ingram v. Forbes Co.*,
   2013 WL 1760202 (M.D. Fla. Apr. 24, 2013) ...............................................................15

*Jackson v. H.L. Bouton Co.*,
   630 So. 2d 1173 (Fla. 1st DCA 1994) ...............................................................................9

*K-Mart Corp. v. Chairs, Inc.*,
   506 So. 2d 7 (Fla. 5th DCA 1987) ....................................................................................9

*Keller Logistics Grp., Inc. v. Navistar, Inc.*,
   391 F. Supp. 3d 774 (N.D. Ohio 2019)............................................................................14

*Klose v. Coastal Emergency Servs. of Fort Lauderdale, Inc.*,
   673 So. 2d 81 (Fla. 4th DCA 1996) ...........................................................................16, 17

*Legg v. Wyeth*,
   428 F.3d 1317 (11th Cir. 2005) ....................................................................................5, 6

*Long v. Wyeth*,
   2003 WL 25548421 (M.D. Fla. May 13, 2003)..............................................................6, 10

*Marking v. Novartis Pharms. Corp.*,
   2002 WL 32255405 (S.D. Fla. Feb. 12, 2002) .................................................................7

*Marshick v. Johnson & Johnson*,
   2015 WL 9266955 (M.D. Fla. Dec. 11, 2015)...................................................................7

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005)..........................................................................................................19

*McCasland v. Pro Guard Coatings, Inc.*,
   799 F. App'x 731 (11th Cir. 2020) ...................................................................................7

*McNeal v. Found. Radiology Grp., P.C.*,
   2022 WL 3010694 (E.D. Mich. July 29, 2022) ...............................................................14

*Michael H. Bloom, P.A. v. Dorta-Duque*,
   743 So. 2d 1202 (Fla. 3d DCA 1999) ...............................................................................8

*Omni Nat'l Bank v. Nations Title Agency, Inc.*,
2006 WL 8433532 (N.D. Ga. Sept. 5, 2006) .......................................................................9

*In re Propulsid Prods. Liab. Litig.*,
2007 WL 1668752 (E.D. La. June 6, 2007) ......................................................................15

*In re Roundup Prods. Liab. Litig. (Mistich)*,
MDL No. 2741 (N.D. Cal. Nov. 8, 2023) .........................................................................14

*Russell v. Beddow*,
82 So. 3d 996, 998 (Fla. 1st DCA 2011) .............................................................................7

*Ryan v. Atl. Fertilizer & Chem. Co.*,
515 So. 2d 324 (Fla. 3d DCA 1987) ....................................................................................9

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
72 F.3d 489 (5th Cir. 1996) .........................................................................................18, 19

*Sellers v. Foremost Ins. Co.*,
924 F. Supp. 1116 (M.D. Ala. 1996) ...................................................................................6

*Shannon v. Albertelli Firm, P.C.*,
610 F. App'x 866 (11th Cir. 2015) ..................................................................................6, 9

*Sudduth v. Equitable Life Assurance Soc'y*,
2007 WL 2460758 (S.D. Ala. Aug. 27, 2007) ..................................................................19

*Triggs v. John Crump Toyota, Inc.*,
154 F.3d 1284 (11th Cir. 1998) .............................................................................5, 6, 10

*Watson v. Carnival Corp.*,
436 F. App'x 954 (11th Cir. 2011) ....................................................................................18

*Wax v. Tenet Health Sys. Hosps., Inc.*,
955 So. 2d 1 (Fla. 1st DCA 2006) .....................................................................................17

*Webster v. Martin Mem'l Med. Ctr., Inc.*,
2009 WL 7770772 (Fla. Cir. Ct. May 14, 2009) .................................................................7

*Wilson v. Jacks*,
310 So. 3d 545 (Fla. 1st DCA 2021) ...................................................................................9

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
2021 WL 2685605 (S.D. Fla. June 30, 2021) ...................................................................12

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
510 F. Supp. 3d 1234 (S.D. Fla. 2020) .............................................................................12

iv

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    2022 WL 708589 (S.D. Fla. Jan. 28, 2022) ............................................................2

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
    257 F. Supp. 3d 717 (E.D. Pa. 2017) .....................................................................11

**Statutes**

28 U.S.C. § 1446.........................................................................................................13, 16

28 U.S.C. § 1447.................................................................................................................1

Defendants GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc., Pfizer Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation, Sanofi US Services Inc., and Sanofi-Aventis U.S. LLC (collectively, the "Removing Defendants") submit this Opposition to Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447.

## I.    INTRODUCTION

Diversity jurisdiction exists here.  Plaintiff's only claim against non-diverse defendant Publix Super Markets, Inc. ("Publix") is a negligence count asserting that the retailer improperly stored and transported Zantac (ranitidine) despite knowing that the drug can degrade in hot and humid conditions.  But Plaintiff failed to develop that claim during discovery.  Despite a full opportunity to make out a case, Plaintiff presented **no** expert opinion—as Florida law requires— that Publix's alleged negligence caused his mother's injury.  Nor did Plaintiff obtain any case-specific fact discovery concerning Publix, relying solely on general discovery taken in this MDL— discovery that failed to save similar negligent storage and transport claims from dismissal. Unsurprisingly, then, Plaintiff's remand motion presents **no evidence** to support his argument that he has a possibility of recovery on the negligence claim against Publix.

