**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | ) MDL 2924, 20-md-2924 ) ) JUDGE ROBIN L. ROSENBERG ) MAGISTRATE JUDGE BRUCE E. REINHART |

THIS DOCUMENT RELATES TO:

*Valdes v. Boehringer Ingelheim Pharmaceuticals, Inc., et al., No. 9:23-cv-81560*

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND
PURSUANT TO 28 U.S.C. § 1447**

*Filed February 16, 2024*

Plaintiff Alexander Valdes hereby files this Reply to Removing Defendants' Opposition to Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447.

Removing Defendants' Opposition does not present any new information not already contained in their Notice of Removal, and they fail to demonstrate that (1) Florida law *requires* Plaintiff to present expert testimony in order to hold Publix liable, and (2) that they have met the high standard to show that Plaintiff has acted in bad faith in this litigation sufficient for them to skirt the one year removal deadline in 28 U.S.C. § 1446. On both points, Removing Defendants downplay the discovery agreement among the parties, which allows Plaintiff to use the corporate and expert discovery which have occurred in the MDL and other state jurisdictions. For purposes of determining fraudulent joinder and the limited bad faith exception to § 1446, Plaintiff has sufficiently stated a claim against Publix, who remained an active participant in this case through the time of removal. Removing Defendants are seeking this Court to substitute its judgment of the facts of the case for the jury.

## I. Florida Law Does Not Require Plaintiff to Produce Case-Specific Expert Testimony in Order to Avoid a Claim of Fraudulent Joinder for Removal Purposes.

Removing Defendants argue that because Plaintiff's medical causation experts have not offered any testimony related to Publix's transportation and storage conditions, Publix has been fraudulently joined. Def. Opp., p. 5. The sole case they cite for this, *McCasland v. Pro Guard Coatings, Inc.,* 799 F. App'x 731, 733 (11th Cir. 2020), is a toxic tort case where the court affirmed summary judgment because plaintiff failed to offer expert testimony to establish general and specific *medical causation*—i.e., expert evidence that *the product* could and did cause his medical condition. Plaintiff in this case has satisfied this requirement through the testimony of Drs. Kumar, Bird, and Goldberg.

2

Further, Removing Defendants cite to *Webster v. Martin Mem'l Med. Ctr., Inc.*, 2009 WL 7770772 (Fla. Cir. Ct. May 14, 2009) for the proposition that summary judgment was granted when plaintiff's own experts' testimony shows they cannot prove the causation element of their case. Def. Opp., p. 5. The judge in this circuit court case, which involved claims of medical malpractice, did grant summary judgment in favor of the hospital. However, what is not mentioned in the Removing Defendants' Opposition is that this case was appealed to the 4th District Court of Appeal, which summarily reversed the trial court in a *per curiam* opinion. *Webster v. Martin Mem'l Med. Ctr., Inc.*, 57 So. 3d 896 (Fla. 4th DCA 2011). The appellate court found that "the trial court misplaced the burden and that the defendant hospital failed to establish that there was no issue of fact regarding causation." *Id.* at 897. Furthermore, the "trial court relied on two cases which do not control here, as both involve appeals following jury trials, where no evidence was presented that causally linked the negligence with damages." *Id.* at 898. Thus, to the extent Removing Defendants rely on this case to support their argument, such reliance is misplaced.[1]

An Illinois court considered a similar argument as to whether Walgreens and these Removing Defendants were entitled to summary judgment because plaintiff had not put forth specific experts as to Walgreens. *Bayer v. Boehringer Ingelheim, et al.*, 21-L-915, Third Judicial Circuit, Madison County, Illinois. The plaintiff successfully argued that no expert testimony was required in order for a jury to conclude that negligent conduct occurred with regard to the transportation and storage of Zantac (see Exhibit 1, relevant excerpts from the August 9, 2022 Hearing Transcript in the matter *Bayer v. Boehringer Ingelheim, et al.*, 21 L 915, Third Judicial

---

[1] The remainder of Removing Defendants' cases, which are relegated to a footnote, only stand for the proposition that plaintiffs are required to introduce expert testimony on medical causation, which even Removing Defendants admit that Plaintiff has done through the reports and testimony of Drs. Kumar, Bird, and Goldberg.

