# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL No. 2924<br>20-MD-2924<br><br>**JUDGE ROBIN L. ROSENBERG**<br>**MAGISTRATE JUDGE BRUCE E. REINHART** |

_____/

**THIS DOCUMENT RELATES TO:**

| | |
|---|---|
| Campion v. GlaxoSmithKline LLC, et al., | No. 24-cv-80265 (S.D. Fla.). |
| Cusick v. GlaxoSmithKline LLC, et al., | No. 24-cv-80271 (S.D. Fla.). |
| Rascento v. GlaxoSmithKline LLC, et al., | No. 24-cv-80264 (S.D. Fla.). |
| Rounds v. GlaxoSmithKline LLC, et al., | No. 24-cv-80266 (S.D. Fla.). |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

    I.    The State Claims of Plaintiffs Campion, Cusick, Rounds Cannot Be Dismissed by the Terms of an Agreement Which Required Their Consent and to Which They Did Not Agree ............................................................................................................ 2

    II.   Plaintiff Rascento Was Allowed to Split His Claims Because Defendants Acquiesced by Failing to Object ....................................................................................... 7

CONCLUSION ................................................................................................................................ 9

CERTIFICATE OF SERVICE ..................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Davis v. Sun Oil Co.*,
  148 F.3d 606 (6th Cir. 1998) ................................................................................................... 7

*Dixie Operating Co. v. Exxon Co., U.S.A.*,
  493 So. 2d 61 (Fla. Dist. Ct. App. 1986) ................................................................................. 3

*Hayes v. National Serv. Indus.*,
  196 F.3d 1252 (11th Cir. 1999) ............................................................................................... 3

*PCL Constr. Servs. v. United States*,
  (2008) 84 Fed.Cl. 408 .............................................................................................................. 8

*Philadelphia v. Schofield*,
  375 Pa. 554, 101 A.2d 625 (1954) ........................................................................................... 3

*RA Medical Sys., Inc. v. PhotoMedex, Inc.*,
  373 Fed. Appx., 784 (9th Cir. 2010) ........................................................................................ 7

*Reutzel v. Douglas*,
  870 A.2d 787 (Pa. 2005) .......................................................................................................... 3

*Super Van, Inc. v. City of San Antonio*,
  92 F.3d 366 (5th Cir. 1996) ..................................................................................................... 7

**Other Authorities**

*Nagyiski v. Smick,*
  No. U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, 2009 WL 551159 (Del. Com. Pl. Dec. 9, 2009) ....................................... 3

## INTRODUCTION

For *Campion, Cusick,* and *Rounds,* Defendants claim that ***even without consent***, an attorney can bind these Plaintiffs to PTO # 72 because attorneys can make litigation management decisions.  While in some cases that may be true, certification under PTO # 72, however, was not merely litigation management—certification expressly *released claims*, and attorneys cannot release claims without consent.  The record here clearly shows that the certifying attorneys did *not* have consent to release these Plaintiffs' claims.  The parties agree about the terms of the order and what certification means.  The issue is a substantive issue about whether these Plaintiffs can be bound to an agreement they never consented to – an agreement that, if applicable, terminates their case.  And, under even the most generous reading of the law, before a plaintiff could be bound by the estoppel provisions of PTO # 72, the plaintiff must have consented.  Here, they did not.

Defendants, then, are asking this Court to oversee an investigation into these certifications, allow discovery on various attorneys in violation of the attorney-client communication privilege and attorney work product doctrine, and obtain testimony potentially pitting certifying attorneys against their former clients.  Assuming such an inquisition were even tenable, there is no basis for this Court to oversee it.  Put simply, this Court does not have subject matter jurisdiction to determine whether the cases are bound by the terms of certification; the proper vehicle for the Defendants to seek that order would be for them to seek dismissal in the Delaware state court.  This is because the issues involved will require merit-based adjudications that can only be reached by a Court with subject matter jurisdiction, which this Court does not have.  The cases present a number of issues.  As noted in the Opposition, the first is whether these cases were properly certified.  Opp. At 5-6.  The analysis, however, does not end there,

1

because the adjudicating court must also determine whether these Plaintiffs were also properly filed in Delaware, and sort through which of the two dual-filings should now bind the Plaintiffs. For Plaintiffs Campion, Rounds, and Cusick, the Court must decide based on the First-To-File rule, the issues of contract law raised by the terms of certification, and the rules of professional responsibility, among other issues which will require discovery and adjudication by a *factfinder*. The best thing to do is for the Court to remand the cases, and if Defendants believe they are entitled to discovery, raise that with the Court that has jurisdiction.

