**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                            20-MD-2924
LITIGATION

                                              JUDGE ROBIN L. ROSENBERG
                              MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO:**

                        24-CV-80265
                        24-CV-80271
                        24-CV-80264
                        24-CV-80266

**ORDER DENYING THE PLAINTIFFS' MOTION TO REMAND**

**THIS CAUSE** is before the Court on the Plaintiffs' Motion to Remand the above-referenced cases at docket entry 7264-1. The Motion has been fully briefed. For the reasons set forth below, the Motion is denied. To organize this Order, the Court first summarizes the historical background underpinning the Motion to Remand and then analyzes the Motion.

Background

In April of 2020, at the request of leadership counsel for both the Plaintiffs and the Defendants, this Court created a census program and registry (the "Registry") to assist the Court and the parties in understanding the scope, size, and makeup of this MDL. The scope of the Registry extended beyond just the parties in this MDL. Persons who had potential claims against the Defendants—but who had not yet filed their claim in any particular forum—could also participate in the Registry.

Claimants who filed a claim in the Registry received certain benefits for doing so. Of particular importance here, the Claimants who registered a claim were entitled to tolling of the

statute of limitations for their claim.  The source of authority for the tolling was not this Court.

Instead, it was the Defendants; the Defendants voluntarily agreed to waive (at least in part) their

affirmative defenses under any applicable statute of limitations.  Of course, the Defendants wanted

something in return.

In exchange for the tolling of their claims, the Claimants were required to file their claim,

should they ever elect to file, in federal court.  This requirement was clearly set forth in the Court's

Pretrial Order 15, page 11: "Claimants who participate in the Registry commit to filing any action

relating to Zantac or any ranitidine products, if at all, before this Court in MDL No. 2924."  For

more than a year, the Claimants registered their claims without incident.  In the summer of 2021,

however, the Court became aware of a dispute between the parties on the Claimants' commitment

to file their claims in federal court.  Because the Court has previously written about this dispute at

length, the Court quotes below in part its prior discussion on the topic:

> In the summer of 2021, the parties made the Court aware of another dispute
> stemming from the terms of Pretrial Order 15.  That dispute concerned something
> other than tolling; it concerned the Claimants' commitment to file their claims in
> federal court.  In outlining this commitment, page 11 of Pretrial Order 15 reads as
> follows: "Claimants who participate in the Registry commit to filing any action
> relating to Zantac or any ranitidine products, if at all, before this Court in MDL No.
> 2924."  The Order then proceeds to limit the types of claims that a Claimant may
> bring: "Claimants further commit, to the extent that they file an action, to name
> only those defendants that they have a good faith belief marketed or manufactured
> Zantac or ranitidine products that such Claimants ingested or that they in good faith
> believe they may have a valid claim against for other reasons." *Id.*  If a Claimant
> has a good faith claim that he or she wishes to bring, pursuant to the previously
> quoted passage, and that claim eliminates federal court diversity jurisdiction, the
> Claimants' commitment to file in federal court no longer applies. *Id.* ("The
> requirement to file in federal court shall not be applicable to actions as to which a
> federal court would lack diversity jurisdiction.").
>
> The parties dispute about the commitment is summarized as follows.  The Plaintiffs
> took the position that a Claimant would have unilateral control over whether a claim
> would be filed in federal court or state court because the Claimant would have

control over the decision to file or not [to] file non-diverse claims.  To explain, if a Claimant wanted to bring a claim against an in-state, non-diverse retailer, the Claimant could do so and, through that decision, file in state court.  Conversely, a Claimant could elect to forgo a claim against an in-state retailer and, through abandonment of the claim, file his or her claim in federal court.  Thus, the commitment to file in federal court in Pretrial Order 15 was, for the most part,[1] vested in the discretion of the Claimant and the Claimant's counsel.

