<u>UNITED STATES DISTRICT COURT</u>

**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **IN RE: ZANTAC (RANITIDINE)** | **MDL No. 2924** |
| **PRODUCTS LIABILITY** | **20-MD-2924** |
| **LITIGATION** | |
| | **JUDGE ROBIN L. ROSENBERG** |
| | **MAGISTRATE JUDGE BRUCE E. REINHART** |

_____/

**THIS DOCUMENT RELATES TO:**

| | |
|---|---|
| Campion v. GlaxoSmithKline LLC, et al., | No. 24-cv-80265 (S.D. Fla.). |
| Cusick v. GlaxoSmithKline LLC, et al., | No. 24-cv-80271 (S.D. Fla.). |
| Rascento v. GlaxoSmithKline LLC, et al., | No. 24-cv-80264 (S.D. Fla.). |
| Rounds v. GlaxoSmithKline LLC, et al., | No. 24-cv-80266 (S.D. Fla.). |

---

<u>**MOTION TO VACATE OR DECLINE TO ENFORCE**</u>
<u>**PRETRIAL ORDER NO. 72 AND REMAND**</u>

The above-captioned Plaintiffs ("Plaintiffs"), by and through undersigned counsel,

respectfully move this court to (1) vacate or decline to enforce certification pursuant to Pretrial

Order No. 72 ("PTO 72") in the four above-captioned cases ("Cases") and (2) remand these

Cases, illegally removed from Delaware state court pursuant to 28 U.S.C. § 1447(c). This

motion is filed with leave of Court pursuant to Amended Pretrial Order No. 24.

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

ARGUMENT .................................................................................................................................. 7

I.     MOTION TO VACATE OR DECLINE TO ENFORCE CERTIFICATION ........... 7

     A.     Legal Standard ............................................................................................ 7

     B.     The Court has the Authority to Avoid Manifest Injustice ................................ 9

          1.     Enforcement of the Unconsented Certification Would Exact a Manifest Injustice............................................................................ 9

          2.     Plaintiffs' Lack of Consent Warrants Vacating the Certification ............. 11

          3.     Failing to Follow a Procedural Technicality in a Pretrial Order Should Not Bar Plaintiff Rascento from His Day in Court.................................. 14

          4.     No Surprise or Prejudice Will Result......................................................... 15

II.     MOTION TO REMAND........................................................................................... 16

     A.     Legal Standard ............................................................................................ 17

     B.     Delaware State Court Is a Proper Jurisdiction .............................................. 17

CONCLUSION ............................................................................................................................. 19

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3)............................................... 20

CERTIFICATE OF SERVICE ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Billings v. City of Orlando*,
   287 So. 2d 316 (Fla. 1973) ............................................................................................ 13

*BP Prod. N. Am., Inc. v. Oakridge at Winegard, Inc.*,
   469 F. Supp. 2d 1128 (M.D. Fla. 2007) ........................................................................ 11

*Burns v. Windsor Ins. Co.*,
   31 F.3d 1092 (11th Cir. 1994) ...................................................................................... 18

*Carroll v. Pfeffer*,
   262 F.3d 847 (8th Cir. 2001) .................................................................................. 9, 10

*Clark v. Pennsylvania R. Co.*,
   328 F.2d 591 (2d Cir. 1964) ........................................................................................... 8

*Design Ctr. of the Americas, LLC v. Mike Bell Inc.*,
   54 F. Supp. 3d 1339 (S.D. Fla. 2014) .......................................................................... 17

*Dickerson v. Cent. United Life Ins. Co.*,
   932 F. Supp. 1471 (M.D. Ga. 1996) ................................................................... 8, 15, 16

*Equitable Life Assurance Soc'y of U.S. v. MacGill*,
   551 F.2d 978 (5th Cir. 1977) ......................................................................................... 8

*Hale v. Firestone Tire & Rubber Co.*,
   756 F.2d 1322 (8th Cir.1985) ...................................................................................... 10

*Hodges v. U.S.*,
   597 F.2d 1014 (5th Cir. 1979) ....................................................................................... 8

*In re Air Safety Int'l, L.C.*,
   336 B.R. 843 (S.D. Fla. 2005) ..................................................................................... 12

*In re Sav-A-Stop*,
   124 B.R. 356 (M.D. Fla. 1991) .................................................................................... 13

*In re United Container LLC*,
   284 B.R. 162 (Bankr. S.D. Fla. 2002) .......................................................................... 17

*In re Zantac (Ranitidine) Litig.*,
   No. N22C-09-101 ZAN, 2024 WL 2812168 (Del. Super. Ct. May 31, 2024) ........................ 9

*Jacobs v. Agency Rent-A-Car, Inc.*,

145 F.3d 1430 (11th Cir. 1998) ................................................................................ 8

*Matter of Rogers,*
   160 B.R. 249 (Bankr. N.D. Ga. 1993) ................................................................. 16

*Maxum Indem. Co. v. Fun Zone Ent., LLC,*
   No. 3:18-CV-477-J-34PDB, 2020 WL 3052092 (M.D. Fla. Feb. 5, 2020) ............... 8, 11, 12

*Maxum Indem. Co.,*
   2020 WL 1547453 ................................................................................................ 12

*Morrison v. Genuine Parts Co.,*
   828 F.2d 708 (11th Cir. 1987) .............................................................................. 8

*Morro v. City of Birmingham,*
   117 F.3d 508 (11th Cir. 1997) .............................................................................. 8

*Scott v. Spanjer Bros.,*
   298 F.2d 928 (2d Cir. 1962) ................................................................................. 8

*Shamrock Oil & Gas Corp. v. Sheets,*
   313 U.S. 100 (1941) ............................................................................................. 17

*Sibilia v. Makita Corp.,*
   674 F. Supp. 2d 1290 (M.D. Fla. 2009) ............................................................... 17

