UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924 20-MD-2924 |
| _____/ | JUDGE ROBIN L. ROSENBERG MAGISTRATE JUDGE BRUCE E. REINHART |

**THIS DOCUMENT RELATES TO:**

*Campion v. GlaxoSmithKline LLC, et al.*, No. 9:24-cv-80265-RLR
*Cusick v. GlaxoSmithKline LLC, et al.*, No. 9:24-cv-80271-RLR
*Rascento v. GlaxoSmithKline LLC, et al.*, No. 9:24-cv-80264-RLR
*Rounds v. GlaxoSmithKline LLC, et al.*, No. 9:24-cv-80266-RLR

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO VACATE OR DECLINE TO ENFORCE PRETRIAL ORDER NO. 72 AND REMAND**

DATED:  July 15, 2024

Defendants GlaxoSmithKline LLC, Pfizer Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim USA Corporation, Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Patheon Manufacturing Services LLC ("Defendants") respectfully submit this Opposition to Plaintiffs' Motion to Vacate or Decline to Enforce Pretrial Order No. 72 and Remand.

## **INTRODUCTION**

The Court should deny the motion of Plaintiffs Campion, Williams, Rounds, and Rascento to vacate their certifications or decline to enforce Pretrial Order No. 72 ("PTO 72") and to remand their cases back to state court (the "Motion to Vacate").[1]  Plaintiffs, through retained counsel, affirmatively certified their ranitidine claims for inclusion in the MDL Registry.  In doing so, Plaintiffs agreed to file their claims in federal court and, in exchange, received Defendants' agreement to toll the statute of limitations for such claims.  Plaintiffs have not met their heavy burden to undo this agreement or to have the Court refuse to enforce its unambiguous pretrial order that was critical to management of this MDL.

Plaintiffs do not suggest that their certifications were fraudulent or that their counsel somehow acted improperly.  Rather, Plaintiffs Campion, Williams, and Rounds ask this Court to vacate the certifications because they (allegedly) did not know about their counsels' plans to certify their ranitidine claims and, as such, did not expressly consent to it.  That cannot excuse them from compliance with PTO 72:  certification is a litigation strategy decision that does not require client consent.  And Plaintiff Rascento does not dispute that he consented to certification; rather, he claims confusion about its scope.  Regardless of whether Plaintiff Rascento "made an error" in interpreting the plain language of PTO 72 and in certifying his claim, *see* Mot. to Vacate at 15

---

[1] Plaintiff William Campion is the legal representative for decedent Renee Campion.  Plaintiff Cathy Williams is the legal representative for decedent Gaylon Cusick.

(ECF No. 7311), to allow him to proceed with a separate claim for prostate cancer while his stomach cancer claim remains bound by this Court's *Daubert* decision would result in impermissible claim-splitting.  *See* Removing Defs.' Opp'n to Pls.' Mot. to Remand ("Remand Opp'n") at 13–14 (ECF No. 7275).

Setting aside these certifications, which counsel intentionally and voluntarily entered on behalf of their clients, would undermine the entire MDL Registry.  The Court created the Registry to provide "certainty [as to] who the Claimants are, what claims they intend to file, and where the Claimants will file their claims."  PTO 72 at 2 (ECF No. 5348).  But the workability of the Registry as "a case management tool" depended on Claimants' "corresponding commitment to file claims in [a] particular forum."  Order Denying Remand at 4 (ECF No. 7308) (citation and quotation marks omitted).  Indeed, Defendants agreed not to terminate the Registry only because at least 80% of Claimants certified their claims.  Allowing Plaintiffs—and hundreds of others like them—to set aside their certifications would upend the bargain that the parties struck and that this Court endorsed through the Registry process.

For these reasons, the Court should enforce Plaintiffs' certifications under PTO 72 and find federal jurisdiction proper.

## BACKGROUND

Defendants briefly summarize the pertinent background here, and refer the Court to their previously filed Opposition to Plaintiffs' Motion to Remand for a more complete recitation of the facts.  *See generally* Remand Opp'n at 2–6.

