# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | **MDL No. 2924**<br>**20-MD-2924** |
| | **JUDGE ROBIN L. ROSENBERG**<br>**MAGISTRATE JUDGE BRUCE E. REINHART** |

_____/

**THIS DOCUMENT RELATES TO:**

| | |
|---|---|
| *Campion v. GlaxoSmithKline LLC, et al.*, | No. 24-cv-80265 (S.D. Fla.). |
| *Cusick v. GlaxoSmithKline LLC, et al.*, | No. 24-cv-80271 (S.D. Fla.). |
| *Rascento v. GlaxoSmithKline LLC, et al.*, | No. 24-cv-80264 (S.D. Fla.). |
| *Rounds v. GlaxoSmithKline LLC, et al.*, | No. 24-cv-80266 (S.D. Fla.). |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE OR

## <u>DECLINE TO ENFORCE PRETRIAL ORDER NO. 72 AND REMAND</u>

The above-captioned Plaintiffs ("Plaintiffs"), by and through undersigned counsel, respectfully submit this reply in response to Defendants', GlaxoSmithKline LLC, Pfizer Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim USA Corporation, Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Patheon Manufacturing Services LLC ("Defendants"), *Opposition to Plaintiffs' Motion to Vacate or Decline to Enforce Pretrial Order No. 72 and Remand*. This motion is filed with leave of Court pursuant to Amended Pretrial Order No. 24.

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................................. i

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

I.      The Evidence Is Clear—Plaintiffs Rounds, Cusick, and Campion Never Consented
        or Gave Authorization to Certify their Claims under PTO 72 and, Thus, They Should
        Not Be Bound to those Certifications ................................................................................ 3

II.     No prejudice would befall Defendants. ............................................................................ 9

III.    Vacatur of Certification Triggers Remand for Lack of Subject Matter Jurisdiction. ....... 10

CONCLUSION............................................................................................................................ 10

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3) .................................................. 10

CERTIFICATE OF SERVICE .................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**<u>Cases</u>**

*Carroll v. Pfeiffer*,
   262 F.3d 847 (8th Cir. 2001) ................................................................................. 9

*Dickerson v. Cent. United Life Ins. Co.*,
   932 F. Supp. 1471 (M.D. Ga. 1996) ..................................................................... 9

*In re Engle Cases*,
   283 F. Supp. 3d 1174 (M.D. Fla. 2017) ............................................................... 2

*In re Glover,*
   No. 07-95002-PWB, 2009 WL 6498524 (Bankr. N.D. Ga. Apr. 29, 2009) .............. 2

*Knabe v. Brister*,
   154 Cal. App. 4th 1316 (2007) ............................................................................. 6

*Maxum Indem. Co. v. Fun Zone Ent., LLC*,
   No. 3:18-CV-477-J-34PDB, 2020 WL 3052092 (M.D. Fla. Feb. 5, 2020*)* ................... 1, 6, 7, 8

*Munroe v. Univ. of S. California*,
   No. CV166191VAPCFEX,2017 WL 1654075 (C.D. Cal. Mar. 23, 2017)
   *aff'd,* 896 F.3d 1088 (9th Cir. 2018) ..................................................................... 6

*Rosenblum v. Jacks or Better of Am. W. Inc.*,
   745 S.W.2d 754 (Mo. Ct. App. 1988) ................................................................... 5

*Sawyer v. Sawyer*,
   No. 809 MDA 2016, 2017 WL 3476779 (Pa. Super. Ct. Aug. 14, 2017) ................. 5

*Valenzuela v. Cnty. of San Diego*,
   No. D056134, 2011 WL 3795538 (Cal. Ct. App. Aug. 26, 2011) ............................ 2

**<u>Rules</u>**

Fed. R. Civ. P. 16 ....................................................................................................... 9

## INTRODUCTION

Defendants argue in their opposition that "[i]t is undisputed that Plaintiffs Campion, Williams, Rounds, and Rascento voluntarily entered the Registry by filing CPFs." Opposition, at 5. But, that is wrong on two fronts. As a threshold matter, the question is not whether a Plaintiff voluntarily entered the registry under Pretrial Order 15 ("PTO 15"). Participation in the registry by submitting a Census Plus Form ("CPF") did not release any claims and did not create any estoppel. Rather, the question is whether they voluntarily certified their claims under Pretrial Order 72 ("PTO 72"), which is what required registrants to forgo claims against diversity destroying Defendants. This is the linchpin. Certification under PTO 72 is the only thing that could prevent Plaintiffs from pursuing their claims against Patheon, which is an otherwise valid defendant that destroys this Court's subject matter jurisdiction.