Without any such evidence, Plaintiff falls back on procedural arguments about the timeliness of the removal.  But the case was timely removed within thirty (30) days after the last of Plaintiff's causation experts was deposed and disclaimed any opinion as to Publix.  The one-year bar on removal also does not apply, because Plaintiff acted in bad faith to prevent removal. Not only did Plaintiff fail completely to prosecute his claim against Publix, but he voluntarily dismissed identical negligence claims against three diverse retailers even though his mother allegedly bought Zantac from them just as with Publix.  In short, it could not be clearer on this

1

record that Plaintiff's naming of Publix was a sham aimed solely at destroying diversity jurisdiction.  Accordingly, the Court should deny Plaintiff's Motion to Remand.

## II.    FACTUAL BACKGROUND

On September 27, 2021, Decedent Teresa Valdes filed this product liability lawsuit in the Circuit Court in and for Miami-Dade County, Florida, alleging that her Zantac use caused her to develop colorectal cancer.  *See generally* Compl. [Dkt. 1-4].[1]  Decedent named as defendants (1) the Removing Defendants that marketed Zantac, and (2) the four retailers—Publix, CVS Pharmacy, Inc. ("CVS"), Walgreen Co. d/b/a Walgreens ("Walgreens"), and Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Wal-Mart")—from which Decedent allegedly purchased Zantac.  Publix was the only non-diverse defendant.

On October 20, 2021, the Removing Defendants removed this action based on the face of the Complaint, alleging that Publix was fraudulently joined because the strict liability claim asserted against Publix was preempted and Decedent did not allege a negligent storage and transport claim against Publix.  *See* Compl. [Dkt. 4-1].  On October 27, 2021, Decedent filed an amended complaint in federal court to add a negligent storage and transport claim against Publix. *See* Am. Compl. ¶¶ 131–133, 137–151, No. 1:21-cv-23711-RLR (S.D. Fla. Oct. 27, 2021) [ECF No. 5].  After this Court rejected the Removing Defendants' argument that preemption was a basis for removal in another case, *see In re Zantac (Ranitidine) Products Liability Litigation*, 2022 WL 708589, at *2 (S.D. Fla. Jan. 28, 2022), the Removing Defendants withdrew the removal notice in this case and agreed to remand.  *See* Notice of Withdrawal of Defs.' Notices of Removal, MDL No. 2924 (S.D. Fla. Mar. 1, 2022) [ECF No. 5356].

---

[1] Citations to the individual docket, No. 9:23-cv-81560, are designated [Dkt. ##].  Citations to the MDL docket, MDL No. 2924, and to the previously removed docket, No. 1:21-cv-23711-RLR, are designated [ECF No. ##].

On July 27, 2022, Decedent passed away.  *See* Fourth Am. Compl. ¶ 4 [Dkt. 1-1].  On October 4, 2022, Plaintiff—Decedent's son and personal representative of her estate—filed an amended complaint.  *See* Second Am. Compl. [Dkt. 4-13].[2]  Even though Decedent represented that she had purchased Zantac from Publix, CVS, Walgreens, and Wal-Mart in written discovery prior to her passing,[3] Plaintiff dropped the diverse retailers CVS, Walgreens, and Wal-Mart from the complaint—leaving Publix as the ***only*** retailer defendant.  Plaintiff asserted only one claim against Publix:  that it was "negligen[t] in shipping, transporting, distributing, and storing OTC Zantac."  Fourth Am. Compl. ¶ 262 [Dkt. 1-1].[4]  According to Plaintiff, Publix knew or should have known that ranitidine degrades into N-Nitrosodimethylamine ("NDMA")—a potential human carcinogen—under high heat and humidity conditions, *see id.* ¶¶ 264–279, but failed to store and transport the drug properly.  *Id.* ¶¶ 280, 282, 283, 286–295.

---

[2] Decedent also filed an Amended Complaint on May 20, 2022, alleging claims of products liability – breach of warranty of merchantability, negligence, and strict liability against Publix, CVS, Walgreens, and Wal-Mart.  *See* Am. Compl. ¶¶ 266–321 [Dkt. 4-11].  The products liability and strict liability claims against Publix were dropped in the Third Amended Complaint, filed on March 7, 2023.

[3] *See* Pl.'s Objs. & Answers to Def. Sanofi-Aventis U.S. LLC's First Set of Interrog. No. 7 (June 2, 2022) [Dkt. 1-2] ("I bought Zantac from CVS, Walmart, Walgreens and Publix Super Markets in Hialeah, Kendall and Miami, Florida to treat/relieve heartburn."); *see also, e.g.*, 5/31/23 Alexander Omar Valdes Dep. at 88:12–21 [Dkt. 4-3] ("Q.  As you sit here today, do you recall ever being with your mother or witnessing her purchase Zantac?  A.  Yes.  Q.  Tell me how many times you recall it or generally what you recall?  A.  I remember buying, purchasing the Zantac at either Eckerds, Walgreens, Publix, I do remember.  Q.  Now, did you buy them or your mother buy them?  A.  She bought them."); *id.* at 167:18–24 ("Q.  And I believe also you earlier testified that your mother purchased Zantac from other groceries and pharmacy stores; is that correct?  A. Yes.  Q.  Would you tell me what those stores are?  A.  Eckerds, Walgreens, CVS, and there were some—quite some others, but I can't remember.").

[4] On March 3, 2023 and June 27, 2023, Plaintiff filed a Third Amended Complaint and Fourth Amended Complaint against the same defendants.  *See* Third Am. Compl. [Dkt. 4-15]; Fourth Am. Compl. [Dkt. 1-1].  The negligent storage and transport allegations against Publix in the Second, Third, and Fourth Amended Complaints are substantially identical.