Circuit, Madison County, Il. at p. 31-32; 81). The court denied the motions for summary judgment on the negligent transportation and storage claims. The following are relevant excerpts from the transcript (Exhibit 1):

*On the need for experts on the subject of transportation and storage issues generally:*

> Tr. page 27: COURT: "In my mind, in that case you don't need an expert to come in and say, No. 1, they didn't follow the instructions, and No. 2, the fact that's the regular industry standard of care for a general negligence claim. Are you telling me that it's different only because it's the pharmaceutical industry?"
>
> Tr. page 29: COURT: "Wasn't there testimony or some evidence that indicated—I believe it's for Walgreens. . . that it wasn't stored in a properly regulated place?"
>
> Tr. page 43: COURT: "a layperson can understand the fact that this was not stored between 67 -- 68 and 77 degrees. So tell me why. . . that's not enough to present to a jury."
>
> Tr. page 48: COURT: "At this point I'm going to deny the motion for summary judgment just based on some of the issues that I've identified because I believe plaintiff has met their burden."

*Regarding retailer Walgreen's Motion for Summary Judgment on the negligent transportation and storage claim, specifically:*

> Tr. page 72: WALGREENS: "Plaintiffs in their opposition did reference this USP which is a general guideline, but they've had no expert to come out and say that this is a binding standard of care that's owed by retailers….The problem is this. They don't have any evidence for anything that happened with Walgreens. They need to have an expert that comes in and one says what the duty of care standards -- the industry standard was."
>
> Tr. page 73-74: WALGREENS: "And plaintiffs – they haven't disclosed a single expert."
>
> Tr. page 79: WALGREENS: "Plaintiffs haven't given any experts to say that retailers should actually follow the individual instructions on the individual packages of the drugs that they carry…"
>
> Tr. p. 77: PLAINTIFFS: "[Walgreens] had a duty to follow the label of the drug and make sure at all times the drug was stored,

>transported between 68 and 77 degrees, and we don't think that they can establish that they did that. . . we think there's at least some evidence to go to the jury and let them decide whether there is enough evidence against Walgreens."
>
>Tr. page 81: THE COURT: "Thank you, Counsel. Okay. So for the reasons that I denied the motion as to I believe the brand defendants, I'm going to deny this motion [as to Walgreens] as well. I do believe plaintiffs have met the burden to show that there was a duty to deliver safe products to the consumers."

Unlike the factual circumstances in *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), cited by Removing Defendants, here, Removing Defendants did not attach affidavits or other evidence to their Notice of Removal which demonstrated fraudulent joinder. To the extent that they pointed to the expert depositions to establish a lack of expert testimony on the issue of Publix's negligence, this does not establish fraudulent joinder, as there is no legal requirement for such testimony. Removing Defendants now appear to be suggesting that Plaintiffs should have put forth other evidence to prove their good faith intention to proceed against Publix, apparently forgetting that it is Removing Defendant's burden to demonstrate that the federal court has jurisdiction.

For example, on page 9 of their Opposition, Removing Defendants argued that Plaintiff should have presented proof, in the Motion to Remand, that Publix had actual or constructive knowledge that Zantac needed to be shipped and stored under certain conditions. Putting aside the fact that the recommended storage conditions are printed on the product label, under the principles set forth in *Legg,* this defense argument would only prevail if <u>Removing Defendants</u> had attached affidavits from Publix agents or employees, or deposition testimony, indicating that Publix did <u>not</u> have actual or constructive knowledge that Zantac needed to be shipped and stored under certain circumstances. Then, under *Legg*, the Court would be permitted to look at that evidence, and any counter evidence presented by Plaintiff, in deciding the remand. But that

5

is not what occurred here. Removing Defendants put forth no such evidence for Plaintiff to counter. In the absence of such evidence, "the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal." *Legg,* 426 F.3d at 1322. Removing Defendants acknowledge that Plaintiff has <u>pled</u> a viable state court negligence claim against Publix (Def. Opp., p. 5) and indeed, Publix has answered the complaint and participated in the litigation. Thus, even if notice of removal had been timely filed (and it was not), the holding in *Legg* does not require Plaintiff to put forth all of his evidence regarding Publix's liability simply because Removing Defendants assert their generalized opinion that discovery produced by Publix in the MDL will be insufficient to succeed on a claim.