Finally, regarding *Rascento*, the Defendants claim the Plaintiff improperly claim split. And, while that might be true, Defendants consented to it by failing to object when the claims were filed. The law is clear. A Defendant cannot wait to see how a case unfolds and, only after receiving a favorable outcome in one proceeding, raise concerns about claim splitting in the other. Thus, Rascento may proceed on his live claims in Delaware court, and the case should be remanded.

## ARGUMENT

**I. The State Claims of Plaintiffs Campion, Cusick, Rounds Cannot Be Dismissed by the Terms of an Agreement Which Required Their Consent and to Which They Did Not Agree**

These Plaintiffs declare, under oath, that they did not consent to be certified federal participants. Defendants do not dispute their declarations. Instead, Defendants claim it does not matter. Because some other attorneys claimed to represent these Plaintiffs and falsely represented to this Court that these Plaintiffs consented to be certified federal participants (even with attendant estoppel effects), according to Defendants, the question ends—Plaintiffs lose their entire case with prejudice. In the first instance they lose by having the diversity destroying Defendants dismissed as fraudulently joined, and in the second instance when they are forced to

2

be subject to this Court's *Daubert* and summary judgment rulings, which came out after each Plaintiff filed their case in Delaware.

This is not the law. It is well established that an attorney cannot release claims without a client's consent. *See* Mot. at 12 (citing *Hayes v. National Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999); *Reutzel v. Douglas*, 870 A.2d 787, 789–90 (Pa. 2005); *Dixie Operating Co. v. Exxon Co., U.S.A.*, 493 So. 2d 61, 63 (Fla. Dist. Ct. App. 1986); *Nagyiski v. Smick*, No. U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, 2009 WL 551159, at *2 (Del. Com. Pl. Dec. 9, 2009)); *see also Philadelphia v. Schofield*, 375 Pa. 554, 101 A.2d 625 (1954) ("While an attorney has implied authority to make agreements and stipulations with respect to purely procedural matters during the regular course of litigation, he has no such authority to enter into agreements which involve a waiver of any of his client's substantial rights").

PTO # 72 *expressly releases claims*; it is not just a case management order. PTO # 72 also makes clear: "[N]one of the Anticipated Defendants may have the same citizenship as the Certified Federal Participant … Certified Federal Participants will be estopped from seeking to alter the Anticipated Defendants and will be estopped from opposing the dismissal of a non-Anticipated Defendant from any proceeding in any tribunal." PTO # 72 at ¶ 5. Indeed, Defendants attempt to reframe PTO # 72 as a case management decision about "where to file a case" is belied by their insistence that the case management mandates a dismissal, with prejudice, of Plaintiffs claims against any diversity destroying defendant. Opp. at 1, 8. Defendants cannot have it both ways. If certification under PTO # 72 means a client has released their claims against certain defendants (as the plain language states) and as Defendants argue, then the certification was not merely a procedural decision, but one that *required* client consent. However, if PTO # 72 did not release any claims and created no estoppel (a difficult argument

3

considering its plain language), then it cannot serve as a basis to claim the diversity destroying defendants are fraudulently joined or that their brazen violation of the forum defendant bar was permissible.

Defendants argue that this Court should ignore the undisputed evidence that these Plaintiffs did not consent to be part of the registry because "[a]ny other result would threaten to upend the entire Registry process." Opp. at 11. In other words, protecting the sanctity of a pretrial management order trumps the individual constitutional rights of cancer victims. This is absurd. When faced with this record, which clearly indicates that Plaintiffs did not consent to be here, the solution should not be to run roughshod over people's due process rights. To be clear, each of these Plaintiffs filed their case in Delaware *before* any *Daubert* ruling. They were not playing a "wait and see" game. Rather, they chose to leave this forum's Registry without filing a lawsuit here, filed their action in Delaware state court, and have been pursuing their claims in Delaware with the very attorneys leading that litigation. However, unbeknownst to them, some other law firm checked a box without their consent and, suddenly, their fundamental constitutional right to dictate the fate of their cases evaporates because, Defendants claim the Registry would otherwise be threatened. To be clear, of the 70,000+ claims in Delaware, this certification issue applies to only a couple hundred—the handful of cases where, in the throws of law firms with massive dockets, mistakes were made. This Court should not value form over substance; not when we are talking about the very real possibility of obtaining financial recovery.[1]