The Defendants took the position that the Claimants could not bring a claim against in-state retailers for "marketing or manufacturing" ranitidine, and, as a result, the Claimants would be in violation of Pretrial Order 15 when they filed such claims in state court.  The Defendants painted some Claimants' decisions to file in state court in the summer of 2021 as an attempt to avoid adverse MDL rulings. DE 4569.  For context, in the summer of 2021, the Court entered its first order dismissing a Defendant from the MDL with prejudice. DE 3750.  Within a few days of the Court's ruling, a member of the Plaintiffs' leadership team withdrew some Claimants from the Registry and filed their claims in state court, naming a small, in-state retailer that destroyed diversity jurisdiction as a defendant.  The Defendants' fear was that the trend would continue and that, if the Defendants secured any additional favorable rulings in the MDL, the Claimants would continue to file claims against retailers in state court to avoid adverse rulings.  The specifics of the Claimants' pleadings against small in-state retailer defendants also provides context to the Defendants' fears.

As an example, many states contain liability shields that protect retailers from suits involving nothing more than the routine sale of FDA-approved over-the-counter drugs.  To overcome such a shield, a plaintiff must allege affirmative wrongdoing on behalf of the retailer defendant.  In case number 21-CV-82174, a former-Registry-Claimant brought such a claim in state court.  The case was removed to federal court over the Plaintiff's objection, and it was transferred and consolidated into this MDL over the Plaintiff's objection.  After consolidation, this Court ruled on the Plaintiff's motion to remand the case back to state court.  The critical issue for this Court's determination was whether the Plaintiff fraudulently joined a small, in-state retailer for the sole purpose of defeating federal court jurisdiction.

The standard for fraudulent joinder is one of the highest standards in the law.  For the doctrine to apply, there must be no "possibility that a state court would find the complaint states a cause of action." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 549 (9th Cir. 2018).  Therefore, the Court had to find that no state court would conclude that the Plaintiff stated a cause of action for affirmative wrongdoing on the part of the small, in-state retailer.  To assert affirmative wrongdoing by the retailer, and to satisfy the Plaintiff's Pretrial Order 15 obligation

---

[1] As the Plaintiffs emphasized, state bar rules and state pleading law would limit the bringing of claims in bad faith solely to destroy diversity of the parties.

to only bring claims in good faith, the Plaintiff alleged the following:

> To that end, Schnucks employs or employed a chief medical officer, and actively audited and researched the safety and efficacy of products offered for sale in its stores. It researched, investigated, and monitored the medical and scientific literature, as well as the regulatory and public health landscape in order to provide health resources and information, and product safety and recall information to its consumers, the general public, and Plaintiff.
>
> At all pertinent times, Schnucks knew or should have known, that NDMA is a deadly human carcinogen, known to cause a variety of deadly health conditions and cancers, including kidney cancer, and at all pertinent times Schnucks knew or should have known of such risks.

21-CV-82174, DE 1-3 at 43.  Simply stated, it was the Plaintiff's allegation that the retailer would have known, through its employment of a chief medical officer, that the FDA's approval of an over-the-counter drug was in error and that the sale of the drug for almost forty years, in almost every country in the world, should be disregarded.  This was so, according to the Plaintiff, because the chief medical officer should have independently determined that the drug caused cancer and, through that determination, refused to sell the drug.

The Court concluded that the in-state retailer had been fraudulently joined for the sole purpose of defeating federal court jurisdiction, and the Court denied the Plaintiff's motion to remand the case back to state court.  What this case, and many other related disputes between the parties, demonstrated to the Court was that the Claimants' commitment to file their claims in the MDL, as drafted in Pretrial Order 15, was unworkable.  Because pleading standards are lenient in many states, and because it is a necessary reality that counsel—not judges—make decisions on where cases will be filed, the practical result of Pretrial Order 15 was exactly what the Defendants described.  The practical result was that the commitment to file in the MDL in Pretrial Order 15 had the potential to lack any real significance, and enforcing the clause seemed problematic, if not impossible, to the Court as well.

A registry without any corresponding commitment to file claims in any particular forum, be it state or federal, is unworkable as a case management tool, in the Court's opinion, because of the potential of the registry to allow for forum shopping. Because the Defendants made it clear that they would not support the creation and use of the Registry if it permitted forum shopping, the Registry's lack of an enforceable forum commitment—left unaltered—would have resulted in the Defendants' termination of the Registry. *See* Pretrial Order 15 at 12 (outlining the Defendants' retention of the power to unilaterally terminate tolling in the Registry).

> To correct the potential for forum shopping after the Court's *Daubert* rulings, the Court undertook an effort to address the forum selection provision in Pretrial Order 15 pursuant to its case management authority.