*Source Med. Sols., Inc. v. Amkai, LLC,*
   2010 WL 11565669 (N.D. Ala. Dec. 16, 2010) ..................................................... 11

*Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
   226 F. Supp. 2d 1326 (M.D. Fla. 2002) ............................................................... 13

*Stillwell v. Allstate Ins. Co.,*
   663 F.3d 1329 (11th Cir. 2011) ............................................................................ 18, 19

*Syngenta Crop Prot. Inc. v. Henson,*
   537 U.S. 28 (2002) ............................................................................................... 17

*Torres v. Oakland Scavenger Co.,*
   487 U.S. 312 (1988) ............................................................................................. 9

*U.S. v. Varner,*
   13 F.3d 1503 (1994) ............................................................................................. 8, 15

*Univ. of S. Ala. v. Am. Tobacco Co.,*
   168 F.3d 405 (11th Cir. 1999) .............................................................................. 17

*Vantage Broadcasting Co. v. WINT Radio, Inc.,*
   476 So.2d 796 (Fla. 1st DCA 1985) ..................................................................... 11, 12

*Washington v. General Motors Acceptance Corp.*,
   19 F.R.D. 370 (S.D. Fla. 1956) ............................................................................................ 8

## **Statutes**

28 U.S.C. §§ 1331 ...................................................................................................................... 17

28 U.S.C. §1332 ................................................................................................................... 2, 17

28 U.S.C. § 1441 ...................................................................................................................... 18

28 U.S.C. § 1446 ...................................................................................................................... 17

## **Rules**

Fed. R. Civ. P. 16 ............................................................................................................ passim

## INTRODUCTION

Plaintiffs are comprised of victims, and their surviving descendants, who developed cancer from using Defendants'[1] ranitidine-containing drugs. They, along with over 70,000 similarly positioned claimants, filed suit against Defendants in the Delaware Superior Court of New Castle County.  Without Plaintiffs' knowledge or consent, other counsel, who claimed to represent Plaintiffs, certified the Plaintiffs as participants in the Zantac Multidistrict Litigation ("MDL") pursuant to PTO 72.

After an initial census under PTO 15, PTO 72 sought to finalize the list of Plaintiffs participating in the MDL. The resulting "census registry" is a new tool in MDLs,[2] and its terms were stipulated by the Defendants and the MDL Plaintiff's leadership. Should a plaintiff certify, the plaintiff received tolling in exchange for releasing claims against diversity destroying defendants, binding claimants to the authority of this Court, estopping claimants from filing in any other court, and dismissing existing pending claims elsewhere.  Furthermore, given this Court's *Daubert* and summary judgment rulings, which were issued *after* Plaintiffs filed in Delaware state court, Plaintiffs would lose their entire case if their claims were tied to this Court.

However, under Rule 16, courts have broad discretion to vacate the terms of, or grant exemptions to, the terms of pretrial orders, especially when they would cause a manifest injustice.  Fed. R. Civ. P. 16(c)-(e).  As explained further below, courts have repeatedly

---

[1] Defendants are GlaxoSmithKline, LLC, Pfizer, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim USA Corporation, Sanofi-Aventis U.S. LLC, Sanofi U.S. Services, Inc., and Patheon Manufacturing Services LLC.

[2] Census registries are being used in four pending MDLs: (1) this case; (2) *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885; (3) *In re Juul Labs, Inc. Marketing, Sales Practices & Products Liability Litigation*, MDL No. 2913, and (4) *In re Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Products Litigation*, MDL No. 3014. The ABA Advisory Committee on Civil Rules, of which the Hon. Judge Rosenberg is a member, recently discussed a proposed Rule 16.1, guiding pre-trial management procedures such as census registries. https://www.americanbar.org/groups/litigation/resources/newsletters/mass-torts/spring2024-effective-use-of-census-registries-in-multidistrict-litigation/.

amended, vacated, or declined to enforce pretrial orders that would bar a party from presenting their case on the merits in the name of "mere" technicalities. Moreover, courts have found it is a manifest injustice to enforce an unauthorized action by counsel, which compromises or releases their client's claims without consent.

Considering the nature of certification, and its release of claims against potential defendants, the terms of certification required the consent. However, Plaintiffs Campion, Cusick, and Rounds did not consent to or authorize certification. These Plaintiffs explicitly authorized their cases to be filed in state court in Delaware, not the MDL. Indeed, this is why each filed their cases in Delaware, and did so *before* the Court's *Daubert* ruling. Indeed, they were unaware their cases had ever been certified or filed in federal court, or that the terms of certification might bar them from filing elsewhere.

For these reasons, the certification entered by other counsel and without their consent should be vacated or set aside. Such a result is the only fair and just outcome. And, once that certification is vacated, the claims against the diversity destroying Defendant, Patheon, will no longer be fraudulently joined[3] and, thus, this Court will lack complete diversity over the Plaintiffs' cases under 28 U.S.C. §1332(a). Thus, this Court must remand the cases back to Delaware.

Thus, Plaintiffs respectfully request that the Court enter an order (1) vacating certification under PTO 72 of the cases represented by the above-named Plaintiffs and (2) remanding these cases respectively back to Delaware state court so that they may continue to proceed where they were, originally, filed almost two years ago.

---

[3] Plaintiffs do not believe Patheon is fraudulently joined, even if the Court does not vacate the certification. And, thus, Plaintiffs maintain that this Court, at this moment, lack any jurisdiction over this these cases. However, this Court disagreed in its recent order. Plaintiffs preserve and to not waive their objection to that ruling for the purposes of appeal, if needed.

## BACKGROUND

The Plaintiffs originally filed their cases in the Superior Court of New Castle County, alongside 70,000 other filed claims.  In the Delaware proceeding, Defendants[4] identified a few hundred plaintiffs that had, according to Defendants' records, were "Certified Federal Participants" ("CFPs") pursuant the federal Multidistrict Litigation ("MDL") PTO 72 and in their view, were bound to litigate their claims within the MDL. The above-named Plaintiffs were among those identified claimants.