### I.     THE MDL REGISTRY

In April 2020, the Court created a census program and voluntary Registry to assist in understanding the scope, size, and makeup of the MDL.  *See* PTO 15 at 2 (ECF No. 547).  Instead

2

of incurring the time and expense of filing an immediate lawsuit, a potential plaintiff could opt into the Registry by filing a Census Plus Form ("CPF"). *Id.* at 8–10. For individuals who joined the Registry, Defendants agreed to toll the statutes of limitations applicable to their claims. *Id.* at 11. In exchange, Registry Claimants agreed that if they decided to file suit, they would file in federal court. *Id.* at 11–12; *see also* Order Denying Remand at 1–4 (describing the Registry).

Under the Court's Order, Defendants could "terminate the tolling agreement" if *Daubert* motions were not fully briefed within a certain timeframe. PTO 15 at 12. Defendants, however, agreed to not terminate the Registry if at least 80% of Claimants certified as federal participants by June 2022. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2022 WL 17752381, at *8 n.12 (S.D. Fla. Dec. 19, 2022) (citing ECF No. 5991-1), *appeal dismissed sub nom. Savage v. Glenmark Pharms., Inc. USA*, No. 11375, 2024 WL 889558 (11th Cir. Mar. 1, 2024).

In February 2022, this Court established procedures to finalize the Registry, explaining that "[f]or this MDL to proceed in an orderly fashion, both the parties and the Court need to know with some degree of certainty who the Claimants are, what claims they intend to file, and where the Claimants will file their claims." PTO 72 at 2. The Court set a deadline of June 30, 2022 (later extended to July 31, 2022, *see* PTO 79 at 3 (ECF No. 5797)) by which Claimants were to affirmatively indicate whether they would remain in the Registry as a "Certified Federal Participant." PTO 72 at 3. If a Claimant certified, he or she agreed to federal jurisdiction. *Id.* Any Registry Participant who did not certify was exited from the Registry. *Id.* at 10; *see also* Order Denying Remand at 5–6 (describing the process to finalize the Registry). More than 80% of Claimants certified their claims by the deadline, and Defendants accordingly did not terminate the Registry. *Id.* at 6.

## II.  THESE EXEMPLAR CASES

Tens of thousands of plaintiffs who had exited the Registry went on to file ranitidine cases in state courts. In reviewing the approximately 70,000 cases filed in Delaware state court, Defendants have already identified several hundred plaintiffs—including Plaintiffs Campion, Williams, Rounds, and Rascento—who are or are suspected to be Certified Federal Participants. In the interest of efficiency, the parties agreed that Defendants would remove these four exemplar cases, and that the parties would brief the remand issues for this Court to resolve.

It is undisputed that Plaintiffs Campion, Williams, Rounds, and Rascento voluntarily entered the Registry by filing CPFs. *See* Remand Opp'n at 5 & Exs. A–D (attaching CPFs). In his CPF, Plaintiff Campion represented that he had retained Romanucci & Blandin LLC. *Id.* at 5 & Ex. A. Plaintiff Williams represented that she had retained Carey, Danis & Lowe. *Id.* at 5 & Ex. B. Plaintiff Rounds represented that he had retained Keller Lenkner (now Keller Postman). *Id.* at 5 & Ex. C. And Plaintiff Rascento represented that he had retained Trammell PC. *Id.* at 5 & Ex. D. In a separate filing, these counsel confirmed that Plaintiffs had indeed retained them. *See* Resp. to Mot. to Remand Certified Fed. Cases at 1 ("Remand Resp.") (ECF No. 7304) ("Counsel did not merely 'claim' to represent 'these Plaintiffs,' counsel **did** represent these plaintiffs through a duly executed retainer." (emphasis in original)). In June and July 2022, these counsel ("Certifying Counsel") certified their clients as Certified Federal Participants.

In September and November 2022, Plaintiffs Campion, Williams, and Rounds (through different counsel) and Plaintiff Rascento (through the same counsel) filed complaints in Delaware state court.[2] Based on Plaintiffs' agreement as Certified Federal Participants to file in federal

---

[2] Plaintiffs filed as part of multi-plaintiff complaints in September and November 2022, and re-filed individual complaints in January 2024.