So, the question turns on whether the certification under PTO 72, done without Plaintiffs' consent or knowledge, can bind them from asserting claims against an otherwise valid Defendant. The answer is a resounding *no*: Plaintiffs did not consent to certify their claims under PTO 72 and, thus, could not legally or ethically waive their claims against Patheon. Defendants provide no evidence to the contrary.

Defendants attempt to reframe the certification as being a simple tactical decision on litigation management and venue. But, a plain reading of PTO 72 belies that claim. PTO 72 clearly releases all claims against any diversity destroying defendant and enforces that release with estoppel. Before a client can be bound by such an agreement, that client *must* be informed and *must* give consent. *Maxum Indem. Co. v. Fun Zone Ent., LLC*, No. 3:18-CV-477-J-34PDB, 2020 WL 3052092, at *1 (M.D. Fla. Feb. 5, 2020*), report and recommendation adopted sub nom. Maxum Indem. Co. v. Shaw*, No. 3:18-CV-477-J-34PDB, 2020 WL 1547453 (M.D. Fla.

1

Mar. 25, 2020); *see In re Glover,* No. 07-95002-PWB, 2009 WL 6498524, at *3 (Bankr. N.D. Ga. Apr. 29, 2009); *Valenzuela v. Cnty. of San Diego*, No. D056134, 2011 WL 3795538, at *4 (Cal. Ct. App. Aug. 26, 2011). At minimum, an attorney and client should have a conversation regarding these decisions. *In re Engle Cases*, 283 F. Supp. 3d 1174, 1198-99 (M.D. Fla. 2017).

This is blackletter law. It is consistent with the core principles underlying the attorney-client relationship, the rules of professional responsibility, and common sense. Nowhere is this basic principle more salient than here, where binding Plaintiffs to an agreement that they never consented to would eviscerate their entire claims—claims that are viable in the court, where their case was first filed, with authorization i.e., Delaware state court. For this Court to bind Plaintiffs to a PTO 72 certification that they never consented to, and effectively ensure that their case is over, would constitute a manifest injustice—the very result the Rules abhor. To avoid this manifest injustice, Plaintiffs respectfully request that the Court exercise its discretion to vacate the unauthorized PTO 72 certifications (for Plaintiffs Rounds, Campion, and Cusick), and different-injury PTO 72 certification (for Plaintiff Rascento), and remand each case back to Delaware Superior Court.

## ARGUMENT

The Court should reject Defendants' arguments for three main reasons. *First,* Defendants' only evidence are the CPFs they provided, which bear on whether Plaintiffs registered their claims under PTO 15, but not whether they *certified* their claims under PTO 72. *Second,* vacating the PTO 72 certification would prevent a two-fold manifest injustice: (a) holding Plaintiffs Campion, Rounds, and Cusick to certification forms and complaints that they did not discuss, review, nor approve, which leads to the complete release of their claims against Patheon and, in effect, a complete dismissal of all their claims by being forced into federal court;

2

and (b) barring Plaintiffs Rounds, Campion, Cusick, and Rascento from their day in court, in the

name of pretrial procedure technicalities.  Defendants cite no persuasive authority to the

contrary.  *Finally,* there is no prejudice to Defendants by being forced to litigate this case in their

home court jurisdiction of Delaware state court—the jurisdiction each Defendant elected to

incorporate.

     **I.**    **The Evidence Is Clear—Plaintiffs Rounds, Cusick, and Campion Never Consented or Gave Authorization to Certify their Claims under PTO 72 and, Thus, They Should Not Be Bound to those Certifications**

Throughout Defendants' opposition, they conflate registry under PTO 15 with

certification under PTO 72.  They are *different* things.  When the Court created the MDL

registry, it allowed Plaintiffs to obtain tolling by submitting CPFs to participate in the registry.

However, the Court's order specifically stated:

> Claimants further commit, to the extent that they file an action, to name only those defendants that they have a good faith belief marketed or manufactured Zantac or ranitidine products that such Claimants ingested or that they in good faith believe they may have a valid claim against for other reasons. ***The requirement to file in a federal court shall not be applicable to actions as to which a federal court would lack diversity jurisdiction.***

PTO # 15 at ¶ 6 (emphasis added).  In other words, a plaintiff did not release claims against

diversity-destroying defendants like Patheon by participating in the registry or submitting a CPF.