The parties continued to litigate the case.  During fact discovery, Plaintiff served just one set of interrogatories and one set of requests for production on Publix, asking for general information about company policies.  *See* Pl.'s Interrogs. [Dkt. 4-19]; Pl.'s Request for Production [Dkt. 4-20].  In response, Publix referred Plaintiff to discovery completed in the Zantac MDL but produced no additional documents in Plaintiff's case.  *See* Publix's Answer to Interrogs. [Dkt. 4-21]; Publix's Response to Request for Production [Dkt. 4-22].  At no point did Plaintiff follow up on the responses or seek case-specific discovery from Publix, *e.g.*, information about the storage conditions at the individual Publix store where Decedent alleges to have purchased Zantac or the Publix trucks that shipped drugs to that location.  Nor did Plaintiff seek any deposition from any Publix witness specific to the facts of this case.  Fact discovery then closed on November 30, 2023. October 24, 2023 Second Agreed Amended Scheduling Order [Dkt. 1-6 at 1738-39].

On November 1, 2023, Plaintiff disclosed three medical experts to testify that ranitidine caused Decedent's colorectal cancer:  Drs. Jack Goldberg, Steven B. Bird, and Nagi B. Kumar. *See* Pl.'s Expert Witness Disclosures [Dkt. 4-24].  Between December 4 and 13, 2023, Removing Defendants deposed Drs. Goldberg, Bird, and Kumar.  Each expert expressly disclaimed having any causation opinion with respect to Publix.  Dr. Goldberg testified:

> Q:    Dr. Simmons, are you offering any opinions in this case with respect to any action or inaction by Publix Super Markets?
>
> A:    No, I am not.
>
> Q:    Have you formed any such opinions?
>
> A:    I have not.

Goldberg Dep. at 246:15–20 [Dkt. 1-3].

Dr. Bird testified:

> Q:    Are you offering any opinions in this case with respect to any action or inaction by Publix Supermarkets?

4

A:      No, I am not.

Q:      You have formed any such opinions?

A:      I have not.

Bird Dep. at 230:5–11 (Ex. 1).

And Dr. Kumar testified:

Q:      What opinions are you offering with respect to Publix Super Markets?

A:      None.  None from the customer service or any such thing.  I—no, not specifically at all.

Kumar Dep. at 446:14–17 (Ex. 2).  The Removing Defendants then re-removed the case on December 14, 2023, within thirty (30) days of Dr. Kumar's deposition.

## III.    ARGUMENT

Publix is fraudulently joined and its citizenship should be ignored.  Although Plaintiff may have ***pled*** a viable state court negligence claim against Publix for "negligence in shipping, transporting, distributing, and storing OTC Zantac," *see* Fourth Am. Compl. ¶ 262, he cannot possibly succeed on that claim because with his discovery now complete, he has ***no evidentiary support*** for the negligence claim against Publix.

### A.    Legal Standard

As the Eleventh Circuit has explained, the "removal process was created by Congress to protect defendants.  Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it. . . . Federal courts . . . should be equally vigilant to protect the right to proceed in the Federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (citations and quotation marks omitted).  "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  A non-diverse defendant is fraudulently joined

5

where there is no "possibility, based on this record, that [the plaintiff] can establish a cause of action . . . against" that defendant. *Legg*, 428 F.3d at 1324.  As an alternative basis for fraudulent joinder, courts consider whether—even if a claim theoretically might have merit—the plaintiff has a "real intention to get a [] judgment" against the non-diverse party. *Triggs*, 154 F.3d at 1291; *Long v. Wyeth*, 2003 WL 25548421, at \*2 (M.D. Fla. May 13, 2003) ("Celltech Pharmaceuticals is a sham defendant in this action and has been fraudulently joined because [plaintiffs] do not 'inten[d]' to pursue a judgment." (citing *Triggs*, 154 F.3d at 1291)).

When a claim of fraudulent joinder is "based on lack of evidence, a plaintiff . . . must be able to provide some showing that her claim against the [non-diverse] defendant has evidentiary support." *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1119 (M.D. Ala. 1996).  In those circumstances, the process "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment." *Legg*, 428 F.3d at 1322–23; *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 841 F. App'x 132, 135 (11th Cir. 2020) (same).  That determination is "based upon the plaintiff's pleadings at the time of removal, ***supplemented by any affidavits and deposition transcripts submitted by the parties***." *Legg*, 428 F.3d at 1322 (emphasis in original; citation omitted).  Thus, when a defendant presents evidence supporting a finding of fraudulent joinder, "the plaintiff generally must come forward with some evidence to dispute [it]." *Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 871 (11th Cir. 2015); *Fowler v. Wyeth*, 2004 WL 3704897, at \*4 (N.D. Fla. May 14, 2004) ("Once [defendant] presented [evidence] to the Court, Plaintiffs could not continue to rely upon their unsupported allegations in the complaint.  Plaintiffs had to put forward specific evidence to refute [defendant's evidence]." (citation omitted)).

### B.    Plaintiff Has No Possibility of Recovering Against Publix Based on the Record

Plaintiff has no possibility of prevailing against Publix because he has no evidence whatsoever that Publix's negligence caused Decedent's injury.