In this case, Plaintiff relies on the case-specific documentary and testamentary evidence of Plaintiff, his fact witnesses, his mother's (the Decedent's) treating physicians, and his medical causation experts to show that (1) his mother, Teresa Valdes, purchased defective Zantac from Publix which was made by one or more of the Removing Defendants, (2) this Zantac was contaminated with NDMA, (3) her ingestion of Zantac caused her stomach cancer, (4) she died as a result, and (5) he has suffered damages as a result. Furthermore, Plaintiff will rely on the general documentary and testamentary evidence from the MDL litigation, including discovery answered by Publix and the deposition of Publix corporate representative Kevin Routh, who testified on issues of Publix's transportation and storage of Zantac. Pl. Mot. to Remand., p. 10. Therefore, Removing Defendants have not shown, and cannot show, that "there is no possibility that plaintiff can establish a cause of action against" Publix. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

### II. Because Removing Defendants Cannot Demonstrate that Publix was Fraudulently Joined and that Plaintiff has Acted in Bad Faith to Avoid Removal, their Removal is Time Barred.

Removing Defendants seek federal court jurisdiction for the second time in this case on the same theory of the fraudulent joinder of Publix. However, because they cannot show Publix was fraudulently joined to defeat removal, and that Plaintiff acted in bad faith to prevent removal, their removal was time-barred by operation of 28 U.S.C. § 1446(b)(3) and (c)(1). The timeliness of their removal falls entirely on the finding of fraudulent joinder and bad faith. Because they have not met the burden on that issue, there is no basis for federal jurisdiction, and § 1446 operates as a bar to their removal.

Removing Defendants argue that they could not establish that there was no possibility of Plaintiff succeeding on his claim against Publix until the completion of Plaintiff's expert depositions, which fell after the one-year deadline imposed by §1446(c)(1). Def. Opp., pp. 13-14. However, Removing Defendants were very aware of two things: (1) they were looking to make this fraudulent joinder argument, which they had already attempted once in this litigation, and (2) the one-year deadline for removal under § 1446. Despite this knowledge, Removing Defendants agreed to a Scheduling Order and served Notices of Depositions setting these very depositions after the one-year deadline. *See* Agreed Amended Scheduling Order dated 01/25/2023, attached as Exhibit 2; Notice of Deposition for Dr. Kumar dated 11/27/2023, attached hereto as Exhibit 3; Notice of Deposition for Dr. Bird dated 12/4/2023, attached hereto as Exhibit 4; and Notice of Deposition for Dr. Goldberg dated 11/22/2023, attached hereto as Exhibit 5. Therefore, if Removing Defendants were concerned about their ability to argue that Plaintiff fraudulently joined Publix to destroy diversity and avoid removal, they willingly agreed to the timing of these depositions past their deadline to remove.

Therefore, because Removing Defendants have failed to meet their burden to demonstrate both that (1) Publix was fraudulently joined, and (2) that Plaintiff acted in bad faith to prevent the discovery of jurisdictional facts that would allow removal, their second attempt at removal is untimely. For the reasons set forth herein and in Plaintiff's Motion to Remand and Memorandum of Law in Support, this Court should grant remand.

Respectfully submitted,

**PARAFINCZUK WOLF, P.A.**

*/s/ Justin Parafinczuk*
JUSTIN PARAFINCZUK, ESQ.
Board Certified Civil Trial Attorney
Fla. Bar No. 39898
JParafinczuk@Parawolf.com
JOHN A. BRUEGGER, ESQ.
Fla. Bar No. (PHV) 1037379
JBruegger@Parawolf.com
5550 Glades Road Suite 500
Boca Raton, FL 33431
Telephone (954) 462-6700
Facsimile (954) 462-6567

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of February, 2024, the foregoing was filed electronically through the Court's CM/ECF system, which will serve copies to all counsel of record.

*/s/ Justin Parafinczuk*
JUSTIN PARAFINCZUK