Here, the decision at issue was whether to certify the case for federal participation, which

---

[1] Indeed, Sanofi has already settled all claims against it in every jurisdiction other than Delaware and this Court. The other brand manufacturers, GSK, Pfizer, and Boehringer Ingelheim, have also settled multiple trial cases in California state court.

4

would bind the plaintiffs to the authority of this Court, bar the Plaintiffs from filing in any other court, dismiss any already pending claims elsewhere, and give the Plaintiff leadership authority essentially constituting Joint Counsel status. Every attorney should have communicated these strictures to their client prior to certifying the case. The entire course of the litigation up to that point would have indicated that consent was required – and that communication, at a minimum, was necessary. When discovery is produced without client certification, that discovery is unverified and defendants would rightly object. Yet, Defendants now seek to bind these Plaintiffs to far more consequential actions of their counsel without verification.

Contrary to the Defendant's assertions, the CPFs attached to their Opposition only provide greater reason to doubt that Plaintiffs Campion, Cusick, or Rounds consented to becoming Certified Federal Participants. Opp., Ex. A, B, C. The CPF allegedly submitted on David Rounds' behalf is electronically signed and was submitted months prior to his supposed Certification. Opp., Ex. B. The CPF allegedly submitted by Gaylon Cusick is electronically signed by him – not his personal representative – and dated November 11, 2020, over a year after Mr. Cusick passed away. Opp., Ex. C. Mr. Cusick apparently later submitted two supplements to his CPF, though neither supplement has an attached certification page bearing his signature (which makes sense considering he was dead). *Id.* The Plaintiffs do not have access to Ms. Campion's CPF, and the Defense has not provided it. It seems unlikely that form would provide evidence that Ms. Campion consented to certification, based on the two supplements the Defendants provided, both of which were signed more than five years after her death, by "Henri Swanson," who apparently works as a paralegal at Romanucci & Blandin.[2] Opp., Ex. A.

Ultimately, whether the authority to certify resides with the client or counsel is

---

[2] https://www.linkedin.com/in/henri-swanson-3b1212117.

immaterial to the pending Motion to Remand, because this Court would not have authority to make that determination.  Defendants ask this Court to hold hearings and conduct discovery to, presumably, investigate whether consent was truly given and to force the law firms that did the certifications to be subject to cross examination under oath.[3]  In other words, they want to conduct discovery on the most privileged of matters and force an attorney to testify against their client.  Then, if Defendants can uncover some smoking gun during discovery—speculation at best—what becomes of it?  Is this Court going to be asked to make a credibility determination about each Plaintiff's consent and, then, make a finding of fact—a finding that will dictate a Plaintiff's right to bring a claim?  In the absence of jurisdiction, this Court does not have authority to do that.  Even if it did, due process would require that this be adjudicated by a fact finder, not a judge.

It is more prudent to remand this case to a court that has jurisdiction and let that court decide what, if any, fact discovery is appropriate on the attorney-client relationship and attorney work product doctrine and how the merits would be adjudicated.  Then, if Defendants are able to obtain complete diversity at some point, removal might make sense, if it is possible.  However, in the face of the complex and nuanced factual issues that would need to be untangled, it is improper to have this Court retain jurisdiction.

It is also worth pointing out that in mass tort litigations, the Defendants often have broad access to the list of claims and claimants, while Plaintiffs' counsel often have no way of detecting duplicates between their groups of clients.  Here, because these Plaintiffs were never registered by the undersigned counsel, after they were filed in Delaware in September 2022, the

---

[3] The Court has authority to investigate improper certifications.  But, such an investigation does not need to be done in the context of a removed case that this Court otherwise lacks jurisdiction over.  It would be done pursuant to this Court's authority to manage the claims before it.

Defendants would have immediately known that there was a duplicate claim. However, instead of raising this issue at that time, they waited until this Court's *Daubert* ruling to bring it to Plaintiffs' attention. This wait and see approach should not be rewarded.