DE 6140 at 10-14.  In sum, the Court previously concluded that the Claimants' commitment to file claims in federal court had to be changed in a way that was acceptable to the Defendants (and the Plaintiffs/Claimants) because, if it was not changed, the Defendants would terminate the Registry in its entirety.  The Court's solution, after much discussion with the parties, was Pretrial Order 72.

The Court has previously written about Pretrial Order 72 at great length, and the Court quotes below in part its prior discussion on that topic:

> In Pretrial Order 72, this Court began the process of requiring all Claimants in the Registry to make a decision on forum selection.[2]  The Court explained the basis for its decision as follows:
>
>> Now, almost two years after the inception of this MDL, the time has come for the data in the Registry to be finalized; the pleadings have closed, the Plaintiffs' Leadership has designated the specific cancers it will pursue, the parties have begun the process of preparing *Daubert* challenges on the issue of general causation, and the bellwether trial selection process has begun.  For this MDL to proceed in an orderly fashion, both the parties and the Court need to know with some degree of certainty who the Claimants are, what claims they intend to file, and where the Claimants will file their claims.
>
> *Id.* at 2.  Under Pretrial Order 72, the Claimants could choose, if they wished, to certify (under penalty of estoppel) that their claims would be filed in federal court. No Claimant, however, was *required* to certify.  The Claimants could stay silent if they wished.  But if a Claimant *did* certify, then the Claimant was committed to filing in federal court.  Through this procedure, the Court anticipated that it would evaluate whether the Registry would remain a useful tool for the management of this MDL. If many of the Claimants certified, the value of the Registry to the MDL would be readily apparent.  If many of the Claimants did not certify, the value of the Registry to the MDL would, perhaps, be worth a second look.  At a minimum, the Court believed that the percentage of federally-registered Claimants would

---

[2] The Court furthered additional goals in Pretrial Order 72 besides addressing forum selection.  For example, the Court required the Claimants to finalize the identity of the Defendants that they intended to sue and the claims that they intended to bring.

> assist the Defendants in deciding whether they wished to continue or to terminate the Registry.[3]
>
> In the Court's own opinion, the Court's certification requirement proved that the Registry was a valuable case management tool.  Approximately 80% of the Claimants certified for federal court.  At the same time as the Claimants finalized their forum selection certification, however, many Claimants exited the Registry.  Anticipating the departure of those Claimants, the Court scheduled its *Daubert* general causation hearing roughly ninety days after the Claimants' departure from the Registry.  The Court scheduled its *Daubert* hearing, pursuant to the Defendants' request and the Plaintiffs' agreement, so that the Claimants who exited the Registry could not wait for a *Daubert* ruling (unless state law permitted such a wait) and then, after the ruling, decide upon their forum of choice.  In short, the Court's goal was to eliminate the case management problem it had previously identified.

DE 6140 at 14-16.  Simply stated, every Claimant had to choose whether to certify under penalty of estoppel that his or her claim would be filed in federal court.  No Claimant was required to choose federal court.  But if a Claimant did choose to certify for federal court, that commitment was binding.

### The Motion to Remand

The Court now turns to the Motion to Remand before the Court.  Each Plaintiff who has joined in the Motion has named a Defendant that eliminates federal court diversity jurisdiction over the case.  Additionally, each Plaintiff, pursuant to Pretrial Order 72 and under penalty of estoppel, certified that his or her claims would be filed in federal court—not state court.  Finally, each Plaintiff previously certified that when his or her case was filed (i) no diversity-destroying Defendant would be named and (ii) the Plaintiff would be estopped from opposing the dismissal of any diversity-destroying Defendant.  Yet each Plaintiff filed claims in Delaware state court.

---

[3] Pursuant to Pretrial Order 15, the Defendants retained the ability to terminate tolling in the Registry.  Throughout the pendency of this MDL, the Defendants have consistently taken the position that not every Claimant need commit to filing in federal court for Defendants to maintain their support for the Registry; the Defendants have deemed 80% to be the threshold of federally-bound-Claimants at which they would not terminate tolling in the Registry. *See* DE 5991-1.

In response, the Defendants removed the Plaintiffs' cases, arguing that the diversity-destroying Defendants had been fraudulently joined for the sole purpose of eliminating federal court jurisdiction.  Subsequent to that removal, the Plaintiffs filed the Motion to Remand before the Court.