*Campion* is a death case, with the plaintiff's husband, William H. Campion, acting as her personal representative. *Campion,* Declaration at ¶ 1. The decedent developed pancreatic cancer caused by exposure to NDMA in the ranitidine products she consumed.  Complaint, ECF No. 1-2, at *4, *Campion v. GlaxoSmithKline LLC, et al.*, No. 24-cv-80265 (S.D. Fla. Feb. 16, 2024). The decedent's representative alleges consumption of over-the-counter ranitidine products between 2007 and 2015.  *Campion*, Declaration at ¶ 2.  Mr. Campion retained Wisner Baum, LLP ("Wisner Baum") on May 29, 2022 to represent him in this litigation.  *Campion*, Declaration at ¶ 3.  Renee Campion was a citizen of Pennsylvania.  *Campion,* Notice of Removal at ¶ 2.  Because Ms. Campion had valid claims against Patheon, on September 13, 2022, Wisner Baum filed Mr. Campion's claim in Delaware state court in a multi-plaintiff complaint, *Ruchin v. GlaxoSmithKline LLC, et al*. No. N22C-09-237 VLM.  Then, pursuant to the agreement discussed above, it was filed individually on January 15, 2024 in *Campion v. GlaxoSmithKline LLC, et al*., No. N24C-01-111 ZAN.

---

[4] Importantly, the lawsuits in federal court name GlaxoSmithKline, LLC; GlaxoSmithKline Holdings (Americas), Inc.; GlaxoSmithKline, PLC; and 18 generic manufacturers, not named in the Delaware Complaint, while the Delaware lawsuit names Defendants GlaxoSmithKline, LLC; Pfizer, Inc.; Boehringer Ingelheim Pharmaceuticals, Inc.; Boehringer Ingelheim USA Corporation; Sanofi-Aventis U.S. LLC; Sanofi U.S. Services, Inc.; and Patheon Manufacturing Services LLC.

Mr. Campion has no recollection of interacting with any firm other than Wisner Baum regarding representation of his claim. *Campion*, Declaration at ¶ 5. Romanucci & Blandin, LLC ("Romanucci & Blandin") certified this case pursuant to PTO 72 on June 30, 2022. *Campion,* Notice of Removal at ¶ 8. Mr. Campion never provided authority or consented to such a certification. *Campion,* Declaration at ¶ 6-7. Wisner Baum never registered in the MDL, so Wisner Baum's counsel was never made aware by LMI that another firm, claiming to represent the Campions, had registered in the MDL.[5] Mr. Campion did, however, give authority to Wisner Baum to file his case in Delaware. *Campion*, Declaration at ¶ 4. Then, on April 3, 2023—seven months after the case had already been filed and served in Delaware, and unbeknownst to Mr. Campion, Romanucci & Blandin, LLC filed a second case in this MDL. *Campion*, Notice of Removal at ¶ 12.

*Cusick* is a death case, with the decedent's daughter, Cathy Williams pursuing the claim as a personal representative. *Cusick*, Declaration at ¶ 1. The decedent developed stomach cancer caused by exposure to NDMA from ranitidine products he consumed. Complaint, ECF No. 1-3, at *5, *Cusick v. GlaxoSmithKiline LLC, et al.*, No. 24-cv-80271 (S.D. Fla., Feb. 16, 2024). The decedent's representative alleges consumption of prescription and over-the-counter ranitidine products between 2000 and 2005. *Cusick*, Declaration at ¶ 2. Ms. Williams retained Wisner Baum on July 9, 2020 to represent her in this litigation. *Cusick,* Declaration at ¶ 4. Ms. Williams is a citizen of Missouri. *Cusick,* Notice of Removal at ¶ 2. As she had valid claims against Patheon, having ingested OTC Zantac, the case was filed on September 13, 2022 in a multi-plaintiff complaint, *Durmach v. GlaxoSmithKline LLC, et al.,* No. N22C-09-225 VLM. Then, pursuant to the agreement discussed above, the case was filed individually on January 16, 2024

---

[5] Indeed, Wisner Baum on June 30, 2022, specifically pulled all cases in the MDL registry, before filing those matters in various state courts.

in *Cusick v. GlaxoSmithKiline LLC, et al.* No. N24C-01-112 ZAN.

Wisner Baum never registered the case to participate in the federal MDL and, thus, was never told by LMI that another firm claimed to represent her or that they had taken action to register her claim in the MDL. Ms. Williams recalls interacting with a local Missouri law firm, Carey, Danis & Lowe, LLC ("Carey Danis & Lowe") but was under the impression that the firm worked with Wisner Baum. *Cusick,* Declaration at ¶ 6. On June 30, 2022, Carey Danis & Lowe certified her case pursuant to PTO 72. *Cusick,* Notice of Removal at ¶ 8. Ms. Williams never provided authority or consented to such a certification. *Cusick,* Declaration at ¶ 5, 7, 8. Ms. Williams did, however, give authority to Wisner Baum to file her case in Delaware. *Cusick,* Declaration at ¶ 4. Then, on February 13, 2023, five months after the claim had already been filed in Delaware, and unbeknownst to Ms. Williams, Carey Danis & Lowe filed a second case in this MDL. *Cusick,* Notice of Removal at ¶ 12.