4

court, Defendants removed the cases. Plaintiffs moved to remand. Plaintiffs Campion and Williams, now represented by Wisner Baum, LLP, and Plaintiff Rounds, now represented by the Moore Law Group, claim that they did not consent to their other retained counsel certifying their claims. Plaintiff Rascento, still represented by Trammell PC, claims that although he agreed to certify claims related to his stomach cancer, he did not intend to certify claims related to his prostate cancer.

On June 21, 2024, this Court denied Plaintiffs' motion to remand. *See generally* Remand Order. The Court concluded that "[p]ursuant to Pretrial Order 72, each Plaintiff agreed to be estopped from opposing the dismissal of any Defendant that destroyed diversity jurisdiction. For that reason, the Plaintiffs could never prevail on any claim against a diversity-destroying Defendant." *Id.* at 7 (citing PTO 72 at 4). However, the Court "express[ed] no opinion at this time on whether any Plaintiff is entitled to vacatur of his or her prior certification," *id.* at 8–9, and granted leave for Plaintiffs to move for such relief, *id.* at 9.

## **ARGUMENT**

### I. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO VACATE THEIR PTO 72 CERTIFICATIONS

The Court should deny Plaintiffs' request to vacate their certifications and agreement to file suit in federal court. "'As a general rule, parties are bound by stipulations.'" *Waterview Mgmt. Grp., LLC v. Dyncorp Int'l LLC*, No. 3:18-cv-517-TKW-EMT, 2019 WL 13162576, at *1 (N.D. Fla. Oct. 22, 2019) (citing *Ohio Nat. Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 353 F. App'x 244, 253 (11th Cir. 2009)); *id.* ("'[S]tipulations are not to be set aside lightly.'" (citing *Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1553 (11th Cir. 1993)). Although courts can "modify a stipulation when necessary to avert manifest injustice, the party seeking relief must sustain a heavy burden by demonstrating such injustice with clear and convincing force." *City of*

5

*Lakeland, Fla. v. Union Oil Co. of Cal.*, 352 F. Supp. 758, 768 (M.D. Fla. 1973); *Waterview Mgmt. Grp.*, No. 3:18-cv-517-TKW-EMT, 2019 WL 13162576, at *1 (courts may "set aside a stipulation, but the moving party must provide an extraordinarily good reason for the court to do so"); *Feazell v. Tropicana Prods., Inc.*, 819 F.2d 1036, 1040 (11th Cir. 1987) ("Pretrial orders control the subsequent course of action unless modified to prevent manifest injustice.").

Plaintiffs, who acknowledge the "manifest injustice" standard that applies here, *see* Mot. to Vacate at 8, have failed to show that vacating their certifications—and corresponding agreement to file their ranitidine claims in federal court—is needed to meet that high standard. Quite the opposite, setting aside the certifications would unfairly prejudice Defendants.

### A. Plaintiffs Have Not Shown that Enforcing the Certifications, Even Assuming Plaintiffs Did Not Expressly Consent, Will Result in Manifest Injustice

It is undisputed that Plaintiffs Campion, Williams, and Rounds retained Certifying Counsel to handle their ranitidine claims. In their CPFs, Plaintiffs represented that they had retained Certifying Counsel. *See supra* p. 4. And in briefing the remand motion, Certifying Counsel confirmed that they "***did*** represent these plaintiffs through a duly executed retainer." Remand Resp. at 1 (emphasis in original). Plaintiffs further acknowledged that Certifying Counsel certified Plaintiffs' claims for inclusion in the MDL Registry. *See* Mot. to Vacate at 1, 4, 5, 6.