Moreover, the registry under PTO 15, issued April 2, 2020, left the door open to file in state

court should complete diversity exist.  However, PTO 72, entered two years later, changed that.

It forced plaintiffs, who participated in the registry, to decide whether they would release claims

against diversity-destroying defendants and commit to the MDL exclusively by becoming

Certified Federal Participants ("CFPs").  PTO # 72 at ¶ 6 ("By participating in the certification

process described in this Order, a Certified Federal Participant agrees that (i) he or she is

estopped from filing a lawsuit concerning Zantac or any generic equivalent ranitidine product in

a state court[.]").  Indeed, the express purpose of PTO 72 was to finalize where Plaintiffs would ultimately file their claims.  *Id.* at 1–2 ("[T]he parties and the Court need to know with some degree of certainty who the Claimants are, what claims they intend to file, and where the Claimants will file their claims.").  Thus, although the acronyms are similar, filing a CPF to participate in the registry *does not equal* becoming a CFP through certification under PTO 72.

Defendants cannot cite to Plaintiffs' CPFs as evidence of them certifying under PTO 72.  Filing a CPF did not release or create estoppel for claims against a diversity destroying Defendant.  Only certification under PTO 72 could estop Plaintiffs' claims against Pantheon, which is an otherwise valid diversity-destroying Defendant.

Here, Defendants present the CPFs of Plaintiffs Cusick, Rascento, and Rounds as evidence that they voluntarily agreed to participate in the MDL's registry.[1]  But, those documents cannot show consent to certification under PTO 72, with its estoppel provisions.  Plaintiff Cusick's CPF was supposedly signed November 30, 2020 (which is impossible because he was dead).  Defendants' Ex. C.  Even if he was able to sign the document postmortem, it could not constitute a certification under PTO 72, because that order had not yet been issued.  The same applies to Plaintiffs Rascento and Rounds, who supposedly signed their CPFs on April 5, 2021 and December 16, 2021, which both predate PTO 72 and its estoppel provisions.  This means, the very documents presented by Defendants cannot establish that Plaintiffs voluntarily assented to PTO 72, even assuming they are valid.

Defendants claim that some attorney later certified these Plaintiffs under PTO 72—but, provide no evidence to that effect for Plaintiffs Cusick and Rounds.  For Plaintiff Campion, Defendants present a CPF dated after PTO 72, but it is signed by a paralegal.  So, even assuming

---

[1] Plaintiffs dispute this point factually, which is discussed in more depth below in Subsection II.

Defendants are correct, that some attorney did certify each Plaintiff under PTO 72, it leads to the next issue, i.e., whether those certifications are legally binding without consent.

PTO 72 clearly releases claims against diversity destroying defendants and enforces that with estoppel.  PTO 72 states that "none of the Anticipated Defendants may have the same citizenship as the Certified Federal Participant" and that "[b]y participating in the certification process described in this Order, a Certified Federal Participant agrees that (i) he or she is estopped from filing a lawsuit concerning Zantac or any generic equivalent ranitidine product in a state court[.]"  PTO 72 ¶¶ 5, 6.  By certifying participation under PTO 72, each Plaintiff necessarily releases claims against a defendant with the same citizenship of the Plaintiff.

Defendants contend certifying claims under PTO 72 in the MDL were necessary, incidental decisions regarding management of Plaintiffs' suits—meaning they did not require consent—but they cited no cases to support this.  At best, they provide lukewarm parentheticals from cases outside this jurisdiction, regarding attorney's abilities to make tactical decisions "during the management" or "progress of the action."  Defendants cite a Missouri state court from 1988, *Rosenblum v. Jacks or Better of Am. W. Inc.*, where the court echoes the "general principle . . . an attorney's employment alone implies no authority to settle or compromise the client's case." 745 S.W.2d 754, 760 (Mo. Ct. App. 1988).  And Plaintiffs agree—releasing claims against diversity destroying defendants *compromises* a case and, thus, cannot be done without client consent.  *Sawyer v. Sawyer* is a Pennsylvania state court case dealing with an attorney who lacked authority to settle a case.  No. 809 MDA 2016, 2017 WL 3476779, at *13 (Pa. Super. Ct. Aug. 14, 2017).  Plaintiffs also agree, attorneys cannot settle a case, or compromise it, without authority.