Florida law requires expert testimony to prove causation in cases like this, "where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge." *McCasland v. Pro Guard Coatings, Inc.*, 799 F. App'x 731, 733 (11th Cir. 2020) (addressing Florida law); *id.* at 733–34 (affirming summary judgment for defendant manufacturer, including on negligence claim, because plaintiff "failed to offer any expert testimony to establish . . . that [the product] did in fact cause his medical condition").[5]   Yet Plaintiff's experts affirmatively ***disclaimed*** having any causation opinions with respect to Publix. *See supra* pp. 4–5.  He therefore has no expert to testify that Publix's alleged negligence caused Decedent's injuries:  no expert opines that Publix's negligence caused NDMA to form in the Zantac that Decedent allegedly ingested, and no expert opines that, as a result of Publix's negligence, NDMA was formed in sufficient quantity to cause her cancer.  Without that expert testimony, Plaintiff cannot establish a negligence claim against Publix.  *See, e.g.*, *Webster v. Martin Mem'l Med. Ctr., Inc.*, 2009 WL 7770772 (Fla. Cir. Ct. May 14, 2009) (granting summary judgment because "Plaintiffs' own experts' testimony shows that they simply cannot prove the causation element of this case"); *Marking*, 2002 WL 32255405, at *3 ("Summary judgment has been granted when . . . the plaintiff is left with no expert on which to rely for medical causation.").

Nor does Plaintiff have any evidence that Publix negligently stored or transported the ranitidine that Decedent actually used.  Plaintiff failed to take any case-specific discovery of Publix, *see infra* p. 12–13, and as such, presented no such evidence in support of his remand

---

[5] *See also, e.g.*, *Marking v. Novartis Pharms. Corp.*, 2002 WL 32255405, at *3 (S.D. Fla. Feb. 12, 2002) ("Plaintiffs are required to introduce expert testimony to establish medical causation.") (applying Florida law); *Marshick v. Johnson & Johnson*, 2015 WL 9266955, at *4 (M.D. Fla. Dec. 11, 2015) ("[Plaintiff] must have expert testimony on medical causation or her claims will fail.") (applying Florida law); *Russell v. Beddow*, 82 So. 3d 996, 998 (Fla. 1st DCA 2011) (explaining that expert proof is required when the cause of the plaintiff's injury is "not within the province of the jury" (quotation marks and citation omitted)).

motion. Without *any* evidence supporting his liability theory against Publix—expert or otherwise—Plaintiff cannot possibly recover against Publix. Plaintiff's reliance on the *Zantac*, *Fransas*, and *Waters* cases—cited at Mot. at 7, 8—misses the mark. Those cases assessed whether the plaintiffs **pled** a viable action against the retailers. This case is very different: the Removing Defendants do not contend that Plaintiff has insufficiently pled his storage and transport claim. The issue is whether Plaintiff can recover on that claim when he has adduced ***no evidence*** of Publix's negligence after discovery has concluded in his state court action. He cannot.

Plaintiff nevertheless argues that he can proceed against Publix without experts because Publix is "passively or vicariously liable as a seller in the stream of commerce." Mot. at 8, 20. This argument fails for two reasons. ***First***, Plaintiff did ***not*** bring a claim against Publix based on its role in the chain of distribution. Although Decedent originally asserted a claim for strict liability against Publix, *see* Mot. at 13 and Compl. ¶¶ 151–156 [Dkt. 1-4], Plaintiff dropped that claim in the Third Amended Complaint, *see* Mot. at 13–14 and Third Am. Compl. [Dkt. 4-15]. The operative Fourth Amended Complaint instead asserts a specific type of negligence claim against Publix: that the retailer improperly ***stored and transported*** Zantac despite knowing the drug can degrade into NDMA in hot and humid conditions. *See supra* p. 3. On its face, this claim is based on allegations of active negligence on Publix's part, not that Publix passively participated in the chain of distribution. At this advanced stage in the case, Plaintiff cannot fall back on the different and never-pled theory that Publix's status as part of the chain of distribution renders it strictly liable. *See, e.g.*, *Michael H. Bloom, P.A. v. Dorta-Duque*, 743 So. 2d 1202, 1203 (Fla. 3d DCA

1999) ("It is well settled that a defendant cannot be found liable under a theory that was not specifically pled.").[6]

**Second,** in Florida, a claim for negligence against a retailer "requires . . . proof of fault." *Carter v. Hector Supply Co.*, 128 So. 2d 390, 393 (Fla. 1961). "[A] retailer could be held liable . . . in a negligence action . . . only if the retailer could be charged with actual or implied knowledge of the defect." *Id.* at 392 (emphasis omitted).[7] The time for Plaintiff to develop proof of actual or constructive knowledge was in discovery; the time to present it was with the remand motion. *See, e.g.*, *Omni Nat'l Bank v. Nations Title Agency, Inc.*, 2006 WL 8433532, at *1 (N.D. Ga. Sept. 5, 2006) (denying remand where "Plaintiff has offered no evidence to rebut" the defendant's evidence establishing fraudulent joinder).[8] Plaintiff has supplied no such proof.

The single case Plaintiff cites does not support his argument that Florida allows negligence claims based merely on participation in the chain of distribution. In *K-Mart Corp. v. Chairs, Inc.*, 506 So. 2d 7, 9 & n.2 (Fla. 5th DCA 1987)—cited at Mot. at 8—after a jury returned a verdict against the retailer based on theories of strict liability and implied warranty, the retailer brought

---

[6] *See also, e.g.*, *Wilson v. Jacks*, 310 So. 3d 545, 547 (Fla. 1st DCA 2021) ("[T]here is a substantial body of case law . . . determining that issues and claims not specifically pleaded in a party's complaint or answer cannot be considered by a trial court reviewing a summary judgment motion." (citing cases)); *CH2M Hill Se., Inc. v. Pinellas Cnty.*, 598 So. 2d 85, 88 (Fla. 2d DCA 1992) (mem.) ("A plaintiff may not recover damages on a theory of liability not pled.").