**II. Plaintiff Rascento Was Allowed to Split His Claims Because Defendants Acquiesced by Failing to Object**

The Defendants claim that Plaintiff Rascento was barred from splitting his claims. Opp. at 2. However, Plaintiff Rascento's intention to file his cancer claims separately was clear, and the Defense acquiesced to proceeding on his state claim by failing to object until the federal claim had been dismissed.

Claim splitting is not allowed "except where the parties have agreed in terms or in effect that the Plaintiff may split his claim, or the defendant has acquiesced therein." *Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th Cir. 1998) (citations omitted); see *also RA Medical Sys., Inc. v. PhotoMedex, Inc.*, 373 Fed. Appx., 784, 787 (9th Cir. 2010) ("[W]here a defendant acquiesces in the split, the rule [against claim splitting] should be inapplicable."); *Super Van, Inc. v. City of San Antonio*, 92 F.3d 366, 371 (5th Cir. 1996) ("[T]he Restatement recognizes that a second action may be brought by a plaintiff on the same cause of action if the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein.") (citations omitted). Acquiescence occurs where the Defendant has failed to object to the claim being split:

> Claim splitting is allowed in cases in which a defendant has acquiesced therein. Regarding what could qualify as acquiescence on the part of a defendant, where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

*PCL Constr. Servs. v. United States* (2008) 84 Fed.Cl. 408. "The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence to the splitting of the claim." Rest. (Second) of Judgements § 26, cmt. A. at 235.

  Here, Defendants did not object to claim splitting until the case was removed on February 16, 2024, nearly two years after the case had been certified in federal court and then filed in Delaware state court, and more than a year since claims in the federal MDL were closed. The reason that Defendants can implicitly consent to claim splitting is that Defendants could otherwise opportunistically claim they had never consented to claim splitting. Courts cannot allow Defendants to only allow claim splitting when it suits them.

  The Defense claims that attorney Trammell failed to make clear any intention to split Rascento's claims, pursuing only the designated cancer claim at the MDL. Opp. at 13. The Defense points to Mr. Rascento's multi-plaintiff complaint, which they protest fails to make clear Mr. Rascento's intention to drop his non-designated cancer claim. *Id.* This is because *unfiled* Plaintiffs, who did not have complaints to amend, were instructed by PTO # 72 to amend their Claimant Profile Forms instead. PTO # 72 at ¶ 12. Mr. Rascento did not file in the federal court until November 15, 2022, and so his case was unfiled for ten months after the publishing of PTO # 72. *Lescord v. GlaxoSmithKline LLC, et al.,* No. N22C-11-114 ZAN.

  That Delaware multi-plaintiff complaint did not obscure the type of cancer that was the basis of Mr. Rascento's claim. *Lescord* Complaint. Neither he nor the dozens of other plaintiffs listed on the complaint listed their cancers in the first place. *Id.* It was unnecessary because the Defendants already had access to that information via the Plaintiffs' CPFs.

  Of course, Mr. Rascento would have amended his CPF per order 72, but there was no need – neither the CPF nor the supplement he submitted to the Federal MDL ever mentions his

prostate cancer, the injury he is pursuing in Delaware.  Opp., Ex. D.  There was no claim to drop. The defense could not have been blindsided by his decision to pursue his prostate cancer elsewhere because they had not yet even learned that he had a prostate cancer claim.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Court grant this Motion and enter an order remanding each case back to Delaware state court.

Dated: April 30, 2024                               Respectfully submitted,

/s/ R. Brent Wisner                                 /s/ Jennifer A. Moore
R. Brent Wisner, Esq.                               Jennifer A. Moore, Esq.
rbwisner@wisnerbaum.com                             jennifer@moorelawgroup.com
**WISNER BAUM, LLP**                                **MOORE LAW GROUP, PLLC**
11111 Santa Monica Blvd Ste. 1750                   1473 South 4th Street
Los Angeles, CA 90025                               Louisville, KY 40208
Telephone: (310) 207-3233                           Telephone: (502) 717-4080
Facsimile: (310) 909-8212                           Facsimile: (502) 717-4086

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2024, the foregoing was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ R. Brent Wisner*
R. Brent Wisner, Esq.