The standard for fraudulent joinder is one of the highest in the law.  For fraudulent joinder to be proven, there must be **no possibility** that a plaintiff can prove a cause of action. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).  When determining whether there is any possibility that the Plaintiffs could prevail, this Court must view the evidence in the light most favorable to the Plaintiffs. *Id.* at 1333.  Any doubts this Court has about removal must be resolved in favor of remand. *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

Here, the Defendants have easily satisfied the burden for fraudulent joinder.  Pursuant to Pretrial Order 72, each Plaintiff agreed to be estopped from opposing the dismissal of any Defendant that destroyed diversity jurisdiction. Pretrial Order 72 at 4.  For that reason, the Plaintiffs could never prevail on any claim against a diversity-destroying Defendant.  That is the standard for fraudulent joinder.

The Plaintiffs argue that Pretrial Order 72 should not apply to them because they did not authorize their prior counsel to certify their claims for federal court,[4] and for that reason they did

---

[4] Plaintiff Rascento also argues that he only certified a federal claim for stomach cancer, and that he is merely pursuing prostate cancer in Delaware state court.  That argument is unavailing because his prior certification was not specific to any type of cancer—his Pretrial Order 72 certification applied to all cancers. *See* Pretrial Order 72 at 4 ("Every Registry Participant with a Designated Cancer and every Certified Federal Participant with a Non-Designated Cancer must update answers to question 13 of his or her Census Plus Form that he or she previously submitted pursuant to Pretrial Order # 15, which shall reflect any and all Brand Defendants, Generic Defendants, Retailer Defendants or others against whom the Certified Federal Participant anticipates filing or intends to file a lawsuit regarding Zantac or any generic equivalent ranitidine product (if any lawsuit is ever filed)).

not fraudulently join any Defendant, but that is putting the cart before the horse. At the time the Plaintiffs filed their cases in Delaware, and continuing until the present day, the Plaintiffs' Pretrial Order 72 certifications have not been set aside or otherwise vacated. The certifications remain binding, and if and until such time as the certifications are set aside or vacated, the Plaintiffs cannot prevail against any non-diverse Defendant.

The Plaintiffs also argue that it is for a state court to decide whether, as a matter of contested fact, their Pretrial 72 certifications should remain binding. That is wrong. As the Plaintiffs previously agreed, the forum to decide all matters pertaining to Pretrial Order 72 is this Court. Pretrial Order 72 at 6 ("[S]uch Certified Federal Participant will not oppose removal of the action to federal court and subsequent transfer of the action to this MDL, so that this Court will decide any dispute about whether the Certified Federal Participant is obligated to file his or her action only in federal court.").

No Plaintiff has filed a motion for his or her Pretrial Order 72 certification to be vacated or set aside. As a result, this is a matter that has only been tangentially briefed in the context of a request for remand. By way of example, the Plaintiffs' prior counsel (who executed the certifications on the Plaintiffs' behalf) filed only limited briefing on the issue that contains no citations to case law, and the Plaintiffs have filed no response[5] to their prior counsels' legal position (which is that the certifications were proper and remain binding). As a result, the Court expresses no opinion at this time on whether any Plaintiff is entitled to a vacatur of his or her prior

---

[5] Because the Court did not order a response to the filing by prior counsel, the Court does not mean to imply that the Plaintiffs' lack of a response was improper.

certification.  Instead, the Plaintiffs shall[6] file a motion specific to that relief, to which both prior

counsel and the Defendants will respond.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Plaintiffs' Motion

to Remand [DE 7264-1] is **DENIED**.  The Plaintiffs shall file any motion requesting relief relating

to their prior Pretrial 72 certifications by July 1, 2024.  The Defendants shall file a response by

July 15, 2024.  Plaintiffs' prior counsel shall also file a response, which shall be no fewer than ten

pages and which shall contain citations to caselaw and legal analysis, also by July 15, 2024.  The

Plaintiffs shall file a reply to both the Defendants and their prior counsels' response by July 24,

2024.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 21st day of June,

2024.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[6] The Court requires the parties to brief this issue quickly because (i) the parties, and the Delaware state court, need to know where these cases will be litigated and (ii) if the cases are to be litigated in this MDL, this Court will set a case management schedule.