*Rounds* is similar to *Cusick.* It involves a case in which different firms filed in each venue, the plaintiff was unaware of that they had dual representation, the plaintiff was also unaware of the dual filings, and the firms were unaware of the other's representation. *Rounds,* Declaration at ¶ 3-7. The case is primarily distinguished from *Cusick* in that Mr. Rounds is still living. Mr. Rounds developed bladder cancer caused by exposure to NDMA from ranitidine products he consumed. Complaint, ECF No. 1-2, at *8, No. 24-cv-80266 (S.D. Fla., Feb. 20, 2024). Mr. Rounds alleges consumption of over-the-counter ranitidine products between 1998 and 2010. *Rounds,* Declaration at 2. Mr. Rounds retained Moore Law Group, PLLC ("MLG") on October 30, 2020 to represent him in this litigation. *Rounds*, Declaration at ¶ 4. Mr. Rounds is a citizen of Massachusetts. *Rounds,* Motion for Remand at ¶ 2. Because Mr. Rounds consumed OTC Zantac and has valid claims against Patheon, the lawsuit was filed on September

13, 2022 in a multi-plaintiff complaint, *Haskell v. GlaxoSmithKline LLC, et al.,* No. N22C-09-304

VLM in Delaware state court.  Then, pursuant to the agreement discussed above, was filed

individually on January 24, 2024 in *Rounds v. GlaxoSmithKline LLC, et al.,* No. N24C-01-194

ZAN.

    MLG never registered the case to participate in the federal MDL and, thus, was never

made aware of any dual representation or any action taken by another law firm.  Mr. Rounds has

no recollection of interacting with any firm other than MLG regarding representation of his

claim. *Rounds,* Declaration at ¶ 5-7.  Keller-Postman LLC ("Keller Postman") certified his case

pursuant to PTO 72 on June 30, 2022.  *Rounds,* Notice of Removal at ¶ 8.  Mr. Rounds never

provided authority or consented to such a certification. *Rounds*, Declaration at ¶ 7-8.  Mr.

Rounds did, however, give authority to MLG to file his case in Delaware. *Rounds*, Declaration

at ¶ 4.  Then, on February 24, 2023, five months after the case had already been filed in

Delaware state court and unbeknownst to Mr. Campion, Keller Postman filed a second case in

this MDL. *Rounds,* Notice of Removal at ¶ 12.

    Plaintiff Rascento, a citizen of Pennsylvania, presents a different circumstance. Rascento,

Notice of Removal at ¶ 2.  Trammell PC ("Trammell") certified the case in the MDL on June 30,

2022.  Trammel then filed the case in Delaware on November 11, 2022 in *Lescord v.*

*GlaxoSmithKline LLC, et al.*, No. N22C-11-114 ZAN.  The case in Delaware alleges that

exposure to NDMA from ranitidine caused the development of prostate cancer. *See generally*,

Complaint, ECF No. 1-1, No. 24-cv-80264 (S.D. Fla., Feb. 20, 2024).  Trammell later filed the

case individually in Delaware on January 16, 2024 in *Rascento v. GlaxoSmithKline LLC, et al.*,

No. N24C-01-106 ZAN.  That same day, Trammell filed a second complaint in the MDL on

January 16, 2024, alleging a different cancer, i.e., stomach.  Rascento, Notice of Removal at ¶

11.   Rascento certified his stomach cancer case for participation in the MDL, because MDL leadership had included it as a "designated" cancer.  However, he deliberately chose to pursue his prostate cancer claim in the Delaware state court, because the leadership is actively pursuing the cancer type there.

Pursuant to the agreement, as explained above, Plaintiffs filed individual Delaware complaints in January 2024.[6]  Defendants, on February 16, 2024, removed the cases to federal court.  Notice of Removal.[7]  By agreement, the cases were then noticed for tag-along to the MDL and the cases were ordered transferred to this MDL on March 6, 2024.

On April 9, 2024, Plaintiffs moved to remand this case to Delaware state court, followed by Defendants' opposition, Plaintiffs' reply, and further briefing upon the Court's request.  *See* ECF Nos. 7264-1; 7275; 7282.  The Court denied Plaintiffs' Motion to Remand, explaining that it was bound by the certification in PTO 72, and thus, the Court did not have the power to remand the Cases.  ECF No. 7308, at *6-9.  The Court highlighted Plaintiffs' failure to file a motion to vacate certification pursuant to Pretrial Order 72 prior to moving to remand. ECF No. 7308, at *8-9.  This motion followed.

## <u>ARGUMENT</u>

## I.   **MOTION TO VACATE OR DECLINE TO ENFORCE CERTIFICATION**

### A.   **Legal Standard**

Pretrial orders and stipulations are governed by Federal Rule of Civil Procedure 16(e).

---

[6] *Cusick v. GlaxoSmithKiline LLC, et al.* No. N24C-01-112 ZAN, filed Jan 16, 2024.
*Campion v. GlaxoSmithKline LLC, et al*., No. N24C-01-111 ZAN, filed Jan. 15, 2024.
*Rascento v. GlaxoSmithKline LLC, et al.,* No. N24C-01-106 ZAN, filed Jan 16, 2024.
*Rounds v. GlaxoSmithKline LLC, et al.,* No. N24C-01-194 ZAN, filed Jan 24, 2024.
[7] Not. of Removal, *Campion v. GlaxoSmithKline LLC, et al.,* No. 24-cv-80265 (S.D. Fla.).
Not. of Removal, *Cusick v. GlaxoSmithKline LLC, et al.,* No. 24-cv-80271 (S.D. Fla.).
Not. of Removal, *Rascento v. GlaxoSmithKline LLC, et al.,* No. 24-cv-80264 (S.D. Fla.).
Not. of Removal, *Rounds v. GlaxoSmithKline LLC, et al.,* No. 24-cv-80266 (S.D. Fla.).