Plaintiffs now argue, however, that it would be unfair to enforce those certifications because they never expressly consented to them. *Id.* at 9–14. But Certifying Counsel did ***not*** need Plaintiffs' express consent. As the laws of Plaintiffs' home states make clear, lawyers have the authority to bind their clients with respect to procedural and litigation management matters such as where to file a case. *See, e.g.*, *Rosenblum v. Jacks or Better of Am. W. Inc.*, 745 S.W.2d 754, 760 (Mo. Ct. App. 1988) ("Employment of an attorney to act for a client in a lawsuit . . . implicitly authorizes the attorney to bind the client in matters of procedure, including any stipulation for the

6

control of the progress of the action."); *Sawyer v. Sawyer*, 809 MDA 2016, 2017 WL 3476779, at *13 (Pa. Super. Ct. Aug. 14, 2017) ("[A]ttorneys do have the apparent authority to bind clients during management of litigation."); *Burt v. Gahan*, 351 Mass. 340, 342 (Mass. 1966) ("The attorney usually determines what steps are to be taken in his client's interest, and the acts of the attorney in the conduct of litigation are binding upon the client."); *Munro v. Univ. of S. Cal.*, No. CV 16-6191-VAP (CFEx), 2017 WL 1654075, at *5 (C.D. Cal. Mar. 23, 2017) ("Decisions as to venue, discovery methods, and evidence to seek in discovery, however, are vested in the lawyer's discretion, as opposed to the client's.").[3]

Plaintiffs instead rely on *Maxum Indemnity Co. v. Fun Zone Entertainment, LLC*, No. 3:18-cv-477-J-34PDB, 2020 WL 3052092 (M.D. Fla. Feb. 5, 2020). *See* Mot. to Vacate at 11–12. In that case, the court vacated a stipulation entered into by the plaintiffs' former counsel to dismiss certain defendants. *Maxum*, No. 3:18-cv-477-J-34PDB, 2020 WL 3052092, at *14. But that stipulation was "induced by fraud and proven improper conduct by counsel." *Id.* (internal quotation marks omitted). The plaintiffs had "made it very clear [to their former counsel] that [they were] under no circumstances going to agree to dismiss [or] remove any party without a trial." *Id.* Counsel nevertheless signed the stipulation dismissing the defendants. *Id.* at *15.

---

[3] *See also, e.g.*, *Vallee v. Lachapelle*, 725 F. Supp. 631, 634 (D. Me. 1989) ("[Counsel] clearly had authority to bind his clients as to matters of procedure, including the choice of arbitral forum."); *Halliburton v. Liberty Cnty. Sch. Dist.*, No. CV-414-179, 2015 WL5749463, at *2 (S.D. Ga. Sept. 30, 2015) ("[T]he decision to remove a case to the federal forum is a strategic choice that rests within the discretion of counsel."); *cf. Joseph v. State*, No. A-9675, 2011 WL 182048, at *1–3 (Alaska Ct. App. Jan. 19, 2011) (rejecting the criminal defendant's argument that "the right to select trial venue is a personal right that belongs to the client, not the lawyer," and instead affirming the trial court's ruling that "the choice of venue for [defendant's] trial was a tactical decision for [defendant's] attorney to make and that his attorney was not required to consult with him on this issue").

That is nothing like the facts here. Plaintiffs' certifications are not agreements to **settle** claims, which was the equivalent of the stipulation in *Maxum* and which would require "clear and unequivocal" client consent. *Id.* at *21, 22. The certifications are agreements to **preserve** claims (via tolling) and file them in a certain venue. *See* PTO 72 at 2–4. Further, there is no allegation or evidence that Certifying Counsel engaged in any fraud or improper conduct. In responding to the remand papers, Certifying Counsel explained that Plaintiffs "never affirmatively told [Certifying Counsel] not to certify" their claims. Remand Resp. at 2.[4] Plaintiffs Campion and Rounds simply do not remember hiring multiple law firms, and Plaintiff Williams mistakenly believed that the two firms she retained were working together. *See* Mot. to Vacate at 4, 5, 6; Campion Decl. ¶ 5 (ECF No. 7311-1); Williams Decl. ¶ 6 (ECF No. 7311-2); Rounds Decl. ¶ 5 (ECF No. 7311-3). Plaintiffs cite no authority for the proposition that the failure of co-counsel to communicate with each other or with Plaintiffs can justify vacating the certifications—nor are Defendants aware of any.