Defendants also cite a California case, *Munroe v. Univ. of S. California,* which also

weighs *against* their argument.  There, the court held "[d]ecisions to settle or arbitrate are steadfastly vested with the client [and] always requires client consent."  No. CV166191VAPCFEX, 2017 WL 1654075, at *5 (C.D. Cal. Mar. 23, 2017), *aff'd,* 896 F.3d 1088 (9th Cir. 2018).  The *Munroe* Court explained an attorney has authority on matters of procedure (e.g., "venue, discovery methods, and evidence"), but this authority is only "vested in the lawyer's discretion . . . so far as [the agreements] are simply necessary or incidental to the management of the suit, and . . . affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client[.]"  *Id.; see Knabe v. Brister*, 154 Cal. App. 4th 1316, 1324 (2007) ("An attorney who takes these types of acts without his or her client's consent 'impairs so substantial a portion of the case or so fundamental a right of the client that it justifies setting aside a stipulation'") (citations omitted).  The court agreed it is not just settlement or dismissal of a case that "compromises" or "impairs" a claim.  2017 WL 1654075, at *5.  An attorney cannot *ad hoc* violate an essential right.  *Id.*

Defendants mischaracterize *Maxum Indemnity Company v. Fun Zone Entertainment, LLC* to say it does not apply.  Defendants portray the *Maxum* pretrial stipulation as an "agreement[ ]to **settle** claims," so Defendants say it does not apply.  Opp., at 7-8.  However, as explained in the original motion, the facts are messier than that, which is why the case is instructive.  The *Maxum* Court's analysis was thorough, because "[t]he stipulation [did] not neatly qualify as a pretrial stipulation, a voluntary dismissal, or a consent judgment but share[d] characteristics of all of those types[.]" 2020 WL 3052092, at fn. 28.  In the end, the court relieved the parties of the stipulation, using the manifest injustice standard under Rule 60, which applies to final judgments.  *Id.*

Plaintiffs cite *Maxum*, a recent case from a federal Florida court, because the court

explains the analysis and result would apply with Rule 16(c) as well, even if the stipulation was deemed more like an interlocutory order or pretrial stipulation. *Id.* at fn. 36. The court instructs that the lack of consent vitiates PTO 72 certification, because it is "[m]anifest injustice . . . where counsel enters into *a stipulation that essentially settles the case* without his client's consent." *Maxum Indem. Co.*, 2020 WL 3052092, at *25. Whether the release of those claims comes in the context of an agreement to not sue, enforced though estoppel, like it was in PTO 72, or an old-fashioned settlement agreement—releasing claims, no matter how done, requires client consent. The court declined to enforce the pretrial stipulation, even though it was "interlocutory in nature," because it would be a manifest injustice to allow an attorney to enter a pretrial stipulation without client consent and estop their claims from being heard. *See* 2020 WL 3052092, at *10-12, *25. The court was persuaded by testimony that the clients never saw the stipulation beforehand. *Id.*

The law is clear—certification under PTO 72 required consent, and the record indicates that attorneys that made the certifications, did not have it. Indeed, Defendants' only evidence that Plaintiffs "voluntarily entered the Registry" are the CPFs, which bear questionable electronic signatures and, save Plaintiff Campion (which was signed by a paralegal), predate entry of PTO 72. That evidence is consistent with Rounds and the personal representatives for both Campion and Cusick declaring, under oath, "[i]f anyone filed my Zantac case in federal court or categorized me as a 'Certified Federal Participant,' **it was done without my knowledge or consent**." Declaration of David Rounds, at 1-2; Declaration of Cathy Williams, at 1; Declaration of William H. Campion, at 1 (emphasis added). Indeed, the CFPs also strongly indicate that attorneys, not clients, performed the certifications.

Rounds did not authorize any law firm to use his signature nor file his Zantac case in

federal court as a "Certified Federal Participant."  Declaration of David Rounds, at 1.   He did not even discuss the matter with any other law firm.  *See id.*  Though, Rounds did authorize Moore Law Group to represent him and file a Zantac claim in Delaware state court.  *Id.* Defendants' only evidence is CPF submitted on David Rounds' behalf, which bears an electronic signature he did not authorize nor discuss, which was filed before PTO 72 was entered. Defendants' Ex. B.