[7] *See also, e.g.*, *Jackson v. H.L. Bouton Co.*, 630 So. 2d 1173, 1176 (Fla. 1st DCA 1994) ("One measure of the duty element of a negligence cause of action is the defendant's actual or implied knowledge of a defect in items it has produced or sold."); *Ryan v. Atl. Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) ("It is well settled law that a retailer can be liable in negligence in a products liability action only if the retailer can be charged with actual or implied knowledge of the defect.").

[8] *See also, e.g.*, *Shannon*, 610 F. App'x at 871 (affirming district court's decision not to consider evidence supporting joinder of non-diverse defendant because it was submitted "for the first time in a motion for reconsideration after judgment was entered"); *Whitehead ex. rel. Brooks v. Southerland, Inc.*, 2023 WL 2766012, at *6 (N.D. Ga. Mar. 31, 2023) (rejecting plaintiffs' request for "more discovery to uncover additional evidence in support of their remand motion . . . [given] the extensive discovery that was [already] taken during the original action").

common law and contractual indemnification and statutory contribution claims against the manufacturer.  The case did not involve a negligence claim at all, let alone a direct claim asserted by a plaintiff against a retailer.

### C.    Plaintiff Has No Intent to Prosecute His Claim Against Publix

Publix is also fraudulently joined because Plaintiff has no real intent to pursue his negligence claim against it.  *See In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) ("[J]oinder is fraudulent if there is . . . no real intention in good faith to prosecute the action against the defendant." (quotation marks and citation omitted)).  This basis for fraudulent joinder does not rest on the merits of the claim, *i.e.*, whether the plaintiff could theoretically recover against the non-diverse defendant.  Instead, under this alternative theory, courts will find fraudulent joinder "[w]here the plaintiff's collective litigation actions, viewed objectively, clearly demonstrate a lack of good faith intention to pursue a claim to judgment against a non-diverse defendant." *Faulk v. Husqvarna Consumer Outdoor Prods. N.A., Inc.*, 849 F. Supp. 2d 1327, 1331 (M.D. Ala. 2012); *In re Briscoe*, 448 F.3d at 219 (courts can "look[] beyond the allegations" to see whether a plaintiff's conduct is "consistent with an intention to actually proceed" against the non-diverse defendant (quotation marks and citation omitted)).  Several district courts in this Circuit have recognized this no-intent-to-prosecute theory. *See, e.g., Long*, 2003 WL 25548421, at *2 (finding fraudulent joinder "because [plaintiffs] do not 'inten[d]' to pursue a judgment" (citing *Triggs*, 154 F.3d at 1291)); *Faulk*, 849 F. Supp. 2d at 1331 ("[T]he Court also finds that remand is unwarranted because Plaintiff lacks a good faith intention to pursue his claims against [the non-diverse defendant].").  Although the Eleventh Circuit has yet to adopt this basis for fraudulent joinder, it has suggested that it would, stating in *Triggs* that the "plaintiff's motivation for joining a defendant is not important *as long as the plaintiff has the intent to pursue a judgment against the defendant*." *Triggs*, 154 F.3d at 1291 (emphasis added).

10

Here, Plaintiff has made no genuine effort to prosecute his claim against Publix.  Most critically, Plaintiff has not proffered any expert to testify as to Publix's negligence, a legal prerequisite to prevailing on his claim.  *See supra* pp. 7–10.  The failure to even ***attempt*** to supply viable expert testimony to support claims against Publix is stark evidence of Plaintiff's lack of intent to prosecute those claims to judgment.  *Cf. Davis v. Merck & Co.*, 357 F. Supp. 2d 974, 979 (E.D. Tex. 2005) (upholding removal and concluding that plaintiff's failure to file an expert report "leads to the conclusions that she never intended to pursue . . . her claims against [the non-diverse defendant]").

Nor has Plaintiff taken meaningful fact discovery of Publix relevant to his negligent storage and transport claim.  In determining intent, courts frequently look at the extent to which plaintiff has sought discovery as to the non-diverse defendant.[9]  Here, Plaintiff served a single set of interrogatories and document requests, which Publix answered by producing no documents and instead referring to materials produced in this MDL.

Acknowledging he did nothing in this case, Plaintiff argues that it was sufficient to rely on MDL discovery of Publix, *see* Mot. at 10, but this bald assertion lacks any explanation or support.  Critically, Plaintiff does not explain how the MDL discovery remedies his failure to adduce expert proof against Publix in this case.  For example, in a single sentence, Plaintiff asserts that "Publix

---

[9] *See, e.g.*, *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014 WL 2011597, at *3 (E.D. Pa. May 15, 2014) (finding plaintiffs had no intent to pursue judgment against non-diverse defendant where plaintiffs failed to "conduct sufficient discovery to establish that individual plaintiffs had used [the product] distributed by [the non-diverse defendant]"); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 257 F. Supp. 3d 717, 720–21 (E.D. Pa. 2017) (denying remand where none of the plaintiffs "propounded meaningful discovery on [non-diverse]" distributor); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 421 (E.D. Pa. 2002) (denying remand where "no depositions of any witnesses affiliated with [non-diverse] defendant [were] taken"); *Bennett v. Ford Motor Co.*, 2007 WL 4561281, at *3 (W.D. Ky. Dec. 21, 2007) (denying remand where "[t]he record reveals little attempt, if any, to develop a case against [the non-diverse defendant]").

produced a corporate witness, Kevin Routh, to testify on issues of topics of distribution and storage in the Zantac MDL case." Mot. at 15. However, Plaintiff did not attach Mr. Routh's deposition transcript or cite to any specific testimony, did not explain how the testimony is relevant to Plaintiff's claim, and did not explain how the testimony dispenses of the need to produce expert evidence against Publix.