*Dickerson v. Cent. United Life Ins. Co.*, 932 F. Supp. 1471, 1474 (M.D. Ga. 1996); *U.S. v. Varner*, 13 F.3d 1503, 1507 (1994).  Generally, pretrial orders and stipulations are binding on parties, but trial courts have broad discretion in whether to hold a party to a stipulation or order. *E.g.*, *Maxum Indem. Co. v. Fun Zone Ent., LLC*, No. 3:18-CV-477-J-34PDB, 2020 WL 3052092, at *25 (M.D. Fla. Feb. 5, 2020), *report and recommendation adopted sub nom. Maxum Indem. Co. v. Shaw*, No. 3:18-CV-477-J-34PDB,  2020 WL 1547453 (M.D. Fla. Mar. 25, 2020) (citing *Equitable Life Assurance Soc'y of U.S. v. MacGill*, 551 F.2d 978, 984 (5th Cir. 1977); *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987)).  Further, trial courts should use their "discretion to preserve the integrity and purpose of the pretrial order." *Jacobs v. Agency Rent-A-Car, Inc.,* 145 F.3d 1430, 1432 (11th Cir. 1998) (quoting *Hodges v. U.S.*, 597 F.2d 1014, 1018 (5th Cir. 1979).  Indeed, a pretrial order should not be a "strait-jacket . . . of procedure" that gets in the way of the administration of justice and leads to "adjudications based on the sporting theory." *Scott v. Spanjer Bros.,* 298 F.2d 928, 931 (2d Cir. 1962) (citing *Washington v. General Motors Acceptance Corp.*, 19 F.R.D. 370 (S.D. Fla. 1956); *see also Clark v. Pennsylvania R. Co.*, 328 F.2d 591, 594 (2d Cir. 1964) (citations omitted).

Accordingly, the trial court may amend, vacate, or decline to enforce pretrial orders and stipulations under Rule 16 to prevent manifest injustice.  *Dickerson*, 932 F. Supp. at 1474 (citing Fed. R. Civ. P. 16(e)); *Varner*, 13 F.3d at 1507; *Morro v. City of Birmingham*, 117 F.3d 508 (11th Cir. 1997).  If a court vacates a pretrial order or stipulation, it is presumed that it was done in the interest of justice and sound judicial administration, provided there is no substantial prejudice or surprise to the opposing party or inconvenience to the court.  *Varner*, 13 F.3d at 1507.

### B.     The Court has the Authority to Avoid Manifest Injustice

This Court should exercise its broad discretion to vacate or decline to enforce Plaintiffs'

unconsented certification under PTO 72.  The unauthorized certification of Plaintiffs' claims

under PTO 72 is a procedural "strait-jacket" that stands in the way of the administration of

justice, namely preventing Plaintiffs from pursuing valid claims against a defendant (Patheon)

and being forced to litigate in a forum that will doom their cases—even when the case could

proceed, on the merits, in the Plaintiffs' chosen forum.   Here, it would be a manifestly unjust to

bind Plaintiffs to an agreement they never consented to – an agreement that, if applicable,

effectively terminates their cases; a point made even more salient in light of the Delaware state

court's recent, disagreeing with this MDL and allowing general causation to proceed to a jury.

*See In re Zantac (Ranitidine) Litig.*, No. N22C-09-101 ZAN, 2024 WL 2812168, at *1 (Del.

Super. Ct. May 31, 2024).

#### 1.  Enforcement of the Unconsented Certification Would Exact a Manifest Injustice[8]

First, not hearing a case on the merits, for the sake of pretrial procedure, is manifest

injustice.  *Carroll v. Pfeffer*, 262 F.3d 847, 849–50 (8th Cir. 2001).  It is well-settled that "the

requirements of the rules of procedure should be liberally construed and that 'mere

technicalities' should not stand in the way of consideration of a case on its merits."  *E.g.*, *Torres*

*v. Oakland Scavenger Co.,* 487 U.S. 312, 316 (1988).[9]

---

[8] The Plaintiffs referenced in Subsections I(B)(1)-(2) are Plaintiffs Campion, Cusick, and Rounds. The Plaintiff referenced in Subsection I(B)(3) is Rascento. Subsection I(B)(4) applies to all Plaintiffs.

[9] The ABA Advisory Committee on Civil Rules recently noted in its Draft Committee Note to Rule 16.1(d), "…There is no requirement under Rule 16.1 that the court set specific time limits or other scheduling provisions as in ordinary litigation under Rule 16(b)(3)(A). Because active judicial management of MDL proceedings must be flexible, the court should be open to modifying its initial management order in light of subsequent developments in the MDL proceedings. Such modification may be particularly appropriate if leadership counsel were appointed after the initial management conference under Rule 16.1(a)."

https://www.uscourts.gov/sites/default/files/2023-03_civil_rules_committee_agenda_book_final_0.pdf

Because an MDL census registry is a relatively novel procedure, specific to MDLs, and its terms have been negotiated *ad hoc* and *not* by Plaintiffs or their counsel directly, there is no case directly on point.  However, as a policy, courts opt to allow a party to voice their claim or defense, rather than let a pretrial procedure or existing pretrial order stifle their substantive case.  For example, in *Carroll v. Pfeiffer*, after the final pretrial order had been entered, it came to the court's attention that the defendant had never filed an answer nor raised any defenses.  262 F.3d 847, 849 (8th Cir. 2001).  Thus, the existing pretrial order threatened to prevent the defendant from arguing his case at trial.  *Id.*  Rather than doom the defendant's case, the court directed the defendant to file an answer before the case was allowed to proceed further, even though this required modification of the final pretrial order.  *Id.* The court explained:

> The district court determined that this omission was plain error and that the case should not be allowed to proceed because it had not met even the most basic pleading requirements.  Although an order on a final pretrial conference normally controls the subsequent course of action, the order can be modified to prevent manifest injustice.  A pretrial order will be modified only if there is no substantial injury or prejudice to the opponent.  There was no substantial injury or prejudice to [plaintiff] in allowing [defendant] to file a late answer in this case. . . . Not allowing [defendant] to file his answer and raise his defense of qualified immunity would have been a manifest injustice.  Here, the district court acted in the interests of fair play while at the same time recognizing the need to conserve judicial resources.