Plaintiffs also claim that the manifest injustice would result if the certifications are enforced, because it would "effectively[ ] lead to the termination of th[ese] case[s] in light of this Court's previous *Daubert* and summary judgment rulings." Mot. to Vacate at 11. But that is precisely the calculation that Plaintiffs—and tens of thousands of other Certified Federal Participants—made when they decided to certify their claims. In exchange for tolling and other

---

[4] The Court directed Certifying Counsel to "file a response" to Plaintiffs' Motion to Vacate by July 15, 2024. Order Denying Remand at 9. The Keller Postman firm has asked to be relieved from that obligation because it "no longer represents" Plaintiff Rounds, *see* Notice Regarding Representation and Motion for Relief at 1 (ECF No. 7314), even though the Court's Order recognized that its directive applied to "prior counsel." Order Denying Remand at 9. In declining to file a response to the Motion to Vacate, Keller Postman has waived any argument that it was not properly retained as counsel or that its certification of Plaintiff Rounds' claims was inadvertent or improper. Indeed, Keller Postman's response to the motion to remand confirmed that it properly certified those claims. Remand Resp. at 1.

8

benefits, all Certified Federal Participants agreed that they would file any claims in federal court and be bound by the MDL Court's *Daubert* decision. PTO 72 at 2, 3. Certification took place more than two years into MDL, after the pleadings had closed, after Plaintiffs' Leadership had designated the cancers it would pursue, and with clear notice to Claimants as to the ramifications of their decision. *See id.* at 2; *see also* PTO 79 at 2 (PTO 72 "set forth a timeline for Registry Participants who alleged a Designated Cancer to, *inter alia*, determine whether they would elect to become Certified Federal Participants . . . to permit finality as to those Registry Participants who would ultimately file (if ever) in federal court, in advance of this Court's upcoming *Daubert* rulings on general causation."). There is nothing unfair about holding these Plaintiffs to their certification decision; surely if the Court had denied Defendants' *Daubert* motions, Plaintiffs would not be complaining. Nor, in any event, are these Plaintiffs foreclosed from participating in the appeal of this Court's *Daubert* rulings to the Eleventh Circuit. The suggestion that these Plaintiffs are being deprived of their day in court, *see* Mot. to Vacate at 11, is hyperbole and simply not true.

      **B.**    **Plaintiff Rascento's Confusion About the Scope of His Certification Does Not Require Vacating That Certification**

Plaintiff Rascento concedes that he consented to be a Certified Federal Participant. *Id.* at 14. He nevertheless claims that although PTO 72 "provided for circumstances wherein a claimant pursued multiple cancers, [it] never specified how to pursue and alternative claim resulting from the same cause. . . . Thus, [he] made an error assuming he did not need to indicate the different types of cancer he contracted from ranitidine use." *Id.* at 14-15. But as this Court explained in denying remand, PTO 72 requires "[e]very Registry Participant with a Designated Cancer and every Certified Federal Participant with a Non-Designated Cancer [to] update answers to question 13 of his or her Census Plus Form. . . . which shall reflect any and all Brand Defendants, Generic

9

Defendants, Retailer Defendants or others against whom the Certified Federal Participant anticipates filing or intends to file a lawsuit regarding [ranitidine]." Order Denying Remand at 7 n.4. To the extent Plaintiff Rascento (or his counsel on his behalf) was confused about his obligation to supplement or about the scope of his certification, he could have requested clarification. He did not. If claiming confusion or mistake were sufficient to vacate PTO 72 as to any particular Certified Federal Participant, then the Court would be inundated with such claims by participants seeking to avoid the result of the *Daubert* ruling, which is exactly the outcome PTO 72 was designed to avoid. The Court should decline to set aside Plaintiff Rascento's certification for this reason alone.

Regardless of any confusion, there is no dispute that Plaintiff Rascento's stomach cancer claim remains bound by this Court's *Daubert* ruling; Plaintiff contends instead that he should not be prohibited from pursuing his prostate cancer claim elsewhere. *See* Mot. to Vacate at 14–15. But to allow that claim to proceed in a separate court would result in impermissible claim-splitting. *See* Remand Opp'n at 13–14. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits . . . parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (quotation marks and citation omitted)); *id.* ("The claim-splitting doctrine thereby ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave he rest to be presented in a second suit, if the first fails." (quotation marks and citation omitted)). Accordingly, even if the Court was otherwise inclined to countenance Plaintiff Rascento's request "to lift the procedural technicalities" of the Registry, *see*

Mot. to Vacate at 15, the Court should find that the claim-splitting doctrine prevents it from doing so.