In *Cusick,* although Carey Danis & Lowe, LLC and Cathy Williams (decedent Cusick's personal representative) did have a brief conversation, Ms. Williams was under the impression that they were working with Wisner Baum. Declaration of Cathy Williams, at 1.  She did not execute a retainer agreement with them and had the intent to have Wisner Baum represent her. *Id.*  Wisner Baum had the authority to file her case in Delaware state court, but no law firm had authority to file in federal court as a Certified Federal Participant.  *Id.*  It was done without her knowledge or her signature.  *Id.*  Indeed, the CPF allegedly submitted by Gaylon Cusick is electronically signed by him – not his personal representative, over a year after Mr. Cusick passed away.  Defendants' Ex. C.  Mr. Cusick later submitted two supplements, though neither supplement has an attached certification page bearing his signature.  *Id.*

Similarly, Mr. Campion never conversed with any other firm, other than Wisner Baum. Declaration of William H. Campion, at 1.  There is no evidence that Romanucci & Blandin had the authority to act on his behalf, and clear testimony indicating otherwise.  *Id.*  Based on the CFP produced by Defendant, it was signed more than five years after her death by "Henri Swanson," a paralegal at Romanucci & Blandin.  Defendants' Ex. A.  The fact that a paralegal signed the CPF, not the decedent or personal representative, underscores that Mr. Campion did not know this certification was occurring.

In sum, the testimony of Plaintiff Rounds, and the personal representatives of Plaintiffs Cusick and Campion, make it clear that they had no hand in certifying their claims under PTO 72 or the filing of MDL complaints.  Absent some *iota* of evidence that these certifications under PTO 72 were authorized, which would release claims against Patheon, they are invalid and cannot be used to restrict Plaintiffs' cases on the merits.  Even in the hypothetical that they consented to certification, courts have broad discretion in whether to enforce a pretrial order, and Plaintiffs Rounds, Campion, Cusick, and Rascento should not lose their day in court for upholding a technicality in a pretrial procedure.  *E.g., Dickerson v. Cent. United Life Ins. Co.*, 932 F. Supp. 1471, 1474 (M.D. Ga. 1996) (citing Fed. R. Civ. P. 16(e)); *see Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001).  For these reasons, the certifications should be vacated.

## II.    No prejudice would befall Defendants.

Plaintiffs in this case are but hundreds of the 70,000 claimants in Delaware state court. Defendants dramatize the reality, alleging that it would "upend the Registry process" if the court vacates the unauthorized certifications of these Plaintiffs.  With respect—that is immaterial to these Plaintiffs, that clearly elected to pursue their claims in Delaware state court months before this Court entered its *Daubert* ruling.  These Plaintiffs clearly manifested their intent to not proceed in the MDL, and made that decision before the fate of cases in the MDL were known. For those cases, there is absolutely no prejudice to Defendants.  The tens of thousands of cases that did certify under PTO 72 with client authorization are still valid.  These handful of cases are a drop in the bucket, and Defendants cannot claim surprise when these cases have been pending in Delaware state court for years.  The integrity of the registry depends on its fairness to the parties, not whether a cancer victim is prejudiced by the acts of lawyers acting without authorization.  Vacating the PTO 72 certifications causes zero prejudice to Defendants, and

nearly complete prejudice to Plaintiffs.

### III.   Vacatur of Certification Triggers Remand for Lack of Subject Matter Jurisdiction.

As admitted by Defendants, if certification under PTO 72 is vacated, or declined to be enforced, then PTO 72's estoppel provisions cannot, as a matter of law, bind Plaintiffs; and, their claims against Patheon are not impossible. Therefore, their claims against Patheon are not fraudulently joined and this Court must remand it for lack of subject matter jurisdiction.

## CONCLUSION

Thus, Plaintiffs respectfully request that the Court enter an order (1) vacating certification under PTO 72 of the cases represented by the above-named Plaintiffs and (2) remanding these cases respectively back to Delaware state court so that they may continue to proceed where they were, originally, filed almost two years ago.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), the undersigned, on behalf of Plaintiffs, conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: July 24, 2024                                   Respectfully submitted,

*/s/ R. Brent Wisner*                                   */s/ Jennifer A. Moore*
R. Brent Wisner, Esq.                              Jennifer A. Moore, Esq.
rbwisner@wisnerbaum.com                   jennifer@moorelawgroup.com
**WISNER BAUM, LLP**                          **MOORE LAW GROUP, PLLC**
11111 Santa Monica Blvd Ste. 1750       1473 South 4th Street
Los Angeles, CA 90025                         Louisville, KY 40208
Telephone: (310) 207-3233                    Telephone: (502) 717-4080
Facsimile: (310) 909-8212                      Facsimile: (502) 717-4086

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of July, 2024, the foregoing was filed electronically

through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.


*/s/ R. Brent Wisner*
R. Brent Wisner, Esq.

11