To be clear, the MDL discovery that Plaintiff seeks to rely upon *failed* to establish a viable negligent storage and transport claim before this Court. In this MDL, the plaintiffs' leadership filed a master complaint, which among other things, asserted a negligent storage and transport claim against various retailer defendants. This Court dismissed that claim, expressing skepticism about whether plaintiffs could "plead in good faith that any Defendant had a *policy* to store ranitidine products at temperatures above those approved by the FDA" and noting that whether "*individual* stores negligently stored ranitidine at unsafe, heated temperatures . . . [is an] *individualized and fact-specific*" inquiry. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1234, 1256 (S.D. Fla. 2020) (last emphasis added). The MDL plaintiffs attempted to re-plead that claim, and after an opportunity for discovery, this Court dismissed the negligence claim again. Because "it is lawful for a room-temperature drug to be subject to elevated temperatures, within certain limitations," general allegations that a retailer failed to control the temperature of ranitidine shipments could not "plausibly suggest[] a Defendant violated a duty of care." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2021 WL 2685605, at *8 (S.D. Fla. June 30, 2021). Nor did the MDL plaintiffs plead any individualized facts, such as a claim that "one-off trucks or retail stores" improperly shipped or stored ranitidine. *Id*.

Here too, Plaintiff failed to develop any such individualized evidence. Plaintiff's one set of written discovery served on Publix, *see* Mot. at 14, did not seek information about the

"individual stores" where Decedent allegedly purchased ranitidine. For example, it did not ask for information about the individual stores' storage conditions or the conditions in trucks used to supply those stores. Plaintiff's failure to lift a finger in discovery to develop the negligent storage and transport claim beyond the failed MDL record strongly supports a finding that he had no real intent to prosecute his claim against Publix.[10]

Finally, Plaintiff's voluntary dismissal of the other, diverse retailers further evinces Plaintiff's lack of intent to prosecute a claim against Publix. Decedent claimed that she purchased Zantac from four different retailers: Publix, CVS, Walgreens, and Wal-Mart. *See supra* p. 3. Yet Plaintiff dismissed identical negligence claims against the three diverse retailers CVS, Walgreens, and Wal-Mart, *see supra* p. 3, leaving only non-diverse Publix. This underscores that Plaintiff has no real interest in obtaining a judgment against the retailers who sold ranitidine to Decedent, but maintained Publix as a defendant in the action only as a blatant attempt to defeat federal jurisdiction. There is no other explanation for Plaintiff's actions, and Plaintiff provides none.

**D.    The Removal Is Timely**

**1.    The One-Year Bar on Removals Does Not Apply**

The one-year bar on removals does not apply because Plaintiff "has acted in bad faith in order to prevent [] defendant[s] from removing the action." 28 U.S.C. § 1446(c)(1). Plaintiff maintained the pretense of a claim against Publix for more than a year to prevent removal. Only after the close of fact discovery (where Plaintiff took no case-specific discovery of Publix) and

---

[10] Plaintiff also points to Publix's filing of "answers to the Third and Fourth Amended Complaints," Publix's response to Removing Defendants' discovery, and Publix's attendance at various depositions as evidence that he pursued his claims against Publix. *See* Mot. at 13–15. That does not demonstrate ***Plaintiff's*** intent to prosecute his negligence claim against Publix; it shows ***Publix's*** necessary efforts to defend itself against Plaintiff's nominal claim. For the same reasons, the Removing Defendants' request for written discovery on Publix, *see* Mot. at 14 and [Dkt. 4-23], does not establish Plaintiff's intent to prosecute his negligence claim against Publix.

after the Removing Defendants completed the depositions of Plaintiff's experts (where the experts disclaimed having any opinion as to Publix) could the Removing Defendants prove fraudulent joinder.  This is exactly the situation the "bad faith" exception was meant to address.

To assess whether a plaintiff acted in bad faith, courts apply a two-step test.  ***First***, the court considers whether the plaintiff has "actively litigated against the removal-spoiling defendant . . . [*e.g.*,] taking discovery, negotiating settlement, seeking default judgments . . . . If the plaintiff did not actively litigate against the removal spoiler, then bad faith is established; if the plaintiff actively litigated against the removal spoiler, then good faith is rebuttably presumed." *Holland v. CSX Transp., Inc.*, 2021 WL 4448305, at *3 (S.D. W.Va. Sept. 28, 2021) (citing *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1263 (D.N.M. 2014)).

Here, the Court can easily presume bad faith based on Plaintiff's failure to prosecute his claim against Publix.  *See supra* pp. 11–13.  Plaintiff failed to submit any expert testimony whatsoever to support the claim, and failed to conduct any case-specific discovery.  The recent decision in the Roundup litigation is instructive.  *See* 11/8/2023 Order Denying Mot. to Remand, *In re Roundup Prods. Liab. Litig. (Mistich)*, MDL No. 2741 (N.D. Cal. Nov. 8, 2023) [Dkt. 1-5].  There, the plaintiffs served the non-diverse defendant "with requests for admissions, interrogatories, and requests for production," but when the defendant failed to respond, the plaintiffs—like Plaintiff here—"never meaningfully followed up." *Id.* at *2.  Nor did the plaintiffs attempt to depose the non-diverse defendant.  *Id.* at *3.  On these facts, the court found fraudulent joinder and declined to apply the one-year bar for removal.  *Id.*[11]

---

[11] *See also, e.g.*, *Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 779-80 (N.D. Ohio 2019) (finding bad faith where the plaintiff served voluminous discovery on the diverse defendant but only minimal discovery on the non-diverse defendant); *McNeal v. Found. Radiology Grp., P.C.*, 2022 WL 3010694, at *3 (E.D. Mich. July 29, 2022) (finding bad faith where "Plaintiff took little discovery from [the non-diverse defendant] and the discovery that he did take focused

**Second**, even if there is some active litigation against the non-diverse defendant, the defendant can still "rebut the good-faith presumption with direct evidence of the plaintiff's subjective bad faith." *Holland*, 2021 WL 4448305, at *3 (citing *Aguayo*, 59 F. Supp. 3d at 1263). The record here presents direct evidence of bad faith. Plaintiff voluntarily dismissed retailers CVS, Walgreens, and Wal-Mart, even though they were situated identically to Publix in this case, save for their citizenship. *See supra* p. 3. Leaving Publix as the sole diversity-destroying defendant under these circumstances is a red flag signaling bad faith. The "bad faith" exception to the one-year removal bar accordingly applies.