*Id.* at 849-50 (citing Fed. R. Civ. P. 16(e); *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1335 (8th Cir.1985)) (quotations omitted). Although the defendant erred in not filing a timely answer and a pretrial order had been in place, the court found it more important that both parties have their arguments heard by the judge and jury.  *See id.*

Here, because some attorneys claimed to represent Plaintiffs and represented to this Court that Plaintiffs consented to certification at the pleading stage, the terms of PTO 72 would force Plaintiffs to lose their claims against Patheon with prejudice, without ever allowing them to

obtain adjudication on the merits.  It would also, effectively, lead to the termination of their

entire case in light of this Court's previous *Daubert* and summary judgment rulings.

Alternatively, this Court could vacate or decline to enforce certification under PTO 72 for these

Plaintiffs, which would allow Plaintiffs to have their day in state court. Thus,  it would be a

manifest injustice to allow the mere technicality of registering a claim, which is not a common

procedure and was done without each Plaintiffs' consent, to stand in the way of justice.

### 2.   Plaintiffs' Lack of Consent Warrants Vacating the Certification

Plaintiffs in this case have declared, under oath, that they did not consent to become

CFPs. The lack of consent vitiates the estoppel and release of claims under PTO 72, because it is

a "[m]anifest injustice . . . where counsel enters into a stipulation that essentially settles the case

without his client's consent." *Maxum Indem. Co.*, 2020 WL 3052092, at *25.  A fundamental

tenant of the attorney-client relationship is that "an attorney . . . may not 'compromise' his

'client's cause of action' except on the 'express authority of the client.'" *Source Med. Sols., Inc.*

*v. Amkai, LLC*, 2010 WL 11565669, at *2 (N.D. Ala. Dec. 16, 2010) (citations omitted); *BP*

*Prod. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1134 (M.D. Fla. 2007),

*as amended* (Jan. 3, 2007) ("An unauthorized compromise, executed by an attorney, unless

subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as

a nullity by the client.") (quoting *Vantage Broadcasting Co. v. WINT Radio, Inc.,* 476 So.2d 796,

798 (Fla. 1st DCA 1985)).

The case *Maxum Indemnity Company v. Fun Zone Entertainment, LLC* is particularly

instructive here.  The facts are messy, which is helpful, because the court does a great job of

parsing apart how the Rule 16 manifest injustice standard applies to pretrial stipulations that have

the effect of a final judgment.[10]  In *Maxum*, amongst other issues, Jones' and Shaw's counsel entered them into a pretrial stipulation with Maxum, which estopped them from pursuing their claims further.  2020 WL 3052092, at *25.  Specifically, the pretrial stipulation their attorney entered into for them had the effect of dismissing Maxum without trial, contrary to their wishes. *See id.* at *16.  The court declined to enforce the pretrial stipulation, because it would be a manifest injustice to allow an attorney to act without their consent and estop their claims and defenses from being heard.  *See id.* at *12, *25.  The court pointed to the affidavits of Jones and Shaw, where they stated that they would not have dismissed nor removed any opposing parties without going to trial.  *Maxum Indem. Co.,* 2020 WL 1547453, at *5.  The court also considered the testimony that they did not see the stipulation before it was filed and would never have agreed to its terms.  *Id.*  Thus, even though the pretrial stipulation was "interlocutory in nature," the court identified that it still may be vacated or declined to be enforced for the manifest injustice of lacking client consent.  *See id.* at *10-12.

Importantly, the court rejected Maxum's argument that the court must enforce the pretrial stipulation because Jones and Shaw enjoyed benefits from it.  Pursuant to the challenged pretrial stipulation, Maxum had agreed to withdraw its motions to intervene and stay and motions in related state court actions.  The court still held that the most important consideration was "counsel's authority to enter into an agreement," not "receipt of a tangible and valuable benefit by the estopped party."  2020 WL 3052092, at *24–25 (citing *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 861 n.18 (S.D. Fla. 2005) (rejecting argument that stipulation violates Bankruptcy

---

[10] Court's analysis was thorough, because "[t]he stipulation [did] not neatly qualify as a pretrial stipulation, a voluntary dismissal, or a consent judgment but share[d] characteristics of all of those types[.]" *Id.* at fn. 28. Although the court applies the manifest injustice standard under Rule 60, "[t]he recommendation would be the same even if the stipulation was deemed more like a pretrial stipulation" governed by Rule 16(c). *Id.* at fn. 28, 36 ("Rule 16(c) addresses pretrial stipulations.").

Code and noting appellant's retention of money provided as result of stipulation estops appellant from attacking stipulation); *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 226 F. Supp. 2d 1326, 1333 (M.D. Fla. 2002) (plaintiffs could not retain benefit of designating person as former director or officer and later avoid implications of designation); *In re Sav-A-Stop*, 124 B.R. 356, 360 (M.D. Fla. 1991) (in competitor dispute, company estopped from denying it owed money under settlement agreement assertedly unenforceable as unspecific where, under agreement, other side timely provided company complete customer and employee lists and took other actions for company's benefit and to its tangible detriment, including its payment of expenses); *Billings v. City of Orlando*, 287 So. 2d 316, 318 (Fla. 1973) (policemen and their families who accepted disability and pension benefits could not later reject portions of contracts displeasing to them)).

Here, the pretrial order certification, like the *Maxum* pretrial stipulation, was entered into by counsel without authorization, an agreement that estops Plaintiffs from having their claims heard against a specific defendant. Under oath, the Plaintiffs here, like Jones and Shaw, declared they did not authorize alleged counsel to certify their claims in federal court. Further, the CPFs Defendants previously provided in their opposition to Plaintiffs' motion to remand show there is reason to doubt Plaintiffs consented. For example, the CPF submitted on David Rounds' behalf is electronically signed and was submitted months prior to his supposed Certification. The CPF allegedly submitted by Gaylon Cusick is electronically signed by him – not his personal representative – and dated November 11, 2020, over a year after Mr. Cusick passed away. Mr. Cusick apparently later submitted two supplements to his CPF, though neither supplement has an attached certification page bearing his signature (which makes sense considering he was dead). The Plaintiffs do not have access to Ms. Campion's CPF, and the Defense has not provided it. It

seems unlikely that form would provide evidence that Ms. Campion consented to certification, based on the two supplements the Defendants provided, both of which were signed more than five years after her death, by "Henri Swanson," who apparently works as a paralegal at Romanucci & Blandin.