### C. Defendants Will Be Prejudiced If the Court Does Not Enforce the Certifications

Plaintiffs are wrong that Defendants will not be prejudiced or surprised if the Court grants the request to vacate their PTO 72 certifications and remand their cases to state court. Mot. to Vacate at 15–16. Declining to enforce the certifications would upend the Registry process. Defendants agreed to keep the Registry open (and for certifying Claimants to continue to receive the benefit of tolling) only if at least 80% of Registry Participants certified their claims by the deadline in the Court's orders. Plaintiffs—and the hundreds of other Certified Federal Participants who have now filed in Delaware state court—were counted as Certified Federal Participants to reach that 80% threshold. *See supra* p. 3. It would be unfair and inconsistent with the purpose of the Registry if Plaintiffs and other Claimants who certified for inclusion in the MDL Registry were allowed to backtrack on that deal now and proceed with their cases in state court.

## II. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO REMAND

If the Court enforces Plaintiffs' PTO 72 certifications, as it should, then it must deny remand. As this Court has explained, "Defendants have easily satisfied the burden for fraudulent joinder. Pursuant to Pretrial Order 72, each Plaintiff agreed to be estopped from opposing the dismissal of any Defendant that destroyed diversity jurisdiction. Pretrial Order 72 at 4. For that reason, the Plaintiffs could never prevail on any claim against a diversity-destroying Defendant. That is the standard for fraudulent joinder. . . . [I]f and until such time as the certifications are set aside or vacated, the Plaintiffs cannot prevail against any non-diverse Defendant." Order Denying Remand at 7–8; *see also generally* Remand Opp'n. Because Plaintiffs have no basis to contest the jurisdiction of this Court over their claim, there is no basis to grant remand.

11

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion to vacate their PTO 72 certifications and should deny the motion to remand.

Respectfully submitted,

*/s/ Anand Agneshwar*
Anand Agneshwar
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8011
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Attorney for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

*/s/ Andrew T. Bayman*
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com

*Attorney for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

*/s/ Mark Cheffo*
Mark Cheffo
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com
judy.leone@dechert.com
will.sachse@dechert.com
lindsey.cohan@dechert.com

*Attorneys for Defendant GlaxoSmithKline LLC*

12

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. S.W.
Washington, DC 20024
Telephone: (202)-434-5000
Facsimile: (202)-434-5029
jpetrosinelli@wc.com

*Attorney for Defendant Pfizer Inc.*

*/s/ Christopher R. Carton*
Christopher R. Carton
**BOWMAN AND BROOKE LLP**
317 George Street, Suite 320
New Brunswick, NJ  08901
Telephone: (201) 577-5175
chris.carton@bowmanandbrooke.com

John D. Garrett
**BOWMAN AND BROOKE LLP**
2901 Via Fortuna Drive, Suite 500
Austin, TX  78746
Telephone: (512) 874-3832
john.garrett@bowmanandbrooke.com

*Attorneys for Defendant Patheon Manufacturing Services LLC*

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. S.W.
Washington, DC 20024
Telephone: (202)-434-5000
Facsimile: (202)-434-5029
jpetrosinelli@wc.com

*Attorney for Defendant Pfizer Inc.*

*/s/ Christopher R. Carton*
Christopher R. Carton
**BOWMAN AND BROOKE LLP**
317 George Street, Suite 320
New Brunswick, NJ  08901
Telephone: (201) 577-5175
chris.carton@bowmanandbrooke.com

John D. Garrett
**BOWMAN AND BROOKE LLP**
2901 Via Fortuna Drive, Suite 500
Austin, TX  78746
Telephone: (512) 874-3832
john.garrett@bowmanandbrooke.com

*Attorneys for Defendant Patheon Manufacturing Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July 2024, I electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO VACATE OR DECLINE TO ENFORCE PRETRIAL ORDER NO. 72 AND REMAND** through the CM/ECF system, which will provide automatic notification to all CM/ECF participants.

*/s/ Anand Agneshwar*
Anand Agneshwar