*Ingram v. Forbes Co.*, 2013 WL 1760202 (M.D. Fla. Apr. 24, 2013), does not support Plaintiff's untimeliness argument. Mot. at 8-9. In that case, the defendants argued that the store manager in a slip-and-fall case was fraudulently joined. *Ingram*, 2013 WL 1760202, at *3. However, the "manager was an employee of one of the Defendants and it was likely within Defendants' knowledge whether she had any personal participation in Plaintiff's alleged injury." *Id.* On those facts, where defendants could have ascertained removability earlier, "principles of equity favor[ed] remand." *Id.* That is a far cry from the facts here. Whether Plaintiff chose to develop fact or expert evidence to prosecute his claim is wholly outside the Removing Defendants' control. The Removing Defendants removed this case as soon as the record became clear that

---

almost exclusively on [another defendant's] conduct"); *Bennett*, 2007 WL 4561281, at *3 (the one-year bar on removal does not apply, because plaintiffs failed to "put forth any facts supporting the claim against the nondiverse defendant"); *Cousins v. Wyeth Pharm., Inc.*, 2008 WL 1883932, at *2 (N.D. Tex. Apr. 18, 2008) (equitably tolling the one-year deadline, because the plaintiff "ignored a statute requiring her to serve expert reports against the nondiverse defendants"); *In re Propulsid Prods. Liab. Litig.*, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007) (refusing to apply the one-year bar, because plaintiff had "served no discovery on [the non-diverse defendants], none of their depositions were ever taken, and the Plaintiff never identified any experts to offer opinions again[st] them").

Plaintiff could not possibly meet his burden of proof against Publix, and could not have removed this case any earlier.

        **2.**        **The Removal Was Timely Filed Within 30 Days of Plaintiff's Experts' Depositions**

The Removing Defendants timely removed this action "within thirty days after receipt . . . of a copy of an . . . other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The last of Plaintiff's causation experts, Dr. Kumar, was deposed on December 13, 2023. At that deposition, Dr. Kumar was asked if he had any opinion as to Publix, and he replied "[n]one." *See supra* p. 5. The case became removable at that point, and the Removing Defendants removed the case within thirty (30) days of that deposition.

Plaintiff argues that the removal was two weeks too late, because the Removing Defendants should have known at the time of expert disclosures (on November 1, 2023) that no opinions were being offered as to Publix. Mot. at 15. But the Removing Defendants could not establish there was "no possibility" of an opinion implicating Publix—the level of certainty needed for removal—until expert depositions were taken. Unlike in federal court, Florida state courts do not strictly hold experts to the four corners of their reports but permit supplementation with deposition testimony. For example, in *Klose v. Coastal Emergency Services of Fort Lauderdale, Inc.*, the trial court excluded plaintiff's expert from testifying as to the alleged breach of care during a bronchoscopy procedure, which was not disclosed prior to the expert's deposition. 673 So. 2d 81, 83 (Fla. 4th DCA 1996). The Fourth District Court of Appeal ***reversed*** after a full trial because

the expert "was nevertheless deposed on his opinion of the breach of the standard of care during the bronchoscopy." *Id.*[12]

In fact, to avoid exactly this sort of supplementation-by-testimony, the Removing Defendants proposed to Plaintiff in April 2023 that each side serve federal-style expert reports that contain "a ***complete*** statement of all opinions the witness will express and the basis and reasons for them; [and] the facts or data considered by the witness in forming them," and that to the extent disputes about their adequacy arise, "the body of case law under FRCP 26(a)(2)(B) will apply." 4/12/2023 e-mail from K. Marshall to S. Resnick (Ex. 3) (emphasis added).  Plaintiff ***rejected*** the proposal.  *See* 4/13/2023 e-mail from S. Resnick to K. Marshall (Ex 3).  Plaintiff's own unwillingness to agree to the application of federal law to the adequacy of expert reports thus made it impossible for the Removing Defendants to know the full scope of Plaintiff's expert opinions until their depositions concluded in December 2023.  Plaintiff's disclosure of experts, accordingly, did not trigger removal.

### E.   The Removing Defendants' Prior Removal Does Not Preclude a Second Removal

Plaintiff is wrong that the Removing Defendants' prior removal—and agreement to remand—has *res judicata* effect and bars a second removal.  Mot. at 4–6.  Courts have "recognize[d] a defendant's right to seek subsequent removals after remand" as long as the subsequent removal is not based "*on the same ground*" as the original removal and remand.  *S.W.S.*

---

[12] *See also, e.g.*, *Ganey v. Goodings Million Dollar Midway, Inc.*, 360 So. 2d 62, 63 (Fla. 1st DCA 1978) (rejecting defendant's argument that it was "surprised by the [expert's] trial testimony of permanent disability because at no time during pretrial discovery did the [expert] indicate or imply that [plaintiff] suffered a permanent disability"; plaintiff "alleged in her complaint that her injuries were permanent" and defendant therefore should have asked "during the deposition . . . if [plaintiff] suffered a permanent disability"); *Wax v. Tenet Health Sys. Hosps., Inc.*, 955 So. 2d 1, 4 (Fla. 1st DCA 2006) ("We do not think that these designations of the substance of testimony in pretrial notices of experts should be subjected to literalistic, mechanical or crabbed readings.").

*Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996) (citation omitted; emphasis in original).  This prohibition on removals based on the same ground "does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the ***pleading or event that made the case removable***."  *Watson v. Carnival Corp.*, 436 F. App'x 954, 956 (11th Cir. 2011) (emphasis added) (citing *S.W.S. Erectors*, 72 F.3d at 492).

Here, this second removal is unquestionably based on different theories, events and facts.  The first removal was based on the argument that Publix was fraudulently joined because, on the face of the pleadings, the strict liability claim asserted against Publix was preempted.  *See supra* p. 2.  This removal—as Plaintiff acknowledges, *see* Mot. at 5—has nothing to do with preemption.  Nor is it based just on the face of the Complaint.  It is instead based on Plaintiff's complete failure to adduce evidence to support a negligent storage and transport claim against Publix after full opportunity for discovery.  This removal was therefore triggered by a different "pleading or event," namely, the depositions of Plaintiff's experts who disclaimed having any opinion as to Publix.  The first removal, accordingly, does not preclude federal jurisdiction now.

The cases Plaintiff cite are not to the contrary.  In *Crum v. Hankook Manufacturing Co.*, defendants removed the case based on the retailer's denial (in responses to requests for admissions) that it sold or serviced the defective product.  2020 WL 8465442, at *5 (S.D. Ala. Dec. 28, 2020).  Plaintiffs moved to remand and, among other things, submitted an invoice to rebut the retailer's denial.  *Id.*  When defendants removed the case again based on the retailer's denial (this time, in interrogatory responses) that it sold or serviced the product, the court concluded that the second removal was barred:  "[The retailer's] interrogatory responses . . . do not provide any new material facts, instead substantially repeating what they already said in the requests-for-admission

responses considered in the [first removal]." *Id.*  By contrast, here, the removals are based on completely different legal theories and facts.

Plaintiff's citation to *S.W.S Erectors v. Infax, Inc.*, 72 F.3d 489, 491 (5th Cir. 1996), **supports** removal.  In that case, the Fifth Circuit concluded that the trial court had properly denied remand, because the second removal "use[d] newly acquired facts from [plaintiff's] deposition transcript.  The deposition constitute[d] a new paper or event that changed the facts regarding the removableness of the case." *Id.* at 494.[13]  So too here.  The depositions of Plaintiff's experts— who all disclaimed having any opinion as to Publix—supplied the new facts to make this case removable.

### F.    Attorneys' Fees and Costs Are Not Warranted Because the Removing Defendants Had an Objectively Reasonable Basis to Remove

There is no basis to award fees and costs here.  As explained above, the Removing Defendants' jurisdictional arguments are meritorious.  Even if the Court disagrees, they are at bare minimum "objectively reasonable." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see supra* pp. 6–15 (discussing case law to support a finding that Publix is fraudulently joined).  The Court should accordingly deny the request for fees and costs.

## IV.    CONCLUSION

The Court should deny Plaintiff's Motion to Remand and request for fees and costs.

---

[13] *See also, e.g.*, *Dominguez v. Peek*, 2010 WL 1658550, at *4 (S.D. Ala. Apr. 16, 2010), *rep. & recommendation adopted*, 2010 WL 1851617 (May 5, 2010) ("[W]hile this case was previously removed on the same theory, diversity jurisdiction, the grounds are different . . . [The removals are] based on different facts."); *Sudduth v. Equitable Life Assurance Soc'y*, 2007 WL 2460758, at *4 (S.D. Ala. Aug. 27, 2007) ("[S]ection 1446(b) allows [a defendant] to file successive removals based on [a] different factual basis . . . . This is precisely the situation here." (quotation marks and citation omitted)); *Green v. R.J. Reynolds Tobacco Co.*, 2000 WL 33993335, at *8 (S.D. Tex. Aug. 17, 2000), *aff'd*, 274 F.3d 263 (5th Cir. 2001) ("This court finds that a second, subsequent, removal petition is permissible under the circumstances arising in the case at bar.").

Respectfully submitted,

*/s/ Anand Agneshwar*
Anand Agneshwar
**ARNOLD & PORTER**
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000; Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com
*Attorney for Defendants Sanofi US Services*
*Inc., Sanofi-Aventis U.S. LLC,*

*/s/  Andrew T. Bayman*
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-3583; Fax: (404) 572-5100
abayman@kslaw.com
*Attorney for Defendant Boehringer*
*Ingelheim Pharmaceuticals, Inc.*

*/s/  Mark Cheffo*
Mark Cheffo
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel: (212) 689-3500; Fax: (212) 689-3590
mark.cheffo@dechert.com
*Attorney for GlaxoSmithKline LLC*

*/s/   Joseph G. Petrosinelli*
Joseph G. Petrosinelli
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202)-434-5000; Fax: (202)-434-5029
jpetrosinelli@wc.com
*Attorney for Defendant Pfizer Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of February, 2024, the foregoing was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ Joanne M. O'Connor*

Joanne M. O'Connor

JONES FOSTER, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
Tel: (561) 659-3000
Fax: (561) 650-5300
JOConnor@jonesfoster.com

P:\DOCS\30916\00001\PLD\29F5251.DOCX