By filing a certification, the other counsel released claims of Plaintiffs without authority or consent—and that release of claims, against Patheon, is the only basis for this Court's jurisdiction. It would be a manifest injustice to enforce certification that bars their ability to have their claims heard, especially when remand would give that due process to each Plaintiff. Moreover, whether or not Plaintiffs enjoyed the benefits of tolling their claims does not bear on enforceability of the pretrial order certification. Enjoyment of benefits does not prevent vacatur.

### 3. Failing to Follow a Procedural Technicality in a Pretrial Order Should Not Bar Plaintiff Rascento from His Day in Court

For Plaintiff Rascento, there is no dispute that the Plaintiff consented to pursuing his stomach cancer claim as a CFP. However, Plaintiff Rascento also developed prostate cancer as a result of ingesting ranitidine and chose not to pursue that claim in the MDL as it was no longer being pursued by the leadership. *See* PTO 72 ¶ 11. He suffered two severe, life-threatening injuries, but only had a pathway to remedy for one within the MDL. Importantly, PTO 72 provided for circumstances wherein a claimant pursued multiple cancers, but never specified how to pursue an alternative claim resulting from the same cause. Nothing in PTO 72 prohibited pursuing a non-designated injury elsewhere.

In the previous motion to remand, the Court took issue with the fact that his certification did not specify any type of cancer. However, when Rascento submitted his claim to the MDL Court, the Court did not ask him to specify which cancer type he had, so he did not. Subsequently, PTO 72 was issued and required claimants like him to file a supplement

distinguishing which cancer he was pursuing in Federal Court, if he was no longer pursuing a non-designated cancer claim.  However, by the time Rascento was required to file that supplement, Plaintiffs' leadership made clear they would not pursue remedies for non-designated cancers like prostate cancer.  Thus, Rascento made an error assuming he did not need to indicate the different types of cancer he contracted from ranitidine use, since he would only pursue remedies to a designated cancer in federal court.

A final pretrial conference has not yet occurred, so the Court has the power to vacate or decline to enforce Rascento's certification for any reason. This error should not stand in the way of allowing Rascento to have his day in court.  The procedure for filing was complex, necessarily so for the large scope of the MDL.  However, it is understandable that Rascento mistakenly failed to follow the procedural technicality, requiring him to file a supplement to a certification after learning that half of his fatal injuries would not be pursued in federal court.  He simply was trying to access a court that had the ability to house litigation his life-threatening prostate cancer. We ask the court to lift the procedural technicalities that stand to bar him from remedy for his illness.

### 4.   No Surprise or Prejudice Will Result

Defendants will neither be prejudiced nor surprised by this decision. *Varner*, 13 F.3d at 1507-08 (explaining a court may elect to not amend a pretrial order if there is "substantial prejudice" or surprise to the opposing party). In *Dickerson v. Central United Life Ins. Co.*, the defendant moved to vacate the court's order, granting plaintiff's motion to amend the pretrial order and correct the name of the defendant.  932 F. Supp. 1471, 1473 (M.D. Ga. 1996). Pertinently, a month after plaintiff filed suit, another company acquired the defendant. *Id.* at 1474.  The plaintiff sought to change the defendant's name to the new acquiring company's

name in the pretrial order, which the court granted to prevent manifest injustice in not allowing the plaintiff to pursue their claims against the proper defendant. *Id.* The court found there was not substantial prejudice nor surprise, because:

> [The defendant has] been notified of this suit from its commencement, there is no possibility that the amendment will surprise or prejudice defendant. . . . The only effect is to ensure that all potentially responsible entities are parties to this suit. Therefore, the court finds that the amendment to the pretrial order served the interests of justice and was properly granted.

*Id.* at 1475-76.

In this case, Defendants have been on notice of these Cases, which have been pending for years, so litigating these cases would neither surprise nor prejudice Defendants. Moreover, because each of these Plaintiffs filed their claims in Delaware state court months before this Court entered its Daubert ruling, this is not a situation where the Plaintiffs played a wait-and-see approach to see how things played out in the MDL. Instead, before such rulings, these Plaintiffs notified and made clear to the Defendants of their intent to pursue claims in Delaware state court by filing a lawsuit there. Being asked to defend oneself against a lawsuit does not qualify as prejudice or surprise. *E.g., Matter of Rogers,* 160 B.R. 249, 253 (Bankr. N.D. Ga. 1993) (finding no surprise when defendant was named in suit because "the fact a party unexpectedly becomes the defendant to a legal action is hardly an unusual circumstance . . . [nor is it] an unusual situation when a party becomes a defendant to an action commenced in another state."). The only effect of vacatur would be to ensure that cancer victims and the responsible entities have their day in court, in Delaware.

## II.    MOTION TO REMAND

Plaintiffs respectfully request that the Court enter an order remanding all four cases, Campion, Cusick, Rounds, and Rascento, back to Delaware state court so that they may continue

to proceed where they were, originally, filed almost two years ago.

This section summarizes the original Motion to Remand (Doc. 7264) and Reply (Doc. 7282) on this issue. Plaintiffs' references here are intended to incorporate, not abandon, any arguments they previously presented.

### A.  Legal Standard

"Federal courts are courts of limited jurisdiction." *E.g. In re United Container LLC*, 284 B.R. 162, 168 (Bankr. S.D. Fla. 2002). Federal jurisdiction exists only when a controversy involves either a question of federal law or diversity of citizenship between the parties. 28 U.S.C. §§ 1331–32. "Removal statutes are strictly construed." *Design Ctr. of the Americas, LLC v. Mike Bell Inc.,* 54 F. Supp. 3d 1339, 1341 (S.D. Fla. 2014) (citing *Syngenta Crop Prot. Inc. v. Henson,* 537 U.S. 28, 32 (2002)); *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941). "Courts should remand all cases where subject matter jurisdiction is in doubt." *Id.* (citing *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999)). A removing defendant has the burden of establishing both federal jurisdiction and compliance with the procedures for removal set forth in 28 U.S.C. § 1446, as a matter of fact and law." *Sibilia v. Makita Corp.,* 674 F. Supp. 2d 1290, 1291 (M.D. Fla. 2009).

### B.      Delaware State Court Is a Proper Jurisdiction

In February 2024, the Defendants, in violation of federal statutes, removed the Cases from Delaware state court, claiming federal subject matter jurisdiction when none existed.

In *Campion* and *Rounds*, the Plaintiffs and one of the named Defendants, Patheon, are citizens of Pennsylvania.  *Campion*, Jan. 16, 2024 Complaint at ¶ 8; *Rounds*, Jan. 16, 2024 Complaint at ¶ 8.  Thus, this Court does not have diversity jurisdiction over the lawsuit. Indeed, Defendants do not dispute this.  *Campion*, Notice of Removal at ¶ 2; *Rounds*, Notice of Removal

at ¶ 2.  However, they argue that Patheon is fraudulently joined, i.e., that a claim against Patheon is impossible.  *See, e.g., Campion*, Notice of Removal at ¶ 18.  Defendants claim that Plaintiffs Campion and Rounds were certified participants in this MDL pursuant to PTO 72 and, thus, agreed to be estopped from suing any diversity-destroying Defendants, including Patheon.  *Id.* However, Plaintiffs Campion and Rounds dispute this—they never consented to or authorized any certification in this MDL under PTO 72.  *Campion,* Declaration at ¶ 5-7; *Rounds,* Declaration at ¶ 5-7.  If this is true, then PTO 72's estoppel provisions cannot, as a matter of law, bind them; and, thus, their claims against Patheon are not impossible.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").  Factual disputes must be weighed in favor of the party seeking removal—and, on this record, this Court simply cannot find that Patheon was fraudulently joined.  *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff.").  Remand must issue.

In *Cusick*, although there is complete diversity among the parties, the Defendants' removal was illegal under the forum defendant bar.  Each of the removing defendants is a citizen in Delaware, and thus by statute, are forbidden from seeking removal once served (which they were).  28 U.S.C. § 1441(b)(2).  Defendants gloss over this disregard of federal law by arguing that Plaintiff Cusick waived any right to challenge removal by certifying participation in the MDL pursuant to PTO 72.  *Cusick*, Notice of Removal at ¶ 35-38.  But, like *Campion* and *Rounds*, Plaintiff Cusick (specifically, her personal representative) never authorized or consented to certification in the MDL.  *Cusick,* Declaration at ¶ 5, 7, 8.  So, on these facts—which must be

viewed in a light most favorable to Plaintiff—there was no consent to removal. *Stillwell*, 663 F.3d at 1332. The removal was simply illegal. And, on that basis, this Court must remand pursuant to the forum defendant bar.

The terms of certification required the consent of the Plaintiffs, but Plaintiffs Campion, Cusick, and Rounds did not consent. These Plaintiffs did, however, explicitly authorized their cases to be filed in state court in Delaware, not the MDL. *See e.g., Cusick,* Declaration at ¶ 3, 4. Indeed, they were unaware their cases had ever been certified or filed in federal court, or that the terms of certification might bar them from filing elsewhere. *See e.g., Cusick,* Declaration at ¶ 5-7. Under these circumstances, remand is the only just or legally tenable result.

Plaintiff Rascento presents a different circumstance. In his Delaware state action, Mr. Rascento, a citizen of Massachusetts, also named Defendant Patheon, also a citizen of Massachusetts, thereby destroying diversity. *Rascento,* Notice of Removal at ¶ 2. However, Plaintiff Rascento certified his stomach cancer case for participation in the MDL—which the MDL leadership had included as a "designated" cancer—but deliberately chose to pursue his prostate cancer claim in the Delaware state court—where the leadership is actively pursuing the cancer type. Thus, while his claim related to stomach cancer may be estopped by his acceding to PTO 72, his claim involving prostate cancer is *not*. Therefore, his claim against Patheon, alleging a prostate cancer injury, is not fraudulently joined. This Court must remand it for lack of subject matter jurisdiction.

## **CONCLUSION**

If the unauthorized certification pursuant to PTO 72 is enforced, this procedural misstep will eviscerate the claims of cancer victims and deprive them of their day in court. For the forgoing reasons, Plaintiffs respectfully request that this Court grant this motion, and enter an

order vacating/declining enforcement of certification pursuant to PTO 72 for each case and remanding each case back to Delaware state court.

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), the undersigned, on behalf of Plaintiffs, conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: July 1, 2024                             Respectfully submitted,

*/s/ R. Brent Wisner*                           */s/ Jennifer A. Moore*
R. Brent Wisner, Esq.                           Jennifer A. Moore, Esq.
rbwisner@wisnerbaum.com                         jennifer@moorelawgroup.com
**WISNER BAUM, LLP**                            **MOORE LAW GROUP, PLLC**
11111 Santa Monica Blvd Ste. 1750               1473 South 4th Street
Los Angeles, CA 90025                           Louisville, KY 40208
Telephone: (310) 207-3233                       Telephone: (502) 717-4080
Facsimile: (310) 909-8212                       Facsimile: (502) 717-4086


*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2024, the foregoing was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.


*/s/ R. Brent Wisner*
R. Brent Wisner, Esq.